# EXHIBIT A


# Verdmont Capital

**Investment Account Application**
**CORPORATE**
*Aplicación para Cuenta de Inversión*
*CORPORATIVA*

Account Number / *Número de Cuenta*
172469761

## 1. Client Identification / *Identificación del cliente*

Company Name / *Nombre de la compañía*
LORNEX FINANCIAL LTD.

Account Advisor / *Asesor de cuenta*
F.H. Corley, Pac.

Currency Base / *Electrónicos*

Registered Corporate Address / *Dirección Registrada de la Corporación*
HENVILLE BUILDING

Email
LORNEX @ CORPTRAX . COM

City / *Ciudad*
CHARLESTOWN

State or Province / *Estado o Provincia*

Country / *País*
NEVIS

Postal Code / *Apdo*
No postal code in nevis

Business Phone 1 / *Teléfono 1*
869 - 469 - 1812

Business Phone 2 / *Teléfono 2*

Fax
869 - 469 - 1204

Alternate Address / *Dirección Alterna*

Street Address / *Dirección*

State or Province / *Estado o Provincia*

Country / *País*

Postal Code / *Apdo*

## 2. Account Statement and Trade Confirmation Distribution
*Estado de Cuenta y Distribución de Confirmación de Transacción*

Please check how you wish to receive account statements and trade confirmations:
*Por favor indique como desea recibir sus estados de cuenta y confirmaciones de transacciones:*

- [ ] Mail to primary address / *Enviar a dirección primaria*
- [ ] Mail to alternate address / *Enviar a dirección alterna*
- [ ] Email, please specify address/ *E-mail, favor indicar dirección:* ————————
- [x] Online Access, please select a user ID and password
  *Acceso en línea, favor seleccionar una identificación de usuario y clave*

User ID / *ID usuario:* LORNEX          Password / *Clave:* PASSWORD

(User ID and Password must be unique and between 6 and 8 characters long/ *El ID de usuario y Clave deben ser únicos y tener entre 6 y 8 caracteres*)

- [x] I hereby agree to view my Verdmont account statements no less than once each month. / *Mediante este presente acuerdo en ver mi cuenta 'online' de Verdmont en no menos de una vez al mes*

## 3. Authorized Signatories / *Signatarios Autorizados*

| Print Name / *Nombre en imprenta* | Title / *Título* | Signature / *Firma* |
|---|---|---|
| C. WILKINS | DIRECTOR | |
| V. SANTANA | SECRETARY | |
| | | |
| | | |

Please attach a KYC form for each of the above signatories.
*Por favor adjunte un formulario KYC por cada uno de los signatarios anteriores.*
Please indicate the number of signatures required to withdraw assets from this account:
*Por favor indicar el número de signatarios requeridos para retirar fondos de esta cuenta:*

- [x] One/ *Uno*   [ ] Two / *Dos*   [ ] Three / *Tres*

I hereby authorize Verdmont Capital, SA to accept instructions by fax for this account.
*Por este medio autorizo a Verdmont Capital, SA a aceptar instrucciones por fax para esta cuenta*

Initial / *Iniciales*

Edificio Hi-Tech Plaza, Penthouse Calle 53, Obarrio Ciudad de Panama, Republica de Panama
T: +507 301 9000 or +800 VERDMONT F: +507 301 9001 www.verdmont.com.pa.

2

DA00001

# Verdmont Capital

## 4. Investment Profile / *Perfil de Inversión*

Please check the box that appropriately describes your investment experience:
*Por favor indicar en la casilla que describe apropiadamente su experiencia en inversiones:*

☐ Novice / *Nuevo*
☐ Intermediate / *Intermedio*
☒ Sophisticated or High net-worth investor / *Sofisticado o inversionista de alto valor*

Note: Clients wishing to trade derivatives, short sell, trade in restricted securities, and open margin accounts must be sophisticated investors; to be considered a sophisticated investor you must have a net worth greater than or equal to $1 million./*Nota: los clientes que deseen negociar "derivatives", ventas en corto, negociar en valores restringidos y cuentas de margen deben ser inversionistas sofisticados; para ser considerado un inversionista sofisticado usted debe tener valores mayor que o igual a US $1 millón*

| Annual Income / *Ingreso Anual:* | Net Worth / *Patrimonio Total:* |
|---|---|
| $10 MILLION | $10 MILLION |

| | | |
|---|---|---|
| Do you understand the risks involved with trading derivatives? *Entiende usted los riesgos que involucra el negocio de "derivatives"?* | ☒ Yes / *Si* | ☐ No |
| Could you afford to lose the total principal invested in a speculative investment? *Puede usted afrontar la pérdida total del capital invertido en una inversión especulativa?* | ☒ Yes / *Si* | ☐ No |
| Do you understand the risks associated with a margin account? *Entiende usted los riesgos asociados con una cuenta margen?* | ☒ Yes / *Si* | ☐ No |
| Knowing the risks involved, are you willing to invest? *Conociendo los riesgos implicados está dispuesto a invertir?* | ☒ Yes / *Si* | ☐ No |

| What are your investment objectives? / *Cuáles son sus objetivos de inversión?* | If you require income please specify your cash flow requirements / *Si usted requiere un ingreso por favor especificar sus requisitos de flujo de caja:* |
|---|---|
| ____% Preservation of Capital / *Preservación de capital* ____% Income / *Ingreso* ____% Growth / *Crecimiento* 100% Speculation / *Especulación* | Bi-weekly / *Quincenal* $_____ Monthly / *Mensual* $_____ Quarterly / *Trimestral* $_____ Annually / *Anual* $_____ |

## 5. Source of Funds / *Fuente de Fondos*

Primary nature of the Company's business / *Naturaleza primaria del negocio de la Compañía:*   NON OPERATING
INVESTMENTS IN SECURITIES                    ACCOUNT

What is the expected initial amount to be deposited in the account? / *Cuál es el monto inicial que se espera ser depositado en la cuenta?*
$2 MILLION — STOCKS

Please estimate the anticipated total market value of the account / *Por favor estime el valor total anticipado de la cuenta en el mercado:*
$10 MILLION +

Please explain in detail the source of the funds you will be depositing with our firm / *Por favor explique en detalle la fuente de los fondos que usted estará depositando con nuestra firma:*
ACCUMULATED INVESTMENT

What is the expected transaction volume and turnover for the account? / *Cuál es el volumen de transacción que espera y el retorno por la cuenta?*
$10 MILLION + PER YEAR

Have there been any major changes to the company's net worth in the past two years? / *Ha habido cambios mayores en su red en los pasados dos años?*
☐ Yes / *Si*     ☒ No

If yes, please attach additional documentation outlining the changes. / *Si es sí por favor adjunte documentación adicional resumiendo los cambios*

DA00002

# Verdmont Capital

## 6. KYC

| Country of Incorporation / País de Incorporación: | Date of Incorporation / Fecha de Incorporación: |
|---|---|
| NEVIS | 24 AUGUST 2007 |

Please identify all shareholders and beneficial owners of the company with a 25% or greater interest. If the owner of the company is another corporation, please also identify the beneficial owners of the underlying corporation. A completed KYC form must be attached for each individual beneficiary. / Por favor identifique todos los accionistas y poseedores beneficiarios de la compañía con interés de 25% o mayor. Si el dueño de la compañía es otra corporación, por favor identifique también los poseedores beneficiarios de la corporación subyacente. Debe adjuntarse un formulario KYC completo por cada beneficiario individual.

| Name / Nombre | Percent Interest / Porcentaje de Interés | Name / Nombre | Percent Interest / Porcentaje de Interés |
|---|---|---|---|
| CLIFFORD WILKINS | 100 % | | |
| Name / Nombr | Percent Interest / Porcentaje de Interés | Name / Nombre | Percent Interest / Porcentaje de Interés |
| | | | |

Is the company in good legal standing? / ¿Está la compañía en buen estado legal?

☐ No    ☒ Yes / Sí

If yes, please attach a certificate of good standing issued within the past 30 days / Si es sí, adjunte un certificado de buen estado emitido dentro de los 30 días anteriores

Verdmont Capital is required to determine the identity of any direct and indirect beneficiaries of this account. / A Verdmont Capital se le requiere que determine la identidad de cualquier beneficiario directo o indirecto de esta cuenta.

Does anyone other than the persons named have authority over or any financial interest in this account?
Alguna de las personas nombradas tiene autoridad sobre o cualquier interés financiero en esta cuenta?

☒ No    ☐ Yes / Sí        If yes, please attach details. / Si es sí, por favor adjunte detalles

Is the account holder acting as an intermediary, nominee, or otherwise holding the account's assets on behalf of a third party?
El tenedor de la cuenta actúa como un intermediario, nominal, o de cualquier otra manera manteniendo los activos de la cuenta en su propio beneficio o de tercera parte?

☒ No    ☐ Yes / Sí        If yes, please attach details. / Si es sí, por favor adjunte detalles

## 7. Application Signature / Aplicación para Firma

I certify that the information provided by me in this application is true and correct and I agree to advise Verdmont immediately of any material change in this information or my financial circumstances. I have received and read the attached Verdmont investment account agreement – terms and conditions, dated Oct. 2, 2005 and understand and agree to all terms within, including (if applicable) risk disclosures relating to margin accounts, derivatives, online access and restricted securities. This agreement is subject to the laws of the republic of the Republic of Panama.
Yo certifico que la información proporcionada por mi en esta aplicación es verdadera y correcta y acuerdo advertir a Verdmont inmediatamente de cualquier cambio material en esta información o mis circunstancias financieras. He recibido o leído el "Acuerdo de Cuenta de Inversión Verdmon – Términos y Condiciones" con fecha Sept 21, 2005 y entiendo y acepto todos los términos en el establecido, incluyendo (si aplica) liberación de riesgo pata(sp) a cuentas marginales "derivatives" acceso en línea y valores restringidos. Este acuerdo está sujeto a las Leyes de la Republica de Panamá.

25 OCTOBER 2007

Dated / Fecha

_____  DIRECTOR

Signature of Customer or Signatory / Firma del Cliente o Firmante

25 OCTOBER 2007

Witness / Testigo

_____  SECRETARY

Signature of Customer or Signatory / Firma del Cliente o Firmante

Edificio Hi-Tech Plaza, Penthouse•Calle 53, Obarrio •Ciudad de Panama, Republica de Panama
T: +507 301 9000 or +800 VERDMONT•F: +507 301 9001•www.verdmont.com.pa

Version : 1 – Oct 2 2007

4

DA00003



## Verdmont Capital

**Verdmont Capital Brokerage Account Agreement**
**Terms and Conditions**

By opening a brokerage account or accounts at Verdmont Capital ("Verdmont," "we," "our" or "us"), you acknowledge and represent that you have read and understand the Verdmont Brokerage Account Agreement (the "Agreement") below and agree to be bound by its terms.

**1. Legal Capacity to Enter Into Agreements.** You are of full legal age in the jurisdiction in which you reside and have the capacity to enter into this Agreement.

**2. Accuracy of New Account Application and Credit Information.** The information that you have provided to us is current, accurate, truthful and complete. No one except the person(s) listed on the Brokerage Account Application (Application) has an interest in the Account applied for. You agree to provide us with an updated Application promptly upon any material changes in any such information. You authorize us to make inquiries to financial institutions, employers and/or any other source we believe necessary for the purpose of verifying your identity and creditworthiness.

**3. Account Types.** You understand that you are responsible for selecting the Account type (e.g. single, joint, or corporate Accounts) that is appropriate for your needs and circumstances. You also understand that certain Account types may be eligible for (or restricted from) certain services offered by Verdmont.

**4. Identity Verification for Anti-Money Laundering Purposes.** We are required by Panama law to verify the identity of each account owner. Verdmont must ask you to provide various identification documents prior to opening an Account. Attached to this Agreement is our "Know Your Client form" You acknowledge that you have received and completed accurately.

**5. Account Approvals and Maintenance.** We may reject your Application or close your Account for any reason, at our sole and absolute discretion. We may require that you provide us additional information or documentation in order for us to continue carrying your Account. You acknowledge that we may, at any time at our sole and absolute discretion, restrict trading, disbursements, transfers or take no action in your Account. Verdmont may amend, change, revise, add or modify (amendments) this Agreement through an advanced written notice of no less than fifteen (15) days to you. The most current Agreement will be posted at our Web site www.verdmont.com.pa. You understand that this Agreement cannot be modified by any verbal statements or written amendments that you seek to make to this Agreement without written acceptance from the General Counsel of Verdmont.

**6. No Advice and No Recommendations.** You acknowledge that Verdmont does not provide legal or tax advice, and agree that, to the extent you deem necessary, you will consult with qualified professionals in your own jurisdiction prior to utilizing your Verdmont account or implementing any financial plan. You hereby agree to hold Verdmont and its officers, directors, employees, agents and affiliates harmless from any liability, financial or otherwise, or expense (including attorneys' fees and disbursements), as incurred, as a result of any losses or damages you may suffer with respect to any such decisions, instructions, transactions or strategies employed in your Account by you or your duly authorized representative, or as a result of any breach by you of any of the covenants, representations, acknowledgments or warranties herein.

**7. Fees, Commissions and Minimum Account.** You agree to pay the brokerage commissions, charges, or other fees as set forth in our then-current Commission Schedule, copy of which is given to you at the signing of this Agreement. Verdmont will inform you in writing of any changes in the Commission Schedule and you will have a period of two (2) months as of the date of receiving the notification to consider this Agreement as terminated; during this period the amended rates will not be applied. You understand that Verdmont may require a minimum deposit to open an Account and that you also may be required to maintain a minimum deposit amount. Commissions are charged on a per order basis. Limit orders executed over multiple days and orders modified after a partial execution on the same day will be treated as separate orders for commission calculation purposes.

**8. Deposit of Physical Securities**

If a security is deposited in physical form, subsequent withdrawals may be limited to physical form only, and may be required to be put back into the same name as it was originally received. At Verdmont's sole discretion, such securities may be allowed to transfer, but may be charged at regular commission rates.

**9. Purchases and Sales.** To execute purchase orders, we generally require that your Account contain available funds equal to or greater than the purchase price of the securities. To execute sell orders, we generally require that securities be long in your Account in good deliverable form. You agree that any purchase or sell order accepted (inadvertently or otherwise) by us without sufficient funds or negotiable certificates, respectively, in your Account, will be subject to liquidation in the case of a purchase order, or buy-in in the case of a sell order, at your expense. In the event full funds are not available in your Account when a purchase order is executed, you promise to pay the full amount due via wire transfer or certified or personal check on or before the settlement date for the purchase. In the event a sale order is executed and the securities sold are not in your Account, you promise to deliver all securities sold, on or before settlement date. If such funds or securities are not received on or before the settlement date, we may liquidate your Account and you will be liable for any resulting losses and all associated costs that we incur.

**10. Orders, Executions.** You should give clear and precise instructions so that the personnel involved in the carrying out these instructions will understand its effects. Upon receiving the order, Verdmont will carry it out or will use the necessary means to relay it, as soon as possible, to the entity responsible to fill completion; it will be done on the same day of the receipt or if not feasible, on the following business day. In case it is not possible to comply with this provision, you will be informed of the precise reasons for its non compliance. Verdmont will send you a confirmation of each transaction within the following business day of its completion. You understand that you are responsible for promptly reviewing upon receipt all trade confirmations and account statements. Such confirmations and statements shall be deemed as accepted by you and shall be binding unless you notify us in writing within ten (10) days after its transmission to you. You agree that you are responsible for monitoring all open orders. If you place a good-till-cancelled ("GTC") order the open order will remain in force until it is executed, cancelled by us because of a corporate action, reorganization or operational reason, or because you choose to cancel it.

**11. Late and Corrected Reports.** We may receive late reports regarding the status of orders from various marketplaces. Accordingly, you may then receive late reports. You may also receive reports correcting a previous report, including errors in execution prices. You acknowledge that you will receive the price at which your order is actually executed in the marketplace even if the report is late or a report corrects an incorrect price or term of another report.

**12. Payment of Obligations upon Request.** You will be liable to Verdmont for the payment for all trades, debit balances, margin calls, or other obligation ("Obligations") owing in your Account. You agree that all orders for the purchase or sale of securities for your Account shall be processed and/or executed with the understanding that an actual purchase or sale is intended and it is your intention and obligation in every case to pay for any purchase or deliver certificates to cover all sales on or before settlement date, whether or not you are in receipt of a trade confirmation. You agree to pay any debit balance (i.e. any Account balance owed to Verdmont) and to satisfy any indebtedness to Verdmont in your Account on demand. Payments (cash, travelers checks, third party checks or personal checks are not generally accepted) or securities submitted to your Verdmont branch need to be made before settlement to allow for transmit to our headquarters. You agree that any security sold will be in good deliverable form (properly endorsed, proper denominations, adjusted for all company reorganizations and free of any encumbrances). Debit balances in any Account may be charged interest in accordance with our then-current interest rate schedule for debit balances.

**13. Consent to Monitoring and Recording.** You understand that we may, in our sole and absolute discretion, monitor or tape record telephone conversations with you, and you consent to such monitoring or recording. We are not required to record all telephone conversations and we do not guarantee that recordings of any particular telephone conversation will be retained or are capable of being retrieved.

**14. E-mail and Electronic Communications.** All e-mail sent to and from us is subject to monitoring, review by or disclosure to someone other than your intended recipient. You acknowledge that there may be delays in e-mail being received by your intended recipient. You agree to hold us harmless for any delay in e-mail delivery regardless of whether the delay was caused by us or a third party. E-mail sent to and from a Verdmont address may be retained by our corporate e-mail system. You agree that Verdmont is not liable for any actions taken or any omissions to act as a result of any e-mail messages you send to us. Electronic communications with Verdmont via our Web site, wireless device or touchtone service are also subject to monitoring, review by or disclosure to someone other than the recipient and such communications may be retained by Verdmont.

**15. Complaints.** Written complaints may be sent to Verdmont Capital Attn: Compliance Department, Edificio Hi-Tech Plaza, Calle 53, Obarrio, Panama City, Republic of Panama. Or via email, compliancedemont.com.pa

**16. Applicable Law, Jurisdiction, Arbitration.** This agreement shall be governed by the laws of the Republic of Panama. Any disputes arising with respect to or in connection with this Agreement shall be finally decided in the Republic of Panama. Disputes will be arbitrated by an arbitrator from either Centro de Conciliacion y Arbitraje de Panamá or Centro de Solución de Conflictos decided and approved by Verdmont Capital and the Client.

**17. Losses Due to Extraordinary Events; Limitation of Liability.** We shall not be liable for loss caused directly or indirectly by war, strikes, natural disasters, terrorist acts, government restrictions, exchange or market rulings, suspensions of trading, computer or communications line failures, or delays in the transmission of orders due to a breakdown or failure of transmission facilities or other conditions beyond our reasonable control.

**18. Notices.** To you, Verdmont provides regular account statements to customers via two methods. Customers may choose one method to receive "Verdmont Client Statements" for their accounts by mail or via the internet. Customer agrees to certain fees if they choose regular mail. Verdmont intends the information contained in the Client Statements to be accurate and reliable; however, errors sometimes occur. Therefore, Verdmont disclaims any warranty of any kind, whether express or implied, as to any matter whatsoever relating to such information. In particular, the actual price at which an order is executed shall be binding notwithstanding the fact that an erroneous report is given to you. An order that was executed, but in error reported as not executed, shall be binding. Verdmont retains the right to enter pricing, trade, and reconciliation adjustments to your account as necessary and appropriate. Customer agrees that it is their sole responsibility to request and review transaction summaries on a regular basis.

**19. Waiver.** Any failure by us to insist at any time upon compliance with this Agreement or with any of its terms shall not constitute or be considered a waiver by us of any of our rights.

**20. Termination.** You may terminate this Agreement or your Account at any time upon written notice to us, after paying any Obligations you owe to us. You shall remain responsible for all Obligations initiated or authorized by you, including, without limitation, any transactions, debts, and interest as provided under this Agreement, whether arising before or after termination of this Agreement. We may terminate this Agreement or your Account any time, without advance notice, for any reason in our sole and absolute discretion. The terms and conditions of this Agreement will survive termination of your Account and will continue to apply to any disputed or other remaining matters arising from our relationship.

**21. Security and Confidentiality.** You agree that any security in your Account are the exclusive owner and solely responsible, jointly and severally if applicable, for the confidentiality and protection of your Account number and password that allows you to access our online systems. You further agree that you will be fully responsible for all activities including brokerage transactions that arise from the use of your Account number and password. You agree to indemnify and hold Verdmont harmless if any other person utilizing your confidential information provides instructions to us that may be contrary to your instructions. You will immediately notify us in writing or by e-mail of any loss, theft or unauthorized use of your Account number and/or password.

**22. Use of Verdmont's Web Sites.** www.verdmont.com.pa, provides you with content and information. Content includes account positions, account activity, balances, transaction status, statements, confirmations and other Account-related data. You agree at all times to rely upon your transaction confirmations and statements as the critical records of your Account.

DA00004

# Verdmont Capital

## MARGIN ACCOUNTS

In consideration of Verdmont opening one or more Margin accounts for you, you agree to the foregoing and following provisions.

**23. Margin Loans.** We may, in our sole and absolute discretion, make loans to you for the purpose of purchasing, carrying or trading in securities, options or other property ("Margin Loans"). Margin Loans will be made in a Margin Account. You agree that you are solely responsible for determining whether margin is appropriate for you in light of your financial resources, objectives, and other relevant circumstances. You understand and agree that Verdmont will not make this determination on your behalf. Subject to regulatory requirements, the minimum and maximum amount of any particular Margin Loan may be established by us in our discretion regardless of the amount of Collateral delivered to us and we may change such minimum and maximum amounts from time to time.

**24. Risk of Margin Trading.** You understand that trading on margin (including effecting short sales) involves a high degree of risk and may result in a loss of funds greater than the amount you have deposited in your Account.

**25. Requirement to Maintain Sufficient Margin.** Your margin transactions are subject, at all times, to the initial margin and maintenance margin requirements (the "Margin Requirements") established by us. You shall monitor your Account to ensure that at all times the Account shall contain a sufficient account balance to meet the applicable Margin Requirements. We may modify such Margin Requirements for open and new positions, at any time, in our sole and absolute discretion. The margin that we require may exceed the margin required by any exchange or association. We may reject any order if you do not have a sufficient account balance to meet Margin Requirements and may delay the processing of any order while determining the correct margin status of your Account. You shall maintain, without notice or demand from us, a sufficient account balance at all times so as to continuously meet the Margin Requirements.

**26. Margin Calls.** Margin calls may be issued in writing, via telephone, electronically, or by other means of communication. In some situations, such as volatile market conditions, we may not immediately issue a margin call when your Account equity falls below 35 percent. You are responsible for acting immediately on any maintenance calls, buy in or sell out notices given orally or in writing. Your failure to promptly deposit additional money or securities in response to a margin call, regardless of the equity level in your Account, may result in the liquidation of part or all of the securities in your Account. Although we will generally attempt to notify you of a margin call and give you an opportunity to deposit additional equity to secure the Account, we reserve the right to institute immediate discretionary liquidation of any and all securities without prior notice and without giving you an opportunity to deposit additional equity. This sole and absolute discretion applies regardless of any historical pattern of delivering verbal/written notices or of any current verbal or written representations by Verdmont that indicates a different dollar amount, liquidation time, or suggests additional time based on due date. This sole and absolute discretion to liquidate immediately applies regardless of time zone differentials, language interpretations, or delays in wiring funds, and includes the sole and absolute discretion to choose which positions to liquidate and in what order. It is your responsibility to monitor and liquidate positions to minimize your losses before we are forced to liquidate on your behalf to protect our interest as a creditor. We reserve the right at our sole and absolute discretion to close out any positions for any Account that represents a negative liquidation value.

**27. Interest Charges on Debit Balances.** You agree to pay interest on all debit balances in any Account. Interest on your average daily net debit balance will be calculated using a base rate determined by us and may be changed at any time in our discretion.

**28. Short Sales.** You agree to advise us prior to entering a sell order if it is a "short" sale (the sale of a security that you do not own). You agree that all short sale transactions shall be executed in a Margin Account. You understand that to facilitate a short sale, we must borrow the securities that you sell short. Short sales can be subject to a buy in from settlement date and thereafter. Verdmont does not guarantee a minimum time to short a position. Should Verdmont be unable to borrow or re-borrow a security you have sold short, or for any other reason we deem prudent, we may at our discretion, with or without notice, cover your position

by buying the stock at the current market price and you agree to be liable to Verdmont for any resulting debit balance. Margin Accounts are marked to the market daily, and any increase in value of a short position will result in that unrealized loss being added to your debit balance and interest being charged as described above. Similarly, a drop in value will decrease your debit balance. If the lender should call in your borrowed securities for any reason such as a tender offer, and you cannot cover in time to make delivery, we may hold you responsible for any resulting loss. You agree that if (a) market conditions change, (b) we are unable to borrow the securities, (c) the lender recalls the securities, we may attempt to reborrow the securities, but you understand that we may need to cover the short position in the Account on the open market at the then current market price and market conditions. You understand that you will be responsible for any resulting loss or associated costs incurred by us in connection with your short transactions. You are liable for any dividends paid on securities you have sold short.

**29. Loan of Securities.** We are authorized to lend ourselves, as principal or otherwise, or others any securities held by us in your Account and we shall have no obligation to retain under our possession and control a like amount of such securities. In connection with such loans, we may receive and retain certain benefits (including interest on collateral posted for such loans) to which you shall not be entitled. In certain circumstances, such loans may limit, in whole or in part, your ability to exercise voting rights of the securities lent.

**30. Pledge of Securities, Options and Other Property.** All securities and other property now or hereafter held, carried or maintained by us in or for your Account may, from time to time without notice to you, be pledged, repledged, hypothecated or re-hypothecated by us, either separately or in common with other securities and other property. The value received may be greater than the amount you owe us. Any losses, gains or compensation resulting from these activities will not accrue to your brokerage Account.

**31. Business Continuity Disclosure**

Verdmont has in place a business continuity plan that will be activated in the event of a significant business disruption, such as a natural disaster, power outages or other events. Our plan is intended to permit us to continue critical business operations during these types of disruptions. For the most significant business disruption scenario that we have addressed, account access is planned to be available within minutes and all critical business operations would be resumed within one to two days.

---

### CONTRATO DE CUENTA DE CORRETAJE DE VERDMONT CAPITAL
### TÉRMINOS Y CONDICIONES

Al abrir una cuenta o cuentas de corretaje con Verdmont Capital ("Verdmont", nosotros" o "nuestra"), usted acepta y reconoce que ha leído y comprendido el Contrato de Cuenta de Corretaje de Verdmont (el "Contrato") que aparece abajo y acuerda obligarse según sus términos

**1 .Capacidad Legal para Celebrar Contratos** Usted es mayor de edad en la jurisdicción en la cual reside y tiene capacidad para celebrar este Contrato

**2. Exactitud de la Solicitud de su Cuenta** Nueva e Información Crediticia. La información que usted nos ha suministrado es su solicitud  precisa, confiable y completa. Nada más excepto la persona(s) mencionada(s) en la Solicitud de Cuenta de Corretaje (la "Solicitud") tiene interés en la Cuenta para la cual se ha aplicado. Ante la ocurrencia de cualesquiera cambios importantes a dicha información, usted se obliga a suministrarnos prontamente una Solicitud actualizada  Usted nos autoriza a hacer las indagaciones a instituciones financieras  empleadoras, y/o cualquier otra fuente que estimemos necesarias con el propósito de verificar su identidad y solvencia financiera

**3. Tipos de Cuenta** Usted entiende que usted es responsable de seleccionar el tipo de Cuenta (e.g  cuentas individuales  conjuntas o corporativas) que sea apropiada para sus necesidades y circunstancias.  Usted también entiende que ciertos tipos de Cuentas pueden ser elegibles para (o inelegibles de) ciertos servicios ofrecidos por Verdmont

**4. Verificación de Identidad para Fines Anti-Lavado de Dinero.** La legislación de Panamá nos exigen verificar la identidad del dueño de cada cuenta  También le solicitará que provea varios documentos de identificación antes de abrir una Cuenta. Adjunto a este Contrato está nuestro "Formulario Conozca a Su Cliente"  Usted declara que lo recibido y completado correctamente dicho formulario

**5. Mantenimiento y Aprobación de Cuenta.** Nosotros podremos, a  nuestra única y absoluta discreción, rechazar su Solicitud o cerrar su Cuenta.  También podremos requerir que nos provea  documentación e información adicional a fin de que podamos continuar procesando su Cuenta.  Usted reconoce que nosotros podemos, en cualquier momento a nuestra única y absoluta discreción, restringir las transacciones, desembolsos, transferencias a no tomar acción alguna en su Cuenta.  Verdmont podrá en cualquier momento, enmendar, cambiar, revisar, agregar o modificar el presente Contrato, previo aviso escrito a Usted una anticipación no inferior a quince (15) días  El Contrato actualizado será publicado en nuestra Página Web www.verdmont.com.pa.  Usted entiende que este Contrato no podrá ser modificado por usted mediante declaraciones verbales o enmiendas escritas, sin la aceptación por escrito del Asesor Legal de Verdmont.

**6. Ninguna Recomendación y Ningún Aviso.** Usted reconoce que Verdmont no provee asesoría legal ni de impuestos  y usted conviene  según lo considere necesario  en consultar con profesionales calificados en su propia protección antes de utilizar la cuenta con Verdmont o implementar su plan financiero  Mediante el presente Contrato usenta libera de responsabilidad a Verdmont  sus signatarios, directores, empleados, agentes y afiliados de cualquier responsabilidad, financiera o de otra índole o de gastos (incluyendo desembolsos u honorarios legales)  según se incurran  como resultado de cualesquiera perdidas o daños que usted pueda sufrir con respecto a cualesquiera decisiones, instrucciones, transacciones o estrategias usadas en su Cuenta por usted o por su representante debidamente autorizado  como resultado de cualquier contravención suya de cualesquiera Contratos  representaciones  condiciones o garantías contenidas en el presente Contrato

**7. Honorarios, Comisiones y Cuentas Mínimas** Usted acuerda  pagar las comisiones de corretaje, cargos u otros honorarios  según se establezca de tiempo en tiempo en nuestra Tabla de Comisiones  una copia de la cual se le entrega al momento de la firma de este Contrato  Verdmont le notificará por escrito de cualquier cambio en la Tabla de Comisiones y usted después de un plazo de dos (2) meses a partir de la fecha de recibo de la notificación para dar por terminado el presente Contrato, en que se dejen aplicable durante este período las tarifas modificadas. Usted entiende que Verdmont puede solicitar un depósito mínimo para abrir una Cuenta y una cantidad mínima de depósito  Las comisiones son cargadas en base a órdenes.  Las órdenes limitadas ejecutadas durante días múltiples y las órdenes que se modifican después de una ejecución parcial en el mismo día serán tratadas como órdenes separadas para propósitos del cálculo de comisión.

**8. Depósito de Valores Físicos.** Si un valores se depositado en forma física, los subsiguientes retiros pueden estar limitados a la forma física solamente, y puede requerirse que esa posición en el mismo nombre en que fue recibido originalmente. A diferencia de Verdmont, debes valores podrán cargarse con tasas a las tasas de comisiones regulares

**9. Compras y Ventas.** Para ejecutar órdenes de compra  nosotros generalmente requerimos que su Cuenta tenga fondos disponibles iguales a mayores que el precio de compra de los valores  Para ejecutar órdenes de venta, nosotros generalmente requerimos que los valores estén disponibles en cantidad suficiente en su Cuenta  Usted acuerda que cualquier orden de compra o venta aceptada por nosotros bajo la advertencia de de alguna otra forma) en las subientes fondos o certificados negociables  respectivamente  en su Cuenta  estarán sujetos a liquidación en el caso de una orden de compra o "buy-in" en el caso de una venta, con cargo a usted  En caso de que los fondos completos no estén disponibles en su Cuenta  cuando una orden de compra sea ejecutada  usted promete pagar el monto completo mediante transferencia telegráfica o mediante cheque certificado o personal en o antes de la fecha de compensación (settlement) de la compra. En el evento de que una orden de venta sea ejecutada y los valores vendidos no estén en su Cuenta  usted promete entregar los los

---

DA00005

# Verdmont Capital

valores vendidos, on o antes de la fecha de compensación ('settlement')  Si dichos fondos o valores no son recibidos on o antes de la fecha de compensación ('settlement'), podremos liquidar su Cuenta y usted será responsable por cualesquiera pérdidas que resultaren y todos los costos asociados en que incurriere.

10. Ordenes; Ejecuciones.  Usted obtuvo al impartir órdenes claras y precisas para que todas las personas que entenvengan en la ejecución de las órdenes conozcan con exactitud sus efectos.  Al momento de recibir una orden, Verdmont la ejecutará lo posible todos los medios necesarios para hacerla llegar a la entidad encargada de su ejecución con la misma celeridad posible, el mismo día de su recepción, o si no fuera posible, el siguiente día hábil  En caso de que Verdmont no pueda cumplir con esta disposición lo expondrá a usted los razones conocidas por las que no se pudo ejecutar  Verdmont le enviará una confirmación de cada transacción dentro del siguiente día hábil a la realización de la misma  Usted entiende que usted es responsable de revisar cuidadosamente todas las confirmaciones de transacciones y estados de cuenta al respecto  Dichas confirmaciones y estados de cuenta se considerarán aceptados por usted y serán vinculantes a menos que nos notifique por escrito dentro de los diez (10) días siguientes de su transmisión o usted  Usted acuerda que es responsable de monitorear todas las órdenes abiertas  Si usted coloca una orden "válida hasta que sea cancelada" ('good-till-cancelled' o 'GTC'), la orden abierta permanecerá vigente hasta que sea ejecutada, sea cancelada por nosotros por una acción corporativa, reorganización o acción operativa o porque usted decida cancelarla.

11. Reportes Corregidos y Atrasados.  Nosotros podemos recibir reportes atrasados de varias plazas de mercado en relación con el estatus de las órdenes  Por consiguiente  usted podría en este caso recibir reportes atrasados  Usted podrá también recibir reportes corregidos en reporte anterior  indicando errores en la ejecución de precios  Usted reconoce que arreglará el precio al cual su orden fue efectivamente ejecutada en el mercado  aún si el reporte está atrasado, o un reporte corregido o el término de ese reporte.

12. Pago de Precios o Requerimientos.  Usted está responsable frente a Verdmont por el pago de todas las transacciones, saldos adeudados, llamado de margen ('margin calls') u otra obligación ('Obligaciones') adeudadas bajo su Cuenta.  Usted acuerda que todas las órdenes para la compra o venta de valores para su Cuenta serán procesadas y/o ejecutadas con el entendimiento que se tiene la intención de una compra o venta real y que es su intención y obligación hacer cada pago por cualquier compra o entrega de candidatos para cubrir las ventas en o antes de la fecha de compensación ('settlement date'), ya sea que usted o no reciba una confirmación de transacción.  Usted acuerda pagar cualquier saldo adeudado (p.e., un saldo en la Cuenta que se le debe a Verdmont) y a pagar a Verdmont cualquier deuda en su Cuenta, a requerimiento  Los pagos (en efectivo, cheques viajeros, cheques de terceras personas o cheques personales no son generalmente aceptados a valores presentados en su Cuenta que cualesquiera gravámenes)  Verdmont podrá cargar intereses sobre los saldos adeudados en cualquier Cuenta de acuerdo con las intereses vigentes en nuestra tasa de interés para saldos adeudados.

13. Consentimiento para Monitorear y Grabar.  Usted entiende que nosotros podremos, a nuestra única y absoluta discreción  monitorear o grabar conversaciones telefónicas con usted  y usted da su consentimiento a dicho monitoreo y grabación  Nosotros no estamos obligados a grabar todas las conversaciones telefónicas y no garantizamos que la grabación de sus conversación telefónica en particular será retenida o será capaz de ser recuperada.

14. Comunicaciones Electrónicas y el 'E-mails'.  Todos los correos electrónicos enviados hacia y/o para nuestra atención estarán sujetos a monitoreo, y serán revisados por o dirigidos a otra persona que no sea su destinatario propuesto  Usted reconoce que pueden haber retrasos en los correos electrónicos que se le manden a su destinatario propuesto  Usted acuerda liberarnos de responsabilidad por cualquier retraso en los correos electrónicos independientemente de que la demora haya sido causada por nosotros o por un tercero  Los correos electrónicos enviados a través de la dirección de Verdmont pueden ser retenidos por nuestro sistema corporativo de correo electrónico  Usted conviene en que Verdmont no sería responsable por cualesquiera acciones tomadas o cualesquiera omisiones en actuar como resultado de cualquier mensaje de correo electrónico que usted nos envíe  Las comunicaciones electrónicas con Verdmont vía nuestra Página Web disponible mediante o servicio de teclado también estarán sujetas a monitoreo, revisadas por o dirigidas a otras personas que no sean el destinatario, y dichas comunicaciones podrán ser retenidas por Verdmont.

15. Quejas.  Las quejas por escrito pueden ser enviadas a Verdmont Capital Atención: Departamento de Cumplimiento, Edificio Hi Tech Plaza, Calle 53, Obarrio, Panamá City  Repúbica of Panamá o por correo electrónico, compliance@verdmont.com.pa.

16. Ley Aplicable, Jurisdicción y Arbitraje.  Este Contrato estará regido por las leyes de la República de Panamá  Cualesquiera disputas que surgan con respecto, a o en conexión con este Contrato, será finalmente decidido en la República de Panamá  Las disputas serán arbitradas por un árbitro y sea del Centro de Conciliación y Arbitraje de Panamá o del Centro de Soluciones de Conflictos, decidido y aprobado por Verdmont Capital y el Cliente

17. Pérdidas Debido a Eventos Extraordinarios; Límite de Responsabilidad.  Nosotros no seremos responsables por las pérdidas causadas directa o indirectamente por guerras, huelgas  desastres naturales  actos terroristas  restricciones gubernamentales  reglas de mercado o de bolsa, suspensiones de transacciones, fallas en las líneas de comunicación o de computadoras, o retrasos en la transmisión de órdenes debido a colapsos o fallas de los centros de mercados o medios de transmisión u otras condiciones que estén fuera de nuestro control razonable

18. Avisos a Usted.  Verdmont proveerá a menos inmediatamente a sus clientes, estados de cuentas vía dos métodos: por correo regular o por internet  Los clientes convienen en pagar ciertos honorarios si se deciden por el correo regular  Verdmont procurará que la información contenida en los Estados de Cuenta estará exacta y completa, sin embargo, en veces ocurren errores  Por lo tanto  Verdmont quedará relevada de responsabilidad por cualquier garantía de cualquier tipo, ya sea expresa o implícita, sobre cualquier asunto en cualquier forma relacionado a dicha información  En particular, el precio real al cual una orden sea ejecutada será vinculante no obstante al hecho de que se le entregue un reporte erróneo  Una orden que fue ejecutada, pero por error reportada como no ejecutada, será vinculante  Verdmont hará todo esfuerzo por razonable frente a su Cuenta en concepto de precios transacciones y correcciones, conforme sea necesario y apropiado.  El Cliente acuerda que es su total responsabilidad aclarar y revisar los estados de transacciones regularmente

19. Renuncia.  Cualquier falta de nuestra parte de insistir en cualquier momento en el cumplimiento con este Contrato o con cualquiera de sus términos no constituirá o se considerará una renuncia por parte nuestra de cualquiera de nuestros derechos

20. Terminación.  Usted podrá terminar este Contrato o su Cuenta en cualquier momento mediante notificación escrita a nosotros  después de haber pagado cualesquiera Obligaciones que nos deba  Usted seguirá siendo responsable por todas las Obligaciones incurridas o autorizadas por usted  incluyendo  sin limitación  cualesquiera transacciones  deudas o intereses según lo convenido bajo este Contrato, independientemente si las hubiese sido iniciado antes o después de la terminación de este Contrato  Nosotros podremos terminar este Contrato o su Cuenta en cualquier momento, sin aviso previo por cualquier motivo a nuestra entera y absoluta discreción  Los términos y condiciones de este Contrato sobrevivirán la terminación de su Cuenta y continuarán vigentes frente a cualesquiera asuntos disputados o pendientes que surgan de nuestra relación.

21. Seguridad y Confidencialidad.  Usted reconoce que usted es el dueño exclusivo y responsable absoluto, mancomunado y solidariamente, si fuese aplicable  la confidencialidad y protección de su número de Cuenta y clave que le permite el acceso a nuestro sistema 'online'  Usted conviene además que será totalmente responsable por todas las actividades incluyendo las transacciones de conteja que surgan del uso de su número de Cuenta y clave  Usted acuerda indemnizar y mantener libre de responsabilidad a Verdmont si cualquier persona, usando su información confidencial, tenga acceso a nuestros sistemas con transacciones que surgan  Usted inmediatamente nos informará por escrito o por correo electrónico de cualquier pérdida robo o uso no autorizado de su número de Cuenta y/o clave

22. Uso de las Páginas Web de Verdmont.  www.verdmont.com.pa le provee información y contenido  El contenido incluye posiciones de cuentas, actividad de cuentas, saldos  status de transacciones, estados de cuentas  confirmaciones y otras informaciones relacionadas con la Cuenta.  Usted acuerda a todo momento referirse a las confirmaciones de transacciones y estados de cuenta como los registros oficiales de su Cuenta

*MARGIN ACCOUNTS*

Como contraprestación por la apertura de Verdmont de una o más Cuentas de Margen ('Margin accounts')  a su nombre  usted está de acuerdo  con las anteriores y las siguientes disposiciones

23. 'Margin Loans'.  Nosotros podremos, a nuestra total y absoluta discreción, otorgarle préstamos con el propósito de comprar, negociar o hacer transacciones de valores, opciones u otros productos 'Préstamos a Margen' ('Margin Loans')  Los Préstamos a Margen ('Margin Loans') serán efectuados en una Cuenta de Margen ('Margin Account').  Usted entiende que será absolutamente responsable de determinar si el margen es el apropiado para usted en base a sus recursos financieros, objetivos y otras circunstancias relevantes  Usted entiende y acuerda que Verdmont no tomará esta determinación por usted.  Sujeto a los requerimientos regulatorios, el monto mínimo y máximo del cualquier Préstamo a Margen ('Margin Loan') en particular podrá ser establecido por nosotros a nuestra discreción, independientemente del monto del Colateral entregado a nosotros y Verdmont podrá cambiar dichos montos mínimo y máximo de tiempo en tiempo.

24. Transacciones de 'Risk of Margin'.  Usted entiende que las transacciones a margen ('on margin') (incluyendo efectuar ventas en corto) involucran un alto grado de riesgo y pueden resultar en una pérdida de fondos mayor que el monto que usted depositó en su Cuenta.

25. Requisitos para mantener un Margen Suficiente.  Las transacciones de margen están sujetas en todo momento a los requisitos de margen inicial y de margen de mantenimiento ('Requisitos de Margen') establecidos por nosotros  Usted comprenderá su Cuenta para asegurarse de que en todo momento tenga el saldo suficiente  que cumpla con los Requisitos de Margen aplicables  De tiempo en tiempo, y a nuestra total y absoluta discreción, nosotros podremos modificar dichos Requisitos de Margen para posiciones abiertas y nuevas  El margen que nosotros podremos requerir podrá exceder el margen requerido por cualquier asociado o bolsa de valores  Nosotros podremos rechazar cualquier orden si usted no tiene suficientes saldos en su cuenta para cumplir con el Requisito de Margen y podremos retrasar el procesamiento de cualquier orden mientras determinamos el status del margen correcto de su Cuenta  Usted mantendrá en todo momento, un aviso o solicitud de parte nuestra  saldos suficientes en su Cuenta para que continuamente cumpla con los Requisitos de Margen

26. 'Margin Calls'.  Los Llamados de Margen ('Margin Calls') pueden ser emitidos por escrito  telefónicamente  electrónicamente o por otros medios de comunicación  En algunas circunstancias  tales como condiciones volátiles de mercados, no podremos emitir una Llamada de Margen ('margin call') antes de liquidar inmediatamente cualquier o todas de títulos de interés variable ('equity') en su Cuenta bajo por debajo del 35 por ciento.  Usted será responsable de activar inmediatamente frente a cualesquiera llamadas de mantenimiento ('maintenance calls')  siendo de 'buy-in' o 'sell-out' emitidos oralmente o por escrito  Su omisión de depositar rápidamente dinero o valores adicionales en respuesta a una llamada de margen ('margin call')  independientemente del nivel de títulos de renta variable en su Cuenta, podrá resultar en la liquidación para nuestra total y absoluta discreción  A pesar de que nosotros generalmente intentaríamos notificarle de las transacciones de margen ('margin call') y de la oportunidad de depositar títulos de interés variable ('equity') adicionales para asegurar su Cuenta  nos reservamos el derecho de instituir una liquidación discrecional de cualquiera y todos los valores sin previo aviso y sin darle la oportunidad de depositar títulos de interés variable ('equity') adicionales  Esta total y absoluta discreción aplica independientemente de cualquier razón histórica de venta de entrega vertical o escrita o de cualesquiera representaciones verbales o escritas por Verdmont que indiquen un monto de dólares diferente, tiempo de liquidación  o término tiempo adicional basado en liquidaciones  Esta total y absoluta discreción de liquidar inmediatamente aplica  independientemente de las diferencias en las zonas de horarios  interpretación de idiomas, o retrasos en el envío de fondos  e incluye la total y absoluta discreción de escoger cuáles posiciones liquidar y en qué orden  Es su responsabilidad monitorear y liquidar posiciones para minimizar sus pérdidas antes de que nos veamos obligados a ejecutar por cuenta suya para proteger nuestros intereses como acreedores  Nos reservamos el derecho, a nuestra total y absoluta discreción  de cerrar cualesquiera posiciones en cualquier Cuenta que represente un valor de liquidación negativo

Edificio Hi-Tech Plaza, Penthouse • Calle 53, Obarrio • Ciudad de Panamá, República de Panamá
T: +507 301 9000 or +800 VERDMONT • F: +507 301 9001 • www.verdmont.com.pa

7

DA00006

# Verdmont Capital

**27. Cargos de intereses en Balances de Débito.** Usted acuerda pagar intereses sobre todos los saldos de débito en cualquier Cuenta. El interés sobre su saldo de débito promedio neto será calculado usando una tasa base determinada por nosotros y puede ser cambiada en cualquier momento a nuestra discreción.

**28. Ventas en Corto.** Usted se obliga a notificarnos antes de poner una orden de venta si es una venta en corto (la venta de un valor que no le pertenece). Usted conviene que todas las transacciones de ventas en corto serán ejecutadas en una Cuenta Margen. Usted entiende que para facilitar una venta en corto deberemos pedir prestado los valores que usted venderá en corto. Ventas en corto pueden estar sujetas a un buy-in de la fecha de compensación ("settlement date") y en lo sucesivo. Verdmont no garantiza un tiempo mínimo para acortar una posición. Si Verdmont fuese incapaz de pedir prestado o volver a pedir prestado un valor que usted ha vendido en corto o por cualquiera otra razón que nosotros consideremos prudente podremos a nuestra discreción con o sin aviso cubrir su posición comprando la acción al precio de mercado vigente y usted acuerda ser responsable frente a Verdmont por cualquier saldo adeudado. Las Cuentas Margen serán marcadas ("market") al mercado diariamente y cualquier aumento en el valor de una posición en corto resultará en una pérdida no realizada que será cargada a su saldo adeudado y cualquier intereses como se desente arriba. De igual manera, una baja en valor disminuirá su saldo adeudado. Si el prestamista exige ("calls in") sus valores prestados por cualquier razón tal como una oferta pública y usted no puede cubrir a tiempo para hacer la entrega, nosotros podemos hacerlo responsable por cualquier pérdida. Usted acuerda que si (a) las condiciones del mercado varían, (b) no estamos en capacidad de prestarle valores, (c) el prestamista reclama sus valores podremos intentar de volver a pedir prestado los valores, pero usted entiende que podremos necesitar cubrir la posición en corto en la Cuenta en el mercado abierto al precio y condiciones de mercado entonces vigente. Usted entiende que será responsable por cualquier pérdida que resultare o costos asociados incurridos por nosotros en relación con las transacciones en corto. Usted es responsable por cualesquiera dividendos pagados sobre valores que usted ha vendido en corto.

**29. Préstamos de Valores.** Estamos autorizados para prestarnos a nosotros mismos, como principales o de otra forma, a otros, cualesquiera valores mantenidos por nosotros en su Cuenta y que no tendremos obligación de retener bajo nuestra posesión y control una cantidad igual de dichos valores. En relación con dichos préstamos, podemos recibir y retener ciertos beneficios (incluyendo intereses sobre colaterales constituidos para dichos préstamos) a los cuales usted no tendrá derecho. Bajo ciertas circunstancias, dichos préstamos podrían limitar total o en parte su habilidad para ejercer el derecho a voto de los valores prestados.

**30. Compromiso de Valores, Opciones y Otras Propiedades.** Todos los valores y otras propiedades ahora o de aquí en adelante retenidos mantenidos o llevados por nosotros en o para su Cuenta pueden, de tiempo en tiempo sin aviso a usted, ser pignorados, pignorados nuevamente hipotecados o hipotecados nuevamente por nosotros ya sea separadamente o conjuntamente con otros valores y otras propiedades. Los valores recibidos pueden ser mayores que el monto que usted nos debe. Cualesquiera pérdidas, ganancias o compensaciones que resultaren de estas actividades no acrecentarán su Cuenta o contraían.

**31. Divulgación de Continuidad de Negocio.** Verdmont tiene organizado un plan de continuidad del negocio que será activado en caso de una interrupción importante del negocio, tales como desastre natural, cortes de energía u otros eventos. Nuestro plan tiene la intención de permitirnos continuar las operaciones de negocios críticas durante estos tipos de interrupciones. En caso de una interrupción significativa del negocio se ha planificado tener acceso a las Cuentas para que estén disponibles en cuestión de minutos y todas las operaciones de negocios críticas serán reasumidas dentro de uno a dos días.

DA00007

*Updated KYC.*

# Verdmont Capital

## KYC

It is Verdmont Capital's policy to know our clients. A copy of this form must be completed for each beneficial owner and signatory of a Verdmont Capital account. This includes individuals named on Powers of Attorney and Trading Authorizations. The information requested is required under Panama's Anti-Money Laundering regulations. Please complete this form and provide the below listed documentation for each relevant individual. / *Es política de Verdmont Capital conocer a su cliente. Una copia de este formulario deberá ser completada por cada propietario efectivo y firmantes de una cuenta de Verdmont Capital. Esto incluye a individuos que actúan como Apoderados Generales y corredores autorizados. La información es requerida bajo las regulaciones contra el Lavado de Dinero de Panamá. Por favor complete este formulario y proporcione la documentación listada mas adelante para cada persona relevante.*

- ☐ Certified Copy of photo page of passport or other official identification document*
  *Copia Certificada del pasaporte o cedula u otro documento oficial de identidad de origen*
- ☐ Copy of secondary photo ID (eg. Driver's License or government ID)
  *Copia de una segunda identificación (Licencia de Conducir, Carne del Seguro Social)*
- ☐ One Bank reference letter and one Commercial reference letter or two of either**
  *Una carta de referencia bancaria y una carta de referencia comercial o dos referencias comerciales o dos referencias bancarias**

If reference letters or secondary photo ID does not confirm residential address, please also provide a utility bill, phone bill or other acceptable verification of address. / *Si las cartas de referencia o segunda identificación no confirman la direccion residencial por favor proporcione un recibo de servicios, teléfono u otra referencia aceptada de dirección*

* Passports or personal ID or any other identification document not presented to Verdmont staff in person in Panama are required to be notarized or stamped by an Apostille / *Los pasaportes o cédulas u otro documento de identidad de origen no presentados al personal de Verdmont en persona en Panamá requerirán que sean notarados o apostillados*

** Reference letters must be originals and on letterhead. Copies of reference letters must be notarized or stamped by an Apostille. Reference letters should attest to the subject's good character and must confirm at least 2 years of satisfactory business. Letters must be signed and include a contact name and number. Letters may be addressed "To Whom it May Concern". Verdmont may at its discretion verify references on an anonymous basis. / *Las cartas de referencia deben ser en original y en papel membreteado. Copia de cartas fo referencias deben ser notaradas o apostilladas. Las cartas de referencias deben atestiguar el carácter del sujeto y deben confirmar por lo menos 2 anos de negocios con referencias satisfacción. Las cartas deben estar firmadas e incluir una persona de contacto y un numero de telefono. Las cartas deben ir dirigidas "A quien concierne" Verdmont puede a su acreción verificar las referencias adicionalmente.*

| Full Name / *Nombre Completo* | | | Nationality or Citizenship / *Nacionalidad* | |
|---|---|---|---|---|
| Clifford John Wilkins | | | British | |
| Residential Address / *Direccion Residencial* | | | | |
| 10 Kestral Close | | | | |
| City / *Ciudad* | State or Province / *Estado o Provincia* | Country / *Pais* | Postal Code / *Apartado Postal* | |
| Ewshot | Surrey | United Kingdom | GU10 5TW | |
| Home Phone / *Telefono Residencial* | Mobile Phone / *Celular* | Fax | Email / *correo electronico* | |
| +44 (1252) 851297 | +44 (7714) 105256 | None | wilkins@hecapital.com | |
| Date of Birth / *Fecha de Nacimiento* | Marital Status / *Estado Civil* | | Passport or ID No / *Cedula o Pasaporte* | |
| 26/05/1945 | Married | | 099141112 | |
| Employment Information / *Información Laboral* | | | | |
| College Degree / *Profesión* | Current Occupation or Position / *Ocupacion o Posicion actual* | | Length of Employment / *Años de labora en la empresa* | |
| N/A | Self Employed | | 12 Years | |
| Employer's Name (if self employed describe the nature of your business) / *Nombre de la empresa (si es independiente describa el tipo de negocio)* | | | | |
| Financial Consultant | | | | |
| Employer's Address / *Direccion de la empresa* | | | | |
| 10 Kestral Close | | | | |
| City / *Ciudad* | State or Province / *Estado/Provincia* | Country / *Pais* | Postal Code / *Apartado Postal* | |
| Ewshot | Surrey | United Kingdom | | |
| Business Phone / *Telefono de Oficina* | | Business Fax / *Fax de Oficina* | | |
| +44 (1252) 851297 | | | | |

# Verdmont Capital

Are you a director, officer or a controlling shareholder of a public company?
*Es usted director, ejecutivo o accionista mayoritario de una compañía publica?*

☒ No          ☐ Yes / Si    if yes, please attach details / *En caso afirmativo, por favor adjuntar detalles.*

I hereby acknowledge that any regulatory filing requirements are solely my responsibility and I am not relying on Verdmont Capital for any assistance or advice in regards to regulatory filings I may be required to undertake in a foreign jurisdiction. / *Yo certifico que cualquier documento reglamentario requerido es bajo mi responsabilidad. No dependo de Verdmont Capital para cualquier asistencia o asesoría con respecto a documentos reglamentarios que puedan requerirse para llevar a cabo en una jurisdicción extranjera*

I hereby acknowledge that any tax obligations I may have are solely my responsibility, that I have sought professional tax counsel and that I am not relying on Verdmont Capital for taxation advice. / *Por este medio yo reconozco que, cuando sea necesario, yo he buscado asesoría fiscal profesional y que cualesquiera obligaciones fiscales que yo pudiera tener son solamente mi responsabilidad. Yo no estoy dependiendo de Verdmont Capital para consejo o asistencia fiscal.*

Have you been politically exposed? (If the response is affirmative please complete the PEP form). / *Ha estado políticamente expuesto? (Si la respuesta es afirmativa por favor completar el formulario PEP).*

☐ Yes / Si        ☒ No

I certify that the information provided by me in this document is true and correct, and I agree to advise Verdmont Capital, SA immediately of any changes to this information. / *Certifico que la información plasmada por mí en este documento es veraz y correcta, y me comprometo a informar a Verdmont Capital SA inmediatamente de cualquier cambio en esta información*

Signed / *Firma*          Date / *Fecha* 13/04/2012

Edificio Hi-Tech Plaza, Penthouse-Calle 53. Obarrio-Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T +507 301 9000 or +800 VERDMONT- (F 507 301 9001- www.verdmont.com.pa

2

DA00009

# Verdmont Capital

*Old KYC.*

**KYC**

---

It is Verdmont Capital's policy to know our clients. A copy of this form must be completed for each beneficial owner and signatory of a Verdmont Capital account, including individuals named on Powers of Attorney and Trading Authorizations. The information requested is required under Panama's Anti-Money Laundering regulations. Please complete this form and provide the below listed documentation for each relevant individual. / *La política de Conozca a su Cliente de Verdmont Capital. Una copia de este formulario deberá ser completado por cada beneficiario y cada firmante de una cuenta de Verdmont Capital. Esto incluye a individuos que actúen como Apoderados General y Trading autorizados. La información es requerida bajo las regulaciones contra el Lavado de Dinero de Panamá. Por favor complete este formulario y proporcione la documentación listada más adelante para cada persona relevante.*

- ☒ Copy of passport *
  *Copia de Pasaporte*
- ☒ Copy of secondary photo ID (eg. Driver's License or government ID) *
  *Copia de una segunda identificación (Licencia de Conducir, Carnet del Seguro Social)*
- ☒ Bank reference letter **
  *Referencias Bancarias**
- ☒ Personal / Professional reference letter **
  *Referencias personales y profesionales**

\* Passports and IDs not presented to Verdmont staff in person are required to be notarized or stamped by an Apostille / *Los pasaportes e identificaciones no presentadas al personal de Verdmont en persona requerirán que sean notarizadas y apostilladas*

\*\* Reference letters must be originals and on letterhead. Copies of reference letters must be notarized or stamped by an Apostille. Reference letters should attest to the subject's good character and must confirm at least 2 years of satisfactory business and/or personal dealings. Letters must be signed and include a contact name and number. Letters may be addressed "To Whom it May Concern". Verdmont may at its discretion verify references on an anonymous basis. / *Las cartas de referencia deben ser en original y en papel membretado. Copia de cartas de referencias deben ser notarizadas o apostilladas. Las cartas de referencias deben atestiguar el carácter del sujeto y deben confirmar por lo menos 2 años de negocios y referencias personales satisfactorias. Las cartas deben estar firmadas e incluir una persona de contacto y un número de teléfono. Las cartas deben ir dirigidas "A quien concierne". Verdmont puede a su discreción verificar las referencias anónimamente.*

If reference does not confirm residential address, please also provide a utility bill, phone bill or other acceptable verification of address. / *Si las referencias no confirman la dirección residencial por favor proporcione un recibo de servicios, teléfono u otra referencia aceptada de dirección*

| Full Name / Nombre Completo | | | | Nationality or Citizenship / Nacionalidad |
|---|---|---|---|---|
| CLIFFORD JOHN WILKINS | | | | BRITISH |
| Residential Address / Dirección Residencial | | | | |
| 10 KESTRAL CLOSE, EWSHOT | | | | |
| City / Ciudad | State or Province / Estado o Provincia | | Country | Postal Code |
| FARNHAM | SURREY | | UK | GU10 5TW |
| Home Phone / Teléfono Residencial | Mobile Phone / Celular | Fax | | Email |
| +44 (125) 285-1297 | +44 (771) 410-5256 | don't have one | | CWILKINS@STEALTHPOST.COM |
| Date of Birth / Fecha de Nacimiento | Marital Status / Estado Civil | | Passport or ID No / Cédula or Pasaporte | |
| 25 MAY 1945 | MARRIED | | 093042558 | |
| **Employment Information / Información Laboral** | | | | |
| Occupation or Position / Ocupación o Posición | | Length of Employment / Años de Laborar en la empresa | | |
| SELF-EMPLOYED | | | | |
| Employer's Name (if self employed describe the nature of your business) / Nombre de la empresa (si es independiente describe el tipo de negocio) | | | | |
| INVESTMENT BANKING | | | | |
| Employer's Address / Dirección de la empresa | | | | |
| SAME AS ABOVE | | | | |
| City / Ciudad | State or Province / Estado/Provincia | | Country / País | Postal Code / Apartado Postal |
| | | | | |
| Business Phone / Teléfono de oficina | | Business Fax / Fax de la oficina | | |
| | | | | |

Edificio Hi-Tech Plaza, Penthouse · Calle 53, Obarrio · Ciudad de Panamá, República de Panamá
T: +507 301 9000 or +800 VERDMONT · F; +507 301 9001 · www.verdmont.com.pa

1

DA000010

# Verdmont Capital

Are you a director, officer or a controlling share holder of a public company?   ☒ No      ☐ Yes / Si
*Es usted director, ejecutivo o accionista mayoritario de una compañia pública?*

If yes, I hereby acknowledge that any filing requirements are solely my responsibility and I am not relying on Verdmont Capital for any assistance or advice in regards to regulatory filings I may be required to undertake in a foreign jurisdiction. / *Si la respuesta es afirmativa, Yo certifico que cualquier documento requerido es bajo mi responsabilidad. No dependo de Verdmont Capital para cualquier asistencia o asesoría con respecto a documentos regulatorios que puedan requerirse para llevar a cabo en una jurisdicción extranjera.*

Initial / *Inicial*

I hereby acknowledge that any tax obligations I may have are solely my responsibility, that I have sought professional tax counsel and that I am not relying on Verdmont Capital for taxation advice. / *Por este medio yo reconozco que, cuando sea necesario, yo he buscado asesoría fiscal profesional y que cualesquiera obligaciones fiscales que yo pudiera tener son solamente mi responsabilidad. Yo no estoy dependiendo de Verdmont Capital para consejo o asistencia fiscal.*

Initial / *Inicial*

I certify that the information provided by me in this document is true and correct, and I agree to advise Verdmont Capital, SA immediately of any changes to this information. / *Certifico que la información plasmada por mí en este documento es veraz y correcta, y me comprometo a informar a Verdmont Capital SA inmediatamente de cualquier cambio en esta información.*

Signed / *Firma* _____      Date / *Fecha* ___24 OCTOBER 2007___

DA000011





*Old passport.*

Oct. 19, 07

LIC. GUIDO LUIS PERC... ...C M.
Notario Público
SOSUA, FTO. PTA., R.D.

DA000013



I hereby certify that this is a true copy of the original.

Lic. Guido Luis Perdomo Montalvo
Notary Public & Lawyer
Calle Pedro Clisante, No 73, 2do Planta
Plaza Perdomo, El Batey, Sosúa, Dominican Republic.
Tel:+1 (809) 571-1950

*Rec. original   Lic. copy*
*CP.                May 3, 2012.*
*May 9, 2012.*
*Updated passport.*

DA000014



DA000015



DA000016



## Lic. Guido Luis Perdomo Montalvo
### Abogado — Notario Público

Calle Pedro Clisante No. 73, 2<sup>da</sup> Planta
Plaza Perdomo, El Batey, Sosúa, Rep. Dom.
Tel.: (809) 571-1950 y 571- 3274
Fax: (809) 571-2766.
guidoperdomo@yahoo.com

U.S. Mailing Address
EPS – C 165
P.O. Box 02-5553
Miami, Florida, 33102

Sosúa, Dominican Republic.

April 30, 2012

To whom it may concern:

I am familiar with Mr. Clifford John Wilkins, passport # 099141112, who has been known to me on a professional basis for several years, and can confirm that he has always conducted himself in a professional, diligent, conscientious and trustworthy manner.

I can also confirm that Mr. Wilkins currently resides at:

10 Kestrel Close
Ewshot
Farnham, Surrey,
United Kingdom.

Yours sincerely,

Lic. Guido Luis Perdomo Montalvo
Notary Public & Lawyer

DA000018



Aracena, Batista & Gonell
Consultores Juridicos

Sosúa, Dominican Republic

April 23, 2012

To whom it may concern:

I have known Mr. Clifford John Wilkins, passport # 099141112, on both a professional a
personal basis for several years, and would like to confirm his integrity and professional
nature.

I can also confirm that Mr. Wilkins currently resides at:

10 Kestrel Close
Ewshot.
Farnham, Surrey,
United Kingdom.

Yours sincerely,

Lic. María del Carmen Aracena Gómez
Lawyer

Pedro Clisante Street No. 97 El Batey, Sosua, Pto.Pla. Dom. Rep.
Tels. 809-571-4564, 809-988-8590 y 809-851-4688

DA000019



**John Andrews** A.F.A M.I.A.B.
*Accountancy & Bookkeeping Services*

To whom it may concern

Re:   Clifford John Wilkins

I have known Mr. Wilkins for 45 years and during all this time I have found him to be
respectable and trustworthy.

I would commend him to you as a person who would not enter into any obligations or
business commitments that he could not see his way to fulfil.

Yours faithfully

John Andrews A.F.A. M.I.A.B.

Oct 19,07

14 Hackwood ● Robertsbridge ● East Sussex ● TN32 5ER
Tel: 01580 883800 ● Mobile: 07860 628597 ● Fax: 01580 883801
E-mail: johna@enterprise.net

**✕✕ RBS**
PRIVATE BANKING

PO Box 33266
49 Charing Cross
Admiralty Arch
London SW1A 2BZ
Telephone:
Facsimile: 0207 310 8080
www.rbs.co.uk

<u>PRIVATE & CONFIDENTIAL</u>

Mr C Wilkins
10 Kestrel Close
Ewshott
Farnham
Surrey
GU10 5TW

9th March 2007



Dear Mr Wilkins,

I am pleased to confirm that you are a respectable and trustworthy individual considered good for the purpose of this enquiry. You have been known to the Royal Bank of Scotland since September 2002 and in that time have maintained your accounts in a satisfactory manner.

Yours sincerely

Stuart Latter
Private Banking Manager

Oct. 19, 07

The Royal Bank of Scotland plc.
Registered Office:
36 St Andrew Square,
Edinburgh EH2 2YB.
Registered in Scotland No 90312.
Authorised and regulated by the
Financial Services Authority.

# Verdmont Capital

**KYC**

It is Verdmont Capital's policy to know our clients. A copy of this form must be completed for each beneficial owner and signatory of a Verdmont Capital account, including individuals named on Powers of Attorney and Trading Authorizations. The information requested is required under Panama's Anti-Money Laundering regulations. Please complete this form and provide the below listed documentation for each relevant individual. / La política de Conozca a su Cliente de Verdmont Capital. Una copia de este formulario deberá ser completado por cada beneficiario y cada firmante de una cuenta de Verdmont Capital. Esto incluye a individuos que actúan como Apoderados General y Trading autorizados. La información es requerida bajo las regulaciones contra el Lavado de Dinero de Panamá Por favor complete este formulario y proporcione la documentación listada más adelante para cada persona relevante.

- ☒ Copy of passport *
  *Copia de Pasaporte**
- ☒ Copy of secondary photo ID (eg. Driver's License or government ID) *
  *Copia de una segunda identificación (Licencia de Conducir, Carnet del Seguro Social)**
- ☒ Bank reference letter **
  *Referencias Bancarias***
- ☒ Personal / Professional reference letter **
  *Referencias personales y profesionales***

\* Passports and IDs not presented to Verdmont staff in person are required to be notarized or stamped by an Apostille. / Los pasaportes e identificaciones no presentadas al personal de Verdmont en persona requerirán que sean notarizadas y apostilladas

\*\* Reference letters must be originals and on letterhead. Copies of reference letters must be notarized or stamped by an Apostille. Reference letters should attest to the subject's good character and must confirm at least 2 years of satisfactory business and/or personal dealings. Letters must be signed and include a contact name and number. Letters may be addressed "To Whom it May Concern". Verdmont may at its discretion verify references on an anonymous basis. / Las cartas de referencia deben ser en original y en papel membretado. Copia de cartas de referencias deben ser notarizadas o apostilladas. Las cartas de referencias deben atestiguar el carácter del sujeto y deben confirmar por lo menos 2 años de negocios y referencias personales satisfactorias. Las cartas deben estar firmadas e incluir una persona de contacto y un número de teléfono. Las cartas deben ir dirigidas 'A quien concierne'. Verdmont puede a su discreción verificar las referencias anónimamente.

If reference does not confirm residential address, please also provide a utility bill, phone bill or other acceptable verification of address. / Si las referencias no confirman la dirección residencial por favor proporcione un recibo de servicios, teléfono u otra referencia aceptada de dirección

| Full Name / Nombre Completo | | | Nationality or Citizenship / Nacionalidad |
|---|---|---|---|
| VIRGILIO SANTANA RIPOLL | | | DOMINICAN REPUBLIC |
| Residential Address / Dirección Residencial | | | |
| CALLE #7, CASA #25, TORRE ALTA IV | | | |
| City / Ciudad | State or Province / Estado o Provincia | Country | Postal Code |
| PUERTO PLATA | — | DOMINICAN REPUBLIC | don't have one |
| Home Phone / Teléfono Residencial | Mobile Phone / Celular | Fax | Email |
| (809) 223-2353 | (809) 223-2353 | don't have one | VSANTANA@STEALTHPOLIT.COM |
| Date of Birth / Fecha de Nacimiento | Marital Status / Estado Civil | | Passport or ID No / Cédula or Pasaporte |
| 21 AUGUST 1975 | MARRIED | | 249944 |
| **Employment Information / Información Laboral** | | | |
| Occupation or Position / Ocupación o Posición | | Length of Employment / Años de Laborar en la empresa | |
| SELF-EMPLOYED | | | |
| Employer's Name (if self employed describe the nature of your business) / Nombre de la empresa (si es independiente describa el tipo de negocio) | | | |
| ACCOUNTING | | | |
| Employer's Address / Dirección de la empresa | | | |
| SAME AS ABOVE | | | |
| City / Ciudad | State or Province / Estado/Provincia | Country / País | Postal Code / Apartado Postal |
| | | | |
| Business Phone / Teléfono de oficina | | Business Fax / Fax de la oficina | |
| | | | |

Edificio Hi-Tech Plaza, Penthouse·Calle 53, Obarrio·Ciudad de Panama, Republica de Panama
T: +507 301 9000 or +800 VERDMONT·F: +507 301 9001·www.verdmont.com.pa

1

DA000022

# Verdmont Capital

Are you a director, officer or a controlling share holder of a public company?  ☒ No    ☐ Yes / Sí
*Es usted director, ejecutivo o accionista mayoritario de una compañía pública?*

If yes, I hereby acknowledge that any filing requirements are solely my responsibility and I am not relying on Verdmont Capital for any assistance or advice in regards to regulatory filings I may be required to undertake in a foreign jurisdiction. / *Si la respuesta es afirmativa, Yo certifico que cualquier documento requerido es bajo mi responsabilidad. No depende de Verdmont Capital para cualquier asistencia o asesoría con respecto a documentos regulatorios que puedan requerirse para llevar a cabo en una jurisdicción extranjera.*

Initial / *Inicial*

I hereby aknowledge that any tax obligations I may have are solely my responsibility, that I have sought professional tax counsel and that I am not relying on Verdmont Capital for taxation advice. / *Por este medio yo reconozco que, cuando sea necesario, yo he buscado asesoría fiscal profesional y que cualesquiera obligaciones fiscales que yo pudiera tener son solamente mi responsabilidad. Yo no estoy dependiendo de Verdmont Capital para consejo o asistencia fiscal.*

Initial / *Inicial*

I certify that the information provided by me in this document is true and correct, and I agree to advise Verdmont Capital, SA immediately of any changes to this information. / *Certifico que la información plasmada por mí en este documento es veraz y correcta, y me comprometo a informar a Verdmont Capital SA inmediatamente de cualquier cambio en esta información.*

Signed / *Firma* _____    Date / *Fecha* ___25 OCTOBER 2007___

Edificio Hi-Tech Plaza, Penthouse·Calle 53, Obarrio·Ciudad de Panama, Republica de Panama
T: +507 301 0000 or +800 VERDMONT·F: +507 301 8001·www.verdmont.com.pa

2

DA000023


# Verdmont Capital

# KYC

It is Verdmont Capital's policy to know our clients. A copy of this form must be completed for each beneficial owner and signatory of a Verdmont Capital account. This includes individuals named on Powers of Attorney and Trading Authorizations. The information requested is required under Panama's Anti-Money Laundering regulations. Please complete this form and provide the below listed documentation for each relevant individual. / *Es política de Verdmont Capital conocer a su cliente. Una copia de este formulario deberá ser completada por cada propietario efectivo y firmantes de una cuenta de Verdmont Capital. Esto incluye a individuos que actúan como Apoderados Generales y corredores autorizados. La información es requerida bajo las regulaciones contra el Lavado de Dinero de Panamá. Por favor complete este formulario y proporcione la documentación listada más adelante para cada persona relevante.*

☐ Certified Copy of photo page of passport or other official identification document*
   *Copia Certificada del pasaporte o cédula u otro documento oficial de identidad de origen**

☐ Copy of secondary photo ID (eg. Driver's License or government ID)
   *Copia de una segunda identificación (Licencia de Conducir, Carné del Seguro Social)*

☐ One Bank reference letter and one Commercial reference letter or two of either**
   *Una carta de referencia bancaria y una carta de referencia comercial o dos referencias comerciales o dos referencias bancarias.**

If reference letters or secondary photo ID does not confirm residential address, please also provide a utility bill, phone bill or other acceptable verification of address. / *Si las cartas de referencia o segunda identificación no confirman la dirección residencial por favor proporcione un recibo de servicios, teléfono u otra referencia aceptada de dirección.*

\* Passports or personal ID or any other identification document not presented to Verdmont staff in person in Panama are required to be notarized or stamped by an Apostille. *Los pasaportes o cédula u otro documento de identidad de origen no presentados al personal en persona en Panamá requieren que sean notariados o apostillados.*

\** Reference letters must be originals and on letterhead. Copies of reference letters must be notarized or stamped by an Apostille. Reference letters should attest to the subject's good character and must confirm at least 2 years of satisfactory business. Letters must be signed and include a contact name and number. Letters may be addressed "To Whom it May Concern". Verdmont may at its discretion verify references on an anonymous basis. *Las cartas de referencia deben ser originales y en papel membretado. Copias de cartas de referencias deben ser notariadas o apostilladas. Las cartas de referencias deben atestiguar el carácter del sujeto y deben confirmar por lo menos 2 años de negocios en satisfacción. Las cartas deben estar firmadas e incluir un número de contacto y un nombre. Las cartas pueden ir dirigidas "A quien corresponda". Verdmont puede a su discreción verificar referencias en una manera anónima.*

| Full Name / *Nombre Completo* | | Nationality or Citizenship / *Nacionalidad* | |
|---|---|---|---|
| Virgilio Santana Ripoll | | DOMINICAN | |
| **Residential Address** / *Dirección Residencial* | | | |
| 25 – 7th Street, Torre Alta IV | | | |
| City / *Ciudad* | State or Province / *Estado o Provincia* | Country / *País* | Postal Code / *Apartado Postal* |
| PUERTO PLATA | | DOMINICAN REPUBLIC | |
| Home Phone / *Teléfono Residencial* | Mobile Phone / *Celular* | Fax | Email / *correo electrónico* |
| (809) 571-4008 | (809) 223-2353 | don't have one | vsantanaripoll@hecapital.com |
| Date of Birth / *Fecha de Nacimiento* | Marital Status / *Estado Civil* | | Passport or ID No / *Cédula o Pasaporte* |
| 21st AUGUST 1975 | MARRIED | | SG0645045 |
| **Employment Information** / *Información Laboral* | | | |
| College Degree / *Profesión* | Current Occupation or Position / *Ocupación o Posición actual* | | Length of Employment / *Años de Trabajo en Empleo* |
| Accountancy- Summa Cum Laude | ACCOUNTANT | | 10 YEARS |
| **Employer's Name (if self employed describe the nature of your business)** / *Nombre de la empresa (si es empleado de su propia empresa describa el tipo de negocio)* | | | |
| SELF EMPLOYED - ACCOUNTANT | | | |
| **Employer's Address** / *Dirección de la empresa* | | | |
| | | | |
| City / *Ciudad* | State or Province / *Estado o Provincia* | Country / *País* | Postal Code / *Apartado Postal* |
| | | | |
| Business Phone / *Teléfono de la Empresa* | | Business Fax / *Fax de la empresa* | |
| | | | |

Edificio Hi-Tech Plaza, Penthouse-Calle 53, Obarrio-Apartado Postal 0823-03017 • Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001• www.verdmont.com.pa

# Verdmont Capital

Are you a director, officer or a controlling shareholder of a public company?
*Es usted director, ejecutivo o accionista mayoritaria de una compañia pública?*

[X] No.      [ ] Yes / Sí   If yes, please attach details. / *En caso afirmativo, por favor adjuntar detalles.*

I hereby acknowledge that any regulatory filing requirements are solely my responsibility and I am not relying on Verdmont Capital for any assistance or advice in regards to regulatory filings I may be required to undertake in a foreign jurisdiction. / *Yo certifico que cualquier documento reglamentario requerido es bajo mi responsabilidad. No dependo de Verdmont Capital para cualquier asistencia o asesoría con respecto a documentos reglamentarios que puedan requerirse para llevar a cabo en una jurisdicción extranjera.*

Initial / Inicial

I hereby acknowledge that any tax obligations I may have are solely my responsibility, that I have sought professional tax counsel and that I am not relying on Verdmont Capital for taxation advice. / *Por este medio yo reconozco que, cuando sea necesario, yo he buscado asesoría fiscal profesional y que cualesquiera obligaciones fiscales que yo pudiera tener son solamente mi responsabilidad. Yo no estoy dependiendo de Verdmont Capital para consejo o asistencia fiscal.*

Initial / Inicial

Have you been politically exposed? (If the response is affirmative please complete the PEP form). / *Ha estado políticamente expuesto? (Si la respuesta es afirmativa por favor completar el formulario PEP).*

[ ] Yes / Sí      [X] No

I certify that the information provided by me in this document is true and correct, and I agree to advise Verdmont Capital, SA immediately of any changes to this information. / *Certifico que la información plasmada por mi en este documento es veraz y correcta, y me comprometo a informar a Verdmont Capital SA inmediatamente de cualquier cambio en esta información.*

Signed / Firma _____          Date / Fecha   16th FEBRUARY 2010

Edificio Hi-Tech Plaza, Penthouse Calle 53, Obarrio Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T: +507 301 9000 or +800 VERDMONT - F: 507 301 9001 - www.verdmont.com.pa

DA000025





ADVERTENCIAS

1. Este pasaporte tendrá validez sólo si está firmado por la persona a quien lo fue expedido.

2. Todo pasaporte que presente señales de haber sido alterado carece de validez.

3. Este pasaporte sólo es válido para la persona en cuyo favor se ha expedido, según consta en la página 2.

4. Las expediciones y renovaciones de pasaportes serán hechas por los funcionarios competentes de la Secretaría de Estado de Relaciones Exteriores. Las renovaciones podrán hacerse en el exterior por los funcionarios competentes de Embajadas y Consulados rentados de la República.

5. Este pasaporte contiene 48 páginas con numeración original sucesiva.

0332701  Z

Yo, LICDO. MOISES NUÑEZ, Notario Público de los del Número para el Municipio de Puerto Plata; Provisto del Carnet número 3628 del Colegio Dominicano de Notarios, Inc., dominicano; mayor de edad, soltero; portador de la cédula de identidad personal número 037-0033870-4, con estudio profesional abierto en la calle 3, número 49, del Barrio Iavi de esta Ciudad de San Felipe de Puerto Plata, R.D., CERTIFICO: Que la copia que se encuentra al dorso de este documento, es fiel y conforme al original del pasaporte número SG0645045, el cual he tenido a la vista, y que corresponde a la identidad del señor VIRGILIO SANTANA RIPOLL, según he podido comprobar al compararlo con otro documento que me ha presentado.

En la ciudad de San Felipe de Puerto Plata, a los Tres (03) días del mes de Marzo del año Dos Diez (2010); ----------------------------

LIC. MOISES NUÑEZ
Notario Público 3628

DA000026



DA000027







DA000029

Page 1 of 1



| Cedula | : 037-0030969-7 |
|---|---|
| Nombre(s). | : VIRGILIO |
| Apellido(s). | : SANTANA RIFOLL |
| Fecha Nac. | : 21/08/1975 |
| Sexo | : MASCULINO |
| Municipio/Ciudad | : 037-PUERTO PLATA |
| Recinto Actual | : 00002-CASA ALBERGUE DE MARTINA; AV. ISABEL DE TORRES |
| Circunscripcion | : 01 |
| Colegio de Votacion | : 0050 |
| Votacion | : VISITE SU RECINTO DE VOTACION |
| Estatus | : TERMINADA |
| Posicion Pag | : 0 |



**BanReservas**

*El valor de la eficiencia
en un mercado competitivo.*

Puerto Plata, Rep. Dom.
Oficina Camino Real
03 de marzo de 2010

Señor
Virgilio Santana Ripoll
Sus Manos

Para los fines que correspondan, le certificamos que usted posee cuentas corrientes, de ahorros y certificados financieros con nuestra Institución.

Facilitamos estos datos a solicitud de nuestro cliente, bajo estricta confidencia y sin responsabilidad de nuestra parte.

Sin otro particular y quedando a su disposición para cualquier información adicional, se despide.

Atentamente,

Oficina Camino Real (RS)
Keila Pascual Reynose
Gerente

15/mar/2010

DA000031



**BanReservas**

*El valor de la eficiencia*
*en un mercado competitivo*

Puerto Plata, Rep. Dom.
08 Octubre 2007

Señores:
~~X. E. Capital~~
Distinguidos señores:

Por medio de la presente, certificamos que el Sr. Virgilio Santana Ripoll Céd. 037-0030969-7 es cliente nuestro con varias cuentas desde el año 2003.

Facilitamos estos datos a solicitud de nuestro cliente, bajo estricta confidencia y sin responsabilidad de nuestra parte.

Hacemos esta constancia a solicitud de la parte interesada, en la ciudad de San Felipe de Puerto plata, a los (08 días del mes de Octubre 2007).

Atentamente

Pablo Marte Hernández
Gerente
Ofic. Ferretería El Muelle

Oct. 19, 07

DA000032

## A QUIEN PUEDA INTERESAR

Hago constar por la presente, que el SR. VIRGILIO SANTANA RIPOLL de nacionalidad dominicano, mayor de edad, casado, contador, portador de la cédula de identidad personal número 037-0030969-7, domiciliado y residente en esta ciudad de San Felipe de Puerto Plata, República Dominicana, es persona ampliamente conocida por mí, LIC. EDDY BONIFACIO, dominicano, mayor de edad, casado, abogado de los Tribunales de la República Dominicana, con Matricula del Colegio de Abogado número 25708-950-02, portador de la cédula de identidad y electoral número 037-0031140-4, con estudio profesional abierto en la calle DR. Zafra esquina Antera Mota, en el Edificio Abreu (El Frutal), Segundo Nivel, Suite B, de esta ciudad de Puerto Plata, República Dominicana, que ha demostrado ser una persona seria y responsable en todos los aspectos de su vida pública y privada en los que he tenido la oportunidad de tratar con él, por un período de más de Veinte (20) años.

En la ciudad de San Felipe de Puerto Plata, R. D. a los Tres (3) días del mes de Marzo del año Dos Mil Diez (2010).-

LIC. EDDY BONIFACIO

Yo, LICDO. MOISES NÚÑEZ, Notario Público de los del Número para el Municipio de Puerto Plata, Provisto del Carnet número 3628 del Colegio Dominicano de Notarios, Inc., dominicano, mayor de edad, soltero, portador de la cédula de identidad personal número 037-0033870-4, con estudio profesional abierto en la calle 3 número 49 del Barrio Invi de esta Ciudad de San Felipe de Puerto Plata; CERTIFICO: Que la firma que antecede ha sido puesta libre y voluntariamente en mi presencia por el LIC. EDDY BONIFACIO, cuyas demás generales constan, persona que me manifestó que esa es la firma que acostumbra a usar en todos los actos de su vida, tanto públicos como privados. En la ciudad de San Felipe de Puerto Plata, a los Tres (03) días del mes de Marzo del año Dos Mil Diez (2010).-

LIC. MOISES NÚÑEZ
Notario Público 3628

DA000033



## *Lic. Guido Luis Perdomo Montalvo*

### Abogado – Notario Público

Calle Pedro Clisante No. 73, 2da Planta
Plaza Perdomo, El Batey, Sosúa, Rep. Dom.
Tel.: (809) 571-1950 y 571-3274
Fax: (809) 571-2766
guidoperdomo@yahoo.com

U.S. Mailing Address
EPS – C 165
P.O. Box 02-5553
Miami, Florida, 33102

Sosúa, Dominican Republic

October 18, 2007

To whom it may concern:

I am familiar with Mr. Virgilio Santana Ripoll, passport # 2499944 and cedula # 037-0030969-7, who has been known to me on a professional basis for several years, and can confirm that he has always conducted himself in a professional, diligent, conscientious and trustworthy manner.

I can also confirm that Mr. Virgilio Santana currently resides at:

~~Calle 27 Casa #25~~
~~Monte Alta IV~~
~~Puerto Plata~~
~~Dominican Republic~~

Yours sincerely,

Lic. Guido Luis Perdomo Montalvo
Notary Public & Lawyer



Id Cliente: 407
Nombre:
Dirección:
Referencia:
RNC: 037-0030689-7

No. Contrato: 2574    Fecha: 03/02/2004    Tarifa: R    BT 1

Número de Factura: 50901
Período de Facturación del: 25/04/2009 al 25/05/2009
Fecha Límite de Pago: 10/06/2009
Días Facturados: 31

| | | | | | | | Atraso: | $0.00 |
| | | | | | | | Facturado en el Mes: | $1,552.38 |
| | | | | | | | Total de Factura: | $1,552.38 |

| No. Contador | Tipo Lectura | Lectura Anterior | Lectura Actual | Múltiplo | Consumo | Cantidad | Tarifa | Valor $ |
|---|---|---|---|---|---|---|---|---|
| 22-564-453 | 2°. Cargo Fijo | | | | | | | $81.46 |
| | 3°. Activa | 16,427.0000 | 16,640.0000 | 1.0000 | 213.0000 | | | |
| | 4. Activa | | | | | <200.00 | 200.00 | 6.870000 | $1,374.00 |
| 22-564-453 | | | | | >200.00 | 13.00 | 7.460000 | $96.98 |
| | | | | | | | | $1,552.38 |

Factura del Mes:    $1,552.38

Estimado usuario, si su factura presenta algún tipo de anomalía, favor de presentarnos en nuestra of...

Atraso:    $0.00
Total de Factura:    $1,552.38

Puerto Plata Electrificada, Carretera Puerto Plata-Sosúa frente a Playa Dorada.   RNC-101545331   Teléfonos : 809-586-4007, 809-261-011, 809-2...

ᐧ

# CERTIFICATE OF INCUMBENCY
## DECLARACION JURADA

The undersigned, being the duly appointed secretary of LORNEX FINANCIAL LTD. (the "Corporation"), a corporation duly organized and existing under the laws of NEVIS
HEREBY CERTIFIES that the following is a true and correct listing of the Directors and Officers of the Corporation in full force and effect as of the date hereof:

*El abajo firmante, siendo el secretario debidamente designado de _____ (la "Corporación"), una corporación debidamente organizada y existente bajo las leyes de _____, MEDIANTE EL PRESENTE DOCUMENTO CERTIFICA que la siguiente es una verdadera y correcta lista de los Directores y Ejecutivos de la Corporación en total ejercicio y efecto a la fecha al respecto:*

**DIRECTORS / DIRECTORES:**

C. WILKINS
Print Name / Nombre en Imprenta — Signature / Firma

V. SANTANA
Print Name / Nombre en Imprenta — Signature / Firma

Print Name / Nombre en Imprenta — Signature / Firma

Print Name / Nombre en Imprenta — Signature / Firma

Print Name / Nombre en Imprenta — Signature / Firma

**OFFICERS (Indicate titles) / EJECUTIVOS (Indicar cargos):**

VIRGILIO SANTANA — SECRETARY
Name / Nombre — Title / Cargo

Name / Nombre — Title / Cargo

Name / Nombre — Title / Cargo

Name / Nombre — Title / Cargo

IN WITNESS WHEREOF, the undersigned has executed this certificate and duly affixed the Seal of the Corporation this day 25 OCTOBER, 2007.

*COMO TESTIGO DE ESTO, el abajo firmante ha ejecutado esta certificación y debidamente adjuntado el Sello de la Corporación en el día_____, de 20__.*

SIGNATURE of SECRETARY / FIRMA DEL SECRETARIO

COMPANY HAS NO CORPORATE SEAL.

CORPORATE SEAL / SELLO DE LA CORPORACIÓN

DA000036

# CORPORATE RESOLUTION
## RESOLUCIÓN CORPORATIVA

LORNEX FINANCIAL LTD.
...............................................................................................
("The Company" / "La Compañía")
*Name of Company / Nombre de la Compañía*

"It is hereby resolved that / *Por este medio se resuelve que:*

1. The Company do open and maintain an account with **Verdmont Capital**, (hereinafter called the "Brokers") for the purchase and sale of and other dealings with stocks, bonds, debentures, rights, warrants and other securities (hereinafter called "Securities") / *La Compañía abra y mantenga una cuenta con Verdmont Capital, (en adelante denominada los "Corredores") para la compra y venta de y otras transacciones con acciones, bonos, obligaciones, derechos, garantías y otros valores (en adelante denominados "Valores").*

2. Any one of the following officers or employees of the Company be and they are hereby authorized on behalf of the Company to do all acts and things and sign all documents required to operate and deal with the said account of the Company and in particular without limiting the generality of the foregoing / *Cualquiera de los ejecutivos o empleados de la Compañía siguientes esté y por este medio ellos son autorizados en representación de la Compañía para hacer todos los actos y cosas y firmar todos los documentos requeridos para operar y negociar con la mencionada cuenta de la Compañía y en particular sin limitar la generalidad de lo siguiente:*

   (a) To give instructions to the Brokers either written, verbal or by telephone or fax to buy or sell or otherwise deal with securities on behalf of the Company and either for immediate or future delivery and to bind the Company in respect of any such transaction / *Para dar instrucciones a los Corredores ya sea escritas o por teléfono o fax para comprar o vender o de otra forma negociar con valores en representación de la Compañía y ya sea para entrega inmediata o futura y para comprometer a la Compañía en relación con cualquiera de esas transacciones;*
   (b) To give instructions to the Brokers for the delivery of or to receive delivery of cash and securities from the account of the Company including instructions as to the transfer of any such securities to the name of the Company, to the name of any officer or employee of the Company or to any other person or Company whatsoever / *Para dar instrucciones a los Corredores para la entrega de o el recibo de efectivo y valores de la cuenta de la Compañía incluyendo instrucciones para la transferencia de cualquier de esos valores a nombre de la Compañía, a nombre de cualquier ejecutivo o empleado de la Compañía o a cualquier otra persona o Compañía;*
   (c) To make payments to the Brokers for the credit of the Company either through transfer of the Company's funds or in any other manner whatsoever; and to receive from the Brokers and give receipts to the Brokers for any monies from the account of the Company kept with the Brokers and to verify, certify or confirm any statements of the Brokers with respect to the said account. / *Para hacer pagos a los Corredores para acreditar a la Compañía ya sea a través de transferencia de fondos de la Compañía o en cualquier otra forma; y para recibir de los Corredores y dar recibos a los Corredores por cualesquiera dineros de la cuenta de la Compañía mantenida con los Corredores y para verificar, certificar y confirmar cualesquiera estados de cuenta de los Corredores en relación con la mencionada cuenta.*

The following are the authorized Officers and Employees of the Company:
*Los siguientes son los Ejecutivos y Empleados autorizados de la Compañía:*

| Name / Nombre | Title / Título |
|---|---|
| CLIFFORD WILKINS | DIRECTOR |
| VIRGILIO SANTANA | SECRETARY |
| | |
| | |

3. Any and all past transactions heretofore had by the Company or by any officer, employee or any other person acting for the Company with the Brokers be and the same are hereby ratified and confirmed. / *Cualquier y todas las transacciones pasadas por la Compañía o por cualquier ejecutivo, empleado o cualquier otra persona actuando por la Compañía con sus Corredores de aquí en adelante han sido y las mismas son por este medio ratificadas y confirmadas.*

4. All notices and demands upon the Company in relation to the said account may be delivered by the Brokers to any of the aforesaid officers or employees either verbally, in writing or by telephone or fax and if so delivered shall be deemed to have been received by the Company. / *Todas las notificaciones y demanda contra la Compañía en relación con la mencionada cuenta puede ser entregada por los Corredores a cualquiera de los ejecutivos o empleados antes mencionados ya sea verbalmente, por escrito o por teléfono o fax y si así entregada será considerado que ha sido recibida por la Compañía.*

5. The aforesaid officers be and they are hereby authorized to act upon and to carry out the instructions and orders of the said officers and employees of the Company in relation to the said account. / *Los ejecutivos antes mencionados están y por este medio son autorizados para actuar en base a y ejecutar las instrucciones y órdenes de los ejecutivos y empleados mencionados de la Compañía en relación a la mencionada cuenta.*

6. The Brokers be and they are hereby authorized to act upon and to carry out the instructions and orders of the said officers and employees of the company in relation to the said account. / *Los Corredores están y por este medio son autorizados para actuar en base a y ejecutar las instrucciones de los ejecutivos y empleados mencionados de la compañía en relación con la cuenta mencionada.*

**And it is further resolved that / *Y adicionalmente se resuelve que:***

This resolution and all parts thereof shall remain in full force and effect until written notice of revocation of the Resolution or any part thereof shall be delivered to the Brokers. / *Esta resolución y todas sus partes permanecerán en vigencia y efectiva hasta que aviso escrito de la revocación de la Resolución o cualquier parte de ella sea entregada a los Corredores"*

I, ___VIRGILIO SANTANA___ (1) of ___SOSUA, DOMINICAN REPUBLIC___ (2) as Secretary, DO HEREBY CERTIFY THAT ___LORNEX FINANCIAL LTD.___ (3) is legally entitled to and has taken such steps as are necessary to permit it to establish and operate accounts with Brokers for the sale and purchase of securities that the foregoing Resolutions were duly passed by the Directors of the Company at a meeting duly convened and held on the ___25___ day of ___OCTOBER___, 200 ___7___ at which a quorum was present and the said Resolutions are still in full force and effect. DATED at ___SOSUA, DOMINICAN REPUBLIC___ this ___25___ day of ___OCTOBER___ 200 ___7___.

Yo, _____ (1) de _____ (2) como Secretario. POR ESTE MEDIO CERTIFICO QUE _____ (3) legalmente está facultado para y ha tomado tales acciones como son necesarias para permitirle establecer y operar cuentas con los Corredores para la venta y compra de valores que las Resoluciones anteriores fueron debidamente aprobadas por los Directores de la Compañía en una reunión debidamente convocada y celebrada el ____ de ____ de ____ en la que hubo quórum y las Resoluciones mencionadas todavía están en vigencia y efecto. FECHADO en _____ el _____ de _____ de_____.

_____
SECRETARY / *Secretario*

| COMPANY HAS NO CORPORATE SEAL. |
| --- |

Corporate Seal / *Sello Corporativo*

1 Secretary of Company's full name, printed.
  *Nombre completo, impreso del Secretario de la Compañía.*
2 Secretary's city and country of residence
  *Ciudad y país de residencia del Secretario.*
3 Name of Company (must correspond exactly with name of account).
  *Nombre de la Compañía (debe corresponder exactamente con el nombre de la cuenta).*

Ricaldo Caines
Barrister at Law, Solicitor, Notary Public,
E.L. Solomon Building
Main Street
Charlestown,
Nevis
West Indies

I, Ricaldo Caines, Barrister at Law, Solicitor, Notary Public, of E.L. Solomon Building, Main Street, Charlestown, Nevis, West Indies, confirm as follows:

1.   The Certificate of Incorporation of **LORNEX FINANCIAL LTD.** dated August 24th 2007 attached hereto and initialed is a certified true copy of the original;

2.   The Articles of Incorporation and General By-laws of **LORNEX FINANCIAL LTD.** dated August 24th 2007 attached hereto and initialed are certified true copies of the originals.

Dated: November 19th 2007

Signed:

Ricaldo Caines
Notary Public
Life time commission: Appointed 26/07/1999
Federation of St. Christopher and Nevis



DA000039

## ISLAND OF NEVIS
## OFFICE OF THE REGISTRAR OF COMPANIES

### *CERTIFICATE OF INCORPORATION*

I HEREBY CERTIFY that

## *LORNEX FINANCIAL LTD.*

is duly incorporated and has filed articles of incorporation under the provisions of
the Nevis Business Corporation Ordinance 1984, as amended, on

### *24th August, 2007*

Given under my Hand & Seal at Charlestown
This *24th* day of *August, 2007*

_____
Registrar of Companies

62tjd44E

No.  C 32893

# ARTICLES OF INCORPORATION

## OF

## LORNEX FINANCIAL LTD.

## PURSUANT TO THE NEVIS BUSINESS CORPORATION

## ORDINANCE

## 1984, AS AMENDED



DA000041

# NEVIS BUSINESS CORPORATION ORDINANCE 1984

## AS AMENDED

## ARTICLES OF INCORPORATION

For the purpose of forming a corporation pursuant to the Nevis Business Corporation Ordinance 1984, as amended, the undersigned does hereby make, subscribe, acknowledge and file in the office of the Registrar of Companies this instrument for this purpose, as follows:

1.    The name of the corporation shall be:

### LORNEX FINANCIAL LTD.

2.    The registered address of the corporation shall be Henville Building, Prince Charles Street, Charlestown, Nevis, West Indies. The corporation's registered agent at this address shall be Associated Trustees Limited.

3.    The aggregate number of shares that the corporation is authorised to issue is One Thousand (1,000) registered and/or bearer shares without par value.

The procedural provisions respecting bearer shares shall be set forth in the by-laws of the corporation.

The holder of a stock certificate issued in the name of the owner may cause such certificate to be exchanged for another certificate to bearer for a like number of shares, and the holder of a certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares.

Subject to the maximum amount of shares permitted under this Article 3, the Board of Directors shall have power to issue such amount of shares in the capital of the Company, as it shall from time to time determine. Such shares may be of one or more classes or one or more series within any class thereof, any or all of which classes may be of shares with or without par value, and may be registered or bearer shares, with such voting powers, full or limited, or without voting powers and in such series and with such designations, preferences, participating, optional or special rights and qualifications, limitations or restrictions thereon, as the Board shall determine.



4.    The corporation shall have as its principal purpose the right to engage in any lawful act or activity for which corporations may now or hereafter be organised under the Nevis Business Corporation Ordinance 1984 as amended.

5.    The corporation shall have every power which a corporation now or hereafter organised under the Nevis Business Corporation Ordinance 1984 as amended may have.

6.    The corporation shall be permitted to commence business in accordance with the Nevis Business Corporation Ordinance 1984 as amended to May 1995 and in accordance with its by-laws with immediate effect.

DA000043





**ASSOCIATED TRUSTEES LIMITED**

The name and address of the incorporator
of these Articles is

| NAME | ADDRESS |
|------|---------|
| Associated Trustees Limited | Henville Building<br>Prince Charles Street<br>Charlestown<br>Nevis |

IN WITNESS WHEREOF, we have executed this instrument on August 24th 2007.

For and on behalf of
**Associated Trustees Limited**

DA000044



# CERTIFICATE OF NOTARY PUBLIC

Island of Nevis
Town of Charlestown                                    August 24th 2007


On this date before me personally came Debra A. Dixon known to me to be
the duly authorised individual who executed the foregoing Articles of
Incorporation of

### LORNEX FINANCIAL LTD.

on behalf of Associated Trustees Limited in accordance with the provisions
of Section 4 of the Nevis Business Corporation Ordinance 1984 as amended
and she duly acknowledged to me that the execution thereof was the act and
deed of Associated Trustees Limited, and I do now set my hand and seal in
witness of these acts in accordance with the provisions of the same Section
of the Ordinance.



_____
Notary Public

DA000045



# DESIGNATION AND ACCEPTANCE OF REGISTERED AGENT

*WHEREAS: Under the provisions of Section 17(1), of the Nevis Business Corporation Ordinance 1984, as amended, corporations formed under that Ordinance are required to designate a Registered Agent, and failure to maintain a Registered Agent shall result in the involuntary dissolution of the corporation under Section 99 (1);*

*WHEREAS: Associated Trustees Limited is duly licensed by the Island of Nevis Government to act as Registered Agent and meets the requirements of Section 17(1) of the Nevis Business Corporation Ordinance 1984, as amended; and*

*WHEREAS: LORNEX FINANCIAL LTD. in order to comply with the provisions of the Ordinance, has designated Associated Trustees Limited its Registered Agent;*

*THEREFORE: Associated Trustees Limited hereby accepts designation as Registered Agent for the above named corporation as of the date set forth below.*

For and on behalf of
**Associated Trustees Limited**

*August 24th 2007*

DA000046



# GENERAL BY-LAWS OF

# LORNEX FINANCIAL LTD.

### BY-LAW I
### DEFINITIONS

In this By-Law and all other By-Laws of this Corporation, unless the context otherwise requires:

a) "Ordinance" means the Nevis Business Corporation Ordinance 1984, as amended.

b) By-Laws means any by-law of the Corporation from time to time in force.

c) All terms contained in the by-laws and defined in the Ordinance or regulations thereunder shall have the meanings given to such terms as defined therein.

d) Singular includes the plural and the plural includes the singular; the masculine gender includes the feminine and neuter genders and vice versa; the word person includes bodies corporate, companies, partnerships, syndicates, trusts and any other association of persons and the word individual means a natural person.

### BY-LAW II
### OFFICES

The Registered Office of the Corporation shall be located at Charlestown, Nevis at such address as the Directors may fix from time to time by resolution.

The Corporation may have such other office or offices at such other places outside of Nevis as the Board of Directors may designate or the business of the Corporation may require from time to time.

DA000047



# BY-LAW III
## SHAREHOLDERS

**Part 1.  Meetings:** The Meetings of the shareholders shall be held on a date and time to be determined by the Board of Directors at the registered office of the Corporation listed in By-Law II hereof or at such other time, on such other day or at such other place as the Board of Directors may fix.

**Part 2.  Special Meetings:** Special meetings of shareholders may be called for any purpose or purposes unless otherwise prescribed by the Ordinance at any time by the President or Managing Director. Special meetings of the shareholders must be called (a) by any officer when ordered by the Board of Directors or (b) by the President, Managing Director, Secretary or Assistant Secretary whenever requested in writing to do so by shareholders owning at least one-tenth of all the outstanding shares of the Corporation entitled to vote at such meeting. If called pursuant to subsection (b) above, the request shall state the purpose or purposes of the proposed special meeting and the officer calling the meeting shall schedule the meeting within the time specified in the Ordinance. Special meetings shall be held at such place and on such date and time as may be designated in the notice thereof by the officer of the Corporation calling any such meeting. If no place is so designated, it shall be at the registered office of the Corporation as determined in By-Law II hereof. The business transacted at any special meeting shall be limited to the purposes stated in the notice and any matters incidental thereto.

**Part 3.  Notice of Meetings to Shareholder of Record:** Notice in writing of every ordinary and special meeting of shareholders, other than any meeting the giving of notice of which is otherwise prescribed by law, shall state the date, hour and place thereof, and in the case of special meetings, the name of the person or persons at whose direction the notice is being issued and the purpose of the meeting. Such notice shall be in writing and given personally or sent by mail, telegraph, cablegram, telex, teleprinter or other written transmission at least fifteen but not more than sixty days before the date of the meeting, to each shareholder of record entitled to vote at such meeting and to each shareholder of record who, by reason of any action proposed at such meeting would be entitled to have his share appraised if such action were taken. If mailed, notice shall be deemed to have been delivered at the expiry of fifteen days from when deposited in the mail, postage prepaid and directed to the shareholder at his address as it appears on the record of shareholders of the Corporation or at such other address which the shareholder has notified to the Secretary. Notice of a meeting need not be given to any shareholder who



Part 7.   **Fixing of Record Date:** For the purposes of determining the shareholders entitled to notice of or to vote at any meeting of shareholder or adjournment thereof, or shareholders entitled to receive payment of any dividend, or for any other proper purpose, the Board of Directors may fix a time (the "Record Date"). The Record Date shall be not more than sixty nor less than fifteen days prior to (a) the date of any meeting of shareholders, or (b) the last day on which the consent or dissent of shareholders may be expressed for any purpose without a meeting. The Record Date shall be the time as of which shareholders entitled to notice of and to vote at such a meeting (or whose consent or dissent is required or may be expressed) shall be determined, and all persons who were holders of record of voting shares at the Record Date shall be entitled to notice of and to vote at such meeting (or to express their consent or dissent, as the cay may be). The Board of Directors may fix a time not exceeding sixty days preceding the date fixed for the payment of any dividend, the making of any distribution, the allotment of any rights or the taking of any other action, as a Record Date for the determination of the shareholders entitled to receive any such dividend, distribution, or allotment or for the purpose of such other action.

Part 8.   **Proof of Bearer Shareholder's Status in General and at Shareholders' Meetings:** A holder of bearer shares shall establish his status as shareholder for any purpose, including attendance and voting at shareholders' meetings but not including payment of dividends, in one of the following manners: (a) by presenting or producing the share certificate or (b) by depositing the share certificate in a bank, brokerage firm or other financial institution, as shall be specified in a notice to bearer shareholders, and producing an instrument to that effect executed by an officer of such institution or (c) in such other manner stated in a notice to bearer shareholders which shall adequately establish the status of bearer shareholders to the satisfaction of the authorised officers of the Corporation. For payment of dividends, a bearer shareholder shall establish his status in the manner set forth in By-Law VIII, Part 2 of these by-laws.

Part 9.   **Proxy of Shareholder:** A Shareholder may act by proxy in accordance with Section 65 of the Ordinance or any successor thereto.

BY-LAW IV

DIRECTORS

Part 1.   **Number and Qualifications:** The business affairs of the Corporation and all corporate powers shall be managed by a Board of Directors consisting of such number of



Directors as are determined by a resolution of the shareholders or a resolution of the Board of Directors. The number of Directors may be changed from time to time by a resolution of the shareholders or a resolution of the Board of Directors provided, however, that the entire Board shall consist of not less than three Directors unless all shares of the Corporation are held by fewer than three shareholders, in which case the number of Directors may not be fewer than the number of shareholders. Directors may be natural persons, or corporations, of any nationality and need not be residents of Nevis or shareholders of the Corporation.

Part 2.   **Alternate Directors:** At any meeting of the Board of Directors, the Directors may elect a person or persons to act as Directors in the alternative to designated persons elected as Directors of the Corporation (hereinafter referred to as "Alternate Directors") or may authorise the Directors for the time being in office to appoint such Alternate Director and any person so appointed shall have all the rights and powers of the Director for whom he is appointed in the alternative, save that he shall not be entitled to attend and vote at any meeting of the Directors otherwise than in the absence of such Director. Where an Alternate Director has been appointed for any Director, such Director shall promptly notify such Alternate Director of the time and place of any meeting which such Director will not attend. Unless otherwise provided in the resolution appointing each Alternate director, where an Alternate Director and a proxy for the same Director are both actively assuming rights or duties of such Director, the status of the proxy shall be superior.

Part 3.   **Election of Directors:** The initial Director(s) appointed by the incorporator shall be elected to serve until their successors have been duly elected and qualified, except in the event of their death, resignation, removal or the earlier termination of their term of office.

Part 4.   **Removal:** Any one or all of the Directors and Alternate Directors, if any, may be removed with or without cause by a vote of the shareholders. Any Director or Alternate Directors may be removed for cause by action of the Board.

Part 5.   **Resignation:** Any Director of the company may tender their resignation by giving notice in writing to the Board, except as otherwise provided in the ordinance or these by-laws.



Part 6.   **Vacancies:** All vacancies occurring by death, resignation, creation of new directorships, or for any other reason, except removal without cause, may be filled either by the vote of a majority of the remaining Directors, although less than a quorum, at any regular meeting of the Board or a special meeting called for that purpose, or by vote of the shareholders. Vacancies occurring by removal of Directors or Alternate Directors without cause may be filled only by vote of the shareholders.

Part 7.   **Regular Meetings:** Regular meetings of the Board of Directors may be held without notice if the time and place thereof are designated by resolution of the Board in advance of such meetings and if any Directors and Alternate Directors, not present when such resolution is passed are given notice of the resolution. Any proper business may be transacted at any regular meeting; and any Director may waive notice of any meeting in writing, prior or at any meeting.

Part 8.   **Special Meetings:** Special meetings of the Board of Directors may be called from time to time by the Managing Director, President or a Director. In addition, the President or the Managing Director or the Secretary shall promptly call a special meeting of the Board upon written request directed to any of them by any Director, which request must state the purpose of such special meeting. Special meetings of the Board shall be held on such date, at such time and place and for such purposes as may be designated in the notice thereof by the officer calling the meeting pursuant to this Part.

Part 9.   **Notice of Special Meetings:** Notice in writing of the date, time and place of any special meeting of the Board of Directors shall be given to each Director at least forty-eight hours prior to such meeting, unless the notice is delivered in person, in which case it shall be given at least twenty-four hours prior to such meeting. For the purpose of this section, notice shall be deemed to be duly given to a Director if given to him personally or if such notice be delivered to such Director by mail, telegraph, cablegram, telex, teleprinter or other written communication to his last known address. Notice of a meeting need not be give to any director who submits a signed waiver before or after the meeting, or who attends the meeting without protesting, prior to the conclusion thereof, the lack of notice to him.

Part 10.   **Quorum:** A quorum for transaction of business shall consist of a majority of the entire Board of Directors, present in person or by Alternate Director or proxy or conference telephone or video, but shall not consist of less than $1/3^{rd}$ of the total of the Board.



Part 11. **Voting:** The vote of the majority of the Directors, present in person or by Alternate Director or proxy or conference telephone or video, at a meeting at which a quorum is present shall be the act of the Directors. Any action required or permitted to be taken at a meeting may be taken without a meeting if all Directors or their proxies consent thereto in writing. Alternate Directors may not act as Directors for the purpose of taking action without a meeting unless they also have a written proxy from the Director whom they are acting.

Part 12. **Compensation of Directors and Members of Committees:** From time to time the Board may, in its discretion, fix the amounts which shall be payable to its members, to Alternate Directors and to members of any committee, for attendance at the meetings of the Board, or of such committee, and for services rendered to the Corporation.

Part 13. **Proxy of Director:** Any Director or Alternate Director may appoint a proxy by an instrument in writing to act in his behalf for the purpose of exercising his powers and duties.

**BY-LAW V**

**COMMITTEES**

Part 1. **Executive Committee and Other Committees:** The Board of Directors may, by resolutions passed by a majority of the entire Board, appoint from among its members an executive committee, which shall have, to the extent provided in said resolution or resolutions and permitted by law, the powers of the Board of Directors in the management of the business and affairs of the Corporation and may have the power to authorise one of its members or any corporate officer or agent to affix the seal to any corporate documents or instruments. In addition, the Board of Directors may, by resolution passed by a majority of the entire Board, appoint other committees, each of which shall perform such functions and have such authority and powers as shall be delegated to it by said resolution or resolutions, except that only the executive committee may have and exercise the powers of the Board of Directors. Members of the executive committee and any other committee shall hold office for such period as may be prescribed by the vote of a majority of the entire Board of Directors. Committees may adopt their own rules of procedure and may meet at predetermined times or on such notice as they may from time to time determine. Each committee shall keep a record of its proceedings and report the same to the Board when required. Alternate Directors may not be appointed to such committees, but may act for the Director for whom they are an



alternative in exercising the powers and duties of such Director if such Director is not available in person or by proxy and if such Alternative Director is not available in person or by proxy and if such Alternate Director is not specifically prohibited from so acting by a properly adopted resolution of the Board of Directors or the shareholders.

## BY-LAW VI
## OFFICERS

Part 1.    **Election and Removal:** The Board of Directors shall elect as officers (a) a President, Secretary and Treasurer, or (b) a Managing Director and Secretary, and (c) such other officers as it may deem desirable or necessary to carry on the business of the Corporation. Officers may be of any nationality and may be, but are not required to be, citizens or residents of Nevis. The Managing Director is required to be a Director. Any other officers may be, but are not required to be, Directors. All officers must be natural persons except the Secretary, which may be a corporation. Any two or more offices may be held by the same person.

The Officers shall be elected by the Board of Directors at its first meeting following the election of the Board of Directors or as soon thereafter as is possible. The salaries of officers, if any, and any other compensation paid to them shall be fixed from time to time by the Board of Directors. Each officer shall hold office until his successor shall have been duly elected and qualified, except in the event of the earlier termination of his term of office through death, resignation, removal or otherwise. Any officer may be removed by the Board at any time with or without cause and without notice or hearing. Any vacancy in an office or any newly created office may be filled for the unexpired portion of the term of such office by the Board of Directors at any regular or special meeting.

Part 2.    **President or Managing Director:** The President or Managing Director shall be the chief executive officer of the Corporation, and shall be responsible for the general management of the affairs of the Corporation and shall have the powers and duties usually incident to such office, except as specifically limited by appropriate resolution of the Board of Directors. He shall also have such other powers and perform such other duties as may be assigned to him by the Board of Directors. He shall preside at all meetings of Shareholders at which he is present and, if he is a Director, at all meetings of the Directors.



Part 3.   **Treasurer:** The Managing Director or, if there shall be no Managing Director, the Treasurer shall be responsible for the care and custody of the funds, securities, and other valuable effects of the Corporation and shall cause the same to be deposited in the name of the Corporation in such depositories as the Board of Directors may designate. He shall disburse the funds of the Corporation as may be ordered by the Board of Directors, shall have supervision over the accounts and all receipts and disbursements of the Corporation, shall render or cause to be rendered financial statements of the Corporation whenever required by the board, shall have the powers and perform the duties usually incident to the office of Treasurer, and shall have such other powers and perform such other duties as may be assigned to him by the Board of Directors.

Part 4.   **Secretary:** The Secretary shall act as Secretary of all meetings of the shareholders and, if he is a Director, at all meetings of the Board of Directors at which he is present and shall record the minutes of all proceedings in a book kept for that purpose. He shall be the custodian of the corporate records and the corporate seal and shall have all powers and duties usually incident to the office of Secretary and such other powers and duties as may be assigned to him by the Board of Directors. If the Secretary is a Corporation, the duties of the Secretary may be carried out by any duly authorised representative of such corporation.

Part 5.   **Other Officers:** Officers other than those treated in Sections 2 through 4 of this Article shall exercise such powers and perform such duties as may be assigned to them by the Board of Directors.

Part 6.   **Bond:** The Board of Directors shall have power, to the extent permitted by law, to require any officer, agent or employee of the Corporation to give bond for the faithful discharge of his duties in such form and with such surety or sureties as the Board of Directors may deem advisable.

## BY-LAW VII
## SHARE CERTIFICATES

Part 1.   **Form and Issuance:** The shares of the Corporation shall be represented by certificates issued in numerical order and meeting the requirements of the Ordinance and the Articles of Incorporation and approved by the Board of Directors. Certificates shall be signed by (a) the President, Managing Director, or a Vice-Present, and (b) by the Secretary, an Assistant Secretary, the Treasurer or an Assistant Treasurer or Director.

These signatures may be facsimiles if the certificate is countersigned by a transfer agent or registered by a registrar other than the Corporation itself or its employee.

Part 2.   **Transfer:** The Board of Directors shall have power and authority to make such rules and regulations not inconsistent with the Articles of Incorporation or the Ordinance as they may deem expedient concerning the issuance, registration and transfer of certificates representing shares of the Corporation's stock, and may appoint transfer agents and registrars thereof.

Part 3.   **Loss of Stock Certificates:** The Board of Directors may direct a new certificate of stock to be issued in place of any certificate theretofore issued by the Corporation which is alleged to have been lost or destroyed, upon the submission of an affidavit to that effect by the person claiming ownership of the lost or destroyed certificate. When authorising such issuance of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost or destroyed certificate to give the Corporation a bond in such form and for such sum as the Board may direct to indemnify the Corporation against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed.

## BY-LAW VIII
## DIVIDENDS

Part 1.   **Declaration and Form:** Dividends may be declared in conformity with law by, and at the discretion of, the Board of Directors at any regular or special meeting. Dividends may be declared and paid in cash, stock or other property of the Corporation.

Part 2.   **Payment of Dividends to Holders of Bearer Shares:** Dividends shall be paid to holders of bearer shares in one of the following manners: (a) by mail to any bearer shareholder whose address is known to the Corporation, or (b) in person to any bearer shareholder who displays or produces the share certificate to an authorised representative of the Corporation, or (c) to any bank, brokerage firm or other financial institution which is known by the Corporation to be a Custodian of bearer certificates, or (d) to any person surrendering to the Corporation bearer coupons, if any, attached to the bearer share certificates, or (e) in any other manner satisfactory to the authorised officers of the Corporation which shall adequately assure payment of the dividends to bearer



shareholders, including but not limited to the establishment of escrow accounts for dividends payable to bearer shareholders whose addresses are unknown.

### BY-LAW IX
### CORPORATE SEAL

Part 1. The seal of the Corporation, if any, shall bear the name of the Corporation and such other appropriate legend as the Board of Directors may from time to time determine. The corporate seal may be affixed by any officer or agent of the Corporation who is properly authorised by the Board of Directors to do so, including any properly authorised member of a committee formed under By-Law V. Part 1 of these by-laws.

### BY-LAW X
### FISCAL MATTERS

Part 1.   **Fiscal Year:** The fiscal year of the Corporation shall be such period of twelve consecutive months as the Board of Directors may by resolution designate.

Part 2.   **Cheques / Drafts:** The Board of Directors may nominate any officer or authorised agent of the Corporation to sign cheques and / or drafts on behalf of the Corporation.

Part 3.   **Loan Agreements:** The Board of Directors may nominate any officer or authorised agent of the Corporation to enter into loan agreements on behalf of the Corporation.

### BY-LAW XI
### AMENDMENTS TO BY-LAWS

Part 1.   **By the Shareholders:** These by-laws may be amended, added to, altered or repealed or new by-laws may be adopted, at any meeting of shareholders of the Corporation at which a quorum is present by the affirmative vote of the holders of a majority of the shares represented at such meetings; provided, however, that notice that an amendment is to be considered and acted upon is inserted in the notice or waiver of notice of said meeting.

Part 2.   **By the Directors:** If the Articles of Incorporation or a by-law adopted by the shareholders so provide, these by-laws may be amended, added to, altered or repealed, or new by-laws may be adopted, at any regular or special meeting of the Board of Directors by the affirmative vote of a majority of the entire Board, subject, however, to the power of the shareholders to alter, amend or repeal any such by-law.

### BY-LAW XII
### INDEMNIFICATION

Part 1.   The Corporation shall indemnify any person serving as a Director or officer of the Corporation to the full extent permitted or required in Section 56(1), (2) or (3) of the Ordinance or any successor to such Section .

Part 2.   No Director or Officer of the Corporation shall be liable to the Corporation for
   a)   acts or defaults of any other director or officer or employee
   b)   any loss or damage incurred by the Corporation through deficiency of title to any property acquired by the Corporation
   c)   any other loss or damage whatsoever which may happen in the execution of his duties of his respective office unless from failure to exercise and discharge his duties honestly and in good faith.

The above By-Laws are hereby approved and adopted by the sole Director of **LORNEX FINANCIAL LTD.,** this 24th Day of August 2007.

_____
Debra A. Dixon

Client Standing Data - 199/LORNEX FINANCIAL LTD.

## Client Standing Data - 199/LORNEX FINANCIAL LTD.

Client Code [L000871]    Account Title [LORNEX FINANCIAL LTD.]
Client Ledger [AAA1]

Base | Adr | Post.Adr | Div.Adr | Cert.Adr | Notes | Misc | Cntr/Agents | Output Routing | Registration | Bespoke
CREST/SWIFT | Personal Profile | Money Profile | Services | Related/Sigs | Client Settlement | Letters

Service Code [EXEC]      Short Title [Execution]                          Delete

Fee Exclusions/Holidays |      Settlement      |      Bespoke      |      Dates
Base |   Misc   |   Address   |   Accounts   |   Reg./CREST   |   History   |   Last Night

Currency [USD]  [US DOLLAR]                       Default Service ☑

Include Money ☐   Mandate Preference ☐   WEB Viewable ☑   Client Prefers To Take Income ☐
Suppress From Side Bar ☐   Collateral Usage ☑   WEB Trading ☑

Formal Title [                    ]

Note [                    ]
Start Date [11/27/2007]   Commencement Reason [        ]
Closed Date [        ]   Closure Reason [        ]
Service Status [        ]   Transferee Reference [        ]
Strategy [        ]
Management Level [        ]
Perf. Family [        ]   Account ID [172469761]

Scratch Pad | Edit | Delete | More | Link Address | Enquire | Close

DA000058

Date: _November 12, 2007_

Account Name: _Lornex Financial Ltd_   _Broker changed_

Contact: _Clifford Wilkins (Mr. Kruzger)_   _to Conley Forex March 10, 201_

Broker: _F/H (Broker has changed to Conley Forex on March 13xx_

Checklist: Corporate

☑ Investment Account Application – Corporate
☑ Sealed corporate resolution authorizing the opening of the account and specifying the authorized signatories
☑ Certified copy of certificate of incorporation or articles of incorporation
☑ Certificate of incumbency
N/A ☐ Certificate of good standing
☑ KYC forms for all beneficial owners and signatories
☑ Certified copy of passport
☑ Copy of secondary photo ID
☑ Bank reference letter
☑ Personal or professional references letter or utility bill

Missing: _____

_____
_____

Advisor Comments: _____

_____
_____
_____

☐ Opening pending receipt of missing papers required by: _____
☐ Compliance Approval to open: _____
☐ Missing documents received.
☑ Comments by compliance Officer: _The corporation is brand new (Aug 29, 2007_
_so the cert. of good standing is not required til 27/Nov/2007_
_The due. diligences of Virailin Santos and Clifford Wilkins_
_can be found in their master files._

☑ Final Account approval: _Yesenia Batista   Nov 27, 2007_

Account number: _173469761_

Print                                                                              Page 1 of 1



### Legal Notice

You are strictly prohibited from disclosing or copying the content of this service to third parties excluding regulatory agencies.

**Please note**

(1) General Legal Notice
(2) Category Legal Notice
(3) Reported Link Legal Notice

| Comment: |
| --- |
| |

| Username: VCap01 | Printed: 17-04-2013 14:05 UTC |
| --- | --- |
| **NAME:**  LORNEX FINANCIAL | |
| **MODE:**  Exact Match | |
| There are no entries matching the above search criteria. | |

### 1) General Legal Notice

* All information identified or correlated in this profile, appears in the listed sources. We are not responsible for the content of third party sites or sources. Information correlated is necessarily brief and should be read by users in the context of the fuller details available in the external sources to which hypertext links are provided. Users should also carry out independent checks in order to verify the information correlated.

### 2) Category Legal Notice

Category is based on information contained in the sources provided.

### 3) Reported Link Legal Notice

Where an individual or entity is listed as being "Reported to be linked to" other profiles, the nature of the links vary considerably and users should not draw negative inferences merely from that association.

## Yessenia A. Batista

**From:** Jules Jurado
**Sent:** Thursday, February 25, 2010 2:49 PM
**To:** Mohammad Shaygan
**Cc:** Yessenia A. Batista
**Subject:** Lornex Financial, LTD

Hi Mo,

I just wanted to let you know that we have received a fax from Cliff Wilkins in where he is telling us that he wants Conley Forey to be his broker.
As Conley will start working with us officially on Monday, we will have to proceed accordingly with the client request.

Saludos,

Jules

**Verdmont Capital S.A.**
Edificio Hi-Tech Plaza, Penthouse
Calle 53, Obarrio
Apartado Postal 0823-03017
Ciudad de Panama, Republica de Panama
Tel: +507 301 9000
Fax: +507 301 9001
www.verdmont.com.pa

2/25/2010

DA000061

02/25/2010 09:46:54 AM (GMT-8)  From: Yvonne - To: Jules Jurado

Page 1 of 1

011-507-301-9001

FAX To: Jules Jurado

**Re: Lormex Financial Ltd., account #17246-9761**

Please change the broker on this account to Conley Forey.

Sincerely,

Cliff Wilkins

February 12, 2010

DA000062



# Verdmont Capital

## Annual Update Form

*Formulario de Actualización Anual*

According to the CNV, Acuerdo 5-2006, we hereby certified the Annual Update for Verdmont Capital Accounts / *En relación al Acuerdo 1-2005 de la CNV, por este medio certificamos la Actualización Anual de las cuentas de Verdmont Capital.*

Account Name _____ *Lornex Financial, Ltd.* _____
*Nombre de la Cuenta*

Please specify the changes in the account requested (Telephone, e-mail, addresses,etc.).
*Favor indicar los cambios en la cuenta requerida (Teléfonos, e-mail, direcciones, etc.)*

_____ *No changes* _____

Who the Broker or broker's Assistant talked to / *Persona entrevistada por el Corredor de Valores o Asistente de Corredor de Valores*

_____ *Internet Sources* _____

Broker or Broker's /Compliance's assistant signature: _____ *CP.* _____
*Firma de Corredor o Asistente de Corredor o Cumplimiento*

Comments: _____
*Comentarios*

Date: _____ *Sept. 4, 2012* _____
*Fecha*

Compliance Officer signature: _____
*Firma del Oficial de Cumplimiento*

Comments _____
*Comentarios*

Date: _____ *Sept. 4 2012* _____
*Fecha*

DA000063

"lornex financial ltd." - Google Search                                Page 1 of 1

+You  Search  Images  Maps  Play  YouTube  News  Gmail  Documents  Calendar  More ▾

"LORNEX FINANCIAL LTD."                                    Sign in

Search                    5 results (0.15 seconds)

Web

Images            **SEC Info - Ameriwest Energy Corp - PRE 14C - For 6/26/08**
                  www.secinfo.com/d127C3,l13Sy.htm
Maps              26 Jun 2008 – ... Executor Capital Inc., Graydon Capital Inc., Lornex Financial Ltd.,
                  Thimble Capital Ltd., Caledonia Partners LLC, Huntington Capital Corp., ...
Videos
                  **Paid Mailer Stocks Message Board - Msg: 26314387**
News              www.siliconinvestor.com/readmsg.aspx?msgid=26314387
                  11 Feb 2010 – ... Executor Capital Inc., Graydon Capital Inc., Lornex Financial Ltd.,
Shopping          Thimble Capital Ltd., Caledonia Partners LLC, Huntington Capital Corp., ...

More              **Previous 10 – Silicon Investor (SI) -- Invest This!**
                  www.siliconinvestor.com/readmsgs.aspx?subjectid=56743...
Show search tools  11 Feb 2010 – ... Executor Capital Inc., Graydon Capital Inc., Lornex Financial Ltd.,
                  Thimble Capital Ltd., Caledonia Partners LLC, Huntington Capital Corp., ...

                  **Previous 10 – Silicon Investor (SI) -- Invest This!**
                  www.siliconinvestor.com/readmsgs.aspx?subjectid=56743...
                  ... Nautilus Growth Fund, Avendale Equity LLC, Executor Capital Inc., Graydon Capital
                  Inc., Lornex Financial Ltd., Thimble Capital Ltd., Caledonia Partners LLC, ...

                  **Next 10 – Silicon Investor (SI) -- Invest This!**
                  www.siliconinvestor.com/readmsgs.aspx?subjectid=56743...
                  11 Feb 2010 – ... Executor Capital Inc., Graydon Capital Inc., Lornex Financial Ltd.,
                  Thimble Capital Ltd., Caledonia Partners LLC, Huntington Capital Corp., ...

                  *In order to show you the most relevant results, we have omitted some
                  entries very similar to the 5 already displayed.*
                  *If you like, you can repeat the search with the omitted results included.*

                        Advanced search   Search Help   Give us feedback

                  Google Home   Advertising Programs   Business Solutions   Privacy & Terms   About Google

DA000064

Print                                                                      Page 1 of 1



**Legal Notice**

You are strictly prohibited from disclosing or copying the content of this service to third parties excluding regulatory agencies.

**Please note**

(1) General Legal Notice
(2) Category Legal Notice
(3) Reported Link Legal Notice

| Comment: |
| --- |
| |

| Username: VCap01 | Printed: 04-09-2012 19:59 UTC |
| --- | --- |
| NAME: LORNEX FINANCIAL LTD. | |
| MODE: Exact Match | |
| COUNTRY: SAINT KITTS & NEVIS | |

There are no entries matching the above search criteria.

**1) General Legal Notice**

* All information identified or correlated in this profile, appears in the listed sources. We are not responsible for the content of third party sites or sources. Information correlated is necessarily brief and should be read by users in the context of the fuller details available in the external sources to which hypertext links are provided. Users should also carry out independent checks in order to verify the information correlated.

**2) Category Legal Notice**

Category is based on information contained in the sources provided.

**3) Reported Link Legal Notice**

Where an individual or entity is listed as being "Reported to be linked to" other profiles, the nature of the links vary considerably and users should not draw negative inferences merely from that association.

# Verdmont Capital

## Annual Actualization Form

*Formulario de Actualización Anual*

According to the CNV, Acuerdo 5-2006, we hereby certified the Annual Update for Verdmont Capital Accounts / *En relación al Acuerdo 1-2005 de la CNV, por este medio certificamos la Actualización Anual de las cuentas de Verdmont Capital.*

Account Name  *Looney Financial Ltd.*
*Nombre de la Cuenta*

Please specify the changes in the account requested (Telephone, e-mail, addresses,etc.). *Favor indicar los cambios en la cuenta requerida (Teléfonos, e-mail, direcciones, etc.)*

*no changes*

Who the Broker or broker's Assistant talked to / *Persona entrevistada por el Corredor de Valores o Asistente de Corredor de Valores*

*Virgilio Antona*

Broker or Broker's assistant signature:
*Firma de Corredor o Asistente Ejecutivo de Corredor*

Comments:
*Comentarios*

Date:  *06/26/09*
*Fecha*

Compliance Officer signature:  *Yesenia Batista*
*Firma del Oficial de Cumplimiento*

Comments
*Comentarios*

Date:  *June 26, 2009*
*Fecha*

DA000066

"LORNEX FINANCIAL LTD" - Google Search                                           Page 1 of 1

Web  Images  Video  Maps  News  Shopping  Gmail  more ▾                        Sign in

Google          "LORNEX FINANCIAL LTD"                    Search  Advanced Search
                                                                  Preferences

Web   Show options...              Results 1 - 1 of 1 for "LORNEX FINANCIAL LTD". (0.30 seconds)

SEC Info - Ameriwest Energy Corp - PRE 14C - For 6/26/08
... Q Capital LLC, Nautilus Growth Fund, Avendale Equity LLC, Executor Capital Inc., Graydon
Capital Inc., Lornex Financial Ltd., Thimble Capital Ltd., ...
www.secinfo.com/d12TC3.t13Sy.htm - Cached - Similar

*In order to show you the most relevant results, we have omitted some entries very similar
to the 1 already displayed.*
*If you like, you can repeat the search with the omitted results included.*

                    "LORNEX FINANCIAL LTD"                    Search

          Search within results - Language Tools - Search Help - Dissatisfied? Help us improve -
                              Try Google Experimental

          Google Home - Advertising Programs - Business Solutions - Privacy - About Google

DA000067

OFAC



Friday June 26th 2009 10:55 AM (EST)

Displaying Results for LORNEX FINANCIAL LTD.

No results for LORNEX FINANCIAL LTD.

DA000068



Yessenia A. Batista

From:          Glynn Fisher
Sent:          Martes, 27 de Noviembre de 2007 11:54 a.m.
To:            Yessenia A. Batista; Taylor Housser
Subject:       Re: LORNEX FINANCIAL LTD.

Normal.


----- Original Message -----
From: Yessenia A. Batista
To: Taylor Housser; Glynn Fisher
Sent: Tue Nov 27 11:51:54 2007
Subject: FW: LORNEX FINANCIAL LTD.

Hello, please inform if this is preferred or normal.  This is a Mo's account.


Regards,


Yessenia Batista

Compliance

Phone (507) 301-9051

Fax (507) 301-9001

E-mail yessenia.batista@verdmont.com.pa <mailto:yessenia.batista@verdmont.com.pa>

_____

From: Yessenia A. Batista
Sent: Martes, 27 de Noviembre de 2007 11:51 a.m.
To: Mohammad Shaygan; Taylor Housser; Glynn Fisher
Co: Jules Jurado
Subject: FW: LORNEX FINANCIAL LTD.


Sirs, the account has been approved.  The passport copy for Virgilio Santana is expired, but the client has sent his cedula of Republica Dominicana and it expires in August 21, 2008.


The account number is 172469761.


Regards,


Yessenia Batista

Compliance

Phone (507) 301-9051

Fax (507) 301-9001

E-mail yessenia.batista@verdmont.com.pa <mailto:yessenia.batista@verdmont.com.pa>

_____

From: Yessenia A. Batista
Sent: Martes, 27 de Noviembre de 2007 09:53 a.m.
To: Mohammad Shaygan
Subject: RE: LORNEX FINANCIAL LTD.


Mo, the passport for Virgilio Santana (authorized signatory in this account) is expired.


Do you know if he has an updated copy of his passport?


Yessenia Batista

Compliance


Phone (507) 301-9051

Fax (507) 301-9001

E-mail yessenia.batista@verdmont.com.pa <mailto:yessenia.batista@verdmont.com.pa>

_____

From: Yessenia A. Batista
Sent: Miércoles, 14 de Noviembre de 2007 04:36 p.m.
To: Mohammad Shaygan
Cc: Taylor Housser
Subject: LORNEX FINANCIAL LTD.


Hi Mo:


To open this account we need:


ø        Certified copy of Certificate of Incorporation or Articles of Incorporation

ø        Copy of a second ID for Mr. Clifford Wilkins

ø        The interview form

2

DA000071

Regards,


Yessenia Batista

Compliance


Phone (507) 301-9051

Fax (507) 301-9001

E-mail yessenia.batista@verdmont.com.pa <mailto:yessenia.batista@verdmont.com.pa>

DA000072

"LORNEX FINANCIAL LTD" - Buscar con Google                          Page 1 of 1

                                                                    Acceder

                La Web    Imágenes    Grupos    Noticias    Maps    Más »

Google          ┌─────────────────────────────────────┐  ┌────────┐  Búsqueda avanzada
                │ "LORNEX FINANCIAL LTD"              │  │ Buscar │  Preferencias
                └─────────────────────────────────────┘  └────────┘
                ⦿ Buscar en la Web   ○ Buscar sólo páginas en español

───────────────────────────────────────────────────────────────────────────

**La Web**


Su búsqueda - **"LORNEX FINANCIAL LTD"** - no produjo ningún
documento.

Sugerencias:

   • Asegúrese de que todas las palabras estén escritas correctamente.
   • Intente usar otras palabras.
   • Intente usar palabras más generales.

───────────────────────────────────────────────────────────────────────────

Página principal de Google - Programas de Publicidad - Tecnología para empresa - Todo acerca de Google

©2007 Google

DA000073

World-Check                                                                    Page 1 of 1



**Legal Notice**

You are strictly prohibited from disclosing or copying the content of this service to third parties excluding regulatory agencies.

**Please note**

(1) General Legal Notice
(2) Category Legal Notice
(3) Reported Link Legal Notice

| Comment: |
| --- |
| |

| Username: VCap01 | Printed: 27-11-2007 16:08 CET |
| --- | --- |
| **NAME:** LORNEX FINANCIAL LTD.<br>**MODE:** Exact Match | |
| There are no entries matching the above search criteria. | |

**1) General Legal Notice**

* All information identified or correlated in this profile, appears in the listed sources. We are not responsible for the content of third party sites or sources. Information correlated is necessarily brief and should be read by users in the context of the fuller details available in the external sources to which hypertext links are provided. Users should also carry out independent checks in order to verify the information correlated.

**2) Category Legal Notice**

Category is based on information contained in the sources provided.

**3) Reported Link Legal Notice**

Where an individual or entity is listed as being "Reported to be linked to" other profiles, the nature of the links vary considerably and users should not draw negative inferences merely from that association.

DA000074



Stockpatrol: Results for "LORNEX FINANCIAL LTD."                    Page 1 of 2

# Stock**P**atrol.com

Before you Invest, Investigate™ ...

Investigative Reports  Investor Information  News and Commentary  Investor Resources  About StockPatrol

# Search Results

Your search for "LORNEX" and "FINANCIAL" and "LTD." returned 0 results.

All content © 2006 StockPatrol.com. All rights reserved.
Privacy Policy | Disclaimer | Contact Us

[       ]   Search

Search StockPatrol.com
**Subscriber Login**

[     ] username
[     ] password
Login   ☐ Remember me
(I forgot my password.)
(Register a new account.)

DA000076



SEC Info – Image Innovations Holdings Inc – SC 14F1 – Image Innovations Holdings Inc ...   Page 1 of 7

*SEC Info*   Home   Search   My Interests   ...gin   Sign In   *Please Sign In*

## Image Innovations Holdings Inc · SC 14F1 · Image Innovations Holdings Inc · On 7/3/03

Filed On 7/3/03 2:42pm ET · SEC File 5-79107 · Accession Number 1075793-3-385

| Find | | in | this filing. | ⌄ | Show | docs searched ⌄ | and | every "hit". ⌄ |

Help...   *Himonths 7 (say fewer). * (any); Logic for Docs & (and). [tor, for Text ] (anywhere). "(&)" (near)*

| As Of | Filer | Filing | As/For/On | Docs:Pgs | Issuer | Agent |
|---|---|---|---|---|---|---|
| 7/03/03 | Image Innovations Holdings Inc | SC 14F1 | | 1:17 | Image Innovations Holdings Inc | Cane Oneill Taylor LLC |

Statement re: Change in Majority of Directors · Rule 14f-1
Filing Table of Contents

| Document/Exhibit | | Description | Pages | Size |
|---|---|---|---|---|
| 1: SC 14F1 | Busanda 14f-1 | | HTML | 78K |

*See page 4*
*Clifford Wilkins*

DA000078

Th    an EDGAR HTML document rendered as filed. [ Alternative    ats ]

Busanda 14-F-1

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

SCHEDULE 14F-1

INFORMATION STATEMENT
PURSUANT TO SECTION 14(f) OF THE
SECURITIES EXCHANGE ACT OF 1934
AND RULE 14f-1 THEREUNDER

BUSANDA EXPLORATIONS INC.
(Exact name of registrant as
specified in its corporate charter)

0-50119

Commission File No.

NEVADA                                          91-1898414

(State of Incorporation)                        (IRS Employer Identification No.)

1550 OSTLER COURT
NORTH VANCOUVER, BRITISH COLUMBIA
CANADA V7G 2P1
(Address of principal executive offices)

604-980-2072
(Issuer's telephone number)

BUSANDA EXPLORATIONS INC.

INFORMATION STATEMENT PURSUANT TO
SECTION 14(f) OF THE SECURITIES
EXCHANGE ACT OF 1934 AND RULE 14f-1 THEREUNDER

GENERAL

This Information Statement is being delivered on about June 30, 2003 to the holders of shares of common stock, par value $0.001 per share (the "Common Stock") of Busanda Explorations Inc., a Nevada corporation (the "Company") as of June 25, 2003. The Company has offered to acquire all of the issued and outstanding shares of Image Innovations Inc., a Delaware corporation ("Image Innovations"). Image Innovations is a Delaware corporation incorporated on January 14, 2003. If the Company's offer is accepted, the Company will issue an aggregate of 10,000,000 shares of common stock to the existing shareholders of Image Innovations. The Company's offer is subject to acceptance by the shareholders of Image Innovations by June 28, 2003. It is a condition precedent of closing that all shareholders of Image Innovations accept the Company's offer and that audited financial statements of Image Innovations have been delivered to the Company. If the acquisition is completed, there will be a total of 18,170,000 shares of the Company's common stock outstanding, with the existing shareholders of Image Innovations owning approximately 55% of the Company's outstanding shares. In connection with the completion of this acquisition, Mr. Derick Sinclair, the sole executive officer and director of the Company, has agreed to transfer 1,000,000 shares of the Company's common stock to the current directors of Image Innovations, namely Mr. Alan Kardos, Mr. Christopher Smith and Mr. Clifford Wilkins, or their business associates, in separate private transactions.

It is anticipated that Mr. Kardos, Mr. Smith and Mr. Wilkins will be appointed as directors of the Company upon completion of the acquisition of Image Innovations and that Mr. Sinclair will subsequently resign as a director. This change of directors of the Company will not occur until the acquisition of Image Innovations has been completed and a minimum of 10 days have passed since the filing of this Information Statement with the United States Securities and Exchange Commission and the delivery of this Information Statement to the shareholders of the Company.

Image Innovations was incorporated to engage in the business of promotional licensing and branding with the objective of adding value to a wide variety of relatively low cost, but desirable or essential products, by endorsing them with the brand logos of sports teams and/ or other recognized trademarks. On February 11, 2003, Image Innovations entered into a retail license agreement with NHL Enterprises, L.P. to market a limited range of products under the National Hockey League brand. Image Innovations has submitted a proposal to National Football League Properties to obtain a license to market a limited range of products under the NFL brand.

Neither Mr. Kardos, Mr. Smith nor Mr. Wilkins will take office until at least ten days after this Information Statement is mailed or delivered to all Company shareholders in compliance with Section 14(f) of the Securities Exchange Act of 1934, as amended, and Rule 14f-1 thereunder.

YOU ARE URGED TO READ THIS INFORMATION STATEMENT CAREFULLY. YOU ARE NOT, HOWEVER, REQUIRED TO TAKE ANY ACTION.

VOTING SECURITIES AND PRINCIPAL SHAREHOLDERS

1.        Voting Securities of the Company

On June 25, 2003, there were 8,170,000 shares of the Company's common stock issued and outstanding. Each share of common stock entitles the holder thereof to one vote on each matter that may come before a meeting of the shareholders.

SEC Info - Image Innovations Holdings Inc - SC 14F1 - Image Innovations Holdings Inc ...   Page 3 of 7

2.       Security Ownership of Certain Beneficial Owners and Management

The following table sets forth certain information concerning the number of shares of our common stock owned beneficially as of June 25, 2003 by: (i) each person (including any group) known to us to own more than five percent (5%) of any class of our voting securities, (ii) each of our directors and each of our named executive officers, (iii) each person proposed to be appointed as a director of the Company and (iv) officers and directors as a group. Unless otherwise indicated, the shareholders listed possess sole voting and investment power with respect to the shares shown.

| Title of class | Name and address of beneficial owner | Number of Shares of Common Stock | Percentage of Common Stock (1) |
|---|---|---|---|
| **CURRENT DIRECTOR:** | | | |
| Common Stock | DERICK SINCLAIR, Chief Executive Officer, President, Secretary, Chief Financial Officer, Treasurer and Director 1550 Oster Court North Vancouver, BC | 1,000,000 | 12.23 % |
| Common Stock | All Officers and Directors as a Group (1 person) | 1,000,000 | 12.23 % |
| **PROPOSED DIRECTORS:** | | | |
| Common Stock | ALAIN KARDOS | NIL | 0.0 % |
| Common Stock | CHRISTOPHER SMITH | NIL | 0.0 % |
| Common Stock | CLIFFORD WILKINS | NIL | 0.0 % |
| **5% BENEFICIAL OWNERS** | | | |
| Common Stock | MIDDLEGATE INVESTMENTS The Bahamas Financial Center PO Box N-4584, Shirley Street Nassau, Bahamas | 800,000 | 9.78 % |
| Common Stock | MILLPORT SECURITIES LTD. PO Box N-8318, Nassau, Bahamas | 500,000 | 6.11 % |
| Common Stock | NEW AGE DEVELOPMENT Albany Street, Blair Estates Nassau, Bahamas | 800,000 | 9.78 % |
| Common Stock | RFH INVESTMENTS Blue Cott, Samaras Inner Road St. Clement, JE2 6DN, United Kingdom | 1,250,000 | 15.29 % |

| Title of class | Name and address of beneficial owner | Number of Shares of Common Stock | Percentage of Common Stock (1) |
|---|---|---|---|
| Common Stock | SAWBILL CONTRACTING LTD. PO Box 1436, #46, Cayman Reef Resort Georgetown, Grand Cayman West Indies | 800,000 | 9.78 % |
| Common Stock | SPACESTAR ENTERPRISES LIMITED 2 Limassol Avenue, Nicosia 2003, Cyprus | 750,000 | 9.17 % |
| Common Stock | SPARTAN CAPITAL INC. 7 Prince Street, Belize City, Belize | 800,000 | 9.78 % |

(1)     Under Rule 13d-3, a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: (i) voting power, which includes the power to vote, or to direct the voting of shares; and (ii) investment power, which includes the power to dispose or direct the disposition of shares. Certain shares may be deemed to be beneficially owned by more than one person (if, for example, persons share the power to vote or the power to dispose of the shares). In addition, shares are deemed to be beneficially owned by a person if the person has the right to acquire the shares (for example, upon exercise of an option) within 60 days of the date as of which the information is provided, in computing the percentage ownership of any person, the amount of shares outstanding is deemed to include the amount of shares beneficially owned by such person (and only such person) by reason of these acquisition rights. As of June 25, 2003, there were 8,170,000 shares of our common stock issued and outstanding.

Each of Mr. Kardos, Mr. Smith and Mr. Wilkins are currently shareholders of Image Innovations. Mr. Kardos, Mr. Smith and Mr. Wilkins will receive the following shares of the Company's common stock upon completion of the acquisition of Image Innovations:

| Name of Proposed Director | Number of Shares of Image Innovations Held | Number of Company shares to be Issued |
|---|---|---|
| Mr. Alain Kardos | 50 | 500,000 |

SEC Info - Image Innovations Holdings Inc - SC 14F1 - Image Innovations Holdings Inc ...   Page 4 of 7

| | | |
|---|---|---|
| Mr. Christopher Smith | 55 | 550,000 |
| Mr. Clifford Wilkins | 60 | 600,000 |

In addition, Mr. Alain Kardos, Mr. Christopher Smith and Mr. Clifford Wilkins, or their business associates, will acquire an additional 1,000,000 shares of the Company's common stock from Mr. Derick Sinclair, the sole executive officer and director of the Company, in separate private transactions using their own funds.

3.       Changes in Control

On June 23, 2003, the Company made an offer to all the shareholders of Image Innovations to purchase their shares in exchange for an aggregate of 10,000,000 shares of the Company's common stock on the basis of 10,000 shares for each outstanding share of Image Innovations. If this transaction is completed, the shares of each existing Image Innovations shareholders will be exchanged for shares of the Company's common stock. The existing shareholders of Image Innovation will own 65% of the outstanding shares of the Company upon closing. In addition, the current board of directors of Image Innovations, namely Mr. Kardos, Mr. Smith and Mr. Wilkins will constitute our board of directors upon completion of the acquisition and the expiry of the 10 day period following filing and mailing of this Information Statement. Accordingly, there will be a change of control of the Company in the event that the

acquisition of Image Innovations is completed. The acquisition of Image Innovations is scheduled to complete on June 30, 2003, subject to satisfaction of all closing conditions, including the acceptance by all Image Innovations shareholders and the delivery of financial statements for Image Innovations. It is anticipated that the change of the board of directors will occur on or about June 10, 2003.

DIRECTORS AND EXECUTIVE OFFICERS

The Company anticipates that on or about July 10, 2003, Mr. Derick Sinclair, the sole director and executive officer of the Company will appoint Mr. Kardos, Mr. Smith and Mr. Wilkins as directors of the Company. The appointment of these individuals to the Company's board of directors will be subject to the closing of the acquisition of Image Innovations. Subsequent to these appointments, it is anticipated that Mr. Sinclair will tender his resignation as both a director and an executive officer of the Company. The new board of directors will then appoint the Company's executive officers.

The following tables set forth information regarding the Company's current executive officers and directors and the proposed executive officers and directors of the Company.

Our executive officers and directors and their respective ages as of June 23, 2003 are as follows:

Directors:

| Name of Director | Age | |
|---|---|---|
| Derick Sinclair | 46 | |
| Executive Officers: | | |
| Name of Officer | Age | Office |
| Derick Sinclair | 46 | President, Secretary, Treasurer, Chief Executive Officer and Chief Financial Officer and Chairman of the Board of Directors |

CURRENT DIRECTOR

Derick Sinclair - Mr. Sinclair has been the President, Secretary, Treasurer and Chairman of the Board of Directors of the Company since inception. Since March 1998, he has also been President of Natalma Industries Inc., a publicly-traded exploration stage mining company traded on the OTCBB:NTAL. Since March 1997, he has also been the President of Cosmah Industries, Inc., a privately-held exploratory mining company in Vancouver, Canada. Since March, 1998, he has also been the CFO and Vice President of Administration for Navigata Communications Inc (www.navigata.ca), formerly RSL COM Canada Inc., and Westel Telecommunications in Vancouver, B.C. Based in North Vancouver, British Columbia with regional offices in Ontario, Quebec and Alberta, Navigata is a communications company providing data and voice services. From December, 1992 to March, 1996, he was Director of Fleet Management for BC Rail, Ltd., a freight train service in Vancouver. B.C. Canada. Mr. Sinclair received a Bachelors Degree in Commerce from the University of Windsor, Canada in 1982 and has been a member of the Institute of Chartered Accountants of British Columbia since 1985. Mr. Sinclair devotes approximately 5-10 hours per week to the Company's business.

PROPOSED DIRECTORS

Alain Kardos - After graduating from the Montreal Institute of Technology, Mr. Kardos began a successful corporate career at IBM, following which, he held senior executive positions at Nortel and Wang. His success at Wang encouraged him to move to Los Angeles to co-found Kardos-Long Inc., a sports, promotion and marketing company responsible for promoting America's return to Grand Prix racing in

Phoenix, Arizona. Already a successful entrepreneur, Mr. Kardos returned to Canada to assist AVCAN Systems Corp., a CDNX listed company develop a US presence. Mr. Kardos then moved on to become president and chief executive officer of Fibre Crown Manufacturing , a Vancouver based company. Mr. Kardos has been president, chief operating officer and a director of Image Innovations since its incorporation on January 14, 2003.

Clifford Wilkins – Mr. Wilkins commenced his career in 1962 with the National Provincial Bank (now National Westminster), in England. After a thorough grounding in commercial banking he progressed to international banking, joining the old established firm of Brown Shipley & Co. in the City of London. Spending 10 years at the French Bank of Southern Africa, he relinquished his position of Deputy Manager of the London operation in 1982 jo establish an international operation in London for ABSA Bank, where he stayed until his early retirement. Mr. Wilkins then decided to apply his experience to the offshore environment, assisting with the establishment of the FN Group, in Nevis, and HE Capital, in the Dominican Republic. He remains a director of these companies. Mr. Wilkins has been the chief executive officer and a director of Image Innovations since its incorporation on January 14, 2003.

Christopher Richard Smith - Commencing his career in London; in 1986, Mr. Smith has spent almost 20 years in the control and management of financial transactions, for stockbroking companies in a number of countries. Amongst these companies were Swiss Bank Corp and Union Bank of Switzerland. As did Cliff Wilkins, Mr. Smith decided to apply his experience to the offshore environment as financial controller for the FN Group and HE Capital. He remains financial director of HE Capital. Mr. Smith has been chief financial officer and a director of Image Innovations since its incorporation on January 14, 2003.

DA000081

Term of Office

Our Directors are appointed for a one-year term to hold office until the next annual general meeting of our shareholders, until they resign or until removed from office in accordance with our bylaws. Our officers are appointed by our board of directors and hold office until removed by the board.

Significant Employees

The Company currently does not have any significant employees.

#### LEGAL PROCEEDINGS INVOLVING DIRECTORS AND EXECUTIVE OFFICERS

The Company is not aware of any legal proceedings in which Company, any director, officer, or any owner of record or beneficial owner of more than five percent of any class of voting securities of the Company, or any affiliate of Company, or of any such director, officer, affiliate of the Company, or security holder, is a party adverse to the Company or has a material interest adverse to the Company.

#### CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS

Except as described below, none of the following persons has any direct or indirect material interest in any transaction to which we were or are a party during the past two years, or in any proposed transaction to which the Company proposes to be a party:

(A)  any director or officer;

(B)  any proposed nominee for election as a director;

(C)  any person who beneficially owns, directly or indirectly, shares carrying more than 5% of the voting rights attached to our common stock; or

(D)  any relative or spouse of any of the foregoing persons, or any relative of such spouse, who has the same house as such person or who is a director or officer of any parent or subsidiary.

In connection with the completion of the acquisition of Image Innovations, Mr. Derick Sinclair, the sole executive officer and director of the Company, has agreed to transfer 1,000,000 shares of the Company's common stock to the current directors of Image Innovations, namely Mr. Alain Kardos, Mr. Christopher Smith and Mr. Clifford Wilkins, or their business associates, in separate private transactions.

Each of Mr. Kardos, Mr. Smith and Mr. Wilkins are currently shareholders of Image Innovations. Mr. Kardos, Mr. Smith and Mr. Wilkins will receive the following shares of the Company's common stock upon completion of the acquisition of Image Innovations:

| Name of Proposed Director | Number of Shares of Image Innovations Held | Number of Company shares to be Issued |
|---|---|---|
| Mr. Alain Kardos | 60 | 600,000 |
| Mr. Christopher Smith | 55 | 550,000 |
| Mr. Clifford Wilkins | 60 | 600,000 |

#### COMPLIANCE WITH SECTION 16(A) OF THE SECURITIES EXCHANGE ACT OF 1934

Section 16(a) of the Exchange Act requires the Company's executive officers and directors, and persons who beneficially own more than ten percent of the Company's equity securities, to file reports of ownership and changes in ownership with the Securities and Exchange Commission. Officers, directors and greater than ten percent shareholders are required by SEC regulation to furnish the Company with copies of all Section 16(a) forms they file. Based on its review of the copies of such forms received by it, the Company believes that during the fiscal year ended December 31, 2002 all such filing requirements applicable to its officers and directors were complied with.

#### EXECUTIVE COMPENSATION

The following table sets forth certain compensation information as to Mr. Derick Sinclair, the Company's chief executive officer. The Company does not have any other executive officers. No other compensation was paid to Mr. Sinclair other than the cash and stock option compensation set forth below.

SUMMARY COMPENSATION TABLE

| | | | ANNUAL COMPENSATION | | | LONG TERM COMPENSATION | | | |
| | | | | | | AWARDS | | PAYOUTS | |
| Name | Title | Year | Salary | Bonus | Other Annual Compensation | Restricted Stock Awarded | Options/ SARs * (#) | LTIP payouts ($) | All Other Compensation |
|---|---|---|---|---|---|---|---|---|---|
| Derick Sinclair | Director and President, Secretary and Treasurer | 2002 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | 2001 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | 2000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

STOCK OPTION GRANTS

The Company did not grant any stock options to any of its officers, directors or employees during our most recent fiscal year ended December 31, 2002. The Company has not granted any stock options to any of its officers, directors or employees since December 31, 2002.

EXERCISES OF STOCK OPTIONS AND YEAR-END OPTION VALUES

No stock options were exercised by our officers, directors or employees during the financial year ended December 31, 2002. No stock options have been exercised since December 31, 2002.

**OUTSTANDING STOCK OPTIONS**

The Company does not have any stock options outstanding.

**MANAGEMENT AGREEMENT**

The Company is not party to any management, consulting or employment agreement with Mr. Sinclair.

Dated: June 30, 2003                        BUSANDA EXPLORATIONS INC.

                                        /s/ DERICK SINCLAIR

                                        DERICK SINCLAIR
                                              President

DA000083

SEC Info - Image Innovations Holdings Inc - SC 14F1 - Image Innovations Holdings Inc ...   Page 7 of 7

... es Referenced Herein  *and*  Documents Incorporated By Ref. ..co

| *This SC 14F1 Filing* | *Date* | *Other Filings* |
|---|---|---|
| | 12/31/02 | 10KSB, 10KSB/A |
| | 1/14/03 | |
| | 2/11/03 | |
| | 6/23/03 | |
| | 6/29/03 | |
| | 6/30/03 | 10QSB, 10QSB/A, 4, 8-K, 8-K/A, NT 10-Q |
| Filed On / Filed As Of | 7/3/03 | 4 |
| | 7/10/03 | |

Top                                                      List All Filings

---

*Alternative Formats:*   Rich Text / Word (.rtf),  Text (.txt),  EDGAR (.sgml),  XML (.xml),  et al.

Copyright © 2007 Fran Finnegan & Company  All Rights Reserved.
www.secinfo.com – Tue, 27 Nov 2007 16:20:18.4 GMT – Help at SEC Info

DA000084

 **Verdmont Capital**               **Due Diligence Form**

DUE DILIGENCE : _Wilkins, Clifford John_
_Clifford John Wilkins._

- KYC forms for all beneficial owners and signatories
- Certified/notarized copy of photo page of passport or other official identification document
- Copy of secondary photo ID
- One bank reference letter and one commercial reference letter or two of either

Missing:

_____
_____
_____
_____

Advisor Comments:
_Related to Comat Financial, H.E Capital_
_____
_____

Opening pending receipt of missing papers required by: _____

Missing documents received by: _____

Comments by compliance Officer:
_____
_____
_____

DA000085

Print                                                                                    Page 1 of 1



**Legal Notice**

You are strictly prohibited from disclosing or copying the content of this service to third parties excluding regulatory agencies.

**Please note**

(1) General Legal Notice
(2) Category Legal Notice
(3) Reported Link Legal Notice

Comment:

| Username: VCap01 | Printed: 17-04-2013 13:53 UTC |
|---|---|

NAME:   CLIFFORD WILKINS
MODE:   Part Match

WILKINSON                    Steven Clifford                    INDIVIDUAL

*Búsqueda de actualización*
*17/4/2013*

*not our client*

**1) General Legal Notice**

\* All information identified or correlated in this profile, appears in the listed sources. We are not responsible for the content of third party sites or sources. Information correlated is necessarily brief and should be read by users in the context of the fuller details available in the external sources to which hypertext links are provided. Users should also carry out independent checks in order to verify the information correlated.

**2) Category Legal Notice**

Category is based on information contained in the sources provided.

**3) Reported Link Legal Notice**

Where an individual or entity is listed as being "Reported to be linked to" other profiles, the nature of the links vary considerably and users should not draw negative inferences merely from that association.

"CLIFFORD JOHN WILKINS" - Google Search                                    Page 1 of 1

Web   Images   Video   Maps   News   Shopping   Gmail   more ▼                    Sign in

# Google    | "CLIFFORD JOHN WILKINS"    | Search | Advanced Search
                                                               Preferences

Web   Show options...                   Results **1 - 3** of 3 for "CLIFFORD JOHN WILKINS". (0.35 seconds)

## CLIFFORD JOHN WILKINS's Direct Relationships
Direct Relationships: Map direct relationships of **CLIFFORD JOHN WILKINS** ... Top 1 of 1
entities related to **CLIFFORD JOHN WILKINS**. ...
www.marketvisual.com/DirectProfile.aspx?ID=ba421b4b... - Cached - Similar

### Image Innovations Holdings Inc's Direct Relationships
Map **CLIFFORD JOHN WILKINS** and Image Innovations Holdings Inc's 3 relationships. Map
James J Armenakis and Image Innovations Holdings Inc's 2 relationships ...
www.marketvisual.com/DirectProfile.aspx?ID=4bec146b-68fe... - Similar

## MarketVisual Knowledge Maps™ - Image Innovations Holdings Inc's ...
**CLIFFORD JOHN WILKINS** and Image Innovations Holdings Inc have 3 relationships.
CHRISTOPHER RICHARD SMITH and Image Innovations Holdings Inc have 3 ...
www.newsvisual.com/EntityProfile.aspx?ID=4bec146b-68fe-48fe... - Similar

| "CLIFFORD JOHN WILKINS"    | Search |

Search within results - Language Tools - Search Help - Dissatisfied? Help us improve -
Try Google Experimental

Google Home - Advertising Programs - Business Solutions - Privacy - About Google

OFAC



Friday June 26th 2009 10:59 AM (EST)

Displaying Results for CLIFFORD JOHN WILKINS.

No results for CLIFFORD JOHN WILKINS.

DA000088