```
f260seca

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

             Plaintiff,

        v.                                  15 CV 894

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES, LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS, S.A.,
and VERDMONT CAPITAL, S.A.,

             Defendant.
------------------------------x
                                            New York, N.Y.
                                            February 6, 2015
                                            11:31 A.M.

Before:

              HON. WILLIAM H. PAULEY III,

                                            District Judge


APPEARANCES


Securities and Exchange Commission (DC)
BY:  Richard Edward Simpson
     A. David Williams
     Ernesto Amparo
```

1                    (In the robing room)
2          THE COURT:  Good morning, have a seat.  This is an
3  ex parte application.  Would counsel for the SEC give their
4  appearance for the court reporter.
5          MR. SIMPSON:  Richard Simpson for the Securities and
6  Exchange Commission.  And with me is Ernesto Amparo.  He's also
7  with the SEC.  And, Vennia Francios also, a paralegal working
8  with us on the case.
9          THE COURT:  All right.  Good morning to all of you.
10         This case has just been wheeled out to me.  I would
11 ask, Mr. Simpson, that you give me a very brief summary of the
12 case.  At the moment, just a quick overview, because here's
13 what I have in mind.  You have given me all of the papers, but
14 I don't have a copy of the complaint.  And I will need, I want
15 to review the papers.  I have two oral arguments that are
16 waiting for me in the courtroom, and I'm prepared to see you
17 again after I have reviewed the papers at about 1:15 this
18 afternoon, if that works for you folks.
19         MR. SIMPSON:  Yeah, that works.
20         THE COURT:  But I'll let you give me a quick Readers
21 Digest tease about the case right now, and provide me with a
22 copy of the complaint.
23         MR. SIMPSON:  Okay.  Let me do the easiest one first.
24         This is the copy of the complaint.
25         THE COURT:  Great.

1     MR. SIMPSON:  This is a case that involved four pump
2 and dump transactions where outside foreign entities sold penny
3 stocks into the United States markets.  The penny stocks were
4 issued by, basically, shell companies that didn't have any real
5 assets or revenues.  The defendants that we're suing are the
6 actual sellers of the stocks into the markets.  It includes a
7 Cayman Islands bank, a brokerage firm in Panama, and two
8 so-called brokerage firms in Belize.  These entities sold the
9 stocks directly to American investors and made tens of millions
10 of dollars selling the stock.
11     Even though it is a pump and dump, we're only suing on
12 the grounds of Section 5 of the Securities Act, which is a
13 strict liability statute that basically says that if you sell
14 securities into the United States without a registration
15 statement being in effect with respect to your sales, then
16 you're liable under Section 5 to return the proceeds of those
17 sales.  So we're suing basically on a Section 5 basis against
18 these entities.
19     THE COURT:  And, in essence, what is the nature of the
20 emergency ex parte application.
21     MR. SIMPSON:  Okay, we have located two substantial
22 accounts for two of the defendants in the United States.  With
23 respect to one of the defendants, there was substantial
24 movement of assets last September, shortly after an indictment
25 was handed down with respect to one of the other defendants in

1  our case, Legacy Global.  So that asset transfer was effected
2  by Caledonian Bank.
3         Another defendant, Verdmont Capital, just this past
4  January, on January 5 and 6th, liquidated an account that had
5  approximately $37 million in it of securities.  There is
6  $17 million worth of securities still in the U.S.  But the
7  other 17 or 20 million has been transferred to foreign
8  entities, or to the credit of foreign entities.  So those
9  transfers cause us concern.  And the real emergency is that if
10 the defendants get notice of this lawsuit before there is an
11 asset freeze, then they will also transfer these substantial
12 assets out of the United States, since they are all foreign
13 entities.
14        THE COURT:  All right.  Thank you very much.  Please
15 come back at 1:15 and we'll entertain the application ex parte.
16        MR. SIMPSON:  Okay, very well.
17        THE COURT:  All right.
18        MR. SIMPSON:  Okay.  Is it okay if we leave boxes of
19 documents with exhibits, can we leave those in the courtroom.
20        THE COURT:  You can leave them in the courtroom.  My
21 deputy will tell you where to leave them so that they are safe.
22        MR. SIMPSON:  Okay, good.  Thank you.
23        THE COURT:  All right, thank you very much.  See you
24 at 1:15.
25        MR. SIMPSON:  Okay, thanks.

1  　　　　　We also have these file-stamped originals of the
2  exhibits.  Do you want us to just keep those?
3  　　　　　THE COURT:  One set, or multiple sets?
4  　　　　　MR. SIMPSON:  One set.  But you don't have to read
5  every page.  Three volumes of brokerage account statements
6  showing the defendant's sales, and then four volumes of the
7  underlying documents that are summarized in our papers, showing
8  the pump and dump scheme.
9  　　　　　THE COURT:  Leave them on the table.  I'm in awe.
10 　　　　　MR. SIMPSON:  Okay, thank you, your Honor.
11 　　　　　THE COURT:  All right.
12 　　　　　(Recess)
13 　　　　　MR. SIMPSON:  Good afternoon.
14 　　　　　THE COURT:  Good afternoon, Mr. Simpson.
15 　　　　　MR. SIMPSON:  I brought in reinforcements.  This is
16 Mr. Williams from the SEC.
17 　　　　　THE COURT:  All right.  Good afternoon, Mr. Williams.
18 　　　　　All right, I have had an opportunity to take a quick
19 look at your motion papers.
20 　　　　　Could you just explain to me what the need is to
21 require repatriation within five days of notice of receipt of
22 the order.
23 　　　　　MR. SIMPSON:  Repatriation, I think, would mostly be a
24 backstop to the asset freeze.  In other words, if we got an
25 asset freeze with respect to the two defendants who have assets

1    here in the U.S., most likely a repatriation order would not be
2    necessary.  And probably it wouldn't necessarily have to be
3    done within five days, it would be maybe a longer period.
4            With respect to two of the defendants, Clearwater and
5    Legacy Global, we have not yet located assets in the U.S. that
6    are equal to the amounts that they are exposed to in this
7    litigation.  So a repatriation order would be, I think, more
8    appropriate directed toward them.
9            THE COURT:  Now, in looking at the attachment to Mr.
10   Amparo's declaration, it appears to me that, at least as
11   recently as earlier this week, according to a screenshot of an
12   account, that there is $17,745,515 in an interactive broker's
13   account, in Greenwich, Connecticut.
14           MR. SIMPSON:  Yes.
15           THE COURT:  Is that --
16           MR. AMPARO:  Yes.  Yes, sir.
17           THE COURT:  So what I would like to understand is, who
18   you do intend to serve with this restraining order on accounts?
19           MR. SIMPSON:  Interactive brokers.  Then the Northern
20   Trust International Banging Corporation, which holds assets in
21   the name of Caledonian Bank.  And then the defendants, we would
22   serve, hopefully pursuant to alternative means which we're
23   seeking.
24           THE COURT:  I am prepared to grant your alternative
25   means order.

1           MR. SIMPSON:  Okay.

2           THE COURT:  And my question is other than those two
3    financial institutions that you have just identified, what
4    other financial institutions do you intend to serve with the
5    order at this time?

6           MR. SIMPSON:  At this time, the only other one would
7    be Scottsdale Advisors, which is a brokerage firm in Arizona,
8    which holds $59,000.  But those would be the only three.

9           THE COURT:  And presuming that the Court signs this
10   order, now, is it the SEC's intention to serve those financial
11   institutions literally forthwith?

12          MR. SIMPSON:  Yes.

13          THE COURT:  What about service on the defendants?

14          MR. SIMPSON:  I would go to the office first thing
15   tomorrow morning and attempt service by e-mail.

16          THE COURT:  All right.  Well, let me -- is there any
17   reason why once you have affected service on the financial
18   institutions and confirmed that they have received the Court's
19   order and taken the action as directed, that you couldn't serve
20   the defendants via the alternative service order?

21          MR. SIMPSON:  We could probably serve the order this
22   afternoon by e-mail.  And, then, the other papers,
23   logistically, we could attempt that, but that might be a little
24   bit more difficult, because we would have to PDF a lot of the
25   documents.

1    THE COURT: All right. And once again, just for the
2 sake of this record, would you set forth the reasons why it is
3 imperative that the SEC restrain these accounts, now, without
4 notice to any of the account holder defendants?
5    MR. SIMPSON: I think that it's our conclusion, based
6 on the circumstances, and the transfers that have happened
7 before, that the defendants are likely to move assets out of
8 the U.S. if they have notice of this action.
9    They are all foreign entities; one in the Cayman
10 Islands, one in Panama, and two in Belize, so that they doesn't
11 have actual stakes in the U.S. And it's very easy to move
12 assets out of bank accounts or brokerage accounts at a moment's
13 notice of litigation. And then, also, just the history of this
14 case recently, where there were transfers of assets by Verdmont
15 in early January, and then transfers of assets by Caledonian
16 Bank in September of 2014.
17    THE COURT: All right. Is there anything else that
18 the SEC believes that the Court should be aware of before it
19 acts on this proposed order?
20    MR. SIMPSON: Yeah, in terms of the exposure to the
21 assets, I can't think of anything else, other than what we have
22 set forth in our papers, and what I have already said. And
23 then, in addition, regarding I guess the facts of the case and
24 the law pertaining to Section 5, we can basically rest on the
25 papers we have submitted.

1          THE COURT:  All right.  Under Rule 65, I'm going to
2    grant the SEC's application.  I plan to be out of the district
3    for a period of time.  Under Rule 65, a temporary restraining
4    order cannot extend beyond 14 days, unless there is agreement
5    of the parties or a further application to the court.
6          So I will set the matter down, by way of a return date
7    for February 20th, which is 14 days from today, at 10:00.  And
8    I will provide that the defendants shall serve any opposition
9    papers in this matter by February 17th.  With any reply from
10   the Commission, by close of business on February 19th.  The
11   Commission and the defendants are directed to follow the
12   individual practices of this court and to provide a paper copy
13   to chambers of any electronic filings that are made with the
14   court.  The record should reflect that I am entering this order
15   on February 6th at 1:30 p.m., EST.
16         Is there anything further at this time?
17         MR. SIMPSON:  One thing is we need to speak with your
18   courtroom deputy about collecting the stamped copies of the
19   court documents.
20         THE COURT:  All right.  We can deal with all of that
21   off the record.
22         My final direction will be that the Commission obtain
23   a copy of this transcript and provide this transcript to the
24   defendants after the Commission serves the defendants with the
25   pleadings in this case.

F260secaa

1      MR. SIMPSON:  We'll do that, your Honor.

2      THE COURT:  All right.  Anything else?

3      MR. SIMPSON:  No, your Honor.

4      THE COURT:  Thank you very much.  I'll see you on the
5 20th.

6      Do you anticipate that you're going to be hearing from
7 the defendants?

8      MR. SIMPSON:  I expect we'll be hearing from them
9 rather shortly.  At least, from Caledonian and Verdmont.

10      THE COURT:  And does Caledonian Bank conduct business
11 in the United States, or have a correspondent bank in the
12 United States?

13      MR. SIMPSON:  I believe so, your Honor.

14      THE COURT:  All right.  Very well.

15      And if the parties wish to proceed on the 20th, we
16 will -- I'll need to know, in advance, so the appropriate
17 arrangements can be made, assuming that there is no request for
18 adjournment by the defendants.

19      MR. SIMPSON:  Very well, your Honor.

20      THE COURT:  Very well.  Thank you very much.  Have a
21 good afternoon.

22      MR. SIMPSON:  Thank you.

23      THE COURT:  Wait in the courtroom and we'll provide
24 this material to you in a moment.

25      (Adjourned)