RICHARD E. SIMPSON
A. DAVID WILLIAMS
ERNESTO G. AMPARO
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4492 (Simpson)
simpsonr@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

    v.                                          Civ. No.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., and
VERDMONT CAPITAL, S.A.,

                Defendants.

---

### THE SEC'S MEMORANDUM OF LAW IN SUPPORT OF ITS *EX PARTE* MOTION FOR LEAVE TO SERVE THE DEFENDANTS BY ALTERNATIVE MEANS

    The Securities and Exchange Commission seeks leave of the Court to serve the temporary restraining order (if granted), the order to show cause (if entered) and related papers, and the summons and Complaint, on Defendants Caledonian Bank Ltd. and Caledonian Securities Ltd. (collectively, "Caledonian"), headquartered in the Cayman Islands, Defendants Clear Water Securities, Inc. and Legacy Global Markets S.A., headquartered in Belize, and Defendant Verdmont Capital, S.A., headquartered in Panama, by alternative means pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure. In particular, the SEC seeks leave to serve

the Defendants by email and by service on four of the United States broker-dealer firms that the Defendants employed to offer and sell securities at issue in this action. In support of its motion, the SEC states as follows:

## ALLEGATIONS OF THE COMPLAINT

This action arises from the unregistered and unlawful distributions of penny stocks by Caledonian Bank Ltd., Caledonian Securities Ltd., Clear Water Securities, Inc., Legacy Global Markets S.A. and Verdmont Capital, S.A., all foreign entities. The Complaint alleges that the Defendants violated Section 5 of the Securities Act of 1933 [15 U.S.C. § 77e] by offering and selling securities without registration statements being in effect for their offers and sales. In connection with four shell companies – Swingplane Ventures Inc., Goff Corporation, Norstra Energy Inc., and Xumanii, Inc. – the Defendants offered and sold penny stocks into the public markets in unregistered distributions simultaneously with aggressive and extensive promotion campaigns for those penny stocks. (Complaint, ¶¶ 1, 39, 58, 74, 89)

Each of the unregistered distributions took place in virtually the same way, starting with the misuse of the SEC's registration process through sham registration statements and the fictional distribution of securities to nominee shareholders when the securities in fact remained in the control of the issuers and their affiliates. (Complaint, ¶ 20, 45, 63, 79) In the "distributions," the shell companies pretended to sell securities to shareholders residing in such places as Serbia, Mexico, Ireland, Norway, Panama and Jamaica. (*Id.*, ¶¶ 19, 41, 63, 76) In reality, the stock certificates representing the securities were not distributed to the shareholders. (*Id.*, ¶¶ 19-23, 45, 63, 79)

The charade of a public offering was sufficient to cause the transfer agent to issue stock certificates without restrictive legends. (Complaint, ¶¶ 19, 45, 63, 79) The stock certificates

were subsequently sent back to the transfer agent which, pursuant to instructions, transferred the securities to the Defendants and others in the form of new stock certificates, again without restrictive legends. (*Id.*, ¶¶ 26-29, 46-51, 64-69, 80) The Defendants then unlawfully offered and sold the securities into the public markets through their brokerage accounts in the United States without registration statements being in effect. (*Id.*, ¶¶ 39-40-58-59, 74-75, 89-90) The Defendants made $31,686,926 in proceeds from the sale of Swingplane securities, $17,907,546 from the sale of Goff securities, $12,606,711 from the sale of Norstra securities, and $18,160,072 from the sale of Xumanii securities. (*Id.*, ¶¶ 40, 59, 75, 90)

## **PROCEDURAL POSTURE**

Today the SEC has filed a Complaint and a motion for a temporary restraining order freezing assets in the United States in the name or under the control of Caledonian Bank Ltd., Caledonian Securities Ltd., Clear Water Securities, Inc., Legacy Global Markets S.A. and Verdmont Capital, S.A. Additionally, the SEC has submitted a proposed order for the Defendants to show cause why a preliminary injunction should not be entered continuing the asset freeze until a final judgment is entered. The SEC has identified several accounts in the name of Caledonian Bank Ltd. at the Northern Trust International Banking Corporation in Jersey City, New Jersey, an account in the name of Verdmont at Interactive Brokers LLC in Greenwich, Connecticut, and an account in the name Legacy Global at Scottsdale Capital Advisors in Scottsdale, Arizona.

The purpose of the requested freeze is to preserve assets and funds for eventual payment of disgorgement, prejudgment interest and civil money penalties and to prevent the Defendants – foreign entities with no branches, facilities or offices in the U.S. – from transferring such assets or funds beyond the jurisdiction of the Court. Expedited alternative service of the temporary

restraining order, the order to show cause and related papers, and the summons and Complaint will facilitate the proper determination of the asset freeze at the preliminary injunction hearing and will give Defendants notice and an opportunity to be heard at the hearing.

## ARGUMENT

Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that service of process on a foreign corporation can be effected "by other means not prohibited by international agreement, as the court orders."[1] Fed. R. Civ. P. 4(f)(3). The Rule was "adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods for service of process in foreign countries." *Smith v. Islamic Emirate of Afghanistan*, Case No. 01-cv-10132, 2001 WL 1658211, at * 2 (S.D.N.Y. Dec. 26, 2001) (quoting *In re International Telemedia Associates, Inc.*, 245 B.R. 713, 719 (Bankr. N.D. Ga. 2000)). Pursuant to the Rule, "a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, Case No. 05-cv-6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citations omitted).

Alternative service of process under Rule 4(f)(3) "is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265

---

[1] Whereas Rule 4(f)(3) addresses service of process on an *individual* in a foreign country, Rule 4(h) provides that a plaintiff can serve a foreign *corporation* "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual." Fed. R. Civ. P. 4(h)(2). Rule 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Rule 4(f)(2) provides that "if there is no internationally agreed means, or if an international agreement allows but does not specify other means," service can be effected "by a method that is reasonably calculated to give notice." Fed. R. Civ. P. 4(f)(2).

F.R.D. 106, 115 (S.D.N.Y.2010) (citation omitted). *Accord* Wright & Miller, *Federal Practice & Procedure: Civil* § 1134 (3d ed.) (alternative service "is not a disfavored process and should not be considered extraordinary relief"). "A plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Antisevic*, 2009 WL 361739 at *3. And where, as here, the plaintiff seeks emergency relief, alternative service is appropriate without first attempting other methods. "[T]he advisory notes [to Rule 4] suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods remain incomplete or unattempted." *FTC v. PCCare247, Inc.*, Case No. 12-cv-7189, 2013 WL 841037, at *3 (S.D.N.Y. March 7, 2013) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir.2002)).

Court-directed service under Rule 4(f)(3) is permitted where it comports with "constitutional notions of due process," which require that the "method of service crafted by the district court be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Properties*, 284 F.3d. at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "[T]rial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Id.* at 1016.

The Cayman Islands, where Caledonian has its headquarters, is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, which does not prohibit alternative service on defendants by email. *SEC v. Lines*, Case No. 07-cv-11387, 2009 WL 2431976, at *2 (S.D.N.Y. Aug. 7, 2009) (permitting alternative service by e-mail on Cayman Islands defendant). Clear Water and Legacy Global are headquartered in Belize, which

5

is also a signatory to the Hague Service Convention. Panama, where Verdmont has its headquarters, is a signatory to the Inter-American Convention on Letters Rogatory, which does not prohibit alternative service on defendants by email. *Derrevere v. Mirabella Foundation*, Case No. 6:10-cv-925-Orl-28DAB, 2011 WL 1983353, at *2 (M.D. Fla. Apr. 26, 2011)("the Inter-American Convention's provisions regarding service of process are neither mandatory nor exclusive").

Service on foreign defendants through agents in the United States – such as U.S. broker-dealer firms that executed the violative securities sales – does not run afoul of international agreement. *SEC v. Unifund Sal*, 910 F.2d 1028, 1034 (2d Cir. 1990)("[t]he Commission sent all relevant papers by overnight courier to [the defendant] in care of the New York office of Merrill Lynch with instructions to forward the papers by overnight courier to [the defendant] in Beirut").

The requested alternative service of the temporary restraining order, the order to show cause, the summons and Complaint and other papers is reasonably calculated to apprise Defendants of this action and the preliminary injunction hearing. The SEC proposes to serve the relevant papers on Caledonian at the email addresses communications@caledonian.com, CBL@caledonian.com, CSL@caledonian.com and Nathaniel.Orr-Depner@caledonian.com; Clear Water at the email addresses clearwatersecurities@gmail.com and superptk@gmail.com; Legacy Global at the email addresses info@lgm.bz and superptk@gamil.com; and Verdmont at the email address info@verdmont.com. The SEC obtained these email addresses from the Defendants' websites or from their account opening documents at Scottsdale Capital Advisors, a broker-dealer firm through which they offered and sold some of the securities at issue in this action. Nathaniel Orr-Depner purports to be the Managing Director of Caledonian Securities Ltd., and Caledonian used his corporate email account to communicate with Empire Stock

Transfer regarding the transfer of securities to Caledonian. The email address superptk@gmail.com belongs to Philip Thomas Kueber, the CEO and President of Clear Water and an authorized signatory for the Scottsdale brokerage accounts of Clear Water and Legacy Global. Kueber used this email address to communicate with Scottsdale and Empire Stock Transfer.

Service by email is reasonably likely to give the Defendants the required notice of the action. *Philip Morris USA Inc. v. Veles Ltd.*, Case No. 06-cv-2988(GBD), 2007 WL 725412, at *3 (S.D.N.Y. March 12, 2007) ("federal courts have approved email service of process as an appropriate means under Rule 4 in proper circumstances"). Furthermore, broker-dealer firms that executed the securities sales according to the Defendants' orders, if served with the relevant papers, can be directed to forward the papers by international courier to the Defendants. Service through such agents is reasonable. *Unifund Sal*, 910 F.2d at 1034.

## CONCLUSION

Pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, the Court should grant the SEC's motion for leave to serve the Defendants by: (1) sending electronic versions of the temporary restraining order, the order to show cause and related papers, and the summons and Complaint to the Defendants by email; and (2) by hard-copy delivered to certain of the U.S.

broker-dealer firms that the Defendants used to sell securities in Swingplane Ventures, Inc., Goff Corp., Norstra Energy Inc. and Xumanii, Inc. A proposed Order is attached.

Dated: Washington, D.C.
       February 9, 2015

Respectfully submitted,

/s/ Richard E. Simpson
Richard E. Simpson
A. David Williams
Ernesto G. Amparo
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4492 (Simpson)
simpsonr@sec.gov