

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

# ATTESTATION

I HEREBY ATTEST

*that:*

*A diligent search has this day been made of the records and files of this Commission and the records and files do not disclose that any S-1's have been received in this Commission for the period June 25, 2011, through January 12, 2015, under the name of Swingplane Ventures, Inc., pursuant to the provisions of any of the Acts administered by the Commission.*

on file in this Commission

01/12/2015
_____
*Date*

*Joseph Horneman*
Joseph Horneman, Management and Program Analyst



It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, DC, which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or anyone of them, are authorized to execute the above attestation.

For the Commission

_____
Secretary

SEC 334 (9-12)

A0223

```
<DOCUMENT>
<TYPE>S-1/A
<SEQUENCE>1
<FILENAME>g5545.txt
<DESCRIPTION>AMENDMENT NO. 3 TO FORM S-1
<TEXT>
```

As filed with the Securities and Exchange Commission on November 2, 2011

Registration No. 333-176509

=================================================================================

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM S-1/A AMENDMENT NO. 3

REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933

GOFF CORP.
(Exact name of registrant as specified in its charter)

```
<TABLE>
<CAPTION>
<S>                          <C>                          <C>
```

| Nevada | 8741 | 27-3129919 |
|---|---|---|
| (State or jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (IRS Employer Identification Number) |

9 NOF Commercial Centre Industrial Park,              Nevada Commercial Registered Agents LC
 Old Mallow Rd, Cork City, Ireland                        4231 Dant Blvd
          087-154-7690                                  Reno, Nevada 89509
(Address and telephone number of                    (Name, address and telephone
 registrant's executive office)                      number of agent for service)
```
</TABLE>
```

With a Copy to:

Lawrence W. Horwitz Esq.
Horwitz, Cron & Armstrong, LLP 26475 Rancho Parkway South,
Lake Forest, CA 92630 (949) 540-6540
(Name, address, including zip code, and telephone number, including area code,
of agent for service)

From time to time after this Registration Statement is declared effective.
(Approximate date of commencement of proposed sale to the public)

If any of the securities being registered on this Form are to be offered on a
delayed or continuous basis pursuant to Rule 415 under the Securities Act of
1933, check the following box [X]

If this Form is filed to register additional securities for an offering pursuant
to Rule 462(b) under the Securities Act, check the following box and list the
Securities Act registration statement number of the earlier effective
registration statement for the same offering. [ ]

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under
the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. [ ]

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under
the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an
accelerated filer, a non-accelerated filer, or a smaller reporting company. See
definitions of "large accelerated filer," "accelerated filer," and "smaller
reporting company: in Rule 12b-2 of the Exchange Act (Check one):

Large accelerated filer [ ]                    Accelerated Filer [ ]
Non-accelerated filer [ ]                      Smaller reporting company [X]
(Do not check if a Smaller reporting company)

CALCULATION OF REGISTRATION FEE
=================================================================================

| TITLE OF EACH CLASS OF * | PROPOSED MAXIMUM | PROPOSED MAXIMUM |
|---|---|---|

| SECURITIES TO BE REGISTERED | AMOUNT TO BE REGISTERED | OFFERING PRICE PER SHARE (1) | AGGREGATE OFFERING PRICE | AMOUNT OF REGISTRATION FEE |
|---|---|---|---|---|
| Common Stock | 7,090,000 | $0.01 per share | $70,900 | $8.23 |

(1)  Estimated solely for the purpose of calculating the registration fee in accordance with Rule 457 under the Securities Act.

THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(A) OF THE SECURITIES ACT OF 1933 OR UNTIL THE REGISTRATION STATEMENT SHALL BECOME EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SECTION 8(A), MAY DETERMINE.

<PAGE>

SUBJECT TO COMPLETION

PROSPECTUS

GOFF CORP.
7,090,000 SHARES
COMMON STOCK

The selling shareholders named in this prospectus are offering all of the shares of common stock offered through this prospectus for a period of up to two years from the effective date.

Our common stock is presently not quoted on any market or securities exchange.

THE PURCHASE OF THE SECURITIES OFFERED THROUGH THIS PROSPECTUS INVOLVES A HIGH DEGREE OF RISK. SEE SECTION ENTITLED "RISK FACTORS" BEGINNING ON PAGE 5 OF THIS PROSPECTUS.

THE INFORMATION IN THIS PROSPECTUS IS NOT COMPLETE AND MAY BE CHANGED. WE MAY NOT SELL THESE SECURITIES UNTIL THE REGISTRATION STATEMENT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION IS EFFECTIVE. THIS PROSPECTUS IS NOT AN OFFER TO SELL THESE SECURITIES AND IT IS NOT SOLICITING AN OFFER TO BUY THESE SECURITIES IN ANY STATE WHERE THE OFFER OR SALE IS NOT PERMITTED.

The selling shareholders named in this prospectus are offering the 7,090,000 shares of our common stock offered through this prospectus. The 7,090,000 shares offered by the selling shareholders represent 58% of the total outstanding shares as of the date of this prospectus. We will not receive any proceeds from this offering. We have set an offering price for these securities of $0.01 per share of our common stock offered through this prospectus.

|  | Offering Price | Underwriting Discounts and Commissions | Proceeds to Selling Shareholders |
|---|---|---|---|
| Per Share | $  0.01 | None | $  0.01 |
| Total | $70,900 | None | $70,900 |

Our common stock is presently not quoted on any market or securities exchange. The sales price to the public is fixed at $0.01 per share until such time as the shares of our common stock are quoted on the OTC Bulletin Board electronic quotation service. Although we intend to apply for trading of our common stock on the OTC Bulletin Board electronic quotation service, public trading of our common stock may never materialize. If our common stock becomes quoted on the OTC Bulletin Board electronic quotation service, then the sale price to the public will vary according to prevailing market prices or privately negotiated prices by the selling shareholders.

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or passed upon the adequacy or accuracy of this prospectus. Any representation to the contrary is a criminal offense.

The Date of This Prospectus is: _____, 2011

<PAGE>

TABLE OF CONTENTS

PAGE
----

| | |
|---|---|
| Summary | 3 |
| Risk Factors | 5 |
| Forward-Looking Statements | 9 |
| Use of Proceeds | 9 |
| Determination of Offering Price | 9 |
| Dilution | 9 |
| Selling Shareholders | 9 |
| Plan of Distribution | 11 |
| Description of Securities | 13 |
| Interest of Named Experts and Counsel | 14 |
| Description of Business | 14 |
| Market for Common Equity and Related Stockholder Matters | 17 |
| Plan of Operation | 18 |
| Changes in and Disagreements with Accountants | 20 |
| Available Information | 20 |
| Directors, Executive Officers, Promoters and Control Persons | 21 |
| Executive Compensation | 22 |
| Security Ownership of Certain Beneficial Owners and Management | 23 |
| Certain Relationships and Related Transactions | 24 |
| Disclosure of Commission Position of Indemnification for Securities Act Liabilities | 24 |
| Financial Statements | 25 |

2

<PAGE>

SUMMARY

As used in this prospectus, unless the context otherwise requires, "we", "us", "our" "the Company" or "Goff" refers to Goff Corp. All dollar amounts in this prospectus are in U.S. dollars unless otherwise stated. The following summary is not complete and does not contain all of the information that may be important to you. Prospective investors are urged to read the entire prospectus before making an investment decision to purchase our common shares.

We were incorporated on July 12, 2010 under the laws of the state of Nevada. Our principal offices are located at 9 NOF Commercial Centre Industrial Park, Old Mallow Rd, Cork City, Ireland. Our telephone number is 353-86-704-4784. We intend to provide web-based services in that focus around our website that will operate as a link for employers in and individuals seeking employment in the UK and Ireland.

At the time of filing this registration statement the company has begun the development of a corporate website using the following URL:and and (www.goffcareers.com), raised $28,350 in share capital and completed an audit of the company's financial statements ended June 30, 2011. We have yet to implement our business plan.

The following steps are required in order to begin operations (All figures have been converted into US dollars our reporting currency):

COMPLETION OF SECONDARY FINANCING (180 DAYS AFTER THE EFFECTIVENESS OF THIS REGISTRATION STATEMENT)
BUDGET: $20,000

DEVELOP WEBSITE (45 DAYS AFTER THE SECONDARY FINANCING)
BUDGET: $20,000

MARKETING AND SEARCH ENGINE OPTIMIZATION (IMMEDIATELY AFTER SECONDARY FINANCING)
BUDGET: $60,000

VIDEO CONFERENCING AND MOBILE APPLICATIONS (AFTER COMPLETION OF WEBSITE)
BUDGET: $20,000

GENERAL AND ADMINISTRATIVE
BUDGET: $65,000

REVENUE

Revenue is expected to be generated from two main sources:

    Employers listing job positions on website.
    Advertisements and click through marketing placed on website.

TOTAL TIMELINE: 225 DAYS AFTER THE EFFECTIVENESS OF THIS REGISTRATION STATEMENT
TOTAL BUDGET: $185,000

At our year end, June 30, 2011 we had assets of $24,759 made up completely of cash and a net loss of ($4,416). Our current monthly burn rate is approximately

A0226

$1,500 and our current capital will last the company less than 7 months. Our budget to complete our plan of operations is $185,000. The estimated costs associated with this offering are approximately $15,000 leaving us with post-offering cash assets of $9,759 as of June 30, 2011. The current burn rate is primarily made up of the costs associated with being a reporting issuer and is projected to increase substantially once operations begin.

<center>3</center>

&lt;PAGE&gt;
THE OFFERING:

| | |
|---|---|
| Securities Being Offered | Up to 7,090,000 shares of common stock. |
| Offering Price | The selling shareholders will sell our shares at a fixed price of $0.01 per share unless and until our shares are quoted on the OTC Bulletin Board. |
| | There is no public market for our common stock. We cannot give any assurance that the shares offered will have a market value, or that they can be resold at the offered price if and when an active secondary market might develop, or that a public market for our securities may be sustained even if developed. The absence of a public market for our stock will make it difficult to sell your shares in our stock. |
| | We intend to apply to the OTC Bulletin Board, through a market maker that is a licensed broker dealer, to allow the trading of our common stock upon our becoming a reporting entity under the Securities Exchange Act of 1934. If our common stock becomes so quoted and a market for the stock develops, the actual price of stock will be determined by prevailing market prices at the time of sale or by private transactions negotiated by the selling shareholders. The offering price would thus be determined by market factors and the independent decisions of the selling shareholders. |
| Terms of the Offering | The selling shareholders will determine when and how they will sell the common stock offered in this prospectus. |
| Termination of the Offering | The offering will conclude when all of the 7,090,000 shares of common stock have been sold, the shares no longer need to be registered to be sold due to the operation of Rule 144 or we decide at any time to terminate the registration of the shares at our sole discretion but in no event later than two years from the effective date of this registration statement. ( Date of expiration will be provided for this continuous offering once known) |
| Securities Issued and to be Issued | 7,090,000 shares of our common stock to be sold in this prospectus are issued and outstanding as of the date of this prospectus. All of the common stock to be sold under this prospectus will be sold by existing shareholders. |
| Use of Proceeds | We will not receive any proceeds from the sale of the common stock by the selling shareholders. |

The purpose of this offering is to offer existing shareholders (other than officers and directors) the opportunity to benefit from a trading market, if one develops in response to the Company's future performance. Depending on the level of market interest, the Company may consider selling additional shares to new investors to help fund working capital requirements and expand the scope of business. The Company is aware of the fact that the creation of a secondary market of shares for sale may have an adverse effect on our ability to raise capital in the future. The Company is not contractually obligated to file the S-1.

<PAGE>
4

SUMMARY FINANCIAL INFORMATION

The following financial information summarizes the more complete historical
financial information at the end of this prospectus.

| | As of June 30, 2011 |
| --- | --- |
| | (Audited) |
| **BALANCE SHEET** | |
| Total Assets | $ 24,759 |
| Total Liabilities | $    825 |
| Stockholders Equity | $ 23,934 |

| | Period from July 12, 2010 (date of inception) to June 30, 2011 |
| --- | --- |
| | (Audited) |
| **INCOME STATEMENT** | |
| Revenue | $    -- |
| Total Expenses | $  4,416 |
| Net Loss | $ (4,416) |

RISK FACTORS

An investment in our common stock involves a high degree of risk. You should
carefully consider the risks described below and the other information in this
prospectus before investing in our common stock. If any of the following risks
occur, our business, operating results and financial condition could be
seriously harmed. The trading price of our common stock could decline due to any
of these risks, and you may lose all or part of your investment.

WE INTEND TO ISSUE ADDITIONAL SHARES OF COMMON STOCK, WHICH WOULD REDUCE
INVESTORS' PERCENT OF OWNERSHIP AND MAY DILUTE OUR SHARE VALUE.

Our Articles of Incorporation authorize the issuance of 75,000,000 shares of
common stock, par value $0.001 per share, of which 11,440,000 shares are issued
and outstanding. The future issuance of common stock may result in substantial
dilution in the percentage of our common stock held by our then existing
shareholders. We may value any common stock issued in the future on an arbitrary
basis. The issuance of common stock for future services or acquisitions or other
corporate actions may have the effect of diluting the value of the shares held
by our investors, and might have an adverse effect on any trading market for our
common stock.

IF WE DO NOT OBTAIN ADDITIONAL FINANCING, OUR BUSINESS WILL FAIL.

At June 30, 2011, we had cash on hand of $24,759, and we have accumulated a
deficit of ($4,416) in business development expenses. The estimated costs
associated with this offering are approximately $15,000 leaving us with
post-offering cash assets of $9,759 as of June 30, 2011. The current burn rate
is the cost associated with costs of being a reporting issuer and is projected
to increase substantially once operations begin.

We anticipate that additional funding will be needed for general administrative
expenses and marketing costs. We intend to raise the required funds through an
equity placement by filing a secondary registration statement. We will realize

5

<PAGE>
no proceeds from the present registration statement and may have difficulties in
raising additional funds due to the creation of a secondary market of shares for
sale. However, there is no guarantee that we will be able to raise the required
cash and because of this our business may fail. We have not generated any
revenue from operations to date. The specific cost requirements needed to
maintain operations will depend upon demand generated from potential clients but
initial projections are discussed in the Plan of Operations.

We do not currently have any arrangements for financing. Obtaining additional
funding will be subject to a number of factors, including general market
conditions, investor acceptance of our business plan and initial results from
our business operations. These factors may impact the timing, amount, terms or
conditions of additional financing available to us. The most likely source of
future funds available to us is through the sale of additional shares of common
stock or advances from our sole director.

BECAUSE OUR OFFICERS AND DIRECTORS HAVE OTHER BUSINESS INTERESTS, THEY MAY NOT

BE ABLE OR WILLING TO DEVOTE A SUFFICIENT AMOUNT OF TIME TO OUR BUSINESS
OPERATIONS, CAUSING OUR BUSINESS TO FAIL.

Our two officers and directors GaryO'Flynn and Patrick Corkery will only be
devoting limited time to our operations. Patrick will be handling most of the
company's day to day operations and intends to devote 10 hours of his week to
our business affairs until such a time when a salary can be drawn. Gary O'Flynn
will be available on an as needed basis until full operations begin. Because our
officers and directors will only be devoting limited time to our operations, our
operations may be sporadic and occur at times which are convenient to them. As a
result, operations may be periodically interrupted or suspended which could
result in a lack of revenues and a possible cessation of operations.

BECAUSE WE HAVE ONLY TWO OFFICERS AND DIRECTORS WHO HAVE NO FORMAL TRAINING IN
JOB PLACEMENT SERVICES OUR BUSINESS HAS A HIGHER RISK OF FAILURE.

Our two officers Gary O'Flynn and Patrick Corkery do not have experience in the
field of job placement services. Because of this lack of experience there is a
risk that some of the strategic or operational factors needed to achieve
self-sustaining levels of revenues may be overlooked. If we are unable to reach
our projected break-even level of clients our business could fail or require
additional financing beyond our current budget.

BECAUSE WE HAVE ONLY TWO OFFICERS AND DIRECTORS WHO HAVE NO FORMAL TRAINING IN
FINANCIAL ACCOUNTING AND MANAGEMENT, OUR BUSINESS HAS A HIGHER RISK OF FAILURE.

We have only two officers and directors. Both have no formal training in
financial accounting and management; however, they are responsible for our
managerial and organizational structure, which will include preparation of
disclosure and accounting controls. When the disclosure and accounting controls
referred to above are implemented, he will be responsible for the administration
of them. Should he not have sufficient experience, he may be incapable of
creating and implementing the controls which may cause us to be subject to
sanctions and fines by the SEC which ultimately could cause an investor to lose
their investment. Gary and Patrick's lack of training in financial accounting
and management my result in a material misstatement of the Company's financial
statements. In addition due to the Company's lack of accounting personnel we may
be unsuccessful in maintaining effective internal controls over financial
reporting and disclosure controls and procedures, which may result in material
misstatements of our financial statements.

BECAUSE OUR CONTINUATION AS A GOING CONCERN IS IN DOUBT, WE WILL BE FORCED TO
CEASE BUSINESS OPERATIONS UNLESS WE CAN GENERATE PROFITABLE OPERATIONS IN THE
FUTURE.

We will be incurring losses until we build a break-even level of revenue.
Further losses are anticipated in the development of our business. As a result,
there is substantial doubt about our ability to continue as a going concern. Our
ability to continue as a going concern is dependent upon our ability to generate
profitable operations in the future and/or to obtain the necessary financing to
meet our obligations and repay our liabilities arising from normal business

6

<PAGE>
operations when they come due. We will require additional funds in order to
provide proper service to our potential clients. At this time, we cannot assure
investors that we will be able to obtain financing. If we are unable to raise
needed financing, we will have to delay or abandon further consulting efforts.
If we cannot raise financing to meet our obligations, we will be insolvent and
will be forced to cease our business operations.

BECAUSE OUR OFFICERS AND DIRECTORS OWN 36% OF OUR ISSUED AND OUTSTANDING COMMON
STOCK, THEY CAN MAKE AND CONTROL CORPORATE DECISIONS THAT MAY BE DISADVANTAGEOUS
TO MINORITY SHAREHOLDERS.

Our officers and directors, Gary O'Flynn and Patrick Corkery, own approximately
36% of the outstanding shares of our common stock. Accordingly, they will have a
significant influence in determining the outcome of all corporate transactions
or other matters, including mergers, consolidations, and the sale of all or
substantially all of our assets. They will also have the power to prevent or
cause a change in control. The interests of our officers and directors may
differ from the interests of the other stockholders and thus result in corporate
decisions that are disadvantageous to other shareholders.

THE AMOUNT OF SHARES TO BE SOLD THROUGH THIS OFFERING MAY MAKE IT DIFFICULT TO
MAKE A SUCCESSFUL OFFERING OF OUR SECURITIES IN THE NEAR FUTURE.

Our selling shareholders are offering a significant percentage (64%) of our
outstanding shares through this registration statement. As such, it may be

difficult to make a successful offering of our securities to raise capital in
the near future.

U.S. INVESTORS MAY EXPERIENCE DIFFICULTIES IN ATTEMPTING TO EFFECT SERVICE OF
PROCESS AND TO ENFORCE JUDGMENTS BASED UPON U.S. FEDERAL SECURITIES LAWS AGAINST
THE COMPANY AND ITS NON-U.S. RESIDENT OFFICERS AND DIRECTORS.

We are organized under the laws of State of Nevada, but our officers and
directors are non-U.S. residents. Consequently, it may be difficult for
investors to affect service of process on Gary O'Flynn and Patrick Corkery in
the United States and to enforce in the United States judgments obtained in
United States courts against Mr. O'Flynn based on the civil liability provisions
of the United States securities laws. Since our assets will be located in
Ireland and other non-US countries it may be difficult or impossible for U.S.
investors to collect a judgment against us. In addition, any judgment obtained
in the United States against us may not be enforceable in the United States.

IF A MARKET FOR OUR COMMON STOCK DOES NOT DEVELOP, SHAREHOLDERS MAY BE UNABLE TO
SELL THEIR SHARES.

There is currently no market for our common stock and we can provide no
assurance that a market will develop. We plan to apply for listing of our common
stock on the over the counter bulletin board upon the effectiveness of this
registration statement, of which this prospectus forms a part. However, we can
provide investors with no assurance that our shares will be quoted on the
bulletin board or, if quoted, that a public market will materialize. If no
market is ever developed for our shares, it will be difficult for shareholders
to sell their stock. In such a case, shareholders may find that they are unable
to achieve benefits from their investment.

OUR SHARES OF COMMON STOCK ARE SUBJECT TO THE "PENNY STOCK" RULES OF THE
SECURITIES AND EXCHANGE COMMISSION AND THE TRADING MARKET IN OUR SECURITIES WILL
BE LIMITED, WHICH WILL MAKE TRANSACTIONS IN OUR STOCK CUMBERSOME AND MAY REDUCE
THE VALUE OF AN INVESTMENT IN OUR STOCK.

The SEC has adopted rules that regulate broker-dealer practices in connection
with transactions in "penny stocks." Penny stocks generally are equity
securities with a price of less than $5.00 (other than securities registered on

<PAGE>
certain national securities exchanges or quoted on the NASDAQ system, provided
that current price and volume information with respect to transactions in such
securities is provided by the exchange or system). Penny stock rules require a
broker-dealer, prior to a transaction in a penny stock not otherwise exempt from
those rules, to deliver a standardized risk disclosure document prepared by the
SEC, which specifies information about penny stocks and the nature and
significance of risks of the penny stock market. A broker-dealer must also
provide the customer with bid and offer quotations for the penny stock, the
compensation of the broker-dealer, and sales person in the transaction, and
monthly account statements indicating the market value of each penny stock held
in the customer's account. In addition, the penny stock rules require that,
prior to a transaction in a penny stock not otherwise exempt from those rules,
the broker-dealer must make a special written determination that the penny stock
is a suitable investment for the purchaser and receive the purchaser's written
agreement to the transaction. These disclosure requirements may have the effect
of reducing the trading activity in the secondary market for stock that becomes
subject to those penny stock rules. If a trading market for our common stock
develops, our common stock will probably become subject to the penny stock
rules, and shareholders may have difficulty in selling their shares.

ANY ADDITIONAL FUNDING WE ARRANGE THROUGH THE SALE OF OUR COMMON STOCK WILL
RESULT IN DILUTION TO EXISTING SHAREHOLDERS.

We must raise additional capital in order for our business plan to succeed. Our
most likely source of additional capital will be through the sale of additional
shares of common stock. Such stock issuances will cause stockholders' interests
in our company to be diluted. Such dilution will negatively affect the value of
investors' shares.

WE DO NOT EXPECT TO PAY DIVIDENDS IN THE FORESEEABLE FUTURE.

We have never paid any dividends on our common stock. We do not expect to pay
cash dividends on our common stock at any time in the foreseeable future. The
future payment of dividends directly depends upon our future earnings, capital
requirements, financial requirements and other factors that our board of
directors will consider. Since we do not anticipate paying cash dividends on our
common stock, a return on your investment, if any, will depend solely on an
increase, if any, in the market value of our common stock

WE HAVE NO EXPERIENCE AS A PUBLIC COMPANY.

We have never operated as a public company. We have no experience in complying with the various rules and regulations, which are required of a public company. As a result, we may not be able to operate successfully as a public company, even if our operations are successful. We plan to comply with all of the various rules and regulations, which are required of a public company. However, if we cannot operate successfully as a public company, your investment may be adversely affected. Our inability to operate as a public company could be the basis of your losing your entire investment in us.

As a public company we will incur additional costs including but not limited to the following: Audit, Legal, Prospectus printing and drafting, SEC fees, Market Maker, Transfer Agent, and EDGAR filing fees. These costs are expected to run between $15,000 and $35,000 per year.

WE DO NOT INTEND TO REGISTER A CLASS OF SECURITIES UNDER SECTION 12 OF THE EXCHANGE ACT, AND AS SUCH, WE WILL ONLY BE SUBJECT TO LIMITED REPORTING REQUIREMENTS PURSUANT TO SECTION 15(D) OF THE EXCHANGE ACT.

We do not intend to register a class of securities under Section 12 of the Exchange Act. Therefore, we will only be subject to limited reporting requirements imposed by Section 15(d) of the Exchange Act. Specifically, in addition to the limited reporting requirements, we are not subject to the Proxy Rules outlined in Section 14 of the Exchange Act, the Section 16 short-swing profit provisions, or the tender offer rules under the Williams Act, nor shall our officers, directors and beneficial owners be required to report their beneficial ownership to the SEC pursuant to Section 16 of the Exchange Act. Pursuant to Section 15(d), we will be required to file periodic reports with the SEC, such as annual reports on Form 10-K, quarterly reports on Form 10-Q, and current reports on Form 8-K, once this Registration Statement is declared effective. Thus, investors will have access to less information about the Company and therefore bear a larger risk than if we were a fully reporting company.

IF WE HAVE LESS THAN 300 RECORD SHAREHOLDERS AT THE BEGINNING OF ANY FISCAL YEAR, OTHER THAN THE FISCAL YEAR WITHIN WHICH THIS REGISTRATION STATEMENT BECOMES EFFECTIVE, OUR REPORTING OBLIGATIONS UNDER SECTION 15(D) OF THE EXCHANGE ACT WILL BE SUSPENDED.

8

<PAGE>

There is a significant risk that we will have less than 300 record shareholders at our next fiscal year end and at the conclusion of this offering. If we have less than 300 record shareholders, our reporting obligations under Section 15(d) of the Exchange Act will be suspended, and we would no longer be obligated to provide periodic reports following the Form 10-K for the fiscal year end immediately following this offering. Furthermore, if at the beginning of any fiscal year, we have fewer than 300 record shareholders for the class of securities being registered under this Registration Statement, our reporting obligations under Section 15(d) of the Exchange Act will be automatically suspended for that fiscal year. If we were to cease reporting, you will not have access to updated information regarding the Company's business, financial condition and results of operation.

FORWARD-LOOKING STATEMENTS

This prospectus contains forward-looking statements that involve risks and uncertainties. We use words such as anticipate, believe, plan, expect, future, intend and similar expressions to identify such forward-looking statements. You should not place too much reliance on these forward-looking statements. Our actual results are most likely to differ materially from those anticipated in these forward-looking statements for many reasons, including the risks faced by us described in the "Risk Factors" section and elsewhere in this prospectus.

USE OF PROCEEDS

We will not receive any proceeds from the sale of the common stock offered through this prospectus by the selling shareholders.

DETERMINATION OF OFFERING PRICE

The selling shareholders will sell our shares at a fixed price of $0.01 per share unless and until our shares are quoted on the OTC Bulletin Board. We determined this offering price arbitrarily. There is no relationship between

this price and our assets, earnings, book value or any other objective criteria of value.

We intend to apply to the OTC Bulletin Board through a market maker for the quotation of our common stock upon our becoming a reporting entity under the Securities Exchange Act of 1934. If our common stock becomes so quoted and a market for the stock develops, the actual price of stock will be determined by prevailing market prices at the time of sale or by private transactions negotiated by the selling shareholders. The offering price would thus be determined by market factors and the independent decisions of the selling shareholders.

## DILUTION

The common stock to be sold by the selling shareholders is common stock that is currently issued and outstanding. Accordingly, there will be no dilution to our existing shareholders.

## SELLING SHAREHOLDERS

The selling shareholders named in this prospectus are offering all of the 7,090,000 shares of common stock offered through this prospectus. These shares were acquired from us in private placements that were exempt from registration provided under Regulation S of the Securities Act of 1933. All shares were acquired outside of the United States by non-U.S. persons. The shares include the following:

1. 7,090,000 shares of our common stock that the selling shareholders acquired from us in an offering that was exempt from registration under Regulation S of the Securities Act of 1933 that was completed on March 10, 2010;

9

<PAGE>

The following table provides as of the date of this prospectus, information regarding the beneficial ownership of our common stock held by each of the selling shareholders, including:

1. the number of shares owned by each prior to this offering;
2. the total number of shares that are to be offered for each;
3. the total number of shares that will be owned by each upon completion of the offering; and
4. the percentage owned by each upon completion of the offering.

<TABLE>
<CAPTION>

| Name Of Selling Shareholder | Shares Owned Prior To This Offering | Total Number Of Shares To Be Offered For Selling Shareholders Account | Total Shares to be Owned Upon Completion Of This Offering | Percentage of Shares owned Upon Completion of This Offering |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Stephen Walsh | 350,000 | 350,000 | Nil | Nil |
| Kieran Walsh | 350,000 | 350,000 | Nil | Nil |
| John Hornibrook | 350,000 | 350,000 | Nil | Nil |
| Kevin Crowley | 350,000 | 350,000 | Nil | Nil |
| John Devine | 350,000 | 350,000 | Nil | Nil |
| Patrick Crowley | 350,000 | 350,000 | Nil | Nil |
| Alan Carroll | 350,000 | 350,000 | Nil | Nil |
| Alan Gahan | 350,000 | 350,000 | Nil | Nil |
| Mandy Bullman | 350,000 | 350,000 | Nil | Nil |
| Ciara O'Driscoll | 350,000 | 350,000 | Nil | Nil |
| Toney Rodgers | 350,000 | 350,000 | Nil | Nil |
| Frank Twomey | 350,000 | 350,000 | Nil | Nil |
| Brian Twomey | 350,000 | 350,000 | Nil | Nil |
| Donal Twomey | 350,000 | 350,000 | Nil | Nil |
| Joan Twomey | 350,000 | 350,000 | Nil | Nil |
| Colm Norris | 250,000 | 250,000 | Nil | Nil |
| Jeremy O'Leary | 250,000 | 250,000 | Nil | Nil |
| Frances O'Leary | 250,000 | 250,000 | Nil | Nil |
| Mark O'Leary | 250,000 | 250,000 | Nil | Nil |
| Rhona O'Leary | 250,000 | 250,000 | Nil | Nil |
| Annette O'Leary | 150,000 | 150,000 | Nil | Nil |
| Jeremiah Grandon | 150,000 | 150,000 | Nil | Nil |
| Paul Sutton | 45,000 | 45,000 | Nil | Nil |
| Liam Power | 75,000 | 75,000 | Nil | Nil |
| Alma Crean | 75,000 | 75,000 | Nil | Nil |
| Valerie O'Leary | 45,000 | 45,000 | Nil | Nil |
| Michael Walsh | 50,000 | 50,000 | Nil | Nil |

```
</TABLE>
```

To our knowledge, none of the selling shareholders or their beneficial owners:

- has had a material relationship with us other than as a shareholder at any time within the past three years; or
- has ever been one of our officers or directors or an officer or director of our predecessors or affiliates
- are broker-dealers or affiliated with broker-dealers.

<div align="center">10</div>

```
<PAGE>
```

<div align="center">PLAN OF DISTRIBUTION</div>

The selling shareholders may sell some or all of their common stock in one or more transactions, including block transactions. There are no arrangements, agreements or understandings with respect to the sale of these securities.

The selling shareholders will sell our shares at a fixed price of $0.01 unless and until our shares are quoted on the OTC Bulletin Board. We determined this offering price arbitrarily.. We intend to contact an authorized OTC Bulletin Board market-maker for sponsorship of our securities on the OTC Bulletin Board. Although we intend to apply for quotation of our common stock on the OTC Bulletin Board, public trading of our common stock may never materialize. If our common stock becomes quoted on the OTC Bulletin Board, then the sales price to the public will vary according to the selling decisions of each selling shareholder and the market for our stock at the time of resale.

If applicable, the selling shareholders may distribute shares to one or more of their nominees who are unaffiliated with us. Such nominees may, in turn, distribute such shares as described above. If these shares being registered for resale are transferred from the named selling shareholders and the new shareholders wish to rely on the prospectus to resell these shares, then we must first file a prospectus supplement naming these individuals as selling shareholders and providing the information required concerning the identity of each selling shareholder and he or her relationship to us. There is no agreement or understanding between the selling shareholders and any nominees with respect to the distribution of the shares being registered for resale pursuant to this registration statement.

For the purpose of this registration statement nominee will be defined as: (a) a person or entity who is requested or named to act for another, such as an agent or trustee, or (b) a potential successor to another's rights under a contract.

We can provide no assurance that all or any of the common stock offered will be sold by the selling shareholders.

We are bearing all costs relating to the registration of the common stock. The selling shareholders, however, will pay any commissions or other fees payable to brokers or dealers in connection with any sale of the common stock.

Other than those who are considered affiliates and must comply with Rule 144, the persons listed in the table above plan to offer the shares shown opposite their respective names by means of this prospectus. The owners of the shares to be sold by means of this prospectus are referred to as the "selling" shareholders". The selling shareholders acquired their shares from us in private negotiated transactions. These shares may be sold by one or more of the following methods, without limitations.

- A block trade in which a broker or dealer so engaged will attempt to sell the shares as agent but may position and resell a portion of the block as principal to facilitate the transaction;
- Purchase by a broker or dealer as principal and resale by such broker or dealer for its account pursuant to this prospectus;
- Ordinary brokerage transactions and transactions in which the broker solicits purchasers
- Face to face transactions between sellers and purchasers without a broker/dealer.

In competing sales, brokers or dealers engaged by the selling shareholders may arrange for other brokers or dealers to participate. Brokers or dealers may receive commissions or discounts from selling shareholders in amounts to be negotiated. As to any particular broker-dealer, this compensation might be in excess of customary commissions. Neither, we nor the selling stockholders can presently estimate the amount of such compensation.

Any broker/dealers who act in connection with the sale of the shares will be deemed to be "underwriters" within the meaning of the Securities Acts of 1933, and any commissions received by them and any profit on any resale of the shares

our common stock.

CONVERTIBLE SECURITIES

We have not issued and do not have any outstanding securities convertible into shares of our common stock or any rights convertible or exchangeable into shares of our common stock.

## INTERESTS OF NAMED EXPERTS AND COUNSEL

No expert or counsel named in this prospectus as having prepared or certified any part of this prospectus or having given an opinion upon the validity of the securities being registered or upon other legal matters in connection with the registration or offering of the common stock was employed on a contingency basis, or had, or is to receive, in connection with the offering, an interest, direct or indirect, in the registrant or any of its parents or subsidiaries. Nor was any such person connected with the registrant or any of its parents or subsidiaries as a promoter, managing or principal underwriter, voting trustee, director, officer, or employee.

Lawrence W. Horwitz, Esq. has provided an opinion on the validity of our common stock.

The financial statements included in this prospectus have been audited by Sadler, Gibb & Associates, LLC. To the extent and for the periods set forth in their report appearing elsewhere in this document and in the registration statement filed with the SEC, and are included in reliance upon such report given upon the authority of said firm as experts in auditing and accounting.

## DESCRIPTION OF BUSINESS

We were incorporated in the State of Nevada on July 12, 2010. We have not started operations but started initial work on a corporate website (www.goffcareers.com). As of the date of this filing, our website only includes contact information as well as a brief description of the Company. We intend to create a website that will operate as a link for employers in and individuals seeking employment in the UK and Ireland. We intend to differentiate ourselves from our competition by taking advantage of social media tools both to spread awareness and to create user friendly applications (i.e. allow job seekers to get updates via Tweets for new jobs in given fields and locations, share jobs with friends or recommend a friend to an employer on Facebook). We also intend to create an interface to allow for employers and job seekers to conduct interviews via video conferencing and applications for popular mobile devices. We believe this to be an area that will allow us to offer additional services in the future and create new revenue streams.

14

<PAGE>
PRO FORMA EXPENSE AND REVENUE BUDGET (ALL COSTS HAVE BEEN CONVERTED TO US DOLLARS OUR REPORTING CURRENCY)

Before any revenue is generated the company will require additional capital which we intend to raise through an equity financing and the filing of an additional registration statement. We will realize no proceeds from the present registration statement and may have difficulties in raising additional funds due to the creation of a secondary market of shares for sale. We intend to concentrate all our efforts on raising capital during this period.

We cannot commence our plan of operations even if this registration statement goes effective because we will not receive any proceeds from the sale of shares. We can only commence operations if we raise cash through the future sale of shares. We will require additional financing of $185,000 in order to proceed with our full business plan for a full year. We plan to sell additional common shares in order to raise the funds necessary to pursue our plan of operations. Issuances of additional shares will result in dilution to our existing shareholders. We also may receive loans from our officers and directors. We currently do not have any arrangements in place for obtaining director loans and there is no assurance that we will be successful in completing any equity financing.

If we are successful in raising capital we intend on carrying out our plan of operations.

CAPITAL EXPENSES

Major budgeted expenses include the following:

Secondary Offering:              $ 20,000
Initial Website Development:     $ 20,000

A0234

```
Video Conferencing and Apps:          $ 20,000
Marketing and Related:                $ 60,000
General and Administrative:           $ 65,000

Total Estimated Capital Expenses:     $185,000
```

VARIABLE EXPENSES

The primary variable cost will be web-based consulting services. Our Capital Expenses include an initial website creation cost. However as we increase the number of clients we will require additional technical services to make revisions and updates to the corporate website.

GENERAL AND ADMINISTRATIVE AND OVERHEAD

```
Audit:                                $ 15,000
Legal:                                $  8,000
Filing fees:                          $  2,000
Salaries:                             $ 40,000

Total Estimated Corporate Overhead Expenses:  $ 65,000
```

REVENUES

Revenues will be based on the amount of clients we are able to provide our services to and the amount of user traffic we are able to drive to our site.

<center>15</center>

<PAGE>
EMPLOYERS

Our prices will range from $50 - $250 per month and will be dependent on the amount of content and visibility provided for the offer of employment. A simple job posting with less than 200 words and no highlighting of the title will run at a flat rate of $50 per month. If the employer wishes to increase visibility by highlighting the posting or having additional words and/or images, prices will increase accordingly.

Our breakeven point for clients with an average price of $100 per month is 155 employer postings on a monthly basis.

BANNER ADVERTISEMENTS:

The price we are able to charge for banner advertisements will depend on user traffic and if our business model is successful will increase over time. We intend to market 3 separate spots on our homepage initially: one large banner ($300 per month) and two smaller banners ($100 per month) for an additional $500 per month. Management intends to increase traffic and resulting price of banner advertisements through marketing efforts.

MARKET

Our market is dual focused. Our revenues will come primarily from employers who are seeking suitable candidates for positions within firms. An equally important market for our business model is awareness and traffic from job seekers of all categories (unemployed, students, people seeking new careers and people seeking second jobs). The sizes of both the aforementioned markets are immense when considering the entirety of the United Kingdom and Ireland.

Gaining market share of both employers and job seekers from current competition will be the primary focus of our marketing strategy and management efforts for the initial year of operations.

COMPETITION

Our primary competitors in the online job placement and requirement space are listed below:

http://www.loadzajobs.ie/
http://www.recruitireland.com/
http://www.jobs.ie/hr_recruitment_jobs.aspx
http://www.irishjobs.ie/

MARKETING

Goff Corp will use all the standard web-based company marketing methods used including Search Engine Optimization, a user-friendly website and multiple domain names. In addition we intend to set up booths at universities, community colleges, job fairs, and high-schools. We will not only create awareness for our

website but market our advantages over our competitors (social media/video conferencing/Apps).

16

<PAGE>
An agreement has been signed with Park Management Company Ltd. (See exhibit 10.1). In this agreement, Park Management Company has agreed to use the services of Goff Corp in order to source future employees. An initial fee of $150, as well as additional success fees, is included in the agreement. This agreement will not take effect until such a time Goff Corp is operational.

EMPLOYEES

We are a development stage company and currently have no employees, other than our two officers and directors. We intend to hire additional employees as required in the future.

GOVERNMENT REGULATIONS

We are not currently subject to direct federal, state or local regulation other than the requirement to have a business license for the areas in which we conduct business. We do not believe that government regulation will have a material impact on the way we conduct our business in the UK or Ireland.

RESEARCH AND DEVELOPMENT

We have not incurred any other research or development expenditures since our incorporation.

SUBSIDIARIES

We do not have any subsidiaries.

PATENTS AND TRADEMARKS

We do not own, either legally or beneficially, any patents or trademarks.

OFFICES

Our principal offices are located 9 NOF Commercial Centre Industrial Park, Old Mallow Rd, Cork City, Ireland.. Our telephone number is 353-86-704-4784. The current office space is being loaned to us free of charge by our Director, Patrick Corkery. We do not pay any rent and there is no agreement to pay any rent in the future. Such costs are immaterial to the financial statements and, accordingly have not been reflected therein.

LEGAL PROCEEDINGS

We are not currently a party to any legal proceedings. Our address for service of process in Nevada is PO Box 4470 Lake Tahoe 89449.

MARKET FOR COMMON EQUITY AND RELATED STOCKHOLDER MATTERS

NO PUBLIC MARKET FOR COMMON STOCK

There is presently no public market for our common stock. We anticipate applying for trading of our common stock on the over the counter bulletin board upon the effectiveness of the registration statement of which this prospectus forms a part. However, we can provide no assurance that our shares will be quoted on the bulletin board or, if quoted, that a public market will materialize.

STOCKHOLDERS OF OUR COMMON SHARES

As of the date of this registration statement, we have 29 registered shareholders.

17

<PAGE>
RULE 144 SHARES

11,440,000 shares of our common stock are issued and outstanding as of the date of this prospectus. The resale of our common stock must be by way of registration or through reliance upon an exemption from registration.

When Rule 144 is available, our affiliate stockholder shall be entitled to sell within any three month period a number of shares that does not exceed the greater of:

    1.  1% of the number of shares of the company's common stock then

        outstanding; or

2.    the average weekly trading volume of the company's common stock during the four calendar weeks preceding the filing of a notice on Form 144 with respect to the sale.

Sales under Rule 144 are also subject to manner of sale provisions and notice requirements and to the availability of current public information about the company.

STOCK OPTION GRANTS

To date, we have not granted any stock options.

REGISTRATION RIGHTS

We have not granted registration rights to the selling shareholders or to any other persons.

DIVIDENDS

There are no restrictions in our articles of incorporation or bylaws that prevent us from declaring dividends. The Nevada Revised Statutes, however, do prohibit us from declaring dividends where, after giving effect to the distribution of the dividend:

1.    we would not be able to pay our debts as they become due in the usual course of business; or

2.    our total assets would be less than the sum of our total liabilities plus the amount that would be needed to satisfy the rights of shareholders who have preferential rights superior to those receiving the distribution.

We have not declared any dividends, and we do not plan to declare any dividends in the foreseeable future.

PLAN OF OPERATION

ALL FIGURES HAVE BEEN CONVERTED INTO US DOLLARS OUR REPORTING CURRENCY

COMPLETION OF SECONDARY FINANCING (180 DAYS AFTER THE EFFECTIVENESS OF THIS REGISTRATION STATEMENT)

We expect to complete an additional public offering and file an additional registration statement registering the newly issued shares within 180 days after the effectiveness of this registration statement by the Securities and Exchange Commissions. We intend to concentrate all our efforts on raising capital during this period. We do not plan to begin business operations until we complete our additional public offering. We will require additional financing of $185,000 in order to proceed with our full business plan for a full year. The breakdown of the $185,000 is discussed in the plan of operation except for the $65,000 associated with General and Administrative expenses. We will realize no proceeds

18

<PAGE>
from this registration statement and may have difficulties in raising additional funds due to the creation of a secondary market of shares for sale.

We plan to sell additional common shares in order to raise the funds necessary to pursue our plan of operations. Issuances of additional shares will result in dilution to our existing shareholders. We also may receive loans from our officers and directors.
We currently do not have any arrangements in place for obtaining director loans and there is no assurance that we will be successful in completing any equity financing. Once the present registration statement is effective there will be a ready market of secondary shares for sale, from which we will receive no proceeds. This will make it difficult to complete our secondary offering and the future share price will dictate the price of any additional raises.

BUDGET: 20,000

DEVELOP WEBSITE (45 DAYS AFTER THE EFFECTIVENESS OF THIS REGISTRATION STATEMENT)

We have begun work initial work on our website but additional funds are required to complete the client management system and other software. Our business is based completely around our website so this is an area we intend to make visually impressive and user friendly.

BUDGET: $20,000

BEGIN MARKETING (IMMEDIATELY AFTER SECONDARY FINANCING)

Goff Corp will use all the standard web-based company marketing methods used including Search Engine Optimization, a user-friendly website and multiple domain names. In addition we intend to set up booths at universities, community colleges, job fairs, and high-schools. We will not only create awareness for our website but market our advantages over our competitors (social media/video conferencing/Apps).

BUDGET: $60,000

DEVELOP VIDEO CONFERENCING AND MOBILE APPLICATIONS (UPON COMPLETION OF WEBSITE)

We have begun work initial work on our website but additional funds are required to complete the client management system and other software. Our business is based completely around our website so this is an area we intend to make visually impressive and user friendly.

BUDGET: $20,000

SUMMARY

In summary, we should be in full operation and taking on 225 days after the effectiveness of this registration statement. Our main focus once in full operation will be to expand our business through marketing efforts and constantly improving our website with the aim to be the most user friendly and effective site of its kind.

LIMITED OPERATING HISTORY; NEED FOR ADDITIONAL CAPITAL

There is no historical financial information about us upon which to base an evaluation of our performance. We are a start-up company and have not generated any revenues. We cannot guarantee success of our business operations. Our business is subject to risks inherent in the establishment of a new business enterprise, including limited capital resources and possible cost overruns due to price and cost increases in services and products.

                                      19
<PAGE>
We have no assurance that future financing will be available to us on acceptable terms. If financing is not available on satisfactory terms, we may be unable to continue, develop or expand our operations. Equity financing could result in additional dilution to existing shareholders.

RESULTS OF OPERATIONS FOR PERIOD ENDING JUNE 30, 2011

We did not earn any revenues from our incorporation on July 12, 2010 to June 30, 2011. We incurred operating expenses in the amount of ($4,416) for the period from our inception on July 12, 2010 through June 30, 2011. These operating expenses were comprised of incorporation costs, website, bank service charges and other development costs.

As of June 30, 2011, our current assets were $24,759 and our liabilities were $825, which resulting in a working capital of 23,934. As of June 30, 2011, current assets were comprised of $24,759 in cash and liabilities were comprised of $825 director loan. Management believes the current cash position is sufficient to complete our secondary offering but not enough cash to begin full operations. We will require additional capital in order to develop our website, begin marketing and initiate operations.

We have not attained profitable operations and are dependent upon obtaining financing to continue with our business plan.

                    CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS

We have had no changes in or disagreements with our accountants.

                            AVAILABLE INFORMATION

We have filed a registration statement on Form S-1 under the Securities Act of 1933 with the Securities and Exchange Commission with respect to the shares of our common stock offered through this prospectus. This prospectus is filed as a part of that registration statement, but does not contain all of the information contained in the registration statement and exhibits. Statements made in the registration statement are summaries of the material terms of the referenced contracts, agreements or documents of the company. We refer you to our registration statement and each exhibit attached to it for a more detailed description of matters involving the company. You may inspect the registration statement, exhibits and schedules filed with the Securities and Exchange

Commission at the Commission's principal office in Washington, D.C. Copies of all or any part of the registration statement may be obtained from the Public Reference Section of the Securities and Exchange Commission, 100 F Street NE, Washington, D.C. 20549. D.C. 20549. Please call the Commission at 1-800-SEC-0330 for further information on the operation of the public reference rooms.

The Securities and Exchange Commission also maintains a web site at http://www.sec.gov that contains reports, proxy statements and information regarding registrants that file electronically with the Commission. Our registration statement and the referenced exhibits can also be found on this site.

20

<PAGE>
DIRECTORS, EXECUTIVE OFFICERS, PROMOTERS AND CONTROL PERSONS

Our executive officers and directors and their ages as of the date of this prospectus are as follows:

DIRECTORS:

| Name of Director | Age |
| --- | --- |
| GaryO'Flynn | 36 |
| Patrick Corkery | 26 |

EXECUTIVE OFFICERS:

| Name of Officer | Age | Office |
| --- | --- | --- |
| GaryO'Flynn | 36 | President, Chief Executive Officer, Treasurer, Chief Financial Officer and Chief Accounting Officer |
| Patrick Corkery | 26 | Director |

BIOGRAPHICAL INFORMATION

GaryO'Flynn

Since our inception on July 12, 2010, Gary O'Flynn has been our President, Chief Executive Officer, Treasurer, Chief Financial Officer, Chief Accounting Officer and a member of our board of directors. Mr. O'Flynn attended The Holy Trinity College in Cork, Ireland where he obtained a B.A in Commerce and an LLB. Since finishing University Mr. O'Flynn has qualified as a Solicitor in 2004 and a Qualified Financial Advisor (QFA) in 2007. For the past six years, Gary has operated his own firm, "Gary O'Flynn Solicitor," under which he offers advisory services that include life insurance, pensions and taxation advice. Gary has not been a member of the board of directors of any corporations during the last five years. He intends to devote approximately 25% of his business time to our affairs.

During the past ten years, Mr. O'Flynn has not been the subject to any of the following events:

1. Any bankruptcy petition filed by or against any business of which Mr. O'Flynn was a general partner or executive officer either at the time of the bankruptcy or within two years prior to that time.
2. Any conviction in a criminal proceeding or being subject to a pending criminal proceeding.
3. An order, judgment, or decree, not subsequently reversed, suspended or vacated, or any court of competent jurisdiction, permanently or temporarily enjoining, barring, suspending or otherwise limiting Mr. O'Flynn's involvement in any type of business, securities or banking activities.

21

<PAGE>
4. Found by a court of competent jurisdiction (in a civil action), the Securities and Exchange Commission or the Commodity Future Trading Commission to have violated a federal or state securities or commodities law, and the judgment has not been reversed, suspended or vacated.

PATRICK CORKERY

Since April 1, 2011, Patrick Corkery has been a member of our board of

directors. Mr. Corkery attended the College of Cork where he obtained a Bachelor's of Arts Degree in history and politics in 2007. Since finishing his education Mr. Corkery worked as the UCC Marketing and Communications Coordinator from October 2007-January 2008. From February 2008-December 2009 Mr Corkery worked with MCM Security "MCM". While with MCM Mr. Corkery was responsible for security at the St. Michal's Hospital in Cork City. Currently, Patrick Corkery is employed as a Parliamentary Assistant where he is responsible for press release drafting, liaising with government departments and working with constituent issues. Patrick has not been a member of the board of directors of any corporations during the last five years. He intends to devote approximately 30% of his business time to our affairs.

During the past ten years, Mr. Corkery has not been the subject to any of the following events:

1. Any bankruptcy petition filed by or against any business of which Mr. Corkery was a general partner or executive officer either at the time of the bankruptcy or within two years prior to that time.
2. Any conviction in a criminal proceeding or being subject to a pending criminal proceeding.
3. An order, judgment, or decree, not subsequently reversed, suspended or vacated, or any court of competent jurisdiction, permanently or temporarily enjoining, barring, suspending or otherwise limiting Mr. Corkery's involvement in any type of business, securities or banking activities.
4. Found by a court of competent jurisdiction (in a civil action), the Securities and Exchange Commission or the Commodity Future Trading Commission to have violated a federal or state securities or commodities law, and the judgment has not been reversed, suspended or vacated.

TERM OF OFFICE

Our sole officer and director is appointed for a one-year term to hold office until the next annual general meeting of our shareholders or until removed from office in accordance with our bylaws.

SIGNIFICANT EMPLOYEES

We have no significant employees other than our sole officer and director.

EXECUTIVE COMPENSATION

SUMMARY COMPENSATION TABLE

The table below summarizes all compensation awarded to, earned by, or paid to our executive officers by any person for all services rendered in all capacities to us for the fiscal period from our incorporation on July 12, 2010 to June 30, 2011 (our fiscal year end) and subsequent thereto to the date of this prospectus.

22

<PAGE>

SUMMARY COMPENSATION TABLE

<TABLE>
<CAPTION>

| Name and Principal Position | Year | Salary($) | Bonus($) | Stock Awards($) | Option Awards($) | Non-Equity Incentive Plan Compensation($) | Change in Pension Value and Nonqualified Deferred Compensation Earnings($) | All Other Compensation($) | Totals($) |
|------|------|------|------|------|------|------|------|------|------|
| <S> | <C> | <C> | <C> | <C> | <C> | <C> | <C> | <C> | <C> |
| Gary O'Flynn President, CEO, CFO, Treasurer, Chief Accounting Officer, and director | 2011 | None | None | None | None | None | None | None | None |
| Patrick Corkery Secretary | 2011 | None | None | None | None | None | None | None | None |

</TABLE>

STOCK OPTION GRANTS

We have not granted any stock options to our executive officer since our inception.

CONSULTING AGREEMENTS

We do not have an employment or consulting agreement with Gary O'Flynn or Patrick Corkery. We do not pay them for acting as a directors or officers.

SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table provides the names and addresses of each person known to us to own more than 5% of our outstanding common stock as of the date of this prospectus, and by the officers and directors, individually and as a group as at October 31, 2011 except as otherwise indicated, all shares are owned directly.

| Title of Class | Name and address of beneficial owner | Amount of beneficial ownership | Percent of class |
|-----|-----|-----|-----|
| Common Stock | Gary O'Flynn President, Chief Executive Officer, Chief Financial, Officer, Treasurer, Chief Accounting Officer and Director 11 Hayfield Drive Old Post Office Road Whitechurch, Cork, Ireland | 4,000,000 | 33%(1) |
| Common Stock | Patrick Corkery Director Apartment 1, 14 James Street Cork, Ireland | 350,000 | 3%(1) |
| Common Stock | All Officers and Directors as a group that consists of one person | 4,350,000(1) shares | 36% |

----------
(1)  The percent of class is based on 11,440,000 shares of common stock issued
     and outstanding as of the date of this prospectus.

                                 23
<PAGE>
       CERTAIN RELATIONSHIPS, RELATED TRANSACTIONS AND DIRECTOR INDEPENDENCE

Gary O'Flynn purchased 4,000,000 shares of Goff Corp. at a price of $0.001 per share on December 8, 2010. These shares were purchased as an equity offering from the Company. Patrick Corkery purchased 350,000 shares of Goff Corp. at a price of $0.003 per share on December 14, 2010. These original issuance shares were purchased as an equity offering from the Company. None of the following parties has, since our date of incorporation, had any material interest, direct or indirect, in any transaction with us or in any presently proposed transaction that has or will materially affect us:

   *    Any relative or spouse of any of the foregoing persons who has the
        same house as such person;
   *    Immediate family members of directors, director nominees, executive
        officers and owners of 5% or more of our common stock.

As of June 30, 2011, as Director and President, Gary O'Flynn has outstanding loans with the Company in the amount of $825.The loans are non-interest bearing, unsecured and due upon demand.

DIRECTOR INDEPENDENCE

Our common stock is not currently listed on a national securities exchange or an inter-dealer quotation system. We intend to apply to have our common stock quoted on the OTC Bulletin Board inter-dealer quotation system, which does not have director independence requirements. Under NASDAQ Rule 4200(a)(15), a director is not considered to be independent if he or she is also an executive officer or employee of the corporation. Accordingly, Gary O'Flynn is not independent because he is an executive officer of our company.

                        PROMOTERS AND CERTAIN CONTROL PERSONS

Gary O'Flynn and Patrick Corkery are promoters of Goff Corp.

DISCLOSURE OF COMMISSION POSITION OF INDEMNIFICATION FOR
SECURITIES ACT LIABILITIES

Our officers and directors are indemnified as provided by the Nevada Revised
Statutes and our Bylaws. We have been advised that in the opinion of the
Securities and Exchange Commission indemnification for liabilities arising under
the Securities Act is against public policy as expressed in the Securities Act,
and is, therefore, unenforceable. In the event that a claim for indemnification
against such liabilities is asserted by one of our directors, officers, or
controlling persons in connection with the securities being registered, we will,
unless in the opinion of our legal counsel the matter has been settled by
controlling precedent, submit the question of whether such indemnification is
against public policy to court of appropriate jurisdiction. We will then be
governed by the court's decision.

24

<PAGE>

GOFF CORP.

AUDIT REPORT OF INDEPENDENT ACCOUNTANTS

AND

FINANCIAL STATEMENTS

Inception on July 12, 2010 through June 30, 2011

24

<PAGE>

GOFF CORP.

Table of Contents

|  | Page |
| --- | --- |
| Audit Report of Independent Accountants................................. | F-1 |
| Balance Sheets - June 30, 2011......................................... | F-2 |
| Statement of Operations from inception on July 12, 2010 through June 30, 2011.................................. | F-3 |
| Statement of Stockholder's Equity (Deficit) from inception on July 12, 2010 through June 30, 2011.................................. | F-4 |
| Statement of Cash Flows from inception on July 12, 2010 through June 30, 2011.................................. | F-5 |
| Notes to Financial Statements......................................... | F-6 |

25

<PAGE>

SADLER, GIBB & ASSOCIATES, LLC

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Board of Directors
Goff Corp.
(A Development Stage Company)

We have audited the accompanying balance sheet of Goff Corp. as of June 30,
2011, and the related statement of operations, stockholders' equity (deficit)
and cash flows for the period from inception on July 12, 2010 through June 30,
2011. These financial statements are the responsibility of the Company's
management. Our responsibility is to express an opinion on these financial
statements based on our audit.

We conducted our audit in accordance with the standards of the Public Company
Accounting Oversight Board (United States). Those standards require that we plan
and perform the audit to obtain reasonable assurance about whether the financial
statements are free of material misstatement. The Company is not required to
have, nor were we engaged to perform, an audit of its internal control over
financial reporting. Our audit included consideration of internal control over
financial reporting as a basis for designing audit procedures that are
appropriate in the circumstances, but not for the purpose of expressing an

opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion the financial statements referred to above present fairly, in all material respects, the financial position of Goff Corp. as of June 30, 2011, and the results of their operations and their cash flows for the period from inception on July 12, 2010 through June 30, 2011, in conformity with U.S. generally accepted accounting principles.

The accompanying financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 2 to the financial statements, the Company had accumulated losses of $4,416 as of June 30, 2011, which raises substantial doubt about its ability to continue as a going concern. Management's plans concerning these matters are also described in Note 2. The financial statements do not include any adjustments that might result from the outcome of this uncertainty.


/s/ Sadler, Gibb & Associates, LLC
-----------------------------------------
Salt Lake City, UT
August 13, 2011

                              F-1

<PAGE>
GOFF CORP.
(A Development Stage Company)
Balance Sheet
--------------------------------------------------------------------------

                                            June 30, 2011
                                            -------------

Assets

Current Assets
   Cash                                     $ 24,759
                                            --------

      Total Assets                          $ 24,759
                                            ========


Liabilities and Stockholders' Equity (deficit)

Current Liabilities
   Loan from Director                       $     825
                                            --------

      Total Current Liabilities                   825
                                            --------

Stockholders' Equity (deficit)
   Common stock, $0.001par value, 75,000,000 shares authorized;
   11,440,000 shares issued and outstanding      11,440
   Additional paid-in-capital                     16,910
   Deficit accumulated during the development stage   (4,416)
                                            --------

      Total stockholders' equity (deficit)        23,934
                                            --------

      Total liabilities and stockholders' equity (deficit)   $ 24,759
                                            ========


   The accompanying notes are an integral part of these financial statements.

                              F-2

<PAGE>
GOFF CORP.
(A Development Stage Company)
Statement of Operations
--------------------------------------------------------------------------

|  | From Inception on July 12, 2010 to June 30, 2011 |
|---|---|
| Expenses | |
| General and Administrative Expenses | $     4,416 |
| Net (loss) from Operation before Taxes | (4,416) |
| Provision for Income Taxes | -- |
| Net (loss) | $    (4,416) |
| (Loss) per common share - Basic and diluted | $     (0.00) |
| Weighted Average Number of Common Shares Outstanding | 6,074,590 |

The accompanying notes are an integral part of these financial statements.

F-3

```
<PAGE>
```
GOFF CORP.
(A Development Stage Company)
Statement of Stockholders' Equity
From Inception on July 12, 2010 to June 30, 2011
-------------------------------------------------------------------------

```
<TABLE>
<CAPTION>
```

|  | Number of Common Shares | Amount | Additional Paid-in Capital | Deficit Accumulated During Development Stage | Total |
|---|---|---|---|---|---|
| `<S>` | `<C>` | `<C>` | `<C>` | `<C>` | `<C>` |
| Balance at inception on July 12, 2010 | -- | $      -- | $      -- | $      -- | $      -- |
| Common shares issued for cash between $0.01 and $0.001 | 11,440,000 | 11,440 | 16,910 | -- | 28,350 |
| Net (loss) | -- | -- | -- | (4,416) | $(4,416) |
| Balance as of June 30, 2011 | 11,440,000 | $11,440 | $16,910 | $(4,416) | $23,934 |

```
</TABLE>
```

The accompanying notes are an integral part of these financial statements.

F-4

```
<PAGE>
```
GOFF CORP.
(A Development Stage Company)
Statement of Cash Flows
-------------------------------------------------------------------------

|  | From Inception on July 12, 2010 to June 30, 2011 |
|---|---|
| Operating Activities | |
| Net (loss) | $ (4,416) |
| Net cash (used) for operating activities | (4,416) |
| Financing Activities | |
| Proceeds from related-party notes payable | 1,325 |
| Payments on related-party notes payable | 500 |
| Proceeds from the sale of common stock | 28,350 |

```
                                                      --------
         Net cash provided by financing activities        29,175
                                                      --------

Net increase (decrease) in cash and equivalents          24,759

Cash and equivalents at beginning of the period             --
                                                      --------

Cash and equivalents at end of the period           $  24,759
                                                      ========
```

Supplemental cash flow information:

```
Cash paid for:
   Interest                                           $     --
                                                      ========

   Taxes                                              $     --
                                                      ========
```

The accompanying notes are an integral part of these financial statements.

F-5

<PAGE>

## 1. ORGANIZATION AND BUSINESS OPERATIONS

GOFF CORP. ("the Company") was incorporated under the laws of the State of Nevada, U.S. on July 12, 2010. The Company is in the development stage as defined under ASC 915, Development Stage Enterprises and it intends to provide web-based services that focus around our website that will operate as a link between employers and individuals seeking employment in the UK and Ireland.

The Company has not generated any revenue to date and consequently its operations are subject to all risks inherent in the establishment of a new business enterprise. For the period from inception, July 12, 2010 through June 30, 2011 the Company has accumulated losses of $4,416.

## 2. SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

a) BASIS OF PRESENTATION
The financial statements of the Company have been prepared in accordance with generally accepted accounting principles in the United States of America and are presented in US dollars.

b) GOING CONCERN
The financial statements have been prepared on a going concern basis which assumes the Company will be able to realize its assets and discharge its liabilities in the normal course of business for the foreseeable future. The Company has incurred losses since inception resulting in an accumulated deficit of $4,416 as of June 30, 2011 and further losses are anticipated in the development of its business raising substantial doubt about the Company's ability to continue as a going concern. The ability to continue as a going concern is dependent upon the Company generating profitable operations in the future and/or obtaining the financing necessary to meet its obligations and repay its liabilities arising from normal business operations when they come due. Management intends to finance operating costs over the next twelve months with existing cash on hand and loans from directors and or private placement of common stock.

c) CASH AND CASH EQUIVALENTS
The Company considers all highly liquid instruments with a maturity of three months or less at the time of issuance to be cash equivalents.

d) USE OF ESTIMATES AND ASSUMPTIONS
The preparation of financial statements in conformity with accounting principles generally accepted in the United States requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

e) Financial Instruments
The carrying value of the Company's financial instruments approximates their fair value because of the short maturity of these instruments.

f) STOCK-BASED COMPENSATION

Stock-based compensation is accounted for at fair value in accordance with ASC Topic 718. To date, the Company has not adopted a stock option plan and has not granted any stock options.

                                    F-6
<PAGE>
2. SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (Continued)

g) INCOME TAXES
Income taxes are accounted for under the assets and liability method. Deferred tax assets and liabilities are recognized for the estimated future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases and operating loss and tax credit carry forwards. Deferred tax assets and liabilities are measured using enacted tax rates in effect for the year in which those temporary differences are expected to be recovered or settled.

h) BASIC AND DILUTED NET LOSS PER SHARE
The Company computes net income (loss) per share in accordance with ASC 260, "Earnings per Share". ASC 260 requires presentation of both basic and diluted earnings per share ("EPS") on the face of the income statement. Basic EPS is computed by dividing net income (loss) available to common stockholders (numerator) by the weighted average number of shares outstanding (denominator) during the period. Diluted EPS gives effect to all dilutive potential common shares outstanding during the period using the treasury stock method and convertible preferred stock using the if-converted method. In computing diluted EPS, the average stock price for the period is used in determining the number of shares assumed to be purchased from the exercise of stock options or warrants. Diluted EPS excluded all dilutive potential shares if their effect is anti-dilutive. i) FISCAL PERIODS The Company's fiscal year end is June 30.

j) RECENT ACCOUNTING PRONOUNCEMENTS
In January 2010, the Financial Accounting Standards Board ("FASB") issued 2010-06, "Improving Disclosures about Fair Value Measurements". This update requires additional disclosure within the roll forward of activity for assets and liabilities measured at fair value on a recurring basis, including transfers of assets and liabilities between Level 1 and Level 2 of the fair value hierarchy and the separate presentation of purchases, sales, issuances and settlements of assets and liabilities within Level 3 of the fair value hierarchy. In addition, the update requires enhanced disclosures of the valuation techniques and inputs used in the fair value measurements within Levels 2 and 3. The new disclosure requirements are effective for interim and annual periods beginning after December 15, 2009, except for the disclosure of purchases, sales, issuances and settlements of Level 3 measurements. Those disclosures are effective for fiscal years beginning after December 15, 2010. As ASU 2010-06 only requires enhanced disclosures, the Company does not expect that the adoption of this update will have a material effect on its financial statements.

In February 2010, the FASB issued 2010-09, "Amendments to Certain Recognition and Disclosure Requirements" which eliminates the requirements for SEC filers to disclose the date through which an entity has evaluated subsequent events. ASU No. 2010-09 is effective for fiscal quarters beginning after December 15, 2010. The adoption of ASU No. 2010-09 will not have a material impact on the Company's financial statements.

                                    F-7
<PAGE>
3. COMMON STOCK

The authorized capital of the Company is 75,000,000 common shares with a par value of $0.001 per share. In December of 2010, the Company issued 4,000,000 shares of common stock at a price of $0.001 per share for total cash proceeds of $4,000.

In December and January of 2011, the Company issued 7,150,000 shares of common stock at a price of $0.003 per share for total cash proceeds of $21,450.

In January through April of 2011, the Company issued 290,000 shares of common stock at a price of $0.01 per share for total cash proceeds of $2,900.

During the period July 12, 2010 (inception) to June 30, 2011, the Company sold a total of 11,440,000 shares of common stock for total cash proceeds of $28,350.

4. INCOME TAXES

The Company provides for income taxes under ASC 740, Accounting for Income Taxes. ASC 740 requires the use of an asset and liability approach in accounting for income taxes. Deferred tax assets and liabilities are recorded based on the

(4)  such indemnification is required to be made pursuant to the bylaws.

II-1

<PAGE>
Our bylaws provide that we will advance all expenses incurred to any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was our director or officer, or is or was serving at our request as a director or executive officer of another company, partnership, joint venture, trust or other enterprise, prior to the final disposition of the proceeding, promptly following request. This advance of expenses is to be made upon receipt of an undertaking by or on behalf of such person to repay said amounts should it be ultimately determined that the person was not entitled to be indemnified under our bylaws or otherwise.

Our bylaws also provide that no advance shall be made by us to any officer in any action, suit or proceeding, whether civil, criminal, administrative or investigative, if a determination is reasonably and promptly made: (a) by the board of directors by a majority vote of a quorum consisting of directors who were not parties to the proceeding; or (b) if such quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, that the facts known to the decision-making party at the time such determination is made demonstrate clearly and convincingly that such person acted in bad faith or in a manner that such person did not believe to be in or not opposed to our best interests.

RECENT SALES OF UNREGISTERED SECURITIES

We issued 4,000,000 shares of our common stock to Gary O'Flynn on December 8, 2010. Mr. O'Flynn is our President, Chief Executive Officer, Treasurer and a director. He acquired these 4,000,000 shares at a price of $0.001 per share for total proceeds to us of $4,000.00. These shares were issued pursuant to Section 4(2) of the Securities Act of 1933 (the "Securities Act").

In connection with this issuance, Mr. O'Flynn was provided with access to all material aspects of the company, including the business, management, offering details, risk factors and financial statements.

He also represented to us that he was acquiring the shares as principal for his own account with investment intent. He also represented that he was sophisticated, having prior investment experience and having adequate and reasonable opportunity and access to any corporate information necessary to make an informed decision. This issuance of securities was not accompanied by general advertisement or general solicitation. The shares were issued with a Rule 144 restrictive legend.

We issued 350,000 shares of our common stock to Patrick Corkery on December 14, 2010. Mr. Corkery is director. He acquired these 350,000 shares at a price of $0.003 per share for total proceeds to us of $1,050.00. These shares were issued pursuant to Section 4(2) of the Securities Act of 1933 (the "Securities Act").

In connection with this issuance, Mr. Corkery was provided with access to all material aspects of the company, including the business, management, offering details, risk factors and financial statements.

He also represented to us that he was acquiring the shares as principal for his own account with investment intent. He also represented that he was sophisticated, having prior investment experience and having adequate and reasonable opportunity and access to any corporate information necessary to make an informed decision. This issuance of securities was not accompanied by general advertisement or general solicitation. The shares were issued with a Rule 144 restrictive legend.

II-2

<PAGE>
We completed an offering of 6,800,000 shares of our common stock at a price of $0.003 per share to the following 22 purchasers on January 28, 2011:

| Name of Subscriber | Number of Shares |
| --- | --- |
| Stephen Walsh | 350,000 |
| Kieran Walsh | 350,000 |
| John Hornibrook | 350,000 |
| Kevin Crowley | 350,000 |
| John Devine | 350,000 |
| Patrick Crowley | 350,000 |
| Alan Carroll | 350,000 |
| Alan Gahan | 350,000 |

| | |
|---|---|
| Mandy Bullman | 350,000 |
| Ciara O'Driscoll | 350,000 |
| Toney Rodgers | 350,000 |
| Frank Twomey | 350,000 |
| Brian Twomey | 350,000 |
| Donal Twomey | 350,000 |
| Joan Twomey | 350,000 |
| Colm Norris | 250,000 |
| Jeremy O'Leary | 250,000 |
| Frances O'Leary | 250,000 |
| Mark O'Leary | 250,000 |
| Rhona O'Leary | 250,000 |
| Annette O'Leary | 150,000 |
| Jeremiah Grandon | 150,000 |

The total amount received from this offering was $20,400. We completed this offering pursuant to Regulation S of the Securities Act

We completed an offering of 290,000 shares of our common stock at a price of $0.01 per share to the following 5 purchasers on April 5, 2011:

| Name of Subscriber | Number of Shares |
|---|---|
| Paul Sutton | 45,000 |
| Liam Power | 75,000 |
| Alma Crean | 75,000 |
| Valerie O'Leary | 45,000 |
| Michael Walsh | 50,000 |

The total amount received from this offering was $2,900. We completed this offering pursuant to Regulation S of the Securities Act

                              II-3
<PAGE>
REGULATION S COMPLIANCE

Each offer or sale was made in an offshore transaction;

We did not make any directed selling efforts in the United States. We also did not engage any distributors, any respective affiliates, nor any other person on our behalf to make directed selling efforts in the United States;

Offering restrictions were, and are, implemented;

No offer or sale was made to a U.S. person or for the account or benefit of a U.S. person;

Each purchaser of the securities certifies that it was not a U.S. person and was not acquiring the securities for the account or benefit of any U.S. person;

Each purchaser of the securities agreed to resell such securities only in accordance with the provisions of Regulation S, pursuant to registration under the Securities Act of 1933, or pursuant to an available exemption from registration; and agreed not to engage in hedging transactions with regard to such securities unless in compliance with the Securities Act of 1933;

The securities contain a legend to the effect that transfer is prohibited except in accordance with the provisions of Regulation S, pursuant to registration under the Securities Act of 1933, or pursuant to an available exemption from registration; and that hedging transactions involving those securities may not be conducted unless in compliance with the Securities Act of 1933; and

We are required, either by contract or a provision in its bylaws, articles, charter or comparable document, to refuse to register any transfer of the securities not made in accordance with the provisions of Regulation S pursuant to registration under the Securities Act of 1933, or pursuant to an available exemption from registration.

EXHIBITS

| Exhibit Number | Description |
|---|---|
| 3.1 | Articles of Incorporation * |
| 3.2 | By-Laws * |
| 5.1 | Legal opinion of HORWITZ, CRON & ARMSTRONG, LLP, with consent to use * |
| 10.1 | Supply Agreement * |

10/24/2014
A0248

officers, or controlling persons in the successful defense of any action, suit or proceeding, is asserted by one of our directors, officers, or controlling persons in connection with the securities being registered, we will, unless in the opinion of its counsel the matter has been settled by controlling precedent, submit to a court of appropriate jurisdiction the question whether such indemnification is against public policy as expressed in the Securities Act, and we will be governed by the final adjudication of such issue.

II-5

<PAGE>

SIGNATURES

Pursuant to the requirements of the Securities Act of 1933, the registrant has duly caused this registration statement to be signed on its behalf by the undersigned, thereunto duly authorized in the Carson City, State of Nevada, on November 2, 2011.

Goff Corp.

By: /s/ Gary O'Flynn
-------------------------------------
Gary O'Flynn
President, Chief Executive Officer,
Treasurer, Chief Accounting Officer,
Chief Financial Officer and Director

Goff Corp.

By: /s/ Patrick Corkery
-------------------------------------
Patrick Corkery
Director

Pursuant to the requirements of the Securities Act of 1933, this registration statement has been signed by the following persons in the capacities and on the dates stated.

| SIGNATURE | CAPACITY IN WHICH SIGNED | DATE |
| --------- | ------------------------ | ---- |
| /s/ Gary O'Flynn<br>--------------------------<br>Gary O'Flynn | President, Chief Executive Officer, Treasurer, Chief Accounting Officer, Chief Financial Officer and Director | November 2, 2011 |
| /s/ Patrick Corkery<br>--------------------------<br>Patrick Corkery | Director | November 2, 2011 |

II-6

</TEXT>
</DOCUMENT>

# WRITTEN CONSENT TO ACTION WITHOUT MEETING OF THE DIRECTORS OF
## <GOFF,CORP >
### A NEVADA CORPORATION



The undersigned, being all of the duly appointed and acting members of the Board of Directors of <GOFF,CORP >, a Nevada corporation (the "Corporation"), do hereby consent to the adoption of, and do hereby adopt, the following resolutions with the same force and effect as if adopted at a meeting of the Board of Directors duly called and held, pursuant to Section 78.315(2) of the Nevada Revised Statutes and pursuant to the bylaws of the Corporation.

**1.   Authorization of Issuance of Common Stock and Acceptance of Subscription Agreements**

RESOLVED THAT the Corporation, having received subscriptions and payment in full of the subscription proceeds from the subscribers listed in Schedule A.

FURTHER RESOLVED THAT the Corporation direct its transfer agent to issue share certificates in the name of the subscribers set forth in Schedule A with the appropriate restrictive legend.

**2.   Authorization of Corporate Actions.**

Each officer of the Corporation is hereby authorized and directed to do and perform, or cause to be done and performed, all such acts, deeds and things and to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, undertakings, documents, instruments or certificates in the name and on behalf of the Corporation, or otherwise, as each such officer may deem necessary or appropriate to effectuate or carry out fully the purpose and intent of the foregoing resolutions and any of the transactions contemplated thereby.

All actions heretofore taken by any director or officer of the Corporation in connection with any matter referred to in the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

The secretary and any assistant secretary of the Corporation, or any other officer of the Corporation, is hereby authorized to certify and deliver, to any person to whom such certification and delivery may be deemed necessary or appropriate in the opinion or such officer, a true copy of the foregoing resolutions.

**Approval**

Dated:
The undersigned, being all the directors of <COMPANY NAME> waive the required notice of meeting and consent to all actions taken hereby.

<GARY O'FLYNN: PRESIDENT>

**See attached Exhibit "Schedule A"**

| | FULL NAME AND ADDRESS | BECAME A MEMBER | | NO. OF SHARES | PRICE PER SHARE SHARE | RELATIONSHIP | CONSIDE RATION PAID | ID NUMBER | FREE/RESTRICTED |
|---|---|---|---|---|---|---|---|---|---|
| 1 | GARY O'FLYNN Melvindale House, Coolowen, Blarney Cork, Ireland | 9-Dec | 2010 | 4,000,000 | $0.001 | President | $4,000 | | RESTRICTED |
| 2 | PATRICK CORKERY Apt 3, 24 Washington Street West Cork, Ireland | 14-Dec | 2010 | 350,000 | $0.003 | Director | $1,050 | | RESTRICTED |
| 3 | Stephen Walsh 8 Hollywood Estate, Holly Hill, Cork, Ireland | 14-Dec | 2010 | 350,000 | $0.003 | Business associate for 4 years. | $1,050 | | FREE |
| 4 | KIERAN WALSH 21 Amberly Heights, Grange Douglas, Cork, Ireland | 14-Dec | 2010 | 350,000 | $0.003 | Garys O'Flynn for cleint. They have remained friends for 2 years. | $1,050 | | FREE |
| 5 | JOHN HORNBROOK 39 Cowtown Drive, Knocknaheeny Cork, Ireland | 15-Dec | 2010 | 350,000 | $0.003 | Personal family Friend of Gary O'Flynn for over 10 years. | $1,050 | | FREE |
| 6 | KEVIN CROWLEY 129 Rosewood Estate, Ballincollig Cork, Ireland | 16-Dec | 2010 | 350,000 | $0.003 | Close Friend for 13 years. | $1,050 | | FREE |
| 7 | JOHN DEVINE Coolyroe, Kilmeedy, Co. Limerick Cork, Ireland | 12/16/2011 | 2010 | 350,000 | $0.00 | Good Friend Of Gary O'Flynn Since Childhood. | $1,050 | | FREE |
| 8 | PATRICIA CROWLEY 129 Rosewood Estate, Ballincollig Cork, Ireland | 17-Dec | 2010 | 350,000 | $0.003 | Close Friend for 13 years. Married to Kevin Crowley | $1,050 | | FREE |
| 9 | ALAN CARROLL 9 Frankfield, Grange Cork, Ireland | 17-Dec | 2010 | 350,000 | $0.003 | Business associate for 2 years. | $1,050 | | FREE |
| 10 | Alan Gahan 63 Ashford Hieghts, Bandeff Cork, Ireland | 22-Dec | 2010 | 350,000 | $0.003 | Personal friend since University | $1,050 | | FREE |
| 11 | MANDY BULLMAN 1 Bridgeview Villa, Commons Road Blackpool, Cork, Ireland | 22-Dec | 2010 | 350,000 | $0.003 | Personal Friend of Gary O'Flynn They met when she work for Garys brother | $1,050 | | FREE |
| 12 | CIARA O'DRISCOLL 149 Glenheights Park, Ballyvolane Cork, Ireland | 6-Jan | 2011 | 350,000 | $0.003 | Cousin of Gary O'flynn. Also Brian Twomey girlfreind. | $1,050 | | FREE |
| 13 | TONY RODGERS 77 Uam Var Ave, Bishoptown Cork, Ireland | 7-Jan | 2011 | 350,000 | $0.003 | Personal Friend of Gary O'Flynn They met when Garys was in University. | $1,050 | | FREE |
| 14 | FRANK TWOMEY 14 Silversprings Court, Tivoli Cork, Ireland | 10-Jan | 2011 | 350,000 | $0.003 | Relative O'Flynn's | $1,050 | | FREE |
| 15 | BRIAN TWOMEY 4 Upper Dublin Hill Cork, Ireland | 10-Jan | 2011 | 350,000 | $0.003 | Relative/Cousin of Gary O'Flynn | $1,050 | | FREE |
| 16 | DONAL TWOMEY | 10-Jan | 2011 | 350,000 | $0.003 | Uncle of Gary O'Flynn | $1,050 | | FREE |

A0251

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 34 Willow Bank, Blackrock, Cork, Ireland | | | | | | | | |
| 17 | JOAN TWOMEY 34 Willow Bank, Blackrock | 10-Jan | 2011 | 350,000 | $0.003 | Aunt Of Gary O'Flynn | $1,050 | | FREE |
| 18 | cork, Ireland COLM NORRIS Ballymacadam, Cahir, Co.Tipperary Ireland | 19-Jan | 2011 | 250,000 | $0.003 | Childhood Friend of Gary O'Flynn | $750 | | FREE |
| 19 | JEREMY O'LEARY 5 Maple Rd. Fota Rock, Carrigtwohill Cork, Ireland | 26-Jan | 2011 | 250,000 | $0.003 | Business associate of Gary O'Flynn. . | $750 | | FREE |
| 20 | FRANCES O'LEARY 5 Maple Rd. Fota Rock, Carrigtwohill Cork, Ireland | 26-Jan | 2011 | 250,000 | $0.003 | Friends since school. | $750 | | FREE |
| 21 | MARY O'LEARY 4 Templemill Lawn, Ballintemple Cork, Ireland | 26-Jan | 2011 | 250,000 | $0.003 | Friend for 8 years. Met through mutal friends | $750 | | FREE |
| 22 | RHONA O'LEARY 4 Templemill Lawn, Ballintemple Cork, Ireland | 26-Jan | 2011 | 250,000 | $0.003 | Friends for 6 years. Met Through Mary O'Leary. | $750 | | FREE |
| 23 | ANNETTE O'LEARY 4 Templemill Lawn, Ballintemple Cork, Ireland | 28-Jan | 2011 | 150,000 | $0.003 | Relative of Mary and Annette O'Leary. Has known Gary as a friend for 6 years. | $450 | | FREE |
| 24 | JEREMIAH GRANDON Dromin, St. Anne's, Cloghroe, Blarney Cork, Ireland | 28-Jan | 2011 | 150,000 | $0.003 | Friend of Gary O'Flynn and his family. for 5 years. | $450 | | FREE |
| 25 | PAUL SUTTON Roncalli, Riverview Est. Ballyvolane Cork, Ireland | 31-Jan | 2011 | 45,000 | $0.01 | Friend of Gary O'Flynn and his brother since childhood | $450 | | FREE |
| 26 | LIAM POWER 32 WillowBank, Nashs Boreen Cork, Ireland | 30-Jan | 2011 | 75,000 | $0.01 | Friend of Gary O'Flynn for 10 years.He currently works for Garys father. | $750 | | FREE |
| 27 | ALMA CREAN Astoria, Shaws Bridge, Mallow Cork, Ireland | 31-Jan | 2011 | 75,000 | $0.01 | Friend of Gary O'Flynn for 5 years | $750 | | FREE |
| 28 | VALERIE O'LEARY 8 The Mews, ARD Siomach, Shanakiel | 28-Jan | 2011 | 45,000 | $0.01 | Family friend of Gary Oflynn for 6 years | $450 | | FREE |
| 29 | MICHAEL WALSH 42 Glen Heights Rd, Ballyvolane Cork, Ireland | 5-Apr | 2011 | 50,000 | $0.01 | Friend and business associate of Gary O'Flynn. They have know eacth other for 7 years. | $500 | | FREE |
| | Summary | | Restricted Total Common | 4,350,000 11,440,000 7,090,000 | | | $28,350 | | |

0.34965035
0.030594406

A0252

# HORWITZ, CRON & ARMSTRONG, LLP

**Attorneys at Law**

26475 Rancho Parkway South
Lake Forest, California 92630
Telephone (949) 540-6540
Facsimile (949) 540-6578

December 22, 2011

**EMPIRE STOCK TRANSFER INC.**
1859 Whitney Mesa Drive
Henderson, NV 89014
Attn. Brian Barthow

> *Re:*   Goff Corp.
>         Form S-1 – Effective as of November 10, 2011

Empire Stock Transfer:

On November 2, 2011, Goff Corp., a Nevada corporation (the "Company") filed a Form S-1 Registration Statement, as amended, under the Securities Act of 1933, as amended (the "Registration Statement"), with the Securities and Exchange Commission ("SEC"). The SEC posted the Notice of Effectiveness of the Registration Statement on Edgar (i.e. the SEC website) on November 10, 2011. Accordingly, as of November 10, 2011, the following shares were registered in an effective registration statement under the Securities Act of 1933, as amended:

| Name Of Selling Shareholder | Shares Owned |
|---|---|
| Stephen Walsh | 350,000 |
| Kieran Walsh | 350,000 |
| John Hornibrook | 350,000 |
| Kevin Crowley | 350,000 |
| John Devine | 350,000 |
| Patrick Crowley | 350,000 |
| Alan Carroll | 350,000 |
| Alan Gahan | 350,000 |
| Mandy Bullman | 350,000 |
| Ciara O'Driscoll | 350,000 |
| Toney Rodgers | 350,000 |
| Frank Twomey | 350,000 |
| Brian Twomey | 350,000 |

Empire Stock Transfer Inc.
December 22, 2011
Page 2

| | |
|---|---|
| Donal Twomey | 350,000 |
| Joan Twomey | 350,000 |
| Colm Norris | 250,000 |
| Jeremy O'Leary | 250,000 |
| Frances O'Leary | 250,000 |
| Mark O'Leary | 250,000 |
| Rhona O'Leary | 250,000 |
| Annette O'Leary | 150,000 |
| Jeremiah Grandon | 150,000 |
| Paul Sutton | 45,000 |
| Liam Power | 75,000 |
| Alma Crean | 75,000 |
| Valerie O'Leary | 45,000 |
| Michael Walsh | 50,000 |

Empire Stock Transfer may accordingly issue share certificates to the aforementioned shareholders of the Company, without the restrictive legend.

Sincerely,

HORWITZ CRON & ARMSTRONG LLP

*Horwitz Cron & Armstrong LLP*



NUMBER
160

COMMON STOCK

SHARES
***8,750,000***

COMMON STOCK
CUSIP 36190U206

# GOFF, CORP

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Alan Gahan***

is the Owner of  *** Eight Million Seven Hundred Fifty Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

GOFF, CORP

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:  **February 11, 2013**

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE SEAL

DIRECTOR

PRESIDENT

B   40347

GOFF Scans 124

A0255

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | | |
|---|---|---|---|
| TEN COM | — as tenants in common | UNIF GIFT MIN ACT — | _____ Custodian _____ |
| TEN ENT | — as tenants by the entireties | | (Cust)                          (Minor) |
| JT TEN | — as joint tenants with right | | under Uniform Gifts to Minors Act |
| | of survivorship and not as | | _____ |
| | tenants in common | | (State) |

Additional abbreviations may also be used though not in the above list.

*For Value Received,* _____ *hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

_____

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

_____

_____ *Shares*

*of the Capital Stock represented by this Certificate and hereby*

*irrevocably constitutes and appoints*

_____ *Attorney*

*to transfer the said stock on the books of the within-named Corporation*

*with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

## IRREVOCABLE STOCK POWER

For value received, the undersigned hereby sell, assign and transfer unto:

_____

_____ shares ( _____ ) of the _____

Capital stock of _____

standing in _____ name on the books of said _____

represented by Certificate No. _____

herewith and do hereby irrevocably constitute and appoint _____

_____ attorney to transfer the said stock on the books of the within

named Company with full power of substitution in the premises.

Dated _____          Signed by: _____

                                                   _____



**NUMBER**
**121**

COMMON STOCK

**SHARES**
***250,000***

COMMON STOCK
CUSIP 36190U107

# GOFF, CORP

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Mark O'Leary***

is the Owner of   *** Two Hundred Fifty Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**GOFF, CORP**

*transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.*

*Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.*

Dated:   **December 21, 2011**

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
                                        Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
SEAL

XX0X0X0XX
DIRECTOR

PRESIDENT

B   10456

GOFF Scans 262

A0258

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | |
|---|---|---|
| TEN COM | — as tenants in common | |
| TEN ENT | — as tenants by the entireties | |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common | |

UNIF GIFT MIN ACT — _____ Custodian_____
(Cust)                     (Minor)
under Uniform Gifts to Minors Act

_____
(State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,*_____*hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

[ ]

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

_____*Shares*

*of the Capital Stock represented by this Certificate and hereby*

*irrevocably constitutes and appoints*

_____*Attorney*

*to transfer the said stock on the books of the within–named Corporation*

*with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND
WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS
CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR
ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE
GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS
AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP
IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM
PURSUANT TO S.E.C. RULE 17AD-15.

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does hereby sell, assign and transfer unto:

| | |
|---|---|
| Name | Social Security/Tax ID Number |

Address

_250,000_ shares of the Common Stock of:
Number of shares

_GOFF, Corp._
Issuer name

**Represented by:**

_121_
Certificate Number(s)

and does hereby irrevocably constitute and appoint Empire Stock Transfer Inc. to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.

Signed _____     1/7/13  Dated

**NOTICE:** The signature(s) to this assignment must correspond with the name(s) as written upon the face of this certificate in every particular without alteration or enlargement or any change whatsoever.

MEDALLION GUARANTEE
BANK

( CA714 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

AUTHORIZED SIGNATURE
X9004957

Signature Guaranteed (Guarantor: Affix stamp here)

**GOFF Scans 264**

A0260



**NUMBER**
119

**COMMON STOCK**

**SHARES**
***250,000***

**COMMON STOCK**
CUSIP 36190U107

SEE REVERSE FOR CERTAIN DEFINITIONS

# GOFF, CORP

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

THIS CERTIFIES THAT

***Jeremy O'Leary***

Is the Owner of   ***Two Hundred Fifty Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**GOFF, CORP**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:   **December 21, 2011**

COUNTERSIGNED AND REGISTERED:
**EMPIRE STOCK TRANSFER INC.**
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
SEAL

DIRECTOR

PRESIDENT

B   10458

GOFF Scans 265

CANCELLED

A0261

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

| | |
|---|---|
| TEN COM | — as tenants in common |
| TEN ENT | — as tenants by the entireties |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common |

UNIF GIFT MIN ACT — _____Custodian_____
                                          (Cust)                    (Minor)
                                    under Uniform Gifts to Minors Act

_____
            (State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,* _____ *hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

_____ *Shares*
*of the Capital Stock represented by this Certificate and hereby*
*irrevocably constitutes and appoints*

_____ *Attorney*
*to transfer the said stock on the books of the within–named Corporation*
*with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION. (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

**GOFF Scans 266**

A0262

# IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does hereby sell, assign and transfer unto:

Name                                                                     Social Security/Tax ID Number

Address

_250,000_

Number of shares                          shares of the Common Stock of:

_Goff, Corp_

Issuer name

**Represented by:**

_119_

Certificate Number(s)

and does hereby irrevocably constitute and appoint Empire Stock Transfer Inc. to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.

Signed                                                                     _1/8/13_  Dated

**NOTICE:** The signature(s) to this assignment must correspond with the name(s) as written upon the face of this certificate in every particular without alteration or enlargement or any change whatsoever.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
BANK OF AMERICA

AUTHORIZED SIGNATURE
X 9 0 0 4 9 5 7
( CA714 )   A.B.A.'S MEDALLION PROGRAM
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

Signature Guaranteed (Guarantor Affix stamp here)

GOFF Scans **267**



NUMBER
111

COMMON STOCK

**SHARES**
***350,000***

COMMON STOCK
CUSIP 36190U107

SEE REVERSE FOR CERTAIN DEFINITIONS

## GOFF, CORP

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

THIS CERTIFIES THAT

***Mandy Bullman***

is the Owner of   *** Three Hundred Fifty Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**GOFF, CORP**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:  **December 21, 2011**

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.

By _____      Transfer Agent and Registrar

AUTHORIZED SIGNATURE

CORPORATE
SEAL

XXXXXXXXXX
DIRECTOR

PRESIDENT

B   10466

GOFF Scans 268

A0264

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | |
|---|---|---|
| TEN COM | — as tenants in common | |
| TEN ENT | — as tenants by the entireties | |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common | |

UNIF GIFT MIN ACT — _____Custodian_____
                              (Cust)                    (Minor)
                    under Uniform Gifts to Minors Act

                    _____
                              (State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,*_____*hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

*Shares of the Capital Stock represented by this Certificate and hereby irrevocably constitutes and appoints*

*Attorney to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

GOFF Scans 269

A0265

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does hereby sell, assign and transfer unto:

Name                                                                        Social Security/Tax ID Number

Address

_350,000_ shares of the Common Stock of:

Number of shares

_GOFF, Corp._

Issuer name

**Represented by:**

_111_

Certificate Number(s)

and does hereby irrevocably constitute and appoint Empire Stock Transfer Inc. to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.

Signed                                                                        1/4/13

Dated

**NOTICE:** The signature(s) to this assignment must correspond with the name(s) as written upon the face of this certificate in every particular without alteration or enlargement or any change whatsoever.

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
BANK_____CA, N.A.

AUTHORIZED SIGNATURE
X 9 0 0 4 9 5 7

( CA714 )

STA___AGTS MEDALLION PROGRAM

Signature Guaranteed (Guarantor: Affix stamp here)



**NUMBER**
109

**COMMON STOCK**

**SHARES**
***350,000***

**COMMON STOCK**
CUSIP 36190U107

## GOFF, CORP

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***Alan Carroll***

is the Owner of *** Three Hundred Fifty Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**GOFF, CORP**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated: **December 21, 2011**

COUNTERSIGNED AND REGISTERED:
**EMPIRE STOCK TRANSFER INC.**
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
SEAL

DIRECTOR

PRESIDENT

**B  10468**

GOFF Scans 271

A0267

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common

TEN ENT — as tenants by the entireties

JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — _____ Custodian _____
(Cust)                    (Minor)
under Uniform Gifts to Minors Act

_____
(State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,* _____ *hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

_____ *Shares*
*of the Capital Stock represented by this Certificate and hereby*
*irrevocably constitutes and appoints*

_____ *Attorney*
*to transfer the said stock on the books of the within-named Corporation*
*with full power of substitution in the premises.*
*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

GOFF Scans 272

A0268

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED, the undersigned does hereby sell, assign and transfer unto:**

Name                                                                Social Security/Tax ID Number

Address

_350,000_
Number of shares                          **shares of the Common Stock of:**

_GOFF, Corp._
Issuer name

**Represented by:**

_1 09_
Certificate Number(s)

and does **hereby irrevocably constitute and appoint Empire Stock Transfer Inc. to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.**

Signed                                                                                Dated _1/7/13_

**NOTICE: The signature(s) to this assignment must correspond with the name(s) as written upon the face of this certificate in every particular without alteration or enlargement or any change whatsoever.**

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
BANK OF AMERICA

CA714
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™

AUTHORIZED SIGNATURE
X9004957

Signature Guaranteed (Guarantor: Affix stamp here)

**GOFF Scans 273**

A0269



NUMBER
108

SHARES
***350,000***

COMMON STOCK

**GOFF, CORP**

COMMON STOCK
CUSIP 36190U107

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

CANCELLED

THIS CERTIFIES THAT

***Patricia Crowley***

is the Owner of   *** Three Hundred Fifty Thousand ***

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**GOFF, CORP**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed. This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:   **December 21, 2011**

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
SEAL

DIRECTOR

PRESIDENT

B   10469

GOFF Scans 274

A0270

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common

TEN ENT — as tenants by the entireties

JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — _____Custodian_____
(Cust)          (Minor)
under Uniform Gifts to Minors Act

_____
(State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,* _____ *hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

_____ *Shares*
*of the Capital Stock represented by this Certificate and hereby*
*irrevocably constitutes and appoints*

_____ *Attorney*
*to transfer the said stock on the books of the within–named Corporation*
*with full power of substitution in the premises.*
*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM PURSUANT TO S.E.C. RULE 17AD-15.

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED, the undersigned does hereby sell, assign and transfer unto:**

_____

Name                                                    Social Security/Tax ID Number

_____

Address

_____350,000_____   **shares of the Common Stock of:**

Number of shares

_____GOFF, Corp._____

Issuer name

**Represented by:**

_____108_____

Certificate Number(s)

and does hereby irrevocably constitute and appoint Empire Stock Transfer Inc. to transfer the said stock on the books of the within-named Corporation with full power of substitution in the premises.

_P Arnie Curly_____                          _1/8/13_
Signed                                                        Dated

**NOTICE: The signature(s) to this assignment must correspond with the name(s) as written upon the face of this certificate in every particular without alteration or enlargement or any change whatsoever.**

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
BANK OF AMERICA, N.A

( CA714 )                    AUTHORIZED SIGNATURE
                            X 9 0 0 4 9 5 7
Signature Guaranteed (Guarantor: Affix stamp here)

GOFF Scans 276

A0272



**NUMBER**
**103**

**SHARES**
***350,000***

**COMMON STOCK**

**GOFF, CORP**

**COMMON STOCK**
CUSIP 36190U107

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS  CERTIFIES THAT

CANCELLED

***Stephen Walsh***

CANCELLED

CANCELLED

is the Owner of  *** Three Hundred Fifty Thousand ***

————FULLY-PAID-AND-NON-ASSESSABLE-SHARES-OF-COMMON-STOCK-OF————

**GOFF, CORP**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:  **December 21, 2011**

COUNTERSIGNED AND REGISTERED:
EMPIRE STOCK TRANSFER INC.
                                    Transfer Agent and Registrar
By
AUTHORIZED SIGNATURE

CORPORATE
SEAL

Patrick Costral
XXXXXXXXXX
DIRECTOR

PRESIDENT

**B  10474**

GOFF Scans 277

A0273

The following abbreviations, when used in the inscription of the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | |
|---|---|---|
| TEN COM | — as tenants in common | |
| TEN ENT | — as tenants by the entireties | |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common | |

UNIF GIFT MIN ACT — _____Custodian_____
                                        (Cust)                    (Minor)
                            under Uniform Gifts to Minors Act

_____
                    (State)

Additional abbreviations may also be used though not in the above list.

*For Value Received,*_____*hereby sells, assigns and transfers unto*

PLEASE INSERT SOCIAL SECURITY
OR OTHER IDENTIFYING NUMBER

_____

(PLEASE PRINT OR TYPE NAME AND ADDRESS INCLUDING POSTAL ZIP CODE OF ASSIGNEE)

_____*Shares*

*of the Capital Stock represented by this Certificate and hereby*

*irrevocably constitutes and appoints*

_____*Attorney*

*to transfer the said stock on the books of the within-named Corporation*

*with full power of substitution in the premises.*

*Dated* _____

NOTICE   THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND
         WITH THE NAME(S) AS WRITTEN UPON THE FACE OF THIS
         CERTIFICATE IN EVERY PARTICULAR WITHOUT ALTERATION OR
         ENLARGEMENT OR ANY CHANGE WHATSOEVER.

SIGNATURE(S) GUARANTEED

NOTICE   THE SIGNATURE(S) SHOULD BE GUARANTEED BY AN ELIGIBLE
         GUARANTOR INSTITUTION, (BANKS, STOCKBROKERS, SAVINGS
         AND LOAN ASSOCIATION AND CREDIT UNIONS) WITH MEMBERSHIP
         IN AN APPROVED SIGNATURE GUARANTEE MEDALLION PROGRAM
         PURSUANT TO S.E.C. RULE 17AD-15.

**GOFF Scans 278**

A0274

## IRREVOCABLE STOCK POWER

**FOR VALUE RECEIVED,** the undersigned does (do) hereby sell, assign and transfer to

_____

_____

_____

|                                                              |
|--------------------------------------------------------------|

(SOCIAL SECURITY

OR TAXPAYER IDENTIFYING NO.)

**PLEASE COMPLETE THIS PORTION**

_____ shares of the _____ stock of _____

represented by Certificate(s) No(s) _____ inclusive,

standing in the name of the undersigned on the books of said Company.

The undersigned does (do) hereby irrevocably institute and appoint _____

_____ attorney to transfer the said stock or bond(s), as the case may be, on

the books of said Company, with full power of substitution in the premises.

Dated   *Nov. 22, 2012*

*Stephen Walsh*                              _____

Stephen Walsh                                _____

PRINTED NAME                                 PRINTED NAME

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
BANK OF AMERICA, N.A.

( CA714 )
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM ®

AUTHORIZED SIGNATURE
X 9 0 0 4 9 5 7

GOFF Scans 279

A0275



NUMBER
105

SHARES
***350,000***

COMMON STOCK

**GOFF, CORP**

Par Value $.001
INCORPORATED UNDER THE LAWS OF THE STATE OF
NEVADA

COMMON STOCK
CUSIP 36190U107

SEE REVERSE FOR CERTAIN DEFINITIONS

THIS CERTIFIES THAT

***John Hornibrook***

Is the Owner of   *** **Three Hundred Fifty Thousand**

CANCELLED

CANCELLED

FULLY PAID AND NON-ASSESSABLE SHARES OF COMMON STOCK OF

**GOFF, CORP**

transferable on the books of the Corporation by the holder hereof, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed.  This Certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness this facsimile seal of said Corporation and the facsimile signatures of its duly authorized officers.

Dated:   **December 21, 2011**

COUNTERSIGNED AND REGISTERED:
**EMPIRE STOCK TRANSFER INC.**
Transfer Agent and Registrar

By

AUTHORIZED SIGNATURE

CORPORATE
SEAL

XXXXXXXXX
DIRECTOR

PRESIDENT

B   10472

GOFF Scans 280

A0276