UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., and
VERDMONT CAPITAL, S.A.

Defendants.

Case No. 15-cv-894 (WHP)(JLC)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff Securities and Exchange Commission respectfully submits this memorandum of law in support of its motion to amend the Complaint.

**PRELIMINARY STATEMENT**

The proposed amended complaint clarifies certain matters in the initial Complaint filed on February 6, 2015 – principally, that Defendant Verdmont Capital, S.A. sold the securities of Goff Corporation, Norstra Energy Inc. and Xumanii, Inc. (the "Securities") on behalf of Lornex Financial Ltd., Nautilus Growth Fund Inc., and Bartlett Trading Inc. Counsel for Defendants Caledonian Bank Ltd. and Caledonian Securities Ltd. (collectively, "Caledonian") have represented to the SEC that Caledonian, too, sold for the account of customers but, because of Cayman Islands bank secrecy laws, the SEC does not have documents confirming those representations or identifying who those customers were. A copy of the proposed amended complaint is attached to the Notice of Motion. Also attached are the Declarations of Richard

Simpson and Gerald Hodgkins that answer the specific questions set forth in the May 21, 2015 Scheduling Order.

The Complaint, filed on February 6, 2015, alleges that at various times in the first half of 2013, and through United States brokerage accounts in their own names, Caledonian Bank, Caledonian Securities and Verdmont offered and sold the Securities into the public markets in unregistered transactions. (*See, e.g.*, Compl., ¶ 1) The result of these sales was to introduce public investors to securities in issuers that had never been publicly traded before (other than, possibly, a few token trades). The Complaint alleges that the Defendants' offers and sales violated Section 5 of the Securities Act of 1933 [15 U.S.C. § 77e] because there were no registration statements in effect for the offers and sales. (*Id*.) Verdmont does not dispute that it sold the securities. But it relies on Form S-1 registration statements that went effective eight to fifteen months before its sales.

After the filing of the Complaint, and in opposition to the SEC's motion for a preliminary injunction, Verdmont provided information showing that it sold the Securities on behalf of three of its customers – Lornex, Nautilus and Bartlett. Lornex is an international business corporation ("IBC") formed in Nevis; Nautilus purports to be a mutual fund formed in the Cayman Islands; and Bartlett is an IBC formed in Samoa. Verdmont: (1) sold Goff securities for the account of Lornex only; (2) sold Norstra securities for the account of Lornex, Nautilus and Bartlett; and (3) sold Xumanii securities for the account of Lornex only. Counsel for Caledonian have represented to the SEC that Caledonian, like Verdmont, sold the Securities for the account of customers but, because of Cayman Islands bank secrecy laws, the SEC does not yet possess any documents concerning those customers.

Verdmont accuses the SEC of falsely alleging that Verdmont sold the Securities for its own account and kept the proceeds for itself. However, at the time of the Complaint, counsel for the SEC did not know that Verdmont sold on behalf of Lornex, Nautilus or Bartlett, nor did SEC counsel know that Verdmont had received only commissions while crediting the sale proceeds to these three customers. In any event, the critical fact is that Verdmont sold the Securities into the public markets without registration, as the Complaint correctly alleges. The fact that Verdmont sold the Securities for the account of others does not make the Complaint mistaken; nevertheless, the SEC has sought to amend the Complaint or enter into a stipulation with the defense to make it clear that Verdmont sold for the account of Lornex, Nautilus and Bartlett.

The fact that Verdmont sold on behalf of its customers does not defeat the SEC's *prima facie* case of a Section 5 violation. Although Verdmont's claimed role as a broker might be relevant to its entitlement to an exemption from the registration requirement, it is not determinative of such entitlement. Verdmont has the burden of proving that its sales are exempt under Section 4(a)(4) of the Securities Act, and must do so by demonstrating that it engaged in a reasonable inquiry before engaging in sales of the Securities. Nonetheless, in view of the Court's concerns, the SEC seeks to amend the Complaint to facilitate an expeditious determination on the merits.

## ARGUMENT

### I. The Proposed Amended Complaint Does Not Add or Remove Any Claim for Relief.

As an initial matter, the proposed amended complaint does not change the SEC's claim that the Defendants' unregistered offers and sales of securities violated Section 5 of the Securities Act. Section 5 prohibits all offers and sales by any person unless accompanied by a registration statement providing required information about the transactions, the sellers and the

issuer, unless the seller can establish that the offers and sales fall within an explicit exemption from registration. Registration of securities transactions is required for "distributions by issuers or acts of others who engage in steps necessary to such distributions." *SEC v. Murphy*, 626 F.2d 633, 648 (9th Cir. 1980). The exemptions are designed to remove from Section 5 "everyday trading between members of the investing public." *SEC v. North American Research & Development Corp.*, 424 F.2d 63, 72 (2d Cir. 1970).

The seller has the burden to prove the availability of an exemption. "The effect of [the *prima facie* case] is to cast upon [the seller] the burden of showing that for some reason Sections 5(a) and (c) do not apply to [it]." *North American Research*, 424 F.2d at 63. *Accord SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953)("[k]eeping in mind the broadly remedial purposes of the federal securities legislation, imposition of the burden of proof on an issuer who would plead the exemption seems to us fair and reasonable"); *SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006)("[o]nce a prima facie case has been made, the defendant bears the burden of proving the applicability of an exemption"). Registration exemptions are strictly construed against the seller. *Cavanagh*, 445 F.3d at 115 (strict construction against the seller is necessary "to promote full disclosure of information for the protection of the investing public"). *Accord SEC v. Verdiramo*, 890 F. Supp. 2d 257, 266 (S.D.N.Y. 2011)(same); *SEC v. Boock*, Case No. 09-cv-8261 (DLC), 2011 WL 3792819, at *19 (S.D.N.Y. Aug. 25, 2011)(same).

The Complaint properly alleged that the offers and sales at issue were made in unregistered transactions, and thus alleged a *prima facie* case that the Defendants violated Section 5. After the SEC filed the Complaint, Verdmont provided evidence that it offered and sold the Securities on behalf of Lornex, Nautilus and Bartlett. This evidence, however, does not defeat the *prima facie* case alleged in the Complaint. It is relevant only to the Defendants'

argument that they engaged in these transactions in reliance on the so-called "broker's exemption" set forth in Section 4(a)(4).

The fact that Verdmont sold the Securities on behalf of Lornex, Nautilus and Bartlett does not automatically entitle it to the broker's exemption. Verdmont has the burden of proving the exemption. Specifically, in order to claim the broker's exemption, Verdmont must prove that it engaged in a searching inquiry to ensure that its customers' transactions were not required to be accompanied by registration statements. The SEC has long required a "searching inquiry" by the broker when: (1) the broker is presented with a substantial block of a little-known security, either (2) by persons who appear reluctant to disclose the origins of the securities presented for sale, or (3) the surrounding circumstances raise a question as to whether the ostensible sellers are merely intermediaries or statutory underwriters. *Distributions by Broker-Dealers of Unregistered Securities*, Exchange Act Rel. No. 33-4445, 1962 WL 69442, at *2 (Feb. 2, 1962). In *Wonsover v. SEC*, 205 F.3d 408, 415 (D.C. Cir. 2000), the D.C. Circuit noted that an "oft-quoted" paragraph in the Commission's Exchange Act Release defines the scope of the inquiry:

> a dealer who offers to sell, or is asked to sell a substantial amount of securities must take whatever steps are necessary to be sure that this is a transaction not involving an issuer, a person in a control relationship with an issuer or an underwriter.

1962 WL 69442 at *1.

As the Ninth Circuit recently recognized, "[t]he broker's reasonable inquiry is important because 'violations of the antifraud and other provisions of the securities laws frequently depend for their consummation . . . on the activities of broker-dealers who fail to make diligent inquiry to obtain sufficient information to justify their activity in the security.'" *World Trade Financial Corp. v. SEC*, 739 F.3d 1243, 1248 (9th Cir. 2014) (quoting *In re Transactions in the Securities*

*of Laser Arms Corp. by Certain Broker-Dealers*, SEC Release No. 28878, 48 S.E.C. 305, 1991 WL 292009, at *14 n. 35 (Feb. 14, 1991)).

Brokers are liable for violating Section 5 when they engage in unregistered sales for the account of their customers and fail to engage in the level of inquiry required under the circumstances presented. *See, e.g.*, *World Trade Financial Corp.*, 739 F.3d at 1248 (a broker engaged in unregistered sales of securities is liable under Section 5 unless its sales are exempt under the broker's exemption of Section 4(a)(4)). *Accord Wonsover*, 205 F.3d at 415 (a broker can be liable under Section 5 unless "the broker *after reasonable inquiry* is not aware of circumstances indicating that the person for whose account the securities are sold is an underwriter with respect to the securities or that the transaction is part of a distribution of securities of the issuer")(emphasis added); *In re Quinn & Co.*, 44 S.E.C. 461, 1971 WL 120484, at *4 (1971)(brokerage firm was liable under Section 5), *aff'd sub nom. Quinn & Co. v. SEC*, 452 F.2d 943 (10th Cir.).

Because it did not conduct the required Section 4(a)(4) inquiry, Verdmont did not know or ignored the red flags raised by the Goff, Norstra and Xumanii distributions, such as: (1) little or no public trading before Verdmont and others started selling the stock, all beginning on virtually the same day; (2) aggressive promotion campaigns to generate investor interest in the shell companies; (3) the deposit and sale of large blocks of certificated securities; (4) the shell companies' status as development stage companies; (5) the fact that the shell companies and their securities were little known; (6) inexplicable changes in business; (7) recent changes in control; (8) the origin of the securities from shareholders in such places as Serbia, Mexico, Ireland, Norway, Panama and Jamaica; (9) the use of IBCs to sell or transfer the securities; and

(10) the presence of repeat sellers of certificated securities. (*See, e.g.*, Am. Compl., ¶¶ 18, 22, 38-40, 42, 45, 58-60, 65, 70-71, 76-77, 82-83, 91-93, 95)

Verdmont's status as a broker-dealer does not affect the scope of the asset freeze, because the SEC seeks disgorgement of the full amount of proceeds even though Verdmont sold on behalf of others. "For purposes of disgorgement there is no meaningful distinction between receiving funds outright and having funds paid into an account one controls." *In re Pierce*, Securities Act Rel. No. 9555, 2014 WL 896757, at *24-25 (March 7, 2014) (imposing disgorgement on joint and several basis for Section 5 violations). *Accord Pinter v. Dahl*, 486 U.S. 622, 646 (1988) ("when a broker acting as agent of one of the principals to the transaction successfully solicits a purchase, he is a person from whom the buyer purchases within the meaning of § 12 and is therefore liable as a statutory seller" for full disgorgement); *SEC v. Platforms Wireless International Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010) ("[w]e have never held that a personal financial benefit is a prerequisite for joint and several liability" in a Section 5 case); *SEC v. Whittemore*, 659 F.3d 1, 9 (D.C. Cir. 2011)("a person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained"); *SEC v. Verdiramo*, 890 F. Supp. 2d 257, 376 (S.D.N.Y. 2011) ("a defendant may be jointly and severally liable for disgorgement even if he did not personally profit from the Section 5 violation").

**II. The Defendants Will Not Be Prejudiced by the Filing of an Amended Complaint.**

Rule 15 of the Federal Rules of Civil Procedure provides that a court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has recognized that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). "A

motion to amend should be denied only for such reasons as ‘undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.’” *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (quoting *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). *Accord Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

In this case, none of the reasons for denying a motion to amend are present. As explained above, the amendments do not assert a new claim against the Defendants. The SEC’s claim stands on the Defendants’ sales of securities in unregistered transactions in violation of Section 5. With respect to Verdmont, the amendments clarify that Verdmont sold the Securities on behalf of Lornex, Nautilus and Bartlett, but those facts do not change its liability. The amended complaint proposed by the SEC will not require Verdmont to expend significant additional resources to conduct discovery, and does not prejudice Verdmont’s case or defenses. Verdmont is free to claim and prove its entitlement to an exemption for its transactions. Finally, the amendments will not significantly delay the resolution of the dispute because the SEC’s case remains unchanged: Verdmont is liable under Section 5 because it sold securities without registration statements being in effect for its sales.

While Verdmont’s counsel has accused the SEC of filing a Complaint that “contains objectively incorrect material allegations” (ECF No. 85 at 1), that claim is invalid. The information contained in the SEC’s proposed amendments only clarify and add detail to the manner in which Verdmont violated Section 5. The amendments do not change the SEC’s allegations that the original Form S-1 registration statements for the Securities were shams. The amended complaint makes clear that a number of facts and circumstances lead to the reasonable

inference that the distribution of securities and registration statements were invalid, such as: (1) the mailing of stock certificates to the issuer or a corporate officer, instead of to the shareholders themselves; (2) the distribution of securities to dozens of shareholders who all lived in the same foreign country and then mysteriously decided to sell those securities through the same agent, sometimes on the same day; (3) unsigned stock powers or medallion guaranty stamps that apparently were forged; (4) the stamping of medallion guaranties on multiple stock certificates at a location (Nevis) distant from the homes of the shareholders (Jamaica). (*See, e.g.*, Am. Compl., ¶¶ 49-51, 53, 55, 69, 74, 86) The proposed amendments do not impact whether Verdmont's sales of the Securities were covered by registration statements, because the same allegations were in the original Complaint. In any event, even if the original Form S-1 registration statements were valid, they do not apply to Verdmont's sales eight to fifteen months later. *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) ("[r]egistration of a security is 'transaction-specific,' in that the requirement of registration applies to each act of offering or sale"), *aff'd*, 300 Fed. Appx. 70, 2008 WL 4911207 (2d Cir. 2008). *Accord SEC v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998)("Section 4 provides exceptions to the registration requirement of Section 5 for specific transactions, indicating that registration of a security is transaction-specific"). The amended complaint – as did the original Complaint – clearly alleges that no registration statements were in effect for Verdmont's sales, which occurred much later and shortly after complete changes to the issuers' businesses.[1]

[1] By alleging that the Form S-1 registration statements were shams, the SEC does not thereby assume the burden to prove that they were ineffective, which is what counsel for Verdmont has suggested. (ECF No. 85 at 2) Verdmont's offers and sales were not registered. Pointing to registration statements that covered purported offerings many months before the distributions at issue is not sufficient to defeat the SEC's *prima facie* case. It is for Verdmont to establish that the prior registration statements were effective so that subsequent resales into the market are secondary offerings for which registration was not required.

**II. The SEC Did Not Delay in Seeking Leave to Amend.**

The SEC did not unduly delay in seeking leave to amend. The amendments related to Caledonian remain undocumented because of Cayman Island bank secrecy laws, but the SEC has included them in order to limit successive motions to amend during the discovery period. With respect to Verdmont, the amendments are premised on post-Complaint evidence. This case had its initial pretrial conference a week ago. Verdmont intends to file a motion for judgment on the pleadings. The parties have taken two depositions. The SEC received firm evidence that Verdmont sold on behalf of Lornex, Nautilus and Bartlett at the end of February and, at the end of March, proposed to defense counsel that the SEC file an amended complaint, which proposal was rebuffed. Moreover, the SEC plans to seek additional discovery on: (1) the relationship, if any, between Verdmont and Lornex, Nautilus and Bartlett; (2) any communications that led other Verdmont customers to buy and sell at the same time as Lornex, Nautilus and Bartlett and simultaneously with the aggressive stock promotion campaigns; and (3) what Lornex, Nautilus and Bartlett did with the proceeds from the sales of the Securities after Verdmont wired the proceeds back to Panama and credited their accounts.

With respect to the present motion, the interval between the filing of Verdmont's answer and the SEC's motion for leave to amend is no greater than in many cases in which amendments to the pleadings have been allowed. *See State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d at 845-46 (amendment allowed after three-year interval); *Middle Atlantic Utilities Company v. S.M.W. Development Corp.*, 392 F.2d 380, 383 (2d Cir. 1968) (amendment allowed after three-year interval and notice of trial readiness); *Zeigan v. Blue Cross & Blue Shield*, 607 F. Supp. 1434, 1438 (S.D.N.Y. 1985) (amendment allowed after three-year interval); *Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (amendment allowed after four-year interval).

"Furthermore, the parties in such cases have been permitted to amend their pleadings to assert new claims long after they acquired the facts necessary to support those claims." *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d at 653 n.6. If Verdmont claims the need for additional discovery based on the amendments, the SEC will not oppose any reasonable request for an extension of the agreed discovery period.

In sum, the SEC's motion to amend is based on facts known to the Defendants since the beginning of the litigation and which do not change the basis for the Defendants' liability – selling securities in unregistered transactions in violation of Section 5.

## CONCLUSION

For the reasons stated, the SEC requests that the Court grant the motion for leave to amend the Complaint.

Dated: Washington, D.C.
May 28, 2015

Respectfully submitted,

/s/ *Richard E. Simpson*

Richard E. Simpson
A. David Williams
Ernesto G. Amparo
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4492 (Simpson)
simpsonr@sec.gov