# EXHIBIT G

## THE COMPANIES LAW (AS AMENDED)

### COMPANY LIMITED BY SHARES

## MEMORANDUM & ARTICLES

## OF

## ASSOCIATION

### OF

## NAUTILUS GROWTH FUND LTD

G:\Public\London\DW\2006\Nautilus Growth Fund\M&A FINAL.doc

CONFIDENTIAL

# TABLE OF CONTENTS

INTERPRETATION .................................................................................. 1
PRELIMINARY ...................................................................................... 4
SITUATION OF REGISTERED OFFICE OF THE COMPANY ........................... 4
SERVICE PROVIDERS ........................................................................... 4
SHARE CAPITAL ................................................................................... 4
ISSUE OF SHARES ............................................................................... 11
FRACTIONAL SHARES .......................................................................... 12
INVESTMENT ACCOUNTS ...................................................................... 12
DETERMINATION OF VALUE OF INVESTMENT ACCOUNTS ........................ 13
SUSPENSION OF THE DETERMINATION OF THE VALUE OF AN INVESTMENT ACCOUNT, SUBSCRIPTIONS AND REDEMPTIONS ........................................ 13
VARIATION OF RIGHTS ATTACHING TO SHARES..................................... 14
CERTIFICATES...................................................................................... 14
LIEN .................................................................................................... 14
CALLS ON SHARES .............................................................................. 15
FORFEITURE OF SHARES ..................................................................... 16
TRANSFER OF SHARES ........................................................................ 16
COMPULSORY TRANSFER..................................................................... 17
TRANSMISSION OF SHARES ................................................................. 18
ALTERATION OF SHARE CAPITAL.......................................................... 19
CLOSING REGISTER OF MEMBERS OR FIXING RECORD DATE .................. 19
GENERAL MEETINGS............................................................................. 20
NOTICE OF GENERAL MEETINGS .......................................................... 20
PROCEEDINGS AT GENERAL MEETINGS ................................................ 20
VOTES OF MEMBERS ........................................................................... 21
CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS ............... 22
DIRECTORS.......................................................................................... 22
ALTERNATE DIRECTOR......................................................................... 23
POWERS AND DUTIES OF DIRECTORS................................................... 23
BORROWING POWERS OF DIRECTORS .................................................. 25
THE SEAL ............................................................................................ 25
DISQUALIFICATION OF DIRECTORS........................................................ 25
PROCEEDINGS OF DIRECTORS............................................................. 25
DIVIDENDS .......................................................................................... 27
ACCOUNTS AND AUDIT ........................................................................ 28
CAPITALISATION OF PROFITS............................................................... 29
SHARE PREMIUM ACCOUNT ................................................................. 29
NOTICES ............................................................................................. 30
INDEMNITY .......................................................................................... 30
NON-RECOGNITION OF TRUSTS............................................................ 31
WINDING UP......................................................................................... 31
AMENDMENT OF ARTICLES OF ASSOCIATION ........................................ 31
REGISTRATION BY WAY OF CONTINUATION ........................................... 31

CONFIDENTIAL                                          VER000312

# THE COMPANIES LAW (AS AMENDED)

### COMPANY LIMITED BY SHARES

## MEMORANDUM OF ASSOCIATION

### OF

REGISTERED AND FILED
AS NO. 181389 THIS 7TH DAY
OF FEBRUARY 2007

ASST. REGISTRAR OF COMPANIES
CAYMAN ISLANDS

## NAUTILUS GROWTH FUND LTD

1.  The name of the Company is **Nautilus Growth Fund Ltd.**

2.  The Registered Office of the Company will be situate at the offices of **Walkers SPV Limited, Walker House, 87 Mary Street, George Town, Grand Cayman KY1-9002, Cayman Islands** or at such other location as the Directors may from time to time determine.

3.  The objects for which the Company is established are unrestricted and the Company shall have full power and authority to carry out any object not prohibited by any law as provided by Section 7(4) of The Companies Law (as amended).

4.  The Company shall have and be capable of exercising all the functions of a natural person of full capacity irrespective of any question of corporate benefit as provided by Section 27(2) of The Companies Law (as amended).

5.  Nothing in the preceding sections shall be deemed to permit the Company to carry on the business of a Bank or Trust Company without being licensed in that behalf under the provisions of the Banks and Trust Companies Law (2003 Revision), or to carry on Insurance Business from within the Cayman Islands or the business of an Insurance Manager, Agent, Sub-agent or Broker without being licensed in that behalf under the provisions of the Insurance Law (2003 Revision), or to carry on the business of Company Management without being licensed in that behalf under the provisions of the Companies Management Law (2003 Revision).

6.  The Company will not trade in the Cayman Islands with any person, firm or corporation except in furtherance of the business of the Company carried on outside the Cayman Islands; provided that nothing in this section shall be construed as to prevent the Company effecting and concluding contracts in the Cayman Islands, and exercising in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands.

7.  The liability of the members is limited to the amount, if any, unpaid on the shares respectively held by them.

G:\Public\London\GW\2006\Nautilus Growth Fund\M&A FINAL.doc

REGISTRAR OF COMPANIES
EXEMPTED
CAYMAN ISLANDS

CONFIDENTIAL

8.  The capital of the Company is **US$50,000** divided into **49,900,000** Redeemable Non-Voting Participating Shares of a nominal or par value of **US$0.001** each and **100** Management Shares of a nominal or par value of **US$1.00** each provided always that subject to the provisions of The Companies Law (as amended) and the Articles of Association the Company shall have power to redeem or purchase any of its shares and to sub-divide or consolidate the said shares or any of them and to issue all or any part of its capital whether original, redeemed, increased or reduced with or without any preference, priority or special privilege or subject to any postponement of rights or to any conditions or restrictions whatsoever and so that unless the conditions of issue shall otherwise expressly provide every issue of shares whether stated to be Ordinary, Preference or otherwise shall be subject to the powers on the part of the Company hereinbefore provided.

9.  The Company may exercise the power contained in Section 226 of The Companies Law (as amended) to de-register in the Cayman Islands and be registered by way of continuation in some other jurisdiction.

CONFIDENTIAL

VER000314

The undersigned, whose name, address and description is subscribed, is desirous of being formed into a Company in pursuance of this Memorandum of Association, and agrees to take the number of shares in the capital of the Company set opposite his name.

| NAME, ADDRESS AND DESCRIPTION OF SUBSCRIBER | NUMBER OF SHARES TAKEN BY SUBSCRIBER |
|---|---|

Ian Gobin
Attorney at Law

ONE MANAGEMENT SHARE

(Sgd)  Ian Gobin
**Subscriber**

Cayman Islands

Dated:     7 February 2007

(Sgd)  Lisa So-So
Signature of Witness

Name:        Lisa So-So

REDACTED

Address:

Cayman Islands

Occupation:   Secretary

I,      **Joy A. Rankine, Asst.**                    , Registrar of Companies, in and for the Cayman Islands, DO HEREBY CERTIFY that this is a true copy of the Memorandum of Association of Nautilus Growth Fund Ltd.

Dated this 01th of February , 2007

REGISTRAR OF COMPANIES
EXEMPTED
CAYMAN ISLANDS

G:\Public\London\DW\2009\Nautilus Growth Fund\Signature Pages.doc



## THE COMPANIES LAW (AS AMENDED)

### COMPANY LIMITED BY SHARES

## ARTICLES OF ASSOCIATION

### OF

## NAUTILUS GROWTH FUND LTD

REGISTERED AND FILED
AS NO: 18.... THIS 7TH DAY
OF FEBRUARY 2007
...................
ASST. REGISTRAR OF COMPANIES
CAYMAN ISLANDS

### TABLE A

The Regulations contained or incorporated in Table A in the Schedule to the Companies Law (as amended) shall not apply to the Company and the following Regulations shall comprise the Articles of Association of the Company.

### INTERPRETATION

1.  In these Articles:

"**Business Day**" means any day (excluding Saturday and Sunday) on which banks in Luxembourg are open for business or such other day in such other places as the Directors may from time to time determine;

"**Companies Law**" means the Companies Law (as amended) of the Cayman Islands;

"**Company**" means Nautilus Growth Fund Ltd;

"**Dealing Day**" means the first Business Day in each month or any other day or further days as the Directors may in their absolute discretion adopt from time to time;

"**Directors and Board of Directors**" means the Directors of the Company for the time being, or as the case may be, the Directors assembled as a Board or as a committee thereof;

"**Fund**" means a portfolio of assets of the Company established by the Directors from time to time and represented by one or more classes or series of Participating Shares and managed in accordance with a specified investment objective and policy;

"**Investment Account**" has the meaning given in Article 20;

"**in writing**" means written, printed, lithographed, photographed or telexed or represented by any other substitute for writing or partly one and partly another;

"**Management Shares**" means a management share in the capital of the Company of US$1.00 par value having the rights and being subject to the restrictions set out in these Articles;

G:\Public\London\DW2008\Nautilus Growth Fund\MAA FINAL.doc

CONFIDENTIAL                                                                    VER000316

"Member" means the person whose name is entered in the Register of Members as the holder of any registered shares;

"month" means a calendar month;

"Net Asset Value per Participating Share" means the value of the Investment Account of a particular class or series of Participating Share (after making any adjustments thereto referred to in the applicable Offering Memorandum) at the relevant time divided by the number of Participating Shares of that class or series then in issue. For the sole purpose of determining the number of Participating Shares of a class or series in issue, Participating Shares of that class or series which are to be redeemed on the relevant Redemption Day shall be deemed to be in issue until redeemed and Participating Shares of that class or series which are to be issued on the relevant Dealing Day shall be excluded from the Participating Shares in issue;

"Offering Memorandum" means the placement memorandum or equivalent document issued by the Company in respect of the first class(es) or series of Participating Shares, as amended or supplemented from time to time, and any other offering document that may be issued in relation to the offering of any further class or series of Participating Shares;

"Ordinary Resolution" means a resolution:

(a)   passed by a simple majority of such Members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of the Company and where a poll is taken regard shall be had in computing a majority to the number of shares to which each Member is entitled; or

(b)   approved in writing by all of the Members entitled to vote at a general meeting of the Company in one or more instruments each signed by one or more of the Members and the effective date of the resolution so adopted shall be the date on which the instrument or the last of such instruments if more than one, is executed;

"paid up" means paid up as to the par value and any premium payable in respect of the issue of any shares and includes credited as paid up;

"Participating Share" means a redeemable non-voting preference share of par value US$0.001 and having the rights and being subject to the restrictions set out in these Articles;

"Redemption Day" means the last Business Day of each calendar quarter or any other days or further days as the Directors may in their absolute discretion adopt from time to time.

"Redemption Price per Participating Share" in respect of any class or series of Participating Share means the Net Asset Value per Participating Share calculated by reference to the terms of, and after deduction of any amount (including any applicable redemption charge) set out in, the applicable Offering Memorandum and after any adjustment as set out in the applicable Offering Memorandum. If the redemption price of a class or series of Participating Shares is to be determined by the number of Participating Shares of that class or series in issue on a Redemption Day, Participating Shares of that class or series which are to be redeemed on such Redemption Day shall be deemed to be in issue until redeemed and Participating Shares of that class or series which are to be issued on the relevant Redemption Day (if any) shall be excluded from the Participating Shares in issue;

"Register of Members" means the register to be kept by the Company in accordance with Section 40 of the Companies Law;

"Seal" means the Common Seal of the Company including any facsimile thereof;

CONFIDENTIAL

VER000317

"**securities**" includes all forms of investment, equity and debt securities and interests commonly referred to as investments or securities, including, but not limited to, shares, stocks, warrants, investment contracts, fixed income, bonds, notes, debentures (whether subordinated, convertible or otherwise), equipment lease certificates, equipment trust certificates, non-securitised mortgaged loans, accounts and notes receivable and payable held by trade or other creditors, asset backed securities, money market funds, obligations of any government and any government agencies and instrumentalities, all forms of currency transactions, fixed or adjustable rate collateralised mortgage obligations, commercial paper, certificates of deposit, bankers' acceptances, trust receipts and other obligations, and instruments or evidences of indebtedness of whatever kind or nature of any person, company, corporation, government or other entity whatsoever, whether or not publicly traded or readily marketable, rights and options relating thereto relating to stock indices, government securities, other financial instruments and commodities;

"**share**" means any share in the capital of the Company, including a fraction of any share;

"**signed**" includes a signature or representation of a signature affixed by mechanical means;

"**Special Resolution**" means a resolution passed in accordance with Section 60 of the Companies Law, being a resolution:

(a)   passed by a majority of not less than two-thirds of such Members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of the Company of which notice specifying the intention to propose the resolution as a special resolution has been duly given and where a poll is taken regard shall be had in computing a majority to the number of shares to which each Member is entitled; or

(b)   approved in writing by all of the Members entitled to vote at a general meeting of the Company in one or more instruments each signed by one or more of the Members and the effective date of the Special Resolution so adopted shall be the date on which the instrument or the last of such instruments if more than one, is executed;

"**Subscription Price per Participating Share**" in respect of any class or series of Participating Share means the amount set out in, or calculated by reference to the terms of, the applicable Offering Memorandum. If the subscription price of a class or series of Participating Share is to be determined by the number of Participating Shares of that class or series in issue on a Dealing Day, Participating Shares of that class or series which are to be redeemed on the relevant Dealing Day (if any) shall be deemed to be in issue until redeemed and Participating Shares which are to be issued on the relevant Dealing Day shall be excluded from the Participating Shares in issue;

"**United States**" shall have the meaning set out in the Offering Memorandum;

"**US**" shall have the meaning set out in the Offering Memorandum;

"**US Person**" shall have the meaning set out in the Offering Memorandum;

"**Valuation Day**" means the last Business Day of each calendar month and/or any other day or days as the Directors may in their absolute discretion adopt from time to time.

2.    In these Articles, save where the context requires otherwise:

(a)   words importing the singular number shall include the plural number and vice versa;

(b)   words importing the masculine gender only shall include the feminine gender;

CONFIDENTIAL

VFP000318

(c)    words importing persons only shall include companies or associations or bodies of persons, whether corporate or not;

(d)    "**may**" shall be construed as permissive and "**shall**" shall be construed as imperative;

(e)    reference to a dollar or US$ is a reference to United States dollars;

(f)    references to a statutory enactment shall include reference to any amendment or re-actment thereof for the time being in force.

3.    Subject to the last two preceding Articles, any words defined in the Companies Law shall, if not inconsistent with the subject or context, bear the same meaning in these Articles.

### PRELIMINARY

4.    The business of the Company shall be commenced as soon after the incorporation of the Company as the Directors think fit, notwithstanding that part only of the shares may have been allotted or issued.

### SITUATION OF REGISTERED OFFICE OF THE COMPANY

5.    The registered office of the Company shall be at such address in the Cayman Islands as the Directors shall from time to time determine. The Company may in addition establish and maintain such other offices and places of business and agencies in such places as the Directors may from time to time determine.

### SERVICE PROVIDERS

6.    The Directors may appoint any one or more person or persons to act as service providers to the Company (including, without limitation, persons to act as manager, administrator, custodian, investment manager, investment adviser, sponsor and/or prime broker to the Company) and the Directors may entrust to and confer upon such service providers any of the powers exercisable by them as Directors upon such terms and conditions including the right to remuneration payable by, and indemnification from, the Company and with such restrictions and with such powers of delegation as they think fit and either collaterally with or to the exclusion of their own powers.

### SHARE CAPITAL

7.    The authorised share capital of the Company as at the date of adoption of these Articles is US$50,000 divided into:

(a)    49,900,000 Participating Shares with a par value of US$0.001 each which may be issued in different classes or series as the Directors may determine; and

(b)    100 Management Shares with a par value of US$1.00 each.

Any authorised but unissued Participating Shares of any class or series may be classified or re-classified by the Directors into any other class or series with such rights and/or restrictions as they shall determine in their sole discretion.

8.    The Directors may in their absolute discretion determine to classify or re-classify any authorised but unissued Participating Shares of any class or series into Participating Shares of a new class or series representing or having different rights in respect of the assets of the Company. The Participating Shares shall be issued as Participating Shares of the relevant class or classes determined and designated by the Directors from time to time, each such class representing the

CONFIDENTIAL

VER000319

capital contribution made by the holders of the relevant class of Participating Shares. Each class of Participating Shares shall rank equally in priority and preference save as expressly provided in these Articles and as determined by the Directors from time to time and specified in the applicable Offering Memorandum from time to time and except that the capital contributions made in respect of each class (and resulting investments therewith) shall, subject as provided in these Articles, be maintained in accounts with separate records in the books of the Company, the subscription proceeds of each class of Participating Shares being invested principally in such investments and with such investment objectives for such class and upon such other terms and conditions as may be determined by the Directors and specified in the applicable Offering Memorandum from time to time. The Directors may in their discretion determine to issue classes of Participating Shares with differential rights in respect of one or more Funds. This may include, without limitation, Participating Shares of a class denominated in a currency other than the base currency of the relevant Fund and/or Participating Shares of a class to which different fees and/or charges apply in respect of the Participating Shares themselves and/or the assets of the relevant Fund attributable to the respective classes of Participating Shares. Separate records will be maintained in the records of the Company but the capital contributions made in respect of each such class (and resulting investments therewith) may, at the discretion of the Directors, be maintained in the same Fund as for other classes of Participating Shares issued in respect of the same Fund (save, in respect of Participating Shares denominated in different currencies to the base currency of account of the Fund, for transactions in investments intended to enhance or protect the value of the relevant class with regard to changes in exchange rates between the currency of denomination of the class and the base currency of the Fund). Portfolios may be shared where the class differential relates to currency and/or charges.

9.      The Directors may in addition in their absolute discretion issue Participating Shares of a class or series which may only be acquired by persons appointed to provide services to the Company pursuant to Article 6, their affiliates or associates or connected persons or respective directors, employees or agents, or such other persons as the Directors may, in their absolute discretion, determine. Any such class or series of Participating Shares may be issued on such terms as the Directors may in their absolute discretion determine including, without limitation, on terms that no fees and/or charges, or differential fees and/or charges, are payable in respect of the shares of the relevant class or series and any such Participating Shares may be issued in consideration of the waiver of fees payable by the Company to the subscribers of Participating Shares.

10.     The rights and restrictions attaching to the Participating Shares are as follows:

(a)     **Dividends**

        Holders of Participating Shares of any particular class or series shall be entitled to such dividends as the Directors may in their absolute discretion lawfully determine and declare in respect of such class or series taking into account the interests of that class or series in the assets, income or profits of the Company.

        The Directors may in their absolute discretion declare a dividend payable in respect of any class or series of Participating Shares without declaring a dividend payable in respect of any other class or series of Participating Share.

(b)     **Voting**

        Holders of Participating Shares do not have the right to receive notice of, attend, speak and vote at general meetings of the Company.

(c)     **Redemption by the Holder**

        Save to the extent that the provisions of any applicable Offering Memorandum provide to the contrary, the holder of any class or series of Participating Shares may, provided that

CONFIDENTIAL

VER000320

such holder has held such Participating Shares for the minimum period of time as set out in the applicable Offering Memorandum (if any), by the delivery to the Company's duly authorised agent of a redemption request (and any other documents referred to in the applicable Offering Memorandum) in such form as the Directors may from time to time determine at least sixty (60) days (or such other period as specified in the applicable Offering Memorandum) prior to the relevant Redemption Day, require the Company to redeem, and subject to the provisions of the Companies Law, these Articles and the applicable Offering Memorandum the Company shall redeem all (or some only provided, unless the Directors determine otherwise, that the value of the Participating Shares of that class or series held by the holder following a redemption of some only of such Participating Shares equals or exceeds the value as set out in the applicable Offering Memorandum (if any) and provided, unless the Directors determine otherwise, that the value of the Participating Shares of that class or series being redeemed equals or exceeds the value as set out in the applicable Offering Memorandum (if any)) of such Participating Shares of that holder on the applicable Redemption Day at the Redemption Price per Participating Share on the relevant Redemption Day. The Directors may in their absolute discretion waive any notice period specified for such redemption, either generally or in respect of a specific redemption. The Directors may, in their absolute discretion, make any adjustments or deduct a redemption fee or charge from the Redemption Price per Participating Share as set out in the applicable Offering Memorandum. The Directors may, in their absolute discretion, waive the requirement for a holder of Participating Shares to hold Participating Shares for a minimum period of time prior to such holder being able to require redemption of these shares in accordance with these Articles, either generally or in respect of a particular redemption.

The Directors may, in their discretion, limit the total number of Participating Shares, which may be redeemed on any Redemption Day as specified in the applicable Offering Memorandum. Where this restriction is applied, Participating Shares will be redeemed in accordance with the terms stipulated in respect of a particular Fund, class or series of Participating Shares in the applicable Offering Memorandum.

The Company, the Directors and the Company's other agents may rely upon any redemption request believed by them in good faith to be genuine.

Any notice received after such time as may from time to time be specified by the Directors on a Business Day (at such location as may from time to time be specified by the Directors) may be deemed by the Directors to be received on the next following Business Day and save as provided by the following paragraph of this Article, a holder of Participating Shares shall not be entitled to withdraw a request duly made for redemption of Participating Shares without the approval of the Directors.

If the determination of the value of a relevant Investment Account or the Net Asset Value per Participating Share of the relevant class or series is suspended beyond the day on which it would normally occur by reason of a declaration by the Directors, the right of a holder to have the Participating Shares of the class or series, in respect of which such Investment Account was established, redeemed shall be similarly suspended and during the period of suspension the holder may withdraw his request for redemption. Any withdrawal of a request for redemption under the provisions of this Article shall only be effective if actually received by the Company's duly authorised agent before termination of the period of suspension. If the request is not so withdrawn the redemption of such Participating Shares shall be made on the day specified in the applicable Offering Memorandum following the end of the suspension.

CONFIDENTIAL

VER000321

(d)   **Redemption by the Company**

Subject to the provisions of the Companies Law and these Articles, if the Directors determine in their absolute discretion that:

(i)   Participating Shares owned directly or beneficially by any person or persons who or which, by virtue of the holding concerned, give rise to a breach of any applicable laws or requirement in any jurisdiction or may, either alone or together with other Members, in the sole and conclusive opinion of the Directors:

(A)   prejudice the tax status or residence of the Company or the holders of Participating Shares of any particular class or series; or

(B)   cause the Company or the holders of Participating Shares of any particular class or series to suffer any pecuniary, fiscal or regulatory disadvantages; or

(C)   cause the Company to be required to comply with any registration or filing requirements in any jurisdiction with which it would not otherwise be required to comply; or

(ii)   the value at the Net Asset Value per Participating Share as at the close of business on the last preceding Valuation Day of the shares held by a Member is less than the amount specified in the applicable Offering Memorandum;

(iii)   Participating Shares are, in the opinion of the Directors, held or being acquired directly or indirectly for the account of a US Person or any other person who is not an eligible investor;

(iv)   any Member has delayed or failed to produce any information required by the Company or its service providers for verification purposes;

(v)   any other circumstances exist which are set out in the applicable Offering Memorandum as being circumstances entitling the Company to redeem some or all of the Participating Shares of one or more Members,

then the Company may by giving written notice to a holder of Participating Shares redeem on the day specified in the notice all or some of the Participating Shares of any or all classes or series held by that holder at the Redemption Price per Participating Share of the relevant class or series as of the most recent Valuation Day (and the Directors may specify a special Valuation Day for such purposes).

Subject to the provisions of the Companies Law and these Articles, if the Directors determine in their absolute discretion that:

(1)   the aggregate amount invested in the Company or in any Investment Account or the small number of holders of Participating Shares of all classes or series or of any class or series at any time does not justify or support the continued trading and existence of the Company or a particular class or series of Participating Shares;

(2)   the aggregate value of all Participating Shares of a class is less than the amount set out in the applicable Offering Memorandum; or

CONFIDENTIAL

VER000322

(3)   in any other circumstances in which the Directors determine in their absolute discretion that such compulsory redemption is in the best interests of the Company,

the Company may, by giving written notice to all holders of Participating Shares or all holders of Participating Shares of a particular class or series, redeem on the day specified in the notice all of the Participating Shares or all of the Participating Shares of the applicable class or series held by such holders at the Redemption Price per Participating Share of the relevant class or series as of the most recent Valuation Day (and the Directors may specify a special Valuation Day for such purposes).

(e)     **Adjustments and Equalisation**

The Directors may make such further regulations concerning share issue and redemption as they shall from time to time deem necessary. Such regulations may include without limitation provision for adjustments to be made to the price at which Participating Shares are issued and/or redeemed as the Directors consider appropriate and fair for an equitable allocation among Members of, *inter alia*, duties and charges payable by the Company in connection with the purchase and realisation of securities. The Directors are also empowered to approve such arrangements as they consider appropriate whereby adjustments are made to the subscription and redemption prices and value of Participating Shares to ensure, so far as practicable, *inter alia*, that all shares of the same class have the same net asset value per Participating Share, that Members have the same capital per Participating Share of the same class at risk in the Company and participate on an equitable basis in the profits and losses of the Company. Without prejudice to the generality of the foregoing, the Directors may in their discretion make such arrangements as are required for an equitable treatment of Members as to any performance, incentive or similar fees due from the Company including those referred to in the applicable Offering Memorandum, which arrangements may include redeeming a portion of a Member's shareholding for no consideration (and applying the value of such shares in payment of fees) or receiving from a Member on subscription an additional sum by way of equalisation credit to be held toward a potential future subscription for shares in order to equitably adjust such Member's aggregate holding.

(f)     **Series**

The Directors may in their discretion issue Participating Shares of each class in different series and may convert by way of a re-designation or otherwise one or more series into series of the same class, to the extent and in such circumstances as they may deem it necessary or desirable including, without limitation, in order to effect or facilitate any arrangements or adjustments referred to in Article 10(e) above, each series ranking equally in priority and preference with every other series of the same class except to the extent specified by the Directors and necessary or desirable for the foregoing purposes.

(g)     **Provisions applicable to all redemptions**

Subject to this Article, the amount due on redemption of Participating Shares of a particular class or series redeemed will be paid within such period and in such manner as is specified in the applicable Offering Memorandum in respect of Participating Shares of such class or series. Payment for such Participating Shares shall be made at the risk and cost of the Member in such currency or currencies as the Directors shall determine in respect of a particular class or series of Participating Shares.

The Directors may elect in their absolute discretion to effect a redemption payment to any or all redeeming holders of Participating Shares, either in whole or in part, in specie or in kind rather than in cash, in which event the Directors shall use the same valuation

CONFIDENTIAL                                                                    VER000323

procedures used in determining the net asset value of the Company and of the relevant class to determine the value to be attributed to the relevant securities to be transferred or assigned to redeeming holders of Participating Shares who shall receive securities of a value equal to the redemption payment to which they would otherwise be entitled and who shall be responsible for all custody and other cost involved in changing the ownership of the relevant securities from the Company to the redeeming holders of Participating Shares and on-going custody costs. Where such an election is made, the Directors or the relevant Member(s) may further elect for the relevant assets to be held in a segregated account of the Company and for the proceeds of disposal of such assets, less costs, to be distributed to the relevant Member(s). Any such distributions in specie will not materially prejudice the interests of existing holders of Participating Shares.

If after the relevant Redemption Day and prior to payment of the amount due on redemption the determination of the value of the relevant Investment Account or the Net Asset Value per Participating Share of the relevant class or series is suspended the Company may, where the Directors believe that to make such payment during the period of suspension would prejudice the interests of holders of Participating Shares, withhold payment from persons whose Participating Shares have been redeemed prior to such suspension until after the suspension is lifted.

If any Member has, in the opinion of the Directors, delayed or failed to produce any information required by the Company or its service providers for verification purposes, payment of the amount due on redemption may be delayed. In addition, the Directors may suspend the payment of any amount due on redemption if they determine it necessary to do so to comply with anti-money laundering regulations applicable to the Company or any of its service providers.

On the relevant date, Redemption Day, the holder of Participating Shares to be redeemed shall cease to be entitled to any rights in respect of that Participating Share (excepting always the right to receive a dividend which has been declared in respect thereof prior to such redemption being effected) and accordingly his name shall be removed from the Register of Members with respect thereto and the share shall be available for re-issue and until re-issue shall form part of the unissued share capital of the Company.

No interest will accrue on the redemption monies pending payment.

The Directors may make such further regulations concerning redemption as they shall from time to time deem necessary.

(h)   **Minimum Subscriptions and Holdings**

The Directors may determine from time to time with respect to the Participating Shares of each class the minimum aggregate number of Participating Shares to be subscribed for during the initial offer period before any such Participating Shares of such class are issued, the minimum number of Participating Shares to be issued to each prospective Member, the minimum number of Participating Shares of such class capable of being redeemed by any Member with reference to any Redemption Day or such day as the Directors may determine (or an amount in respect thereof) and the minimum number of Participating Shares (or any amount in respect thereof) to be otherwise issued to or held on an ongoing basis after any redemptions by each Member of each class.

(i)   **Return of Capital on Liquidation**

CONFIDENTIAL

VEP000334

On a return of capital on liquidation or winding up of the Company the assets of the Company available for distribution amongst its Members shall be applied in the following priority:

(i)  firstly, in the payment to the holders of the Participating Shares of each class of a sum in the currency in which that class is designated (or in any other currency selected by the liquidator) as nearly as possible equal (at a rate of exchange determined by the liquidator) to the Net Asset Value of the Participating Shares of such class held by such holders respectively as at the date of commencement to wind up provided that there are sufficient assets available in the relevant Investment Accounts.  In the event that there are insufficient assets available in the relevant Investment Account, to enable such payment to be made recourse shall be had:

(A)  first, to any assets of the Company not comprised within any of the Investment Accounts; and

(B)  secondly, to the assets remaining in the Investment Accounts for the other classes or series of Participating Shares (after payment to the holders of the Participating Shares of that class or series to which they relate of the amounts to which they are respectively entitled under this paragraph (i)) *pro rata* to the total value of such assets remaining within each Investment Account;

(ii)  secondly, in the payment to the holders of Participating Shares of a particular class or series any balance then remaining in the relevant Investment Account, such payment being made in proportion to the number of Participating Shares held;

(iii)  thirdly, in the payment to the holders of the Management Shares of the nominal amount paid up on the Management Shares; and

(iv)  fourthly, in the payment to the holders of the Participating Shares of any balance then remaining and not comprised within any of the Investment Accounts, such payment being made in proportion to the number of Participating Shares held.

11.  The rights and restrictions attaching to the Management Shares are as follows:

(a)  **Dividends**

Holders of Management Shares shall not be entitled to any dividends.

(b)  **Voting**

Holders of Management Shares have the right to receive notice of, attend, speak and vote at general meetings of the Company.

(c)  **Repurchase**

The Company may at any time purchase Management Shares on such terms and in such manner as the Company may agree with the holder save that the price to be paid by the Company shall not exceed the amount paid up on such shares.

(d)  **Return of Capital on Liquidation**

CONFIDENTIAL

VER000325

On a return of capital on liquidation or winding up of the Company the assets of the Company available for distribution amongst its members shall be applied as set out in Article 10(i).

12. Subject as otherwise provided in these Articles, all shares in the capital of the Company for the time being and from time to time unissued shall be under the control of the Directors and may be re-designated, issued, allotted, have options granted over them or be disposed of in such manner, to such persons on such terms and in such manner as the Directors in their absolute discretion may think fit, save that no share may be issued at a discount except in accordance with the Companies Law.

13. The Company may in so far as may be permitted by law, pay a commission to any person in consideration of his subscribing or agreeing to subscribe whether absolutely or conditionally for any shares. Such commissions may be satisfied by the payment of cash or the lodgement of fully or partly paid-up shares or partly in one way and partly in the other. The Company may also on any issue of shares pay such brokerage as may be lawful.

14. The Directors shall keep or cause to be kept a register of members as required by Section 40 of the Companies Law at such place or places as the Directors may from time to time determine, and in the absence of any such determination, the Register of Members shall be kept at the registered office of the Company. The Company shall not be bound to register more than four persons as the joint holders of any share or shares.

## ISSUE OF SHARES

15. Participating Shares of a particular class or series shall be issued on the terms and at the Subscription Price per Participating Share referred to in the applicable Offering Memorandum with such adjustments as the Directors may, in their absolute discretion, determine as set out in the applicable Offering Memorandum. The Directors may charge a subscription charge in respect of Participating Shares of a particular class or series in accordance with the provisions of the Offering Memorandum relevant to such class or series. The Directors may refuse to issue a particular class or series of Participating Shares to any category or class of persons as provided in the Offering Memorandum. The Directors may refuse to issue Participating Shares to any person. No Participating Shares shall be issued to an ineligible investor so designated by the Directors and the Directors shall have power to impose such further restrictions on the Participating Shares as they may think necessary for the purpose of ensuring that no Participating Shares are acquired or held by any person in breach of these Articles, the Companies Law or the applicable requirements of any country or governmental authority.

16. The Directors may in their absolute discretion refuse to accept any application for Participating Shares and may accept any application in whole or in part.

17. The Directors shall not be obligated to issue Participating Shares of any class or series during any period when the determination of the value of the Investment Account established in respect of that class or series of Participating Shares is suspended.

18. The Directors may elect in their absolute discretion to accept a subscription payment for Participating Shares of any class, either in whole or in part, *in specie* and in kind rather than in cash, in which event the Directors shall use the same valuation procedures used in determining the Net Asset Value per Participating Share to determine the value to be attributed to the relevant assets to be transferred or assigned or made available to the Company which shall receive securities of a value equal to the subscription payment to which the Company would otherwise be entitled. The subscriber shall be responsible for all custody and other costs involved in changing the ownership of the relevant assets to the Company unless the Directors agree otherwise.

11

CONFIDENTIAL

VER000326

## FRACTIONAL SHARES

19.　The Directors may issue fractions of a share of any class or series of shares, and, if so issued, a fraction of a share (calculated up to four decimal points or such other number of decimal places as the Directors may determine) shall be subject to and carry the corresponding fraction of liabilities (whether with respect to any unpaid amount thereon, contribution, calls or otherwise), limitations, preferences, privileges, qualifications, restrictions, rights (including, without limitation, voting and participation rights) and other attributes of a whole share of the same class or series of shares. If more than one fraction of a share of the same class or series is issued to or acquired by the same Member such fractions shall be accumulated.

## INVESTMENT ACCOUNTS

20.　There shall be established for each class and series of Participating Shares an account in the books and records of the Company or administrator or custodian (an "Investment Account") to which the following provisions shall apply:

(a)　the proceeds from the allotment and issue of Participating Shares of a particular class or series and the assets and liabilities and income and expenditure attributable to that class or series of Participating Shares shall be applied or charged to the Investment Account established for such class or series of Participating Shares subject to the provisions of this Article;

(b)　where any asset is derived from another asset (whether cash or otherwise) such derivative asset shall be applied to the Investment Account from which the related asset was derived and on each revaluation of an investment the increase or diminution in the value thereof (or the relevant portion of such increase or diminution in value) shall be applied to or deducted from the relevant Investment Account;

(c)　in the case of an asset (or amount treated as a notional asset) which the Directors do not consider is attributable to a particular Investment Account or Investment Accounts, the Directors shall have the discretion to determine the basis upon which any such asset shall be allocated between Investment Accounts and the Directors shall have power at any time and from time to time to vary such allocation;

(d)　where assets not attributable to any Investment Account give rise to any net profits or losses, the Directors may allocate the assets representing such net profits or other net losses to the Investment Accounts as they think fit;

(e)　the liability to pay a dividend on a class of Participating Shares shall be allocated to the corresponding Investment Account and the Directors shall allocate any other liability to the Investment Account or Investment Accounts to which, in the Directors' opinion, it relates or if in the Directors' opinion it does not relate to any particular Investment Account or Investment Accounts, between the Investment Accounts at the Directors' discretion in such manner as they consider fair and reasonable in all the circumstances and the Directors shall have power at any time and from time to time to vary such basis. Such allocation will generally be *pro rata* to the Net Asset Value of the relevant Investment Accounts;

(f)　in any proceedings brought by any holder of Participating Shares of a particular class or series in respect of the rights of such holder as the holder of such Participating Shares, any liability of the Company to such shareholder in respect of such proceeding shall only be settled out of the assets in the Investment Account corresponding to such Participating Shares, without recourse in respect of such liability or any allocation of such liability to any other class or series of shares of the Company;

CONFIDENTIAL

VER000327

(g)    the Directors may make debits or credits of assets (or amounts treated as notional assets) to Investment Accounts if, as a result of a creditor or litigant proceeding against certain of the assets of the Company or otherwise, a liability would be borne in a different manner from that in which it would have been borne under paragraph 20(e) above, or in any similar circumstances; and

(h)    save as otherwise provided in these Articles, the assets allocated to an Investment Account shall be applied solely in respect of the Participating Shares of the class or series to which such Investment Account relates and no holder of Participating Shares of that series or class shall have any claim or right to any asset allocated to any other Investment Account.

For the avoidance of doubt and without prejudice to this Article, the Directors may maintain, in such manner as specified in the Offering Memorandum, each Investment Account in one or more account, portfolio or pool and either separately or jointly with other Investment Accounts.

## DETERMINATION OF VALUE OF INVESTMENT ACCOUNTS

21.    In determining the value of each Fund, Investment Account and the Net Asset Value per Participating Share of each class or series, the assets and liabilities income and expenditure of the Company shall be determined on the basis set out in the applicable Offering Memorandum and subject thereto on the basis of such generally accepted accounting principles under such basis of accounting as the Directors shall determine from time to time, with the Directors determining specific accounting principles applicable from time to time to apply to the calculation of the value of each Investment Account.

22.    The value of each Fund and/or Investment Account shall be determined on each Valuation Day by reference to the values of the assets and liabilities of the Company as at the valuation point on the Valuation Day approved by the Directors.

23.    The determination of the value of a Fund and/or an Investment Account shall be examined annually by the Company's auditors. In the event that there is a disagreement between the Board of Directors and the auditors regarding the value of an Investment Account and the Board of Directors and the auditors are unable to reach agreement, the final determination shall be made by the Board of Directors.

24.    Any valuation made pursuant to these Articles shall, in the absence of manifest error, be binding on all persons.

## SUSPENSION OF THE DETERMINATION OF THE VALUE OF AN INVESTMENT ACCOUNT, SUBSCRIPTIONS AND REDEMPTIONS

25.    The Directors may in their absolute discretion declare a suspension of the determination of the value of a Fund, an Investment Account, the Net Asset Value per Participating Share of a class or series, the redemption of any class or series of Participating Shares and/or the subscription of any class or series of Participating Shares during any part of a period specified for such purposes in the Offering Memorandum in respect of a particular Investment Account, class or series of Participating Shares.

26.    Any such suspension shall take effect at such time as the Directors shall declare and thereafter there shall be no determination of the value of such Investment Account or the Net Asset Value per Participating Share until the Directors declare the suspension to be at an end.

---

13

CONFIDENTIAL                                                      VER000328

27. Whenever the Directors shall declare a suspension of the determination of the value of a Fund, an Investment Account, the redemption of any class or series of Participating Shares and/or the subscription of any class or series of Participating Shares the Directors shall notify, or cause to notify, holders of the relevant class or series of Participating Shares who have tendered their shares for redemption and who have not received the redemption proceeds in respect of such shares or his agent by mail or any other means.

28. The Directors may postpone any Dealing Day, Redemption Day and/or Valuation Day for up to one Business Day without the requirement to give notice to holders of Participating Shares when, in the opinion of the Directors, a significant proportion of the assets attributable to the relevant Investment Account cannot be valued on an equitable basis and such difficulty is expected by the Directors to be overcome within that period.

## VARIATION OF RIGHTS ATTACHING TO SHARES

29. The rights attaching to any class or series of share (unless otherwise provided by the terms of issue of the shares of that class or series) may be varied or abrogated by the Directors without the consent of holders of shares of such class or series if the Directors determine that such change is not materially adverse to the interests of the holders of shares of such class, but otherwise with the consent in writing of the holders of two-thirds of the issued shares of that class or series, or with the sanction of a resolution passed by not less than a two-thirds majority of the holders of shares of the class or series present in person or by proxy at a separate general meeting of the holders of the shares of the class or series. To every such separate general meeting the provisions of these Articles relating to general meetings of the Company shall *mutatis mutandis* apply, but so that the necessary quorum shall be at least one person holding or representing by proxy not less than one-third of the issued shares of the class or series and that any holder of shares of the class or series present in person or by proxy may demand a poll. If, within half an hour from the time appointed for the meeting, a quorum is not present, the meeting, if convened upon the requisition of Members, shall be dissolved. In any other case it shall stand adjourned to the same day in the next week at the same time and place and, if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting, the Member or Members present and entitled to vote shall be a quorum. For such purposes, the Directors may treat any or all of the said classes or series of shares as forming one class or series if they consider that such classes or series would be affected in the same way by the proposals under consideration but, in any other case, shall treat them as separate classes or series.

30. The rights conferred upon the holders of the shares of any class or series issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class or series, be deemed varied or abrogated by, *inter alia*, the creation, allotment or issue of further shares ranking *pari passu* with or subsequent to them, the redemption or repurchase of any shares, by the passing of a Directors resolution to change or vary any investment objective, investment technique and strategy and/or investment policy in relation to a class or series of share, any modification of the fees payable to any service provider to the Company, any change to a Valuation Day, Dealing Day or Redemption Day to another day.

## CERTIFICATES

31. Shares will be issued in fully registered, book-entry form and certificates for shares will only be issued with the consent of the Directors at the request of a holder of a particular class or series. In respect of a share or shares held jointly by several persons, the Company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all. If a share certificate is defaced, lost or destroyed it may be reissued on such terms, if any, as to evidence and indemnity as the Directors think fit.

## LIEN

14

CONFIDENTIAL

VER000329

32. The Company shall have a first priority lien and charge on every share (not being a fully paid up share) for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the Company shall also have a first priority lien and charge on all shares (other than fully paid up shares) standing registered in the name of a single person for all moneys presently payable by him or his estate to the Company, but the Directors may at any time declare any share to be wholly or in part exempt from the provisions of this Article. The Company's lien, if any, on a share shall extend to all dividends payable thereon.

33. The Company may sell, in such manner as the Directors think fit, any shares on which the Company has a lien, but no sale shall be made unless some sum in respect of which the lien exists is presently payable nor until the expiration of 14 days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the persons entitled thereto by reason of his death or bankruptcy.

34. For giving effect to any such sale the Directors may authorise some person to transfer the shares sold to the purchaser thereof. The purchaser shall be registered as the holder of the shares comprised in any such transfer and he shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

35. The proceeds of the sale shall be received by the Company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue shall (subject to a like lien for sums not presently payable as existed upon the shares prior to the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

36. The Directors may from time to time make calls upon the Members in respect of any moneys unpaid on their shares, and each Member shall (subject to receiving at least 14 days' notice specifying the time or times of payment) pay to the Company at the time or times so specified the amount called on his shares.

37. The joint holders of a share shall be jointly and severally liable to pay calls in respect thereof.

38. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest upon the sum at the rate of eight per centum per annum from the day appointed for the payment thereof to the time of the actual payment, but the Directors shall be at liberty to waive payment of that interest wholly or in part.

39. The provisions of these Articles as to the liability of joint holders and as to payment of interest shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had become payable by virtue of a call duly made and notified.

40. The Directors may make arrangements on the issue of shares for a difference between the Members, or the particular shares, in the amount of calls to be paid and in the times of payment.

41. The Directors may, if they think fit, receive from any Member willing to advance the same all or any part of the moneys uncalled and unpaid upon any shares held by him, and upon all or any of the moneys so advanced may (until the same would, but for such advance, become presently payable) pay interest at such rate (not exceeding without the sanction of an Ordinary Resolution, eight per centum per annum) as may be agreed upon between the Member paying the sum in advance and the Directors.

CONFIDENTIAL

VER000330

## FORFEITURE OF SHARES

42.  If a Member fails to pay any call or instalment of a call on the day appointed for payment thereof, the Directors may, at any time thereafter during such time as any part of such call or instalment remains unpaid, serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any interest which may have accrued.

43.  The notice shall name a further day (not earlier than the expiration of 14 days from the date of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed the shares in respect of which the call was made will be liable to be forfeited.

44.  If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by notice has been made, be forfeited by a resolution of the Directors to that effect.

45.  A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the Directors think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the Directors think fit.

46.  A person whose shares have been forfeited shall cease to be a Member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which at the date of forfeiture were payable by him to the Company in respect of the shares, but his liability shall cease if and when the Company receives payment in full of the fully paid up amount of the shares.

47.  A statutory declaration in writing that the declarant is a Director of the Company, and that a share in the Company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share. The Company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

48.  The provisions of these Articles as to forfeiture shall apply in the case of non-payment of any sum which by the terms of issue of a share becomes due and payable, whether on account of the amount of the share, or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## TRANSFER OF SHARES

49.  The instrument of transfer of any share shall be in any usual or common form or such other form as the Directors may in their absolute discretion approve and such form of transfer may include such warranties as the Directors may, from time to time, require and shall be executed by or on behalf of the transferor, and will contain the name and address of the transferee and the number of shares being transferred and if so required by the Directors shall also be executed by or on behalf of the transferee and shall be accompanied by such evidence as the Directors may reasonably require to show the right of the transferor to make the transfer. The transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the Register of Members in respect thereof.

50.  The Directors may in their absolute discretion decline to register any transfer of shares to a US Person or to any persons who are not eligible investors or where the holding of such shares could

CONFIDENTIAL

VER000331

result in regulatory, pecuniary, legal, taxation or material administrative disadvantage for the Company or in any circumstances that are set out in the applicable Offering Memorandum as being circumstances entitling the Directors to refuse to register a transfer of Participating Shares. Save to the extent that the provisions of any applicable Offering Memorandum provide to the contrary, the Directors may decline to register any transfer of shares where the transfer would result in the transferee holding Participating Shares with an aggregate Net Asset Value per Participating Share of less than the amount set out in the applicable Offering Memorandum. The Directors may in their absolute discretion decline to register a transfer during the 21 days before a general meeting.

51.   The Directors may in their absolute discretion decline to register a transfer when the transfer instrument is not accompanied by the relevant application or subscription form of the Company duly completed from the transferee, the share certificate (if any) and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer and to verify the identity of the transferee.

52.   If the Directors refuse to register a transfer of shares they shall within 21 days after the date on which the transfer was lodged with the Company, send to the transferee notice of the refusal.

53.   The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine, provided always that such registration shall not be suspended for more than 45 days in any year.

54.   The Company shall retain all instruments of transfer that shall be registered, but any instrument of transfer that the Directors decline to register shall (except in any case of fraud) be returned to the person depositing the same.

## COMPULSORY TRANSFER

55.   The Directors shall be entitled by service of a notice (a "Transfer Notice") to require the transfer of any Participating Shares held by, or for the benefit of, any person:

(a)   who is a US Person or is holding Shares for the account of a US Person or any other person who is not an eligible investor;

(b)   who, by virtue of the holding concerned, gives rise to a regulatory, pecuniary, legal or taxation or material administrative disadvantage to the Company or holders of Participating Shares;

(c)   in the event that the continued ownership of Participating Shares by such person could result in adverse tax or regulatory consequences to the Company or holders of Participating Shares or require the Company to comply with any registration or filing requirements in any jurisdiction with which it would not otherwise be required to comply;

(d)   who has failed to provide any information or declaration required by the Directors within twenty one days of being requested to do so; or

(e)   any other circumstances exist which are set out in the applicable Offering Memorandum as being circumstances entitling the Company to require the transfer of some or all of the Participating Shares of one or more Members.

56.   It shall be for the Directors in their absolute discretion to decide whether or not the provisions of the previous Article apply and this discretion shall be exercisable regardless of the date of the entry of a Member on the Register and the number of Participating Shares held by a Member.

CONFIDENTIAL

VER000332

The Directors shall not be required to give any reasons for any decision, determination or declaration taken or made in accordance with this Article.

57.   If the required transfer is not effected immediately after service of a Transfer Notice on the registered holder (the "Notified Holder"), the Directors are entitled to;

(a)   as agent of the Notified Holder, execute or authorise some person to execute and deliver on the Notified Holder's behalf, an instrument of transfer in respect of the Participating Shares held by the Notified Holder and the Company may sell the Participating Shares as agent of the Notified Holder at a price determined in accordance with the provisions contained in the following Article, deduct therefrom any fiscal charges, fees and expenses incurred by the Company as a result of the compulsory transfer, receive the sale proceeds as agent of the Notified Holder and cause the transferee to be registered as the holder of such Participating Shares subject to the provisions of these Articles. The receipt of the Company for the sale proceeds shall be a good discharge to the transferee (who shall not be bound to see the application thereof) and after the transferee has been registered in exercise or purported exercise of the aforesaid powers, the validity of the proceedings shall not be questioned by any person;

(b)   compulsorily redeem the Participating Shares in accordance with Article 10(d).

Until such transfer or redemption is effected, the holder of such Participating Shares shall not be entitled to any rights or privileges attaching to such Participating Shares.

58.   In the event of a compulsory transfer, the sale price of the Participating Shares shall be such price as is reasonably obtainable by selling such Participating Shares in the market.

59.   The sale proceeds of a compulsory transfer, after deduction of the amounts set out in these Articles, will be deposited by the Company in a bank for payment to the holder of the Participating Shares subject to compulsory transfer against the proffering of such evidence as to title as the Directors may require. Upon the deposit of the sale proceeds, the holder shall have no further interest in the Participating Shares or any of them or any claim against the Company in respect thereof except the right to receive the sale proceeds of redemption or transfer so deposited (without interest) upon proffering such evidence. Subject thereto, the Company may make payment of the sale proceeds to the relevant former holder in such manner as it thinks fit.

60.   In order to give effect to the foregoing restrictions and provisions, the Company may require any Member at any time to furnish such information and declarations as the Directors may require. Any Member who fails to provide such information or declarations within a reasonable time (not being less than 21 days after service of the request for the same) may be deemed to be holding Participating Shares to which the compulsory transfer provisions above apply.

61.   If a Member becomes aware (otherwise than as a result of receiving a Transfer Notice) that he is holding Participating Shares in circumstances that would entitle the Directors to give a Transfer Notice in respect thereof, he shall forthwith inform the Directors and take such steps as necessary so as to ensure that such Participating Shares cease to be held in such circumstances.

### TRANSMISSION OF SHARES

62.   The legal personal representative of a deceased sole holder of a share shall be the only person recognised by the Company as having any title to the share. In the case of a share registered in the name of two or more holders, the survivors or survivor, or the legal personal representatives of the deceased survivor, shall be the only person recognised by the Company as having any title to the share.

CONFIDENTIAL                              VER000333

63.  Any person becoming entitled to a share in consequence of the death or bankruptcy of a Member shall upon such evidence being produced as may from time to time be properly required by the Directors, have the right either to be registered as a Member in respect of the share or, instead of being registered himself, to make such transfer of the share as the deceased or bankrupt person could have made; but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by the deceased or bankrupt person before the death or bankruptcy.

64.  A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a Member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company.

## ALTERATION OF SHARE CAPITAL

65.  The Company may from time to time by Ordinary Resolution increase the share capital by such sum, to be divided into shares of such class or series and amount, as the resolution shall prescribe.

66.  The Company may by Ordinary Resolution:

(a)  consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b)  convert all or any of its paid up·shares into stock and reconvert that stock into paid up shares of any denomination;

(c)  subdivide its existing shares, or any of them into shares of a smaller amount provided that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share shall be the same as it was in case of the share from which the reduced share is derived; or

(d)  cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person and diminish the amount of its share capital by the amount of the shares so cancelled.

67.  The Company may by Special Resolution reduce its share capital and any capital redemption or share premium account reserve in any manner authorised by law.

68.  The Company may purchase its own shares on such terms and in such manner as the Company may agree with the holder.

## CLOSING REGISTER OF MEMBERS OR FIXING RECORD DATE

69.  For the purpose of determining those Members that are entitled to receive notice of, attend or vote at any meeting of Members or any adjournment thereof, or those Members that are entitled to receive payment of any dividend, or in order to make a determination as to who is a Member for any other purpose, the Directors may provide that the Register of Members shall be closed for transfers for a stated period but not to exceed in any case 40 days. If the Register of Members shall be so closed for the purpose of determining those Members that are entitled to receive notice of, attend or vote at a meeting of Members such register shall be so closed for 14 days immediately preceding such meeting and the record date for such determination shall be the date of the closure of the Register of Members.

CONFIDENTIAL

VFP000334

70.   In lieu of or apart from closing the Register of Members, the Directors may fix in advance a date as the record date for any such determination of those Members that are entitled to receive notice of, attend or vote at a meeting of the Members and for the purpose of determining those Members that are entitled to receive payment of any dividend the Directors may, at or within 90 days prior to the date of declaration of such dividend fix a subsequent date as the record date for such determination.

71.   If the Register of Members is not so closed and no record date is fixed for the determination of those Members entitled to receive notice of, attend or vote at a meeting of Members or those Members that are entitled to receive payment of a dividend, the date on which notice of the meeting is posted or the date on which the resolution of the Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of those Members that are entitled to receive notice of, attend or vote at a meeting of Members has been made as provided in this section, such determination shall apply to any adjournment thereof.

### GENERAL MEETINGS

72.   The Directors may, whenever they think fit, convene a general meeting of the Company.

73.   General meetings shall also be convened on the written requisition of any one or more Member or Members entitled to attend and vote at general meetings of the Company who hold not less than 10 per cent of the voting share capital of the Company deposited at the registered office of the Company specifying the objects of the meeting signed by the requisitionists, and if the Directors do not convene such meeting within 21 days from the date of delivery of the requisition being left at the registered office of the Company for a date not later than 45 days after the date of such deposit, the requisitionists themselves may convene the general meeting in the same manner, as nearly as possible, as that in which meetings may be convened by the Directors, and all reasonable expenses incurred by the requisitionists as a result of the failure of the Directors shall be reimbursed to them by the Company.

74.   If at any time there are no Directors of the Company, any Member entitled to vote at general meetings of the Company may convene a general meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors.

### NOTICE OF GENERAL MEETINGS

75.   At least twenty-one days' notice of general meeting counting from the date service is deemed to take place as provided in these Articles specifying the place, the day and the hour of the meeting and, in case of special business, the general nature of that business, shall be given in the manner hereinafter provided or in such other manner (if any) as may be prescribed by the Company by Ordinary Resolution to such persons as are, under these Articles, entitled to receive such notices from the Company, but with the consent of all the Members entitled to receive notice of some particular meeting and attend and vote thereat, that meeting may be convened by such shorter notice or without notice and in such manner as those Members may think fit.

76.   The accidental omission to give notice of a meeting to or the non-receipt of a notice of a meeting by any Member shall not invalidate the proceedings at any meeting.

### PROCEEDINGS AT GENERAL MEETINGS

77.   All business carried out at a general meeting shall be deemed special with the exception of sanctioning a dividend, the consideration of the accounts, balance sheets, and ordinary report of the Directors and the Company's auditors, and the appointment and removal of Directors and the fixing of the remuneration of the Company's auditors. No special business shall be transacted at

CONFIDENTIAL

VFP000335

any general meeting without the consent of all Members entitled to receive notice of that meeting unless notice of such special business has been given in the notice convening that meeting.

78. No business shall be transacted at any general meeting unless a quorum of Members is present at the time when the meeting proceeds to business. Save as otherwise provided by these Articles, one or more Members holding in aggregate at least fifty per cent of the total issued voting share capital of the Company present in person or by proxy shall be a quorum.

79. If within half an hour from the time appointed for the meeting a quorum is not present, the meeting, if convened upon the requisition of Members, shall be dissolved. In any other case it shall stand adjourned to the same day in the next week, at the same time and place, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the Member or Members present and entitled to vote shall be a quorum.

80. The chairman, if any, of the Board of Directors shall preside as chairman at every general meeting of the Company.

81. If there is no such chairman, or if at any meeting he is not present within fifteen minutes after the time appointed for holding the meeting or is unwilling to act as chairman, the Members present shall choose one of their number to be chairman.

82. The chairman may with the consent of any meeting at which a quorum is present (and shall if so directed by the meeting) adjourn a meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place. When a meeting is adjourned for 10 days or more, notice of the adjourned meeting shall be given as in the case of an original meeting. Save as aforesaid it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

83. At any general meeting a resolution put to the vote of the meeting shall be decided on a show of hands, unless a poll is (before or on the declaration of the result of the show of hands) demanded by one or more Members present in person or by proxy entitled to vote and who together hold not less than 10 per centum of the paid up voting share capital of the Company, and unless a poll is so demanded, a declaration by the chairman that a resolution has, on a show of hands, been carried, or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book of the proceedings of the Company, shall be conclusive evidence of the fact, without proof of the number or proportion of the votes recorded in favour of, or against, that resolution.

84. If a poll is duly demanded it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

85. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

86. A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs.

## VOTES OF MEMBERS

87. Subject to any rights and restrictions for the time being attached to any class or series of shares, on a show of hands every Member present in person and every person representing a Member by proxy shall at a general meeting of the Company have one vote and on a poll every Member and every person representing a Member by proxy shall have one vote for each share of which

CONFIDENTIAL

VER000336

he or the person represented by proxy is the holder.  On the holding of a poll, every Member who votes need not cast all the votes he uses in the same way.

88. In the case of joint holders the vote of the senior who tenders a vote whether in person or by proxy shall be accepted to the exclusion of the votes of the joint holders and for this purpose seniority shall be determined by the order in which the names stand in the Register of Members.

89. A Member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his committee, or other person in the nature of a committee appointed by that court, and any such committee or other person, may on a poll, vote by proxy.

90. No Member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by him in respect of shares in the Company have been paid.

91. On a poll votes may be given either personally or by proxy.

92. The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing or, if the appointor is a corporation, either under seal or under the hand of an officer or attorney duly authorised.  A proxy need not be a Member of the Company.

93. An instrument appointing a proxy may be in any usual or common form or such other form as the Directors may approve and shall be deposited at the Registered Office of the Company or at such other place as is specified for that purpose in the notice convening the meeting no later than 24 hours prior to the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote, and in default the instrument of proxy shall not be treated as valid provided that the chairman of the meeting may in his discretion accept an instrument of proxy sent by fax upon receipt of fax confirmation that the signed original thereof has been sent.

94. The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

95. A resolution in writing signed by all the Members for the time being entitled to receive notice of and to attend and vote at general meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held.

## CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

96. Any corporation which is a Member or a Director may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any class of Members or of the Board of Directors or of a committee of Directors, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual Member or Director.

## DIRECTORS

CONFIDENTIAL

VER000337

97.   The name of the first Director(s) shall either be determined in writing by a majority (or in the case of a sole subscriber that subscriber) of, or elected at a meeting of, the subscribers of the Memorandum of Association.

98.   The Company may by Ordinary Resolution appoint any person to be a Director.

99.   Subject to the provisions of these Articles, a Director shall hold office until such time as he is removed from office by the Company by Ordinary Resolution.

100.   The minimum number of Directors shall be one and unless the Company by Ordinary Resolution otherwise determines the maximum shall be ten.

101.   The remuneration of the Directors may be determined by the Board of Directors or by the Company by Ordinary Resolution. Every Director and the Secretary may be reimbursed for travel, hotel and other expenses properly incurred by him going to, attending and returning from meetings of the Directors, or any committee of the Directors, general meetings of the Company or otherwise in connection with the business of the Company including the provision of any appropriate insurance, or to receive a fixed allowance in respect thereof as may be determined by the Directors from time to time, or a combination of one such method and partly the other.

102.   There is no shareholding qualification or age limit qualification for Directors.

103.   The Directors shall have power at any time and from time to time to appoint any person to be a Director either to fill a casual vacancy or as an addition to the existing Directors.

### ALTERNATE DIRECTOR

104.   Any Director may in writing appoint another person to be his alternate to act in his place at any meeting of the Directors at which he is unable to be present. Every such alternate shall be entitled to notice of meetings of the Directors and to attend and vote thereat as a Director when the person appointing him is not personally present and where he is a Director to have a separate vote on behalf of the Director he is representing in addition to his own vote. A Director may at any time in writing revoke the appointment of an alternate appointed by him. Such alternate shall not be an officer of the Company and shall be deemed to be the agent of the Director appointing him. The remuneration of such alternate shall be payable out of the remuneration of the Director appointing him and the proportion thereof shall be agreed between them. No person resident in the United Kingdom shall be appointed an alternate of a Director not resident in the United Kingdom.

105.   Any Director may appoint any person, whether or not a Director, to be the proxy of that Director to attend and vote on his behalf, in accordance with instructions given by that Director, or in the absence of such instructions at the discretion of the proxy, at a meeting or meetings of the Directors which that Director is unable to attend personally. The instrument appointing the proxy shall be in writing under the hand of the appointing Director and shall be in any usual or common form or such other form as the Directors may approve, and must be lodged with the chairman of the meeting of the Directors at which such proxy is to be used, or first used, prior to the commencement of the meeting. No person resident in the United Kingdom shall be appointed a proxy of a Director not resident in the United Kingdom.

### POWERS AND DUTIES OF DIRECTORS

106.   Subject to the provisions of the Companies Law, these Articles and to any resolutions made in a general meeting, the business of the Company shall be managed by the Directors (outside the United Kingdom), who may pay all expenses incurred in setting up and registering the Company and may exercise all powers of the Company. No resolution made by the Company in general

CONFIDENTIAL

VER000338

meeting shall invalidate any prior act of the Directors which would have been valid if that resolution had not been made.

107.  The Directors may from time to time appoint any person, whether or not a director of the Company to hold such office in the Company as the Directors may think necessary for the administration of the Company, including without prejudice to the generality of the foregoing, the office of President, one or more Vice-Presidents, Treasurer, Assistant Treasurer, Manager or Controller, and for such term and at such remuneration (whether by way of salary or commission or participation in profits or partly in one way and partly in another), and with such powers and duties as the Directors may think fit. The Directors may also appoint one or more of their number to the office of Managing Director upon like terms, but any such appointment shall *ipso facto* determine if any Managing Director ceases from any cause to be a Director, or if the Company by Ordinary Resolution resolves that his tenure of office be terminated.

108.  The Directors shall appoint the Company Secretary (and if need be an Assistant Secretary or Assistant Secretaries) who shall hold office for such term, at such remuneration and upon such conditions and with such powers as they think fit. Any Secretary or Assistant Secretary so appointed by the Directors may be removed by the Directors.

109.  The Directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the Directors.

110.  The Directors may from time to time and at any time by power of attorney appoint any company, firm or person or body of persons, whether nominated directly or indirectly by the Directors, to be the attorney or attorneys of the Company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such power of attorney may contain such provisions for the protection and convenience of persons dealing with any such attorney as the Directors may think fit, and may also authorise any such attorney to delegate all or any of the powers, authorities and discretion vested in him.

111.  The Directors may from, time to time provide for the management of the affairs of the Company in such manner as they shall think fit and the provisions contained in the three next following paragraphs shall be without prejudice to the general powers conferred by this paragraph.

112.  The Directors from time to time and at any time may establish any committees, local boards or agencies for managing any of the affairs of the company and may appoint any persons to be members of such committees or local boards and may appoint any managers or agents of the Company and may fix the remuneration of any of the aforesaid.

113.  The Directors from time to time and at any time may delegate to any such committee, local board, manager or agent any of the powers, authorities and discretions for the time being vested in the Directors and may authorise the members for the time being of any such local board, or any of them to fill up any vacancies therein and to act notwithstanding vacancies and any such appointment or delegation may be made on such terms and subject to such conditions as the Directors may think fit and the Directors may at any time remove any person so appointed and may annul or vary any such delegation, but no person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

114.  Any such delegates as aforesaid may be authorised by the Directors to sub-delegate all or any of the powers, authorities, and discretion for the time being vested to them.

## BORROWING POWERS OF DIRECTORS

115. The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof, to issue debentures, debenture stock and other securities whenever money is borrowed or as security for any debt, liability or obligation of the Company or of any third party.

## THE SEAL

116. The Seal of the Company shall not be affixed to any instrument except by the authority of a resolution of the Board of Directors provided always that such authority may be given prior to or after the affixing of the Seal and if given after may be in general form confirming a number of affixings of the Seal. The Seal shall be affixed in the presence of a Director or the Secretary (or an Assistant Secretary) of the Company or in the presence of any one or more persons as the Directors may appoint for the purpose and every person as aforesaid shall sign every instrument to which the Seal of the Company is so affixed in their presence.

117. The Company may maintain a facsimile of its Seal in such countries or places as the Directors may appoint and such facsimile Seal shall not be affixed to any instrument except by the authority of a resolution of the Board of Directors provided always that such authority may be given prior to or after the affixing of such facsimile Seal and if given after may be in general form confirming a number of affixings of such facsimile Seal. The facsimile Seal shall be affixed in the presence of such person or persons as the Directors shall for this purpose appoint and such person or persons as aforesaid shall sign every instrument to which the facsimile Seal of the Company is so affixed in their presence and such affixing of the facsimile Seal and signing as aforesaid shall have the same meaning and effect as if the Company Seal had been affixed in the presence of and the instrument signed by a Director or the Secretary (or an Assistant Secretary) of the Company or in the presence of any one or more persons as the Directors may appoint for the purpose.

118. Notwithstanding the foregoing, the Secretary or any Assistant Secretary shall have the authority to affix the Seal, or the facsimile Seal, to any instrument for the purposes of attesting authenticity of the matter contained therein but which does not create any obligation binding on the Company.

## DISQUALIFICATION OF DIRECTORS

119. The office of Director shall be vacated, if the Director:

    (a)    becomes bankrupt or makes any arrangement or composition with his creditors;

    (b)    is found to be or becomes of unsound mind;

    (c)    resigns his office by notice in writing to the Company; or

    (d)    is removed from office by notice addressed to him at his last known address and signed by all his co-directors.

## PROCEEDINGS OF DIRECTORS

120. The Directors may meet together (either within or without the Cayman Islands but outside the United Kingdom) for the despatch of business, adjourn, and otherwise regulate their meetings and proceedings as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In case of an equality of votes the chairman shall not have a second or casting vote. A Director may at any time, summon a meeting of Directors by at least five days' notice in writing to

CONFIDENTIAL

VER000340

every Director which notice shall set forth the general nature of the business to be considered provided however that notice may be waived by all the Directors (or their alternates) either at, before or after the meeting.

121. A Director or Directors may participate in any meeting of the Board of Directors, or of any committee appointed by the Board of Directors of which such Director or Directors are members, by means of telephone or similar communication equipment by way of which all persons participating in such meeting can hear each other and such participation shall be deemed to constitute presence in person at the meeting save that no Director may participate in such meeting from the United Kingdom.

122. The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed by the Directors, if there shall be two or more than two Directors shall be two Directors and if less than two Directors shall be one or their proxies or alternates.

123. Any Director who has reason to believe that they could be regarded as resident in the United Kingdom or the United States for tax purposes shall declare the same at each meeting of the Board of Directors before any other business of the meeting, or may alternatively give general notice to the Board to this effect.

124. A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract with the Company shall declare the nature of his interest at a meeting of the Directors. A general notice given to the Directors by any Director to the effect that he is a member of any specified company or firm and is to be regarded as interested in any contract which may thereafter be made with that company or firm shall be deemed a sufficient declaration of interest in regard to any contract so made and after such general notice it shall not be necessary to give special notice relating to any particular transaction. Provided he has disclosed his interest as aforesaid, a Director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the Directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

125. A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine and no Director or intending Director shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested, be, or be liable to be, avoided, nor shall any Director or alternate Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary relationship thereby established. A Director, notwithstanding his interest, may be counted in the quorum present at any meeting whereat he or any other Director is appointed to hold any such office or place of profit under the Company or whereat the terms of any such appointment are arranged and he may vote on any such appointment or arrangement.

126. Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor to the Company.

127. The Directors shall cause minutes to be made in books or loose-leaf folders provided for the purpose of recording:

(a)   all appointments of officers made by the Directors;

(b)    the names of the Directors present at each meeting of the Directors and of any committee of the Directors; and

(c)    all resolutions and proceedings at all meetings of the Company, and of the Directors and of committees of Directors.

128.    When the chairman of a meeting of the Directors signs the minutes of such meeting the same shall be deemed to have been duly held notwithstanding that all the Directors have not actually come together or that there may have been a technical defect in the proceedings.

129.    A resolution signed by all the Directors shall be as valid and effectual as if it had been passed at a meeting of the Directors duly called and constituted. When signed a resolution may consist of several documents each signed by one or more of the Directors.

130.    The continuing Directors may act notwithstanding any vacancy in their body but if and so long as their number is reduced below the number fixed by or pursuant to the Articles of the Company as the necessary quorum of Directors, the continuing Directors may act for the purpose of increasing the number, or of summoning a general meeting of the Company, but for no other purpose.

131.    The Directors may elect a chairman of their meetings and determine the period for which he is to hold office but if no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

132.    A committee appointed by the Directors may elect a chairman of its meetings. If no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairman of the meeting.

133.    A committee appointed by the Directors may meet and adjourn as it thinks proper. Questions arising at any meeting shall be determined by a majority of votes of the committee members present and in case of an equality of votes the chairman shall have a second or casting vote.

134.    All acts done by any meeting of the Directors or of a committee of Directors, or by any person acting as a Director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a Director.

## DIVIDENDS

135.    Subject to the rights and restrictions for the time being attached to any class or series of shares, the Directors may from time to time declare dividends (including interim dividends) and other distributions on shares in issue and authorise payment of the same out of the funds of the Company lawfully available therefor.

136.    Subject to any rights and restrictions for the time being attached to any class or series of shares, the Company by Ordinary Resolution may declare dividends, but no dividend shall exceed the amount recommended by the Directors.

137.    The Directors may, before recommending or declaring any dividend, set aside out of the funds legally available for distribution such sums as they think proper as a reserve or reserves which shall, at the discretion of the Directors be applicable for meeting contingencies, or for equalising dividends or for any other purpose to which those funds be properly applied and pending such application may, at the like discretion, either be employed in the business of the Company or be

CONFIDENTIAL

VER000342

invested in such investments (other than shares of the Company) as the Directors may from time to time think fit.

138.   Any dividend may be paid by cheque or warrant sent through the post to the registered address of the Member or person entitled thereto, or in the case of joint holders, to any one of such joint holders at his registered address or to such person and such address as the Member or person entitled, or such joint holders as the case may be, may direct. Every such cheque or warrant shall be made payable to the order of the person to whom it is sent or to the order of such other person as the Member or person entitled, or such joint holders as the case may be, may direct.

139.   The Directors when paying dividends to the Members in accordance with the foregoing provisions may make such payment either in cash or in specie.

140.   No dividend shall be paid otherwise than out of profits or, subject to the restrictions of the Companies Law, the share premium account.

141.   Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the number of shares held.

142.   If several persons are registered as joint holders of any share, any of them may give effectual receipts for any dividend or other moneys payable on or in respect of the share.

143.   No dividend shall bear interest against the Company.

144.   Any dividend which remains unclaimed for six years after the dividend payment date shall be forfeited and shall revert to the Company.

## ACCOUNTS AND AUDIT

145.   The books of account relating to the Company's affairs shall be kept in such manner as may be determined from time to time by the Directors.

146.   The books of account shall be kept at the registered office of the Company, or at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

147.   The Directors may from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Members not being Directors, and no Member (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by law or authorised by the Directors or by the Company by Ordinary Resolution.

148.   The Directors may from time to time cause to be prepared and to be laid before the Company in general meeting a profit and loss account and balance sheet made up to the accounting date in each year referred to in the initial Offering Memorandum or such other date as the Directors may from time to time decide.

149.   A printed copy of the Directors' Report and Auditors' Report accompanied by the balance sheet and profit and loss account of the Company shall be made available to holders of shares in accordance with the terms of any applicable Offering Memorandum.

150.   Every account of the Directors when audited and approved by any general meeting shall be conclusive, except as regards any error discovered therein within three months next after the

CONFIDENTIAL

VFR000343

approval thereof. Whenever such an error is discovered within that period the account shall forthwith be corrected and thereupon shall be conclusive.

## CAPITALISATION OF PROFITS

151.   Subject to the Companies Law, the Directors may, with the authority of an Ordinary Resolution of the Company:

(a)   resolve to capitalise an amount standing to the credit of reserves (including a share premium account, capital redemption reserve and profit and loss account), whether or not available for distribution;

(b)   appropriate the sum resolved to be capitalised to the Members in proportion to the nominal amount of shares (whether or not fully paid) held by them respectively and apply that sum on their behalf in or towards:

(i)   paying up the amounts (if any) for the time being unpaid on shares held by them respectively, or

(ii)   paying up in full unissued shares or debentures of a nominal amount equal to that sum,

and allot the shares or debentures, credited as fully paid, to the Members (or as they may direct) in those proportions, or partly in one way and partly in the other, but the share premium account, the capital redemption reserve and profits which are not available for distribution may, for the purposes of this Article, only be applied in paying up unissued shares to be allotted to Members credited as fully paid;

(c)   make any arrangements it thinks fit to resolve a difficulty arising in the distribution of a capitalised reserve and in particular, without limitation, where shares or debentures become distributable in fractions the board may deal with the fractions as it thinks fit;

(d)   authorise a person to enter (on behalf of all the Members concerned) an agreement with the Company providing for either:

(i)   the allotment to the Members respectively, credited as fully paid, of shares or debentures to which they may be entitled on the capitalisation, or

(ii)   the payment by the Company on behalf of the Members (by the application of their respective proportions of the reserves resolved to be capitalised) of the amounts or part of the amounts remaining unpaid on their existing shares,

an agreement made under the authority being effective and binding on all those Members; and

(e)   generally do all acts and things required to give effect to the resolution.

## SHARE PREMIUM ACCOUNT

152.   The Board of Directors shall in accordance with Section 34 of the Companies Law establish a share premium account and shall carry to the credit of such account from time to time a sum equal to the amount or value of the premium paid on the issue of any share.

153.   There shall be debited to any share premium account on the redemption or purchase of a share the difference between the nominal value of such share and the redemption or purchase price

provided always that at the discretion of the Board of Directors such sum may be paid out of the profits of the Company or, if permitted by Section 37 of the Companies Law, out of capital.

## NOTICES

154. A notice may be given by the Company to any Member either personally or by sending it by post or fax or e-mail to him at his address, or (if he has no registered address) to the address, if any, supplied by him to the Company for the giving of notices to him.

155. Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, pre-paying and posting a letter containing the notice (by airmail if available) and to have been effected at the expiration of three days after it was posted.

156. Where a notice is sent by fax or e-mail, service of the notice shall be deemed to be effected by properly addressing, and sending such notice through the appropriate transmitting medium and to have been effected on the day the same it is sent. Notice of every general meeting shall be given to every Member entitled to vote except those Members entitled to vote who (having no registered address) have not supplied to the Company an address for the giving of notices to them. No other persons shall be entitled to receive notices of general meetings.

157. A notice may be given by the Company to the joint holders of record of a share by giving the notice to the joint holder first named on the Register of Members in respect of the share.

158. Any notice or document delivered or sent by post to or left at the registered address of any Member in accordance with the terms of these Articles shall notwithstanding that such Member be then dead or bankrupt, and whether or not the Company has notice of his death or bankruptcy, be deemed to have been duly served in respect of any share registered in the name of such Member as sole or joint holder, unless his name shall at the time of the service of the notice or document, have been removed from the Register of Members as the holder of the share, and such service shall for all purposes be deemed a sufficient service of such notice or document on all persons interested (whether jointly with or as claiming through or under him) in the share.

## INDEMNITY

159. Every Director (including for the purposes of this Article any alternate director appointed pursuant to the provisions of these Articles), Managing Director, agent, Secretary, Assistant Secretary, or other officer for the time being and from time to time of the Company (other than the Company's auditor) or any trustee for the time being acting in relation to the affairs of the Company and the representatives, heirs, executors, administrators, personal representatives or successors or assigns of the same shall, in the absence of fraud, negligence or wilful default, be indemnified and secured harmless out of the assets and funds of the Company against all actions, proceedings, costs, charges, expenses, including travelling expenses, losses, damages or liabilities which any such person may incur or become liable in respect of or by reason of any contract entered into, or act or thing done by him as such officer or servant, or in any way in discharge of his duties and the amount for which such indemnity is provided shall immediately attach as a lien on the property of the Company and have priority as between the holders of shares over all other claims.

160. No such Director, alternate director, Managing Director, agent, Secretary, Assistant Secretary or other officer of the Company (other than the Company's auditor) shall be liable or answerable (i) for the acts, receipts, neglects, defaults or omissions of any other such Director or officer or agent of the Company or (ii) by reason of his having joined in any receipt for money not received by him personally or other act for conformity or (iii) for any loss on account of defect of title to any property of the Company or (iv) on account of the insufficiency of any security in or upon which any of the assets of the Company shall be invested or for any loss of any of the assets of the

Company which shall be invested or (v) for any loss incurred through any bank, broker or other agent or (vi) for any loss or damage arising from the bankruptcy, insolvency or tortious act of any person with whom any assets, securities or effects shall be deposited or (vii) for any loss occasioned by any negligence, default, breach of duty, breach of trust, error of judgement or oversight on his part or (viii) for any loss, damage or misfortune whatsoever which may happen in or arise from the execution or discharge of the duties, powers, authorities, or discretions of his office or in relation thereto, unless the same shall happen through his own fraud or wilful default.

## NON-RECOGNITION OF TRUSTS

161.  No person shall be recognised by the Company as holding any share upon any trust and the Company shall not (unless required by law) be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent or future interest in any of its shares or any other rights in respect thereof except an absolute right to the entirety thereof in each Member registered in the Register of Members.

## WINDING UP

162.  If the Company shall be wound up the liquidator shall apply the assets of the Company in such a manner and order as he thinks fit in satisfaction of creditors' claims.  The liquidator shall in relation to the assets available for distribution among the members make in the books of the Company such transfers thereof to and from Investment Accounts as may be necessary in order that the effective burden of such creditors' claims may be shared between the holders of shares of different classes or series in such proportions as the liquidator in his absolute discretion may think equitable.

163.  If the Company shall be wound up, the liquidator may, with the sanction of a Special Resolution and any other sanction required by the Companies Law, divide amongst the relevant Members in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may for such purpose set such value as he deems fair upon any property to be divided and may determine how such divisions shall be carried out as between shares or different classes or series.

## AMENDMENT OF ARTICLES OF ASSOCIATION

164.  Subject to the Companies Law and the rights attaching to the various class or series of shares, the Company may at any time and from time to time by Special Resolution alter or amend these Articles in whole or in part.

## REGISTRATION BY WAY OF CONTINUATION

165.  The Company may by Special Resolution resolve to be registered by way of continuation in a jurisdiction outside the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing. In furtherance of a resolution adopted pursuant to this Article, the Directors may cause an application to be made to the Registrar of Companies to deregister the Company in the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing and may cause all such further steps as they consider appropriate to be taken to effect the transfer by way of continuation of the Company.

CONFIDENTIAL

VER000346

NAME, ADDRESS AND DESCRIPTION
OF SUBSCRIBER

Ian Gobin
Attorney at Law

(Sgd)  Ian Gobin
Subscriber

Cayman Islands

Dated:     7 February 2007

(Sgd) Lisa So-So
Signature of Witness

Name:          Lisa So-So

Address:                                        REDACTED

                   Cayman Islands

Occupation:    Secretary

I,   **Joy A. Rankine, Asst.**                   , Registrar of Companies, in and for the Cayman Islands, DO HEREBY CERTIFY that this is a true copy of the Articles of Association of Nautilus Growth Fund Ltd.

Dated this      9th      of  February , 2007.

EXEMPTED
REGISTRAR OF COMPANIES
CAYMAN ISLANDS

CONFIDENTIAL

VER000347

Ricaldo Caines
Barrister at Law, Solicitor, Notary Public
E.L. Solomon Building
Main Street
Charlestown
Nevis
West Indies

I, Ricaldo Caines, Barrister at Law, Solicitor, Notary Public, of E.L. Solomon Building, Main Street, Charlestown, Nevis, West Indies, hereby certify and confirm as follows:

1.     The Articles of Incorporation of **VERVET MANAGEMENT SERVICES LTD.** dated 19th February 2009 attached hereto and initialed is a certified true copy of the original;

2.     The By-laws of **VERVET MANAGEMENT SERVICES LTD** dated 19th February 2009 attached hereto and initialed are a certified true copy of the original.

Dated March 10th 2010

Signed:

Ricaldo Caines
Notary Public
Life time commission: Appointed 26/07/1999
Federation of St Christopher and Nevis



# Verdmont Capital

**Investment Account Application**
**CORPORATE**

*Aplicación para Cuenta de Inversión Corporativa*

Account Number



172470083

## 1. Client Identification / *Identificación del cliente*

| Company Name | Account Advisor |
|---|---|
| NAUTILUS GROWTH FUND LTD | Conley Foxey |

| Registered Corporate Address | Date of Incorporation | Country of Incorporation | Email |
|---|---|---|---|
| Clifton House, 75 Fort Street, PO Box 190, | 2 APRIL 2007 | Cayman Islands | vsantanaripoll@hecapital.com |

| City | State or Province | Country | Postal Code |
|---|---|---|---|
| Grand Cayman | | Cayman Islands | KY1-1104 |

| Business Phone 1 | Business Phone 2 | Fax |
|---|---|---|
| (809) 571-3363 | | |

Alternate Address / *Dirección Alterna*

Street Address

| State or Province | Country | Postal Code |
|---|---|---|
| | | |

## 2. Account Statement and Trade Confirmation Distribution
*Distribución de Estado de Cuenta y Confirmacion de Transacción*

Please check how you wish to receive account statements and trade confirmations:
*Por favor marque como desea recibir sus estados de cuenta y confirmaciones de transacciones.*

[X] On line Access. Please select a user ID and password.
*Acceso en línea. Favor seleccione una identificación de nombre y clave.*

User ID / *ID Usuario* __Nautilus__      Password - *Clave:* __NGF02042007__

Note: User ID and Password must be unique. The password must be a minimum of 8 characters long, and include a minimum of 2 numeric or symbol characters and a minimum of one capital letter.

[X] Email. Please specify address
*Correo Electrónico. Por favor indique dirección* __vsantanaripoll@hecapital.com__

## 3. Authorized Signatories * / *Firmantes Autorizados*

| VIRGILIO SANTANA RIPOLL | AUTHORIZED SIGNATORY | |
|---|---|---|
| **Print Name** - *Nombre en imprenta* | **Title** - *Título* | **Signature** - *Firma* |

| | | |
|---|---|---|
| **Print Name** - *Nombre en imprenta* | **Title** - *Título* | **Signature** - *Firma* |

| | | |
|---|---|---|
| **Print Name** - *Nombre en imprenta* | **Title** - *Título* | **Signature** - *Firma* |

| | | |
|---|---|---|
| **Print Name** - *Nombre en imprenta* | **Title** - *Título* | **Signature** - *Firma* |

Please indicate the number of signatures required to withdraw assets from this account:
*Por favor indicar el número de firmantes requeridos para retirar fondos de esta cuenta.*

[X] One / *Uno*      [ ] Two / *Dos*      [ ] Three / *Tres*

* Please attach a KYC form for each of the above signatories.
*Por favor adjunte un formulario KYC por cada uno de los firmantes indicados.*

Edificio Hi-Tech Plaza, Penthouse-Calle 53, Obarrio-Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001 - www.verdmontcapital.com

VER000293



**Verdmont Capital**

## 4.  Investment Profile / Perfil de Inversión

Please check the box that appropriately describes your investment experience
*Por favor indicar en la casilla que describe apropiadamente su experiencia en inversiones*

☐ Novice / *Nuevo*
☐ Intermediate / *Intermedia*
☒ Sophisticated or High net-worth investor / *Sofisticado o inversionista de alta valía*

Note: Clients wishing to trade derivatives, short sell, trade in restricted securities, and open margin accounts must be sophisticated investors; to be considered a sophisticated investor you must have a net worth greater than or equal to $1 million

| Corporate Annual Income / *Ingreso Anual Corporativo* | Corporate Net Worth / *Patrimonio Total* |
|---|---|
| $10,000 | $150,000 |

| | | |
|---|---|---|
| Do you understand the risks involved with trading derivatives? *Entiende usted los riesgos que involucra el negocio de derivados?* | ☒ Yes / Sí | ☐ No |
| Could you afford to lose the total principal or more invested in a speculative investment? *Puede usted afrontar la pérdida total o más del capital invertido en una inversión especulativa?* | ☒ Yes / Sí | ☐ No |
| Do you understand the risks associated with a margin account? *Entiende usted los riesgos asociados con una cuenta de margen?* | ☒ Yes / Sí | ☐ No |
| Knowing the risks involved, are you willing to invest? *Conociendo los riesgos implicados está dispuesto a invertir?* | ☒ Yes / Sí | ☐ No |
| Has the Corporation been politically exposed? *Ha sido la Corporación políticamente expuesta?* | ☐ Yes / Sí | ☒ No |

| What are your investment objectives? / *Cuáles son sus Objetivos de inversión?* | If you require income please specify your cash flow requirements / *Si usted requiere un ingreso por favor especifique sus requisitos de flujo de caja:* | |
|---|---|---|
| ___% Preservation of Capital / *Preservación de capital* | Bi-weekly / *Quincenal* | $ ___ |
| ___% Income / *Ingreso* | Monthly / *Mensual* | $ ___ |
| ___% Growth / *Crecimiento* | Quarterly / *Trimestral* | $ ___ |
| 100% Speculation / *Especulación* | Annually / *Anual* | $ ___ |

## 5.  Source of Funds / Fuente de Fondos

Primary nature of the Company's business / *Naturaleza primaria del negocio de la Compañía*
MUTUAL FUND ~ NON OPERATING COMPANY

What is the expected initial amount to be deposited in the account? / *Cuál es el monto inicial que se espera sea depositado en la cuenta?*
$150,000   +   *Stock of American Cobra - Hunter dm and Ironwood Gold Corp*

Please estimate the anticipated total market value of the account / *Por favor estime el valor total anticipado de la cuenta en el mercado*
$150,000

Please explain in detail the source of the funds you will be depositing with our firm / *Por favor explique en detalle la fuente de los fondos que usted estará depositando con nuestra firma*
ACCOUNT TRANSFER FROM PanAmerica Capital Group, Inc.

What is the expected transaction volume and turnover for the account? / *Cuál es el volumen de transacciones esperado y el retorno por la cuenta?*
10 TRADES / MONTH - $20,000

Have there been any major changes to the company's net worth in the past two years? / *Ha habido cambios mayores en el patrimonio en los pasados dos años?*
☒ No   ☐ Yes / Sí   If yes, please attach details. *Si es si por favor adjunte detalles*

Edificio Hi-Tech Plaza, Penthouse-Calle 53, Obarrio-Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001- www.verdmontcapital.com



# Verdmont Capital

## 6. Beneficial Owner Disclosure / Datos relevantes del Propietario Efectivo

Please identify all shareholders and beneficial owners of the company with a 25% or greater interest. If the owner of the company is another corporation, please also identify the beneficial owners of the underlying corporation. A complete KYC form must be attached for individual beneficiary. / Por favor indique todos los accionistas y propietario efectivo de la compañía con interés de 25% o mayor. Si el dueño de la compañía es otra corporación, por favor identifique también los propietarios efectivos de la corporación subyacente. Debe adjuntarse un formulario KYC completo por cada beneficiario individual.

| Name / Nombre | Percent Interest / Porcentaje de Interés | Name / Nombre | Percent Interest / Porcentaje de Interés |
|---|---|---|---|
| Keyse Management Ltd | 100% MANAGEMENT SHARES | | |
| BSI SA, Luxembourg | 65% CLASS A SHARES | | |



Verdmont Capital is required to determine the identity of any direct and indirect beneficiaries of this account. / A Verdmont Capital se le requiere que determine la identidad de cualquier beneficiario directo o indirecto de esta cuenta

**I. Does anyone other than the persons named have authority over or any financial interest in this account?**
*Alguna otra persona distinta a las personas nombradas tiene autoridad sobre o cualquier interés financiero en esta cuenta?*

☐ No   ☒ Yes / Si      If yes, please attach details. / Si es si por favor adjunte detalles.

**II. Is the account holder acting as an intermediary, nominee, or otherwise holding the account's assets on behalf of a third party?** / El tenedor de la cuenta actúa como un intermediario, nominal o de cualquier otra manera manteniendo los activos de la cuenta en su propio beneficio o de tercera parte?

☐ No   ☒ Yes / Si      If yes, please attach details. / Si es si por favor adjunte detalles.

## 7. Application Signature / Aplicación para firma

I certify that the information provided by me in this application is true and correct and I agree to advise Verdmont immediately of any material change in this information or my financial circumstances. I have received and read the attached Verdmont investment account agreement - terms and conditions, dated Sept. 10, 2007 and understand and agree to all terms within, including (if applicable) risk disclosures relating to margin accounts, derivatives, online access and restricted securities. This agreement is subject to the laws of the Republic of Panama.

16 FEBRUARY 2010
Dated / Fecha

Signature of Customer or Signatory / Firma del Cliente o Firmante

Witness / Testigo

Signature of Customer or Signatory / Firma del Cliente o Firmante

Edificio Hi-Tech Plaza, Penthouse-Calle 53, Obarrio-Apartado Postal 0823-03017 – Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001 - www.verdmont.com.pa

CONFIDENTIAL

VER000295

# Verdmont Capital

## Verdmont Capital Brokerage Account Agreement
## Terms and Conditions

By opening a brokerage account or accounts at Verdmont Capital (Verdmont, we, our or us), you acknowledge and represent that you have read and understand the Verdmont Brokerage Account Agreement (the Agreement) below and agree to be bound by its terms.

1. Legal Capacity to Enter Into Agreements. You are of full legal age in the jurisdiction in which you reside and have the capacity to enter into this Agreement.

2. Accuracy of New Account Application and Credit Information. The information that you have provided us is current, accurate, truthful and complete. No one except the person(s) listed on the Brokerage Account Application (Application) has an interest in the Accounts being applied for. You agree to provide us with an updated Application promptly upon any material changes in any such information. You authorize us to make inquiries to financial institutions, employers and/or any other source we believe necessary for the purpose of verifying your identity and creditworthiness.

3. Account Types. You understand that you are responsible for selecting the Account type (e.g. single, joint, or corporate Accounts) that is appropriate for your needs [illegible] You also understand that certain Account types may be eligible for (or restricted from) certain services offered by Verdmont.

4. Identity Verification for Anti-Money Laundering Purposes. We are required by [illegible] identification documents prior to opening an Account. Attached to this Agreement is our "Know Your Client" form. [illegible]

5. Account Approvals and Maintenance. We may reject your Application or close your Account for any reason, at our sole and absolute [illegible]

[illegible]

13. Consent to Monitoring and Recording. [illegible]

[illegible]

15. Fax Instructions and Secure online messages. You authorize Verdmont Capital, S.A. to accept instructions by fax or secure online messages through [illegible]

16. Complaints. Written complaints may be sent to Verdmont Capital, Attn: Compliance Department, [illegible] Panama, Republic of Panama. Or via email [illegible]

17. Applicable Law, Jurisdiction, Arbitration. [illegible] governed by the laws of the Republic of Panama. Any disputes arising with respect to or in connection with the [illegible]

[illegible]

# Verdmont Capital

an order is executed shall be binding notwithstanding the fact that an erroneous report is given to you. An order that was executed, but in error reported as not executed, shall be binding. Verdmont retains the right to make pricing, trade, and recordkeeping adjustments to your account as necessary and appropriate. Customer agrees that it is the sole responsibility to request and review transaction summaries on a regular basis.

**20. Waiver.** Any failure by us to insist at any time upon compliance with this Agreement or with any of its terms shall not constitute or be considered a waiver by us of any of our rights.

**21. Termination.** You may terminate this Agreement or your Account at any time upon written notice to us, after paying any Obligations you owe to us. You shall remain responsible for all Obligations incurred or authorized by you, including, without limitation, any transactions, debts, and interest or provided under this Agreement, whether arising before or after termination of this Agreement. We may terminate this Agreement or your Account any time, through an advanced written notice of no less than fifteen (15) days to you, for any reason in our sole and absolute discretion. The terms and conditions of this Agreement will survive termination of your Account and will continue to apply to any disputed or other remaining matters arising from our relationship.

**22. Security and Confidentiality.** You agree that you are the exclusive owner and solely responsible, jointly and severally if applicable, for the confidentiality and protection of your Account number and password that allows you to access our online systems. You further agree that you will be fully responsible for all activities including brokerage transactions that arise from the use of your Account number and password. You agree to indemnify and hold Verdmont harmless if any other person utilizing your confidential information provides instructions to us that may be contrary to your instructions. You will immediately notify us in writing or by email of any loss, theft or unauthorized use of your Account number and/or password, regarding the physical documentation, the contractual documents will be retain and conserved for a period of five (5) years.

**23. Use of Verdmont's Web Sites.** _____, provides you with content and information. Content includes account positions, account activity, balances, transaction status, statements, confirmations and other Accumulated data. You agree at all times to rely upon your transaction confirmations and statements as the official records of your Account.

## MARGIN ACCOUNTS

In consideration of Verdmont opening one or more Margin accounts for you, you agree to the foregoing and following provisions.

**24. Margin Loans.** We may, in our sole and absolute discretion, make loans to you for the purpose of purchasing, carrying or trading in securities, options or other property ( Margin Loans ). Margin Loans will be made in a Margin Account. You agree that you are solely responsible for determining whether margin is appropriate for you in light of your financial resources, objectives, and other relevant circumstances. You understand and agree that Verdmont will not make this determination on your behalf. Subject to regulatory requirements, the minimum and maximum amount of any particular Margin Loan may be established by us in our discretion regardless of the amount of Collateral delivered to us and may change such minimum and maximum amounts from time to time.

**25. Risk of Margin Trading.** You understand that trading on margin (including effecting short sales) involves a high degree of risk and may result in a loss of funds greater than the amount you have deposited in your Account.

**26. Requirement to Maintain Sufficient Margin.** Your margin transactions are subject, at all times, to the initial margin and maintenance margin requirements (the "Margin Requirements") established by us. You shall monitor your Account to ensure that at all times the Account shall contain a sufficient amount balance to meet the applicable Margin Requirements. We may modify such Margin Requirements for open and new positions, at any time, in our sole and absolute discretion. The margin that we require may exceed the margin required by any exchange or association. We may reject any order if you do not have a sufficient account balance to meet Margin Requirements and may delay the processing of any order while determining the correct margin status of your Account. You shall maintain, without notice or demand from us, a sufficient account balance at all times to at to continuously meet the Margin Requirements.

**27. Margin Calls.** Margin calls may be issued in writing, via telephone, electronically, or by other means of communication. In some situations, such as volatile market conditions, we may act immediately since a margin call when your Account rapidly falls below 35 percent. You are responsible for acting immediately on any maintenance calls, buy in or sell out notices given orally or in writing. Your failure to promptly deposit additional money or securities in response to a margin call, regardless of the equity level in your Account, may result in the liquidation of part or all of the securities in your Account. Although we will generally attempt to notify you of a margin call and give you an opportunity to deposit additional equity to secure the Account, we reserve the right to utilize immediate discretionary liquidation of any and all securities without prior notice and without giving you the opportunity to deposit additional equity. This sole and absolute discretion applies regardless of any historical notices of delivering verbal/written notices or at any current verbal or written representations by Verdmont that indicates a different account, liquidation time, or suggests additional time based on due date. This sole and absolute discretion to liquidate immediately applies regardless of time zone differences, language interpretations, or delays in writing funds, and includes the sale and absolute discretion to choose which positions to liquidate and in what order. It is your responsibility to monitor and liquidate positions to minimize your losses before we are forced to liquidate on your behalf to avoid loss to us or reduction. We reserve the right at our sole and absolute discretion to close out any Account that represents a negative liquidation balance.

**28. Interest Charges on Debit Balances.** You agree to pay interest on all debit balances in any Account. Interest on your average daily net debit balance is calculated using a rate determined by us and may be changed at any time in our discretion.

**29. Short Sales.** You agree to pledge in relation to a sell order 4 in e a "short" sale the sale of a security that you do not own. You agree that at then sale transactions shall _____ in a Margin Account or undertaken that as the term of a short sale, we must borrow the securities that you sell short. Short sales can be subject to a buy in from settlement _____ markets that are not generated settled in time to meet a purchase. Should Verdmont be unable to borrow or re-borrow a security your have sold short, or for any _____ Verdmont for any resulting debit balance. Margin Accounts are marked to the market daily and any increase in value of a short position will result in that unrealized loss being added to your debit balance and interest being charged on the increased amount. Similarly, a drop in value will decrease your debit balance. _____ and any interest of any kind or any Account, may require you to deposit additional margin. We may _____ your Account _____ securities, [the Securities in any _____ Account] in any amount _____ to satisfy _____ regulatory requirements. You understand that you will be responsible for any resulting loss or associated costs incurred by us in connection with _____.

**30.** _____ _____ _____ _____ _____ securities held by us in your Account and we shall have no obligation to return _____ _____ _____ _____ interest or collateral posted for _____ _____.

**31. Pledge of Securities, Options and Other Property.** All securities and other property now or hereafter held, carried or maintained by us in your Account, without notice to you, be pledged, re-pledged, hypothecated or re-hypothecated by us, either separately or in common with other securities _____ any longer than the amount you owe us. You understand that in an event-of-pledge or _____ losses, that you _____.

**32. Business Continuity Disclosure.** Verdmont has in place a business continuity plan _____ in the event that _____ normal business operations would be resumed within one to two days. _____ Custom _____ _____ _____ _____ client _____.

**34. Movement of Securities between depositaries.** In the event that you shall place an order to buy a security in one country or marketplace and subsequently _____ into a different country or market place or the reverse of this, Verdmont will undertake to make the necessary movements between securities _____ transactions however you expose to incurred all associated costs and risks thereof _____ in any of the other countries throughout the resulting _____ in _____ or _____ risk of _____ or delayed settlement. Market buy in's resulting from these delays will _____ _____ _____ _____ regular cash/margin account.

**37. Parties Commitment.** Both parties agree to comply with the Securities Law and its regulations.

Oficina 11-7 calle Olaya, Punta Pacífica, Calle 41, Obarrio, Apartado Postal 0823-00912 - Ciudad de Panamá, República de Panamá
T   507 301 0000 or +800 VERDMONT   F   507 301 0001

CONFIDENTIAL

VER000297

Verdmont Capital

Edificio Hi-Tech Plaza, Penthouse-Calle 53, Obarrio-Apartado Postal 0823-03017 - Ciudad de Panama, República de Panama
T:1 507 301 9090 or +800 VERDMONT- F 507 301 9001-

CONFIDENTIAL

VER000298

Verdmont Capital

Edificio Hi-Tech Plaza, Penthouse-Calle 53, Obarrio-Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T:+507 301 9039 or +800 VERDMONT- F. 507 301 9001-

CONFIDENTIAL

VER000299



**Verdmont Capital**

Verdmont Capital Brokerage Account Agreement
Terms and Conditions

By opening a brokerage account or accounts at Verdmont Capital (Verdmont, we, our or us), you acknowledge and represent that you have read and understand the Verdmont Brokerage Account Agreement (the "Agreement") below and agree to be bound by its terms.

**1. Legal Capacity to Enter Into Agreements.** You are of full legal age in the jurisdiction in which you reside and have the capacity to enter into this Agreement.

**2. Accuracy of New Account Application and Credit Information.** The information that you have provided us is current, accurate, truthful and complete. No one except the person(s) listed on the Brokerage Account Application (Application) has an interest in the Account being applied for. You agree to provide us with an updated Application promptly upon any material changes in any such information. You authorize us to make inquiries to financial institutions, employers and/or any other source we believe necessary for the purpose of verifying your identity and creditworthiness.

**3. Account Types.** You understand that you are responsible for selecting the Account type (e.g. single, joint, or corporate Accounts) that is appropriate for your needs and circumstances. You also understand that certain Account types may be eligible for (or restricted from) certain services offered by Verdmont.

**4. Identity Verification for Anti-Money Laundering Purposes.** We are required By Panama law to verify the identity of each account owner. Verdmont must ask you to provide various identification documents prior to opening an Account. Attached to this Agreement is our "Know Your Client form" You acknowledge that you have received and completed accurately.

**5. Account Approvals and Maintenance.** We may reject your Application or close your Account for any reason, at our sole and absolute discretion. We may require that you provide us additional information or documentation in order for us to continue carrying your Account. You acknowledge that we may, at any time at our sole and absolute discretion, restrict trading, disbursements, transfers or take no action in your Account. Verdmont may amend, change, revise, add or modify (amendments) the Agreement through an advanced written notice of no less than fifteen (15) days to you. The most current Agreement will be posted at our Web site www.verdmont.com.pa. In case of changes in commissions and charges the client will have two (2) months to modify or cancel the contract's relationship with Verdmont Capital, S.A.; once the time frame has elapsed, your acceptance to the changes will be automatically understood. During this two months period, the changes can not be applied to the clients account. You understand that this Agreement cannot be modified by any verbal statements or written amendments that you seek to make to the Agreement without written acceptance from the General Counsel of Verdmont.

**6. Financial Analysis Unit (UAF) Reporting.** If Verdmont believes a transaction is related with Money Laundering or Terrorism Financing, our Compliance Department will communicate such transactions to the Financial Analysis Unit for the Prevention of Money Laundering and Terrorism Financing (UAF) through the established forms for such effects and leaving proof in the account file about the suspicious transaction reported. All procedures established in Agreement 5-2006 of the Comision Nacional de Valores de Panama" (Securities Market Superintendency of Panama) will be followed by our compliance department in case we detect a suspicious transaction. The notification will be done to the UAF under the next 60 days following the date in which the suspicious transaction was originated. Verdmont can, under its own criteria, close the accounts of any natural or legal person that is linked to the suspicious operation subject of the report presented to the UAF. Once the account closing procedures has been finalized, Verdmont should, within a term of 10 business days since the date of such closure, pass on to the UAF a written notification – complementary to the initial report of suspicious operation, informing the closure of the respective account, the mechanism utilized by the owner of the account to withdraw the funds, and the course given to the same, when the same can be determined. Such report must be accompanied with copy of the closure form and the document used by the account owner to withdraw the funds.

**7. No Advice and No Recommendations.** You acknowledge that Verdmont does not provide legal or tax advice, and agree that, to the extent you deem necessary, you will consult with qualified professionals in your own jurisdiction prior to utilizing your Verdmont account or implementing any financial plan. You hereby agree to hold Verdmont and its officers, directors, employees, agents and affiliates harmless from any liability, financial or otherwise, or expense (including attorneys' fees and disbursements), as incurred, as a result of any losses or damages you may suffer with respect to any such decisions, instructions, transactions or strategies employed in your Account by you or your duly authorized representative, or as a result of any breach by you of any of the covenants, representations, acknowledgments or warranties herein.

**8. Fees, Commissions and Minimum Account.** You agree to pay the brokerage commissions, charges, or other fees as set forth in our then-current Commission Schedule, copy of which is given to you at the signing of this Agreement. Verdmont will inform you in writing of any changes in the Commission Schedule and you will have a period of two (2) months as of the date of receiving the notification to consider this Agreement as terminated; during this period the amended rates will not be applied. You understand that Verdmont may require a minimum deposit to open an Account and that you also may be required to maintain a minimum deposit amount. Commissions are charged on a per order basis. Limit orders executed over multiple days and orders modified after a partial execution on the same day will be treated as separate orders for commission calculation purposes.

**9. Deposit of Physical Securities.** If a security is deposited in physical form, subsequent withdrawals may be limited to physical form only, and may be required to be put back into the same name as it was originally received. At Verdmont's sole discretion, such securities may be allowed to transfer, but may be charged at regular commission rates.

**10. Purchases and Sales.** To execute purchase orders, we generally require that your Account contain available funds equal to or greater than the purchase price of the securities. To execute sell orders, we generally require that securities be long in your Account in good deliverable form. You agree that any purchase or sell order accepted (inadvertently or otherwise) by us without sufficient funds or negotiable certificates, respectively, in your Account, will be subject to liquidation in the case of a purchase order, or buy-in in the case of a sell order, at your expense. In the event full funds are not available in your Account when a purchase order is executed, you promise to pay the full amount due via wire transfer or certified or personal check on or before the settlement date for the purchase. In the event a sale order is executed and the securities sold are not in your Account, you promise to deliver all securities sold, on or before settlement date. If such funds or securities are not received on or before the settlement date, we may liquidate your Account and you will be liable for any resulting losses and all associated costs that we incur.

Edificio Verdmont, Ave. Aquilino De La Guardia No.18 - Apartado Postal 0833-03017 - Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001- www.verdmont.com.pa

# Verdmont Capital

**11. Orders, Executions.** You should give clear and precise instructions so that the personnel involved in the carrying out these instructions will understand its effects. Verdmont Capital accepts written, electronic and verbal instructions from its clients. The method in which the instruction was generated is kept in an electronic file, which clearly shows if the instruction was received in writing or verbally through a phone call. Those instructions through phone calls can be taped (refer to clause 14 of this contract). Upon receiving the order, within the same day or the following business day, Verdmont will include the order in its registry in rigorous chronological order, and assign it a correlative number and proceed to carry it out or will use the necessary means to relay it, as soon as possible, to the entity responsible for its completion. In case it is not possible to comply with this provision, you will be informed of the precise reasons for its non compliance. Verdmont will send you a confirmation of each transaction within the following business day of its completion. You understand that you are responsible for promptly reviewing upon receipt all trade confirmations and account statements. Such confirmations and statements shall be deemed as accepted by you and shall be binding unless you notify us in writing within ten (10) days after its transmission to you. You agree that you are responsible for monitoring all open orders. If you place a good-till-canceled (GTC) order the open order will remain in force until it is executed, cancelled by us because of a corporate action, reorganization or operational reason, or because you choose to cancel it.

**12. Late and Corrected Reports.** We may receive late reports regarding the status of orders from various marketplaces. Accordingly, you may then receive late reports. You may also receive reports correcting a previous report, including errors in execution prices. You acknowledge that you will receive the price at which your order is actually executed in the marketplace even if the report is late or a report corrects an incorrect price or term of another report.

**13. Payment of Obligations upon Request.** You will be liable to Verdmont for the payment for all trades, debit balances, margin calls, or other obligation ("Obligations") owing in your Account. You agree that all orders for the purchase or sale of securities for your Account shall be processed and/or executed with the understanding that an actual purchase or sale is intended and it is your intention and obligation in every case to pay for any purchase or deliver certificates to cover all sales on or before settlement date, whether or not you are in receipt of a trade confirmation. You agree to pay any debit balance (i.e. an Account balance owed to Verdmont) and to satisfy any indebtedness to Verdmont in your Account on demand. Payments (cash, traveler's checks, third party checks or personal checks are not generally accepted) or securities submitted to your Verdmont branch need to be made before settlement to allow for transit to our headquarters. You agree that any security sold will be in good deliverable form (properly endorsed, proper denominations, adjusted for all company reorganizations and free of any encumbrances). Debit balances in any Account may be charged interest in accordance with our then-current interest rate schedule for debit balances.

**14. Consent to Monitoring and Recording.** You understand that we may, in our sole and absolute discretion, monitor or tape record telephone conversations with you, and by signing this agreement you expressly authorized us to such monitoring or recording. Verdmont records client calls, and keeps records of them for 6 weeks. We are not required to record all telephone conversations that do not include instructions from the client. In case of a technical failure we can not guarantee that we will be capable to retrieve those records. The Client, by this means, declares his express and unforced will to provide Verdmont Capital of orders only verbally, relieving Verdmont Capital of the obligation of keeping written confirmations regarding the orders given by the client. In these cases, the executions done by Verdmont will be presumed correct when originated by the Clients verbal orders.

**15. E-mail and Electronic Communications.** All e-mail sent to and from us is subject to monitoring, review by or disclosure to someone other than your intended recipient. You acknowledge that there may be delays in e-mail being received by your intended recipient. You agree to hold us harmless for any delay in e-mail

delivery regardless of whether the delay was caused by us or a third party. E-mail sent to and from a Verdmont address may be retained by our corporate e-mail system. You agree that Verdmont is not liable for any actions taken or any omissions to act as a result of any e-mail message you send to us. Electronic communications with Verdmont via our Web site, wireless device or touchtone service are also subject to monitoring, review by or disclosure to someone other than the recipient and such communications may be retained by Verdmont.

**16. Fax instructions and Secure online messages.** You authorize Verdmont Capital, S.A. to accept instructions by fax or secure online message through www.verdmont.com.pa

**17. Complaints.** Written complaints may be sent to Verdmont Capital Attn: Compliance Department. Verdmont Building, Aquilino De La Guardia Avenue No.18, PO Box 0823-03017, Panama City, Republic of Panama. Or via email, compliance@verdmont.com.pa

**18. Applicable Law, Jurisdiction, Arbitration.** This agreement shall be governed by the laws of the Republic of Panama. Any disputes arising with respect to or in connection with this Agreement shall be finally decided in the Republic of Panama. Disputes will be arbitrated by an arbitrator from either Centro de Conciliacion y Arbitraje de Panama or Centro de Solucion de Conflictos decided and approved by Verdmont Capital and the Client.

**19. Losses Due to Extraordinary Events; Limitation of Liability.** We shall not be liable for loss caused directly or indirectly by war, strikes, natural disasters, terrorist acts, government restrictions, exchange or market rulings, suspensions of trading, computer or communications line failures, or delays in the transmission of orders due to a breakdown or failure of market centers or transmission facilities or other conditions beyond our reasonable control.

**20. Notices to You.** Verdmont provides client trade confirmations the next business day available. The statements will be sent by month. The two methods to send confirmations and statements are: email or internet. The Client agrees to certain fees if they choose regular mail. Such confirmation will include but is not limited to: amount of the operation, type of interest, commissions and expenses, establishing the concept of its generation, base and period, withheld taxes and, in general all information needed by the client to confirm the result and financial situation of the operation. Verdmont intends the information contained in the Client Statements and confirmations to be accurate and reliable; however, errors sometimes occur. Therefore, Verdmont disclaims any warranty of any kind, whether express or implied, as to any matter whatsoever relating to such information. In particular, the actual price at which an order is executed shall be binding notwithstanding the fact that an erroneous report is given to you. An order that was executed, but in error reported as not executed, shall be binding. Verdmont retains the right to enter pricing, trade, and reconciliation adjustments to your account as necessary and appropriate. Customer agrees that it is their sole responsibility to request and review transaction summaries on a regular basis. Verdmont Capital will provide information that will be useful to its clients, based on the established contractual relationship, and on the type of service rendered, as for example:  offering memorandums, partial or total execution of the orders, conversion dates, swaps, coupon payments, etc. Verdmont copies of its annual financial statements, properly audited, are available for the general public in its headquarters.

**21. Conflicts of Interest.** When a conflict of interest arises, Verdmont Capital will notify its clients about relationship with any other entity over which Verdmont Capital could receive commissions due to the development of its activities.  For such effect, the

Edificio Verdmont, Ave. Aquilino De La Guardia No.18 - Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001- www.verdmont.com.pa

VER000301



**Verdmont Capital**

managing bodies will identify in a separate way in the information that they remit, at least quarterly to the clients, about the managed investments, the operations, investments or procedures that are following detailed:  the emission in securities issued by the agent or entities of its group, or in investments companies managed by this.  The subscription or acquisition of securities in which the agent or any entity related to this group is insurer or underwriter of an emission or public offer of sale; operations among clients of the same entity.  In this case, it will be additional requirement that the operation is not considered harm for none of them; commissions, expenses or amounts, directly or indirectly perceived by the entity that have its origin in commissions, or expenses satisfied by its clients or other financial entity under the investment account's management contract, and that are the outcome of agreements reached by said entity with intermediaries or other financial entities.  The links that the house hold with the emission entities from which economic and financial information is supplied that may give investment recommendations.

**22. Waiver.** Any failure by us to insist at any time upon compliance with this Agreement or with any of its terms shall not constitute or be considered a waiver by us of any of our rights.

**23. Termination.** You may terminate this Agreement or you're Account at any time upon written notice to us, after paying any Obligations you owe to us. You shall remain responsible for all Obligations initiated or authorized by you, including, without limitation, any transactions, debts, and interest as provided under this Agreement, whether arising before or after termination of this Agreement. We may terminate this Agreement or your Account any time, through an advanced written notice of no less than fifteen (15) days to you, for any reason in our sole and absolute discretion. The terms and conditions of this Agreement will survive termination of your Account and will continue to apply to any disputed or other remaining matters arising from our relationship.

**24. Security and Confidentiality.** You agree that you are the exclusive owner and solely responsible, jointly and severally if applicable, for the confidentiality and protection of your Account number and password that allows you to access our online systems. You further agree that you will be fully responsible for all activities including brokerage transactions that arise from the use of your Account number and password. You agree to indemnify and hold Verdmont harmless if any other person utilizing your confidential information provides instructions to us that may be contrary to your instructions. You will immediately notify us in writing or by e-mail of any loss, theft or unauthorized use of your Account number and/or password. Regarding the physical documentation, the contractual documents will be retain and conserved for a period of five (5) years.

**25. Use of Verdmont's Web Sites.** www.verdmont.com.pa , provides you with content and information. Content includes account positions, account activity, balances, transaction status, statements, confirmations and other Account-related data. You agree at all times to rely upon your transaction confirmations and statements as the official records of your Account.

**26. Omnibus accounts.**  Verdmont has established omnibus accounts with its counterparties and custodians to hold client assets. By accepting this Agreement you fully understand the consequences and specific legal and operational risks associated with the acquisition or disposal of securities or financial instruments through global omnibus accounts held by the brokerage house with its intermediaries. Verdmont maintains separate omnibus accounts for brokerage house and client assets. There is an established in-house process to segregate cash and securities by client within the client omnibus accounts.

## MARGIN ACCOUNTS

In consideration of Verdmont opening one or more Margin accounts for you, you agree to the foregoing and following provisions.

**27. Margin Loans.** We may, in our sole and absolute discretion, make loans to you for the purpose of purchasing, carrying or trading in securities, options or other securities ("Margin Loans"). Margin Loans will be made in a Margin Account. You agree that you are solely responsible for determining whether margin is appropriate for you in light of your financial resources, objectives, and other relevant circumstances. You understand and agree that Verdmont will not make this determination on your behalf. Subject to regulatory requirements, the minimum and maximum amount of any particular Margin Loan may be established by us in our discretion regardless of the amount of Collateral delivered to us and we may change such minimum and maximum amounts from time to time.

**28. Risk of Margin Trading.** You understand that trading on margin (including effecting short sales) involves a high degree of risk and may result in a loss of funds greater than the amount you have deposited in your Account.

**29. Requirement to Maintain Sufficient Margin.** Your margin transactions are subject, at all times, to the initial margin and maintenance margin requirements (the "Margin Requirements") established by us. You shall monitor your Account to ensure that at all times the Account shall contain a sufficient account balance to meet the applicable Margin Requirements. We may modify such Margin Requirements for open and new positions, at any time, in our sole and absolute discretion. The margin that we require may exceed the margin required by any exchange or association. We may reject any order if you do not have a sufficient account balance to meet Margin Requirements and may delay the processing of any order while determining the correct margin status of your Account. You shall maintain, without notice or demand from us, a sufficient account balance at all times so as to continuously meet the Margin Requirements.

**30. Margin Calls.** Margin calls may be issued in writing, via telephone, electronically, or by other means of communication. In some situations, such as volatile market conditions, we may not immediately issue a margin call when your Account equity falls below 35 percent. You are responsible for acting immediately on any maintenance calls, buy in or sell out notices given orally or in writing. Your failure to promptly deposit additional money or securities in response to a margin call, regardless of the equity level in your Account, may result in the liquidation of part or all of the securities in your Account. Although we will generally attempt to notify you of a margin call and give you an opportunity to deposit additional equity to secure the Account, we reserve the right to institute immediate discretionary liquidation of any and all securities without prior notice and without giving you the opportunity to deposit additional equity. This sole and absolute discretion applies regardless of any historical pattern of delivering verbal/written notices or of any current verbal or written representations by Verdmont that indicates a different  dollar amount, liquidation time, or suggests additional time based on due date. This sole and absolute discretion to liquidate immediately applies regardless of time zone differentials, language interpretations, or delays in wiring funds, and includes the sole and absolute discretion to choose which positions to liquidate and in what order. It is your responsibility to monitor and liquidate positions to minimize your losses before we are forced to liquidate on your behalf to protect our interest as a creditor. We reserve the right at our sole and absolute discretion to close out any positions for any Account that represents a negative liquidation value.

**31. Interest Charges on Debit Balances.** You agree to pay interest on all debit balances in any Account. Interest on your average daily net debit balance will be calculated using a base rate determined by us and may be changed at any time in our discretion.

CONFIDENTIAL
VER000302



**Verdmont Capital**

**32. Short Sales.** You agree to advise us prior to entering a sell order if it is a "short" sale (the sale of a security that you do not own). You agree that all short sale transactions shall be executed in a Margin Account. You understand that to facilitate a short sale, we must borrow the securities that you sell short. Short sales can be subject to a buy in from settlement date and thereafter. Verdmont does not guarantee a minimum time to short a position. Should Verdmont be unable to borrow or re-borrow a security you have sold short, or for any other reason we deem prudent, we may at our discretion, with or without notice, cover your position by buying the stock at the current market price and you agree to be liable to Verdmont for any resulting debit balance. Margin Accounts are marked to the market daily and any increase in value of a short position will result in that unrealized loss being added to your debit balance and interest being charged as described above. Similarly, a drop in value will decrease your debit balance. If the lender should call in your borrowed securities for any reason such as a tender offer, and you cannot cover in time to make delivery, we may hold you responsible for any resulting loss. You agree that if (a) market conditions change, (b) we are unable to borrow the securities, (c) the lender recalls the securities, we may attempt to reborrow the securities, but you understand that we may need to cover the short position in the Account on the open market at the then current market price and market conditions. You understand that you will be responsible for any resulting loss or associated costs incurred by us in connection with "short" transactions. You are liable for any dividends paid on securities you have sold short.

**33. Loan of Securities.** We are authorized to lend ourselves, as principal or otherwise, or others any securities held by us in your Account and we shall have no obligation to retain under our possession and control a like amount of such securities. In connection with such loans, we may receive and retain certain benefits (including interest on collateral posted for such loans) to which you shall not be entitled. In certain circumstances, such loans may limit, in whole or in part, your ability to exercise voting rights of the securities lent.

**34. Pledge of Securities, Options and Other Property.** All securities and other property now or hereafter held, carried or maintained by us in or for your Account may, from time to time without notice to you, be pledged, repledged, hypothecated or re-hypothecated by us, either separately or in common with other securities and other property. The values received may be greater than the amount you owe us. Any losses, gains or compensation resulting from these activities will not accrue to your brokerage Account.

**35. Business Continuity Disclosure.** Verdmont has in place a business continuity plan that will be activated in the event of a significant business disruption, such as a natural disaster, power outages or other events. Our plan is intended to permit us to continue critical business operations during these types of disruptions. For the most significant business disruption scenario that we have addressed, account access is planned to be available within minutes and all critical business operations would be resumed within one to two days.

**36. Securities Settled Physically.** Certain securities are not eligible for settlement electronically through recognized depositories and therefore must be settled through physical settlement.  You agree to assume all extra costs associated with settling a security physically.  This includes, but is not limited to, courier charges and "rush" fees at custodians, market intermediaries and transfer agents. Notwithstanding this, should a physical settlement fail or be delayed and result in a market intermediary buying in or selling-out the position, the buy-in/sell-out will be passed along to your account and you further agree to assume all risks and costs associated with the market buy-in or sell-out.

**37. Movement of Securities between depositories.** In the event that you should place an order to buy a security in one country or marketplace and subsequently sell the same security into a different country or market place or the reverse of this, Verdmont will undertake to make the necessary movements between securities depositories in order to settle the transactions; however, you agree to assume all associated costs and risks. Should a transaction in one of the countries/marketplaces be delayed or fail and result in a buy-in or sell-out in one of the other countries/marketplaces the resulting buy-in or sell-out will be passed along to your account.

**38. Warrant Exercise.**  In the event that you place sell orders for securities that you are entitled to from a warrant exercise but for which the certificates from the warrant exercise have not yet been received, cleared transfer and dematerialized, you assume all associated costs and risks of a failed or delayed settlement.  Market buy-ins resulting from these delays will be passed along to your account.

**39. Futures Accounts.** Should your account be approved for buying or selling futures contracts, you understand that any given transaction may result in a loss. Furthermore, you understand that the loss may exceed not only the amount of the initial margin but also the entire amount deposited in the account or more.  Verdmont may at its sole discretion move assets from your cash or margin account to cover losses in your futures account.  For the purpose of interest calculations on debits or credits, your futures account is separate from your regular cash/margin account.

**40. Withdrawals from Dormant Accounts.** Dormant accounts incur custody expenses to Verdmont.  A dormant account service charge of 3% may be levied on any deliveries or wire transfer out from accounts held by clients at Verdmont's discretion.

**41. Parties Commitment.** Both sides agree to comply with the Securities Law and its regulations specifically but not limited to what is stated in Agreement S-2003 and S-2006 of the Securities Market Superintendency of the Republic of Panama.

Edificio Verdmont, Ave. Aquilino De La Guardia No.18 - Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001- www.verdmont.com.pa



**Verdmont Capital**

### CONTRATO DE CUENTA DE CORRETAJE DE VERDMONT CAPITAL
### TÉRMINOS Y CONDICIONES

Al abrir una cuenta o cuentas de corretaje con Verdmont Capital ("Verdmont", "nosotros" o "nuestra"), usted acepta y reconoce que ha leído y comprendido el Contrato de Cuenta de Corretaje de la presente (el "Contrato") que aparece abajo y acuerda obligarse según sus términos.

**1. Capacidad Legal para Celebrar Contratos.** Usted ha mayor de edad en la jurisdicción en la cual usted reside y tiene capacidad para celebrar este Contrato.

**2. Exactitud de la Solicitud de su Cuenta Nueva e Información Crediticia.** La información que usted nos ha suministrado en el cuestionario o solicitud, incluida, contable y correcta. Desde más acepta la personal mencionada en la Solicitud de Cuenta de Corretaje (la "Solicitud") tiene interés en la Cuenta para la cual se ha aplicado. Ante a asistencia de suscribirnos cambios importantes a dicha información, usted se obliga a suministrarnos prontamente una Solicitud actualizada. Usted nos autoriza a hacer las indagaciones e instrucciones financieras, empleadoras que involucren otra cuenta que estimemos necesarias con el propósito de verificar su identidad o solvencia financiera.

**3. Tipos de Cuenta.** Hasta entender que según el tipo de Cuenta o el. cuentas individuales conjuntas o corporativas, que sea aplicable para que necesitamos y reguladora al, usted también entiende que ciertos tipo de Cuentas pueden ser elegidos para los propósitos tal, con reguladora al aprobación por Verdmont.

**4. Verificación de Identidad para Fines Anti-Lavado de Dinero.** La legislación de Panamá nos exige verificar la identidad del dueño de esta cuenta. Verdmont le solicitará que provea varios documentos de identificación antes de abrir una Cuenta. Adjunto a este Contrato está nuestro "Formulario Conozca a Su Cliente". Usted deberá que lo incluya y complementar correctamente dicho formulario.

**5. Mantenimiento y Aprobación de Cuenta.** Verdmont aprobará, a nuestra única y absoluta discreción, rechazar su Solicitud o cerrar su Cuenta. También le podemos requerir que nos provea documentación e información adicional a fin de que podamos continuar procesando su Cuenta. Usted reconoce que nosotros podemos, a cualquier momento, a nuestra única y absoluta discreción, restringir las transacciones, desembolsos o crédito a su Cuenta. Si en algún momento, su Cuenta Verdmont podrá en cualquier momento, enmendar, cambiar, revisar, agregar, o modificar el presente Contrato previo aviso escrito a usted tan como ahí todo la pr interése a quince (15) días. El Contrato actualizado será publicado en nuestra página Web www.verdmont.com.pa. En el caso de ambos en las varias de cualquier a cargos en las cuentas de los clientes, los mismos tendrán hasta con el meses para notificar o cancelar la respectiva contratación con Verdmont Capital. Si a una vez hace transacción este período de tiempo, se acepta que usted a las cambios para la continuación a intención. Cuando esta términos no estar a no a las de (2) interese estos cambios no estarán las cuentas de clientes. Usted entiende que este Contrato no podrá ser modificado por usted mediante declaraciones variables a enmiendas escritas, sin la aceptación por escrito del Anexo, jefe de Verdmont.

**6. Reportes a la Unidad de Análisis Financiero (UAF).** Si Verdmont conoce o que una transacción nos es necesarias con Empleado de Contralor o Financiamiento del Terrorismo nuestro Departamento de Cumplimiento comunicará dichas transacciones a la Unidad de Análisis Financiera para la Prevención del Delito de Blanqueo de Capitales. Eventualmente de Terrorismo a través de los formularios establecidos para tales efectos y dejarnos constancia en el expediente de la cuenta acerca de la transacción sospechosa reportada. Nuestro departamento de Cumplimiento seguirá los procedimientos establecidos en el Acuerdo No 1-15 de la Superintendencia de Mercado de Valores de Panamá en caso de detectar una transacción sospechosa, la notificación se hace a la UAF dentro de los 60 días siguientes a la fecha en que se origina la transacción sospechosa. Verdmont podrá por propio interés, cerrar las cuentas que cualquier persona natural o jurídica que este vinculada a la operación sospechosa objeto del reporte presentado a la UAF. Formalizado el cierre de la cuenta Verdmont deberá dentro de un término no mayor de 15 días hábiles contados a partir de la fecha de dicho cierre, remitir a la UAF un informe escrito -complementario del reporte inicial de operaciones sospechosas- comunicándole el cierre de la cuenta respectiva el mecanismo utilizado por el titular de la cuenta para el retiro de los fondos, y el curso dado de los mismos cuando pueda determinarse. Dicho informe deberá estar acompañado con copia del formulario de cierre y del documento utilizado por el titular de la cuenta para retirar los fondos.

**7. Ninguna Recomendación y Ningún Aviso.** Usted reconoce que Verdmont no provee asesoría legal ni de impuestos y usted reconoce, según la conducta necesaria, en conductar con profesionales calificados en su propio jurisdicción antes de utilizar la cuenta con Verdmont o implementar su plan financiero. Mediante el presente Contrato acuerda liberar de responsabilidades a Verdmont, sus dignatarios, directores, empleados, agentes y afiliados de cualquier responsabilidad, financiera o de otra índole que se genere (incluyendo de las transacciones de cualquier plan, según se incurran, como resultado de implementarlo personales o porque que usted pueda incurrir con respecto a decisiones personales, instituciones, transacciones o estrategias creadas en su cuenta por usted a por su representante específicamente autorizado, como resultado de cualquier conducimiento suyo de cualesquiera Contratos, representaciones, certificaciones y garantías contenidos en el presente Contrato.

**8. Honorarios, Comisiones y Cuentas Mínimas.** Usted acuerda pagar las comisiones de corretaje, cargos y otros honorarios, según la aplicación de tiempo en tiempo en nuestra Tabla de Comisiones, una copia de la cual se le entrega al momento de la firma de este Contrato. Verdmont le notificará por escrito de cualquier cambio en su Tabla de Comisiones y usted aceptará con un plazo de dos (2) meses a partir de la fecha de recibo de la notificación pa o par por terminado el presente Contrato, en que si sean aplicables durante este período no han notificadas usted entiende que Verdmont puede también un depósito mínimo para abrir una cuenta y una cantidad mínima de depósito. Las cantidades con cargadas en base a órdenes las órdenes limitadas ejecutadas durante días recibidos sin la orden que se modifiquen después de una ejecución parcial en el mismo día serán tratadas como órdenes separadas para propósitos del cálculo de comisión.

**9. Depósito de Valores Físicos.** En el caso de depositarse en forma física los certificados estos pueden estar limitados a la forma física documento, y dicho requerirá que sea puesto en el mismo nombre en que fue registrada la cuenta. A discreción de Verdmont, dichos valores podrán convertirse, por lo que pasar a cobrar a los laxos de comisiones regulares.

**10. Compras y Ventas.** Para ejecutar órdenes de compra, nosotros generalmente requeriremos que su Cuenta tenga fondos disponibles iguales o mayores que el precio de la compra de los valores. Para ejecutar órdenes de venta, nosotros generalmente requeriremos que los valores estén disponibles en cantidad suficiente en su Cuenta. Usted acuerda que a cualquier orden de compra o venta aceptada por nosotros con respecto a la obligación a no asegurar o tendrá confirmación suficiente, específicamente en su Cuenta, estarán sujeto a liquidación en la fecha de las ordenes de compra o licuarlo, en el caso de una orden de venta, por corto a usted. En caso de que las fondos completos no estén disponibles en su Cuenta cuando una orden de compra sea ejecutada, usted generalmente al mismo completará mediante a mediante dando confirmatorio o personalmente con órdenes de recibo de confirmación o liquidación y la de la orden. En el evento de que una situación de valores sea específica o una venta a nuestra Cuenta, usted promete entregar todos los valores vendidos en o antes de la fecha de compensación (settlement). En dichos rangos si se creo no son ordenes en o antes de la fecha de compensación (settlement) podremos buscar su Cuenta y usted será responsable por cualesquiera pérdidas que resultasen y todas las costas adicionales por comisión.

**11. Órdenes, Ejecuciones.** Usted deberá impartir órdenes con toda y proveernos con toda las personas que intervengan en la ejecución de las órdenes, conectar con ejecución las órdenes y proveernos con todas las personas que intervengan en la ejecución de las órdenes, conectar con ejecución las órdenes para proveer las información necesarias, instrucciones y certificas de los clientes. La firma de usted en que le importa en impartirse en una orden electrónica, el cual exige evidencia de si la instrucción ha recibido por escrito o de manera de en o través de llamadas telefónicas. Ambas instrucciones son llamadas telefónicas pueden ser grabadas (referente a la cláusula 14 de este acto aba). Al momento de recibir una orden en el marco día de su recibo, o se ha de ser posible en el presente día hábil, Verdmont la incluirá en su registro de órdenes según con un riguroso orden cronológico, se asignará un número correlativo y la ejecutará y pondrá todos los medios necesarios para hacerla llegar a la entidad encargada de su ejecución a la entidad de su... al mismo, completa mediante o mediante expresándola a mediante desde cualquier confirmación o personalmente o personalmente a usted de valores conectada con una. En el evento de que una orden de venta sea específica o un valores sanadas a las espacio a las verificación de estos transactos dentro das las opciones de "hab" a la realización de la misma. Usted entiende que usted es responsable de revisar prontamente todas las confirmaciones de transacciones y estados de cuenta a la recibidas. Dichas comunicaciones y estados de cuenta se considerarán aceptados por usted y serán concluidos a menos que nos notifique por nos notifique por escrito dentro de los diez (10) días siguientes de su transmisión a usted. Usted acuerda que es responsable de monitorear todas las órdenes abiertas. Su orden coloca una orden "venta hasta que sea cancelada" ("GTC"), la orden abierta permanecerá vigente hasta que sea ejecutada, sea cancelada por nosotros para conveniencia, resignación o cierre operativo o porque usted decida cancelarla.

CONFIDENTIAL

VER000304



**Verdmont Capital**

CONFIDENTIAL

VER000305



## Verdmont Capital

*[Body text at top of page is too faded to transcribe reliably]*

**25. Uso de las Páginas Web de Verdmont**

**26. Cuentas Ómnibus.**

*MARGIN ACCOUNTS*

**27. "Margin Loans"**

**28. Transacciones de 'Risk of Margin'.**

**29. Requisitos para mantener un Margen Suficiente**

**30. "Margin Calls"**

**31. Cargos de Intereses en Balances de Débito**

**32. Ventas en Corto**

**33. Préstamos de Valores**

**34. Compromiso de Valores, Opciones y Otras Propiedades**

**35. Divulgación de Continuidad de Negocio**

Edificio Verdmont, Ave. Aquilino De La Guardia No.18 – Apartado Postal 0823-03017 – Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001- www.verdmont.com.pa

CONFIDENTIAL

VER000306



**Verdmont Capital**

**36. Valores liquidados físicamente.** [text illegible/faded]

**37. Movimiento de valores entre depositarios.** [text illegible/faded]

**38. Ejecución de orden.** [text illegible/faded]

**39. Cuentas a futuro.** [text illegible/faded]

**40. Retiro de Cuentas Sin Movimiento.** [text illegible/faded]

**41. Compromiso de las partes.** [text illegible/faded]

Edificio Verdmont, Ave. Aquilino De La Guardia No.18 - Apartado Postal 0823-03017 - Ciudad de Panamá, República de Panamá
T:+507 301 9000 or +800 VERDMONT- F: 507 301 9001- www.verdmont.com.pa

CONFIDENTIAL
VER000307

## NOTARIAL CERTIFICATE

I, Danielle C. O. Conolly, a Notary Public duly commissioned, sworn, admitted and practising at George Town in the Cayman Islands, that having compared the same to the original do hereby certify that, the copy of the Certificate of Incorporation dated the 7th February 2007 in the name of Nautilus Growth Fund Ltd. and attached hereto is a true and correct copy of the original.

IN FAITH AND TESTIMONY WHEREOF I, the said Notary Public, have hereunto set my hand and affixed my notarial seal this 11th day of March 2010

NOTARY PUBLIC

K2025872.1

CONFIDENTIAL

VER000308



## Certificate Of Incorporation

WK-186788

I, JOY A. RANKINE
DO HEREBY CERTIFY, pursuant to the Companies Law (2004 - 22), that all requirements of the said Law in respect of registration were complied with by

*Nautilus Growth Fund, Ltd.*

an Exempted Company incorporated in the Cayman Islands with Limited Liability with effect from the 7th day of February Two Thousand Seven.

Given under my hand and Seal at George Town in the Island of Grand Cayman this 7th day of February Two Thousand Seven.

Assistant Registrar of Companies, Cayman Islands.

REGISTRAR OF COMPANIES
EXEMPTED
CAYMAN ISLANDS

CONFIDENTIAL

VER000309

## NOTARIAL CERTIFICATE

I, Danielle C. O. Conolly, a Notary Public duly commissioned, sworn, admitted and practising at George Town in the Cayman Islands, that having compared the same to the original do hereby certify that, the copy of the Memorandum and Articles of Association dated the 7th February 2007 in the name of Nautilus Growth Fund Ltd. and attached hereto is a true and correct copy of the original.

IN FAITH AND TESTIMONY WHEREOF I, the said Notary Public, have hereunto set my hand and affixed my notarial seal this 11th day of March 2010

NOTARY PUBLIC

2025872_1

CONFIDENTIAL

VER000310

# ARTICLES OF INCORPORATION

## OF

## VERVET MANAGEMENT SERVICES LTD

## PURSUANT TO THE NEVIS BUSINESS CORPORATION

## ORDINANCE

## 1984, AS AMENDED



REGISTRAR OF OFFSHORE COMPANIES & TRUSTS
FILED
FEB 1 9 2009
NEVIS

CONFIDENTIAL

VER000349

# NEVIS BUSINESS CORPORATION ORDINANCE 1984

## AS AMENDED

## ARTICLES OF INCORPORATION

For the purpose of forming a corporation pursuant to the Nevis Business Corporation Ordinance 1984, as amended, the undersigned does hereby make, subscribe, acknowledge and file in the office of the Registrar of Companies this instrument for this purpose, as follows:

1.     The name of the corporation shall be:

**VERVET MANAGEMENT SERVICES LTD**

2.     The registered address of the corporation shall be Henville Building, Prince Charles Street, Charlestown, Nevis, West Indies. The corporation's registered agent at this address shall be Associated Trustees Limited.

3.     The aggregate number of shares that the corporation is authorised to issue is One Thousand (1,000) registered and/or bearer shares without par value.

The procedural provisions respecting bearer shares shall be set forth in the by-laws of the corporation.

The holder of a stock certificate issued in the name of the owner may cause such certificate to be exchanged for another certificate to bearer for a like number of shares, and the holder of a certificate issued to bearer may cause such certificate to be exchanged for another certificate in his name for a like number of shares.

Subject to the maximum amount of shares permitted under this Article 3, the Board of Directors shall have power to issue such amount of shares in the capital of the Company, as it shall from time to time determine. Such shares may be of one or more classes or one or more series within any class thereof, any or all of which classes may be of shares with or without par value, and may be registered or bearer shares, with such voting powers, full or limited, or without voting powers and in such series and with such designations, preferences, participating, optional or special rights and qualifications, limitations or restrictions thereon, as the Board shall determine.

CONFIDENTIAL

VER000350

4.     The corporation shall have as its principal purpose the right to engage in any lawful act or activity for which corporations may now or hereafter be organised under the Nevis Business Corporation Ordinance 1984 as amended.

5.     The corporation shall have every power which a corporation now or hereafter organised under the Nevis Business Corporation Ordinance 1984 as amended may have.

6.     The corporation shall be permitted to commence business in accordance with the Nevis Business Corporation Ordinance 1984 as amended to May 1995 and in accordance with its by-laws with immediate effect.





**ASSOCIATED TRUSTEES LIMITED**

The name and address of the incorporator
of these Articles is

| NAME | ADDRESS |
|------|---------|
| Associated Trustees Limited | Henville Building<br>Prince Charles Street<br>Charlestown<br>Nevis |

IN WITNESS WHEREOF, we have executed this instrument on February 19th 2009.

For and on behalf of
**Associated Trustees Limited**

CONFIDENTIAL

VFR000352

# CERTIFICATE OF NOTARY PUBLIC

Island of Nevis                                  February 19th 2009
Town of Charlestown

On this date before me personally came Kishma Williams known to me to be
the duly authorised individual who executed the foregoing Articles of
Incorporation of

### VERVET MANAGEMENT SERVICES LTD

on behalf of Associated Trustees Limited in accordance with the provisions
of Section 4 of the Nevis Business Corporation Ordinance 1984 as amended
and she duly acknowledged to me that the execution thereof was the act and
deed of Associated Trustees Limited, and I do now set my hand and seal in
witness of these acts in accordance with the provisions of the same Section
of the Ordinance.



                                        Notary Public

CONFIDENTIAL                                                    VER000353



### *DESIGNATION AND ACCEPTANCE OF REGISTERED AGENT*

*WHEREAS: Under the provisions of Section 17(1), of the Nevis Business Corporation Ordinance 1984, as amended, corporations formed under that Ordinance are required to designate a Registered Agent, and failure to maintain a Registered Agent shall result in the involuntary dissolution of the corporation under Section 99 (1);*

*WHEREAS: Associated Trustees Limited is duly licensed by the Island of Nevis Government to act as Registered Agent and meets the requirements of Section 17(1) of the Nevis Business Corporation Ordinance 1984, as amended; and*

*WHEREAS: VERVET MANAGEMENT SERVICES LTD in order to comply with the provisions of the Ordinance, has designated Associated Trustees Limited its Registered Agent;*

*THEREFORE: Associated Trustees Limited hereby accepts designation as Registered Agent for the above named corporation as of the date set forth below.*

For and on behalf of
**Associated Trustees Limited**

*February 19th 2009*

# GENERAL BY-LAWS OF

# VERVET MANAGEMENT SERVICES LTD

### BY-LAW I
### DEFINITIONS

In this By-Law and all other By-Laws of this Corporation, unless the context otherwise requires:

a) "Ordinance" means the Nevis Business Corporation Ordinance 1984, as amended.

b) By-Laws means any by-law of the Corporation from time to time in force.

c) All terms contained in the by-laws and defined in the Ordinance or regulations thereunder shall have the meanings given to such terms as defined therein.

d) Singular includes the plural and the plural includes the singular; the masculine gender includes the feminine and neuter genders and vice versa; the word person includes bodies corporate, companies, partnerships, syndicates, trusts and any other association of persons and the word individual means a natural person.

### BY-LAW II
### OFFICES

The Registered Office of the Corporation shall be located at Charlestown, Nevis at such address as the Directors may fix from time to time by resolution.

The Corporation may have such other office or offices at such other places outside of Nevis as the Board of Directors may designate or the business of the Corporation may require from time to time.

# BY-LAW III
## SHAREHOLDERS

Part 1.   **Meetings:** The Meetings of the shareholders shall be held on a date and time to be determined by the Board of Directors at the registered office of the Corporation listed in By-Law II hereof or at such other time, on such other day or at such other place as the Board of Directors may fix.

Part 2.   **Special Meetings:** Special meetings of shareholders may be called for any purpose or purposes unless otherwise prescribed by the Ordinance at any time by the President or Managing Director. Special meetings of the shareholders must be called (a) by any officer when ordered by the Board of Directors or (b) by the President, Managing Director, Secretary or Assistant Secretary whenever requested in writing to do so by shareholders owning at least one-tenth of all the outstanding shares of the Corporation entitled to vote at such meeting. If called pursuant to subsection (b) above, the request shall state the purpose or purposes of the proposed special meeting and the officer calling the meeting shall schedule the meeting within the time specified in the Ordinance. Special meetings shall be held at such place and on such date and time as may be designated in the notice thereof by the officer of the Corporation calling any such meeting. If no place is so designated, it shall be at the registered office of the Corporation as determined in By-Law II hereof. The business transacted at any special meeting shall be limited to the purposes stated in the notice and any matters incidental thereto.

Part 3.   **Notice of Meetings to Shareholder of Record:** Notice in writing of every ordinary and special meeting of shareholders, other than any meeting the giving of notice of which is otherwise prescribed by law, shall state the date, hour and place thereof, and in the case of special meetings, the name of the person or persons at whose direction the notice is being issued and the purpose of the meeting. Such notice shall be in writing and given personally or sent by mail, telegraph, cablegram, telex, teleprinter or other written transmission at least fifteen but not more than sixty days before the date of the meeting, to each shareholder of record entitled to vote at such meeting and to each shareholder of record who, by reason of any action proposed at such meeting would be entitled to have his share appraised if such action were taken. If mailed, notice shall be deemed to have been delivered at the expiry of fifteen days from when deposited in the mail, postage prepaid and directed to the shareholder at his address as it appears on the record of shareholders of the Corporation or at such other address which the shareholder has notified to the Secretary. Notice of a meeting need not be given to any shareholder who

submits a signed waiver of notice, whether before or after meeting, or who attends the meeting without protesting, prior to the conclusion thereof, the lack of notice to him.

**Part 4.** **Notices of Shareholders' Meetings and other Actions to Holders of Bearer Shares:** Written notices of shareholders' meetings and notices of other actions shall be given to holders of bearer shares in one of the following manners: (a) by delivery or by mail to any bearer shareholder whose address or whereabouts is known to the Corporation, or (b) to any bearer shareholder, in person, who displays or produces the share certificate to an authorised representative of the corporation, or (c) to any bank, brokerage firm or other financial institution which is known by the Corporation to be a custodian of bearer certificates or, if notice cannot be given in the manner provided under (a), (b) or (c), then by publication in a newspaper of wide circulation in the country of presumed residence of bearer shareholders. If mailed, notice shall be deemed to have been delivered at the expiry of fifteen days from when deposited in the mail, postage prepaid and addressed to the shareholder in accordance with the provisions of this Part 4. Notice of a meeting need not be give to any shareholder who submits a signed waiver of notice, whether before or after the meeting, or who attends the meeting without protesting, prior to the conclusion thereof, the lack of notice to him.

**Part 5.** **Quorum:** Unless otherwise provided by the Ordinance, at any meeting of shareholders a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum. If a quorum is not present, a majority of those shares present, in person or by proxy, shall have power to adjourn any meeting until a quorum shall be present. When a quorum is once present to organise a meeting, it is not broken by the subsequent withdrawal of any shareholders and any such withdrawing shareholders shall be counted in determining the number of shares represented at such meeting.

**Part 6.** **Voting:** Providing a meeting is properly constituted as outlined in Part 5 herein, and unless otherwise expressly provided by the Ordinance, the affirmative vote of a majority of the shares of stock represented at the meeting shall be the act of the shareholders. At any meeting of shareholders each shareholder entitled to vote any shares on any matter to be voted upon at such meeting shall be entitled to one vote on such matter for each such share, and may exercise this voting right either in person or by proxy. Any action permitted or required to be taken at a meeting may be taken without such meeting provided a consent in writing, setting forth the action so taken, is signed by all of the shareholders entitled to vote with respect to the subject matter thereof. Any share(s) held jointly shall be voted as one.

 VER000357

Part 7.   **Fixing of Record Date:** For the purposes of determining the shareholders entitled to notice of or to vote at any meeting of shareholder or adjournment thereof, or shareholders entitled to receive payment of any dividend, or for any other proper purpose, the Board of Directors may fix a time (the "Record Date"). The Record Date shall be not more than sixty nor less than fifteen days prior to (a) the date of any meeting of shareholders, or (b) the last day on which the consent or dissent of shareholders may be expressed for any purpose without a meeting. The Record Date shall be the time as of which shareholders entitled to notice of and to vote at such a meeting (or whose consent or dissent is required or may be expressed) shall be determined, and all persons who were holders of record of voting shares at the Record Date shall be entitled to notice of and to vote at such meeting (or to express their consent or dissent, as the cay may be). The Board of Directors may fix a time not exceeding sixty days preceding the date fixed for the payment of any dividend, the making of any distribution, the allotment of any rights or the taking of any other action, as a Record Date for the determination of the shareholders entitled to receive any such dividend, distribution, or allotment or for the purpose of such other action.

Part 8.   **Proof of Bearer Shareholder's Status in General and at Shareholders' Meetings:** A holder of bearer shares shall establish his status as shareholder for any purpose, including attendance and voting at shareholders' meetings but not including payment of dividends, in one of the following manners: (a) by presenting or producing the share certificate or (b) by depositing the share certificate in a bank, brokerage firm or other financial institution, as shall be specified in a notice to bearer shareholders, and producing an instrument to that effect executed by an officer of such institution or (c) in such other manner stated in a notice to bearer shareholders which shall adequately establish the status of bearer shareholders to the satisfaction of the authorised officers of the Corporation. For payment of dividends, a bearer shareholder shall establish his status in the manner set forth in By-Law VIII, Part 2 of these by-laws.

Part 9.   **Proxy of Shareholder:** A Shareholder may act by proxy in accordance with Section 65 of the Ordinance or any successor thereto.

<div align="center">

BY-LAW IV

DIRECTORS

</div>

Part 1.   **Number and Qualifications:** The business affairs of the Corporation and all corporate powers shall be managed by a Board of Directors consisting of such number of

VER000358

Directors as are determined by a resolution of the shareholders or a resolution of the Board of Directors. The number of Directors may be changed from time to time by a resolution of the shareholders or a resolution of the Board of Directors provided, however, that the entire Board shall consist of not less than three Directors unless all shares of the Corporation are held by fewer than three shareholders, in which case the number of Directors may not be fewer than the number of shareholders. Directors may be natural persons, or corporations, of any nationality and need not be residents of Nevis or shareholders of the Corporation.

Part 2.   **Alternate Directors:** At any meeting of the Board of Directors, the Directors may elect a person or persons to act as Directors in the alternative to designated persons elected as Directors of the Corporation (hereinafter referred to as "Alternate Directors") or may authorise the Directors for the time being in office to appoint such Alternate Director and any person so appointed shall have all the rights and powers of the Director for whom he is appointed in the alternative, save that he shall not be entitled to attend and vote at any meeting of the Directors otherwise than in the absence of such Director. Where an Alternate Director has been appointed for any Director, such Director shall promptly notify such Alternate Director of the time and place of any meeting which such Director will not attend. Unless otherwise provided in the resolution appointing each Alternate director, where an Alternate Director and a proxy for the same Director are both actively assuming rights or duties of such Director, the status of the proxy shall be superior.

Part 3.   **Election of Directors:** The initial Director(s) appointed by the incorporator shall be elected to serve until their successors have been duly elected and qualified, except in the event of their death, resignation, removal or the earlier termination of their term of office.

Part 4.   **Removal:** Any one or all of the Directors and Alternate Directors, if any, may be removed with or without cause by a vote of the shareholders. Any Director or Alternate Directors may be removed for cause by action of the Board.

Part 5.   **Resignation:** Any Director of the company may tender their resignation by giving notice in writing to the Board, except as otherwise provided in the ordinance or these by-laws.

Part 6.    **Vacancies:** All vacancies occurring by death, resignation, creation of new directorships, or for any other reason, except removal without cause, may be filled either by the vote of a majority of the remaining Directors, although less than a quorum, at any regular meeting of the Board or a special meeting called for that purpose, or by vote of the shareholders. Vacancies occurring by removal of Directors or Alternate Directors without cause may be filled only by vote of the shareholders.

Part 7.    **Regular Meetings:** Regular meetings of the Board of Directors may be held without notice if the time and place thereof are designated by resolution of the Board in advance of such meetings and if any Directors and Alternate Directors, not present when such resolution is passed are given notice of the resolution. Any proper business may be transacted at any regular meeting; and any Director may waive notice of any meeting in writing, prior or at any meeting.

Part 8.    **Special Meetings:** Special meetings of the Board of Directors may be called from time to time by the Managing Director, President or a Director. In addition, the President or the Managing Director or the Secretary shall promptly call a special meeting of the Board upon written request directed to any of them by any Director, which request must state the purpose of such special meeting. Special meetings of the Board shall be held on such date, at such time and place and for such purposes as may be designated in the notice thereof by the officer calling the meeting pursuant to this Part.

Part 9.    **Notice of Special Meetings:** Notice in writing of the date, time and place of any special meeting of the Board of Directors shall be given to each Director at least forty-eight hours prior to such meeting, unless the notice is delivered in person, in which case it shall be given at least twenty-four hours prior to such meeting. For the purpose of this section, notice shall be deemed to be duly given to a Director if given to him personally or if such notice be delivered to such Director by mail, telegraph, cablegram, telex, teleprinter or other written communication to his last known address. Notice of a meeting need not be give to any director who submits a signed waiver before or after the meeting, or who attends the meeting without protesting, prior to the conclusion thereof, the lack of notice to him.

Part 10.    **Quorum:** A quorum for transaction of business shall consist of a majority of the entire Board of Directors, present in person or by Alternate Director or proxy or conference telephone or video, but shall not consist of less than $1/3^{rd}$ of the total of the Board.

CONFIDENTIAL

Part 11. **Voting:** The vote of the majority of the Directors, present in person or by Alternate Director or proxy or conference telephone or video, at a meeting at which a quorum is present shall be the act of the Directors. Any action required or permitted to be taken at a meeting may be taken without a meeting if all Directors or their proxies consent thereto in writing. Alternate Directors may not act as Directors for the purpose of taking action without a meeting unless they also have a written proxy from the Director whom they are acting.

Part 12. **Compensation of Directors and Members of Committees:** From time to time the Board may, in its discretion, fix the amounts which shall be payable to its members, to Alternate Directors and to members of any committee, for attendance at the meetings of the Board, or of such committee, and for services rendered to the Corporation.

Part 13. **Proxy of Director:** Any Director or Alternate Director may appoint a proxy by an instrument in writing to act in his behalf for the purpose of exercising his powers and duties.

<div align="center">

BY-LAW V

COMMITTEES

</div>

Part 1. **Executive Committee and Other Committees:** The Board of Directors may, by resolutions passed by a majority of the entire Board, appoint from among its members an executive committee, which shall have, to the extent provided in said resolution or resolutions and permitted by law, the powers of the Board of Directors in the management of the business and affairs of the Corporation and may have the power to authorise one of its members or any corporate officer or agent to affix the seal to any corporate documents or instruments. In addition, the Board of Directors may, by resolution passed by a majority of the entire Board, appoint other committees, each of which shall perform such functions and have such authority and powers as shall be delegated to it by said resolution or resolutions, except that only the executive committee may have and exercise the powers of the Board of Directors. Members of the executive committee and any other committee shall hold office for such period as may be prescribed by the vote of a majority of the entire Board of Directors. Committees may adopt their own rules of procedure and may meet at predetermined times or on such notice as they may from time to time determine. Each committee shall keep a record of its proceedings and report the same to the Board when required. Alternate Directors may not be appointed to such committees, but may act for the Director for whom they are an



VER000361

alternative in exercising the powers and duties of such Director if such Director is not available in person or by proxy and if such Alternative Director is not available in person or by proxy and if such Alternate Director is not specifically prohibited from so acting by a properly adopted resolution of the Board of Directors or the shareholders.

<div align="center">

BY-LAW VI

OFFICERS

</div>

Part 1.   **Election and Removal:** The Board of Directors shall elect as officers (a) a President, Secretary and Treasurer, or (b) a Managing Director and Secretary, and (c) such other officers as it may deem desirable or necessary to carry on the business of the Corporation. Officers may be of any nationality and may be, but are not required to be, citizens or residents of Nevis. The Managing Director is required to be a Director. Any other officers may be, but are not required to be, Directors. All officers must be natural persons except the Secretary, which may be a corporation. Any two or more offices may be held by the same person.

The Officers shall be elected by the Board of Directors at its first meeting following the election of the Board of Directors or as soon thereafter as is possible. The salaries of officers, if any, and any other compensation paid to them shall be fixed from time to time by the Board of Directors. Each officer shall hold office until his successor shall have been duly elected and qualified, except in the event of the earlier termination of his term of office through death, resignation, removal or otherwise. Any officer may be removed by the Board at any time with or without cause and without notice or hearing. Any vacancy in an office or any newly created office may be filled for the unexpired portion of the term of such office by the Board of Directors at any regular or special meeting.

Part 2.   **President or Managing Director:** The President or Managing Director shall be the chief executive officer of the Corporation, and shall be responsible for the general management of the affairs of the Corporation and shall have the powers and duties usually incident to such office, except as specifically limited by appropriate resolution of the Board of Directors. He shall also have such other powers and perform such other duties as may be assigned to him by the Board of Directors. He shall preside at all meetings of Shareholders at which he is present and, if he is a Director, at all meetings of the Directors.

Part 3.   **Treasurer:** The Managing Director or, if there shall be no Managing Director, the Treasurer shall be responsible for the care and custody of the funds, securities, and other valuable effects of the Corporation and shall cause the same to be deposited in the name of the Corporation in such depositories as the Board of Directors may designate. He shall disburse the funds of the Corporation as may be ordered by the Board of Directors, shall have supervision over the accounts and all receipts and disbursements of the Corporation, shall render or cause to be rendered financial statements of the Corporation whenever required by the board, shall have the powers and perform the duties usually incident to the office of Treasurer, and shall have such other powers and perform such other duties as may be assigned to him by the Board of Directors.

Part 4.   **Secretary:** The Secretary shall act as Secretary of all meetings of the shareholders and, if he is a Director, at all meetings of the Board of Directors at which he is present and shall record the minutes of all proceedings in a book kept for that purpose. He shall be the custodian of the corporate records and the corporate seal and shall have all powers and duties usually incident to the office of Secretary and such other powers and duties as may be assigned to him by the Board of Directors. If the Secretary is a Corporation, the duties of the Secretary may be carried out by any duly authorised representative of such corporation.

Part 5.   **Other Officers:** Officers other than those treated in Sections 2 through 4 of this Article shall exercise such powers and perform such duties as may be assigned to them by the Board of Directors.

Part 6.   **Bond:** The Board of Directors shall have power, to the extent permitted by law, to require any officer, agent or employee of the Corporation to give bond for the faithful discharge of his duties in such form and with such surety or sureties as the Board of Directors may deem advisable.

## BY-LAW VII
## SHARE CERTIFICATES

Part 1.   **Form and Issuance:** The shares of the Corporation shall be represented by certificates issued in numerical order and meeting the requirements of the Ordinance and the Articles of Incorporation and approved by the Board of Directors. Certificates shall be signed by (a) the President, Managing Director, or a Vice-Present, and (b) by the Secretary, an Assistant Secretary, the Treasurer or an Assistant Treasurer or Director.

CONFIDENTIAL

These signatures may be facsimiles if the certificate is countersigned by a transfer agent or registered by a registrar other than the Corporation itself or its employee.

Part 2.   **Transfer:** The Board of Directors shall have power and authority to make such rules and regulations not inconsistent with the Articles of Incorporation or the Ordinance as they may deem expedient concerning the issuance, registration and transfer of certificates representing shares of the Corporation's stock, and may appoint transfer agents and registrars thereof.

Part 3.   **Loss of Stock Certificates:** The Board of Directors may direct a new certificate of stock to be issued in place of any certificate theretofore issued by the Corporation which is alleged to have been lost or destroyed, upon the submission of an affidavit to that effect by the person claiming ownership of the lost or destroyed certificate. When authorising such issuance of a new certificate, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost or destroyed certificate to give the Corporation a bond in such form and for such sum as the Board may direct to indemnify the Corporation against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed.

<div align="center">

## BY-LAW VIII
### DIVIDENDS

</div>

Part 1.   **Declaration and Form:** Dividends may be declared in conformity with law by, and at the discretion of, the Board of Directors at any regular or special meeting. Dividends may be declared and paid in cash, stock or other property of the Corporation.

Part 2.   **Payment of Dividends to Holders of Bearer Shares:** Dividends shall be paid to holders of bearer shares in one of the following manners: (a) by mail to any bearer shareholder whose address is known to the Corporation, or (b) in person to any bearer shareholder who displays or produces the share certificate to an authorised representative of the Corporation, or (c) to any bank, brokerage firm or other financial institution which is known by the Corporation to be a Custodian of bearer certificates, or (d) to any person surrendering to the Corporation bearer coupons, if any, attached to the bearer share certificates, or (e) in any other manner satisfactory to the authorised officers of the Corporation which shall adequately assure payment of the dividends to bearer

shareholders, including but not limited to the establishment of escrow accounts for dividends payable to bearer shareholders whose addresses are unknown.

## BY-LAW IX
## CORPORATE SEAL

Part 1. The seal of the Corporation, if any, shall bear the name of the Corporation and such other appropriate legend as the Board of Directors may from time to time determine. The corporate seal may be affixed by any officer or agent of the Corporation who is properly authorised by the Board of Directors to do so, including any properly authorised member of a committee formed under By-Law V, Part 1 of these by-laws.

## BY-LAW X
## FISCAL MATTERS

Part 1.   **Fiscal Year:** The fiscal year of the Corporation shall be such period of twelve consecutive months as the Board of Directors may by resolution designate.

Part 2.   **Cheques / Drafts:** The Board of Directors may nominate any officer or authorised agent of the Corporation to sign cheques and / or drafts on behalf of the Corporation.

Part 3.   **Loan Agreements:** The Board of Directors may nominate any officer or authorised agent of the Corporation to enter into loan agreements on behalf of the Corporation.

## BY-LAW XI
## AMENDMENTS TO BY-LAWS

Part 1.   **By the Shareholders:** These by-laws may be amended, added to, altered or repealed or new by-laws may be adopted, at any meeting of shareholders of the Corporation at which a quorum is present by the affirmative vote of the holders of a majority of the shares represented at such meetings; provided, however, that notice that an amendment is to be considered and acted upon is inserted in the notice or waiver of notice of said meeting.

CONFIDENTIAL

Part 2.   **By the Directors:** If the Articles of Incorporation or a by-law adopted by the shareholders so provide, these by-laws may be amended, added to, altered or repealed, or new by-laws may be adopted, at any regular or special meeting of the Board of Directors by the affirmative vote of a majority of the entire Board, subject, however, to the power of the shareholders to alter, amend or repeal any such by-law.

<div align="center">

**BY-LAW XII**
**INDEMNIFICATION**

</div>

Part 1.   The Corporation shall indemnify any person serving as a Director or officer of the Corporation to the full extent permitted or required in Section 56(1), (2) or (3) of the Ordinance or any successor to such Section.

Part 2.   No Director or Officer of the Corporation shall be liable to the Corporation for
   a) acts or defaults of any other director or officer or employee
   b) any loss or damage incurred by the Corporation through deficiency of title to any property acquired by the Corporation
   c) any other loss or damage whatsoever which may happen in the execution of his duties of his respective office unless from failure to exercise and discharge his duties honestly and in good faith.

The above By-Laws are hereby approved and adopted by the sole Director of **VERVET MANAGEMENT SERVICES LTD**, this 19th Day of February 2009.

<div align="center">

**DIRECTOR**

_____
MR. VIRGILIO SANTANA RIPOLL

</div>

# ISLAND OF NEVIS
## OFFICE OF THE REGISTRAR OF COMPANIES

### CERTIFICATE OF INCORPORATION

I HEREBY CERTIFY that

## VERVET MANAGEMENT SERVICES LTD

is duly incorporated and has filed articles of incorporation under the provisions of the Nevis Business Corporation Ordinance 1984, as amended, on

### 19th February, 2009

Given under my Hand & Seal at Charlestown
This *19th* day of *February, 2009*

_____
Registrar of Companies

elX3epkU

No. C 35364

## VERVET MANAGEMENT SERVICES LTD
## INCORPORATED FEBRUARY 19TH 2009

Minutes of the first meeting of the Incorporator.

The Undersigned, being the Incorporator of VERVET MANAGEMENT SERVICES LTD held a meeting at Charlestown Nevis on February 19th 2009.

The following resolutions were adopted:

**BE IT HEREBY RESOLVED:** that the following be appointed sole Director of the Company:

### Mr. Virgilio Santana Ripoll

**RESOLVED:** that the Articles of Incorporation and By-laws of the Company be and are hereby adopted, ratified and approved in all respects as the Articles of Incorporation and By-laws of this corporation.

There being no further business the meeting was closed.

### Associated Trustees Limited

Per _____
Kishma Williams
Authorised Signatory

# VERVET MANAGEMENT SERVICES LTD

## INCORPORATED FEBRUARY 19TH 2009

DIRECTOR'S RESOLUTIONS consented to in writing by the sole Director of the Company on February 19th 2009.

### 1.   INCORPORATION DOCUMENTS

WHEREAS the Articles of Incorporation of the Company have been filed with the Registrar of Companies, Nevis, West Indies and the Company has been incorporated pursuant to the Nevis Business Corporation Ordinance 1984 as amended;

AND WHEREAS Mr. Virgilio Santana Ripoll has been elected by the Subscriber as the sole Director of the Company pursuant to Section 29 (1) of the Nevis Business Corporation Ordinance 1984 as amended and he has accepted office;

NOW THEREFORE BE IT RESOLVED that the actions of Associated Trustees Limited in subscribing for the incorporation of the Company be and is hereby ratified, confirmed and approved and that the election by the Subscriber of the sole Director of the Company on February 19th 2009 is hereby approved.

### 2.   BUSINESS PURPOSE

The corporation shall have as its principal purpose the right to engage in any lawful act or activity for which corporations may now or hereafter be organised under the Nevis Business Corporation Ordinance 1984 as amended.

### 3.   CORPORATE OFFICE

RESOLVED: that the corporate office of the Company be Henville Building, Prince Charles Street, Charlestown, Nevis, West Indies.

### 4.   REGISTERED AGENT

RESOLVED: that the appointment of Associated Trustees Limited as Registered Agent of the Company be and is hereby approved.

### 5.   SHARE CAPITAL

It was noted that the Authorised Capital of the Company is 1,000 registered and/or bearer shares without par value and each share having the right to one vote.

6.   **CALLS**

**RESOLVED:** that calls be made for 100% of the monies payable in respect of the shares of the Company that are to be issued.

7.   **SHARE ALLOTMENT AND ISSUE**

**RESOLVED:** that pursuant to Section 31 of the Nevis Business Corporation Ordinance of 1984 as amended the Board of Directors be and they are hereby authorised to issue the capital stock of the Company to the full amount or number of shares authorised by the Articles of Incorporation, in such amounts as from time to time shall be determined by the Board and that

**RESOLVED:** that registered share certificate number 0001 be issued to Mr. Virgilio Santana Ripoll for one thousand shares and that issuance be entered in the share register of the Company.

Executed by the sole **Director of VERVET MANAGEMENT SERVICES LTD**

MR. VIRGILIO SANTANA RIPOLL

CONFIDENTIAL



Incorporated under the Nevis Business Corporation Ordinance as Amended

## REGISTERED SHARE CERTIFICATE

Certificate Number 0001   Number of Shares 1,000

Authorised Capital US$1,000.00 divided into 1,000

Shares Without Par Value

*VERVET MANAGEMENT SERVICES LTD*

THIS IS TO CERTIFY THAT Mr. Virgilio Santana Ripoll is entitled to one thousand shares in the above named Company, subject to the Articles of Incorporation and By-Laws of the said Company and to the terms and conditions endorsed hereon.

This 19th Day of February 2009

_____
Director / Officer

_____
Director / Officer

CONFIDENTIAL

VER000371

For Value Received *MR. VIRGILIO SANTANA RIPOLL* hereby sells, assigns and transfers unto

_____ Shares represented by the within Certificate, and do hereby irrevocably constitute and appoint

_____ Attorney to transfer the said Shares on the books of the within named Corporation with full power of substitution in the premises. Dated _____

In the presence of _____

VER000372

# CORPORATE RESOLUTION
## RESOLUCIÓN CORPORATIVA

NAUTILUS GROWTH FUND LTD
.............................................................................................

**("The Company" /** *"La Compañia"* **)**
**Name of Company /** *Nombre de la Compañia*

**"It is hereby resolved that /** *Por este medio se resuelve que:*

1. The Company do open and maintain an account with **Verdmont Capital,** (hereinafter called the "Brokers") for the purchase and sale of and other dealings with stocks, bonds, debentures, rights, warrants and other securities (hereinafter called "Securities") / *La Compañia abra y mantenga una cuenta con Verdmont Capital, (en adelante denominada los Corredores ) para la compra y venta de y otras transacciones con acciones, bonos, obligaciones, derechos, garantias y otros valores (en adelante denominados Valores )*

2. Any one of the following officers or employees of the Company be and they are hereby authorized on behalf of the Company to do all acts and things and sign all documents required to operate and deal with the said account of the Company and in particular without limiting the generality of the foregoing / *Cualquiera de los ejecutivos o empleados de la Compañia siguientes está y por este medio ellos son autorizados en representación de la Compañia para hacer todos los actos y cosas y firmar todos los documentos requeridos para operar y negociar con la mencionada la cuenta de la Compañia y en particular sin limitar la generalidad de lo siguiente:*

    (a) To give instructions to the Brokers either written, verbal or by telephone or fax to buy or sell or otherwise deal with securities on behalf of the Company and either for immediate or future delivery and to bind the Company in respect of any such transaction / *Para dar instrucciones a los Corredores ya sea escritas o por teléfono o fax para comprar o vender o de otra forma negociar con valores en representación de la Compañia y ya sea para entrega inmediata o futura y para comprometer a la Compañia en relación con cualquiera de esas transacciones;*
    (b) To give instructions to the Brokers for the delivery of or to receive delivery of cash and securities from the account of the Company including instructions as to the transfer of any such securities to the name of the Company, to the name of any officer or employee of the Company or to any other person or Company whatsoever / *Para dar instrucciones a los Corredores para la entrega de o el recibo de efectivo y valores de la cuenta de la Compañia incluyendo instrucciones para la transferencia de cualquier de esos valores a nombre de la Compañia a nombre de cualquier ejecutivo o empleado de la Compañia o a cualquier otra persona o Compañia;*
    (c) To make payments to the Brokers for the credit of the Company either through transfer of the Company's funds or in any other manner whatsoever; and to receive from the Brokers and give receipts to the Brokers for any monies from the account of the Company kept with the Brokers and to verify, certify or confirm any statements of the Brokers with respect to the said account. / *Para hacer pagos a los Corredores para acreditar a la Compañia ya sea a través de transferencia de fondos de la Compañia o en cualquier otra forma; y para recibir de los Corredores y dar recibos a los Corredores por cualesquier dineros de la cuenta de la Compañia mantenida con los Corredores; y para verificar, certificar y confirmar cualesquiera estados de cuenta de los Corredores en relación con la mencionada cuenta.*

The following are the authorized Officers and Employees of the Company:
*Los siguientes son los Ejecutivos y Empleados autorizados de la Compañia:*

**Name /** *Nombre*                          **Title /** *Título*

VERVET MANAGEMENT SERVICES LTD    DIRECTOR - *Virgilio Santana Aspell*

1

VER000373

3. Any and all past transactions heretofore had by the Company or by any officer, employee or any other person acting for the Company with the Brokers be and the same are hereby ratified and confirmed. / *Cualquier y todas las transacciones pasadas por la Compañía o por cualquier ejecutivo, empleado o cualquier otra persona actuando por la Compañía con sus Corredores de aquí en adelante han sido y las mismas son por este medio ratificadas y confirmadas.*

4. All notices and demands upon the Company in relation to the said account may be delivered by the Brokers to any of the aforesaid officers or employees either verbally, in writing or by telephone or fax and if so delivered shall be deemed to have been received by the Company. / *Todas las notificaciones y demanda contra la Compañía en relación con la mencionada cuenta puede ser entregada por los Corredores a cualquiera de los ejecutivos o empleados antes mencionados ya sea verbalmente, por escrito, o por teléfono o fax y si así entregada será considerado que ha sido recibida por la Compañía.*

5. The aforesaid officers be and they are hereby authorized to act upon and to carry out the instructions and orders of the said officers and employees of the Company in relation to the said account. / *Los ejecutivos antes mencionados están y por este medio son autorizados para actuar en base a y ejecutar las instrucciones y ordenes de los ejecutivos y empleados mencionados de la Compañía en relación a la mencionada cuenta.*

6. The Brokers be and they are hereby authorized to act upon and to carry out the instructions and orders of the said officers and employees of the company in relation to the said account. / *Los Corredores están y por este medio son autorizados para actuar en base a y ejecutar las instrucciones de los ejecutivos y empleados mencionados de la compañía en relación con la cuenta mencionada.*

**And it is further resolved that /** *Y adicionalmente se resuelve que:*

This resolution and all parts thereof shall remain in full force and effect until written notice of revocation of the Resolution or any part thereof shall be delivered to the Brokers. / *Esta resolución y todas sus partes permanecerán en vigencia y efectiva hasta que aviso escrito de la revocación de la Resolución o cualquier parte de ella sea entregada a los Corredores.*

    VIRGILIO SANTANA RIPOLL OF

I, ___VERVET MANAGEMENT SERVICES___ (1) of ___CHARLESTOWN, NEVIS___ (2) as Secretary, DO HEREBY CERTIFY THAT ___NAUTILUS GROWTH FUND LTD___ (3) is legally entitled to and has taken such steps as are necessary to permit it to establish and operate accounts with Brokers for the sale and purchase of securities that the foregoing Resolutions were duly passed by the Directors of the Company at a meeting duly convened and held on the __16th__ day of __FEBRUARY__, 200 __10__ at which a quorum was present and the said Resolutions are still in full force and effect. DATED at ___SOSUA, DOMINICAN REPUBLIC___ this __16th__ day of __FEBRUARY__ 200 __10__.

*Yo, _____ (1) de _____ (2) como Secretario, POR ESTE MEDIO CERTIFICO QUE _____ (3) legalmente está facultado para y ha tomado tales acciones como son necesarias para permitirle establecer y operar cuentas con los Corredores para la venta y compra de valores que las Resoluciones anteriores fueron debidamente aprobadas por los Directores de la Compañía en una reunión debidamente convocada y celebrada el ____ de _____ de _____ en la que hubo quórum y las Resoluciones mencionarias todavía están en vigencia y efecto. FECHADO en _____ _____ de _____ de _____.*

I FURTHER CERTIFY THAT THE COMPANY HAS NO CORPORATE SEAL.

SECRETARY/ *Secretario*

1 Secretary of Company's full name, printed.
   *Nombre completo impreso del Secretario de la Compañía.*
2 Secretary's city and country of residence
   *Ciudad y país de residencia del Secretario*
3 Name of Company (must correspond exactly with name of account),
   *Nombre de la Compañía (debe corresponder exactamente con el nombre de la cuenta)*

Corporate Seal / *Sello. Compañía*

2

# CERTIFICATE OF INCUMBENCY
## DECLARACION JURADA

The undersigned, being the duly appointed secretary of <u>NAUTILUS GROWTH FUND LTD</u> (the "Corporation"), a corporation duly organized and existing under the laws of <u>CAYMAN ISLANDS</u>,
HEREBY CERTIFIES that the following is a true and correct listing of the Directors and Officers of the Corporation in full force and effect as of the date hereof:

*El abajo firmante, siendo el secretario debidamente designado de _____ (la "Corporación"), una corporación debidamente organizada y existente bajo las leyes de _____, MEDIANTE EL PRESENTE DOCUMENTO CERTIFICA que la siguiente es una verdadera y correcta lista de los Directores y Ejecutivos de la Corporación en total vigencia y efecto a la fecha al respecto:*

**DIRECTORS /** *DIRECTORES:*

VERVET MANAGEMENT SERVICES LTD
Print Name / *Nombre en Imprenta*              Signature / *Firma*  Virgilio Santana Ripoll

Print Name / *Nombre en Imprenta*              Signature / *Firma*

Print Name / *Nombre en Imprenta*              Signature / *Firma*

Print Name / *Nombre en Imprenta*              Signature / *Firma*

Print Name / *Nombre en Imprenta*              Signature / *Firma*

**OFFICERS (indicate titles) /** *EJECUTIVOS (indicar cargo):*

Name / *Nombre*                    Title / *Cargo*

Name / *Nombre*                    Title / *Cargo*

Name / *Nombre*                    Title / *Cargo*

Name / *Nombre*                    Title / *Cargo*

IN WITNESS WHEREOF, the undersigned has executed this certificate and duly affixed the Seal of the Corporation this day <u>16th FEBRUARY</u>, 20 <u>10</u>.

*COMO TESTIGO DE ESTO, el abajo firmante ha ejecutado esta certificación y debidamente adjuntado el Sello de la Corporación en el día_____ de 20___.*

I FURTHER CERTIFY THAT THE COMPANY HAS NO CORPORATE SEAL.

SIGNATURE OF SECRETARY /

No Seal

CORPORATE SEAL /

CONFIDENTIAL

VER000375

# CERTIFICATE OF INCUMBENCY
## DECLARACION JURADA

The undersigned, being the duly appointed secretary of <u>Vervet Management Services Ltd</u> (the "Corporation"), a corporation duly organized and existing under the laws of <u>Nevis</u>,
HEREBY CERTIFIES that the following is a true and correct listing of the Directors and Officers of the Corporation in full force and effect as of the date hereof:
*El abajo firmante, siendo el secretario debidamente designado de _____ (la "Corporación"), una corporación debidamente organizada y existente bajo las leyes de _____,*
*MEDIANTE EL PRESENTE DOCUMENTO CERTIFICA que la siguiente es una verdadera y correcta lista de los Directores y Ejecutivos de la Corporación en total ejercicio y efecto a la fecha al respecto:*

**DIRECTORS /** *DIRECTORES:*

Virgilio Santana Ripoll
_____    _____
Print Name / *Nombre en Imprenta*    Signature / *Firma*

_____    _____
Print Name / *Nombre en Imprenta*    Signature / *Firma*

_____    _____
Print Name / *Nombre en Imprenta*    Signature / *Firma*

_____    _____
Print Name / *Nombre en Imprenta*    Signature / *Firma*

_____    _____
Print Name / *Nombre en Imprenta*    Signature / *Firma*

**OFFICERS (indicate titles) /** *EJECUTIVOS (indicar cargos):*

_____    _____
Name / *Nombre*    Title / *Cargo*

_____    _____
Name / *Nombre*    Title / *Cargo*

_____    _____
Name / *Nombre*    Title / *Cargo*

_____    _____
Name / *Nombre*    Title / *Cargo*

IN WITNESS WHEREOF, the undersigned has executed this certificate and duly affixed the Seal of the Corporation this day <u>March 10</u>, 20<u>10</u>.
*COMO TESTIGO DE ESTO, el abajo firmante ha ejecutado esta certificación y debidamente adjuntado el Sello de la Corporación en el día_____, de 20___*
I FURTHER CERTIFY THAT THE COMPANY HAS NO CORPORATE SEAL.

_____
SIGNATURE OF SECRETARY / *FIRMA DEL SECRETARIO*

no Seal

CORPORATE SEAL / *SELLO DE LA CORPORACIÓN*



HL-181788

# Certificate Of Good Standing

TO WHOM IT MAY CONCERN

I DO HEREBY CERTIFY that

**Nautilus Growth Fund Ltd.**

a company duly organized and existing under and by virtue of the Laws of The Cayman Islands is at the date of this certificate in Good Standing with the office, and duly authorized to exercise therein all the powers vested in the company.

Given under my hand and Seal at George Town in the Island of Grand Cayman this 10th day of March Two Thousand Ten





An Authorised Officer,
Registry of Companies,
Cayman Islands.



CONFIDENTIAL

VER000377

## ISLAND OF NEVIS
## OFFICE OF THE REGISTRAR OF COMPANIES

### *CERTIFICATE OF GOOD STANDING*

I HEREBY CERTIFY that

## VERVET MANAGEMENT SERVICES LTD

Was duly incorporated and existence commenced under the provisions of the Nevis Business Corporation Ordinance 1984, as amended, on

*19th February, 2009*

I FURTHER CERTIFY that according to the records of this office the said corporation is in  Good Standing and has a legal corporate existence as of the date below shown.

Given under my Hand & Seal at Charlestown
This *10th day of March, 2010*

_____
Registrar of Companies

NO.  C 35364

jNph4ngi

CONFIDENTIAL

VER000378

8

**BELIZE**

**THE INTERNATIONAL BUSINESS COMPANIES ACT
CHAPTER 270 OF THE LAWS OF BELIZE**

**ARTICLES OF ASSOCIATION
OF**

**Keyse Management Ltd.**

1. **PRELIMINARY**

In these Articles, if not inconsistent with the subject or context, the words and expressions standing in the first column of the following table shall bear the meanings set opposite them respectively in the second column thereof:

| Words | Meanings |
|---|---|
| the Memorandum | the Memorandum of Association of the Company as originally framed or as from time to time amended; |
| the Act | the International Business Companies Act, Chapter 270 of the Laws of Belize including any statutory modification or re-enactment thereof for the time being in force; |
| the Seal | the Common Seal of the Company, any Overseas Seal or any Securities Seal authorised in accordance with Article 12; |
| Articles | these Articles of Association as originally framed or as from time to time amended. |

"Written" or any term of like import includes words typewritten, printed, painted, engraved, lithographed, photographed or represented or reproduced by any mode of representing or reproducing words in a visible form, including telex, telegram, cable or other form of writing produced by electronic communication.

Save as aforesaid, words or expressions contained in these Articles shall bear the same meanings as in the Act but excluding any statutory modification thereof not in force when these Articles become binding on the Company.

Words importing the singular number shall include the plural number and vice versa; words importing the masculine gender shall include the feminine and neuter genders respectively; words importing persons shall include bodies corporate and unincorporated associations of persons.

KEP000403

9

A reference to money in these Articles is a reference to the currency of the United States of America unless otherwise stated.

## 2. OFFICES

The Company shall at all times have a registered office in Belize.  The Company may have an office or offices at such other place or places within or outside Belize as the directors may from time to time by resolution of the directors appoint or the business of the Company may require.

## 3. REGISTERED SHARES

SECTION 1

The Company shall issue to every member holding registered shares in the Company a certificate signed by a director or officer of the Company and under the Seal specifying the share or shares held by him.

SECTION 2

Any member receiving a share certificate for registered shares shall indemnify and hold the Company and its directors and officers harmless from any loss or liability which it or they may incur by reason of the wrongful or fraudulent use made by any person by virtue of the possession thereof.  If a share certificate for registered shares is worn out or lost it may be renewed on production of the worn out certificate or on satisfactory proof of its loss together with such indemnity as may be required by a resolution of the directors.

SECTION 3

If several persons are registered as joint holders of any shares, any one of such persons may give an effectual receipt for any dividend payable in respect of such shares.

## 4. BEARER SHARES

SECTION 1

Subject to a request for the issue of bearer shares and to the payment of the appropriate consideration for the shares to be issued, the Company may, to the extent authorised by the Memorandum, issue bearer shares to, and at the expense of, such person as shall be specified in the request.  The Company may also, upon receiving a request in writing accompanied by the share certificate for the shares in question, exchange registered shares for bearer shares or may exchange bearer shares for registered shares.  Such request served on the Company by the holder of bearer shares shall specify the name and address of the person to be registered and unless the request is delivered in person by the bearer shall be authenticated as hereinafter provided.  Such request served on the Company by the holder of bearer shares shall also be accompanied by any coupons or talons which at the date of such delivery have not become due for payment of dividends or any other distribution by the Company to the holders of such shares.  Following such exchange the share certificate relating to the exchanged shares shall be delivered as directed by the member requesting the exchange.

10

## SECTION 2

Bearer share certificates shall be under the Seal and shall state that the bearer is entitled to the shares therein specified, and may provide by coupons, talons, or otherwise for the payment of dividends or other monies on the shares included therein.

## SECTION 3

Subject to the provisions of the Act, the Memorandum and of these Articles the bearer of a bearer share certificate shall be deemed to be a member of the Company and shall be entitled to the same rights and privileges as he would have had if his name had been included in the share register of the Company as the holder of the shares.

## SECTION 4

Subject to any specific provisions in these Articles, in order to exercise his rights as a member of the Company, the bearer of a bearer share certificate shall produce the bearer share certificate as evidence of his membership of the Company.  Without prejudice to the generality of the foregoing, the following rights may be exercised in the following manner:

(a)    for the purpose of exercising his voting rights at a meeting, the bearer of a bearer share certificate shall produce such certificate to the chairman of the meeting;

(b)    for the purpose of exercising his vote on a resolution in writing, the bearer of a bearer share certificate shall cause his signature to any such resolution to be authenticated as hereinafter provided;

(c)    for the purpose of requisitioning a meeting of members, the bearer of a bearer share certificate shall address his requisition to the directors and his signature thereon shall be duly authenticated as hereinafter provided; and

(d)    for the purpose of receiving dividends, the bearer of a bearer share certificate shall present at such places as may be designated by the directors any coupons or talons issued for such purpose, or shall present the bearer share certificate to any paying agent authorised to pay dividends.

## SECTION 5

The signature of a bearer of a bearer share certificate shall be deemed to be duly authenticated if the bearer of the bearer share certificate shall produce such certificate to a notary public or a bank manager or a director or officer of the Company (herein referred to as an "authorised person") and if the authorised person shall endorse the document bearing such signature with a statement:

11

(a)   identifying the bearer share certificate produced to him by number and date and specifying the number of shares and the class of shares (if appropriate) comprised therein;

(b)   confirming that the signature of the bearer of the bearer share certificate was subscribed in his presence and that if the bearer is representing a body corporate he has so acknowledged and has produced satisfactory evidence thereof; and

(c)   specifying the capacity in which he is qualified as an authorised person and, if a notary public, affixing his seal thereto or, if a bank manager, attaching an identifying stamp of the bank of which he is a manager.

SECTION 6

Notwithstanding any other provisions of these Articles, at any time, the bearer of a bearer share certificate may deliver the certificate for such shares into the custody of the Company at its registered office, whereupon the Company shall issue a receipt therefor under the Seal signed by a director or officer identifying by name and address the person delivering such certificate and specifying the date and number of the bearer share certificate so deposited and the number of shares comprised therein. Any such receipt may be used by the person named therein for the purpose of exercising the rights vested in the shares represented by the bearer share certificate so deposited including the right to appoint a proxy. Any bearer share certificate so deposited shall be returned to the person named in the receipt or his personal representative (if such person be dead) and thereupon the receipt issued therefor shall be of no further effect whatsoever and shall be returned to the Company for cancellation or, if it has been lost or mislaid, such indemnity as may be required by resolution of the directors shall be given to the Company.

SECTION 7

The bearer of a bearer share certificate shall for all purposes be deemed to be the owner of the shares comprised in such certificate and in no circumstances shall the Company or the chairman of any meeting of members or the Company's registrars or any director or officer of the Company or any authorised person be obliged to enquire into the circumstances whereby a bearer share certificate came into the hands of the bearer thereof, or to question the validity or authenticity of any action taken by the bearer of a bearer share certificate whose signature has been authenticated as provided in Section 5 above.

SECTION 8

If the bearer of a bearer share certificate shall be a company, then all the rights exercisable by virtue of such shareholding may be exercised by an individual duly authorised to represent the company but unless such individual shall acknowledge that he is representing a company and shall produce upon request satisfactory evidence that he is duly authorised to represent the company, the individual shall for all purposes hereof be regarded as the holder of the shares in any bearer share certificate held by him.

CONFIDENTIAL

12

SECTION 9

The directors may provide for payment of dividends to the holders of bearer shares by coupons or talons and in such event the coupons or talons shall be in such form and payable at such time and in such place or places as the directors shall resolve. The Company shall be entitled to recognise the absolute right of the bearer of any coupon or talon issued as aforesaid to payment of the dividend to which it relates and delivery of the coupon or talon to the Company or its agents shall constitute in all respects a good and final discharge of the Company in respect of such dividend.

SECTION 10

If any bearer share certificate, coupon or talon be worn out or defaced, the directors may, upon the surrender thereof for cancellation, issue a new one in its stead, and if any bearer share certificate, coupon or talon be lost or destroyed, the directors may upon the loss or destruction being established to their satisfaction, and upon such indemnity being given to the Company as it shall by resolution of the directors determine, issue a new bearer share certificate in its stead, and in either case on payment of such sum as the Company may from time to time by resolution of the directors require. In case of loss or destruction the person to whom such new bearer share certificate, coupon or talon is issued shall also bear and pay to the Company all expenses incidental to the investigation by the Company of the evidence of such loss or destruction and to such indemnity.

## 5. SHARES - ISSUE, TRANSFER AND TRANSMISSION

SECTION 1

Subject to the provisions of the Act, the Memorandum, these Articles and any resolution of the members of the Company any unissued shares of the Company shall be at the disposal of the directors who may, without prejudice to any rights previously conferred on the holders of any existing shares or class or series of shares, offer, allot, grant options over or otherwise dispose of the shares to such persons, at such times and upon such terms and conditions as the directors may determine.

SECTION 2

The Company shall issue certificates in respect of its shares, whether registered shares or bearer shares. No notice of a trust, whether expressed, implied or constructive, shall be entered in the share register of the Company.

SECTION 3

The directors may refuse to register any transfer of shares in favour of more than four persons jointly.

13

## SECTION 4

The registration of transfers of shares may be suspended and the share register closed at such times and for such periods as the Company may from time to time by resolution of the directors determine provided always that such registration shall not be suspended and the share register closed for more than 60 days in any period of 12 months.

## SECTION 5

The executor or administrator of a deceased member, the guardian of an incompetent member or the trustee of a bankrupt member shall be the only person recognised by the Company as having any title to his shares but they shall not be entitled to exercise any rights as a member of the Company until they have proceeded as set forth in the Act and in Section 6 below.

## SECTION 6

Any person becoming entitled by operation of law or otherwise to a share or shares in consequence of the death, incompetence or bankruptcy of any member may be registered as a member upon such evidence being produced as may reasonably be required by the directors. An application by any such person to be registered as a member shall be deemed to be a transfer of shares of the deceased, incompetent or bankrupt member and the directors shall treat it as such.

## SECTION 7

The directors may make such rules and regulations as are in accordance with the Act, the Memorandum and these Articles and as they may deem expedient concerning the issuance and transfer of certificates representing shares of the Company and may appoint transfer agents or registrars, or both, and may require all share certificates to bear the signature of either or both of the foregoing. Nothing herein shall be construed to prohibit the Company from acting as its own transfer agent at any of its offices.

## 6. MEETINGS OF MEMBERS

## SECTION 1

The Company may hold once in every calendar year an annual meeting at such time and place as may be designated in the notice of meeting.

## SECTION 2

All meetings of members other than annual meetings shall be called special meetings. The directors may call special meetings and, on the requisition of members pursuant to the provisions of the Act, shall forthwith proceed to call a special meeting for a date not later than eight weeks after receipt of the requisition.

14

SECTION 3

Meetings of the members shall be held at such place either within or without Belize as may be fixed from time to time by the directors or if no such place has been fixed, such place as shall be stated in the notice of any such meeting.

SECTION 4

Written notice of the time, place and, as far as practicable, purposes of each meeting of the members shall be given by any director or by the Secretary and shall be served in the manner required by Article 15 Section 1 to each member entitled to vote at such meeting.

SECTION 5

Each meeting of the members shall be presided over by the Chairman of the board of directors (if any) or, in his absence, by such person as may be designated from time to time by the board of directors or, in the absence of such person or if there shall be no such designation, by a chairman to be chosen at the meeting. The Secretary shall act as secretary of each meeting of the members or, if he shall not be present, such person as may be designated by the board of directors shall act as such secretary or, in the absence of such person or if there shall be no such designation, a secretary shall be chosen at the meeting.

SECTION 6

Without prejudice to Section 17 below, at all meetings of the members two persons entitled to vote upon the business to be transacted, each being a member or a proxy for a member or a duly authorised representative of a corporation, shall be necessary and sufficient to constitute a quorum for the transaction of business, except as otherwise provided by the Act, by the Memorandum or by these Articles.

SECTION 7

No business shall be transacted at any meeting of the members unless a quorum is present.  If such quorum is not present within half an hour from the time appointed for the meeting, or if during a meeting such a quorum ceases to be present, the meeting shall stand adjourned from time to time until a quorum shall attend or to such time and place as the directors may determine.

SECTION 8

The chairman may, with the consent of a meeting at which a quorum is present (and shall if so directed by the meeting), adjourn the meeting from time to time and from place to place, but no business shall be transacted at an adjourned meeting other than business which might properly have been transacted at the meeting had the adjournment not taken place.  When a meeting is adjourned for fourteen days or more notice shall be given of the adjourned meeting in accordance with Section 4 above.  Otherwise it shall not be necessary to give such notice.

15

## SECTION 9

A director shall, notwithstanding that he is not a member, be entitled to attend and speak at any meeting of the members and at any separate meeting of the holders of any class of shares in the Company.

## SECTION 10

A resolution put to the vote of the meeting of the members shall be decided on a show of hands unless before, or on the declaration of the result of, the show of hands a poll is duly demanded. Subject to the provisions of the Act or the Memorandum, a poll may be demanded -

    (1)      by the chairman of the meeting; or

    (2)      by at least two members having the right to vote at the meeting; or

    (3)      by a member or members representing not less than 10 per cent. of the total voting rights of all the members having the right to vote at the meeting;

and a demand by a person as proxy for a member shall be the same as a demand by the member.

## SECTION 11

Unless a poll is duly demanded a declaration by the chairman that a resolution has been carried or carried unanimously, or by a particular majority, or lost, or not carried by a particular majority and an entry to that effect in the minutes of the meeting shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

## SECTION 12

The demand for a poll may, before the poll is taken, be withdrawn but only with the consent of the chairman and a demand so withdrawn shall not be taken to have invalidated the result of a show of hands declared before the demand was made.

## SECTION 13

A poll shall be taken as the chairman directs and he may appoint scrutineers (who need not be members) and fix a time and place for declaring the result of the poll. The result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

## SECTION 14

In the case of an equality of votes, whether on a show of hands or on a poll, the chairman shall be entitled to a casting vote in addition to any other vote he may have.

16

## SECTION 15

A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken either forthwith or at such time and place as the chairman directs not being more than thirty days after the poll is demanded. The demand for a poll shall not prevent the continuance of a meeting for the transaction of any business other than the question on which the poll was demanded. If a poll is demanded before the declaration of the result of a show of hands and the demand is duly withdrawn, the meeting shall continue as if the demand had not been made.

## SECTION 16

No notice need be given of a poll not taken forthwith if the time and place at which it is to be taken are announced at the meeting at which it is demanded. In any other case at least seven days' notice shall be given specifying the time and place at which the poll is to be taken.

## SECTION 17

If the Company shall have only one member then, provided that such member represents, in person or by proxy, a majority of the shares of the Company issued and outstanding, that member shall have full power to represent and act on behalf of the members of the Company and the provisions herein contained for meetings of the members shall not apply. A member as aforesaid shall record in writing by signing a note or memorandum all matters requiring a resolution of members of the Company and such act shall be deemed a resolution that has been carried unanimously by the members of the Company having the right to vote upon the matter in question. Such a note or memorandum shall be in lieu of minutes of a meeting and shall constitute sufficient evidence of such resolution for all purposes.

## 7. VOTING AND PROXIES

## SECTION 1

At each meeting of the members, if there shall be a quorum, a majority of the votes cast at such meeting by the holders of shares entitled to vote thereon, and present in person or by proxy, shall decide all matters brought before such meeting, except as otherwise provided by the Act, by the Memorandum or by these Articles.

## SECTION 2

Subject to any rights or restrictions attached to any class of shares and to any provisions of the Act regarding joint ownership of shares, at any meeting of the Company each member present in person shall be entitled to one vote on any question to be decided on a show of hands and each member present in person or by proxy shall be entitled on a poll to one vote for each share held by him. A member shall be deemed to be present if he participates by telephone or other electronic means in the manner required by the Act in which event he shall be deemed to have raised or failed to raise his hand on a show of hands and to have voted either for, against or abstained on a poll as communicated by the participant by telephone or other electronic means, as appropriate, at the time of the vote in question. Any failure so to communicate by the participant shall be deemed to be a failure to raise his hand on a show of hands and an abstention on a poll on the vote in question.

17

SECTION 3

No objection shall be raised to the qualification of any vote except at the meeting at which the vote objected to is tendered. Any objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

SECTION 4

The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney, or, if such appointer is a company, either under the hand of any duly appointed director or officer of such company or under its common seal. The instrument appointing a proxy shall be in any usual or common form or any other form which the directors shall from time to time approve or accept. No person shall be appointed a proxy who is not a member.

SECTION 5

The provisions of Section 4 above are in addition to and not in derogation of any other statutory or other provision enabling a company (wherever incorporated) which is a member of this Company to authorise a person to act as its representative at a meeting of the members of the Company.

SECTION 6

An instrument either appointing a proxy or evidencing an authorisation made in the manner referred to in Section 4 above shall be left with the Secretary not less than 24 hours, or such shorter time as may be stated in the form of proxy circulated with the notice of the meeting, before the holding of the meeting or adjourned meeting, as the case may be, at which the person named in such instrument proposes to vote.

## 8. DIRECTORS

SECTION 1

The first directors of the Company shall be elected by the subscribers to the Memorandum; and thereafter, new directors shall be elected by the members or by the existing directors for such term as the members or the directors, respectively, shall determine.

SECTION 2

The minimum number of directors shall be one and the maximum number shall be ten.

SECTION 3

Each director shall hold office for the term, if any, fixed by the resolution of the members or directors, as appropriate, or until his earlier death, resignation or removal.

CONFIDENTIAL

18

SECTION 4

Any director may be removed from office, with or without cause, by a resolution of the members or a resolution of the directors.

## 9. POWERS OF DIRECTORS

SECTION 1

The business and affairs of the Company shall be managed by a board of directors which shall consist of one or more persons who may be individuals or companies. The directors may pay all expenses incurred preliminary to and in connection with the formation, incorporation and registration of the Company and may exercise all such powers of the Company as are not by the Act or by the Memorandum or by these Articles required to be exercised by the members or any other person, subject to any delegation of such powers as may be authorised by these Articles and to such requirements as may be prescribed by a resolution of members; but no requirement made by a resolution of members shall prevail if it be inconsistent with the Act, the Memorandum or these Articles nor shall such requirement invalidate any prior act of the directors which would have been valid if such requirement had not been made.

SECTION 2

Any director which is a body corporate may appoint any person its duly authorised representative for the purpose of representing it at meetings of the board of directors or with respect to written consents of the directors.

SECTION 3

The continuing directors may act notwithstanding any vacancy in their body.

SECTION 4

All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments, and all receipts for monies paid to the Company, shall be signed, drawn, accepted, endorsed or otherwise executed, as the case may be, in such manner as shall from time to time be determined by resolution of the directors.

## 10. PROCEEDINGS OF DIRECTORS

SECTION 1

The directors of the Company or any committee thereof may meet at such times and in such manner and places within or outside Belize as the directors may determine to be necessary or desirable.

CONFIDENTIAL

19

SECTION 2

A director shall be given not less than 1 day's notice of meetings of directors, but a meeting of directors held without 1 day's notice having been given to all directors shall be valid if a majority of the directors entitled to vote at the meeting waive notice of the meeting; and for this purpose, the presence of a director at the meeting shall be deemed to constitute a waiver on his part.

SECTION 3

Without prejudice to Section 4 below, a meeting of directors is properly constituted for all purposes if at the commencement of the meeting there are present in person or by alternate not less than one half of the total number of directors, unless there are only two directors in which case the quorum shall be two.

SECTION 4

If the Company shall have only one director the provisions herein contained for meetings of the directors shall not apply but such sole director shall have full power to represent and act for the Company in all matters as are not by the Act or the Memorandum or these Articles required to be exercised by the members of the Company and in lieu of minutes of a meeting shall record in writing and sign a note or memorandum of all matters requiring a resolution of directors.  Such a note or memorandum shall constitute a resolution of the directors and shall constitute sufficient evidence of such resolution for all purposes.

SECTION 5

At every meeting of the board of directors the Chairman of the board of directors shall preside as chairman of the meeting.  If there is no Chairman of the board of directors or if the Chairman of the board of directors is not present at the meeting the vice-chairman of the board of directors shall preside.  If there is no vice-chairman of the board of directors or if the vice-chairman of the board of directors is not present at the meeting the directors present shall choose someone of their number to be chairman of the meeting.

SECTION 6

The meetings and proceedings of any committee of directors shall be governed mutatis mutandis by the provisions of these Articles regulating the proceedings of directors so far as the same are not superseded by any provisions in the resolution establishing the committee.

20

## 11. OFFICERS

SECTION 1

The Company may by resolution of the directors appoint officers of the Company at such times as shall be considered necessary or expedient. Such officers may consist of a Chairman of the board of directors, a vice-chairman of the board of directors, President and one or more vice-presidents, Secretary and Treasurer and such other officers as may from time to time be deemed desirable. Any number of offices may be held by the same person.

SECTION 2

The emoluments of all the officers shall be fixed by resolution of the directors. Subject to the Act, the Memorandum and these Articles, the officers shall perform such duties as shall be prescribed at the time of their appointment subject to any modification in such duties as may be prescribed thereafter by resolution of the directors or resolution of the members, but in the absence of any specific allocation of duties it shall be the responsibility of the Chairman of the board of directors to preside at meetings of directors and members, the vice-chairman to act in the absence of the Chairman, the President to manage the day to day affairs of the Company, the vice-presidents to act in order of seniority but otherwise to perform such duties as may be delegated to them by the President, the Secretary to maintain the share register, minute books and records (other than financial records) of the Company and to ensure compliance with all procedural requirements imposed on the Company by applicable law, and the Treasurer to be responsible for the financial affairs of the Company.

SECTION 3

The officers of the Company shall hold office until their successors are duly elected and qualified, but any officer elected or appointed by the directors may be removed at any time, with or without cause, by resolution of the directors. Any vacancy occurring in any office of the Company may be filled by resolution of the directors.

## 12. SEAL

SECTION 1

The directors shall provide for the safe custody of the Seal. The Seal when affixed to any written instrument shall be witnessed by a director or any other person so authorised from time to time by resolution of the directors. The directors may provide for a facsimile of the Seal and of the signature of any director or authorised person which may be reproduced by printing or other means on any instrument and it shall have the same force and validity as if the Seal had been affixed to such instrument and the same had been signed as hereinbefore described.

21

### SECTION 2

The Company may have for use in any territory, district or place elsewhere than in Belize an official seal (the "Overseas Seal"), which seal shall be a facsimile of its common seal. A deed or other document to which the Overseas Seal is duly affixed shall bind the Company as if it had been sealed with the common seal of the Company.

### SECTION 3

The Company may have for use for sealing securities issued by the Company and for sealing documents creating or evidencing securities so issued an official seal (the "Securities Seal") which is a facsimile of the common seal of the Company with the addition on its face of the word "Securities". Each certificate to which the Securities Seal shall be affixed need not bear any signature.

## 13. DIVIDENDS

### SECTION 1

The Company may by a resolution of the directors declare and pay dividends in money, shares, or other property but dividends shall only be declared and paid out of surplus. In the event that dividends are paid in specie the directors shall have responsibility for establishing and recording in the resolution of directors authorising the dividends, a fair and proper value for the assets to be so distributed.

### SECTION 2

The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the Company.

### SECTION 3

The directors may, before declaring any dividend, set aside out of the profits of the Company such sum as they think proper as a reserve fund, and may invest the sum so set apart as a reserve fund upon such securities as they may select.

### SECTION 4

Notice of any dividend that may have been declared shall be given to each member in the manner mentioned in Article 15 Section 1 and all dividends unclaimed for three years after having been declared may be forfeited by resolution of the directors for the benefit of the Company.

### SECTION 5

No dividend shall bear interest as against the Company.