Robert J.A. Zito
Mark R. Zancolli
Theodore Y. McDonough
Leonardo Trivigno
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax: (212) 732-3232
*Attorneys for Verdmont Capital, S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SECURITIES AND EXCHANGE
COMMISSION

              Plaintiff,

        v.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., and
VERDMONT CAPITAL, S.A.,

              Defendants.

------------------------------------------------------------x

Civ. No. 15 CV 894 (WHP)

## REPLY MEMORANDUM OF LAW OF DEFENDANT VERDMONT CAPITAL, S.A. IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. P. 12 (C) OR 56

7645640.6

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................... 1

POINT I - THE TRANSACTIONS WERE EXEMPT UNDER SECTION 4(a)(3) ............................. 3
    A.   Verdmont's Clients Were Not Underwriters ............................................................. 5

POINT II - THE TRANSACTIONS WERE EXEMPT UNDER SECTION 4(a)(4) ........................... 7

POINT III - THE MOTION ALSO MAY BE TREATED AS ONE FOR SUMMARY
    JUDGMENT.......................................................................................................... 8

CONCLUSION ...................................................................................................... 10

i

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................... 8

*Brojer v. George*,
   No. 11-CV-3156 (JS) (WDW), 2013 WL 1833246 (E.D.N.Y. May 1, 2013) ..................... 2, 5

*Brownmark Films, LLC v. Comedy Partners, et al.*,
   682 F.3d 687 (7th Cir. 2012) ......................................................................... 2

*Buttry v. Gen. Signal Corp.*,
   68 F.3d 1488 (2d Cir. 1995) .......................................................................... 2

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................... 8

*Compunnel Software Group v. Gupta*,
   No. 14-CV-4790 (SAS), 2015 WL 1224298 (S.D.N.Y. Mar. 17, 2015) ........................ 2

*D'amico v. City of New York*,
   132 F.3d 145 (2d Cir. 1998) .......................................................................... 9

*Finkel v. Stratton Corp.*,
   962 F.2d 169 (2d Cir. 1992) ........................................................................3-4

*Geiger v. S.E.C.*,
   363 F.3d 481 (D.C. Cir. 2004)........................................................................ 7

*Giordano v. Mkt. Am., Inc.*,
   599 F.3d 87 (2d Cir. 2010) ............................................................................ 2

*Griffin v. PaineWebber Inc.*,
   84 F. Supp. 2d 508 (S.D.N.Y. 2000) .............................................................. 4

*Lewis v. City of New York*,
   No. 10-CV-3266 (RJD) (LB), 2011 WL 3273939 (E.D.N.Y. July 29, 2011)................ 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..................................................................................... 3

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*,
   720 F. Supp. 2d 254 (S.D.N.Y. 2010) ............................................................ 5

ii

7645640.6

*Perma Research and Dev. Co. v. The Singer Co.,*
    410 F.2d 572 (2d Cir. 1969) ....................................................................................... 9

*S.E.C. v. Kern,*
    425 F.3d 143 (2d Cir. 2005) ................................................................................... 6-7

*Winter v. D. J. & M. Inv. & Const. Corp.,*
    185 F. Supp. 943 (S.D. Cal. 1960) ........................................................................... 5

**FEDERAL STATUTES**

15 U.S.C. § 77d(a)(1) ................................................................................................... 7

**RULES**

Fed. R. Civ. P. 12(c) ............................................................................................... 1, 8

Fed. R. Civ. P. 12(d) ........................................................................................... 1, 2, 8

Fed. R. Civ. P. 56 ................................................................................................ 1, 2, 8

Fed. R. Civ. P. 56(e)(3) ............................................................................................. 3

**OTHER AUTHORITIES**

MOORE'S FEDERAL PRACTICE 3d, § 56.41 ................................................................. 3

7645640.6

## PRELIMINARY STATEMENT

Defendant Verdmont Capital, S.A. ("Verdmont") respectfully submits this memorandum of law in further support of its motion to dismiss the Amended Complaint of plaintiff, Securities and Exchange Commission ("SEC"), and for granting Verdmont judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), or alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 12 (d) and 56, and in reply to the SEC's Memorandum of Law in Opposition to Defendant Verdmont's Motion for Judgment on the Pleadings ("SEC Memo").

The SEC Memo, while lengthy, is largely a hornbook of general securities law principles and policies. But an analysis focused on the salient facts as they relate to Verdmont, and how those facts trigger a violation under Section 5 of the Securities Act of 1933 (the "Securities Act"), is glaringly absent. To the extent the SEC does address the facts relating to Verdmont, it does so only in the most conclusory manner and without any evidentiary footing.

It now appears that the SEC has abandoned its "sham" registration theory – the case pleaded in the Amended Complaint – and instead tacks to a new argument: that no registration statement was "in effect" at the time Verdmont's clients sold their securities, implying that a registration statement is required to be filed each time public securities are bought and sold.

As repeatedly stressed on this motion, the transactions of Verdmont's clients were exempt from registration under the Dealer Exemption[1] within the Securities Act, and therefore, no additional registration statements were required to be filed. The SEC declared the initial registration statements effective and Verdmont's clients sold their securities more than forty days after the date the SEC declared each of the registration statements effective. The transactions were additionally exempt under the Broker Exemption within the Securities Act. Indeed, if there

---

[1] Defined terms herein refer to those terms defined in Verdmont's opening memorandum of law.

were no Dealer Exemption and Broker Exemption, public securities trading would come to a complete halt because no broker-dealer would effect a trade unless each and every seller could present its own individual registration statement.

Contrary to what the SEC claims, Verdmont's exemption defenses are suitable grounds for a motion for judgment on the pleadings as well as a motion to dismiss. *See, e.g., Lewis v. City of New York,* No. 10-CV-3266 (RJD) (LB), 2011 WL 3273939, at *3 (E.D.N.Y. July 29, 2011) (granting judgment on the pleadings and dismissing complaint based on proof of an affirmative defense); *See also Compunnel Software Group v. Gupta,* No. 14-CV-4790 (SAS), 2015 WL 1224298 (S.D.N.Y. Mar. 17, 2015) ("[J]udgment on the pleadings . . . . is appropriate when a defendant raises . . . an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."). *See also Brownmark Films, LLC v. Comedy Partners, et al.,* 682 F.3d 687, 690 (7th Cir. 2012) (granting motion to dismiss based on un-pleaded affirmative defense).

Verdmont's exemption defenses are also grounds for summary judgment, pursuant to Fed. R. Civ. P. 12 (d) and 56. *See Giordano v. Mkt. Am., Inc.,* 599 F.3d 87, 93 (2d Cir. 2010) ("The same standard [of review] applies whether summary judgment is granted on the merits or on an affirmative defense . . . ."); *Buttry v. Gen. Signal Corp.,* 68 F.3d 1488, 1492 (2d Cir. 1995) (granting summary judgment for defendant on the basis of an affirmative defense).

Verdmont has established by undisputed, prima facie proof that the transactions effected by Verdmont on behalf of its clients were exempt under the Dealer Exemption and the Broker Exemption. Therefore, the burden shifts to the SEC to establish that neither exemption is applicable. *See, e.g., Brojer v. George,* No. 11-CV-3156 (JS) (WDW), 2013 WL 1833246 (E.D.N.Y. May 1, 2013) (holding that defendant established by prima facie proof the

- 2 -

applicability of an affirmative defense to plaintiff's claims, and that plaintiff failed to carry her burden of showing that defense was not applicable, and consequently granting motion for judgment on the pleadings to defendant on certain of plaintiff's claims).   *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden…the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'") (emphasis in original). *See also* MOORE'S FEDERAL PRACTICE 3d, § 56.41 at p. 56-115 ("If the moving party has sustained its initial burden, the burden of producing substantial evidence to demonstrate the existence of a genuine dispute as to a material fact shifts to the opposing party") (citing Fed. R. Civ. P. 56 (e)(3)) (other citations omitted).

The SEC claims that the Dealer Exemption and the Broker Exemption are unavailable to Verdmont because its clients were "underwriters" under the Securities Act.   To be an underwriter, a seller must purchase its securities either from an "issuer" or a person "controlled" by an issuer.   However, the Amended Complaint is fatally flawed by failing to plead any evidentiary facts to this point.   Additionally, the SEC proffers no evidence showing this to be the case.   Therefore, Verdmont is entitled to judgment.


## POINT I

## <u>THE TRANSACTIONS WERE EXEMPT UNDER SECTION 4(a)(3)</u>

The pleadings alone prove the undisputed fact that the transactions effected by Verdmont on behalf of its clients were exempt under the Dealer Exemption (Section 4(a)(3)).

As demonstrated in Verdmont's opening memorandum of law, the Dealer Exemption exempts *all* "transactions by a dealer," except for those occurring within forty days after the security was offered to the public and two other circumstances that are not applicable here.   The

- 3 -

SEC does not, nor can it, dispute that, as a matter of law, the date a security is "offered to the public" is the effective date of the registration statement. *See Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992); *Griffin v. PaineWebber Inc.,* 84 F. Supp. 2d 508, 512 (S.D.N.Y. 2000) ("A security is bona fide offered to the public at the effective date of the registration statement").

To prove this exemption, Verdmont needs to rely on only two sets of facts: the dates on which the SEC declared the offerings effective and the dates on which Verdmont first effected a sale on behalf of its clients of securities in the Issuers. These facts are undisputed and undisputable:

| Security | Date of SEC Notice of Effectiveness of Form S-1 | Date of First Sale of the Security Effected by Verdmont on behalf of a Client[2] |
|---|---|---|
| Goff | 11/10/11 | 3/18/13 |
| Norstra | 7/12/12 | 4/1/13[3] |
| Xumanii | 3/14/11 | 5/1/13 |

Thus, the undisputed facts prove that in each instance, Verdmont's clients sold their securities in the Issuers well after the forty day period set forth in Section 4(a)(3)(A).[4] Therefore, Verdmont is entitled to judgment dismissing the Amended Complaint.

---

[2] Answer, ¶¶ 63, 80 and 96; Declaration of Glynn Fisher, dated June 9, 2015 (the "Fisher Declaration"), at ¶¶ 7-9 and Exs. E, K and Q.

[3] Footnote 3 on page 5 of the SEC Memo states, without citation to any evidentiary support, that "Verdmont sold. . . Norstra stock into the public markets beginning on March 5, 2013." The SEC is simply wrong. The first sale of Norstra stock effected by Verdmont on behalf of any of its clients took place on April 1, 2013. *See* Fisher Decl., ¶ 8 and Exhibit K, Spreadsheet of trades in Norstra stock by Verdmont on behalf of its clients. Even if Verdmont sold Norstra stock into the public markets beginning on March 5, 2013, as the SEC incorrectly states in the SEC Memo, that date would still be more than forty days after the SEC declared the registration statement effective and the stock came to rest with the public.

[4] Page 20 of the SEC Memo erroneously states: "Verdmont's sales were at the beginning of the public offerings" and "within the forty-day period excluded from the exemption as provided in Section 4(a)(3)(A)." Inexplicably, the SEC offers not a single factual citation for this obviously false assertion.

A.   **Verdmont's Clients Were Not Underwriters**

Verdmont has thus proved that its clients' transactions were exempt from registration under the Dealer Exemption.  In rebuttal, the SEC asserts that Verdmont is not entitled to the Dealer Exemption because its clients were "underwriters."  SEC Memo at pp. 18-20.  As will be seen, however, the SEC's assertions are without any factual or legal support.

In addition, the SEC erroneously claims that Verdmont carries the burden of proving the negative of its defense: that its clients were not underwriters.   Again, the SEC is wrong. Verdmont has established by undisputed, prima facie proof that Verdmont's clients' transactions were exempt under the Dealer Exemption. Therefore, the burden shifts to the SEC to prove that the Dealer Exemption is unavailable because Verdmont's clients were underwriters.  *See, e.g., Brojer v. George, supra,* 11-CV-3156, 2013 WL 1833246 (holding that plaintiff failed to carry her burden of showing that defense was not applicable, and consequently granting motion for judgment on the pleadings).

Section 2(a)(11) of the Securities Act defines an "underwriter" as one who, in the first instance, has purchased securities from an issuer:

> The term "underwriter" means any person who has *purchased from an issuer* with a view to, or offers or sells for an issuer in connection with, the distribution of any security.... As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

(Emphasis added). *See New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC,* 720 F. Supp. 2d 254, 263 (S.D.N.Y. 2010) ("[A]n underwriter is one who buys securities directly or indirectly *from the issuer* and resells them to the public . . . .") (citations and quotations omitted) (emphasis added); *Winter v. D. J. & M. Inv. & Const. Corp.,* 185 F. Supp. 943, 946-47 (S.D. Cal. 1960) (To be an underwriter a person "must have purchased *from an issuer,* or participated in a sale by the issuer with a view toward distribution, or have purchased

- 5 -

or participated in the purchase from a person in a control relationship with the issuer.")(emphasis added).

The SEC does not, and indeed cannot, allege that Verdmont's clients purchased their securities from the Issuers. Instead, the SEC alleges that Verdmont's clients acquired their stock from parties that were controlled by the Issuers, apparently relying on the last sentence of Section 2(a)(11): "the term 'issuer' shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer."   But the Amended Complaint does not plead any evidentiary facts demonstrating such and the SEC has failed to offer even a scintilla of evidence to support what is nothing more than its own ipse dixit conclusion.

Verdmont's clients (Lornex, Bartlett and Nautilus) purchased their stock from various individuals and entities.  Lornex purchased Goff stock from Messrs. Norris and Crowley and Norstra stock from Messrs. Garpenfeldt, Sanchez and Palmer.  Bartlett purchased Norstra stock from Tamarind Investments ("Tamarind").  Nautilus purchased Norstra stock from Mariposa Acosiados S.A. ("Mariposa").  Lornex purchased Medora (Xumanii) stock from Messrs. Lawrence, Nagheer, Reid, Rose and Brown.  Answer, ¶¶ 50, 69-71 and 86; Fisher Decl., ¶¶ 7-9 and Exs. B-D, H-J and N-P.

Thus, the SEC must plead evidentiary facts – and prove – that: (i) Goff controlled Messrs. Norris and Crowley, (ii) Norstra controlled Messrs. Garpenfeldt, Sanchez and Palmer, Tamarind Investments and Mariposa, and (iii) Medora (Xumanii) controlled Messrs. Lawrence, Magheer, Reid, Rose and Brown.

Quite remarkably, the Amended Complaint never mentions Messrs. Norris, Crowley, Lawrence, Nagheer, Reid, Rose and Brown.  Indeed, all the Amended Complaint has to say

- 6 -

about Tamarind and Mariposa is that they are "foreign" entities.  Amended Compl., ¶¶ 70 and 71.  And of course, the Amended Complaint fails to offer any facts showing the manner by which these sellers were allegedly "controlled" by the Issuers.  Stunningly, the SEC fails to offer a single piece of evidence showing that any of these sellers were controlled by an Issuer.

The Second Circuit defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person whether through the ownership of voting securities, by contract, or otherwise." *S.E.C. v. Kern,* 425 F.3d 143, 149 (2d Cir. 2005); *see also Geiger v. S.E.C.,* 363 F.3d 481, 487 (D.C. Cir. 2004) (finding that issuer controlled transaction where the sale would not have proceeded without issuer's permission, issuer dictated terms of the deal, and transaction primarily benefited issuer).

The Amended Complaint and SEC Memo glaringly omit any analysis that shows how the decision-making of the persons and entities from whom Verdmont's clients acquired their securities was controlled by the Issuers.  Therefore, Verdmont is entitled to judgment.

## POINT II

## THE TRANSACTIONS WERE EXEMPT UNDER SECTION 4(a)(4)

In Verdmont's opening memorandum of law, it was demonstrated that the Broker Exemption (Section 4(a)(4)) is applicable, which the SEC now concedes.[5]   Vermont has also demonstrated that its due diligence did not reveal that Messrs. Norris, Crowley, Lawrence,

---

[5] The Amended Complaint concedes that Verdmont was acting merely as a broker on behalf of its clients. *See, e.g.,* Zito Decl., Ex. C, Amended Compl., ¶¶ 1, 50, 63, 70-71, 80, 86, 96.  However, in the SEC Memo, the SEC contends that Verdmont's role extended beyond that of a broker, and the SEC cites transactions in Goff effected by Verdmont on behalf of Creekside Capital and Jacametra Inversiones S.A.  SEC Memo at 28-29.  Creekside Capital and Jacametra Inversiones S.A. are not defendants in this case.  Moreover, their sales of Goff stock were exempt from registration under Section 5 of the Securities Act pursuant to Section 4(a)(1), as they were not issuers, underwriters or dealers. *See* 15 U.S.C. § 77d(a)(1) (providing an exemption for "transactions by any person other than an issuer, underwriter, or dealer").

Nagheer, Reid, Rose and Brown and Tamarind and Mariposa were controlled by the Issuers, which, in turn, would have led Verdmont to believe that the transactions were not exempt.

In response, the SEC sets forth several so-called "red flags" concerning the stock offerings that it claims Verdmont should have discovered. But not one of these "red flags" relate to whether the persons from whom Verdmont's customers purchased securities were allegedly "controlled" by the Issuers – the sole basis for the SEC's assertion that the transactions were not exempt from registration. Instead, these "red flags" relate solely to the economic risk of investing in the Issuers. Putting aside the irrelevance of these "red flags," it bears noting again that Verdmont was effecting unsolicited trades. It did not provide investment advice. And inexplicably, the SEC continues to fail to explain what Verdmont should have done, or what public documents it should have inspected, that would have revealed to Verdmont that its customers had purchased securities from persons who were allegedly controlled by the Issuers. The SEC itself cannot explain how these sellers were so "controlled," as the Amended Complaint conspicuously omits these facts. Therefore, Verdmont is entitled to judgment.


## POINT III

### THE MOTION ALSO MAY BE TREATED AS
### ONE FOR SUMMARY JUDGMENT

While Verdmont has proved the applicable exemptions and should be granted judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), Verdmont's motion also may be treated as one for summary judgment pursuant Fed. R. Civ. P. 12(d) and 56.

Fed. R. Civ. P. 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

- 8 -

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.")

It is undisputed and undisputable that Verdmont's clients' transactions occurred more than forty days after the SEC declared each registration statement effective, and therefore, the transactions were exempt as a matter of law under the Dealer Exemption.  While the SEC claims that Verdmont's clients acquired their stock from persons controlled by the Issuers, it fails to offer a drop of evidence of this.  Indeed, as demonstrated above, the Amended Complaint even fails to mention these sellers, let alone explain how they were controlled by the Issuers.

Likewise, Verdmont has proved by undisputed facts that the transactions also were exempt by the Broker Exemption and that its due diligence did not reveal that the sellers of the securities from whom Verdmont's clients purchased were controlled by the Issuers, as alleged by the SEC. Therefore, the transactions were exempt as a matter of law under the Broker Exemption.  The SEC has failed to put forth even a scintilla of evidence that proves the contrary. Again, the SEC inexplicitly fails to explain what additional due diligence it expected Verdmont to perform and how such actions would have revealed the allegedly controlling relationship between the seller of the securities and the Issuers.

When opposing a motion for summary judgment, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (collecting authority).  *See also Perma Research and Dev. Co. v. The Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969) ("summary judgment cannot be defeated by the vague hope that something may turn up at trial").

- 9 -

The SEC proffers no evidence of a securities violation.  The SEC merely offers conclusory allegations, speculation, suspicion, innuendo and ipse dixit.  Therefore, Verdmont is entitled to judgment.

## CONCLUSION

For all the foregoing reasons, Verdmont respectfully requests that the Court grant Verdmont judgment dismissing the Amended Complaint.

Dated:  New York, New York
         June 30, 2015

                              Respectfully submitted,

                              **CARTER LEDYARD & MILBURN LLP**

                              By _____
                                 Robert J. A. Zito
                                 Mark R. Zancolli
                                 Theodore Y. McDonough
                                 Leonardo Trivigno
                              Two Wall Street
                              New York, New York 10005
                              Telephone: (212) 732-3200
                              Facsimile: (212) 732-3232
                              Email: zito@clm.com

                              *Attorneys for Defendant Verdmont Capital, S.A.*

- 10 -

7645640.6