UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

SECURITIES AND EXCHANGE COMMISSION,                  :
                                                     :
                                         Plaintiff,  :
                                                     :
                 v.                                  :  Case No. 15-cv-894
                                                     :  (WHP)(JLC)
CALEDONIAN BANK LTD.,                                :
CALEDONIAN SECURITIES LTD.,                          :
CLEAR WATER SECURITIES, INC.,                        :
LEGACY GLOBAL MARKETS S.A., and                      :
VERDMONT CAPITAL, S.A.                               :
                                                     :
                                        Defendants.  :
                                                     :
———————————————————————

## DECLARATION OF RICHARD E. SIMPSON IN SUPPORT THE SEC'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS CLEAR WATER SECURITIES, INC. AND LEGACY GLOBAL MARKETS S.A.[1]

RICHARD E. SIMPSON, an attorney, declares and states as follows:

1. I am a member in good standing of the bars of the States of Illinois and New York and

am employed as a litigation attorney in the Division of Enforcement of the Securities and

Exchange Commission at its Washington, D.C. headquarters. I serve as a litigation and trial

attorney for the SEC in the civil enforcement action Securities and Exchange Commission v.

Caledonian Bank Ltd., et al., Case No. 15-cv-894, in the United States District Court for the

Southern District of New York. I make this Declaration in support of the SEC's motion for

default judgment against Defendants Clear Water Securities, Inc. and Legacy Global Markets

---

[1] In moving for default judgment by way of a declaration, the SEC follows the
procedures provided for in Rule VII of the Court's Individual Practices, which provides that a
number of matters should be set forth by affidavit. This is the method of moving for default
judgment that the SEC employed in *SEC v. Craven*, Case No. 15-cv-1820 (JMF), ECF Nos. 34-
35, where that Court's Individual Practices provided for a similar procedure as that followed
here.

S.A. (collectively, the "Defendants") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Rule 55.2(b) of the Local Rules of the United States District Court for the Southern District of New York, and Rule VII of the Court's Individual Practices. Attached as Exhibit 1 to this Declaration is a true and correct copy of the SEC's proposed Final Judgment against Clear Water and Legacy Global. This Declaration is based on my personal knowledge, information and belief. Headings A through G below correspond to the information required by the Court in the default judgment procedure in Rule VII of the Court's Individual Practices.

## A. **The Nature Of The Claim.**

2. The nature of the SEC's claim, described in the Complaint and Amended Complaint, is that Clear Water and Legacy Global violated Section 5(a) and (c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e(a), (c), by making unregistered distributions of securities issued by two shell companies, Swingplane Ventures, Inc. and Goff Corporation (collectively, the "shell companies"), shortly after stock splits and major changes in business and management announced by the shell companies and simultaneously with aggressive stock promotions. The distribution schemes began with the pretend issuance of stock certificates to purported foreign shareholders who were merely nominees because the certificates remained in the control of the issuers or their affiliates. In general, stock certificates issued without registration must carry restrictive legends, which prevent the sellers and subsequent purchasers from selling the stock unless a registration statement is filed as to such sales. By filing registration statements for purported public offerings, Swingplane and Goff were able to request that the transfer agent issue new stock certificates without restrictive legends.[2] Because these

---

[2] Restrictive legends are a shorthand method of readily identifying securities subject to trading restrictions. But irrespective of the presence or absence of restrictive legends, every offer

actions were orchestrated by the issuers or by persons who controlled the issuers, subsequent purchasers – in this case, Clear Water and Legacy Global – purchased the securities from the issuers or affiliates of the issuers, and their unregistered sales into the public markets violated Section 5.

**B. The Court Has Subject Matter Jurisdiction Over The Action.**

3. The Court has subject matter jurisdiction over this action pursuant to Section 20(b) and (c) of the Securities Act.  15 U.S.C. § 77t(b) & (c).  A United States District Court has subject matter jurisdiction whenever it appears to the SEC that a person has engaged in any act or practice that constitutes a violation of the provisions of the Securities Act.  Clear Water and Legacy Global made use of the means and instruments of interstate commerce in connection with their acts, transactions, practices and courses of business which, according to the allegations in the Complaint and Amended Complaint, violated Section 5 of the Securities Act.  Subject matter jurisdiction attaches because the Defendants sold Swingplane and Goff securities in interstate commerce.

**C. The Court Has Personal Jurisdiction Over The Defendants.**

4. The Court has personal jurisdiction over the Defendants pursuant to Section 22(a) and (c) of the Securities Act.  15 U.S.C. § 77v(a) & (c).  Clear Water and Legacy Global transacted business in the United States, and offered and sold securities in the United States, by virtue of their sales of Swingplane and Goff securities through their introducing broker-dealer, Scottsdale Capital Advisors, located in Scottsdale, Arizona, and through the clearing broker-dealer, Alpine Securities, Inc., located in Salt Lake City, Utah.  The Defendants engaged in conduct within the United States constituting a significant step in furtherance of their violations, and the Defendants

---

or sale of securities in interstate commerce must be pursuant to an effective registration statement or subject to an exemption.  Otherwise, the offer or sale is illegal.

engaged in conduct outside the United States that had a foreseeable substantial effect within the United States.

**D.   The Defendants Are Not Infants Or Incompetents.**

5.   To my knowledge, Clear Water, Legacy Global and their principals are not infants, incompetents, or members of the military service of the United States.

**E.   Certificate Of Default Stating That The Defendants Failed To Answer.**

6.   On February 6, 2015, the Court granted the SEC's motion pursuant to Rule 4(f)(3) for leave to serve summonses and the Complaint on Clear Water and Legacy Global by alternative means.  (ECF No. 7)  The SEC was authorized to serve the Defendants "by hard-copy delivered by overnight express to Scottsdale Capital Advisors, 7170 East McDonald Road, Suite 6, Scottsdale, Arizona 85253, with directions that Scottsdale forward the served papers to [the Defendants] at the same address that Scottsdale uses or used to send account statements to [the Defendants]."  (*Id.*)  Pursuant to the Court's Order, the SEC served the Defendants on February 10, 2015 through Scottsdale Capital Advisors.  The SEC filed and served a Certificate of Service confirming that service had been effected.  (ECF No. 24)  The SEC filed an Amended Complaint on June 10, 2015 and served it on the Defendants at their last known address of Caye Bank Building, Coconut Drive, Second Floor, San Pedro Ambergris Caye, Belize.  (6/10/15 Amended Complaint, ECF No. 110, at 39)

7.   With service of the Complaint effected on February 10, 2015, Clear Water and Legacy Global had until March 3, 2015 to file and serve an answer.  Fed. R. Civ. P. 12(a)(1)(A)(i).  With service of the Amended Complaint completed on June 10, 2015, the Defendants had until June 24, 2015 to file and serve an answer.  Fed. R. Civ. P. 15(a)(3).  The docket sheet demonstrates that the Defendants did not file an answer at either of those times.  The Clerk of the Court

entered the Defendants' default on July 9, 2015. (Certificate of Default, ECF No. 125) A true and correct copy of the Certificate of Default is attached as Exhibit 2.

**F. Attorneys' Fees Sought.**

    8. No attorneys' fees are being sought.

**G. All Appropriate Substantiating Documentation.**

    9. All appropriate substantiating documents are attached as Exhibits to this Declaration.

**H. Legal Basis For Default Judgment.**

    10. Rule 55(b) authorizes a United States District Court to enter a default judgment against defendants that fail to file timely answers or other responsive pleadings. Fed. R. Civ. P. 55(b)(2). *Accord House of Diamonds, Inc. v. Borgioni LLC*, Case No. 08-cv-6760 (RJS) (RLE), 2009 WL 2633144, at *6 (S.D.N.Y. Aug. 26, 2009). The elements to be considered for a default judgment are: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *House of Diamonds*, 2009 WL 2633144 at *6. It is not necessary for the court to hold a hearing on a motion for default judgment as long as there is a basis for the monetary relief sought. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *SEC v. Tavella*, 77 F. Supp. 3d 353, 358 (S.D.N.Y. 2015); *Guallpa v. NY Pro Signs Inc.*, Case No. 11-cv-3133 (LGS), 2014 WL 2200393, at *1 (S.D.N.Y. May 27, 2014).

    11. The elements for a default judgment are established here. Clear Water and Legacy Global did not answer the Complaint or Amended Complaint. Their continued failure to answer is willful. There is no evidence that they have a defense. Withholding default judgment would be prejudicial to the SEC because there are no additional steps that this agency can take to secure

relief against Clear Water and Legacy Global.  Default judgment is warranted. *House of Diamonds*, 2009 WL 2633144 at \*6.

## I. Facts Alleged In The Complaint And Amended Complaint.

12.  There is a sufficient factual basis for entering default judgment against Clear Water and Legacy Global.  Because of the Defendants' default, they "are deemed to concede the complaint's well-pleaded allegations of liability, but not of the amount of damages." *Tavella*, 77 F. Supp. 3d at 358. *Accord Edidin v. Uptown Gallery, Inc.*, Case No. 09-cv-7829 (DLC), 2010 WL 1252666, at \*1 (S.D.N.Y. Mar. 31, 2010); *Trinity Biotech, Inc. v. Reidy*, 665 F. Supp. 2d 377, 380 (S.D.N.Y. 2009).

13.  Swingplane and Goff were development stage, start-up companies with little or no assets and no operations or revenue.  (Cmplt., ¶¶ 15, 17, 41; Am. Cmplt., ¶¶ 18, 20, 45)  The shell companies filed Form S-1 registration statements for purported offerings that generated little or no capital for them.  (Cmplt., ¶¶ 15, 42; Am. Cmplt., ¶¶ 18, 46)  The registration statements acknowledged that the shell companies' management did not have the experience necessary for their chosen lines of business.  (Cmplt., ¶¶ 16, 43; Am. Cmplt., ¶¶ 19, 47)  After the registration statements became effective, the shell companies issued stock certificates in the names of the purported shareholders.  (Cmplt., ¶¶ 19, 45; Am. Cmplt., ¶¶ 22, 49)  A Canadian entity known as Celtic Consultants LLC and a Canadian national by the name of Philip Thomas Kueber mailed certain of the stock certificates back to the transfer agent with instructions to transfer the stock to Clear Water, Legacy Global and others.  (Cmplt., ¶¶ 26, 46-47; Am. Cmplt., ¶¶ 29, 50-51)  The stock powers sent by Celtic Consultants and Kueber contained irregularities. (Cmplt., ¶¶ 27-29, 46, 49, 51; Am Cmplt., ¶¶ 30-32, 50, 53, 55)

14.  Swingplane and Goff effected forward stock splits, which multiplied the number of shares available for sale.  (Cmplt., ¶¶ 25, 50; Am. Cmplt., ¶¶ 28, 54)  The shell companies announced changes of control.  (Cmplt., ¶¶ 24, 52; Am. Cmplt., ¶¶ 27, 57)  They announced new businesses:  instead of planning to make and sell golf apparel, Swingplane purportedly would explore copper mining in Chile; and instead of planning to sell web-based job placement services, Goff would explore gold and diamond mining in Colombia.  (Cmplt., ¶¶ 34, 53; Am. Cmplt., ¶¶ 38, 58)  The shell companies issued highly optimistic press releases creating the public impression that they were immediately and actively involved in their new mining exploration businesses.  (Cmplt., ¶¶ 35, 54; Am. Cmplt., ¶¶ 39, 59)  The press releases were bolstered by even more optimistic newsletters issued by stock-touting websites.  (Cmplt., ¶¶ 36, 55; Am. Cmplt., ¶¶ 40, 60)

15.  Swingplane and Goff securities began public trading and quickly achieved high prices and large volumes.[3]  (Cmplt., ¶¶ 38, 57; Am. Cmplt., ¶¶ 42, 62)  Clear Water and Legacy Global began selling the securities.  (Cmplt., ¶¶ 39, 58; Am. Cmplt., ¶¶ 43, 63)  After the cessation of the stock promotions and the selling, the price of Swingplane fell to $0.04 per share, and the price of Goff fell to $0.01 per share.  (Cmplt., ¶¶ 38, 57; Am. Cmplt., ¶¶ 42, 62)

16.  The facts and circumstances support the inference that Swingplane, Goff and their affiliates retained control of the securities and that the purported shareholders were nothing more than nominees.  The transfer agent mailed the stock certificates to the shell companies instead of

---

[3]  When the Swingplane stock promotion began on January 23, 2013, the stock price spiked to close at $0.29 per share on a volume of 88,414,000 shares.  (Cmplt., ¶ 38; Am. Cmplt., ¶ 42)  On February 20, 2013, Swingplane closed at a high of $0.90 per share on a volume of 27,802,300 shares.  (Cmplt., ¶ 38; Am. Cmplt., ¶ 42)  When the Goff stock promotion began on March 18, 2015, the stock price spiked to close at $0.28 per share on a volume of 263,914,096 shares.  (Cmplt., ¶ 57; Am. Cmplt., ¶ 62)  On April 5, 2015, Goff stock closed at a high of $0.58 per share on a volume of 22,003,500 shares.  (Cmplt., ¶ 57; Am. Cmplt., ¶ 62)

the shareholders. (Cmplt., ¶¶ 20-21, 23, 45; Am. Cmplt., ¶¶ 23-24, 26, 49)  The shareholders were grouped in pockets concentrated in three foreign countries – Serbia, Mexico and Ireland – making it difficult for the SEC to contact them or call them as witnesses at trial. (Cmplt., ¶¶ 19, 41; Am. Cmplt., ¶¶ 22, 45)  In the case of Goff, the shareholders were all business associates, friends and relatives of the company's two purported officers. (Cmplt., ¶ 41; Am. Cmplt., ¶ 45)  All of the Goff shareholders purportedly decided, all at the same time, to sell their stock instead of holding onto it for investment purposes.[4]  (Cmplt., ¶ 42; Am. Cmplt., ¶ 46)

17.  After the Swingplane and Goff registration statements became effective, none of the shareholders decided to sell their stock into the public markets, even though their stock certificates did not carry restrictive legends.  Instead, the stock certificates found their way into the hands of Celtic Consultants and Kueber, who sent the certificates in substantial batches to the transfer agent. (Cmplt., ¶¶ 26, 46-47, 51; Am. Cmplt., ¶¶ 29, 50-51, 55)  The stock powers accompanying the certificates contained irregularities. (Cmplt., ¶¶ 26-27, 29 46, 49, 51; Am. Cmplt., ¶¶ 29-30, 32, 50, 53, 55)  For example, it appears that Kueber forged the signature and medallion guarantee stamp of Bank of America on stock powers accompanying Goff stock certificates. (Cmplt., ¶ 49; Am. Cmplt., ¶ 53)  A stock power masquerading as one originating from one of the purported Goff shareholders in fact originated from Kueber. (Cmplt., ¶ 51; Am. Cmplt., ¶ 55)

**J.  The Defendants' Ill-Gotten Gains And Civil Penalties.**

18.  In their sales of Swingplane and Goff, Clear Water and Legacy Global distributed a total of 128,440,000 shares into the public markets and garnered total proceeds of $23,197,760 –

---

[4]  The Goff secondary "resale" offering – in which all of the Goff shareholders offered to sell all of their shares – was launched with the filing of a registration statement on August 26, 2011. (Am. Cmplt., ¶ 45)  This was less than four months after the completion of the purported Regulation S offering to the shareholders. (Am. Cmplt., ¶ 46)

at the expense of the investors who bought these worthless securities. Attached as Exhibits 3 and 4 are the Defendants' account statements for their accounts at introducing broker-dealer Scottsdale Capital Advisors, Inc. The account statements establish the amounts of ill-gotten gains obtained by the Defendants. Clear Water sold a total of 68,040,000 shares of Swingplane and Goff stock for total proceeds of $11,441,552. Legacy Global sold a net of 60,400,000 shares of Swingplane and Goff stock for total proceeds of $11,756,208.

19. There were no registration statements in effect for Clear Water's and Legacy Global's sales of Swingplane and Goff securities. (Cmplt., ¶¶ 40, 59; Am. Cmplt., ¶¶ 44, 64) The Defendants therefore violated Section 5 of the Securities Act. *Tavella*, 77 F. Supp. 3d at 358; *SEC v. Cavanagh*, 445 F.3d 105, 111 n.13 (2d Cir. 2006); *European & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 n.4 (2d Cir. 1998).

20. The SEC seeks maximum first-tier penalties against Clear Water and Legacy Global. If each unregistered sale of securities is considered a separate violation of Section 5, Clear Water made 64 separate sales of the shell companies' securities into the public markets, and Legacy Global made a net of 30 sales. (Exhibits 3 and 4) The fact that these sales were not registered meant that investors had: no information about the offerings, no information about the shell companies' likely business prospects, and no audited financial statements – information required to be contained in registration statements and given to investors in the form of a prospectus.

21. Clear Water and Legacy Global sold their Swingplane and Goff securities through their brokerage accounts at introducing broker-dealer Scottsdale Capital Advisors. From February 1, 2013 through June 25, 2014, Clear Water wired $12,272,509 out of its account at Scottsdale Capital Advisors, and Legacy Global wired $15,050,000. (Exhibit 3 at 9-12; Exhibit

4 at 7, 9-12, 14)  Of the $27,322,509 wired from their accounts, 84 percent ($23,197,760)
originated from sales of Swingplane and Goff securities.

22.  Legacy Global is under indictment, in a criminal case involving pump-and-dumps in
the United States District Court for the Eastern District of New York, for conspiracy to commit
securities fraud and conspiracy to commit money laundering.  *United States v. Bandfield, et al.*,
Case No. 1:14-cr-476-ILG (E.D.N.Y.).  According to the superseding indictment, Legacy Global
fraudulently concealed the true beneficial ownership interests of its customers in certain publicly
traded shell companies being used for illegal pump-and-dumps in the United States securities
markets.  Similar to this action, Legacy Global has not entered a plea or otherwise appeared in
the *Bandfield* case.  In the same case, Kueber pled guilty on September 24, 2015 to conspiracy to
commit securities fraud and conspiracy to commit money laundering in the pump-and-dumps of
Cynk Technology Corporation, Cannabis Rx, Inc. and Vision Plasma Systems, Inc.  On
September 12, 2015, I sent an email to Kueber's attorneys in *Bandfield* informing them of the
instant action, attaching the Amended Complaint and the Clerk's Certificate of Default, and
inquiring whether Kueber, as the CEO of Clear Water, intended to move to vacate the default
and answer the Amended Complaint.  In response, one of Kueber's attorneys sent an email to me
stating: "[Y]our earlier letter is not ignored.  I will be in touch with you this week [*i.e.*, the week
of September 21, 2015]."  I did not receive a subsequent communication from Kueber's attorney.

**K.  The Proposed Relief Sought  By The SEC And The Basis For Each Element Of Relief.**

23.  The SEC seeks the following relief in its proposed default judgment against Clear
Water and Legacy Global:  (1) permanent injunctions against future violations of the securities
laws; (2) penny stock bars; (3) disgorgement of ill-gotten gains plus prejudgment interest on that
amount; and (4) civil penalties.

## L.  **Permanent Injunctions.**

24.   Injunctive relief permanently enjoining Clear Water and Legacy Global from future violations of Section 5 of the Securities Act is appropriate.  Section 20 of the Securities Act authorizes district courts to enter permanent injunctions:

> Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices that constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, the Commission may, in its discretion, bring an action in any district court of the United States . . . to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond . . . .

15 U.S.C. § 77t(b).  *Accord Tavella*, 77 F. Supp. 3d at 359.  In determining whether injunctions are appropriate, "[t]he critical question . . . is whether there is a reasonable likelihood that the wrong will be repeated."  *SEC v. Pentagon Capital Management Plc*, 844 F. Supp. 2d 377, 424 (S.D.N.Y. 2012) (quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972)), *aff'd in part and vacated in part*, 725 F.3d 379 (2013).  Reasonable likelihood depends on five elements:

> (1) the fact that the defendant has been found liable for illegal conduct; (2) the degree of scienter; (3) whether the violations were isolated or repeated; (4) whether defendant has accepted blame for his conduct; and (5) whether, due to the defendant's professional occupation, he might be in a position where future violations could be anticipated.

*SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998).  *Accord Pentagon Capital Management Plc*, 844 F. Supp. 2d at 424 (same); *SEC v. Blackout Media Corp.*, Case No. 09-cv-5454 (GBD) (DF), 2012 WL 4051937, at *5 (S.D.N.Y. May 15, 2012) (same).

25.   The Defendants' conduct satisfies the elements for permanent injunctions.  Clear Water and Legacy Global acted with deliberate or reckless disregard of the registration requirement and committed multiple, systematic and egregious breaches of that requirement.

They have not acknowledged the wrongfulness of their misconduct or given assurance that they will not engage in future unregistered distributions.  Having failed to appear, they have not taken responsibility for their actions.  There is a reasonable likelihood that they will repeat their misconduct.  *See Blackout Media Corp.*, 4051937 at *5 ("[t]o date, [the defendant] has failed to appear in this action, failed to recognize his wrongdoing, and failed to provide this Court with any assurances that he will not engage in further violations of the federal securities law").

26.  The registration requirement is critical to the United States securities markets.  It promotes full disclosure of material information and protects public investors from false and unsupported representations and material omissions.  Individuals and institutions have the right to expect that the information broadcast into the markets about publicly traded companies is timely, truthful and supported by audited financial statements, not launched by unaudited Forms 8-K, press releases and stock promotions making outlandish claims.  Clear Water and Legacy Global are especially qualified for permanent injunctions:  they held themselves out as investment professionals while making multiple, sophisticated and illegal distributions of securities without registration.  *See SEC v. Contorinis*, 743 F.3d 296, 308 n.6 (2d Cir. 2014) (investment professionals are held to a higher standard than relatively naïve offenders).

27.  For these reasons, permanent injunctions enjoining Clear Water and Legacy Global from future violations of Section 5 of the Securities Act are appropriate.

**M.  Penny Stock Bars.**

28.  The Court should enter penny stock bars against Clear Water and Legacy Global pursuant to Section 20(g)(1) of the Securities Act, 15 U.S.C. § 77t(g)(1), which authorizes a United States District Court to impose a bar on any person or entity that violated the securities laws while participating in an offering of penny stock.

29.   Securities issued by Swingplane and Goff qualify as penny stocks because they do not meet the exceptions to the definition of penny stock under Section 3(a)(51) of the Securities Exchange Act of 1934 and Rule 3a51-1 thereunder.  15 U.S.C. § 78c(a)(51); 17 C.F.R. § 240.3a51-1.  In particular, penny stocks include any equity security with a price of less than $5.00 or whose issuer, among other things:  (a) has stockholders' equity of less than $5 million; or (b) has market value of securities of less than $50 million.  17 C.F.R. § 240.3a51-1.  *Accord SEC v. Becker*, Case No. 09-cv-5707 (SAS), 2010 WL 2710613, at *1 (S.D.N.Y. July 8, 2010). Unquestionably, Swingplane and Goff were penny stocks.

30.   The phrase "participating in an offering of penny stock" is defined by Section 20:

> For the purposes of this subsection, the term "person participating in an offering of penny stock" includes any person engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock.

15 U.S.C. § 77t(g)(2).

31.   As sellers of millions of shares for millions of dollars, Clear Water and Legacy Global engaged in penny stock offerings of Swingplane and Goff securities.  They sold the securities to public investors in the United States.  They should be prevented from preying further on the investing public.  They pose a clear and present danger to investors in the penny stock markets.  *SEC v. Becker*, 2010 WL 2710613 at *2 ("a permanent penny stock bar is appropriate").

32.   Accordingly, a penny stock bar against Clear Water and Legacy Global is appropriate.

**N.  Disgorgement And Prejudgment Interest.**

33.   The Complaint and Amended Complaint seek disgorgement of Clear Water's and Legacy Global's ill-gotten gains plus prejudgment interest.  "Once the district court has found

federal securities laws violations, it has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013) (quoting *First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996)). *Accord SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997) ("[t]he crafting of a remedy for violations of the [securities laws] lie within the district court's broad equitable discretion"); *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995) ("[i]n the exercise of its equity powers, a district court may order the disgorgement of profits").

34.   "The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *Contorinis*, 743 F.3d at 301 (quoting *First Jersey Securities, Inc.*, 101 F.3d at 1474-75). "The amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation." *Razmilovic*, 783 F.3d at 31 (quoting *First Jersey Securities, Inc.*, 101 F.3d at 1475). *Accord SEC v. Credit Bancorp, Ltd.*, Case No. 99-cv-11395, 2011 WL 666158, at *2 (S.D.N.Y. Feb. 14, 2011), *aff'd sub nom. SEC v. Blech*, 501 Fed. Appx. 74 (Nov. 7, 2012). Once the SEC presents a reasonable approximation of the amount of ill-gotten gains, the burden of proof shifts to the defendants to demonstrate that they received less than the full amount. *Razmilovic*, 783 F.3d at 31; *SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 563 (S.D.N.Y. 2009), *aff'd*, 438 Fed. Appx. 23 (Sept. 16, 2011). The defendants bear the risk of uncertainty: "Exactitude is not a requirement; [s]o long as the measurement of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir. 1998). *Accord Contorinis*, 743 F.3d at 306 ("the wrongdoer should bear the risk of any uncertainty affecting the amount of the remedy"); SEC v. Lorin, 76 F.3d 458, 461 (2d

14

Cir. 1996) (the "risk of uncertainty . . . should fall on the wrongdoer whose illegal conduct created that uncertainty").

35.   The evidence demonstrating the amount of ill-gotten gains obtained by Clear Water and Legacy Global is in Exhibits 3 and 4 attached to this Declaration.  The Exhibits consist of the account statements for the Defendants' accounts at introducing broker-dealer Scottsdale Capital Advisors.  According to the Exhibits, Clear Water sold a total of 68,040,000 shares of Swingplane and Goff stock from its account at Scottsdale Capital Advisors for total proceeds of $11,441,552.  Legacy Global sold a total of 60,400,000 shares of Swingplane and Goff stock for total proceeds of $11,756,208.  Using the Defendants' account statements as the evidentiary source, the calculations that I made in arriving at the disgorgement amounts are in the table below:

| Clear Water Proceeds | | | | | |
|---|---|---|---|---|---|
| **Date** | **Activity** | **Quantity** | **Description** | **Price** | **Proceeds** |
| 1/23/13 | Sell | 100,000 | Swingplane | $0.2630 | $25,020 |
| 1/23/13 | Sell | 100,000 | Swingplane | $0.2810 | $26,729 |
| 1/24/13 | Sell | 200,000 | Swingplane | $0.2640 | $50,315 |
| 1/28/13 | Sell | 100,000 | Swingplane | $0.3050 | $29,064 |
| 2/1/13 | Sell | 100,000 | Swingplane | $0.3920 | $37,298 |
| 2/13/13 | Sell | 1,400,000 | Swingplane | $0.6080 | $811,748 |
| 3/4/13 | Sell | 1,700,000 | Swingplane | $0.2590 | $427,723 |
| 3/6/13 | Sell | 50,000 | Swingplane | $0.2600 | $12,606 |
| 3/6/13 | Sell | 50,000 | Swingplane | $0.2660 | $12,899 |
| 3/6/13 | Sell | 60,000 | Swingplane | $0.2470 | $14,385 |
| 3/6/13 | Sell | 60,000 | Swingplane | $0.2500 | $14,578 |
| 3/6/13 | Sell | 58,000 | Swingplane | $0.2660 | $14,970 |
| 3/6/13 | Sell | 80,000 | Swingplane | $0.2290 | $17,797 |
| 3/6/13 | Sell | 2,000,000 | Swingplane | $0.2220 | $431,902 |
| 3/6/13 | Sell | 2,000,000 | Swingplane | $0.2230 | $433,813 |
| 3/6/13 | Sell | 1,800,000 | Swingplane | $0.2560 | $448,692 |
| 3/6/13 | Sell | 2,000,000 | Swingplane | $0.2770 | $538,701 |
| 3/7/13 | Sell | 50,000 | Swingplane | $0.1680 | $8,163 |
| 3/7/13 | Sell | 50,000 | Swingplane | $0.1700 | $8,217 |
| 3/7/13 | Sell | 50,000 | Swingplane | $0.1760 | $8,558 |
| 3/7/13 | Sell | 50,000 | Swingplane | $0.1770 | $8,597 |
| 3/7/13 | Sell | 50,000 | Swingplane | $0.1800 | $8,751 |

| 3/7/13 | Sell | 50,000 | Swingplane | $0.1910 | $9,265 |
|---|---|---|---|---|---|
| 3/7/13 | Sell | 145,000 | Swingplane | $0.1680 | $23,561 |
| 3/7/13 | Sell | 275,000 | Swingplane | $0.1680 | $44,726 |
| 3/7/13 | Sell | 275,000 | Swingplane | $0.1680 | $44,726 |
| 3/7/13 | Sell | 350,000 | Swingplane | $0.1680 | $56,944 |
| 3/7/13 | Sell | 350,000 | Swingplane | $0.1680 | $57,019 |
| 3/7/13 | Sell | 405,000 | Swingplane | $0.1680 | $65,911 |
| 3/7/13 | Sell | 425,000 | Swingplane | $0.1680 | $69,211 |
| 3/7/13 | Sell | 500,000 | Swingplane | $0.1670 | $81,334 |
| 3/7/13 | Sell | 500,000 | Swingplane | $0.1680 | $81,763 |
| 3/7/13 | Sell | 600,000 | Swingplane | $0.1680 | $98,113 |
| 3/7/13 | Sell | 625,000 | Swingplane | $0.1670 | $101,648 |
| 3/7/13 | Sell | 1,700,000 | Swingplane | $0.1770 | $293,005 |
| 3/7/13 | Sell | 2,000,000 | Swingplane | $0.1870 | $363,790 |
| 3/8/13 | Sell | 1,000,000 | Swingplane | $0.0990 | $95,782 |
| 3/8/13 | Sell | 1,000,000 | Swingplane | $0.1220 | $118,499 |
| 3/8/13 | Sell | 3,500,000 | Swingplane | $0.0990 | $334,331 |
| 3/8/13 | Sell | 6,000,000 | Swingplane | $0.1090 | $631,723 |
| 3/8/13 | Sell | 8,000,000 | Swingplane | $0.1180 | $917,893 |
| 3/11/13 | Sell | 100,000 | Swingplane | $0.1090 | $10,555 |
| 3/11/13 | Sell | 100,000 | Swingplane | $0.1110 | $10,755 |
| 3/11/13 | Sell | 150,000 | Swingplane | $0.1090 | $15,767 |
| 3/11/13 | Sell | 150,000 | Swingplane | $0.1090 | $15,878 |
| 3/11/13 | Sell | 150,000 | Swingplane | $0.1110 | $16,052 |
| 3/11/13 | Sell | 182,000 | Swingplane | $0.1040 | $18,236 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1040 | $25,081 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1040 | $25,127 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1040 | $25,132 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1050 | $25,446 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1070 | $25,931 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1070 | $25,983 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1080 | $26,219 |
| 3/11/13 | Sell | 250,000 | Swingplane | $0.1110 | $26,831 |
| 3/11/13 | Sell | 400,000 | Swingplane | $0.1090 | $42,103 |
| 3/18/13 | Sell | 8,000,000 | Goff | $0.2230 | $1,738,356 |
| 3/18/13 | Sell | 10,000,000 | Goff | $0.2180 | $2,116,505 |
| 4/2/13 | Sell | 100,000 | Goff | $0.5080 | $49,455 |
| 4/10/13 | Sell | 100,000 | Goff | $0.3210 | $31,277 |
| 4/10/13 | Sell | 100,000 | Goff | $0.2250 | $21,900 |
| 4/29/13 | Sell | 4,000,000 | Goff | $0.0410 | $159,260 |
| 5/1/13 | Sell | 1,000,000 | Goff | $0.0420 | $40,784 |
| 5/1/13 | Sell | 1,700,000 | Goff | $0.0420 | $69,149 |
| Totals | | 68,040,000 | | | $11,441,552 |

**Legacy Global Proceeds**

| Date | Activity | Quantity | Description | Price | Proceeds |
|---|---|---|---|---|---|
| 1/22/13 | Sell | 20,000 | Swingplane | $0.3050 | $5,912 |
| 1/22/13 | Sell | 1,500,000 | Swingplane | $0.1710 | $249,242 |
| 1/22/13 | Sell | 2,000,000 | Swingplane | $0.1470 | $286,182 |
| 1/23/13 | Sell | 3,000,000 | Swingplane | $0.1820 | $531,377 |
| 1/23/13 | Sell | 5,000,000 | Swingplane | $0.1840 | $896,286 |
| 2/12/13 | Sell | 100,000 | Swingplane | $0.5910 | $57,525 |
| 2/13/13 | Sell | 150,000 | Swingplane | $0.5930 | $86,599 |
| 2/13/13 | Sell | 200,000 | Swingplane | $0.6030 | $117,436 |
| 2/13/13 | Sell | 500,000 | Swingplane | $0.6070 | $295,610 |
| 2/13/13 | Sell | 4,500,000 | Swingplane | $0.5520 | $2,419,548 |
| 2/28/13 | Sell | 1,000,000 | Swingplane | $0.2370 | $230,380 |
| 2/28/13 | Sell | 1,200,000 | Swingplane | $0.2310 | $270,179 |
| 2/28/13 | Sell | 2,000,000 | Swingplane | $0.2370 | $461,912 |
| 2/28/13 | Sell | 4,000,000 | Swingplane | $0.2710 | $1,054,323 |
| 3/1/13 | Sell | 300,000 | Swingplane | $0.2130 | $62,105 |
| 3/1/13 | Sell | 5,355,000 | Swingplane | $0.2090 | $1,087,527 |
| 3/4/13 | Sell | 32,671 | Swingplane | $0.2710 | $8,578 |
| 3/4/13 | Sell | 500,000 | Swingplane | $0.2460 | $119,787 |
| 3/4/13 | Sell | 2,000,000 | Swingplane | $0.2470 | $480,593 |
| 3/5/13 | Sell | 50,000 | Swingplane | $0.2910 | $14,143 |
| 3/5/13 | Sell | 50,000 | Swingplane | $0.2970 | $14,408 |
| 3/5/13 | Sell | 3,000,000 | Swingplane | $0.2750 | $801,465 |
| 3/6/13 | Sell | 50,000 | Swingplane | $0.2800 | $13,609 |
| 3/6/13 | Sell | 192,329 | Swingplane | $0.2790 | $52,135 |
| 3/11/13 | Sell | 50,000 | Swingplane | $0.1210 | $5,852 |
| 3/13/13 | Sell | 500 | Goff | $0.1300 | $0 |
| 3/18/13 | Sell | 5,000,000 | Goff | $0.2180 | $1,058,229 |
| 3/18/13 | Sell | 6,368,200 | Goff | $0.2720 | $1,684,708 |
| 3/22/13 | Sell | 3,500,000 | Goff | $0.3530 | $1,202,502 |
| 4/3/13 | Sell | 50,000 | Goff | $0.4340 | $21,121 |
| 4/8/13 | Buy | 200,000 | Goff | $0.6410 | ($131,474) |
| 4/8/13 | Buy | 200,000 | Goff | $0.6400 | ($131,316) |
| 4/9/13 | Buy | 1,500,000 | Goff | $0.5840 | ($897,530) |
| 4/25/13 | Sell | 7,500,000 | Goff | $0.0600 | $435,658 |
| 4/29/13 | Sell | 631,300 | Goff | $0.0420 | $25,201 |
| 4/29/13 | Sell | 600,000 | Goff | $0.0460 | $26,716 |
| **Totals** | | 60,400,000 | | | $11,756,208 |

36.  In accordance with Rule VII(B) of the Court's Individual Practices, the requested

disgorgement amounts are equal to or less than the principal amounts demanded in the

Complaint and Amended Complaint.  The definitive information and documentation from which

I added the disgorgement amounts are in the account statements for the brokerage accounts in the names of Clear Water and Legacy Global at introducing broker-dealer Scottsdale Capital Advisors in Scottsdale, Arizona. No part of the judgment sought has been paid. The calculations made in arriving at the proposed judgment amounts are in the table above and are based on the Defendants' brokerage account statements. The Court should order Clear Water to disgorge $11,441,552 and Legacy Global to disgorge $11,756,208.

37. Clear Water and Legacy Global should pay prejudgment interest. The decision to order prejudgment interest is "confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *Contorinis*, 743 F.3d at 307 (quoting *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995)). *Accord SEC v. Kapur*, Case No. 11-cv-8094 (PAE), 2012 WL 5964389, at *5 (S.D.N.Y. Nov. 29, 2012) ("[a] district court has 'broad discretion' in deciding whether to award prejudgment interest"). "Prejudgment interest on a disgorgement amount is intended to deprive the wrongdoer of the benefit of holding the illicit gains over time by reasonably approximating the cost of borrowing such gain from the government." *Contorinis*, 743 F.3d at 308. *Accord Warde*, 151 F.3d at 50.

> In deciding whether an award of prejudgment interest is warranted, a court should consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*First Jersey Securities, Inc.*, 101 F.3d at 1476. *Accord Credit Bancorp, Ltd.*, 2011 WL 666158 at *3.

38. As for the rate of prejudgment interest, "the *First Jersey* court determined the IRS underpayment rate is an appropriate rate for prejudgment interest on disgorgement awards."

*Credit Bancorp, Ltd.*, 2011 WL 666158 at \*3. *Accord First Jersey Securities, Inc.*, 101 F.3d at

1476. *See* 26 U.S.C. § 6621(a)(2). "That rate reflects what it would have cost to borrow the

money from the government and therefore reasonably approximates one of the benefits the

defendant derived." *SEC v. Aimsi Technologies, Inc.*, 650 F. Supp. 2d 296, 304 (S.D.N.Y. 2009)

(quoting *First Jersey Securities, Inc.*, 101 F.3d at 1476). *Accord SEC v. Elliott*, Case No. 09-cv-

7594 (RJH), 2011 WL 3586454, at \*11 (S.D.N.Y. Aug. 11, 2011).

      39.   Applying the IRS underpayment rate to Clear Water's $11,441,552 in illegal profits

and Legacy Global's $11,756,208 beginning on May 6, 2013 (the date on which the Defendants

had the benefit of all the proceeds from their illegal sales of Swingplane and Goff securities) and

ending on November 1, 2015, yields prejudgment interest amounts of $858,067 for Clear Water

and $881,665 for Legacy Global.  Attached as Exhibit 5 is a calculation of the prejudgment

interest owed by the Defendants using the IRS underpayment rate.  Pursuant to Rule VII(B)(iv)

of the Court's Individual Practices, the rate of prejudgment interest does not exceed 9 percent.

## O.  Civil Monetary Penalties.

      40.   The Court should order civil monetary penalties against Clear Water and Legacy

Global.  Such penalties serve the dual purposes of punishment and deterrence.  *SEC v. Lybrand*,

281 F. Supp. 2d 726, 729-30 (S.D.N.Y. 2003), *aff'd sub nom. SEC v. Kern*, 425 F.3d 143 (2d Cir.

2005).  In deciding the amounts of penalty to impose, courts consider the following elements:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's
> scienter; (3) whether the defendant's conduct created substantial losses or the risk
> of substantial losses to other persons; (4) whether the defendant's conduct was
> isolated or recurrent; and (5) whether the penalty should be reduced due to the
> defendant's demonstrated and current and future financial condition.

*SEC v. Tourre*, 4 F. Supp. 3d 579, 593 (S.D.N.Y. 2014) (quoting *Haligiannis*, 470 F. Supp. 2d

373, 386 (S.D.N.Y. 2007)).  *Accord SEC v. Pentagon Management Plc*, Case No. 08-cv-3324

(RWS), 2012 WL 1036087, at *2 (S.D.N.Y. Mar. 28, 2012), *aff'd in part and vacated in part*, 725 F.3d 279 (2013).

41.  The Section 5 violations that Clear Water and Legacy Global committed were egregious in that they coincided with aggressive stock promotions for Swingplane and Goff, which enabled them to garner inflated prices for worthless securities.  Even though scienter is not required for Section 5 violations, it is evident here.  Through a number of machinations, the Defendants perpetrated a scheme to distribute securities into the public markets without registration.  Investors lost millions of dollars.  The Defendants' violations were recurrent, involving dozens of sales over several weeks.  They have not demonstrated an inability to pay significant penalties.

42.  The SEC seeks maximum first-tier civil penalties against the Defendants, calculated on a per-violation basis, so that the requested penalty is $5,085,000 for Clear Water and $2,290,000 for Legacy Global.  The Defendants' Section 5 violations meet the standard for first-tier penalties in Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), which provides that the penalty shall not exceed the greater of the gross pecuniary gain or a set amount per violation adjusted for inflation.  For the period up to March 5, 2013, the inflation-adjusted penalty amount was $7,500 per violation for a natural person and $75,000 per violation for any other person.  17 C.F.R. § 201.1005 & Table V.  For the period after March 5, 2013 to the present, the inflation-adjusted penalty amount is $7,500 per violation for a natural person and $80,000 per violation for any other person.  *Id.*  A first-tier penalty does not require the SEC to demonstrate that any investor suffered economic loss as a result of a defendant's securities violations. 15 U.S.C. § 77t(d).

43.   Here, I measured the per-violation civil penalties of Clear Water and Legacy Global by counting each of their sales of Swingplane and Goff securities as a separate violation of Section 5.   Applying $75,000 and $80,000 as the maximum first-tier per-violation amount against 64 violations by Clear Water and 30 violations by Legacy Global, the Court should order a $5,085,000 penalty against the former and a $2,290,000 penalty against the latter.   These penalty amounts are appropriate because:  (1) the Defendants fit the criteria for first-tier penalties; (2) the circumstances of the Section 5 violations are clear; and (3) instead of appearing and contesting the violations or the penalty amounts, the Defendants have chosen to remain hidden and unaccountable.

44.   For these reasons, the Court should enter substantial first-tier civil monetary penalties against Clear Water and Legacy Global based on the number of their Section 5 violations in selling Swingplane and Goff securities.

45.   Local Rule 55.2(b) provides that the party moving for default judgment should attach a copy of the claim to which no response has been made.   Therefore, I attach the Complaint and Amended Complaint as Exhibits 6 and 7.

I declare under penalty of perjury that the foregoing is true and correct.   Executed on November 2, 2015.

Richard E. Simpson