**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET N.E.
WASHINGTON, DC 20549-5985

Patrick R. Costello
Assistant Chief Litigation Counsel
Direct Dial: 202.551.3982
E-Mail: costellop@sec.gov

**DIVISION OF ENFORCEMENT**

January 15, 2016

**BY CM-ECF**

Honorable William H. Pauley III
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Securities and Exchange Commission v. Caledonian Bank Ltd., et al.*,
15-CV-894 (WHP)

Dear Judge Pauley:

Plaintiff Securities and Exchange Commission and Defendant Verdmont Capital, S.A. submit this joint letter in response to the Court's Order of December 30, 2015 (ECF No. 157) (the "December Order") directing the parties to summarize any unresolved discovery disputes.

### The Commission's Position

As a preliminary statement, the Commission notes, consistently with the position it set forth in the parties' Joint Revised 26(f) Report and Proposed Discovery plan filed on December 18, 2015 (ECF No. 156), that it is indeed feasible to complete fact discovery in this matter within the timeframe established by the Court in the December Order. But that is entirely dependent on whether Verdmont elects to cooperate with the Court and the Commission in providing the discovery discussed below.[1]

**1. Depositions of Verdmont's Principals and Employees**

The first unresolved dispute between the parties concerns the following depositions of Verdmont's principals and employees: Glynn Fisher; Taylor Housser; Conley Forey; and Justin Mabanta. Despite the Commission's many requests to Verdmont's counsel, to date Verdmont is not willing to make these individuals available for deposition. Counsel for Verdmont also confirmed at the parties' last meet-and-confer on January 7, 2016 – consistently as counsel had intimated prior to entry of the December Order – that they are not authorized to accept service of any deposition subpoenas.[2]

---

[1] The Commission's Office of International Affairs has estimated that the process of a letter rogatory request to Panama would take at least one year to complete.

[2] The Commission has obtained a copy of the liquidation paperwork that was filed in Panama. It appears that Verdmont's principals (among them, Mr. Fisher and Mr. Housser) voted to place Verdmont into liquidation at a board meeting on January 7, 2016 – the same day as the meet-and-confer held between counsel for the parties during which depositions of Mr. Fisher and Mr. Housser were discussed.

In reviewing the law applicable to these particular circumstances, the Commission promptly served Verdmont's counsel on January 11, 2016 with notices of deposition for these individuals.[3] It is well-established that a requesting party, such as the Commission, may invoke the right to designate particular principals and employees of an opposing corporate party to submit to a deposition. *See, e.g., Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y. 1985) ("If the person to be deposed is a corporation, the party seeking discovery has the choice either to designate an appropriate individual or to describe the subject matter of the questions to be asked and allow the corporate deponent to designate its own spokesperson familiar with that subject matter."); Fed. R. Civ. P. 30, Notes of the Advisory Committee on Rules ("This procedure supplements the existing practice whereby the examining party designates the corporate official to be deposed. Thus, if the examining party believes that certain officials who have not testified pursuant to this subdivision have added information, he may depose them."); *see also Schindler Elevator Corp. v. Otis Elevator Co.*, No. 06-cv-5377(CM)(THK), 2007 WL 1771509, at *2 (S.D.N.Y. Jun. 18, 2007). Therefore, the Commission has properly served Messrs. Fisher, Housser, Forey and Mabanta with notices of deposition. The depositions presently are scheduled to take place in New York on February 8-11, 2016, but the Commission has invited Verdmont's counsel to suggest alternate dates if necessary, and also offered to pay the travel costs for these gentlemen. Accordingly, if Messrs. Fisher, Housser, Forey and Mabanta refuse to appear for the depositions, they do so at their own peril.

As far as the relevance of these depositions is concerned, the Commission notes, among other reasons:

i.  Verdmont identified these individuals in its Rule 26(a)(1) disclosures as having information relevant to the case;

ii.  Messrs. Fisher, Housser and Mabanta submitted sworn declarations to the Court in connection with Verdmont's opposition to the Commission's request for a preliminary injunction (ECF Nos. 43, 43-4 and 45) where each provided substantive testimony concerning, among other things, Verdmont's operations, due diligence and "know your customer" protocols, and trading in the subject securities;

iii.  Despite expressly representing in his declaration to the contrary, Mr. Mabanta in fact traded in the subject securities, according to Verdmont's own records; and

iv.  According to Verdmont's own records, Mr. Fisher and Mr. Housser also traded in the subject securities through third-party entities they controlled, Jacametra Inversiones, S.A. and Creekside Capital, both of which were clients of Verdmont (a fact that was omitted from their declarations to this Court).

In short, the Commission believes these depositions are necessary and appropriate in this matter. And the Commission submits that service of deposition notices is sufficient for purposes of compelling the depositions. To ensure this matter is resolved as expeditiously as possible, the Commission respectfully requests the Court enter an Order requiring Messrs. Fisher, Housser, Forey and Mabanta to appear for depositions pursuant to the Commission's notices.

---

[3] It appears that Mr. Fisher signed the official liquidation paperwork in Panama on January 11, 2016. Verdmont's counsel then sent a letter the following day advising the Court of the liquidation (ECF No. 158).

## 2. Outstanding Documents and Materials

The other unresolved discovery dispute concerns Verdmont's continued failure to produce documents and materials called for by the Commission's first and second requests for production, which were served in February and April of 2015 respectively.

As a preliminary matter, the Commission notes it first raised the subject of these outstanding documents with the Court by letter dated August 5, 2015 (ECF No. 130), in which the Commission requested a pre-motion conference to address the issue. That same day, Verdmont sent a separate letter to the Court requesting a stay of discovery (ECF No. 129), and the Court entered an Order a week later granting Verdmont's request (ECF No. 131). After the Court entered the Opinion and Order on November 10, 2015 denying Verdmont's motion for judgment on the pleadings and lifting the stay of discovery (ECF No. 140), counsel for the Commission promptly contacted counsel for Verdmont to determine whether Verdmont intended to produce the outstanding documents. And since then, we have continued to reach out to counsel to try to resolve the matter. As of the parties' last meet-and-confer on January 7, 2016, however, Verdmont has stated it will not produce the requested materials, even notwithstanding the Commission's offer to narrow the time period and scope of some of the requests. The Commission therefore respectfully asks the Court for an Order compelling the production.

### A. The Subject Documents and Materials

As set forth in the Commission's August 5, 2015 letter to the Court, the dispute concerns the following categories of documents set forth in the Commission's requests for production: **(i)** regular monthly account statements from January 2012 to the present for Nautilus Growth Fund, Bamfield Equities, Ltd. (f/k/a Bartlett Trading), and Lornex Financial, Ltd. (First Request for Production Nos. 1-3); **(ii)** wire transfer, internal transfer requests, instructions and documentation reflecting destination of transfer of funds for Nautilus, Bartlett Trading and Lornex (First Request for Production Nos. 1-3); **(iii)** unredacted trade blotters reflecting trading in Goff, Norstra, Xumanii securities by Verdmont or its clients (First Request for Production Nos. 1-4); **(iv)** orders, tickets, messages for Goff, Norstra, Xumanii securities by Verdmont or its clients (First Request for Production Nos. 1-5); **(v)** destination/tracing of proceeds (TRO Accounting); **(vi)** accounts with common signature authority as Nautilus, Bartlett Trading and Lornex Financial accounts (First Request for Production Nos. 1-3); **(vii)** phone recordings concerning Goff, Norstra or Xumanii (First Request for Production No. 6); **(viii)** orders, tickets, messages from Lornex, Nautilus or Bartlett (First Request for Production Nos. 1-3, 15); **(ix)** internal or external communications regarding Goff, Norstra or Xumaii (Second Request for Production Nos. 1-3); and **(x)** communications with Celtic or Empire (Second Request for Production No. 4).

Each of the documents called for by these categories is relevant and material to the claims the Commission has asserted against Verdmont, as well as to the determination of an appropriate remedy for violations of Section 5 of the Securities Act. Indeed, in its Opinion and Order entered on November 10, 2015 (ECF No. 140), the Court observed that disgorgement of, among other things, sales proceeds realized by Verdmont's clients would be dependent on a variety of factors, including Verdmont's relationship with the particular clients who received proceeds from the stock sales. We also note, in an Order entered by the SDNY earlier this week in *SEC v. Gibraltar Global Securities, Inc.*, Case No. 13-cv-2575(GBD)(JCF), a case involving a similar set of facts as the instant case for violations of Section 5 of the Securities Act, Judge

Daniels held a Bahamian broker-dealer liable for proceeds in addition to commissions earned on the sales of the securities. *See* Case No. 13-cv-2575(GBD)(JCF) (ECF No. 84, at 7-8.)[4]

The Commission also points out that it has complied with all of Verdmont's discovery requests, making a supplemental production of documents earlier this week. The Commission will provide a privilege log to Verdmont (although we have yet to receive one from Verdmont).

### B.   Response to Verdmont's Various Arguments on the Requests

To date, Verdmont has not articulated a valid reason why these documents should not be produced. Instead, Verdmont has affirmatively waived any basis it might have to withhold the information. To summarize the various responses and arguments Verdmont has made:

   i.   In its written responses to the Commission's requests for production, Verdmont raised a series of objections, but – significantly – stated that notwithstanding the objections, it would still "produce responsive, non-privileged documents in its possession, custody or control"; accordingly, Verdmont has waived any right to object to the production;

   ii.   Verdmont has never disputed it has possession, custody or control of the subject documents;

   iii.   In its responses, Verdmont did *not* object to the production on the basis of Panama's bank secrecy laws, and therefore, any claimed assertion of those laws as a basis to withhold the documents does not comply with Fed. R. Civ. P. 34(b)(2) and thus is waived as matter of law;

   iv.   Even if Panama's bank secrecy laws were properly asserted as an objection, Verdmont itself has the burden to prove the existence of an actual conflict between those laws and Verdmont's discovery obligations in this Court, and illusory references to foreign secrecy laws without any specific explanation of how those laws apply is insufficient to meet that burden,[5] *see SEC v. Euro Security Fund,* Case No. 98-cv-7347(DLC), 1999 WL 182598,*3 (S.D.N.Y. April 2, 1999); *Alfadda v. Fenn,* 149 F.R.D. 28, 34 (S.D.N.Y. 1993); *In re Sealed Case,* 825 F.2d 494, 498 (D.D.C. 1987);

   v.   Assuming Verdmont met its burden to show a conflict with Panamanian law, the Court still would need to apply the multi-factor test articulated by the Supreme Court in *Societe Nationale Industrielle Aerospatiale v. District Court,* 482 U.S. 522 (1987), to determine whether comity should be given to any bank secrecy protections that may exist, among which factors are the importance of the documents sought and the extent to which refusal to provide the documents would undermine important interests of the United States (including, here, the importance of preventing foreign broker-dealers from making millions of dollars from selling securities in the

---

[4] In *Gibraltar*, Magistrate Judge Francis also ordered the broker-dealer who had filed for liquidation in the Bahamas to participate in discovery notwithstanding the liquidation and produce the documents the Commission had requested, and further ordered the company and its principal to appear for depositions in New York, with the Commission to bear the associated travel costs. (*Gibraltar*, ECF Nos. 52 and 53).

[5] Indeed, as far as depositions of Verdmont's principals and production of documents are concerned, the secrecy laws would not apply to every question asked or request made. At a deposition, it would be question-specific. And Mr. Fisher and Mr. Housser would be free to assert their right against self-incrimination under the 5th Amendment to any non-secrecy related question, in which event the Commission would seek an adverse inference at trial.

United States in violation of the securities laws and then hiding behind veiled secrecy rules in their home jurisdictions to escape liability);

vi. Further assuming Panamanian law applied, Verdmont already obtained and filed with the Court waivers from its customers, Nautilus, Bartlett Trading and Lornex (ECF No. 45-7), that specifically allow disclosure of account information and trading records in the subject securities, notwithstanding any secrecy laws;[6]

vii. In light of those customer waivers, it was improper for Verdmont to redact all customer account identifying information on the handful of statements from 2013 it actually did produce, bearing bates numbers VER002112 to VER002273; and because Verdmont has failed to articulate a valid basis to withhold the information, it also was improper (a) not to disclose all other customer trading information in the subject securities, including trades by Mr. Housser and Mr. Fisher through Jacametra Inversiones, S.A. and Creekside Capital; and (b) not to produce account statements for the full period requested by the Commission (January 2012 to the present); and

viii. Simply telling the Commission to obtain the disputed documents from Panama's securities regulator, the Superintendencia del Mercado de Valores ("SMV"), is not a sufficient reason for Verdmont as a legal matter[7] to avoid producing the documents itself, nor as a practical matter – Verdmont has provided no assurances that the SMV has the particular documents in question; that the SMV would or could share the documents with us even if they did have them; or that the SMV would do so in a timely manner.[8]

In sum, the Commission has made reasonable requests for production that are relevant to its claims, and has made continued efforts to move the discovery process forward, both before the Court and among counsel. Verdmont has failed to put forth any valid reason as to why the documents should not be produced. In order to keep this matter within the discovery timeframe established by the Court, the Commission respectfully asks the Court to enter an Order requiring Verdmont to produce all outstanding discovery, in an unredacted form, within 30 days.

Respectfully submitted,

Patrick R. Costello

---

[6] Given that Mr. Fisher and Mr. Housser serve in the dual roles of principals of Verdmont and principals of Verdmont's customers, Jacametra Inversiones, S.A. and Creekside Capital, it would seem a rather simple task for Mr. Fisher to obtain a similar waiver from himself, and also for Mr. Housser to do the same.

[7] See Graco, Inc. v. Kremlin Inc., 101 F.R.D. 503, 527 (N.D. Ill.1984) (the foreign statute interfering with discovery was not the "problem" of either the court or the party seeking discovery; it was the "problem" of the party whose documents were shielded from discovery by foreign laws); SEC v. Renert, Case No. 01-cv-1027(PCD), 2002 WL 32503671, *4 (D. Conn. June 17, 2002) (holding it is the obligation of the party opposing discovery to do everything in their power to make their documents available and not shift the burden to the requesting party. "If there is a basis for civil liability, the solution is not, as Defendants propound, to require plaintiff to seek waivers from all identified investors, but rather to require Defendants to produce evidence that they sought waivers from the clients as they, not plaintiff, must endeavor to comply with the legitimate discovery requests.")

[8] Although Verdmont is not excused from complying with the discovery requests (see FN 5), the Commission, in an abundance of caution, has initiated the process of requesting documents from the SMV. As noted above, however, there is no guarantee the SMV (i) will accept the Commission's request; (ii) has the documents in question; or (iii) can produce the documents before April 30, 2016 (the Court's deadline for completing fact discovery).

### Verdmont's Response to the Additional Discovery Sought by the SEC

On February 6, 2015, the SEC improperly obtained an ex parte order freezing Verdmont's customers' accounts through intentional misrepresentations to the Court. The SEC publically touted the Court's granting of the freeze order on its website in Litigation Release No. 23195, dated February 11, 2015 (the "Release"). The SEC falsely published in the Release that Verdmont and the other defendants "reap[ed] over $75 million in *illegal* sales proceeds" when in truth and in fact Verdmont earned only $239,955 in trading commissions on unsolicited trades on behalf of its customers in the ordinary course of business (emphasis added). While the SEC subsequently admitted that its representations to the Court were false and amended its complaint to comply with the true facts, the SEC nevertheless continues to publicize on its website the false statement that Verdmont and the other defendants "reap[ed] over $75 million in *illegal* sales proceeds," despite being urged by Verdmont to conform its website publication to its amended pleading (emphasis added). As a direct result of the SEC's false statements to the Court and to the public and the illegal freeze that affected assets of Verdmont's customers that had nothing to do with the allegations before this Court, waves of customer migration ensued.

By reason of the foregoing, Verdmont filed for liquidation under the laws of Panama on January 11, 2016, having no other economic choice. Ms. Shamima Bhana, a Certified Public Accountant, has been nominated to be the liquidator. Verdmont is in the process of winding down its activities and is no longer operating on a going forward basis. Verdmont currently employs a skeletal staff for the sole purpose of liquidating assets and paying creditor claims, mostly labor and severance claims of the more than 40 former employees who lost their jobs and health insurance due to the SEC's improper conduct in this case. Ms. Bhana has requested Carter Ledyard & Milburn LLP to represent the estate for the limited purpose of submitting this letter and appearing in court next week and to seek a dissolution of the freeze order to allow the $239,955 to be used for the administrative costs of liquidation and the payment of the employment claims.

Based on its broad discovery requests, it is clear that the SEC currently has no methodology by which to prove its case. In response to a Verdmont discovery inquiry, the SEC has represented that it does not know which and how many witnesses it may seek to depose. Without exception, all of the material witnesses who could possibly support its so-called "sham registration" theory are located outside the United States, particularly the so-called Norwegian shareholders. Prior to Verdmont's filing for liquidation, it was communicated to the SEC that Verdmont would not object to the issuance of letters rogatory, although it is doubtful that Verdmont will be able to participate in such expensive discovery due to cost considerations.

The SEC seeks the testimony of Mr. Glynn Fisher, the former President of Verdmont, Mr. Taylor Housser, the former Secretary of Verdmont, and Messrs. Conley Forey and Justin Mabanta, former Verdmont brokers. These witnesses are no longer employed by Verdmont.

In addition, counsel for the SEC requested that Verdmont produce the categories of documents listed in the SEC's August 5, 2015 letter to the Court. Verdmont has produced all documents to the extent such documents exist and to the extent that Verdmont is able to do so without breaching the privacy laws of Panama (Pan. Sec. Law, Articles 65 and 268).

Verdmont's objections to the additional discovery sought by the SEC are explained in greater detail below.

### 1) Depositions of Messrs. Fisher, Housser, Forey and Mabanta

Verdmont objects to producing Messrs. Fisher, Housser, Forey and Mabanta for depositions in this action on grounds that these witnesses are no longer employed by Verdmont and are not under the control of Verdmont's liquidator. More importantly, Messers. Fisher and Housser have no personal knowledge of the details of the transactions that are the subject of the Amended Complaint.

On February 11, 2015, the SEC served a notice to take the Rule 30(b)(6) deposition of Verdmont [Doc. No. 18]. That deposition notice contained a lengthy and exhaustive list of eighteen (18) matters regarding which examination of Verdmont was requested by the SEC. On February 27, 2015, Verdmont produced Alejandro Abood for a deposition pursuant to the SEC's Rule 30(b)(6) notice, and the SEC has not indicated that Mr. Abood was unable to testify regarding any of the matters listed in the notice. Accordingly, Verdmont objects to producing Messrs. Fisher, Housser, Forey or Mabanta for a deposition on the grounds of relevance, burdensomeness, overbreadth, cumulativeness, and Panamanian privacy law.

According to the SEC, the testimony of Messrs. Housser and Fisher is necessary because they controlled entities (Jacametra and Creekside Capital) that traded in the Securities. The SEC has not articulated any other matter regarding which the testimony of Mr. Housser or Mr. Fisher is necessary. The SEC's notices to take the depositions of Messrs. Fisher, Housser, Forey and Mabanta state that they are pursuant to Fed. R. Civ. P. 30(a) and/or 30(b)(6); however, none of those notices contain a Rule 30(b)(6) schedule of matters for examination, and the SEC's counsel refused Verdmont's counsel's written request that the SEC provide such schedules for the notices. The Jacametra and Creekside trades are not the subject of the Amended Complaint, nor could they be. Section 5 liability is limited to issuers, underwriters, dealers and brokers. Jacametra and Creekside were none of these types of entities and were merely personal investment entities. As such, there is no basis to compel Mr. Housser or Mr. Fisher to appear for a deposition, particularly since the SEC has already taken the deposition of Mr. Abood with regard to the topics listed in the SEC's Rule 30(b)(6) deposition notice to Verdmont. Nevertheless, in the spirit of cooperation, Messrs. Housser and Fisher have offered to make themselves available for questioning via telephone or video-conference.

### 2) Categories of Documents Listed in the SEC's August 5, 2015 Letter to the Court

As noted above, Verdmont objects to the SEC's requests for the categories of documents listed in the SEC's August 5, 2015 letter to the Court based on Panamanian privacy law (Pan. Sec. Law, Articles 65 and 268) and various other objections stated in Verdmont's written responses to the SEC's document requests, and Verdmont has already produced non-privileged documents in its possession, custody or control responsive to those requests that are not prohibited from disclosure under Panamanian privacy law. Verdmont's objections to those requests are explained below.

#### (A) Panamanian Privacy Law

Verdmont is a Panamanian broker-dealer. As set forth in the Declaration of Alejandro

Abood Alfaro, dated February 23, 2015 [Doc. No. 44], Article 65 of the Panamanian Securities law, the Unified Text of Decree Law 1 of 1999 and laws amending it, and Title II of Law 67 of 2011, further amended by Law 12 of 2012 and Law 56 of 2012, outlines the duty of confidentiality that Panamanian broker-dealers owe to their clients by stating that "[b]roker-dealer firms and securities brokers may not reveal information about their clients or their investment accounts of transactions in securities carried out by their clients, unless they do so with the client's consent or when the information must be revealed to the Superintendence by virtue of this Decree-Law or the regulation thereof or in the event of an order issued by the proper authority according to the law." Abood Decl., Doc. No. 44, at ¶ 4. Article 268 of the Panamanian Securities Law outlines the fines, and civil and criminal penalties, for disclosing confidential client information. Abood Decl., Doc. No. 44, at ¶ 5. In the consented and stipulated preliminary injunction order filed on February 27, 2015, the SEC and Verdmont agreed that Verdmont's obligation to comply with the SEC's discovery requests would be limited "to the full extent authorized by Panamanian law" [Doc. No. 59, at 4].

The allegations in the Amended Complaint relate to sales of three securities – Goff, Norstra and Xumanii f/k/a Medora (the "Securities") – effected by Verdmont on behalf of one or more of three customers (i.e., Nautilus, Bamfield (f/k/a Bartlett Trading) and Lornex). Verdmont obtained written consents from those three customers to release to the SEC all account opening information provided to Verdmont, as well as trading records pertaining to the purchase and sale of stock in Norstra (in the case of Bamfield, Nautilus and Lornex), and stock in Goff and Xumanii (in the case of Lornex). Verdmont has produced documents responsive to the SEC's requests that were authorized to be produced by Nautilus's, Bamfield's and Lornex's written consents, including but not limited to account opening documents that those three clients provided to Verdmont and account statements for those three clients showing trades in any of the Securities. Article 65 of the Panamanian Securities Law prohibits Verdmont from producing to the SEC any other documents or information in its possession, custody or control responsive to the SEC's requests. However, the SEC can seek such documents from the Panamanian securities regulator (the "SMV") or through the use of letters rogatory under 28 U.S.C. § 1781.

### (B) Other Objections to the SEC's Requests for the Categories of Documents Listed in its August 5, 2015 Letter to the Court

In addition to Verdmont's objection based on Panamanian privacy law, Verdmont objects to the SEC's requests for the categories of documents listed in its August 5, 2015 letter to the Court on various grounds, including objections based on relevance, overbreadth, burdensomeness and cumulativeness, as explained below.

> (i) *Regular Monthly Account Statements for Nautilus, Bamfield and Lornex from January 2012 to the present (8/5/15 SEC letter, Item 1); Wire transfer, internal transfer requests, instructions and documentation reflecting destination of transfer of funds for Nautilus, Bartlett and Lornex from January 2012 to the present (8/5/15 SEC letter, Item 2)*

The allegations in the Amended Complaint relate to sales of the three Securities – Goff, Norstra and Xumanii – effected by Verdmont on behalf of three of its customers (i.e., Nautilus, Bamfield and Lornex). Item 1 of the SEC's August 5, 2015 letter seeks account statements of all trading activity of Nautilus, Bamfield and Lornex during the requested time period, and it

therefore seeks irrelevant information and is overbroad because it is not limited to trading activity in the three Securities. Verdmont has already produced to the SEC redacted account statements for these three Verdmont customers showing trades in any of the Securities.

Like Item 1, Item 2 seeks irrelevant information and is overbroad and unduly burdensome because it is not limited to trades in the Securities.

> (ii) *Unredacted trade blotter reflecting trading in Goff, Norstra, Xumanii securities by Verdmont or its clients (8/5/15 SEC letter, Item 3)*

Item 3 seeks irrelevant information and is overbroad because it is not limited to trading by Nautilus, Bamfield and Lornex. Subject to those objections and without waiver thereof, Verdmont has produced spreadsheets showing all trades effected by Verdmont on behalf of its clients in each of the Securities, with client names (other than Bamfield, Nautilus or Lornex) redacted due to Panamanian privacy law.

> (iii) *Orders, tickets, messages for Goff, Norstra, Xumanii securities by Verdmont or its clients (8/5/15 SEC letter, Item 4); Orders, tickets, messages from Lornex, Nautilus or Bartlett (8/5/15 SEC letter, Item 8)*

Item 4 seeks irrelevant information and is overbroad and unduly burdensome because it is not limited to trading by Nautilus, Bamfield and Lornex. Similarly, Item 8 seeks irrelevant documents and is overbroad and unduly burdensome because it is not limited to trades in the Securities. Further, Verdmont has already produced other documents – including redacted account statements and redacted spreadsheets – containing information regarding trades in any of the Securities effected by Verdmont on behalf of Nautilus, Bamfield or Lornex, and thus Items 4 and 8 are also objectionable on the grounds of cumulativeness.

> (iv) *Destination/tracing of proceeds (8/5/15 SEC letter, Item 5)*

Verdmont provided the SEC with a document on Verdmont's letterhead, dated February 12, 2015, describing the status of the accounts of Lornex, Nautilus and Bartlett at Verdmont, including account balances. Panamanian privacy law prohibits Verdmont from providing the SEC with information responsive to Item 5 other than what has already been provided.

> (v) *Accounts with common signature authority as Nautilus, Bartlett and Lornex accounts (8/5/15 SEC letter, Item 6)*

Item 6 seeks irrelevant information and is overbroad and unduly burdensome because it is not limited to accounts of the three Verdmont customers named in the Amended Complaint (i.e., Nautilus, Bartlett and Lornex).

> (vi) *Phone recordings re Goff, Norstra or Xumanii (8/5/15 SEC letter, Item 7)*

Item 7 seeks irrelevant documents and is overbroad and unduly burdensome because it is not limited to trading activity by Nautilus, Bamfield and Lornex in the Securities. Subject to those objections and without waiver thereof, Verdmont does not have any non-privileged documents responsive to Item 7.

> *(vii) Internal or external communications regarding Goff, Norstra or Xumanii (8/5/15 SEC letter, Item 9); Communications with Celtic or Empire (8/5/15 SEC letter, Item 10)*

Item 9 seeks irrelevant documents and is overbroad because it seeks all communications regarding Goff, Norstra and Xumanii and is not limited to communications regarding trading by Nautilus, Bamfield and Lornex in the Securities. Likewise, Item 10 seeks irrelevant documents and is overbroad because it seeks all communications with Celtic or Empire and is not limited to communications with Celtic or Empire regarding Nautilus's, Bamfield's or Lornex's trading in the Securities. Subject to the foregoing objections and without waiver thereof, Verdmont does not have any non-privileged documents responsive to Items 9 and 10 other than what it has already produced.

### 3) The SEC's Request to Submit to the Court Letters Rogatory Seeking to take the Depositions of the Norwegian Shareholders with regard to the Securities

Verdmont does not object to the SEC's submission to the Court of letters rogatory seeking to take the depositions of Norwegian shareholders with regard to the Securities. In that regard, for the reasons stated in Section IV.B.b of the discovery plan that the parties filed with the Court on December 18, 2015 [Doc. No. 156] (which is incorporated here by reference), further discovery should be phased such that it be limited at this juncture to the SEC's unsupported contention that Verdmont's clients were underwriters with respect to the transactions at issue, and such limited discovery would entail depositions of the Norwegian shareholders and certain other foreign shareholders of the Securities to determine whether they were controlled by the Issuers.

## Issues Concerning the SEC's Compliance with Verdmont's Discovery Requests to the SEC

On January 5, 2016, counsel for Verdmont inquired as to whether the SEC has any non-privileged documents in its possession, custody or control that have not been produced and are responsive to any of the following document requests by Verdmont: (1) all documents prepared or reviewed by Robert W. Nesbitt, SEC Market Surveillance Specialist, during his pre-suit analysis or in connection with the preparation of his February 5, 2015 declaration in support of the SEC's application for a temporary restraining order; (2) all communications with a financial institution regarding Verdmont; (3) all communications with a regulatory authority regarding Verdmont; (4) all communications between or among SEC employees concerning Verdmont; (5) all documents produced by a financial institution concerning Verdmont; (6) all documents produced by a regulatory authority concerning Verdmont; (7) all documents relating to the allegations in the Complaint; and (8) all documents relating to the denials and defenses in Verdmont's Answer to the Complaint. In response, the SEC's counsel indicated that such requests called for the production of privileged documents but that the SEC would double-check to see whether any responsive non-privileged documents had not been produced. On January 7, 2016, the SEC's counsel advised that the SEC located documents responsive to these requests that had not been produced, and on January 12, 2016 Verdmont's counsel received from the SEC a hard drive containing 223,857 pages of documents. The SEC has yet to provide a privilege log.

Verdmont reserves the right to assert additional arguments concerning the additional discovery the SEC seeks, and concerning the SEC's discovery compliance, when and if any motions to compel are filed.