Robert J.A. Zito
Mark R. Zancolli
Theodore Y. McDonough
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax: (212) 732-3232
*Attorneys for Verdmont Capital, S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

SECURITIES AND EXCHANGE                    :
COMMISSION
                                           :   Civ. No. 15 CV 894 (WHP) (JLC)
              Plaintiff,                    :
                                           :
         v.                                :
                                           :
CALEDONIAN BANK LTD.,                       :
CALEDONIAN SECURITIES LTD.,                 :
CLEAR WATER SECURITIES, INC.,              :
LEGACY GLOBAL MARKETS S.A., and           :
VERDMONT CAPITAL, S.A.,                     :
                                           :
                                           :
              Defendants.                  :
-------------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANT VERDMONT CAPITAL, S.A.
IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER
<u>PURSUANT TO FED. R. CIV. P. 26(C)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii-iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 3

A.  Introduction ............................................................................................................ 3

B.  Panamanian Privacy Laws...................................................................................... 5

C.  All Reasonable Document Discovery is Complete ................................................ 6

ARGUMENT

VERDMONT IS ENTITLED TO A PROTECTIVE ORDER PURSUANT TO FED. R. CIV.
P. 26(c) ........................................................................................................................11

     A.    Panamanian Privacy Law Prohibits Disclosure of the Confidential Client
         Information Sought by the SEC in Response to the Categories of
         Documents Requested by the SEC in the 1/15/16 Joint Discovery Letter ............12

     B.    Principles of International Comity Weigh Against Disclosure of the
         Confidential Client Information That The SEC Seeks to Compel
         Verdmont to Produce in Violation of Panamanian Law ...................................... 13

     C.    A Protective Order Is Also Necessary Because The Categories Of
         Documents That The SEC Seeks To Compel Verdmont To Produce Are
         Also Objectionable On Other Grounds, Including Irrelevance,
         Overbreadth, Undue Burdensomeness And Cumulativeness .............................. 18

     D.    A Protective Order Is Also Necessary Because The Categories Of
         Documents That The SEC Seeks To Compel Verdmont To Produce Are
         Not Proportional To The Needs Of This Case...................................................... 21

     E.    A Balancing of All Relevant Factors Warrants the Issuance of a Protective
         Order ..................................................................................................................... 24

CONCLUSION................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*CE International Resources Holdings, LLC v. S.A. Minerals Ltd. Partnership*,
   No. 12-cv-08087, 2013 WL 2661037 (S.D.N.Y. June 12, 2013) . No ......................13, 14, 17

*Gambale v. Deutsche Bank AG*,
   377 F.3d 133 (2d Cir. 2004)...........................................................................................11

*Minpeco, S.A. v. Conticommodity Services, Inc.*,
   116 F.R.D. 517 (S.D.N.Y. 1987) ...............................................................15, 16, 17

*Mitchell v. Fishbein*,
   227 F.R.D. 239 (S.D.N.Y. 2005) ...................................................................................11

*Rice v. Reliastar Life Insurance Co.*,
   No. 11-cv-44 (BAJ) (CN), 2011 WL 5513181 (M.D. La. Nov. 10, 2011)............................18

*SEC v. Absolutefuture.com*,
   393 F.3d 94 (2d Cir. 2004)............................................................................................24

*SEC v. Contorinis*,
   743 F.3d 296 (2d Cir. 2014)..........................................................................................24

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996).........................................................................................23

*SEC v. Platforms Wireless International Corp.*,
   617 F.3d 1072 (9th Cir. 2010) ......................................................................................24

*SEC v. Universal Express, Inc.*,
   646 F. Supp. 2d 552 (S.D.N.Y. 2009), aff'd 438 Fed. Appx. 23 (2d Cir. 2011) ...................23

*SEC v. Verdiramo*,
   907 F. Supp. 2d 367 (S.D.N.Y. 2012)..............................................................................24

*SEC v. Whittemore*,
   659 F.3d 1 (D.C. Cir. 2011) ..........................................................................................24

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern
   District of Iowa*,
   482 U.S. 522 (1987)............................................................................................13, 15

S<small>TATUTES</small>

28 U.S.C. § 1781 ................................................................................................7, 8, 9, 10

Fed. R. Civ. P. 26(b)(1)................................................................................................21

Fed. R. Civ. P. 26(c) ................................................................................................1, 11

Defendant Verdmont Capital, S.A. ("Verdmont"), a Panamanian corporation licensed as a broker-dealer in Panama, respectfully submits this memorandum of law, the accompanying Declaration of Robert J.A. Zito, dated February 12, 2015, Declaration of Shamima Bhana, dated February 11, 2015, and Declaration of Mark R. Zancolli, dated February 12, 2015, in support of its motion for a protective order against the outstanding document discovery requests sought by plaintiff, Securities and Exchange Commission (the "SEC"), pursuant to Fed. R. Civ. P. 26(c).

## PRELIMINARY STATEMENT

The gist of this case is that Verdmont allegedly sold "unregistered" securities in violation of Section 5 of the Securities Act of 1933 (the "Securities Act"), a non-fraud provision. Zito Decl., Ex. 1, Amended Compl., ¶¶ 1 and 2. Verdmont is a broker-dealer duly registered under the laws of Panama and, in this capacity, acted on behalf of three of its customers to facilitate unsolicited sale orders through various broker-dealers in the United States that actually executed the trades. Bhana Decl., ¶¶ 7 and 21. The Amended Complaint discretely addresses only three securities sold by only three of Verdmont's customers. The securities are: Goff Corp. ("Goff"), Norstra Energy Inc. ("Norstra"), and Xumanii, Inc. f/k/a Medora Corporation ("Xumanii") (the "Securities" or "Issuers"). The customers are: Nautilus Growth Fund Ltd. ("Nautilus"), Bamfield Equities Ltd. f/k/a Bartlett Trading Inc. ("Bamfield" or "Bartlett") and Lornex Financial Ltd. ("Lornex") (collectively, the "Customers").[1] Amended Compl., ¶¶ 1, 2, 63, 80 and 96.

Verdmont did not violate Section 5 because the transactions that are the subject of the Amended Complaint were exempt from registration under both the so-called "Dealer

---

[1] Glaringly absent from this case are Verdmont's Customers. Nor has the SEC sued any of the various broker-dealers in the United States that actually executed the trades. The SEC has sued Norstra for fraud and that case is currently pending before Judge Pauley, entitled *SEC v. Norstra,* Case No. 15cv4751.

Exemption" and "Broker Exemption," enumerated in Sections 4(a)(3) and 4(a)(4) of the Securities Act. The Dealer Exemption exempts all transactions by dealers that occur 40 days after the initial registration statement (Form S-1) is deemed effective. Here, as a matter of undisputed fact, each of the transactions mentioned in the Amended Complaint occurred more than 40 days after the SEC deemed the registration statements effective. Zito Decl., Ex. 2, Verdmont Memo of Law in Support of Motion for Judgment on the Pleadings, at 11-15.

The Amended Complaint attempts to rebut the undisputed and undisputable Dealers' Exemption by alleging that the registration statements and subsequent distributions of stock were all a "sham." The Amended Complaint speculates that the stock was never distributed to the public, but remained within the control of affiliates of the issuers. Amended Compl., ¶¶ 56, 75 and 87. The Amended Complaint asserts this speculation in the most conclusory manner. That is, the SEC does not know how this happens to be the case. To prove this sham theory, the SEC is required to establish through admissible evidence that Verdmont's customers were affiliates of the issuers, which they plainly were not. No such evidence exists, and indeed, the Amended Complaint does not even allege that Verdmont's customers were affiliates of the Issuers. And despite the fact that this action has been pending for over a year, the SEC has not taken a single deposition of Verdmont's customers or the persons and/or entities from whom Verdmont's customers acquired their stock. Thus, the transactions were exempt under the Dealer Exemption.

The transactions were additionally exempt under the so-called "Broker Exemption." Brokers are exempt from Section 5 liability if they exercised reasonable due diligence to determine whether their customers were insiders or affiliates of the issuers. As will be seen, Verdmont undertook normal procedures that did not uncover any evidence that

2

Verdmont's customers were insiders or affiliates of the issuers.   Indeed, the stocks were publically listed by Bloomberg, registration statements were on file with the SEC, the SEC declared the registration statements effective and the trades occurred well past the 40 day waiting period.   Zito Decl., Ex. 2, at 15-16.   Verdmont had every right to rely on the SEC's own documents to determine that the transactions were exempt.   Notably, in response to Verdmont's interrogatories, the SEC has declined to explain what Verdmont could have done to discover the alleged "sham," if such a sham ever existed.   Verdmont will move for summary judgment at the close of discovery in April 2016.

The SEC seeks various documents that either do not exist or have nothing to do with the allegations in the Amended Complaint.   Verdmont has produced all of its documents relating to the Securities sold by the Customers.   Nevertheless, the SEC essentially seeks *all* of the trading records of the Customers even though these records are far beyond the allegations of the Amended Complaint.   Perhaps more importantly, and even assuming there was some nexus between the records and this action, Verdmont is precluded by Panamanian law from producing such documents.   For this reason, and the reasons set forth below, Verdmont's motion for a protective order should be granted.

## STATEMENT OF FACTS

### A.   Introduction

On February 6, 2015, the SEC commenced this action and improperly obtained an ex parte order freezing Verdmont's customers' assets through intentional misrepresentations to the Court.   The SEC attorneys falsely told Judge Pauley that the freeze order would freeze Verdmont's assets, when in truth and in fact, the SEC attorneys sought to freeze assets of Verdmont's customers who had nothing to do with the transactions that are the subject of the Complaint.   In addition, the SEC attorneys falsely told Judge Pauley that Verdmont sold stock

3

for their own account and "made tens of millions of dollars . . . ." Further still, the SEC publically touted the Court's granting of the freeze order on its website in Litigation Release No. 23195, dated February 11, 2015 (the "Release"), and falsely published in the Release that Verdmont and the other defendants "reap[ed] over $75 million in *illegal* sales proceeds" (emphasis added) when in truth and in fact Verdmont earned only $239,965 in trading commissions on unsolicited trades on behalf of its customers in the ordinary course of business and on one proprietary day trade.  Bhana Decl., ¶¶ 7-8; Zito Decl., Ex. 4, Complaint; Ex. 5, 2/6/15 TRO (the "TRO"); Ex. 6, 11/10/15 Order, at 2-3, 9, 16 and 17; Ex. 7, Release.

While the SEC subsequently admitted that its representations to the Court were false and consequently amended the Complaint, the SEC nevertheless continued and still continues to date to publicize on its website the false statement that Verdmont and the other defendants "reap[ed] over $75 million in *illegal* sales proceeds" (emphasis added), despite being urged by Verdmont to conform its website publication to the contrary facts set forth in the Amended Complaint.  Zito Decl., ¶ 10 and Ex. 8.  As a direct result of the SEC's false statements to the Court and to the public, and the illegal freeze that affected assets of Verdmont's customers that had nothing to do with the allegations before this Court, waves of customer migration ensued.  Bhana Decl., ¶ 9; Zito Decl., Ex. 9, 5/13/15 Simpson Letter to Judge Pauley.

On January 11, 2016, as a direct result of the foregoing, Verdmont filed for liquidation under the laws of Panama, having no other economic choice.  Bhana Decl., ¶¶ 6 and 9.  Ms. Shamima Bhana, a Certified Public Accountant, has been nominated to be the liquidator. Bhana Decl., ¶ 1.  Verdmont is in the process of winding down its activities and is no longer operating on a going forward basis.  Bhana Decl., ¶ 6.  Verdmont currently employs a skeletal staff for the sole purpose of liquidating assets and paying creditor claims, mostly labor and

severance claims of the more than 40 former employees who lost their jobs and health insurance due to the SEC's misrepresentations to the Court. Bhana Decl., ¶ 6.

**B.**    **Panamanian Privacy Laws**

Article 65 of the Panamanian Securities law, the Unified Text of Decree Law 1 of 1999 and laws amending it, and Title II of Law 67 of 2011, further amended by Law 12 of 2012 and Law 56 of 2012, outlines the duty of confidentiality that Panamanian broker-dealers owe to their clients by stating as follows:

> **Article 65.**  Confidentiality of information.  Broker-dealer firms and securities brokers may not reveal information about their clients or their investment accounts or transactions in securities carried out by their clients, unless they do so with the client's consent or when the information must be revealed to the Superintendence by virtue of this Decree-Law or the regulations thereof or in the event of an order issued by the proper authority according to the law.

Zito Decl., Ex. 10, 2/24/15 Declaration of Alejandro Abood Alfaro (the "Abood Decl."), at ¶ 4 and Exhibit A.   Article 268 of the Panamanian Securities Law outlines the penalties for disclosing confidential client information by stating as follows:

> **Article 268.**  Penalties for disclosing confidential information.  The broker-dealer firm, investment advisor, investment manager, self-regulatory organization, member of a self-regulatory organization or the director, officer or employee of any of the above, as well as the broker, analyst, superintendent, official or external consultant of the Superintendence who unlawfully discloses confidential or privileged information that has been obtained while discharging its/his functions shall be fined not less than one thousand balboas (B/.1,000.00) and not more than one hundred thousand balboas (B/.100,000.00), without prejudice to the civil and criminal penalties that may be in order.  In determining the amount of the penalty, the Superintendence shall take into account *inter alia* the intention of the person who incurred the unlawful conduct, whether or not it is recidivism, the benefit gained and the damage caused.  In the event that such person is a superintendent or an official of the Superintendence he shall be removed from office immediately.

Abood Decl., at ¶ 5 and Exhibit A.  Additionally, the Penal Code of the Republic of Panama establishes a fine of no less than 200 or more than 500 days of weekend arrest or its equivalent in fines to anyone found guilty of disclosing confidential information legitimately in their possession, if such disclosure causes harm.  Abood Decl., at ¶ 8.

Significantly, in the consented and stipulated preliminary injunction order filed on February 27, 2015, the SEC and Verdmont agreed that Verdmont's obligation to comply with the SEC's discovery requests would be limited "to the full extent authorized by Panamanian law." Zito Decl., Ex. 11, 2/27/15 Preliminary Injunction Consented And Stipulated To, at 4.

C.    **All Reasonable Document Discovery is Complete**

The SEC served its First Request for the Production of Documents ("SEC's First Request for Production") on February 12, 2015 (Zito Decl., Ex. 12), and the SEC served its Second Request for the Production of Documents to Verdmont ("SEC's Second Request for Production") on April 20, 2015 (Zito Decl., Ex. 13).  In response, Verdmont served its Objections and Responses to the SEC's First Request for Production on February 17, 2015 (Zito Decl., Ex. 14) and its Objections and Responses to the SEC's Second Request for Production on May 26, 2015 (Zito Decl., Ex. 15).  Verdmont's objections to the SEC's Requests for Production contained, among other things, objections based on Panamanian privacy law, relevance, overbreadth, undue burdensomeness and cumulativeness.  Zito Decl., Exs. 14 and 15, Verdmont's Objections and Responses to the SEC's First and Second Requests for Production, General Objections C and D, and Specific Objections 1 and 2.

Pursuant to Section V of the TRO, Verdmont provided the SEC with a document on Verdmont's letterhead, dated February 12, 2015, describing the status of the accounts of Lornex, Nautilus and Bartlett at Verdmont, including account balances.  Zito Decl., Ex. 17.

6

As noted above, the allegations in the Amended Complaint relate to sales of three Securities – Goff, Norstra and Xumanii – effected by Verdmont on behalf of one or more of three customers – Nautilus, Bamfield and Lornex. Verdmont obtained written consents from those three customers to release to the SEC all account opening information provided to Verdmont, as well as trading records pertaining to the purchase and sale of stock in Norstra (in the case of Bamfield, Nautilus and Lornex), and stock in Goff and Xumanii (in the case of Lornex). Bhana Decl., ¶ 12 and Ex. 6.

Verdmont has produced documents responsive to the SEC's requests that related to the trades in the three securities at issue and that were authorized to be produced by Nautilus, Bamfield and Lornex, including but not limited to, account opening documents that those three clients provided to Verdmont and redacted account statements and spreadsheets for those clients showing trades in any of the Securities.[2] Bhana Decl., ¶ 12. The documents produced are all the documents necessary for the SEC to pursue its case. Article 65 of the Panamanian Securities Law prohibits Verdmont from producing to the SEC any other documents or information in its possession, custody or control responsive to the SEC's requests. Bhana Decl., ¶ 14. However, the SEC can seek such documents from the Panamanian securities regulator (the "SMV") (Bhana Decl., ¶ 20) or through the use of letters rogatory under 28 U.S.C. § 1781.

The SEC seeks the following ten categories of documents[3]:

1.  Regular monthly account statements for Nautilus, Bamfield and Lornex from January 2012 to the present.

---

[2] Additionally, Verdmont obtained written consents from the following customers (in addition to Nautilus, Bamfield and Lornex) to release to the SEC all account opening information provided to Verdmont and trading records pertaining to the purchase and sale of stock in any of the Securities: Chloe Company S.A. Sub-B, Nicolaas Carel Marthunis Wilson, Egos Capital Corp., Kesef International Inc., Gleisdorf Investing Corp., A. Karst Alternative Investments Ltd. and Harry Lappa. Bhana Decl., ¶ 13 and Ex. 7. Verdmont has produced documents responsive to the SEC's requests that were authorized to be produced by those clients' written consents, including but not limited to account opening documents that those clients provided to Verdmont and redacted account statements and spreadsheets for those clients showing trades in any of the Securities. Bhana Decl., ¶ 13.
[3] Zito Decl., Ex. 3, 1/15/16 Joint Discovery Letter to the Court, at 3.

**Verdmont's Objection:**

a) These documents are beyond the scope of Amended Complaint, which focuses on only three discrete stocks.   Verdmont has produced account statements for these three clients showing their trades in the Securities.

b) Verdmont does not have waivers from these three customers to allow it to produce such documents, unrelated to trades in the Securities. Therefore, disclosure of such documents would cause Verdmont to commit a crime under Panamanian law.

c) The SEC can obtain these documents from the Panamanian regulators or through the use of letters rogatory under 28 U.S.C. § 1781 with no consequence to Verdmont.

2. Wire transfer, internal transfer requests, instructions and documentation reflecting destination of transfer of funds for Nautilus, Bartlett and Lornex from January 2012 to the present.

**Verdmont's Objection:**

a) Again, these documents are irrelevant to the Amended Complaint and overbroad, as they are not limited to trades in the Securities. Documents reflecting the amount of commissions earned by Verdmont have been produced.

b) Verdmont does not have waivers from these three customers to allow it to produce such documents. Therefore, disclosure of such documents would cause Verdmont to commit a crime under Panamanian law.

c) The SEC can obtain these documents from the Panamanian regulators or through the use of letters rogatory under 28 U.S.C. § 1781 with no consequence to Verdmont.

3. The unredacted trade blotter reflecting trading in Goff, Norstra and Xumanii securities by Verdmont or its clients.

**Verdmont's Objection:**

a) Verdmont has produced all documents relating to its one day trade in Xumanii and account statements and spreadsheets relating to the trades in Goff, Norstra and Xumanii by Nautilus, Bartlett and Lornex. Documents by other Verdmont customers are irrelevant and overbroad as they are not the subject of the Amended Complaint.

b) Verdmont does not have waivers from any of its customers other than Nautilus, Bartlett, Lornex and the seven other clients identified in the accompanying Bhana Declaration.   Therefore,

8

          disclosure of such documents concerning any other clients would cause Verdmont to commit a crime under Panamanian law.

    c)     The SEC can obtain these documents from the Panamanian regulators or through the use of letters rogatory under 28 U.S.C. § 1781 with no consequence to Verdmont.

4.     The orders, tickets and messages for Goff, Norstra and Xumanii securities by Verdmont or its clients.

**Verdmont's Objection:**

    a)     Verdmont has produced all documents relating to its one day trade in Xumanii and account statements and spreadsheets relating to the trades in Goff, Norstra and Xumanii by Nautilus, Barlett and Lornex. Documents by other Verdmont customers are irrelevant and overbroad as they are not the subject of the Amended Complaint.

    b)     Verdmont does not have waivers from any of its customers other than Nautilus, Bartlett, Lornex and the seven other clients identified in the accompanying Bhana Declaration. Therefore, disclosure of such documents would cause Verdmont to commit a crime under Panamanian law.

    c)     The SEC can obtain these documents from the Panamanian regulators or through the use of letters rogatory under 28 U.S.C. § 1781 with no consequence to Verdmont.

5.     An accounting of the destination or tracing of proceeds.

**Verdmont's Objection:**

    a)     Again, these documents are irrelevant to the Amended Complaint and overbroad, as they are not limited to trades in the Securities. All documents reflecting the amount of commissions earned by Verdmont have been produced. All documents showing how much in proceeds were earned by Nautilus, Bartlett and Lornex have been produced.

    b)     Verdmont does not have waivers from these three customers to allow it to produce such documents. Therefore, disclosure of such documents would cause Verdmont to commit a crime under Panamanian law.

    c)     The SEC can obtain these documents from the Panamanian regulators or through the use of letters rogatory under 28 U.S.C. § 1781 with no consequence to Verdmont.

6.     Accounts with common signature authority as Nautilus, Bartlett and Lornex accounts.

**Verdmont's Objection:**

a)    Again, these documents are irrelevant to the Amended Complaint and overbroad. All account opening documents for Nautilus, Bartlett and Lornex have been produced.

b)    Verdmont does not have waivers from these three customers to allow it to produce such documents. Therefore, disclosure of such documents would cause Verdmont to commit a crime under Panamanian law.

c)    The SEC can obtain these documents from the Panamanian regulators or through the use of letters rogatory under 28 U.S.C. § 1781 with no consequence to Verdmont.

7.    Phone recordings regarding Goff, Norstra or Xumanii.

**Verdmont's Objection:** These documents do not exist.

8.    Orders, tickets and messages from Lornex, Nautilus or Bartlett.

**Verdmont's Objection:**

a)    These documents are irrelevant to the Amended Complaint and overbroad, as they are not limited to trades in the Securities. Verdmont has produced account statements and spreadsheets relating to the trades in Goff, Norstra and Xumanii by Lornex, Nautilus and Bartlett.

b)    Verdmont does not have waivers from these clients to produce such documents unrelated to the Securities.

c)    The SEC can obtain these documents from the Panamanian regulators or through the use of letters rogatory under 28 U.S.C. § 1781 with no consequence to Verdmont.

9.    Internal or external communications regarding Goff, Norstra or Xumanii.

**Verdmont's Objection:** To the extent these documents exist, they have been produced.

10.    Communications with Celtic or Empire.

**Verdmont's Objection:** To the extent these documents exist, they have been produced.

# ARGUMENT

## VERDMONT IS ENTITLED TO A PROTECTIVE ORDER
## PURSUANT TO FED. R. CIV. P. 26(c)

Pursuant to Federal Rule of Civil Procedure 26(c), a court may issue a protective order "for good cause … to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:  (A) forbidding the disclosure or discovery; . . . (C) prescribing a discovery method other than the one selected by the party seeking the discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . "   Although the party seeking the protective order bears the burden of showing good cause (*see Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)), the court must weigh the interests of both parties in considering the necessity and scope of the order.  *See Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) ("[U]nder Rule 26(c), the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectable interests of the party from whom discovery is sought") (citation omitted).

As will be seen, the documents sought by the SEC are irrelevant to and beyond the scope of the Amended Complaint and would require the Liquidator to commit a crime under Panamanian law in order to have them produced.  If the SEC is really interested in obtaining these documents, they may obtain them from the SMV or seek them through the use of letters rogatory or directly from Verdmont's customers.  Further still, the information contained in these documents would not create any material issues of fact relating to Verdmont's alleged liability in this case that, as a result, would prevent Judge Pauley from granting Verdmont summary judgment in this case, which would make this motion moot.  Therefore, even if this Court were

11

inclined to order Verdmont to produce these documents, Verdmont should not be required to do so before the motion for summary judgment is finally decided.

**A.     Panamanian Privacy Law Prohibits Disclosure of the Confidential Client Information Sought by the SEC in Response to the Categories of Documents Requested by the SEC in the 1/15/16 Joint Discovery Letter**

Article 65 of the Panamanian Securities Law prohibits Panamanian broker-dealers, such as Verdmont, from disclosing client-related information without the client's consent. After the commencement of this action, Verdmont diligently sought, with varying degrees of success, written consents from its clients in a good faith effort to respond to the SEC's document requests without violating Panamanian law. Bhana Decl., ¶ 11. Significantly, Verdmont obtained written consents from Nautilus, Bamfield and Lornex, the three clients whose transactions are the subject of the allegations against Verdmont in the Amended Complaint, and, in the spirit of cooperation, from certain other clients (Chloe Company SA Sub-B, Nicolaas Carel Mathunis Wilson, Egos Capital Corp., Kesef International Inc., Gleisdorf Investing Corp., A. Karst Alternative Investments Ltd. and Harry Lappa), whose transactions are not the subject of the Amended Complaint that allowed Verdmont to disclose to the SEC all account opening information provided to Verdmont, as well as trading records pertaining to the purchase and sale of stock in any of the Securities. And, as noted above, Verdmont has produced documents responsive to the SEC's requests that were authorized to be produced by the written client consents that Verdmont obtained, including but not limited to, account opening documents that those clients provided to Verdmont and account statements and spreadsheets showing trades by those clients in any of the Securities.

Each of the ten categories of documents that the SEC seeks to compel Verdmont to produce, to the extent such documents exist, exceeds the scope of the written client consents

obtained by Verdmont and, as a result, would result in the Liquidator committing a crime under Panamanian law in their production.

**B.      Principles of International Comity Weigh Against Disclosure of the Confidential Client Information That The SEC Seeks to Compel Verdmont to Produce in Violation of Panamanian Law**

The United States Supreme Court has "long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation." *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 546 (1987).   When analyzing whether to order discovery of foreign-based information that is prohibited from disclosure under foreign law, courts in the Second Circuit have applied a balancing test that considers the following factors:   (1) the importance to the litigation of the documents or information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means to secure the information; (5) the balance of national interests; (6) the hardship of compliance on the party from whom discovery is sought; and (7) the good faith of the party resisting discovery.   *See CE International Resources Holdings, LLC v. S.A. Minerals Ltd. Partnership*, No. 12-cv-08087 (CM)(SN), 2013 WL 2661037 at *8 (S.D.N.Y. June 12, 2013) (internal citations and quotations omitted).  No single factor is dispositive. *Id.*

Here, consideration of each of these factors weighs in favor of a protective order protecting the Liquidator from committing a crime through the production of the documents sought by the SEC.  With regard to the first factor – importance to the litigation of the documents requested – this action, as against Verdmont, relates to sales of three Securities (Goff, Norstra and Xumanii) effected by Verdmont on behalf of one or more of three customers (Nautilus, Bamfield and Lornex).  Verdmont has already produced to the SEC documents responsive to the SEC's requests that relate to the transactions that are the subject of the Amended Complaint,

13

including account opening documents that Nautilus, Bamfield and Lornex provided to Verdmont and account statements and spreadsheets for those clients showing trades in any of the Securities. The additional documents that the SEC seeks to compel Verdmont to produce are irrelevant to this action because they extend beyond the transactions in the Securities by Nautilus, Bamfield and Lornex that are the subject of the Amended Complaint.

Likewise, the second factor – the degree of specificity of the SEC's requests – favors Verdmont, as the categories of documents sought by the SEC are not specific, but are instead grossly overbroad. Although the allegations in the Amended Complaint concern sales of the three Securities effected by Verdmont on behalf of Nautilus, Bamfield and Lornex, the SEC seeks to compel Verdmont to produce documents and information unrelated to, and well beyond the scope of, those transactions, as explained in Point C, *infra*.

The third factor – whether the information originated in the United States – also favors Verdmont. Verdmont is a Panamanian broker-dealer with its place of business in Panama. Bhana Decl., ¶ 19. Verdmont has no offices in the United States and has no United States customers. Bhana Decl., ¶ 19. It is therefore indisputable that the categories of documents that the SEC seeks from Verdmont originated outside of the United States (Bhana Decl., ¶ 19), which weighs against disclosure. *See CE International Resources Holdings, LLC,* 2013 WL 2661037 at *10 (stating that the overseas location of information weighs against disclosure).

The fourth factor – availability of alternative means to secure the information – also favors Verdmont. The SMV has, or has access to, all non-privileged documents responsive to the categories of documents that the SEC seeks to compel Verdmont to produce. Bhana Decl., ¶ 20. The SEC is able to obtain such documents from the SMV, as the SEC's counsel recently proposed that Verdmont "produce[] relevant documents to the SMV" as part of a potential

14

settlement of this action.  Zito Decl., Ex. 16, Redacted December 14, 2015 email from Bridget

Fitzpatrick to Robert J.A. Zito.  Obviously, there would be no reason for the SEC to insist on

Verdmont producing relevant documents to the SMV unless the SEC would thereafter be able to

obtain such documents from the SMV.  Thus, the availability of alternative means – the SMV –

by which the SEC can obtain the documents it seeks to compel from Verdmont also weighs in

favor of the protective order Verdmont seeks.[4]   Further still, the SEC is able to seek these

documents through letters rogatory or directly from Nautilus, Bamfield and Lornex.

       With regard to the fifth factor – balance of national interests – that factor also

favors Verdmont, as Articles 65 and 268 of the Panamanian Securities law demonstrate that

Panama has a strong and important interest in protecting the privacy of broker-dealers' clients

and client-related information.  The Supreme Court has held that "American courts should

therefore take care to demonstrate due respect for any special problem confronted by the foreign

litigant on account of its nationality or the location of its operations, and for any sovereign

interest expressed by a foreign state." *Aerospatiale,* 482 U.S. at 546.  This is particularly so

when such court-mandated disclosure puts a litigant at risk of harsh foreign penalties, and a

foreign sovereign's interest is accorded even extra weight where court-mandated disclosure

implicates foreign criminal statutes. *See Minpeco, S.A. v. Conticommodity Services, Inc.*, 116

F.R.D. 517, 524 (S.D.N.Y. 1987) (holding in part that foreign civil liability, administrative

sanctions and, particularly, penal sanctions established a strong foreign national interest,

counterbalancing the United States' interest in enforcing its antitrust and commodities fraud

laws).  Here, to the extent that the SEC seeks to compel Verdmont to produce client-related

---

[4] Indeed, the SEC's document production in this case contains documents related to Verdmont's clients, including account opening documents that Verdmont's clients provided to Verdmont, that the SEC was able to obtain from one or more sources other than Verdmont, including from the BCSC (the British Columbia securities regulator). Bhana Decl., ¶ 21.

documents beyond those authorized by the written consents that Verdmont has obtained, Verdmont's production of such documents would violate Panamanian law, thereby subjecting the Liquidator to a range of punishment, including fines and civil and criminal penalties in Panama. Abood Decl. at ¶ 8. While the United States has an interest in enforcing its laws, that interest would not be undermined if Verdmont were to be issued a protective order and not produce the documents that the SEC seeks to compel, as Verdmont has already produced to the SEC documents responsive to the SEC's requests that relate to the transactions that are the subject of the Amended Complaint's allegations against Verdmont (including but not limited to account opening documents that Nautilus, Bamfield and Lornex provided to Verdmont and account statements and spreadsheets showing those clients' trades in any of the Securities) and the documents that the SEC seeks to compel extend well beyond those transactions. Thus, although the United States has an interest in enforcing its laws, Panama also has a substantial countervailing interest in the privacy of broker-dealers' clients and client-related information that should be respected. *See Minpeco*, 116 F.R.D. at 529 (declining to mandate disclosure in violation of Swiss law and holding that although both the United States and Switzerland have strong national interests at stake, "it is also fairly clear that compliance with an order of this court would place [the party resisting discovery] and its employees in violation of" Swiss law); *see also Application of Chase Manhattan Bank*, 297 F.2d 611, 612–13 (2d Cir. 1962) (modifying subpoena where bank showed that compliance would violate Panamanian law).

       Likewise, the sixth factor – hardship of compliance – weighs in favor of Verdmont. As emphasized above, Article 65 of the Panamanian Securities Law prohibits Verdmont from producing to the SEC any other non-privileged documents in its possession, custody or control responsive to the SEC's requests. Because the SEC seeks to compel

16

Verdmont to produce client-related documents beyond those authorized by the written client consents that Verdmont has obtained, Verdmont's production of such documents would cause Verdmont great hardship as it would violate Panamanian law and subject Verdmont to fines and civil and criminal penalties in Panama, as emphasized above.   Thus, this factor also weighs against compelling production from Verdmont.  *See CE Int'l Res. Holdings,* 2013 WL 2661037 at *15 ("If compliance with a discovery request would subject the party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure").

The seventh factor – good faith of the party requesting disclosure – also favors Verdmont.   The comity analysis heavily weighs against court-mandated disclosure where the party resisting discovery has attempted in good faith to provide the requested information in compliance with foreign law.  *See, e.g., Minpeco*, 116 F.R.D. at 528 (finding good faith where the party resisting discovery "made extensive attempts to secure waivers of bank secrecy rights from its trading customers").  As noted above, here, Verdmont sought written consents from the clients whose sales of the Securities are at issue in the Amended Complaint – Nautilus, Bamfield and Lornex – and obtained written consents from certain of those clients to produce their account opening documents and trading records regarding their purchases or sales of stock in the Securities.  Additionally, Verdmont sought written consents from other clients that traded in the Securities – in addition to Nautilus, Bamfield and Lornex – and obtained written consents from certain of those clients to produce their account opening documents and trading records regarding their purchases or sales of stock in the Securities.  Verdmont has produced all non-privileged documents in its possession, custody or control responsive to the SEC's requests that were authorized to be produced by the written consents that Verdmont obtained from its clients.  Accordingly, Verdmont has acted in good faith in attempting to provide documents requested by

the SEC without violating Panamanian law, which is an additional factor in favor of the protective order that Verdmont seeks.

For all the foregoing reasons, the factors considered by courts in the Second Circuit when analyzing whether to order discovery of foreign-based information that is prohibited from disclosure under foreign law weigh against the disclosure of the documents that the SEC seeks to compel Verdmont to produce.

**C.    A Protective Order Is Also Necessary Because The Categories Of Documents That The SEC Seeks To Compel Verdmont To Produce Are Also Objectionable On Other Grounds, Including Irrelevance, Overbreadth, Undue Burdensomeness And Cumulativeness**

In addition to Verdmont's objection based on Panamanian privacy law, Verdmont objects to the SEC's requests for the categories of documents listed in the 1/15/16 Joint Discovery Letter on various other grounds, including objections based on irrelevance, overbreadth[5], undue burdensomeness[6] and cumulativeness, as explained below.

> 1.    *Regular Monthly Account Statements from January 2012 to the present for Nautilus, Bamfield and Lornex (1/15/16 Joint Discovery Letter, Item 1; SEC's First Request For Production Nos. 1-3); Wire transfer, internal transfer requests, instructions and documentation reflecting destination of transfer of funds for Nautilus, Bartlett and Lornex (1/15/16 Joint Discovery Letter, Item 2: SEC's First Request For Production Nos. 1-3)*

As emphasized above, the allegations against Verdmont in the Amended Complaint relate to sales of the three Securities – Goff, Norstra and Xumanii – effected by Verdmont on behalf of three of its customers -- Nautilus, Bamfield and Lornex.  Item 1 of the

---

[5] Regarding overbreadth, each of the requests in the SEC's First and Second Requests for Production begins with the word "All." Zito Decl., Ex. 12 and 13.  Such blanket requests have been found to be overbroad and impermissible. *See, e.g., Rice v. Reliastar Life Insurance Co.,* No. 11-cv-44 (BAJ) (CN), 2011 WL 5513181, at *2 (M.D. La. Nov. 10, 2011) (stating that "a request for 'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition").

[6] Regarding undue burden, as emphasized above, Verdmont would be subjected to fines and civil and criminal penalties in Panama if it were to disclose the additional documents that the SEC seeks to compel Verdmont to produce.

1/15/16 Joint Discovery Letter seeks account statements of all trading activity of Nautilus, Bamfield and Lornex during the requested time period, and it therefore seeks irrelevant information and is overbroad because it is not limited to trading activity in the three Securities at issue in the Amended Complaint.  Verdmont has already produced to the SEC redacted account statements for these three Verdmont customers showing trades in any of the Securities.

Like Item 1, Item 2 seeks irrelevant information and is overbroad and unduly burdensome because it is not limited to trades in the Securities.

> 2.      *Unredacted trade blotters reflecting trading in Goff, Norstra, Xumanii securities by Verdmont or its clients (1/15/16 Joint Discovery Letter, Item 3; SEC's First Request For Production Nos. 1-4)*

Item 3 seeks irrelevant information and is overbroad because it is not limited to trading by Nautilus, Bamfield and Lornex.  Subject to those objections and without waiver thereof, Verdmont has produced spreadsheets showing all trades effected by Verdmont on behalf of its clients in each of the Securities, with client names (other than Bamfield, Nautilus or Lornex and the other clients that provided written consents to Verdmont) redacted due to Panamanian privacy law.

> 3.      *Orders, tickets, messages for Goff, Norstra, Xumanii securities by Verdmont or its clients (1/15/16 Joint Discovery Letter, Item 4; SEC's First Request for Production Nos. 1-5); Orders, tickets, messages from Lornex, Nautilus or Bartlett (1/15/16 Joint Discovery Letter, Item 8; SEC's First Request for Production Nos. 1-3, 5)*

Item 4 seeks irrelevant information and is overbroad and unduly burdensome because it is not limited to trading by Nautilus, Bamfield and Lornex.  Similarly, Item 8 seeks irrelevant documents and is overbroad and unduly burdensome because it is not limited to trades in the Securities.  Further, Verdmont has already produced other documents – including redacted account statements and redacted spreadsheets – containing information regarding trades in any of

the Securities effected by Verdmont on behalf of Nautilus, Bamfield, Lornex and the other clients that provided written consents to Verdmont, and thus Items 4 and 8 are also objectionable on the grounds of cumulativeness.

        4.     *Destination/tracing of proceeds (TRO accounting) (1/15/16 Joint Discovery Letter, Item 5)*

Verdmont provided the SEC with a document on Verdmont's letterhead, dated February 12, 2015, describing the status of the accounts of Lornex, Nautilus and Bartlett at Verdmont, including account balances.  Zito Decl. Ex. 17.  Panamanian privacy law prohibits Verdmont from providing the SEC with information responsive to Item 5 other than what has already been provided.  Bhana Decl., ¶ 16.

        5.     *Accounts with common signature authority as Nautilus, Bartlett and Lornex accounts (1/15/16 Joint Discovery Letter, Item 6; SEC's First Request for Production Nos. 1-3)*

Item 6 seeks irrelevant information and is overbroad and unduly burdensome because it is not limited to accounts of the three Verdmont customers named in the Amended Complaint (i.e., Nautilus, Bartlett and Lornex).

        6.     *Phone recordings concerning Goff, Norstra or Xumanii (1/15/16 Joint Discovery Letter, Item 7; SEC's First Request for Production No. 6)*

Item 7 seeks irrelevant documents and is overbroad and unduly burdensome because it is not limited to trading activity by Nautilus, Bamfield and Lornex in the Securities. Subject to those objections and without waiver thereof, Verdmont does not have any non-privileged documents responsive to Item 7.  Bhana Decl., ¶ 17.

7.  *Internal or external communications regarding Goff, Norstra or Xumanii (1/15/16 Joint Discovery Letter, Item 9; SEC's Second Request For Production Nos. 1-3); Communications with Celtic or Empire (1/15/16 Joint Discovery Letter, Item 10, SEC's Second Request For Production No. 4)*

Item 9 seeks irrelevant documents and is overbroad because it seeks all communications regarding Goff, Norstra and Xumanii and is not limited to communications regarding trading by Nautilus, Bamfield and Lornex in the Securities.  Likewise, Item 10 seeks irrelevant documents and is overbroad because it seeks all communications with Celtic or Empire and is not limited to communications with Celtic or Empire regarding Nautilus's, Bamfield's or Lornex's trading in the Securities.  Subject to the foregoing objections and without waiver thereof, Verdmont does not have any non-privileged documents responsive to Items 9 and 10 other than what it has already produced.  Bhana Decl., ¶ 18.

**D.    A Protective Order Is Also Necessary Because The Categories Of Documents That The SEC Seeks To Compel Verdmont To Produce Are Not Proportional To The Needs Of This Case**

The recent amendments to Fed. R. Civ. P. 26(b)(1) limit discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Consideration of these factors yields the inescapable conclusion that the documents the SEC seeks to compel Verdmont to produce are not proportional to the needs of this case.

As an initial matter, Verdmont has minimal resources at this point, as it recently filed for liquidation on January 11, 2016 and is not operating on a going forward basis.  Also, as

explained above, the SEC can obtain the documents that it seeks to compel Verdmont to produce from the SMV, which has, or has access to, such documents.

Additionally, the amount in controversy does not warrant compelling Verdmont to produce the categories of documents sought by the SEC. If the SEC were able to prove that Verdmont is liable with respect to the claims against it in the Amended Complaint – which it is not – then the SEC would be able to seek disgorgement from Verdmont of, at most, $239,965, which is the amount that Verdmont received in trading commissions on unsolicited trades in the Securities on behalf of its customers in the ordinary course of business and on one proprietary day trade. Bhana Decl., ¶ 8.

Further, the categories of documents that the SEC seeks to compel Verdmont to produce are not relevant as to liability, and the SEC has failed to explain how any of the documents it seeks to compel Verdmont to produce are important in resolving an issue as to liability. As explained above and in Verdmont's prior motion for judgment on the pleadings, Verdmont has proven that its clients' transactions at issue were exempt from registration under the Dealer Exemption, as it is undisputed that those transactions occurred more than 40 days after the effective date of the registration statement of each security, and more than 40 days after the first purchase of each security by a Verdmont client (which is the latest date when the security was bona fide offered to the public). In response, the SEC contended that Verdmont is not entitled to the Dealer Exemption because the registration statements filed with the SEC were a "sham." The SEC offers only conclusory allegations of the "sham": that Verdmont's customers acquired the stock from insiders or affiliates of the Issuers with a view towards making a "distribution." Amended Compl., ¶¶ 56, 63-64, 75, 80-81, and 87, 96-97. But the SEC

never once explains the factual basis for these ipse dixet conclusions.  None of the documents sought by SEC are relevant to this issue, or any other issue in this action.

       The SEC curiously contends that the documents relate to the potential penalty of disgorgement that could be ordered by Judge Pauley, which glaringly concedes that such discovery is, at the very least, premature.   Clearly, this is putting the cart before the horse.   Should Judge Pauley grant Verdmont summary judgment, this issue would become moot.  But the SEC is additionally disingenuous because all of the documents relating to Verdmont's commissions and the sales proceeds earned by Verdmont's customers have been produced already.   What Verdmont's customers may have made on *other* trades – one category of documents sought by the SEC – is irrelevant to this analysis.

       Perhaps more importantly, and despite what the SEC would have this Court believe, Verdmont can only be required to disgorge *what it received*, namely, the sum of $239,965.  *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996); *SEC v. Universal Express, Inc.,* 646 F. Supp. 2d 552, 563 (S.D.N.Y. 2009), aff'd 438 Fed. Appx. 23 (2d Cir. 2011) ("In determining the amount of disgorgement to be ordered, a court must focus on the extent to which a defendant has *profited* from his [violation].") (emphasis added). Disgorgement "is designed to deprive wrongdoers of any unjust enrichment," but "[i]t is not, however, intended to be punitive." *Id.*

       Verdmont cannot be forced to disgorge something it did not receive, such as its customers' profits unless it acted as an alter ego of those customers.  Not only was Verdmont plainly not an alter ego, but the Amended Complaint does not even allege such a relationship.[7] Again, Verdmont's clients are not even parties to this action.

---

[7] In its memorandum of law in support of its motion for leave to amend [Doc. No. 90] and its memorandum of law in opposition to Verdmont's motion for judgment on the pleadings [Doc. No. 115], the SEC cited several cases for

For these reasons, the documents that the SEC seeks to compel Verdmont to produce are not proportional to the needs of the case, which is further reason why a protective order is warranted.

**E.     A Balancing of All Relevant Factors Warrants the Issuance of a Protective Order**

Each of the ten categories of documents that the SEC seeks to compel Verdmont to produce exceeds the scope of the written client consents obtained by Verdmont and, as a result, would require the Liquidator to commit a crime under Panamanian law. Perhaps more importantly, none of the documents sought have any bearing on the allegations of the Amended Complaint. There is no dispute concerning the trades in the Securities, the volume of such trades, the proceeds derived from such trades by Verdmont's customers and the commissions earned by Verdmont. The sole dispute is whether they were exempt transactions under Section 4 of the Securities Act. And it is undisputed that all of the trades in question occurred well after the SEC declared the applicable registration statements effective, which thus triggered the Dealer Exemption. The SEC must therefore prove that the registration statements were all a "sham."

---

joint and several liability. But these cases are plainly inapposite, factually distinguishable, and unavailing as none of them involve a broker that executed trades for its clients. In fact, those cases undermine the SEC's theory by making clear that joint and several liability for disgorgement of profits is appropriate only where the parties are alleged to have "collaborated" or had a "close relationship" with each other. *See, e.g., In re Pierce,* Securities Act Rel. No. 9555, 2014 WL 896757 (March 7, 2014) (defendant who directed pump and dump scheme was liable for disgorging amounts he received and amounts paid into accounts of closely-held corporations he controlled); *SEC v. Platforms Wireless International Corp.,* 617 F.3d 1072 (9th Cir. 2010) (defendant, who was Chairman and CEO of company that issued unregistered securities, was liable for disgorging amounts he received and amounts his company received); *SEC v. Whittemore,* 659 F.3d 1 (D.C. Cir. 2011) (defendant who directed pump and dump scheme was liable for disgorgement of illegal profits); *SEC v. Verdiramo,* 907 F. Supp. 2d 367 (S.D.N.Y. 2012) (defendant, who was acting President of company that issued unregistered securities, was liable for disgorging amounts received by the "collaborating or closely related parties," including his father); *SEC v. Absolutefuture.com,* 393 F.3d 94, 97 (2d Cir. 2004) (defendant, who in concert with other defendants, engaged in a scheme to manipulate the stock price of corporate co-defendant, was jointly and severally liable for disgorging amount that he received and transferred to the corporate co-defendant, holding that "imposing joint and several liability for combined profits on collaborating or closely related parties . . . is appropriate"); *SEC v. Contorinis,* 743 F.3d 296, 300, 303-304 (2d Cir. 2014) (defendant insider trader, who was managing director of investment fund over which he had investment control, was liable for disgorging profits realized by the investment fund from insider trades he executed for the investment fund). The Amended Complaint concedes that Verdmont was acting merely as a broker on behalf of its clients. *See, e.g.,* Zito Decl., Ex. 1, Amended Compl., ¶¶ 50, 63, 70-71, 80, 86, 96. It does not allege the "collaboration" or "close relationship" required to impose disgorgement on a joint and several basis.

None of the information sought even remotely relates to whether the registration statements were a sham.   Indeed, even if the registration statements were a sham, Verdmont nevertheless is entitled to rely upon the Broker Exemption because none of its due diligence would have discovered the sham, as indeed, the SEC itself is unsure of the nature of the so-called sham and can only describe it in the most conclusory fashion and without any admissible evidentiary support.   The SEC has repeatedly failed to describe what Verdmont should have done to discover that the registration statements were a sham if, in fact, they were a sham.   Accordingly, Verdmont is entitled to a protective order.

## CONCLUSION

For the reasons stated above, Verdmont respectfully requests that its motion for a protective order be granted in its entirety, and that the court issue a protective order forbidding the disclosure from Verdmont of documents and information responsive to the SEC's document requests that are prohibited from disclosure under Article 65 of the Panamanian Securities Law.

Dated:  February 12, 2016

Respectfully submitted,

**CARTER LEDYARD & MILBURN LLP**

By _____
    Robert J. A. Zito
    Mark R. Zancolli
    Theodore Y. McDonough
Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: zito@clm.com

*Attorneys for Defendant Verdmont Capital, S.A.*