# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

    v.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., and
VERDMONT CAPITAL, S.A.

          Defendants.

Case No.  15-cv-894
(WHP)

---

## PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO VERDMONT

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff Securities and Exchange Commission ("Commission") hereby requests that defendant Verdmont Capital, S.A. ("Verdmont"), within five (5) days from service hereof, produce all documents requested herein, for inspection and copying at the offices of the U.S. Securities and Exchange Commission, 100 F Street, N.E., Washington, D.C., or at such place and time as is mutually agreed upon by the parties acting through their counsel.

Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this first set of requests for the production of documents is continuing and shall be supplemented when necessary to reflect events that occur and information that becomes available subsequent to Verdmont's service of responses to this first set of requests for the production of documents, in order to ensure that the Verdmont's production is complete.

## **DEFINITIONS AND INSTRUCTIONS**

1. The words "document" or "documents" mean all records and other tangible forms of expression in the possession, custody, or subject to the control of you, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including but not limited to, workpapers, books, manuals, pamphlets, brochures, handbooks, publications, reprints of publications, papers, files, notes, e-mails, graphs, charts, research, analyses, correspondence, memoranda, reports, summaries, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, notes or records of conversations and meetings, summaries of interviews, transcripts, calendars, datebooks, worksheets, contracts, agreements, bank statements, invoices, bills of lading, bills, records of billings, checks (back and front), wire transfer receipts and requests, drafts for money, records of payment, videotapes, audiotapes, and other permanent voice and image recordings (including voice-mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs and other electronic media (including electronic-mail), microfilm, microfiche, and other storage devices. The term "documents" includes finished versions and drafts of documents; it also includes original documents (or copies thereof if the originals are not available), annotations, non-conforming copies, and all copies that differ in any respect from the original.

2. The word "person" includes the plural as well as the singular form of any natural person, firm, unincorporated association, partnership, joint venture, corporation or other form of legal entity or group, including officers, directors, agents, partners, trustees, representatives or employees of any such person or persons.

3. If any document requested in any document request was but is no longer in your present possession or subject to your control or is no longer in existence, in addition to all of the above

information of which you have knowledge, identify such document and state whether such document is or has been:

    (a)    missing or lost;

    (b)    destroyed;

    (c)    transferred to others; or

    (d)    otherwise disposed of.

In any such instance, set forth the surrounding circumstances and any authorization for such disposition, state the approximate date of any such disposition, and, if known, the present location and custodian of such document.

    4. All documents withheld on the grounds of privilege or pursuant to the work product doctrine should be listed on a separate page of your responses setting forth its date, the author, all recipients, the general subject matter, the names of any attorneys who received or sent the document and the reason for the claimed privilege or exemption.

    5. The words "concerning" means relating to, describing, evidencing or constituting.

    6. The words "Verdmont," "you" or "your" refers individually and collectively to Defendant Verdmont Capital, S.A., or its parents, predecessors, successors, subsidiaries, affiliates, owners, principals, controlling shareholders, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

    7. "Goff" refers to Goff, Corp., its securities, parents, predecessors, successors, subsidiaries, affiliates, owners, principals, controlling shareholders, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

8. "Norstra" refers to Norstra Energy Inc., its securities, parents, predecessors, successors, subsidiaries, affiliates, owners, principals, controlling shareholders, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

9. "Xumanii" refers to Xumanii, Inc., its securities, parents, predecessors, successors, subsidiaries, affiliates, owners, principals, controlling shareholders, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

10. "Lornex" refers to Lornex Financial, Ltd., its securities, parents, predecessors, successors, subsidiaries, affiliates, owners, principals, controlling shareholders, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

11. "Nautilus" refers to Nautilus Growth Fund, Inc., its securities, parents, predecessors, successors, subsidiaries, affiliates, owners, principals, controlling shareholders, officers, directors, general or limited partners, associates, employees, agents, independent contractors, persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

12. "Bartlett Trading" refers to Bartlett Trading Inc., its securities, parents, predecessors, successors, subsidiaries, affiliates, owners, principals, controlling shareholders, officers, directors, general or limited partners, associates, employees, agents, independent contractors,

persons acting on its behalf, and any aliases, code names, or trade or business names used by any of the foregoing.

13. The words "control" or "controlled" shall mean (either currently or at any time in the past): (i) owning directly or indirectly; (ii) having the power to purchase, transfer, sell or dispose of; (iii) directing the purchase, transfer, sale or disposition of; and/or (iv) having the power to vote, or to direct the voting of, any security or property.

14. Unless stated otherwise, the relevant time period for each discovery request is from January 1, 2012 to date.

## REQUESTS FOR DOCUMENTS

Produce all of the following documents:

1. All documents concerning Goff, including, but not limited to:

    a.   For each account maintained at Verdmont and which bought, sold, held, owned, or transferred Goff stock and/or share certificates, provide all customer records, account opening documents, "know-your-customer" documents, discretionary authority documents, trading authority documents, beneficial owner information, contracts, share transfer and other agreements, understandings or proposals to buy or sell, client requests, monthly account statements, withdrawals or deposits, credit card statements, documents reflecting anyone who received funds from the accounts, and/or all historical client contact information;

    b.   All trading records, Bloomberg messages, BRASS reports or records, SOES reports or records, Uptix reports or records, Verdmont vault reports or records, any document reflecting an order to buy or sell Goff, recommendations to buy or sell Goff, instructions to buy or sell Goff, the names of the customers, brokers and traders involved, due diligence efforts,

share certificates, trade blotters, share transfer instructions, wire transfer instructions, and/or any other instructions concerning Goff.

    2. All documents concerning Norstra, including, but not limited to:

    a.    For each account maintained at Verdmont and which bought, sold, held, owned, or transferred Norstra stock and/or share certificates, provide all customer records, account opening documents, "know-your-customer" documents, discretionary authority documents, trading authority documents, beneficial owner information, contracts, share transfer and other agreements, understandings or proposals to buy or sell, client requests, monthly account statements, withdrawals or deposits, credit card statements, documents reflecting anyone who received funds from the accounts, and/or all historical client contact information;

    b.    All trading records, Bloomberg messages, BRASS reports or records, SOES reports or records, Uptix reports or records, Verdmont vault reports or records, any document reflecting an order to buy or sell Norstra, recommendations to buy or sell Norstra, instructions to buy or sell Norstra, the names of the customers, brokers and traders involved, due diligence efforts, share certificates, trade blotters, share transfer instructions, wire transfer instructions, and/or any other instructions concerning Norstra.

    3. All documents concerning Xumanii, including, but not limited to:

    a.    For each account maintained at Verdmont and which bought, sold, held, owned, or transferred Xumanii stock and/or share certificates, provide all customer records, account opening documents, "know-your-customer" documents, discretionary authority documents, trading authority documents, beneficial owner information, contracts, share transfer and other agreements, understandings or proposals to buy or sell, client requests, monthly account

statements, withdrawals or deposits, credit card statements, documents reflecting anyone who received funds from the accounts, and/or all historical client contact information;

    b.    All trading records, Bloomberg messages, BRASS reports or records, SOES reports or records, Uptix reports or records, Verdmont vault reports or records, any document reflecting an order to buy or sell Xumanii, recommendations to buy or sell Xumanii, instructions to buy or sell Xumanii, the names of the customers, brokers and traders involved, due diligence efforts, share certificates, trade blotters, share transfer instructions, wire transfer instructions, and/or any other instructions concerning Xumanii.

    4. All documents concerning any Verdmont proprietary account that held, purchased, sold, transferred, or conducted other transactions concerning Goff, Norstra or Xumanii securities, including, but not limited to: the names of the customers, brokers and traders involved; contracts; share transfer and other agreements; Bloomberg messages; understandings or proposals; securities; payments; services; correspondence and email; account opening documents; "know-your-customer" documents; discretionary authority documents; trading authority documents; documents reflecting any beneficial owners; monthly account statements; share transfer instructions; wire transfer instructions; withdrawals or deposits; credit card statements; documents reflecting anyone who received funds from the accounts; order instructions and executed or unexecuted order records; and all notes, minutes or memoranda concerning meetings or any other communications about Goff, Norstra and/or Xumanii.

    5. All documents concerning orders (whether executed, unexecuted, cancelled, or modified) or instructions to buy, sell, hold, transfer or otherwise control (as defined) shares of Goff, Norstra or Xumanii, including, but not limited to: electronic or written communications; Bloomberg messages; information from any order tracking systems; and/or metadata concerning

these order documents including any deletions or modifications to orders after they were created or inputted into the system.

6. All phone recordings of Verdmont concerning Goff, Norstra or Xumanii securities.

7. All documents concerning Verdmont's policies, procedures, and compliance manuals that were or are in effect from January 1, 2012 to date.

8. All documents concerning the reasonable inquiry that Verdmont conducted to determine whether sales of Goff, Norstra or Xumanii by any of Verdmont's clients were in compliance with the United States securities laws and, in particular, in compliance with Section 5 of the Securities Act of 1933.

9. All documents concerning the reasonable inquiry that Verdmont conducted into Lornex, Nautilus and Bartlett Trading, or any other sellers of Goff, Norstra and Xumanii, at the time of account opening and thereafter to determine the identities of the person in control of Lornex, Nautilus and Bartlett Trading and, at the time securities in Goff, Norstra and Xumanii were sold, whether such persons controlled the "free-trading" float in those securities.

10. All documents concerning whether the numbers of shares sold in Goff, Norstra and Xumanii raised red flags with Verdmont that the sales may have constituted distributions of those shares.

11. All public market data in Verdmont's possession pertaining to Goff, Norstra or Xumanii.

12. All Form S-1 registration statements, press releases and materials from penny stock websites pertaining to Goff, Norstra or Xumanii.

13. All documents concerning the status or origin of the Goff, Norstra and Xumanii securities at all times prior to Verdmont's sales.

14. All documents concerning any reverse merger, forward stock split, name change or change in business effected by Goff, Norstra or Xumanii.

15. All documents concerning any sales of penny stocks that Verdmont executed on behalf of Lornex, Nautilus or Bartlett Trading at any time prior to Verdmont's first sale of Goff stock, which took place on or about March 18, 2013.

16. All documents concerning any stock alerts or news alerts that Verdmont received pertaining to Goff, Norstra or Xumanii.

17. All documents concerning any bank or brokerage accounts in Verdmont's name or for its benefit in the United States, other than those at Interactive Brokers and Morgan Stanley.

Dated: February 12, 2015

Respectfully submitted,

*/s/ Richard E. Simpson*
Richard E. Simpson
Securities and Exchange
Commission
100 F. Street, N.E.
Washington, D.C. 20549
(202) 551-4492
simpsonr@sec.gov

Attorney for Plaintiff Securities
and Exchange Commission

Certificate of Service

I HEREBY CERTIFY that on February 12, 2015, I transmitted via e-mail and overnight express the foregoing First Set of Requests for the Production of Documents to Verdmont to the following:

Sigal P. Mandelker
Margaret A. Dale
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
(212) 969-3360
smandelker@proskauer.com
mdale@proskauer.com

Attorneys for Defendants Caledonian
Bank Ltd. and Caledonian Securities Ltd.

Robert A. Zito
Carter Ledyard Milburn LLP
Two Wall Street
New York, New York 10005
(212) 238-8768
zito@clm.com
Attorney for Defendant Verdmont
Capital, S.A.

Richard E. Simpson