UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

vs.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., AND
VERDMONT CAPITAL, S.A.

               Defendants.
------------------------------------------------------------ X

Civ. No. 15-cv-00894
(WHP)(JLC)

**DECLARATION OF KEIRAN HUTCHISON (ONE OF THE JOINT OFFICIAL LIQUIDATORS) IN SUPPORT OF THE PROPOSED SETTLEMENT BETWEEN THE SEC AND CALEDONIAN BANK LTD. AND CALEDONIAN SECURITIES LTD.**

I, KEIRAN HUTCHISON, hereby declare and state as follows:

1. I am a partner of Ernst & Young Ltd. and one of the joint official liquidators (together with my colleague, Claire Loebell, the "JOLs") of Defendants Caledonian Bank Ltd. ("CBL") and Caledonian Securities Ltd. ("CSL," together with CBL, "Caledonian"), in the above-referenced action.

2. I submit this declaration in support of the settlement of the above-captioned matter between Caledonian and the Securities and Exchange Commission ("SEC"). I am competent to testify and, except where otherwise indicated, all facts and statements included in this declaration are based upon my personal knowledge, my review of relevant documents,

1

information provided to me or verified by Caledonian or Caledonian's other professional advisors and/or my opinion based upon my knowledge of Caledonian generally.

**The SEC Action and the Liquidation of CBL and CSL**

3. On 6 February 2015, the SEC filed a Complaint in this Court against CBL and CSL, among others (the "SEC Proceeding").

4. On the same day that the Complaint was filed, the Court granted an application made by the SEC seeking a temporary restraining order freezing all of CBL's United States-based assets and ordered the repatriation of proceeds of share sales transacted by CBL to the United States. (Dkt. 6.)

5. Following public announcement of the filing of the Complaint, CBL entered into negotiations with the SEC resulting in an amendment of the TRO on 8 February 2015 such that the amount of the restraint was lowered to $76,677,852, which was required to be held in a bank account that CBL maintained with The Northern Trust International Banking Corporation ("Northern Trust") (the "First Amended TRO"). (Dkt. 5.)

6. The First Amended TRO was subsequently further amended such that the frozen amount of $76,677,852 was required to be held in bank accounts that CBL maintained with Northern Trust (cash of $10,000,000) and Morgan Stanley Smith Barney LLC ("Morgan Stanley") (securities valued at $66,677,852), which was recorded in Orders of this Court dated 9 February 2015 and 27 February 2015 (the "Amended TRO"). (Dkts. 4, 58.)

7. By the morning of 9 February 2015, CBL was cash flow insolvent. As a result, CBL suspended operation of all services, including accepting deposits and processing withdrawals, from 10:50 am on that day.

8. On 10 February 2015, the Cayman Islands Monetary Authority ("CIMA") exercised its regulatory powers under the Banks and Trust Companies Law (2013 Revision) and the Securities Investment Business Law (2011 Revision) to appoint Ms. Loebell and I as the joint controllers of CBL and CSL respectively.

9. On the same day, after Ms. Loebell and I were appointed as controllers by CIMA, the sole shareholder of CBL and CSL resolved, by way of written resolutions, that CBL and CSL be wound up voluntarily and that Gordon MacRae and Eleanor Fisher of Zolfo Cooper (Cayman) Limited be appointed as joint voluntary liquidators of both of CBL and CSL (the "Voluntary Liquidators").

10. On 11 February 2015, the Voluntary Liquidators filed a petition in the Grand Court of the Cayman Islands ("Cayman Court") seeking, among other relief, that the voluntary liquidation of CBL be continued under the supervision of the Cayman Court. The petition was listed for hearing on an urgent basis for 12 February 2015. There was no application made by the Voluntary Liquidators in respect of CSL.

11. At the hearing on 12 February 2015, the Cayman Court made two orders: the first dismissed the Voluntary Liquidators' petition, holding that the Voluntary Liquidators, although validly appointed on 10 February 2015, did not have and never had power to control CBL's affairs; and the second confirmed the powers that Ms. Loebell and I, in our capacity as

3

controllers, were authorised to exercise during the period of controllership of CBL. Attached hereto as Exhibit A is the Second Order issued by the Cayman Court on 12 February 2015.

12.     On 23 February 2015, upon two winding up petitions filed by CIMA and dated 17 February 2015, the Cayman Court ordered that CBL and CSL be wound up respectively and appointed Ms. Loebell and I as the JOLs of both companies. Copies of the February 23, 2015 Cayman Court Orders are attached hereto as Exhibits B and C.

**Following Appointment of the JOLs**

13.     Upon my appointment as a joint controller (and then subsequently as one of the JOLs), it was very apparent that the SEC Proceeding was an extremely material matter that required urgent attention in the context of the affairs of CBL and CSL. At that time, as described above, CBL had the amount of $76,677,852 frozen in bank accounts located in the United States pursuant to the Amended TRO and there were a number of impending deadlines in the SEC Proceeding by which documentation needed to be filed in this Court in order for CBL and CSL to properly defend the SEC Proceeding.

14.     I have been very conscious since my appointment about the likely high costs of defending the SEC Proceeding, the effect that the expenditure of those costs may have on the estate and the potential for delay to the payment of dividends to creditors out of the liquidation while the SEC Proceeding remained active.

15.     Initially, the focus was on reducing the assets subject to restraint in the United States, and determining if a settlement with the SEC was possible. After negotiations commenced, it was agreed that the freezing order would be reduced to $7,000,000 (from

$76,677,852). The sum was required to be held in a bank account that CBL maintained with Morgan Stanley. This amendment was formalised by order of the Court dated 23 March 2015 ("Stipulated Preliminary Injunction"). (Dkt. 67.) As of the date of this declaration, CBL remains obliged to maintain the sum of $7,000,000 in the Morgan Stanley account in the United States (the "Withheld Sum").

16. Under the circumstances, I consider that the Consent Agreement offers Caledonian the best possible terms on which CBL and CSL can exit the SEC Proceeding. During the negotiations with the SEC and my consideration of the settlement terms, I have had regard to the following benefits which will accrue to Caledonian and its creditors if the Consent Decree is entered into and the settlement approved:

  a. CBL and CSL will suffer no 'out of pocket' liability from the SEC Proceeding. The settlement is, in effect, a settlement which results in the parties walking away and each side bearing their own costs;

  b. the settlement ensures that the Withheld Amount will be recovered into CBL and available for distribution to creditors, and alleviates the risk of the SEC attempting to seek amounts over and above the Withheld Amount for any judgment amount it were to obtain in the liquidations of CBL and CSL;

  c. the SEC Proceeding will, if not settled, represent a significant source of expense to the liquidation estates of CBL and CSL. Costs associated with a litigation of this nature in the United States would likely run in the millions of dollars. While there may be some associated costs to Caledonian to comply with the terms of the

Consent Agreement, they will be small in comparison to the expenses of litigating the claims alleged in the Amended Complaint;

d. the litigation exposure that CBL and CSL has faced by virtue of their role in the SEC Proceeding has necessitated the holding of a reserve by CBL to meet potential liabilities; once the SEC Proceeding is settled, the JOLs will be able to effectively release this reserve, with a view to making payment of a further dividend to the creditors of CBL. If the SEC Proceeding is not settled, the JOLs would continue to maintain this reserve which would stymie further dividends being paid to creditors in a timely manner; and

e. the Liquidation Committee of CBL has been closely involved in discussions related to negotiations with the SEC and has indicated its approval of the settlement terms.

**The JOLs Sought and Received Cayman Court Approval to Enter into the Settlement**

17.     Following the SEC's approval to the terms of the proposed settlement, the JOLs sought the sanction of the Cayman Court to enter into it.

18.     On 10 November 2015, the JOLs filed a summons with the Cayman Court seeking an order authorizing the JOLs to enter into the proposed Consent Decree with the SEC. The JOLs informed the Cayman Court that they determined that reaching a settlement with the SEC would be in the best interest of Caledonian's creditors and the proposed Consent Decree achieves this.

19. All of the creditors were informed of the filing of the summons by way of a circular to the creditors dated December 17, 2015. Interested parties had notice of the hearing and an opportunity to object to the proposed settlement if they wished to do so.

20. The only objector was Sentinel Trust Services Limited ("Sentinel"),[1] the shareholder of the shareholder of CBL and CSL, expressing its objection to any compromise with the SEC on the basis that any such comprise would likely involve the abandonment by Caledonian of any right to commence subsequent proceedings against the SEC. The JOLs noted the concerns of Sentinel but determined that rejecting the settlement offer was not in the best interest of Caledonian's creditors because it would stop the expeditious payment of further dividends to CBL's creditors from the liquidation, would result in expenses and costs to the Caledonian estate, and would likely delay resolution for years given that any action against the SEC would be heavily litigated. The finality achieved by the settlement with the SEC, without having to make any payment, and the ability to access the Withheld Sum and make payment of additional dividends to creditors clearly supports the JOLs' determination to enter into the settlement now.

21. On 26 January 2016, the Cayman Court held a hearing on the JOLs' summons at which Sentinel was represented by counsel. The Cayman Court heard Sentinel's objections, carefully considered the objections, and rejected them, ordering that the JOLs are "authorised to enter a consent agreement . . . in the SEC Proceeding . . . and to take such additional steps and

---

[1] Sentinel is the shareholder of the shareholder of CBL and CSL. CBL and CSL's shareholder is Caledonian Global Financial Services Inc. ("CGFSI"), which appears to be a downstream subsidiary of Sentinel, and also is in official liquidation in the Cayman Islands having been determined by the JOLs to be insolvent. (The JOLs of Caledonian were initially appointed as the joint voluntary liquidators of CGFSI by Sentinel and later appointed as the joint official liquidators of CGFSI unopposed). Sentinel is also one of approximately 1,400 CBL creditors (including depositors), and its claim represents approximately 0.01% of total claims.

execute such additional documents as might be necessary or desirable in order to fulfil the obligations contained in the Consent Agreement. Attached hereto as Exhibit D is a true and correct copy of the January 27, 2016 Order of the Grand Court of the Cayman Islands.

**CBL's and CSL's Current Financial Position**

22. Given that the Liquidations have occurred and given that the businesses of both CBL and CSL have ceased to operate, I am of the opinion that the actual realizable value of assets of CBL and CSL will be significantly less than their total net equity value as a going concern. Indeed, I have presently determined, on a summary basis, that there will be insufficient assets realizable in CBL and CSL to respectively pay each of their creditors in full and, as is required under Cayman Islands law, the JOLs have filed a certificate with the Cayman Court declaring both CBL and CSL to be insolvent.

23. To date, two interim dividends have been declared to the creditors of CBL. Payments have been made to those depositors who have provided the JOLs with valid banking instructions and have complied with all anti-money laundering ("AML") and "Know Your Customer" ("KYC") requirements. Under Cayman Islands law, "priority" creditors of CBL are those depositors with a claim of CI$20,000 or less plus employees. All other creditors of CBL (including depositors with a claim of more than CI$20,000) are not considered "priority" creditors. To the extent that "priority" creditors have satisfied the conditions for payment (including having complied with the AML and KYC requirements), such "priority" creditors have been paid in full. The other creditors of CBL, *i.e.*, those not considered "priority" creditors, have not been paid in full. Based on my experience and my current assessment of the financial

condition of CBL, it is my current estimation that the non-priority creditors will not be paid in full as there are not enough assets to satisfy all of CBL's creditors.

24. Further dividends to creditors (inclusive of depositors) will be declared and paid as soon as assets can be realized into cash and freed from restrictive stipulations, including the $7 million restrained as part of the stipulated preliminary injunction in this case.

25. For the reasons set forth above, the JOLs support the SEC's request that the Court approve the proposed Consent Decree and Final Judgement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: February 25, 2016
Grand Cayman, Cayman Islands

Keiran Hutchison
Partner, Ernst & Young Ltd.