PATRICK R. COSTELLO
DEREK S. BENTSEN
BRIDGET M. FITZPATRICK
ERNESTO G. AMPARO
SECURITIES AND EXCHANGE COMMISSION
100 F Street N.E.
Washington, DC 20549
(202) 551-3982  telephone (Costello)
(202) 772-9245  facsimile
costellop@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

                 v.                              Case No. 15-cv-894
                                          (WHP)(JLC)

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., and
VERDMONT CAPITAL, S.A.

                    Defendants.

_____

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN RESPONSE TO**
**DEFENDANT VERDMONT CAPITAL, S.A.'s MOTION FOR PROTECTIVE ORDER**

Plaintiff Securities and Exchange Commission ("SEC") files this Reply Memorandum of Law to address the arguments raised by Defendant Verdmont Capital, S.A. in its Motion for Protective Order and companion Memorandum of Law (ECF Nos. 175, 179). As set forth in more detail below, Verdmont's arguments misrepresent the facts, are baseless as a matter of law, and therefore should be rejected.

### A. The Discovery at Issue in This Case is Narrowly-Tailored and Directly Related to the SEC's Claims and Verdmont's Defenses.

In its Motion for Protective Order, Verdmont misconstrues the nature of the allegations the SEC has asserted in the Amended Complaint (ECF No. 110), and also attempts to sidestep the affirmative defenses Verdmont itself has raised. Verdmont claims the requested discovery is overbroad and irrelevant because in the Amended Complaint, the SEC only identifies three of Verdmont's customers by name [Lornex Financial Ltd. ("Lornex"), Nautilus Growth Fund, Inc. ("Nautilus"), and Bamfield Equities, Ltd. (f/k/a Bartlett Trading) ("Bamfield")], and only alleges trading in securities of three particular securities [Goff Corp. ("Goff"), Norstra Energy Inc. ("Norstra") and Xumanii, Inc. ("Xumanii")]. Verdmont concludes that any discovery in this case beyond those three particular customers and three particular securities is improper.

Verdmont appears to be confused about two basic things. First, as stated clearly in our Motion to Compel (ECF Nos. 180, 181), the discovery categories at issue here are, in fact, limited just to Goff, Norstra and Xumanii securities.[1] And second, Verdmont tried to limit the SEC's discovery to Lornex, Nautilus and Bamfield – the customers who physically cleared certificates in the subject securities. (ECF No. 177, ¶ 12.) However, thirty *additional* Verdmont customers also traded in the relevant securities in the market. (*Id.*, ¶ 21.) It is the combination of

---

[1] The categories are set forth at pages 4-5 in the Memorandum of Law in support of our Motion to Compel. (ECF No. 181.) Each category contains a reference only to the relevant securities (Goff, Norstra and Xumanii).

*all* customer trades that forms the basis for the volume and proceeds figures the SEC alleges in the Amended Complaint – Verdmont sold 14,000,000 Goff shares for proceeds of $3,526,354; 9,702,000 Norstra shares for $8,073,497; and 17,050,000 Xumanii shares for $6,064,353. (ECF No. 110, ¶¶ 63, 80, 96.)  Accordingly, contrary to Verdmont's suggestion, discovery in this case is not confined just to Lornex, Nautilus and Bamfield.  Indeed, if this litigation was so limited, there would have been no reason for Verdmont to approach these thirty other customers and attempt to obtain waivers from them, as Verdmont's proposed liquidator, Ms. Shamima Bhana, explains in her declaration. (ECF No. 177, ¶¶ 11, 13.)

As the SEC set forth in the Motion to Compel, information concerning *all* of Verdmont's customers who traded in the subject securities is relevant to this case for two primary reasons. First, Verdmont itself made the information relevant the minute it opened the door by invoking the dealer's exemption in Section 4(3) of the Securities Act, 15 U.S.C. § 77d(3), and the brokers' exemption in Section 4(4), 15 U.S.C. § 77d(4).  Judge Pauley detailed the standards applicable to these exemptions in his Opinion and Order entered on November 10, 2015. (ECF No. 140.)  For example, to ascertain whether the original purported offerings in 2011 and 2012 of the securities were, as Judge Pauley phrased, "simulated offerings," the requested customer and trading data will allow the SEC to determine, among other things, whether Verdmont's customers were looking at the securities at issue well in advance of the actual trades made in 2013 and the extent of Verdmont's communications with its customers surrounding the securities themselves. This is one of the reasons why the SEC has asked for a time period of January 1, 2012 to the present for the discovery.

As for the broker's exemption, the requested customer documents, trading data and communications will enable the SEC to look at the length of time the securities were held before

sale and resale; how the customers became interested in the securities in the first place; the due diligence Verdmont performed on the issuers and on its customers; the trading volume; and how many of Verdmont's customers were buying and selling the securities at the same time. The "reasonable inquiry" element of the broker's exemption comes down to the issue of control – did Verdmont have sufficient controls in place to make sure its customers were not colluding with the issuers, and did the substantial sales of the securities (that were previously thinly traded) raise appropriate red flags?

Second, the requested documents are critical to a determination of proceeds as a measure of the SEC's disgorgement claim. As Judge Pauley already observed, whether Verdmont may be jointly and severally liable with its customers for the proceeds of the sales of the securities depends on Verdmont's "relationship to its clients." (ECF No. 140 at 31.) Judge Daniels set forth a similar standard last month in *SEC v. Gibraltar Global Securities, Inc.*, Case No. 13-cv-2575(GBD)(JCF), 2016 WL 153090, at *4 (S.D.N.Y. Jan. 12, 2016), holding that joint and several liability is appropriate when the broker-dealer plays an "indispensable role" in the unregistered distributions of the securities.[2] Accordingly, whether the measure of damages in this case is limited just to Verdmont's commissions, or whether it encompasses sales proceeds, is directly dependent on the customer information contained in the documents the SEC has requested. That information will reveal the relationship Verdmont had with its clients and the actual role it played in the securities offerings in this case.

Verdmont has refused to produce the requested documents for several customers who traded in the relevant securities, including Mr. Justin Mabanta, Jacametra Inversiones S.A.

---

[2] Surprisingly, Verdmont appears to be in agreement with the SEC and Judges Pauley and Daniels as to the correct standard for joint and several liability. (*See* Motion for Protective Order, at 23 n. 7.)

("Jacametra") and Creekside Capital ("Creekside").[3] In her declaration, Ms. Bhana claims Verdmont "diligently sought" waivers from these remaining customers, but she fails to explain what that supposed diligence involved. (ECF No. 177, ¶ 11.) Curiously, she also fails to explain how Mr. Fisher and Mr. Housser were unable to get waivers from themselves for Jacametra and Creekside. This failure exemplifies Verdmont's refusal to satisfy its obligation to reasonably comply with the requested discovery. *See SEC v. Renert*, Case No. 01-cv-1027(PCD), 2002 U.S. Dist. LEXIS 27373 (D. Conn. Jun. 17, 2002); *Graco, Inc. v. Kremlin Inc.*, 101 F.R.D. 503, 527 (N.D. Ill.1984).

Verdmont's recalcitrance extends even to the documents it did produce for Lornex, Nautilus and Bamfield. For example, (i) the time period called for by the request is January 1, 2012 to the present, but Verdmont produced documents only for 2013; and (ii) Verdmont heavily redacted the documents, including even removing the names of Lornex, Nautilus and Bamfield, so the SEC has no way to tell which statements and records pertain to which customer and which trades in the securities were made. These redactions are improper. Verdmont failed to articulate a reason for doing them. Moreover, the customer waivers Verdmont obtained for these customers expressly allow disclosure of all "trading records" and "all account opening information." (ECF No. 45-7.)

Similarly, given such a broad scope of these waivers, Verdmont should have produced (i) wire transfers and destination of funds information for Lornex, Nautilus and Bamfield (Category 2); (ii) the tracing of proceeds information (Category 5); (iii) accounts with common signature

---

[3] As noted in the Motion to Compel, the SEC learned in discovery that Mr. Mabanta was an employee of Verdmont in addition to being a customer. [*See* SEC-BCSC-E-0001708.] He submitted a sworn declaration to the Court that falsely represented that his account at Verdmont had not traded in the subject securities. (ECF Nos. 43-4; 116-1.) We also have learned from reviewing Verdmont's own documents that Jacametra and Creekside were controlled by Verdmont's principals, Messrs. Glynn Fisher and Taylor Housser. (ECF Nos. 116-2; 116-3.)

authority (Category 6); (iv) the relevant orders, tickets and messages (Category 8); and (v) communications concerning the relevant trades (Categories 7, 9 and 10).[4] Indeed, Verdmont was required to provide some of this information pursuant to Paragraph 5 of the Temporary Restraining Order the Court entered on February 6, 2015 (ECF No. 6), but its accounting was not signed "by an agent or officer" of Verdmont and it failed to detail the transfer of proceeds from the sale of Goff, Norstra and Xumanii securities. (See ECF No. 176-17.)

Verdmont argues in its Motion for Protective Order that it intends to prevail on a motion for summary judgment on the dealer's exemption because all that it need show is that the subject securities were sold 40 days after the registration statements for the securities were declared effective. Verdmont then invites the Court to suspend discovery until summary judgment is ruled on – an offer Judge Pauley already rejected as "zealous advocacy, but it is not reality." (ECF No. 157 at 2.) Verdmont's argument, however, demonstrates a clear misunderstanding of the exemption it is claiming and the universe of discovery that is appropriate given that exemption. As Judge Pauley correctly observed in his November 10 Order, the 40-day period is the *later* of the effective date of the registration statement, *or* the date the securities are first bona fide offered to the public. (ECF No. 140 at 25.) Accordingly, it is Verdmont that must present

---

[4] In her declaration, Ms. Bhana states that Verdmont does not have any internal communications or external communications with customers, such as emails, concerning the subject securities, nor does it have any phone recordings of conversations with customers concerning their trades. (ECF No. 177, ¶¶ 17-18.) Verdmont should be required to explain what happened to the records it kept before it evades an order to compel production based on this representation. According to Verdmont's form brokerage account agreement, customer trade orders are accepted by "written, electronic and verbal instructions," and Verdmont maintains an "electronic file, which clearly shows if the instruction was received in writing or verbally through a phone call." (*See*, *e.g.*, SEC-BCSC-E-0001701 at ¶ 11.) Verdmont may tape record the phone conversation, but regardless of how the order is received, Verdmont "will include the order in its registry in rigorous chronological order" and then send the customer "a confirmation of each transaction within the following business day of its completion." (*Id.*) Verdmont's corporate representative confirmed this record-keeping system during his sworn Rule 30(b)(6) deposition in this case: "As I understand, they have several means of placing orders with their broker. One means is by telephone meaning either a phone call or an electronic message. Another means is by e-mail and another means they have access to an on line platform and they place orders through the platform." (Transcript of Deposition of Alejandro Abood at 29:3-8.)

evidence of what a bona fide offering is and when it took place in this matter. And it is Verdmont that must demonstrate the securities are, as Judge Pauley noted, "really and truly (genuinely) being offered to the public, as opposed to, say, a simulated offering." (*Id.*)  The SEC therefore is entitled to both (i) the evidence Verdmont will use to demonstrate the bona fide offering of securities it contends took place, and (ii) any contrary evidence indicating the collusion of customers who ultimately sold the securities in what appear to be coordinated trades.

In short, the requested documents are relevant to the SEC's claims and to Verdmont's defenses.  The requests are narrowly-tailored and proportional to the needs of this case.  As a result of Verdmont's deliberate refusal to produce the requested information, the SEC has been unable to proceed with depositions of the customers or pursue any other discovery that would naturally flow from documents relating to the charged transactions. The sooner Verdmont fulfills its discovery obligations in this case, the sooner we all can move forward.

> **B.    The SEC Will Make Reasonable Efforts to Obtain the Requested Documents from the SMV.**

As we set forth in the Motion to Compel, we will endeavor to work with Panama's securities regulator – the Superintendencia del Mercado de Valores ("SMV") – in an attempt to obtain the requested documents from them.[5]  If the SMV has all of the information we seek, and if Verdmont's principals sign sworn declarations attesting to that fact, then the SEC would not need to pursue the same information from Verdmont.  But none of these things has happened so they cannot relieve Verdmont of its discovery obligations as a litigant in this matter.  After all, it

---

[5] Verdmont somewhat shockingly attaches a confidential settlement communication as an exhibit to the declaration of Verdmont's counsel filed in connection with the Motion for Protective Order. (See ECF No. 176-16.)  The email reflects that, as part of settlement discussions, the parties discussed Verdmont producing the requested documents to the SMV. The SEC would like to clarify that the idea of giving documents to the SMV was part of a settlement discussion which, by its nature, means that civil discovery would be done and the SEC would no longer have a very specific time frame for collecting all of the proof it will need at trial in this matter.

was Verdmont that requested an abbreviated discovery period (ECF No. 156 at 3), and Judge Pauley ruled that fact discovery will close in this matter on April 30, 2016.  The SEC will notify the Court and Verdmont immediately if it receives a production from the SMV.  But we simply do not have time to get the documents from the SMV first and then pursue formal discovery, which we are entitled to, if ultimately that does not work out.[6]

### C. Verdmont's Cases on the Comity Analysis are Inapposite.

Verdmont cites three cases in support of its analysis of the principles of international comity the Supreme Court articulated in *Société Nationale Industrielle Aérospatiale v. District Court*, 482 U.S. 522 (1987). Each of these cases is distinguishable and none of them warrants giving Verdmont the pass on discovery that it is requesting.

For example, in *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517 (S.D.N.Y. 1987), the most significant aspect of the case was the Swiss government's third-party submission of official position papers to the Court describing the strong national interest the country had in its banking laws.  Here, Panama has not taken *any* action in this case either to explain the Panamanian national interest or to protect the secrecy laws.  Courts routinely have applied the principle that a foreign government's failure to express a view that the disclosure at issue threatens its national interests "militates against a finding that strong national interests of the foreign country are at stake." *SEC v. Gibraltar Global Securities, Inc.*, Case No. 13-cv-2575(GBD)(JCF), 2016 WL 1514746, at *5 (S.D.N.Y. April 1, 2015); *Alfadda v. Fenn,*149

---

[6]  Verdmont also proposes the SEC proceed alternatively via letters rogatory to obtain the requested information.  In the parties' joint proposed discovery plan dated December 18, 2015 (ECF No. 156) and again in the parties' joint letter to Judge Pauley dated January 15, 2016 (ECF No. 161), the SEC informed the Court that the letters rogatory process would take a minimum of one year to complete.  Nevertheless, with an extended discovery period, the SEC indicated that it could proceed down that path.  In his Order entered on December 30, 2015 (ECF No. 157), however, Judge Pauley implicitly rejected the letters rogatory option by imposing a fact discovery deadline of April 30, 2016.

F.R.D. 28, 34 (S.D.N.Y. 1993); *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 117-18 (S.D.N.Y. 1981).[7]

Similarly, with respect to *Application of Chase Manhattan Bank*, 297 F.2d 611 (2d Cir. 1962), *Minpeco* makes clear that the rigid comity rules used in *Chase Manhattan Bank* are no longer valid in light of the more flexible standards for comity set forth by the Supreme Court in *Aérospatiale* twenty years after *Chase Manhattan Bank* was decided. *See Minpeco*, 116 F.R.D. at 521-22. And finally, in *CE Int'l Resources Holdings, LLC v. S.A. Minerals Ltd.*, Case No. 12-cv-08087(CM)(SN), 2013 U.S. Dist. LEXIS 85650 (S.D.N.Y. June 12, 2013), the producing party who would have been faced with the prospect of violating Singaporean banking laws was a third-party who was not involved in the litigation. Here, Verdmont is not an innocent third party. Moreover, the court in *CE Int'l Resources* also noted that because the case was in post-judgment collection, the plaintiff had sufficient time to pursue alternative means of obtaining the documents, such as by letters rogatory. Here, the parties have a fast-approaching discovery cutoff of April 30, 2016 and the SEC already has informed the Court that the letters rogatory process will take a minimum of one year to complete. Under these circumstances, Verdmont cannot use Panamanian law to avoid its obligations under the Federal Rules of Civil Procedure.[8]

---

[7] Moreover, where, as here, Verdmont's customers themselves can expressly waive the secrecy protections, then such protections are a private interest and do not implicate the national interests of Panama. *U.S. v. First Nat'l City Bank*, 396 F.2d 897, 903-04 (2d Cir. 1968).

[8] Verdmont slips in an additional, misguided argument concerning the parties' prior agreements to stipulated preliminary injunctions in this matter. The parties' first such stipulation was on February 27, 2015 and provided that the parties may conduct discovery "to the full extent authorized by Panamanian law." (ECF No. 59, ¶ V.) Verdmont extrapolates from that provision that discovery in this case therefore must be subject to Panamanian secrecy laws. The problem with this argument is two-fold. First, the parties later agreed to a modified stipulated preliminary injunction on June 3, 2015 (ECF No. 97), and this superseding stipulation contained no such Panamanian law limitation. And second, these stipulated injunctions applied only to expedited discovery conducted in connection with the SEC's request for a preliminary injunction following the Court's entry of the initial temporary restraining order. Now that the case has proceeded to the merits, any provisions or limitations to discovery set forth in the injunctions are moot.

### D. Verdmont's Proposed Liquidator Has Misrepresented the Circumstances Surrounding the Liquidation Filing.

As a final matter, much of Verdmont's memorandum of law blames the SEC for Verdmont's liquidation – an allegation that has nothing to do with the discovery dispute before the Court, but that Verdmont repeats at almost every juncture in this case. Indeed, Verdmont's proposed liquidator, Ms. Bhana, has submitted a sworn declaration to this Court asserting that the reason Verdmont went into liquidation was because of the SEC's alleged misrepresentations to the Court at the outset of this case and the ensuing asset freeze of Verdmont's customer accounts located in the United States. (ECF No. 177, ¶¶ 7-9.)

However, in its liquidation filing before the SMV, neither Verdmont nor Ms. Bhana identified the SEC's alleged misrepresentations or the asset freeze as causes of the liquidation. Instead, Verdmont told the SMV, in pertinent part:

> As is well known by the [SMV], in February of this year [sic] the SEC commenced an investigation into Verdmont and other financial entities based on transactions by a handful of investors in securities of four issuers, which investigation temporarily affected the clients of these institutions and permanently affected their reputation.
>
> As a result of this unfortunate situation, Verdmont has lost a large part of its correspondent and client relations and thus its capacity to generate new business.

(*See* Verdmont's Liquidation Filing dated January 11, 2016.)[9] Notably, Verdmont did not tell the SMV that the asset freeze was the impetus for the liquidation, nor could it. Indeed, it was Verdmont that ***consented*** multiple times to multiple asset freezes in multiple amounts in this case. (*See*, *e.g.*, ECF Nos. 5, 21, 49, 57, 59.). Moreover, Verdmont's liquidation occurred well over a year after the SEC sought and obtained an asset freeze and at a time when the amount of the freeze had been limited to the purported amount of Verdmont's commissions. It also

---

[9] The SEC can provide the original Spanish version of the liquidation filing upon the Court's request.

.

- 9 -

occurred months after Verdmont received the relevant discovery requests and, thus, should not serve as a justification for evading those requests.

### E. Conclusion.

For the reasons set forth above and in our Motion to Compel, the SEC respectfully submits Verdmont should be required to produce the outstanding documents within 10 days.

Dated: Washington, D.C.
      February 26, 2016

Respectfully submitted,

/s/ Patrick R. Costello
Patrick R. Costello
Derek S. Bentsen
Bridget M. Fitzpatrick
Ernesto G. Amparo

Local Counsel:

David Stoelting
Securities and Exchange Commission
Brookfield Place, 200 Vesey Street
New York, New York 20181
(212) 336-0174  telephone
(212) 336-1323  facsimile
stoeltingd@sec.gov

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-5985
(202) 551-3982  telephone (Costello)
(202) 772-9245  facsimile
costellop@sec.gov

## CERTIFICATE OF SERVICE

    I certify that on February 26, 2016, I electronically filed the foregoing PLAINTIFF'S REPLY MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT VERDMONT CAPITAL, S.A.'s MOTION FOR PROTECTIVE ORDER using the CM/ECF system, which will send notification of such filing to counsel for Defendants Caledonian Bank Ltd., Caledonian Securities Ltd. and Verdmont Capital, S.A. at the following addresses:

| | |
|---|---|
| Robert J.A. Zito<br>Carter Ledyard Milburn LLP<br>Two Wall Street<br>New York, New York 10005<br>zito@clm.com<br>Attorneys for Defendant<br>Verdmont Capital, S.A. | Sigal P. Mandelker<br>Margaret A. Dale<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, New York 10036<br>smandelker@proskauer.com<br>mdale@proskauer.com<br>Attorneys for Defendants Caledonian<br>Bank Ltd. and Caledonian Securities<br>Ltd. |

                                                              /s/ Patrick R. Costello<br>                                                              Patrick R. Costello