UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>CALEDONIAN BANK LTD., *et al.,*<br><br>Defendants. | 15-cv-894 (WHP)<br><br>**ECF Case**<br><br>**Electronically Filed** |
| SENTINEL TRUST SERVICES LIMITED,<br><br>Plaintiff-Intervenor,<br><br>-against-<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Respondent. | |

## MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR SENTINEL TRUST SERVICES LIMITED MOTION TO INTERVENE

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York  10019
(212) 506-1700
(212) 506-1800 (fax)

*Attorneys for Sentinel Trust Services Limited*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTS ................................................................................................. 5

I.      THE PARTIES ......................................................................... 5

II.     THE SEC'S ALLEGATIONS ................................................... 6

III.    THE FREEZE ORDER ............................................................ 7

IV.     CALEDONIAN'S INVOLVEMENT IN THE TRANSACTIONS AT
        ISSUE ..................................................................................... 8

V.      THE PROPOSED SETTLEMENT ........................................... 10

ARGUMENT ........................................................................................ 11

I.      SENTINEL IS A PROPER INTERVENOR ............................... 11

        A.      Sentinel Has The Right To Intervene ............................ 11

                i.      Sentinel Claims A Direct And Substantial Interest ..................... 12

                ii.     Sentinel's Interests Will Be Impaired Without Intervention ....... 13

                iii.    Sentinel's Interests Are Not Adequately Represented ................ 14

                iv.     Sentinel's Motion To Intervene Is Timely ................................. 15

        B.      The Court Should Permit Sentinel To Intervene ..................................... 16

II.     THE SEC AND THE LIQUIDATORS' ARGUMENTS IN OPPOSITION
        TO SENTINEL'S INTERVENTION HAVE NO MERIT ................. 19

        A.      Exchange Act Section 21(g) Does Not Bar Intervention ........................ 19

        B.      Sentinel Is Not Collaterally Estopped From Intervening ....................... 20

        C.      Intervention Would Not Be Inefficient ................................................... 20

CONCLUSION ..................................................................................... 22

i

# Table of Authorities

**Page(s)**

**Cases**

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001) ..................................................................................11

*Callon Petroleum Co. v. Nat'l Indem. Co.*,
   2010 U.S. Dist. LEXIS 136056 (E.D.N.Y. Dec. 23, 2010) ..................................13, 14

*Compagnie Noga d'Importation et d'Exportation S.A. v. Russian Fed'n*,
   2005 U.S. Dist. LEXIS 14432 (S.D.N.Y. July 20, 2005) ..............................12, 16, 17

*Conservation Law Found., Inc. v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992) ..................................................................................12

*Cybernaut Capital Mgmt. v. Partners Group Access Secondary 2008, L.P.*,
   2013 U.S. Dist. LEXIS 117256 (S.D.N.Y. Aug. 7, 2013) .........................................20

*Deutsche Bank Trust Co. Ams. v. Elliott Int'l, L.P.*,
   2009 U.S. Dist. LEXIS 121204 (S.D.N.Y. Dec. 14, 2009) .......................................16

*Ganek v. Leibowitz*,
   2016 U.S. Dist. LEXIS 30721 (S.D.N.Y. Mar. 10, 2016) .........................................13

*Hutto v. Finney*,
   437 U.S. 678 (1978) ............................................................................................13

*Mattingly v. U.S.*,
   939 F. 2d 816 (9th Cir. 1991) ...............................................................................13

*Oneida Indian Nation of Wisc. v. New York*,
   732 F.2d 261 (2d Cir. 1984) ...................................................................................5

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) .......................................................20

*Peterson v. Islamic Republic of Iran*,
   290 F.R.D. 54 (S.D.N.Y. 2013) .............................................................................13

*SEC v. Bear, Stearns & Co.*,
   2003 U.S. Dist. LEXIS 14611 (S.D.N.Y. Aug. 25, 2003) (WHP) ............................21

*SEC v. Callahan*,
   2 F. Supp. 3d 427 (E.D.N.Y. 2014) .......................................................................19

*SEC v. Credit Bancorp, Ltd.*,
   194 F.R.D. 457 (S.D.N.Y. 2000) ....................................................................1, 19, 20

*SEC v. Flight Transp. Corp.*,
   699 F.2d 943 (8th Cir. 1983) ............................................................................. 19-20

*SEC v. Miller*,
   808 F.3d 623 (2d Cir. 2015) ....................................................................................... 2

*SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552 (S.D.N.Y. 2009) ........................... 15

*Smith v. SEC*, 653 F.3d 121 (2d Cir. 2011) ...................................................................... 10

*United States SEC v. Citigroup Global Mkts.*,
   752 F.3d 285 (2d Cir. 2014) ................................................................... 2, 3, 16, 18, 20

*United States v. Hooker Chemicals & Plastics*,
   749 F.2d 968 (2d Cir. 1984) ............................................................................... 11-12

*United States v. New York*,
   820 F.2d 554 (2d Cir. 1987) ..................................................................................... 15

*World Trade Fin. Corp. v. SEC.*, 739 F.3d 1243 (9th Cir. 2014) ..................................... 15

## Statutes and Rules

Exchange Act Section 21(g) ....................................................................................... 19, 20

Securities Act Sections 5(a) and (c) .................................................................................. 6

Rule 24 of the Federal Rules of Civil Procedure ....................................................... *passim*

## Other Sources

Cornelia T.L. Pillard, *Taking Fiction Seriously: The Strange Results of*
   *Public Officials' Individual Liability Under Bivens*,
   <u>Georgetown Law Journal</u>, 88 Geo. L.J. 65 (1999) ...................................................... 13

Jason E. Siegel, *Admit It! Corporate Admissions of Wrongdoing in SEC*
   *Settlements: Evaluating Collateral Estoppel Effects*,
   <u>Georgetown Law Journal</u>, 103 Geo. L.J. 433 (2015) .................................................. 14

Proposed intervenor Sentinel Trust Services Limited ("Sentinel"), the ultimate equity owner of defendants Caledonian Bank, Ltd. ("Caledonian Bank") and Caledonian Securities, Ltd. ("Caledonian Securities," and together with Caledonian Bank, "Caledonian"), respectfully submits this memorandum of law in support of its motion to intervene as of right pursuant to of the Fed. R. Civ. P. 24(a) or, in the alternative, for permission to intervene pursuant to Fed. R. Civ. P. 24(b) to oppose the proposed consent judgment ("Consent Judgment") between Caledonian Bank and Caledonian Securities and the U.S. Securities and Exchange Commission ("SEC").[1]

## PRELIMINARY STATEMENT

The SEC alleged that Caledonian sold unregistered penny stocks -- originally and erroneously claiming that Caledonian did so on its own behalf -- in violation of Sections 5(a) and (c) of the Securities Act of 1933.  On February 6, 2015, the SEC obtained an *ex parte* Freeze Order on all of Caledonian's U.S. assets, which, as this Court has recognized, "precipitated significant collateral damage, including the collapse of [Caledonian Bank]" (Opinion and Order, filed on November 10, 2015, Dkt. No. 140 [the "Opinion"]).

To obtain the Freeze Order, the SEC represented to the Court that Caledonian "owned the securities [at issue], sold them to the public, and lined their pockets with the proceeds" (*id*. at 2) and that the "funds in the accounts to be frozen belonged to Caledonian [], not [to its] clients" (*id*. at 16).  The SEC's representations "bore directly on the propriety and magnitude of the ex parte relief [the SEC] sought."  *Id*. at 16.  They

---

[1] As shown below (*infra*, Argument, Section II.A.), Exchange Act Section 21(g) does not bar the intervention that Sentinel seeks in this SEC enforcement action.  *See, e.g., SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 466 (S.D.N.Y. 2000).

were "emphatic" and "unqualified." *Id.* at 3.  They were also false. *Id.* at 4, 6.  Had the SEC disclosed to the Court that it was seeking "to freeze the assets of unknown customers" of Caledonian, the SEC would have had to meet the higher burden of showing that the funds were "ill-gotten" (*id.* at 16, n. 11)[2] -- a burden the SEC could not have met.

Even though Caledonian warned the SEC that it was "headed for liquidation," the SEC refused to stipulate to reduce the Freeze Order to anything less than $76 million -- a sum that "exceeded Caledonian's capital by a factor of three" and, therefore, necessarily included "depositors' monies." *Id.* at 5-6.  The SEC's "decision to adhere to the $76 million balance was fateful." *Id.* at 6.  The Freeze Order and the attendant publicity concerning Caledonian's alleged involvement in a "pump and dump" scheme caused a "run on the bank" by Caledonian's depositors. *Id.* at 5.  Within two business days, Caledonian could not satisfy depositors' requests for withdrawals and was placed in controllership and, shortly thereafter, liquidation. *Id.* at 7.

Given the egregious nature of the SEC's conduct, and its impact on Sentinel, the Consent Judgment -- which would sweep the SEC's misconduct under the rug -- is anything but "fair and reasonable." *United States SEC v. Citigroup Global Mkts.*, 752 F.3d 285, 293 (2d Cir. 2014) (citation omitted).  While Caledonian's liquidators have recovered the vast majority of the assets owing to Caledonian's creditors, "it does not appear," as the SEC acknowledges, "that Caledonian will have any funds remaining after

---

[2] *See also SEC v. Miller*, 808 F.3d 623, 637 (2d Cir. 2015) ("We require a showing of receipt of ill-gotten gains consistent with *Cavanagh* before an individual can be subject to an asset freeze order.").

it satisfies the claims of its priority creditors." Dkt. No. 182 at 3.  In other words, the SEC's misconduct has completely wiped out Sentinel's equity interest in Caledonian.

Nor is the Consent Judgment in the "public interest," inasmuch as it would whitewash the SEC's misconduct and do nothing to deter future such misconduct. *Citigroup Global Mkts*., 752 F.3d at 293-94.  Perversely, the draconian impact on Caledonian of the SEC's misconduct has served, at least until now, to insulate the SEC from the consequences of that misconduct.  By driving Caledonian into liquidation, the SEC put Caledonian's fate largely in the hands of liquidators who want compensation for the creditors and closure above all else, but have no interest in compensation for the equity or justice.  As a result, the Consent Decree includes provisions -- with the liquidators' consent -- that frustrate any future recovery by Caledonian, directly or derivatively, against the SEC.  For example, the Consent Decree would make Caledonian Securities and Caledonian Bank jointly and severally liable for $25 million in disgorgement -- a figure that, as shown below, is completely untethered to the facts, equity or proportion, given that Caledonian Securities made $1.3 million in commissions, Caledonian Bank made no commissions at all, and neither knowingly facilitated fraud.  But it is a figure that neatly matches the SEC's assessment of Caledonian's net equity immediately prior to the Freeze Order, which the SEC may seek to offset against any judgment against it (or its agents) for the destruction of that equity.

Nor can the Court be confident -- on the record proffered by the SEC -- that "a factual basis exists for the proposed decree." *Citigroup Global Mkts*., 752 F.3d at 293-94.  As shown below, the SEC distorts and mischaracterizes the documents it submits in

support of the Consent Judgment, while the liquidators "frankly" admit that they do not "understand all of the facts and circumstances, good or bad."

Sentinel, therefore, seeks to intervene to object to the Consent Judgment.

Sentinel satisfies each of the four requirements to intervene as a matter of right under Rule 24(a). In the alternative, the Court should exercise its discretion to grant Sentinel permission to intervene under Rule 24(b).

*First*, as the sole shareholder of Caledonian Group Financial Services, which in turn is the sole shareholder of Caledonian Bank and Caledonian Securities, Sentinel is the ultimate equity owner of both. As such, Sentinel has a direct, substantial, and legally protectable interest in the outcome of this action.

*Second*, Sentinel is so situated that, without intervention, the disposition of this action will impair its interest. The risk is not hypothetical. If the action is resolved as set forth in the Consent Judgment, it will, as a practical matter, eliminate any opportunity for Sentinel to recover for the destruction of its equity interest in Caledonian.

*Third*, there is no genuine dispute that Sentinel's interests are not adequately represented by the existing parties. Caledonian's liquidators expressly advised Sentinel that they do not consider themselves "bound" to take Sentinel's interests into consideration in connection with the Consent Judgment.

*Fourth*, Sentinel's motion is timely. Sentinel filed a letter with the Court seeking a pre-motion conference on its proposed motion to intervene to object to the Consent Judgment the same week that the SEC submitted its memorandum in support of the Consent Judgment.

Moreover, even if Sentinel is not entitled to intervene as a matter of right under Rule 24(a), Sentinel should be granted permission to intervene under Rule 24(b). The factual and legal issues posed by Sentinel's proposed intervention -- *i.e.*, the basis for and validity of the Freeze Order, the SEC's misconduct, and the damages proximately caused by it -- overlap with the factual and legal issues already at issue in this action. The SEC and liquidators could not be prejudiced in any cognizable sense by a process ensuring that the Consent Judgment is fair and reasonable and in the public interest. Indeed, Sentinel's participation will significantly contribute to the full development of the underlying factual issues before the Court -- which the current parties have failed to do -- and to the equitable adjudication of all legal questions presented.

Accordingly, as shown further below, Sentinel's motion should be granted, and Sentinel should be permitted to submit an opposition to the SEC's application to approve the Consent Judgment.

## FACTS

## I.   THE PARTIES

Proposed intervenor Sentinel is the sole shareholder of Caledonian Global Financial Services, Inc. ("CGFSI"), which in turn is the sole shareholder of both Caledonian Bank and Caledonian Securities. Compl-in-Intv'n ¶ 6.[3]

Defendant Caledonian Securities Limited ("CSL") is incorporated in the Cayman Islands and had a Securities Investment Business License issued by the Cayman Islands

---

[3] "Compl-in-Intv'n" refers to Sentinel's proposed Complaint-In-Intervention, which is attached as Exhibit A to the accompanying declaration of Trevor J. Welch, dated April 28, 2016 ("Welch Decl."). In evaluating a motion to intervene, the proposed intervenor's allegations are accepted as true. *See Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

Monetary Authority ("CIMA"), which was revoked on February 23, 2015.  CSL was in

the business of providing broker dealer, securities manager and securities advisor

services.  CSL is in liquidation in the Grand Court of the Cayman Islands.  *Id*. ¶ 7.

Defendant Caledonian Bank Limited ("CBL") is incorporated in the Cayman

Islands.  CBL had a Category "A" Banking License issued by CIMA, which was revoked

on February 23, 2015.  CBL is in liquidation in the Grand Court of the Cayman Islands.

*Id*. ¶ 8.

## II.  THE SEC'S ALLEGATIONS

The SEC alleged that Caledonian, among others, allegedly sold unregistered

securities in violation of Section 5(a) and (c) of the Securities Act of 1933 (the "Act"),

originally claiming that Caledonian did so on its own behalf.  Am. Compl. ¶ 2.[4]  The

complaint does not allege that Caledonian was involved in the alleged pump and dump

scheme.  To the contrary, while the complaint "alleges aggressive and fraudulent stock

promotions," the SEC fails to plead any securities fraud claims against any defendant.

Opinion at 2, n.1.  Although the securities were in fact registered, the SEC alleges that the

registrations were "bogus."  Am. Compl. ¶¶ 1, 18, 46, 65, 82.  And while the SEC alleges

that the registrations were a "sham" because the initial stock distributions allegedly were

to "nominees" or "affiliates" of the issuers (*id.* ¶ 34), the SEC fails to allege what

diligence it claims Caledonian could or should have conducted or how any such diligence

could or would have revealed that the registrations of the securities at issue were, as the

SEC alleges, a "sham" (Compl-in-Intv'n ¶ 1).

---

[4] "Am. Compl." refers to the SEC's Amended Complaint, dated May 26, 2015.  Dkt. No.
89-1.

III.   **THE FREEZE ORDER**

On February 6, 2015, the SEC obtained the *ex parte* Freeze Order freezing all of Caledonian's assets in the United States, which "precipitated significant collateral damage, including the collapse of [Caledonian]." Opinion at 1; *see also* Compl-in-Intv'n ¶ 2. In support of its application for the Freeze Order, the SEC falsely represented to this Court, among other things, that the defendants, including Caledonian, "owned the securities, sold them to the public, and lined their pockets with the proceeds." Opinion at 2; *see also* Compl-in-Intv'n ¶ 10. This Court granted the Freeze Order "based on the SEC's representations that the proceeds of the illegal sales and the funds in the accounts to be frozen belonged to Caledonian [], not [to its] clients." Opinion at 16; *see also* Compl-in-Intv'n ¶¶ 2, 11.

Shortly after the Freeze Order was issued, Caledonian informed the SEC that it had "acted as a broker, not a principal, in the transactions" and that, "without a settlement in the next 24 hours, the bank was headed for liquidation." Opinion at 4 and 6; *see also* Compl-in-Intv'n ¶¶ 2, 13. Nevertheless, the SEC declined to seek to vacate the Freeze Order or even inform the Court that the SEC's representations to the Court to obtain the Freeze Order were false. *See* Opinion at 16; *see also* Compl-in-Intv'n ¶ 12. Instead, the SEC and counsel for Caledonian's liquidators stipulated to reductions of the amount frozen -- from all assets, to $76 million, to $7 million -- the "sheer magnitude" of which reductions "suggests that the SEC's foray for temporary relief was government overreach." Opinion at 17; *see also* Compl-in-Intv'n ¶¶ 13, 15, 22. Consequently, the validity of the Freeze Order -- based on the actual facts, and the applicable legal standard -- has never been tested through motion practice. Compl-in-Intv'n ¶ 22.

7

The Freeze Order and the attendant publicity concerning Caledonian's alleged involvement in the pump and dump scheme caused a "run on the bank" by Caledonian's depositors.  Opinion at 5; *see also* Compl-in-Intv'n ¶ 16.  Within days, Caledonian was placed in controllership and, shortly thereafter, in liquidation.  Opinion at 7; *see also* Compl-in-Intv'n ¶ 19.  The SEC has since acknowledged that its conduct caused the destruction of Caledonian's business.  *See* Dkt. No. 95 (Transcript of May 21, 2015 Status Conference) at 5-6 ("THE COURT: The bank collapsed because of your actions, didn't it?  [THE SEC]: Yes, Your Honor."); *see also* Compl-in-Intv'n ¶ 4.  The damages proximately caused by the Freeze Order are nearly one hundred million dollars.  Compl-in-Intv'n ¶ 4.

## IV.    CALEDONIAN'S INVOLVEMENT IN THE TRANSACTIONS AT ISSUE

Before seeking the Freeze Order, the SEC did not know whether Caledonian had sold the securities at issue for its own account or on behalf of its customers.  Opinion at 7-12.  Indeed, declarations since proffered by the SEC "reveal an apparent failure to pose the appropriate inquiries to financial institutions before seeking crippling *ex parte* asset freezes."  *Id*. at 15.[5]  In fact, as a former Managing Director of Caledonian Securities, Nathaniel Orr-Depner, attests, Caledonian Securities was "in the business of providing custodial and brokerage services for its clients," and "[n]either [Caledonian Securities]

---

[5] The SEC asserts that "[a]s part of settlement, Caledonian's court-appointed liquidator turned over voluminous records."  Dkt. No. at 171 at 1.  The SEC acknowledges that these records demonstrate what Caledonian has maintained all along (Dkt. No. at 171 at 7, n. 3) -- *i.e.*, Caledonian sold the securities at issue as a broker, not a principal (Opinion at 4).  It is not clear when the SEC had possession of these documents (*i.e.*, whether before or after the SEC obtained the Freeze Order), but it is clear that "Caledonian did not produce documents pursuant to the settlement process [.]"  Dkt. No. 184 at 2, n.2.  *Compare* Opinion at 11 ("It turns out that [CIMA] . . . had previously produced account statements indicating that Verdmont had acted as a broker, not a principal").

nor [Caledonian Bank] had any beneficial interest in the stock of the four companies referred to in the Complaint (Swingplane, Goff, Norstra, and Xumanii)."  Orr-Depner Decl. ¶¶ 3, 4.[6]  Furthermore, the "certificates appeared to be available for trading to the public," Caledonian Securities did "an internal review to ensure that all of the necessary and required documentation associated with the certificates was included," and only permitted trades in the securities with "approval from its sub-custodians" who conducted their own reviews.  *Id*. ¶ 5.  With respect to the proceeds of the sales and commissions:

> [Caledonian Securities] received a total commission of US $1.3 million in connection with the transactions at issue. *The balance of the proceeds were remitted to the clients*.

*Id*. ¶ 6 (emphasis supplied).  "Although [Caledonian Bank] acted as [Caledonian Securities'] banker in the transactions, [Caledonian Bank] did not receive any direct fees, commissions or revenues."  *Id*.

The SEC now acknowledges that Caledonian's co-defendants "Clearwater and Legacy Global were the primary Caledonian customers trading in the securities."  Dkt. No. at 171 at 7, n. 3.  The SEC also acknowledges that, after the Freeze Order was issued but before Caledonian collapsed, "Caledonian represented [to the SEC] that it terminated the accounts of co-defendants Clearwater in March 2014."  *Id*.  That is representation was true.  As Mr. Orr-Depner attests:

> In or about March 2014, [CIMA] alerted [Caledonian Securities] to the possibility that Clear Water and Legacy Global may have been involved in misconduct relating to their trading activities.  *Caledonian promptly shut down*

---

[6] "Orr-Depner Decl." refers to the First Declaration of Nathaniel Orr-Depner, dated April 27, 2016, a copy of which is attached as Exhibit B to the Welch Decl.

9

> *Clear Water and Legacy Global's accounts*, as well as
> various accounts associated with them.

*Id.* ¶ 7 (emphasis supplied).  "Prior to that time, [Mr. Orr-Depner] was not aware of any

such misconduct by Clear Water and Legacy Global."  *Id.*

Without having taken the appropriate steps to determine the foregoing facts, the

SEC obtained an *ex parte* Freeze Order on all of Caledonian's assets, even though the

allegedly "ill-gotten" proceeds had *never* belonged to Caledonian, but had *always*

belonged to Clear Water and Legacy, which Caledonian had *remitted* to Clear Water and

Legacy nearly a year before.  Indeed, Caledonian was not in a possession of *any* Clear

Water or Legacy assets when the SEC obtained the Freeze Order, "ill-gotten" or

otherwise, because Caledonian had long since closed their accounts.[7]

## V.    THE PROPOSED SETTLEMENT

By letter dated December 17, 2015, the liquidators notified Sentinel of their intent

to seek authorization from the Grand Court of Cayman Islands to enter into the Consent

Judgment.  Compl-in-Intv'n ¶ 30.  On January 19, 2016, Sentinel objected to the Consent

Judgment in the Cayman proceeding.  *Id*. ¶ 31.  In response, the liquidators expressly

asserted that they had:

> noted the concerns of Sentinel but *do not consider*
> *themselves bound* to take such concerns into consideration
> in the context of assessing the appropriateness of the
> Consent Agreement because . . . [it] is presently insolvent,
> and therefore Sentinel does not have an economic interest
> in the liquidation of Caledonian.

---

[7] *Cf., Smith v. SEC*, 653 F.3d 121, 128 (2d Cir. 2011) ("The burden rests with the
Commission to show that the funds in the possession of the [relief defendant] are ill-
gotten.").

*Id.* ¶ 31 (emphasis supplied).  On January 26, 2016, the Grand Court of the Cayman Islands authorized Caledonian's liquidators to enter into the Consent Judgment.  *Id.* ¶ 32.[8]

On February 8, 2016, the SEC submitted the Consent Judgment to this Court for its consideration.  The Consent Judgment provides, among other things, that Caledonian Bank and Caledonian Securities (i) are "permanently restrain[ed] and enjoin[ed]" from selling unregistered securities; (ii) are "jointly and severally liable for [disgorgement in] the amount of $25,000,000" but that the SEC "waives payment" due to their liquidation; and (iii) that they:

> will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Amended Complaint or creating the impression that the Amended Complaint is without factual basis.

Welch Decl. Ex. C ¶ 12.

## ARGUMENT

## I.   SENTINEL IS A PROPER INTERVENOR

### A.   Sentinel Has The Right To Intervene

Under Rule 24(a), the putative intervenor "must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties."

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).  "The

---

[8] The decision of the Grand Court of the Cayman Islands -- which turned on the interests of Caledonian's creditors, not whether the Consent Judgment is fair and reasonable, in the public interest or even whether it has a factual basis -- is not binding here because, among other reasons, the standards applied there are different.  *See infra*, Argument Section II.B.

various components of the Rule are not bright lines, but ranges -- not all 'interests' are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness." *United States v. Hooker Chemicals & Plastics*, 749 F.2d 968, 983 (2d Cir. 1984). Thus, "the test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." *Compagnie Noga d'Importation et d'Exportation S.A. v. Russian Fed'n*, 2005 U.S. Dist. LEXIS 14432, at *11 (S.D.N.Y. July 20, 2005) (WHP) (citations and quotations omitted). As shown below, Sentinel satisfies all four requirements for intervention as of right.

### i.    Sentinel Claims A Direct And Substantial Interest

The advisory committee note to Rule 24 is clear makes clear that, "[i]f an absentee would be substantially affected in a practical sense by the determination made in the action, he should, as a general rule, be entitled to intervene. . . ." Fed. R. Civ. P. 24 (advisory committee note); *see also Conservation Law Found., Inc. v. Mosbacher*, 966 F.2d 39, 41-42 (1st Cir. 1992) (discussing Second Circuit law) ("[courts] view the interest test as a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."); *see also Hooker Chems. & Plastics Corp.*, 749 F.2d at 992, n.21 (the Second Circuit applies a "flexible" approach).

There is no question but that, here, Sentinel would be so affected by the determination of the SEC's motion for approval of the Consent Judgment as the ultimate equity owner of both Caledonian Bank and Caledonian Securities. Compl-in-Intv'n ¶¶ 5, 6. That Sentinel's interest may be "subordinate" to that of Caledonian's clients and

creditors does not render its interest too remote to warrant intervention.  *See Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 59 (S.D.N.Y. 2013) (rejecting argument that "subordinate" interest in funds at issue too remote because proposed intervenors "must only show that they possess a cognizable interest . . . not that they have a compensable interest").[9]  Therefore, Sentinel's interest in this action -- including in releasing the assets that remain subject to the Freeze Order, and seeking damages from the SEC[10] (or its agents)[11] for its wrongful injunction -- is sufficiently direct, substantial and legally protectable to warrant intervention as of right.

ii.     **Sentinel's Interests Will Be Impaired Without Intervention**

Sentinel is so situated that, without intervention, the disposition of this action will impair its interests.  The risk is not hypothetical.  By precluding Caledonian from doing anything even "creating the impression" that the SEC's complaint is "without factual basis" (Welch Decl. Ex. C ¶ 12), the SEC's Consent Judgment may, in effect, release any claims asserted by it or on its behalf against the SEC without compensating Caledonian for the complete destruction of its business, much less compensating Sentinel for the

---

[9] *See also Callon Petroleum Co. v. Nat'l Indem. Co.*, 2010 U.S. Dist. LEXIS 136056, at *10 (E.D.N.Y. Dec. 23, 2010) (recognizing intervention as of right where intervenor's interest "depends on one contingency -- a judgment in Plaintiff's favor -- not a 'double contingency' or a 'sequence of events'").

[10] Sovereign immunity is not a bar to claims against the SEC for wrongful conduct as a litigant.  *See Hutto v. Finney*, 437 U.S. 678, 696 (1978) ("A federal court's interest in orderly, expeditious proceedings 'justifies [it] in treating the state just as any other litigant and in imposing costs upon it' when an award is called for."); *see also Mattingly v. U.S.*, 939 F. 2d 816, 818 (9th Cir. 1991).

[11] *See Ganek v. Leibowitz*, 2016 U.S. Dist. LEXIS 30721 (S.D.N.Y. Mar. 10, 2016) (WHP) (denying motion to dismiss *Bivens* action against government agents).  As a practical matter, any recovery against individual government agents would be paid for by the SEC.  *See* Cornelia T.L. Pillard, *Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability Under Bivens,* Georgetown Law Journal, 88 Geo. L.J. 65, 77 (1999) ("indemnification is a virtual certainty.").

destruction of its equity in Caledonian.[12]  Moreover, if Caledonian successfully asserted

claims against the SEC for damages caused by the Freeze Order, the SEC may seek to set

off any recovery against it by the $25 million judgment against Caledonian, thereby

effectively insulating the SEC from any liability for its misconduct.

### iii.    Sentinel's Interests Are Not Adequately Represented

A proposed intervenor bears only a "minimal burden" in showing that its interest

is not adequately represented.  *Callon Petroleum Co.*, 2010 U.S. Dist. LEXIS 136056, at

*7.  Here, there is no genuine dispute that Sentinel's interests are not adequately

represented by Caledonian's liquidators.  First, Caledonian's liquidators expressly

advised Sentinel that they do not consider themselves bound to consider Sentinel's

interests, as the equity owner of Caledonian Bank and Caledonian Securities.  Compl-in-

Intv'n ¶ 31.

Second, at the April 12, 2016 conference, the Court asked counsel for the

liquidators how the proposed $25 million judgment against Caledonian "account[s] for

defenses that Caledonian might have raised?"  Welch Decl. Ex. D (Transcript of April 12,

2016 Pre-Motion Conference) at 9.  Counsel for the liquidators responded:

> [F]rankly, we never got far enough into discovery to
> understand all of the facts and circumstances, whether good
> or bad, Your Honor.

*Id.* at 10.  In fact, Caledonian Securities earned $1.3 million in commissions on the sale

of the securities at issue, while Caledonian Bank earned no commission or otherwise

---

[12] Moreover, some courts "have estopped parties from relitigating issues based on facts
alleged in a settlement but *not* expressly admitted," although the "decisions are unlikely
to withstand deep judicial scrutiny."  Jason E. Siegel, *Admit It! Corporate Admissions of
Wrongdoing in SEC Settlements: Evaluating Collateral Estoppel Effects*, Georgetown
Law Journal, 103 Geo. L.J. 433, 448-449 (2015) (emphasis in original).

profited from the sale of the securities at issue.  Orr-Depner Decl. ¶ 6; Compl-in-Intv'n ¶ 25.  As a result, even assuming arguendo that the SEC could establish liability,[13] the maximum appropriate disgorgement to be imposed on Caledonian Securities is $1.3 million -- *i.e.,* approximately 1/20 of the proposed $25 million disgorgement -- whereas the maximum appropriate disgorgement to be imposed on Caledonian Bank is zero.

While the Court has the discretion to hold Caledonian "jointly and severally liable for disgorgement of sales proceeds realized by its clients" (Opinion at 31), joint and several liability is typically imposed only where, unlike here, the defendant "collaborated or worked closely with another individual or entity to violate the securities laws [.]"  *SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 563 (S.D.N.Y. 2009) (quotations and citation omitted).  The SEC conspicuously fails to allege that Caledonian participated in the alleged "pump and dump" scheme (Compl-in-Intv'n ¶ 1), and the documents proffered by the SEC in support of the Consent Judgment establish no such thing (*see infra*, Argument, Section I.B.).  The liquidators have not made and will not make such a showing; Sentinel should be permitted to do so.

### iv.    Sentinel's Motion To Intervene Is Timely

The timeliness of a motion to intervene is a question committed to the discretion of the Court.  *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987).  On February 8, 2016, the SEC filed a Memorandum of Law In Support Of Its Consent Judgment With Defendants Caledonian Bank, Ltd. and Caledonian Securities, Ltd.  Dkt. No. 171.  That

---

[13] In fact, among other things, Caledonian is likely to be able to establish its entitlement to the brokers' exemption, which applies where, as here, the broker conducts a "reasonable inquiry" into the circumstances of the transaction.  *World Trade Fin. Corp. v. SEC.*, 739 F.3d 1243, 1248 (9th Cir. 2014).

15

same week, on February 12, 2016, Sentinel filed a letter with the Court seeking

permission to make this motion to intervene.  Dkt. No. 171.  Sentinel's motion to

intervene to object to the settlement is, thus, timely.

### B.    The Court Should Permit Sentinel To Intervene

Assuming for the sake of argument that Sentinel did not have the right to

intervene under Rule 24(a), the Court should nevertheless grant Sentinel permission to

intervene under Rule 24(b).  "Under Rule 24(b), a district court may permit any party to

intervene which has a claim or defense that shares a common question of law or fact with

the main action." *Deutsche Bank Trust Co. Ams. v. Elliott Int'l, L.P.*, 2009 U.S. Dist.

LEXIS 121204, at *3 (S.D.N.Y. Dec. 14, 2009) (citation omitted).  "District Courts are

vested with full discretion to decide whether to permit intervention in such

circumstances." *Compagnie Noga*, 2005 U.S. Dist. LEXIS 14432, at *16.

Permissive intervention is favored where it will "significantly contribute to full

development of the underlying factual issues in the suit and to the just and equitable

adjudication of the legal questions presented." *Compagnie Noga,* 2005 U.S. Dist. LEXIS

14432, at *17.  Where, as here, a district court is presented with a proposed consent

decree, it should "determine whether the proposed consent decree is fair and reasonable,

with the additional requirement that the public interest would not be disserved, in the

event that the consent decree includes injunctive relief." *Citigroup Global Mkts.*, 752

F.3d at 294 (citation and quotation omitted).  Moreover, "the district court will

necessarily establish that a factual basis exists for the proposed decree." *Id.* at 295.

Permitting Sentinel to intervene will contribute to the "just and equitable adjudication of

[these] legal questions" and developing the "underlying factual issues." *Compagnie Noga,* 2005 U.S. Dist. LEXIS 14432, at *17.

First, over the course of this litigation, the SEC and Caledonian's liquidators have conspicuously failed to develop, or even resisted developing, the factual record.  When the SEC's misconduct began to become apparent, the Court had to direct the SEC to move to amend its complaint as a "vehicle" to explain its actions.  Opinion at 9; *see also id*. at 4, n.3 ("SEC failed to docket its motion papers until it was prodded to do so by the Court").  Similarly recalcitrant, Caledonian's liquidators have never even submitted a formal opposition to the Freeze Order, or subsequently moved to vacate or reduce it, which would have been another "vehicle" to develop the record.  Indeed, counsel for the liquidators "frankly" acknowledge that they do not "understand all of the facts and circumstances, whether good or bad," that supposedly justify the Consent Judgment.  Welch Decl. Ex. D at 10.  The liquidators cursory memorandum in support of the Consent Judgement illustrates the point: the liquidators have no interest in developing the factual record.

Second, in its memorandum in support of the Consent Judgment, the SEC suggests that documents it submits in support of the Consent Judgment somehow justify the SEC's overreach in seeking the Freeze Order.  They do not.  The SEC grossly mischaracterizes and distorts the documents.  Orr-Depner Decl. ¶ 9.  For example, based on a Skype exchange, the SEC asserts that Caledonian "bragged to [a] client -- mid pump -- that Caledonian's 'system makes it pretty easy,'" suggesting that Caledonian "assist[ed] its clients in carrying out their pump-and-dump schemes."  Dkt. No. 171 at 2.

17

But that is not what that Skype exchange says or even remotely implies.  As Mr. Orr-Depner attests:

> When I stated that "our system makes it pretty easy," I was referring to [Caledonian Securities'] technological capabilities, specifically its online portal, which enabled [Caledonian Securities] to work multiple orders for multiple clients with multiple brokers at the same time.  In other words, I was lauding [Caledonian Securities'] technology to a client.  I did not state or intend to imply that I had any knowledge of any "pump-and-dump" scheme, let alone state or intend to imply that I was willing or able to "assist its clients in carrying out their pump-and-dump schemes."

Orr-Depner Decl. ¶ 9.  This is just the tip of the iceberg.  The SEC's memorandum in support of the Consent Judgment is replete with such distortions of the record in its transparent *post hac* attempt to justify its misconduct, as Caledonian will demonstrate if permitted to intervene to submit an opposition to the Consent Judgment.

Finally, while courts also "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties" (Rule 24(b)(3)), the SEC and the liquidators will suffer no cognizable prejudice by permitting Sentinel to intervene to oppose the Consent Judgment.  In this enforcement action, the SEC and the liquidators are not free to fashion any consent decree they choose without judicial oversight.  Rather, the Court must adjudicate whether the decree is "fair and reasonable," "in the public interest," and has a "factual basis," whether or not Sentinel is permitted to intervene.  *Citigroup Global Mkts.*, 752 F.3d at 294-95.

Accordingly, given the failure of Caledonian's liquidators to defend Caledonian at all from the SEC's wrongful and unjustified Freeze Order -- and the SEC's desire to close the books as quietly and quickly as possible on its wrongful conduct in obtaining that

Freeze Order -- Sentinel respectfully requests permission to intervene to file papers in opposition to the SEC's application for approval of the Consent Judgment to ensure that the Court has an adequate basis on which to make that determination.

## II.   THE SEC AND THE LIQUIDATORS' ARGUMENTS IN OPPOSITION TO SENTINEL'S INTERVENTION HAVE NO MERIT

On February 12, 2016, Sentinel filed a letter with the Court requesting a pre-motion conference concerning its present motion to intervene.  Dkt. No. 174.  In response, on February 22, 2016, the SEC and the liquidators each submitted a letter (Dkt. Nos. 182 and 183 respectively) arguing that Sentinel should not be permitted to make such a motion because, among other things, (i) Exchange Act Section 21(g) bars intervention, (ii) Sentinel should be collaterally estopped from objecting to the Proposed Consent, and (iii) intervention would be inefficient.  As shown below, those arguments have no merit.

### A.   Exchange Act Section 21(g) Does Not Bar Intervention

The SEC asserts that Section 21(g) bars Sentinel from intervening without the SEC's consent.  Dkt. 182 at 3.  That is not so.  Section 21(g) provides, in pertinent part, that no enforcement action brought by the Commission "shall be *consolidated or coordinated* with other actions not brought by the Commission."  15 U.S.C. § 78u(g) (emphasis supplied).  As district courts in the Second Circuit have repeatedly held, "the specific language of Section 21(g) [does] not apply, on its face, to intervention [.]" *Credit Bancorp, Ltd.*, 194 F.R.D. at 466; *see also SEC v. Callahan*, 2 F. Supp. 3d 427, 438 (E.D.N.Y. 2014).  As the Eighth Circuit has explained, "[t]he purpose of the subsection is simply to exempt the Commission from the compulsory consolidation and coordination provisions applicable to multidistrict litigation."  *SEC v. Flight Transp.*

19

*Corp.*, 699 F.2d 943, 950 (8th Cir. 1983).  "It does not say that no one may intervene in

an action brought by the SEC without its consent."  *Id.*[14] Accordingly, "Section 21(g)

does not bar intervention in this case."  *Credit Bancorp, Ltd.*, 194 F.R.D. at 466 (granting

permission to intervene).

### B.    Sentinel Is Not Collaterally Estopped From Intervening

The liquidators assert that Sentinel should be collaterally estopped from objecting

to the Consent Judgment because its fairness has supposedly already been adjudicated in

the Cayman Islands.  Dkt. 183 at 2.  That is incorrect.  As this Court recognized in

*Cybernaut Capital Mgmt.*, a case cited by the liquidators, collateral estoppel applies

where the issues to be decided are identical, and the "[i]ssues are not identical [where] the

standards governing them are significantly different."  *Cybernaut Capital Mgmt. v.*

*Partners Group Access Secondary 2008, L.P.*, 2013 U.S. Dist. LEXIS 117256, at *5

(S.D.N.Y. Aug. 7, 2013).  In the Cayman proceeding, as the liquidators acknowledge, the

operative question was what was "in the "best interest of the Caledonian stakeholders."

[Dkt. No. 184 at 2].  Here, the questions to be decided are whether the proposed consent

decree is "fair and reasonable" and in the "public interest" (*Citigroup Global Mkts.*, 752

F.3d at 294-95).  Those issues are plainly "not identical."  *Cybernaut Capital Mgmt.*,

2013 U.S. Dist. LEXIS 117256, at *5.  Thus, collateral estoppel is inapplicable.

### C.    Intervention Would Not Be Inefficient

The liquidators argue that it would not be "efficient to permit individual creditors

to intervene."  Dkt. No. 183 at 3.  But Sentinel is not a "creditor."  Sentinel is the sole

---

[14] *Parklane Hosiery Co. v. Shore* is not to the contrary.  439 U.S. 322, 332, n.17 (1979)
("*consolidation* of a private action with one brought by the SEC without its consent is
prohibited by [Section 21(g)]") (emphasis supplied).

equity owner of Caledonian.  Compl-in-Intv'n ¶ 6; Orr-Depner Decl. ¶ 1.  Thus,

permitting Sentinel to intervene would not "open the floodgates to a multitude of

potential intervenors with the same claim."  *SEC v. Bear, Stearns & Co.*, 2003 U.S. Dist.

LEXIS 14611 (S.D.N.Y. Aug. 25, 2003) (WHP).  Sentinel recognizes that:

> [c]oncerns about undue delay and complication resulting
> from permissive intervention are acute where the
> Government, and particularly the SEC, is a party to the
> underlying action.

*Id*. at *8-9.  But, as this Court has explained, the rationale for that general rule "is that the

SEC, in its role as *parens patriae*, is presumed to represent the interests of the investing

public aggressively and adequately."  *Id*. at *9.  The SEC's conduct in this action rebuts

that presumption.  Indeed, the SEC has a competing institutional interest to terminate this

action to avoid further scrutiny of its own misconduct.

## **CONCLUSION**

For the foregoing reasons, Sentinel respectfully requests that the Court grant its

motion to intervene.

Dated:  New York, New York
April 28, 2016

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: /s/ Trevor J. Welch
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Andrew K. Glenn (aglenn@kasowitz.com)
Trevor J. Welch (twelch@kasowitz.com)
James D'Elicio (jdelicio@kasowitz.com)
1633 Broadway
New York, New York  10019
(212) 506-1700

*Attorneys for Proposed Intervenor Sentinel*