

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
100 F STREET N.E.
WASHINGTON, DC 20549-5985

Patrick R. Costello
Assistant Chief Litigation Counsel
Direct Dial: 202.551.3982
E-Mail: costellop@sec.gov

**DIVISION OF ENFORCEMENT**

May 5, 2016

**BY CM-ECF**

Honorable William H. Pauley III
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Securities and Exchange Commission v. Caledonian Bank Ltd., et al.*,
      15-CV-894 (WHP)

Dear Judge Pauley:

Plaintiff Securities and Exchange Commission writes in response to the letter filed by Verdmont Capital, S.A. on May 3, 2016 (Dkt. No. 219), concerning expenses for the depositions of its two principals, Glynn Fisher and Taylor Housser, taken in London on April 6-7, 2016. In the letter, Verdmont's counsel makes a series of accusations that are untrue, and also fails to advise the Court of a number of critical facts that have a bearing on the outcome of these issues, including extravagant travel expenses that counsel incurred. It is unfortunate that Verdmont, as an entity in liquidation with supposed minimal resources, keeps appearing before this Court with baseless motions and continues to drive up the cost of litigation.

## Background

As the Court may recall, during the hearing held on January 21, 2016, the Court considered the SEC's request to depose Messrs. Fisher and Housser. The SEC served notices of deposition on Verdmont pursuant to Fed. R. Civ. P. 30(a) and 30(b)(6), and as permitted by the rule, designated Messrs. Fisher and Housser as the corporate representatives to be deposed. While the Court did not directly rule on the question of whether Messrs. Fisher and Housser may be subject to a deposition under Rule 30(b)(6), having allegedly already resigned as officers of Verdmont, the SEC noted during the hearing that regardless of their resignation, they remained as owners of the company and thus continued in their role as principals.[1]

The Court directed Mr. Zito to make Messrs. Fisher and Housser available for depositions. The SEC proposed New York for the location, given that the case is pending here and all counsel are within the area. However, because Mr. Zito stated adamantly on the record at the hearing that "these people [Messrs. Fisher and Housser] will not fly to the United States,"

---

[1]   Verdmont is unlike a large corporation such as General Motors that has thousands of shareholders. Instead, Verdmont only has a small handful of principals, including Messrs. Fisher and Housser who each own 34.5% of the company. And during the depositions in London, both confirmed that they presently remain owners of the company with the same percentages.

(Ex. A - Tr. 15:20-21), the Court instructed the parties to select an international situs, such as Canada or London. The parties did as the Court directed and chose London.

During the hearing, the SEC stated its willingness to pay the travel costs associated with holding the depositions in London as a means of minimizing the burden and inconvenience with having to go to a foreign location as opposed to the more accessible alternative of New York. (Ex A. - Tr. 5:21-23; 17:2-5; 17:13-17; 19:2-5.)  Had the Court ordered the depositions to take place locally, however, there would have been no need for the SEC to pay any travel costs.  This was done simply as a means of facilitating the depositions internationally and to move this case along. In that regard, any expenses for the actual taking of the depositions that would have arisen had the depositions been conducted in New York as the SEC proposed, would not be subject to the SEC's reimbursement offer. It bears emphasis again that the only reason the parties went to London in the first place was because, as Mr. Zito said, "these people will not fly to the United States."

## The Deposition Transcripts

At the depositions, neither Mr. Zito nor Messrs. Fisher and Housser made a request pursuant to Fed. R. Civ. P. 30(e) to review and sign the depositions.  As such, the court reporter prepared final versions of the transcripts and made them available for purchase. If the depositions had taken place in New York, the transcripts would have been available for review, and either Verdmont or Messrs. Fisher and Housser could have opted to purchase the transcripts at their own expense, just as any litigant or deponent could in any civil case. The fact that the depositions took place in London does not change the outcome. Accordingly, Verdmont may purchase the transcripts if it so desires, and the SEC is not under an obligation to do so.[2]

## Expenses of the Depositions

In his letter, Mr. Zito suggests that because the SEC did not expressly say at the January 21 hearing that any travel expenses must be reasonable and within federal travel guidelines, the same was free license for him and Messrs. Fisher and Housser to incur a combined total of $17,551 in travel expenses. (*See* Dkt. No. 219-3.)  Putting aside the obvious absurdity of such a position, the SEC explains below the history concerning its attempts to make the travel arrangements and the fact that Mr. Zito and the deponents were expressly made aware of the guidelines on multiple occasions.

After London was designated as the situs for the depositions and the dates were selected, the undersigned contacted Mr. Zito's partner, Mark Zancolli, and advised him on March 10, 2016 that the SEC would make the arrangements for Mr. Zito's travel as well as the travel for the deponents, and further advised that the same would be done in accordance with federal travel guidelines.  The undersigned then asked Mr. Zancolli whether the SEC would need to contact the deponents directly or whether he would prefer to have us go through him.  He then advised he would serve as the point of contact for everyone, and we advised that the SEC travel coordinator would be in touch with him. (Ex B.)  Our travel coordinator left Mr. Zancolli a voicemail that

---

[2]  The depositions took place on April 6-7, 2016. The SEC does not understand why, if as Verdmont contends it has an upcoming summary judgment filing deadline (a deadline that Verdmont imposed on itself), Verdmont would not have made a request under Rule 30(e) to review the transcripts and even to prepare an errata sheet if necessary, and also would have waited for *over a month* to resolve any request for copies of the transcripts.

week, and followed up with an email on March 22, 2016, attaching the necessary paperwork that would need to be completed. (Ex C.)  That same day, Mr. Zancolli responded by email stating that Mr. Zito and the deponents had already made their own travel arrangements. (Ex. D.)  Both the travel coordinator and the undersigned emailed Mr. Zancolli to make sure he understood that in order to be reimbursed, the expenses had to comport with federal travel guidelines as previously advised. (Ex. E and F.)  Mr. Zancolli did not respond to those emails.  Notably, had Mr. Zito and the deponents allowed the SEC to make the arrangements as the SEC had requested, the same would have been done in accordance with the guidelines.

It is clear from a review of Dkt. No. 219-3 that Mr. Zito and the deponents ignored the SEC's instructions and incurred extravagant expenses. For example, Mr. Zito flew upper class from New York to London at a cost of $6,130; and Messrs. Fisher and Housser both flew business/first class from Panama to London via Madrid at a cost of $5,765 each. (Dkt. 219-3 at 5, 28, 29, 36, 37.)  By contrast, the undersigned flew coach class at a cost of $836.[3]  Furthermore, Mr. Zito and Messrs. Fisher and Housser far exceeded the government per diem for their hotel stays.  Indeed, the undersigned's total hotel bill was $988. By contrast, Mr. Zito's bill was $2,338 (at almost $600 per night); and Mr. Fisher's bill was in excess of $5,500 (at $711 per night). (*Id.* at 2, 12, 31, 32.)  Moreover, Mr. Housser is claiming reimbursement of $1,467 for hotel accommodations in Madrid for the weekend *after* the depositions concluded. (*Id.* at 26.)

In addition, and rather astoundingly, both Mr. Zito and Mr. Housser incurred expenses in touring St. Paul's Cathedral in London, which they have included in their reimbursement request from the SEC. (*Id.* at 2, 23.)  It goes without saying that the cathedral did not factor into the subject matter of the depositions in any way.

After the SEC received Mr. Zito's reimbursement request of April 19, our travel coordinator again provided the same forms she had previously provided and asked that the forms be completed. (Ex. G.)  And once again, to date, neither Mr. Zito nor the deponents have bothered to return the forms.  Mr. Zito claims in his letter that Messrs. Fisher and Housser "are unwilling to divulge" the information on the forms.  As the Court is aware, the SEC, as an agency of the federal government, has a protocol in place for these types of requests.  And all Mr. Zito and the deponents need do is complete the forms, and the SEC will review the expenses for reasonableness and process the same.  The choice is theirs.

Accordingly, the SEC submits that Verdmont's request for an order or a pre-motion conference should be denied.

                                                    Respectfully submitted,

                                                    Patrick R. Costello

cc:      Counsel of Record (by CM-ECF)

---

[3] Notably, Mr. Zito made his reservation on March 17, 2016 and Messrs. Fisher and Housser made theirs on March 16, 2016, a week *after* the SEC first advised that it would make the travel arrangements and the same would need to comport with federal travel guidelines. (*Id.* at 4, 29, 37.) This issue is not any different than if the Court taxed costs at the conclusion of the litigation under 28 U.S.C. § 1821, which requires "the most economical rate" for travel reimbursement. As a point of comparison, the undersigned's total travel expenses were $2,720; Mr. Zito's were $8,992; and Messrs. Fisher and Housser combined were $8,559.