UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

    vs.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., AND
VERDMONT CAPITAL, S.A.

                Defendants.

——————————————————————

Civ. No. 15-cv-00894
(WHP)(JLC)

**MEMORANDUM OF LAW OF CALEDONIAN BANK LTD.
AND CALEDONIAN SECURITIES LTD. IN OPPOSITION
TO SENTINEL TRUST SERVICES LIMITED'S MOTION TO INTERVENE**

PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
*Attorneys for Defendants Caledonian Bank Ltd.
and Caledonian Securities Ltd.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

COUNTERSTATEMENT OF FACTS ......................................................................................3

    **A.**    The Joint Official Liquidators Are The Parties Authorized To Act On Behalf Of CBL And CSL, Including Entering Into A Settlement ........................3

    **B.**    Sentinel Is Not The So-Called "Ultimate Equity Owner" Of CBL And CSL…….......................................................................................................5

    **C.**    Sentinel Objected To The Consent Decree In The Cayman Islands.......................6

ARGUMENT...........................................................................................................................10

I.    SENTINEL IS COLLATERALLY ESTOPPED FROM RELITIGATING ITS OBJECTIONS AND OPPOSITION TO THE CONSENT DECREE ............................10

II.    SENTINEL FAILS TO SATISFY ALL FOUR REQUIREMENTS FOR INTERVENTION AS OF RIGHT.........................................................................16

    **A.**    Sentinel Does Not Meet The Legal Standard Under FRCP 24(A) .......................16

    **B.**    Sentinel Does Not Have A Cognizable Legal Interest...........................................17

    **C.**    Sentinel's Indirect And Insubstantial Interest Is Not Impaired And Even If It Were, It Is Adequately Represented By The JOLs.............................................21

III.    SENTINEL SHOULD NOT BE PERMITTED TO INTERVENE..................................23

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. McCurry*,
    449 U.S. 90 (1980)....................................................................................10

*Aries Realty, Inc. v. AGS Columbia Assocs.*,
    751 F. Supp. 444,450 (S.D.N.Y. 1990)........................................................13

*Atherton v. FDIC*,
    519 U.S. 213 (1997).................................................................................21

*Boguslavsky v. Kaplan.*,
    159 F.3d 715 (2d Cir. 1998)......................................................................10

*Brooks v. Weiser*,
    57 F.R.D. 491 (S.D.N.Y. 1972) .................................................................20

*Callon Petroleum Co. v. Nat'l Indem. Co.*,
    2010 U.S. Dist. LEXIS 136056 (E.D.N.Y. Dec. 23, 2010), *aff'd*, 472 Fed.
    App'x 57 (2d Cir. 2012)............................................................................19

*Chevron Corp. v. Donziger*,
    886 F. Supp. 2d 235 (S.D.N.Y. 2012)........................................................11

*Coleco Industries, Inc. v. Universal City Studios, Inc.*,
    1986 WL 1809 (S.D.N.Y. Feb. 3, 1986).....................................................10

*Cmty. State Bank v. Strong*,
    651 F.3d 1241 (11th Cir. 2011) .................................................................11

*Cybernaut Capital Management Ltd. v. Partners Group Access Secondary 2008*
    *L.P.*,
    2013 WL 4413754 (S.D.N.Y. Aug. 7, 2013).......................................10, 11, 12,13

*David v. Scottish Re Group, Ltd.*,
    28 N.Y.S.3d. 18 (1st Dep't 2016) ..............................................................21

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014)...........................................................16, 17, 18

*Frostbaum v. Ochs*,
    277 B.R. 470 (Bankr. E.D.N.Y. 2002)........................................................14

*Haber v. Biomet, Inc.*,
   578 F.3d 553 (S7th Cir. 2009) ........................................11

*Howe v. Bank of New York Mellon*,
   783 F. Supp. 2d 466 (S.D.N.Y. 2011)............................20

*In re Caledonian Bank Ltd.*,
   Case No. 15-10324 (MG) (Bankr. S.D.N.Y. Feb. 16, 2015) ....................14

*In re Smith*,
   426 B.R. 435 (Bankr. E.D.N.Y. 2010), *aff'd,* 645 F.3d 186 (2d Cir. 2011) ............14

*ITT Corp. v. United States*,
   963 F.2d 561 (2d Cir. 1992)............................13

*Kreinik v. Showbran Photo, Inc.*,
   400 F. Supp. 2d 554 (S.D.N.Y. 2005)............................13

*Osborne v. Tulis (In re Osborne)*,
   2014 U.S. Dist. LEXIS 82364 (S.D.N.Y. June 17, 2014), *aff'd*, 594 Fed.
   App'x 34 (2d Cir. 2015)............................14

*Pariente v. Scott Meredith Literary Agency. Inc.*,
   771 F. Supp. 609 ((S.D.N.Y. 1991) ............................11

*Peterson v. Islamic Republic of Iran*,
   290 F.R.D. 54 (S.D.N.Y. 2013) ............................18, 19

*Raytech Corp. v. White*,
   54 F.3d 187 (3d Cir. 1995)............................13

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
   467 F.3d 238 (2d Cir. 2006)............................16, 17

*SEC v. Credit Bancorp, Ltd.*,
   194 F.R.D. 457 (S.D.N.Y. 2000) ............................24, 25

*SEC v. Bear, Stearns & Co., Inc.*,
   2003 WL 22000340 (S.D.N.Y. Aug. 25, 2003)............................23, 24

*SEC v. Byers*,
   2008 WL 5102017 (S.D.N.Y. Nov. 25, 2008)............................18, 21

*SEC v. Citigroup Global Markets, Inc.*,
   752 F.3d 285 (2d Cir. 2014)............................14

*SEC v. Citigroup Global Markets, Inc.(Citigroup III)*,
   673 F.3d 158 (2d Cir. 2012)............................15

*SEC v. Everest Mgmt. Corp.,*
   475 F.2d 1236 (2d Cir. 1972) .................................................................22

*SEC v. Petro-Suisse Ltd.,*
   2013 WL 5348595 (S.D.N.Y. Sept. 25, 2013) ...............................18, 22

*SEC v. Randolph,*
   736 F.2d 525 (9th Cir. 1984) .................................................................15

*U.S. v. Pitney Bowes, Inc.,*
   25 F.3d 66 (2d Cir. 1994) .................................................................16, 23

*Zdanok v. Glidden Co.,*
   327 F.2d 944 (2d Cir. 1964) ..................................................................11

**STATUTES**

11 U.S.C. §§ 1509(b)(3) ...............................................................................14

11 U.S.C. § 1520(a)(3) .................................................................................14

**OTHER AUTHORITIES**

18 James Wm. Moore et al., § 132.02(2)(j)(i) (3d ed. 1997 ....................13,14

Fed. R. Civ. P. 23.1(b)(1) ............................................................................20

Fed. R. Civ. P. 24 ........................................................................................17

Fed. R. Civ. P. 24(a) .................................................................................3, 16

Fed. R. Civ. P. 24(a)(2) ...............................................................................22

Fed. R. Civ. P. 24(b) .......................................................................3, 23, 24,25

Fed. R. Civ. P. 44.1 ......................................................................................21

*Fargo v. Godfroy* [1986] 1 WLR 1134 .......................................................21

*Foss v. Harbottle* [1843] 2 Hare 481 .........................................................21

*Re Edennote Ltd. (No. 2)* [1997] 2 BCLC 89 .............................................13

Defendants Caledonian Bank Ltd. ("CBL") and Caledonian Securities Ltd. ("CSL") (collectively, "Caledonian"), respectfully submit this memorandum of law in opposition to Sentinel Trust Services Limited's ("Sentinel") Motion to Intervene as of right pursuant to Fed. R. Civ. P. 24(a) or for permissive intervention pursuant to Fed. R. Civ. P. 24(b).

## PRELIMINARY STATEMENT

Sentinel asks the Court for permission to intervene in order to oppose the proposed consent decree ("Consent Decree") and proposed final judgment ("Final Judgment") between Caledonian and the Securities and Exchange Commission ("SEC").  In so doing, Sentinel is attempting to upset a settlement that was entered into by the parties authorized to do so while omitting and mischaracterizing material facts.  Sentinel not only misrepresents itself and its interests, but it also fails to inform the Court that it appeared before the Grand Court of the Cayman Islands (the "Cayman Court"), represented by counsel, litigated its objection to the Consent Decree, and the Cayman Court considered and rejected Sentinel's objections.  Sentinel never appealed the Cayman Court's decision.

In seeking to disrupt the settlement reached by Caledonian and the SEC, Sentinel argues that it is acting in the "public interest," but this assertion rings false.  Sentinel is a trustee acting only for the ultimate beneficiaries of its interests – all of whom remain unknown.  If Sentinel were allowed to intervene, it would, to the detriment of Caledonian's creditors, derail a settlement negotiated by the appointed representatives of Caledonian under Cayman Islands law – the Joint Official Liquidators ("JOLs") –and the SEC.  Granting the Motion to Intervene would not only delay the unfreezing and disbursement of the remaining $1.3 million subject to the recently modified Stipulated PI[1] to CBL's creditors, but would also cause substantial delay in the

---

[1] On April 20, 2016, counsel for Caledonian approached the SEC seeking a reduction of the Stipulated PI from $7 million to $1.3 million – an amount that represents the amount of CSL's

litigation and further dissipation of the assets of the liquidation estates.  A rejection of the Consent Decree would also require that the JOLs set aside millions of dollars in reserve for potential penalties alleged by the SEC and litigation costs.  This would, in turn, mean that all further dividends to creditors would cease.

Sentinel seeks to intervene in order to assert two purported claims for relief.  First, Sentinel seeks a reduction of the assets subject to the Stipulated PI.  But this is now moot in light of the Modified PI, dated May 6, 2016.  The Consent Decree provides for the release of the remaining assets subject to the freeze.  Second, Sentinel seeks to disrupt the settlement in order to sue the SEC for damages.  Fatal to Sentinel's motion is the simple fact that the purported claims and relief it seeks are not available to it.  Sentinel does not have standing to assert any claims for damages against the SEC because any such claim does not belong to Sentinel – nor can Sentinel assert it on behalf of Caledonian.  Sentinel cannot substitute its decision making for that of the JOLs nor can it compel the JOLs to act as Sentinel desires.

Indeed, the decision of the JOLs to enter into the Consent Decree and forgo a claim against the SEC is properly within the powers granted to the JOLs by the Cayman Court when so appointed.  *See* Exs. B-C to Sworn Declaration of Keiran Hutchison (hereinafter "Hutchison Decl.") (appointing the JOLs to, *inter alia*, "bring or defend any action or other legal proceeding in the name and on behalf of [Caledonian]. . ." and to defend Caledonian in this litigation).  That decision was approved by the liquidation committee of CBL ("Liquidation Committee"), which is similar to a creditors committee, and sanctioned by the Cayman Court.  Thus, Sentinel is collaterally estopped from objecting to the settlement and the Consent Decree because it already had a full and fair opportunity to litigate its objections before its home court when the JOLs

commissions in connection with the sales alleged in the SEC's Amended Complaint.  The SEC agreed to the reduction on April 26, 2016 and the Court "so ordered" Caledonian and the SEC's First Modified Preliminary Injunction ("Modified PI").  (Dkt. 226.)

sought the Cayman Court's authority to enter into the Consent Decree.  This Court has previously held that pursuant to principles of foreign comity, parties who had an opportunity to raise issues in a foreign court, specifically in the Cayman Islands, are collaterally estopped from raising them again in this Court.

Lastly, even if Sentinel were not collaterally estopped (which it is), Sentinel fails to satisfy the requirements to intervene either (i) as of right pursuant to Fed. R. Civ. P. 24(a) because it fails to satisfy *all* four requirements for intervention or (ii) permissively pursuant to Fed. R. Civ. P. 24(b) because its intervention will cause undue complication to the action and delay to CBL and CSL, who are the real parties in interest in this action, and may also lead to significant expenses to the detriment of Caledonians' creditors.  For all of these reasons, Sentinel's motion to intervene should be denied.

## COUNTERSTATEMENT OF FACTS

### A.     The Joint Official Liquidators Are The Parties Authorized To Act On Behalf Of CBL And CSL, Including Entering Into A Settlement

In the days after the SEC filed its lawsuit, a number of actions were taken which led to the liquidation of CBL and CSL and resulted in vesting of control in the JOLs.

On February 10, 2015, the Cayman Islands Monetary Authority ("CIMA"), the primary financial services regulator of the Cayman Islands, appointed Keiran Hutchison and Claire Loebell, both of Ernst & Young Ltd., as the joint controllers ("Joint Controllers") of CBL and CSL.  Hutchison Decl. ¶ 8.  That same day, after the Joint Controllers were so appointed and presented themselves to the offices of CBL and CSL, Caledonian Global Financial Services Inc. ("CGFSI") (by its directors) resolved, by way of written resolutions, to wind up CBL and CSL voluntarily and to appoint joint voluntary liquidators ("Voluntary Liquidators").  *Id.* ¶ 9.  On February 11, 2015, the Voluntary Liquidators filed a petition with the Cayman Court seeking,

*inter alia*, that the voluntary liquidation of CBL be continued under the supervision of the Cayman Court. *Id.* ¶ 10.

On February 12, 2015, the Cayman Court held a hearing on the Voluntary Liquidators' petition and entered two orders. *Id.* ¶¶ 10-11. First, the Cayman Court dismissed the Voluntary Liquidators' petition and determined that the Voluntary Liquidators did not have and never had the power to control CBL's affairs. *Id.* ¶ 11. Second, the Cayman Court confirmed the powers that the CIMA-appointed Joint Controllers were authorized to exercise during the controllership of CBL. *Id.* On February 23, 2015, upon reviewing two winding up petitions presented by CIMA, the Cayman Court ordered that CBL and CSL be wound up and appointed the Joint Controllers to be the JOLs of both CBL and CSL (the "Cayman Proceeding"). *Id.* ¶ 12. The Cayman Court granted the JOLs certain powers, including:

> to bring or defend any action or other legal proceeding in the name and on behalf of [Caledonian] *including the taking of such steps as the [JOLs] may consider appropriate in respect of the following legal proceedings*, either in their own name for and on behalf of [Caledonian], or in the name of [Caledonian] on its behalf:…

> to defend in the name of [Caledonian] the proceedings entitled 'Securities and Exchange Commission v Caledonian Bank Ltd and others, 15 CV 00894' proceeding in the United States District Court for the Southern District of New York….

Hutchison Exs. B-C (emphasis added).

Pursuant to these authorities, over the next few months, the JOLs carefully considered the appropriate steps to take in respect of the SEC litigation and in the winding up of both entities. Hutchison Decl. ¶¶ 15-18. Among other things, the JOLs engaged in settlement discussions with the SEC. *Id.* ¶ 18. In making that determination, the JOLs were conscious of the likely high costs of defending against the SEC's allegations and the effect that the expenditure of those costs would have had on the liquidation estates. *Id.* ¶ 16. The JOLs were also aware of the potential for delay of payments of dividends to creditors while this litigation remained active,

4

understanding that the JOLs would have to maintain millions of dollars in reserve to account for the possibility that the SEC could be successful on its claims. *Id.*

The JOLs reached the proposed settlement and Consent Decree with the SEC after months of hard fought, arms' length negotiations. *Id.* ¶ 18. The JOLs, in consultation with the Liquidation Committee, determined that the terms of the Consent Decree were in the best interest of the Caledonian stakeholders (including Caledonian's creditors, depositors and shareholder) for several reasons, including that CBL and CSL would not have to make any payment to the SEC in respect of the claims against them and that the entry of the Consent Decree will put an end to this litigation, thereby terminating the further dissipation of the liquidation estate's assets through litigation costs, expenses, and a reserve. *Id.* ¶¶ 18-19. The Consent Decree also provides for the release of all funds subject to the now Modified PI so that Caledonian may pay additional dividends to CBL's creditors (including depositors). *Id.* ¶ 19.

**B.    Sentinel Is Not The So-Called "Ultimate Equity Owner" Of CBL And CSL**

Sentinel asserts it is the "ultimate equity owner" of both CBL and CSL. Sentinel Memorandum in Support of Motion to Intervene ("Sentinel Mem.") at 1. This is false. Sentinel's initial Rule 7.1 Statement, filed on April 28, 2016, was inaccurate in claiming that Sentinel had no parent company. (Dkt. 215.) Sentinel's Supplemental Rule 7.1 Statement, filed on May 10, 2016, now discloses a series of entities that sit above Sentinel in its complicated corporate structure. (Dkt. 277.) Both CBL's and CSL's sole shareholder of record is CGFSI. Hutchison Decl. ¶ 23. CGFSI[2] acted as an intermediate holding company for a group of mainly

_____

[2] CGFSI is now in liquidation and controlled by the same JOLs that control Caledonian. *Id.* Indeed, on April 2, 2015, Sentinel, as the sole shareholder of record of CGFSI, resolved to wind up CGFSI voluntarily and appointed the JOLs of Caledonian to be the joint voluntary liquidators of CGFSI. *Id.* ¶ 23, n.2. On June 5, 2015, on the petition of the JOLs, the voluntary liquidation of CGFSI was ordered by the Cayman Court to be continued under its supervision and the JOLs were appointed as the joint official liquidators of CGFSI. Sentinel did not oppose this order. *Id.*

Cayman Islands-registered companies providing financial services within and outside the Cayman Islands. *Id.* ¶ 23, n. 1. CGFSI's sole shareholder of record, in turn, is Sentinel, a Cayman Islands company. *Id.* However, it appears Sentinel holds the shares in CGFSI as a trustee; it appears Sentinel holds legal title to the shares of CGFSI on trust for the beneficiaries or objects of the New World STAR Trust ("NWST"). *Id.* Sentinel's purported ownership interest in CBL and CSL is, thus, at least two levels removed and, given that it appears to hold the shares in CGFSI in a trustee capacity, Sentinel has no economic interest in Caledonian. There are also additional corporate entities and trusts in the larger corporate structure associated with CBL, CSL, CGFSI and Sentinel other than NWST which must, at some point, lead to the ultimate beneficial owners; the inference to be drawn is that the ultimate beneficial owners established this complicated structure to avoid possible liability. *See id*; *see also* Dkt. 277. In light of the existence of these additional entities and trusts in the larger corporate structure associated with CBL and CSL, Sentinel is not the ultimate beneficial or equity owner of CBL and CSL. Indeed, Sentinel should fully disclose its actual interest to the Court as well as the beneficial interests that it represents.

### C.    Sentinel Objected To The Consent Decree In The Cayman Islands

On November 10, 2015, after the SEC's approval of the Consent Decree, as the JOLs were required to do under Cayman Islands law, the JOLs filed a summons with the Cayman Court seeking an order authorizing the JOLs to enter into the Consent Decree. Hutchison Decl. ¶¶ 20-21. All Caledonian creditors were informed of the filing of the summons by way of a circular dated December 17, 2015. *Id.* ¶ 22. Interested parties had notice of the hearing and an opportunity to object if they wished to do so. *Id.* Sentinel was the only objector. *Id.* ¶ 23. None of the other over 1,400 creditors (representing 99.99% of creditors by value) objected nor did the Liquidation Committee. *Id.* ¶ 23, n. 1.

As part of their initial submission to the Cayman Court in support of the summons and sanction application, the JOLs submitted an affidavit on behalf of JOL Keiran Hutchison. *Id.* ¶ 24. In that affidavit, Mr. Hutchison explained that, prior to the filing of the summons, Sentinel had informed the JOLs that it "opposed [] any compromise with the SEC on the basis that any such compromise would likely involve the abandonment by CBL of any right to commence subsequent proceedings against the SEC." *Id.* ¶ 25. Mr. Hutchison explained to the Cayman Court that the JOLs did not consider themselves bound to take Sentinel's concerns under consideration because CBL and CSL are insolvent and CGFSI is equally insolvent and therefore Sentinel does not have an economic interest in the liquidation of CBL and CSL other than by reason of its very small deposit balance representing only 0.01% of total depositor claims against CBL. *Id.* Mr. Hutchison went on to explain, however, that because Sentinel was an indirect stakeholder in CBL and CSL (on a legal basis), the concerns expressed by Sentinel were also raised by other stakeholders in the liquidation and the JOLs committed to representatives of Sentinel that they would give any matters raised or offers made by Sentinel serious consideration, the JOLs considered the issues and concerns raised by Sentinel. *Id.*

The JOLs further informed the Cayman Court that they had concluded that to pursue a claim against the SEC would be "inherently risky and not in the best interests of the creditors" of Caledonian because it would halt the further payment of dividends to creditors; the timeframes for the conclusion of the SEC's action and the proposed claim against the SEC were uncertain; the potential viability of the proposed claim against the SEC appeared "speculative and very difficult to assess"; and would entail ongoing costs to the liquidation estates. *Id.* ¶ 26.

Based on its claimed economic interest in the liquidations of CBL and CGSFI, Sentinel "opposed the JOLs' summons," raising the same objections to the Consent Decree before the Cayman Court that it had made to the JOLs and submitting the affidavits of David Sims, a

director of Sentinel, and of Nathaniel Orr-Depner, a managing director of CSL prior to its liquidation, to support its objections. Hutchison Decl. ¶ 27. In its objection, Sentinel presented a preliminary proposal for the undertaking and funding of the defense of the SEC claim against CBL and CSL and the prosecution of a claim against the SEC. *Id.*

Sentinel's proposal assumed that the value of CBL's proposed claim against the SEC is approximately $100 million, made up of (i) $42,300,000 in creditors' losses; (ii) Sentinel's equity loss of $35,714,285; and (iii) liquidation costs of $21,000,000 (which was not an accurate number). *Id.* ¶ 28. Sentinel's proposal provided that: (i) Kasowitz, Benson, Torres & Friedman LLC ("Kasowitz"), counsel for Sentinel, would undertake the defense against the SEC's allegations and the prosecution of the proposed claim against the SEC on a full contingency fee basis; (ii) Sentinel would pay Kasowitz's out of pocket expenses; (iii) Kasowitz's fee would be 47.5% of any net recovery from the action against the SEC after repaying Sentinel for its out of pocket expenses first. *Id.* ¶ 29. Sentinel also explained that CBL and CSL "must remain the parties of record in the SEC proceedings so a separate assignment of CBL's claim to Sentinel was not practicable" and that final arrangements would be the "subject of a tripartite agreement between Sentinel, Kasowitz and the JOLs." *Id.*

Thereafter, on January 22, 2016, Mr. Hutchison submitted another affidavit to the Cayman Court in further support of the JOLs' request for authority to enter into the Consent Decree and in reply to the matters raised by Sentinel, including Sentinel's proposals. Hutchison Decl. ¶ 30. The JOLs advised the Cayman Court that they had conducted an analysis of Sentinel's proposals and determined, among other things, that Sentinel's calculations were not correct and did not provide any recovery to CBL and CSL, let alone CGFSI. *Id.* ¶¶ 30, 32. Based on Sentinel's proposal, the order of priority for distribution of any amounts recovered from the SEC was: (i) first to Sentinel to repay out-of-pocket expenses associated with the SEC

proceeding; (ii) next to Kasowitz for its contingency fee calculated as 47.5% of net recoveries after payment of Sentinel's out-of-pocket expenses; (iii) then the costs and disbursements associated with controllership and liquidation; (iv) then approximately $35,700,000 to Sentinel representing the claimed loss of shareholder equity; and (v) last, any remainder to be split 50:50 between Sentinel and CBL.  *Id.* ¶ 31.

The JOLs, using Sentinel's proposed highly optimistic recovery of $100 million on the claim against the SEC for the sake of argument, determined that after paying: $48 million to Kasowitz and Sentinel (which includes the contingency fee and Sentinel's out of pocket expenses estimated at $1 million) and $21 million in controllership and liquidation costs and expenses (which, as noted above, is not an accurate number), there would be insufficient funds to pay Sentinel's approximately $35.7 million, representing its purported loss of shareholder equity, and there would be nothing to split 50:50 between CBL and Sentinel.  *Id.* ¶ 32.  After analyzing Sentinel's proposals and noting that under those, Sentinel would stand to receive in excess of $30mm for its purported "equity interest" as shareholder in an insolvent structure, where CBL and CSL remained unable to pay creditors in full (that is, Sentinel proposed to receive a distribution in priority to the creditors of CBL and CSL (and CGFSI)), and in consideration of the other factors that they had already considered, the JOLs reiterated their rejection of Sentinel's proposal and their support for the Cayman Court's approval to enter into the Consent Decree.[3]  *Id.* ¶¶ 32-33.

On January 26, 2016, the Cayman Court held a hearing on the JOLs' summons, at which Sentinel was represented by counsel and argued its position.  Hutchison Decl. ¶ 35.  The Cayman Court considered Sentinel's objections (which included other proposals made by Sentinel at the

---

[3] The JOLs also noted that Sentinel's proposal was unlawful as a matter of Cayman Islands law because it contemplated CBL and CSL remaining as parties to the proposed claim against the SEC but with sole decision making power vested in Sentinel.  *Id.* ¶ 34.

hearing in an attempt to rectify the deficiencies in its initial proposal (*id.*)), and rejected them, ordering that the JOLs are "authorised to enter a consent agreement . . . in the SEC Proceeding . . . and to take such additional steps and execute such additional documents as might be necessary or desirable in order to fulfill the obligations contained in the Consent Agreement."  Hutchison Ex. E.  Sentinel did not appeal the Cayman Court order.  Hutchison Decl. ¶ 35.

## ARGUMENT

## I.    SENTINEL IS COLLATERALLY ESTOPPED FROM RELITIGATING ITS OBJECTIONS AND OPPOSITION TO THE CONSENT DECREE

Sentinel is collaterally estopped from intervening to object to the Consent Decree. Sentinel has already had a full and fair opportunity to object to the Consent Decree before the Cayman Court.  Sentinel's Motion to Intervene, which is nothing more than a proverbial second bite at the apple, should be denied.

The Second Circuit has held that:

> the doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue of law or fact that was decided in a prior proceeding.  Under federal law, a party is collaterally estopped from relitigating an issue if '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Cybernaut Capital Management Ltd. v. Partners Group Access Secondary 2008 L.P.*, 2013 WL 4413754, at *2 (S.D.N.Y. Aug. 7, 2013) (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 719-20 (2d Cir. 1998)).  Additionally, "issues which may be subject to collateral estoppel include not only the ultimate conclusions of law which settle the particular claims asserted but also any underlying legal issues and factual findings which were necessary to support the ultimate conclusions." *Coleco Industries, Inc. v. Universal City Studios, Inc.*, 1986 WL 1809, at *5 (S.D.N.Y. Feb. 3, 1986) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("once a court has

decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue").

In *Cybernaut*, this Court considered the issue of whether "the doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding an issue of law or fact that was decided in a prior proceeding" by a Cayman Islands court and, applying principles of comity, held that it does. *Cybernaut*, 2013 WL 4413754, at *2. The *Cybernaut* petitioners argued that collateral estoppel should not apply to their motion to compel arbitration because issues decided by the Cayman Court were governed by a different standard. *Id.* at *2. This Court rejected that argument. *Id.* (citing *Pariente v. Scott Meredith Literary Agency. Inc.*, 771 F. Supp. 609, 617 (S.D.N.Y. 1991) ("[C]ourts are not free to refuse to enforce a foreign [judgment] at the pleasure of the judges, to suit [ ] individual notion [s] of expediency or fairness.")). This Court concluded:

> [t]his action involves issues identical to those raised in the Cayman Islands proceeding. It was litigated and decided in that forum. The parties fully briefed the application to stay the proceedings in favor of arbitration and Petitioners submitted an expert opinion regarding the federal presumption in favor of arbitration, the scope of the arbitration clause, and the arbitrability of the dispute. The Cayman Islands court nevertheless denied Petitioner's application for a stay. That resolution, for collateral estoppel purposes, is final.

*Id.* at *3 (citing *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964); *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 270-71 (S.D.N.Y. 2012); *Haber v. Biomet, Inc.*, 578 F.3d 553, 557 (7th Cir. 2009); *Comty. State Bank v. Strong*, 651 F.3d 1241, 1265 (11th Cir. 2011)).

*Cybernaut* is controlling here. While Sentinel attempts to frame the key issue before both Courts differently, just as in *Cybernaut*, Sentinel's motion raises the identical issues that it put before the Cayman Court. Sentinel's objections were litigated and decided by the Cayman Court. Sentinel had a full and fair opportunity to present evidence and brief its position. Sentinel failed to convince the Cayman Court and the Cayman Court's resolution of this issue

was necessary to support its final judgment.  As in *Cybernaut*, that decision is final for purposes of collateral estoppel.

The crux of Sentinel's objection – regardless of whether it is couched as an objection to the settlement before the Cayman Court or as an intervention motion – is whether the JOLs are the proper authority to make the business decision on behalf of the estate regarding resolution of this case or, alternatively, whether Sentinel has a sufficient interest to object or intervene in order to halt the settlement, litigate the underlying claims, and use the instant case as a means to sue the SEC for damages.  Sentinel, through an affidavit submitted by one of its directors, stated its position to the Cayman Court as follows:  Sentinel "opposes the relief sought by the JOLs and makes an alternative proposal as to how the New York proceedings should be disposed of." Hutchison Decl. ¶ 27 n.4.  This is the exact same issue that Sentinel raises on its motion to intervene.  The pertinent issue for collateral estoppel purposes is not, as Sentinel claims, whether the Consent Decree is "fair and reasonable" and in the "public interest" (Sentinel Mem. at 20).[4]

The Cayman Court decidedly resolved the underlying issue that Sentinel raises here.  In February 2015, the Cayman Court made the initial determination that the JOLs are the proper authority to make decisions on behalf of Caledonian when it appointed the JOLs and gave them the power to bring or defend any action or legal proceeding, including this action.  *See* Hutchison Exs. B-C.  Subsequently, after carefully considering Sentinel's objections – the same objections that Sentinel raises in its motion to intervene – the Cayman Court affirmed those powers when it authorized the JOLs to enter into the Consent Decree.  *See* Hutchison Ex. E.

As part of its analysis, among other things, the Cayman Court "consider[ed] whether the proposed transaction is in the commercial best interests of the company, reflected *prima facie* by

---

[4] The Court, of course, must decide whether to approve the settlement under the relevant factors, but that question is different in kind from the underlying issue raised by Sentinel's intervention motion.

the commercial judgment of the liquidator."  Sworn Declaration of Rupert Bell (hereinafter "Bell Decl.") ¶ 21 (citing *Re Edennote Ltd. (No. 2)* [1997] 2 BCLC 89.)).  In so concluding, the Cayman Court reviewed all of the relevant evidence filed by both the JOLs and Sentinel and gave legal counsel for both the JOLs and Sentinel the opportunity to address the Cayman Court and make submissions in deciding the JOLs' summons for authority to enter into the Consent Decree.  Bell Decl. ¶¶ 20-21.  The Cayman Court thus considered Sentinel's proposal to pursue a claim against the SEC (and defend this action) and its proposal for the undertaking and funding of such actions in lieu of the Consent Decree and rejected Sentinel's proposal.  *See, e.g.*, Hutchison Decl. ¶¶ 25-35; Hutchison Ex. E.

Sentinel' contention that its objection to the Consent Decree before the Cayman Court is not "identical" to its objection to the Consent Decree before this Court, and that for collateral estoppel purposes, "issues are not identical [where] the standards governing them are significantly different" rings hollow.  Sentinel Mem. at 20 (citing *Cybernaut*, 2013 WL 4413754, at *2).  Courts in this circuit have held that the issues need not be exactly identical and "that two issues may be identical for estoppel purposes if they are substantially or essentially the same," which is the case here.  *Kreinik v. Showbran Photo, Inc.*, 400 F. Supp. 2d 554, 562-63 (S.D.N.Y. 2005) (citing *ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir. 1992) (in a tax case, a court applying the doctrine of collateral estoppel "must determine first whether the issues presented in [an earlier action] are substantially the same as those presented by this action"); *Aries Realty, Inc. v. AGS Columbia Assocs.*, 751 F. Supp. 444,450 (S.D.N.Y. 1990) (plaintiff precluded from relitigating a claim where "the elements of the securities claims [were] essentially the same as those of the fraud claims in the prior litigation"); *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995) ("To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"); 18 James Wm.

Moore et al., § 132.02(2)(j)(i) (3d ed. 1997) ("No two issues are ever completely identical in every procedural, factual, and legal respect.... [T]he question will be whether a legal question that arises in cases involving different claims or causes of action is substantially the same, given the governing law.").

Moreover, the JOLs' decision to enter into the Consent Decree should be given deference by the Court.[5] The JOLs' determination is entirely consistent with the rationale for entering into such settlement agreements articulated by the Second Circuit in *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 295 (2d Cir. 2014). The Second Circuit noted that parties consider various factors in determining whether to enter into settlements with the SEC.

---

[5] On February 16, 2015, the JOLs of CBL commenced an ancillary proceeding under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The JOLs commenced a Chapter 15 recognition proceeding in the U.S. Bankruptcy Court so that comity would be afforded to the decisions and orders of the Cayman Court overseeing the winding up proceeding of CBL (the "CBL Cayman Proceeding") and to protect the assets of CBL located in the United States. *In re Caledonian Bank Ltd.*, Case No. 15-10324 (MG) (Bankr. S.D.N.Y. Feb. 16, 2015). On March 17, 2015, the JOLs obtained an order of the Bankruptcy Court recognizing the CBL Cayman Proceeding pending in the Cayman Court as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code. *See* Order dated March 17, 2015, attached as Hutchison Ex. D. Since the Bankruptcy Court has already recognized the CBL Cayman Proceeding as a foreign main proceeding, the Cayman Court's decisions (including its approval of the Consent Decree) must be granted comity. *See* 11 U.S.C. §§ 1509(b)(3) (Upon recognition, "a court in the United States shall grant comity or cooperation to the foreign representative." ). The JOLs are also authorized to operate CBL's business and exercise the rights and powers of a trustee within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1520(a)(3). Therefore, the JOLs and their decisions are subject to a standard akin to the business judgment rule. Indeed, courts routinely invoke a business judgment standard when reviewing trustee decisions, including settlement decisions. *See Osborne v. Tulis (In re Osborne)*, 2014 U.S. Dist. LEXIS 82364, at *7 (S.D.N.Y. June 17, 2014), *aff'd*, 594 Fed. App'x 34 (2d Cir. 2015) (affirming the approval of a settlement of a cause of action held by the chapter 7 trustee under the business judgment standard); *In re Smith*, 426 B.R. 435, 441 (Bankr. E.D.N.Y. 2010), *aff'd*, 645 F.3d 186 (2d Cir. 2011) (explaining that a trustee has "discretion in deciding whether to litigate an estate's claims . . . is not required to litigate every cause of action the estate may hold. . . [and] need only press claims that, in its business judgment are, in the estate's best interest"); *see also Frostbaum v. Ochs*, 277 B.R. 470, 475 (Bankr. E.D.N.Y. 2002) ("Because the cost of collection efforts, or litigating a claim, are often more burdensome than beneficial, the 'business judgment' rule has been employed in a variety of bankruptcy contexts.").

> The numerous factors that affect a litigant's decision whether to compromise a case or litigate it to the end include the value of the particular proposed compromise, the perceived likelihood of obtaining a still better settlement, the prospects of coming out better, or worse, after a full trial, and the resources that would need to be expended in the attempt.

*Id.* (quoting *SEC v. Citigroup Glob. Markets Inc.(Citigroup III)*, 673 F.3d 158, 164 (2d Cir. 2012) & citing  *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) ("Compromise is the essence of a settlement.")).

The JOLs have sound reasons for entering into the Consent Decree with the SEC.  The Consent Decree resolves one of the largest open contingent liabilities against Caledonian, ensures that Caledonian will not incur significant litigation costs and expenses to litigate the merits of the SEC's allegations, and will result in additional dividends to Caledonian's creditors (including depositors) enabling them to obtain a substantial recovery on their claims.  *See* Hutchison Decl. ¶ 19.  In exercising their judgment to enter into the Consent Decree, the JOLs carefully analyzed (i) the likelihood of success on the merits compared to the present and future benefits offered by the settlement; (ii) the prospect of complex, protracted, and expensive litigation absent a settlement; and (iii) the benefits to be received by Caledonian and its stakeholders.  The JOLs concluded that all these factors weighed in favor of entering into the Consent Decree and rejecting Sentinel's objection.  *Id.* ¶¶ 19, 25-26, 33.

This action has created the largest contingent liability of the liquidation estates.  If the Consent Decree is not approved, the SEC's claims against Caledonian – if successful – could lead to a potential exposure of over $75 million, plus possible civil penalties, and necessitate that a larger reserve be put in place.  *Id.* ¶ 39.  Absent a settlement, the SEC has made clear it intends to vigorously prosecute this action which would further increase litigation expenses and costs and deplete funds that would otherwise be available to distribute to Caledonian's creditors (including depositors).  *Id.* ¶¶ 19, 39.  In contrast, the Consent Decree relieves Caledonian from

any further litigation expenses and provides certainty as to the outcome: no "out of pocket" liability for the liquidation estate. *Id.* ¶ 19. Because of the Consent Decree, the JOLs will be able to pay further dividends to Caledonian's creditors and will be able to discharge the litigation reserve currently in place. As a result, once the settlement is finally approved, creditors of CBL will be able to receive further dividends. The estimated outcome as of today is approximately 91 cents on the dollar on the low side and approximately 94 cents on the high side. *Id.* ¶ 38.

The Court should find that Sentinel is collaterally estopped from intervening to oppose the Consent Decree, which the duly authorized representatives of Caledonian have determined to be in the estates' best interest and which decision has been approved by the Cayman Court over Sentinel's express objection – a decision that Sentinel did not appeal.

## II.     SENTINEL FAILS TO SATISFY ALL FOUR REQUIREMENTS FOR INTERVENTION AS OF RIGHT

### A.     Sentinel Does Not Meet The Legal Standard Under FRCP 24(A)

Sentinel fails to satisfy all of the requirements of intervention as of right. Federal Rule 24(a) provides, in relevant part:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Intervention as of right is granted when the proposed intervenor:

> (1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) has an interest not adequately represented by the other parties.

*U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). The failure to "satisfy *any one* of these four requirements is a sufficient ground to deny" intervention. *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,

467 F.3d 238, 241 (2d Cir. 2006)) (emphasis in original).  Sentinel fails to satisfy at least three of these four requirements.  As such, its application to intervene as of right should be denied.

**B.      Sentinel Does Not Have A Cognizable Legal Interest**

For an interest to be "cognizable" under Rule 24, it must be "direct, substantial and legally protectable.  In other words, an interest that is remote from the subject matter of the proceeding or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Floyd*, 770 F.3d at 1060 (internal quotations omitted).

Sentinel has almost zero economic interest in Caledonian.  Sentinel is but one of approximately 1,400 creditors (including depositors) of CBL (whose claim equates to 0.01% of creditors' claims by value).  However, Sentinel is not seeking to intervene based on its creditor status; rather, Sentinel relies on its status as to what it calls the "ultimate equity owner" of CBL and CSL.  Sentinel first represented to the Court that it was the "owner of all of the equity" of CBL and CSL (Feb. 12, 2016 Sentinel Pre-motion Conf. Ltr. (Dkt. 174) at 1), then more recently and after Caledonian informed the Court that this was not accurate and was not what Sentinel represented in the Cayman Islands, Sentinel claimed to be the "ultimate equity owner" of CBL and CSL.  Sentinel Mem. at 1.  But even this is not accurate.  Based on Sentinel's Supplemental 7.1 Statement, it is clear that while Sentinel is the sole shareholder of record of CGFSI (which, in turn, is the sole shareholder of record of CBL and CSL), there appear to be multiple corporate entities above Sentinel, some of which – like Sentinel –appear to merely hold assets as trustees whose beneficial owners are not known.  It appears that Sentinel holds the shares in CGFSI as a trustee and that it holds legal title to (and therefore no economic interest in) the shares of CGFSI on trust for the beneficiaries or objects of NWST, which appears to be another intermediary in a long and complex chain of corporate entities and trusts that make up this corporate structure. Hutchison Decl. ¶ 23 n. 1.  At least two corporate levels removed from, but by no means the

"ultimate equity owner" of CBL and CSL, Sentinel's has no legally protectable interest because it has practically zero economic interest in the liquidation of CBL and CSL (to the extent Sentinel has an economic interest, it is not relied upon) and is thus "too indirect and insubstantial" to be legally protected.  *Floyd*, 770 F.3d at 1060.

Sentinel acknowledges that its interest is "subordinate" to those of Caledonian's depositors and other creditors.  Sentinel Mem. at 13.  Courts routinely deny motions to intervene in cases with multiple creditors or victims who have divergent claims and interests and where "it would not be efficient or effective to permit individual creditors to intervene as parties."  *SEC v. Byers*, 2008 WL 5102017, at *1 (S.D.N.Y. Nov. 25, 2008).  *See also SEC v. Petro-Suisse Ltd.*, 2013 WL 5348595, at *1, 3 (S.D.N.Y. Sept. 25, 2013) (denying intervention as of right to an investor group seeking to intervene to oppose a proposed SEC Consent Decree after holding that the group did not have a "legally protectable" interest in forcing the SEC to settle the group's claims on more favorable terms).

Sentinel relies on *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54 (S.D.N.Y. 2013) for the argument that even if Sentinel's interest is subordinate to the interests of Caledonian's creditors, that fact would not render Sentinel's interest too remote to warrant intervention. Sentinel Mem. at 13.  However, *Peterson* bears no factual resemblance to the case at hand and is otherwise entirely distinguishable.  In *Peterson*, the plaintiffs held unsatisfied default judgments against Iran arising out of various acts of Iranian-sponsored terrorism and the proposed intervenors also held a default judgment against Iran and several other entities.  290 F.R.D. at 55. The court granted intervention on the grounds that the proposed intervenors had a cognizable interest in plaintiff's litigation to recover funds from Iran because its default judgment against

Iran was substantial and legally protectable.  *Id.* at 59.  *Peterson* is patently inapposite to Sentinel's proposed intervention.[6]

Sentinel's motion should also be denied because it has no standing to bring any of its purported claims for relief.  Initially, at the April 12, 2016 conference, Sentinel argued that the relief it sought, if allowed to intervene, was twofold: "[a] settlement that is in the best public interest and damages *for itself*, to the extent that they are available, from the SEC."  (Dkt. 213 at 15:3-5.) (emphasis added).  In its motion papers, Sentinel now argues that if allowed to intervene, it will move to reduce the assets subject to the Stipulated PI and, oppose the Consent Decree to defend against the SEC's allegations and seek damages from the SEC for "wrongful injunction."  *See e.g.,* Sentinel Mem. at 13, 18.  It is now unclear what claim Sentinel actually seeks to bring and whether Sentinel seeks damages for itself or on behalf of CBL and CSL. Regardless, Sentinel is precluded from bringing any purported claims for relief because it has no standing to do so.  Instead, the JOLs, with authority over CBL and CSL "to bring or defend any action or other legal proceeding in the name and on behalf of [Caledonian]," are the only proper

---

[6] Sentinel also relies on *Callon Petroleum Co. v. Nat'l Indem. Co.*, 2010 U.S. Dist. LEXIS 136056 (E.D.N.Y. Dec. 23, 2010), *aff'd*, 472 Fed. App'x 57 (2d Cir. 2012), another case that bears little factual resemblance to this matter and that is not binding precedent in this Court.  In *Callon*, the plaintiff had obtained a judgment against the proposed intervenor in a prior proceeding, after which the proposed intervenor was placed into rehabilitation with the judgment still unsatisfied.  The plaintiff commenced a case against the reinsurer on the bond, at which point the proposed intervenor sought to intervene in the action through its rehabilitator.  The court granted the motion to intervene because the plaintiff sought to divert insurance proceeds that belonged to the rehabilitator, so the "Rehabilitator's interest in this case thus depends on one contingency—a judgment in Plaintiff's favor—not a 'double contingency' or a 'sequence of events.'" *Callon Petroleum*, 2010 U.S. Dist. LEXIS 136056, at *10.  *Callon* does not support Sentinel's position.  Sentinel is not intervening because its property is at issue in the SEC action, and its recovery depends on multiple contingencies, including a successful claim challenging the Consent Decree, successful defense of the SEC's claims against Caledonian, and obtaining a monetary recovery in Caledonian's favor against the SEC for alleged misconduct in an amount that, after paying off the creditors of Caledonian and its parent, CGSFI, provides compensation to Sentinel.  Thus, Sentinel's interest depends on a sequence of events involving multiple contingencies.

party to assert (on behalf of CBL and CSL) the interests and claims Sentinel purports to advance. Hutchison Exs. B-C.

Moreover, the authority to bring any action on behalf of Caledonian or defend against an action (including the decision to settle any action) squarely belongs solely to the JOLs.  As Sentinel acknowledged in its papers to the Cayman Court, it has no direct claim against the SEC for damages and such a claim would have to be brought in the name of Caledonian.  Hutchison Decl. ¶ 29.  At best, Sentinel is attempting to bring some kind of derivative-type claim on behalf of Caledonian.  But Sentinel cannot do so for two critical reasons.

First, "[i]t is well settled that the right to sue derivatively is an attribute of ownership, justified on the theory that the plaintiff in such a suit seeks to recover what belongs to the corporation, because as a co-owner, it also belongs to him.'"  *Howe v. Bank of New York Mellon*, 783 F. Supp. 2d 466, 474 (S.D.N.Y. 2011) (quoting *Brooks v. Weiser*, 57 F.R.D. 491, 494-95 (S.D.N.Y. 1972)).  Sentinel is not an owner or shareholder of Caledonian.  Instead, Sentinel holds the shares of the shareholder of Caledonian as a trustee and holds legal title to those shares on trust for the beneficiaries or objects of NWST.  Sentinel therefore cannot bring *any* derivative claim on behalf of Caledonian.[7]

Second, the "internal affairs doctrine," which "provides that the rights of shareholders of a foreign company (including the right to sue derivatively) are determined by the law of the place where the company is incorporated," requires that the Court apply Cayman Islands law to determine whether Sentinel has standing to bring a derivative action against the SEC because Sentinel, CBL and CSL are all Cayman Islands companies.  *See Howe*, 783 F. Supp. 2d at 475

---

[7] Pursuant to the Federal Rules, a complaint for a derivative action "must allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later on devolved on it by operation of law." *Id.* (quoting Fed. R. Civ. P. 23.1(b)(1)).

(citing *Atherton v. FDIC*, 519 U.S. 213, 244 (1997)) (holding that the "internal affairs doctrine requires the application of Cayman Islands law to determine standing" of bondholder seeking to bring derivative claims on behalf of issuer who was a Cayman Islands LLC); *David v. Scottish Re Group, Ltd.*, 28 N.Y.S.3d. 18, 20 (1st Dep't 2016) (holding that under the "internal affairs doctrine" "claims concerning the relationship between the corporation, its directors and a shareholder are governed by the substantive law of the state or country of incorporation.").

Under Cayman Islands law, only the company can bring proceedings for a wrong done to it.[8]  Bell Decl. ¶ 11.  This is commonly referred to as the rule in *Foss v. Harbottle* [1843] 2 Hare 481.  *Id.* ¶¶ 11, 13.  Individual shareholders can only bring a derivative action to enforce the rights of a company in exceptional circumstances.  *Id.* ¶ 15.  However, where a company is in liquidation and its affairs are controlled by an independent liquidator, no such exceptional circumstances exist, and the rule in *Foss v. Harbottle* controls.  *Id.* ¶¶ 16-17 (citing *Fargo v. Godfroy* [1986] 1 WLR 1134.).

Thus even if Sentinel were a shareholder of Caledonian (which it is not), it could not bring a derivative action on behalf of Caledonian given its liquidation status.  It is undisputed, therefore, that Sentinel has no cognizable interest in the proposed claim against the SEC. Sentinel should not be allowed to circumvent Cayman Islands law or the Cayman Court.

### C.    Sentinel's Indirect And Insubstantial Interest Is Not Impaired And Even If It Were, It Is Adequately Represented By The Jols

As noted *supra*, Sentinel has no direct and substantial interest and its only interest is by virtue of its status as a creditor (which Sentinel is not relying on) and because of its indirect and two levels removed interest in Caledonian.  This indirect and insubstantial interest is not impaired and is being adequately represented by the JOLs.  *See Byers*, 2008 WL 5102017, at *1

---

[8] Pursuant to Fed. R. Civ. P. 44.1, this Court may determine issues of foreign law and "may consider any relevant material or source."

(denying intervention in SEC action because proposed intervenor could not show that its interests were not adequately represented by the SEC or by the court-appointed receiver of defendant).

Sentinel argues that the Consent Decree will impair its claim against the SEC if granted. Sentinel Mem. at 13-14.  The Consent Decree, however, has no bearing on the question of whether Sentinel, who is not a party to the Consent Decree and Final Judgment, can bring a private action against the SEC.  *See Petro-Suisse*, 2013 WL 5348595, at *3 (denying a group of investors' motion to intervene to object to a settlement with the SEC since it "would fail under the third prong of the Rule 24(a)(2) standard, because their interest would not be impaired by the entry of the Consent Judgment [as it] does not preclude the Investors from bringing private actions against the Defendants.") (citing *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972).[9]

Furthermore, notwithstanding Sentinel's assertions, the JOLs – as well as the Cayman Court – considered Sentinel's concerns and its interests.  Sentinel claims that the JOLs "expressly advised Sentinel that they do not consider themselves bound to consider Sentinel's interests" (Sentinel Compl-in Intv'n ¶ 31) but in fact the JOLs did consider Sentinel's interests. In the same submission that Sentinel selectively quotes from, the JOLs stated that:

> . . . the concerns expressed by Sentinel have been raised by other stakeholders in both liquidations.  As such, and in order to enable the JOLs to reach an informed decision, we sought legal advice.  The JOLs considered the advice and determined that pursuing any action against the SEC would not be in the best interest of the creditors of the Companies.  The finality achieved by the settlement with the SEC, without having to make any payment, and the ability to access the [amount frozen] Sum and return additional dividends to creditors clearly supports the JOLs determination to enter into the settlement now.

---

[9]  In addition, for the reasons set forth in pp. 19-21, *supra*, Sentinel does not have standing to and cannot bring a derivative claim for damages against the SEC on behalf of Caledonian, irrespective of the terms of the Consent Decree.

Hutchison Decl. ¶ 25, n. 3.  The Cayman Court then similarly considered Sentinel's interests, including all other proposals Sentinel made during oral argument, when it held a hearing on January 26, 2016.  *Id.* ¶ 35.

For the reasons stated above, Sentinel cannot satisfy the requirements for intervention as of right.

## III.     SENTINEL SHOULD NOT BE PERMITTED TO INTERVENE

Sentinel's Motion to Intervene should similarly be denied under Rule 24(b)'s standard for permissive intervention.  Federal Rule 24(b) states, in relevant part that "[u]pon timely application anyone may be permitted to intervene in an action: . . .(2) when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b).  However, this Court has previously held that "permissive intervention will not be granted, even where there is strong commonality of fact or law, where such intervention would cause undue delay, complexity or confusion in a case."  *SEC v. Bear, Stearns & Co., Inc.*, 2003 WL 22000340, at *2 (S.D.N.Y. Aug. 25, 2003).

Sentinel's contention that no "cognizable prejudice" to CBL and CSL will result by its intervention is specious.  Sentinel Mem. at 18.  Allowing Sentinel to intervene to oppose the Consent Decree would result in substantial delay in the resolution of this action because, among other things, it would re-open the case and require the parties to engage in extensive costly and time-consuming fact-discovery, motion practice, a potential trial, and appeals.  *See Pitney Bowes*, 25 F.3d at 73-74 (affirming denial of permissive intervention when the parties had already agreed to the terms of the consent decree and "intervention would require renegotiation, and delay . . .").

Even if Sentinel could properly bring a claim against the SEC, if Sentinel were permitted to intervene, any such claim would bring a level of complexity and delay that would outweigh

any advantages of a single disposition of any purported common issues.  Any claim against the

SEC would be hard fought, expensive and an uphill battle.  Indeed, Sentinel does not merit party-

status simply because it disagrees with the fact that the actual parties reached an agreement or

that the JOLs decided to enter into the Consent Decree rather than continue litigation with the

SEC.  As this Court stated in *Bear Sterns*, "[i]ntervention is not an avenue for advancing the

competing agendas of non-parties to a settlement."  *Bear Stearns*, 2003 WL 22000340, at *2.

Sentinel relies on *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 457 (S.D.N.Y. 2000) to

support its argument that it should be permitted to intervene under FRCP 24(b).  *Credit Bancorp*

is inapposite.  In *Credit Bancorp*, the court permitted the proposed intervenors, who were

defendants' customers, to intervene to bring claims against the *defendants* in an SEC

enforcement action, whereas Sentinel seeks to bring a claim (or attempt to force CBL and CSL to

bring a claim) against the *SEC*.  The *Credit Bancorp* court's analysis of the proposed

intervenors' interest is wholly inapplicable here.

Furthermore, applying the court's Rule 24(b) analysis in *Credit Bancorp* to the current

matter would necessitate rejecting Sentinel's request to intervene.  Applying the "broad

discretion" that Rule 24(b) vests in the district court to "determine the fairest and most efficient

manner of handling a case with multiple parties and claims," the court permitted intervention in

*Credit Bancorp* because it was "doubtful that intervention…[would] prolong the SEC's

involvement in the matter or complicate the SEC's efforts to obtain a resolution of its claim

against the named defendants."  *Credit Bancorp*, 194 F.R.D. at 468.  Specifically, the court noted

that "to the extent that the SEC seeks to obtain a consent judgment against some or all of the

defendants in this action, the ministrations of customers intervening in the action are likely to

have little, if any, impact."  *Id.*  This is plainly not the case here.  Sentinel seeks to intervene for

the express purpose of opposing the Consent Decree and advancing a claim against the SEC

while defending against the SEC's enforcement action.  Obviously, intervention of that sort

would greatly impact the SEC's efforts to obtain a resolution against CBL and CSL, the named

defendants. Applied to Sentinel's attempt to intervene in this matter, the *Credit Bancorp* analysis

demonstrates that intervention under Rule 24(b) would be improper.

## <u>CONCLUSION</u>

For the foregoing reasons, Caledonian respectfully requests that the Court deny Sentinel's

Motion to Intervene.

Dated:  New York, NY
        May 11, 2016

Respectfully submitted,

PROSKAUER ROSE LLP
/s/ Margaret A. Dale

Margaret A. Dale
Sigal P. Mandelker
Massiel Pedreira
Eleven Times Square
New York, New York 10036
(212) 969-3360
mdale@proskauer.com
smandelker@proskauer.com
mpedreira@proskauer.com

*Attorneys for Defendants Caledonian Bank
Ltd. and Caledonian Securities Ltd.*