UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

       vs.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., AND
VERDMONT CAPITAL, S.A.

                 Defendants.

---------------------------------------------------- X

Civ. No. 15-cv-00894
(WHP)(JLC)

**DECLARATION OF
RUPERT BELL IN
OPPOSITION TO  THE
MOTION OF SENTINEL
TRUST SERVICES LIMITED
TO INTERVENE**

    I, RUPERT BELL, Attorney-at-law, of 190 Elgin Avenue, George Town, Grand Cayman
KY1-9001, Cayman Islands, hereby declare and state as follows:

    1.    I am a partner at Walkers in the Cayman Islands which, is Cayman Islands legal
counsel to Keiran Hutchison and Claire Loebell, the joint official liquidators (the "JOLs") of
Defendants Caledonian Bank Ltd. ("CBL") and Caledonian Securities Ltd. ("CSL," together
with CBL, "Caledonian"), in the above-referenced action.

    2.    I submit this declaration as part of Caledonian's opposition to the motion to
intervene filed by Sentinel Trust Services Limited ("Sentinel"), a Cayman Islands-domiciled
entity.  I am competent to testify and, except where otherwise indicated, all facts and statements
included in this declaration are based upon my personal knowledge or my review of relevant
documents and information.

BACKGROUND & QUALIFICATIONS

3.      Walkers is one of the largest offshore law firms in the world, with offices in the Cayman Islands, the British Virgin Islands, Bermuda, London, Jersey, Dubai, Hong Kong, Singapore and Dublin.  Walkers provides legal services to leading Fortune 100 and FTSE 100 global corporations and financial institutions, capital markets participants, investment fund managers and growth and middle-market companies.  In the Cayman Islands, Walkers is one of the two largest firms, having been established in 1964.

4.      I was admitted as an attorney in Queensland, Australia, in 2004 and practiced as an associate at the firm of Clayton Utz in Australia until joining the firm of Walkers in March 2008 as an associate. I became a partner of Walkers in July 2015.  The focus of my practice is commercial litigation, restructuring and insolvency. I routinely give advice in relation to shareholders' rights and derivative actions.

SOURCES OF THE LAW OF THE CAYMAN ISLANDS

5.      The Cayman Islands is a British Overseas Territory, and as such, the laws of the Cayman Islands are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law brought to the Islands by the early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands (the "Cayman Courts"); (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the

2

Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

6.     Where no specific local statutory provision applies, the Cayman Courts will generally apply English common law as adapted to the circumstances of the Cayman Islands.  On questions governed by the common law, the doctrine of judicial precedent applies.  The court of first instance is the Grand Court of the Cayman Islands (the "Grand Court") which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong: *Re Bank of Credit & Commerce International (Overseas) Limited* [1994-95] CILR 56, at page 59.  A copy of the judgment in this case is attached hereto as Exhibit A.  There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal.  The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "Privy Council") which sits in London and which is comprised of members of the English Supreme Court (the highest court in England, formerly known as the Judicial Committee of the House of Lords (the "House of Lords")) and senior judges from other Commonwealth countries.  The Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

7.     There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports.  Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue.  Where there is no Cayman Islands authority on a particular issue, the Cayman Courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of

other Commonwealth jurisdictions.  Decisions of the English Court of Appeal and Supreme Court are regarded as highly persuasive.  So too are decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions and decisions of the highest courts of the other developed Commonwealth jurisdictions such as Australia, New Zealand and Canada.

LEGAL ISSUES

8.      I have been asked to provide my opinion on certain aspects of Cayman Islands law concerning the ability of a shareholder of a company in liquidation to prosecute a derivative action for and on behalf of the company as it is considered to be relevant to the Motion to Intervene brought by Sentinel on April 28, 2016.  For this purpose I have been provided with a copy of the Notice of Motion to Intervene, the Declaration of Trevor J. Welch In Support of Proposed Intervenor Sentinel's Motion to Intervene, and the exhibits annexed thereto, and the Memorandum of Law in Support of Proposed Intervenor dated April 28, 2016.

SEPARATE LEGAL PERSONALITY

9.      Under Cayman Islands law, as under English law, an incorporated company is a creature of statute, and a legal person in its own right, distinct from its shareholders.  It is not the nominee, agent or "alias" of its shareholders. The assets and liabilities of the company are those of the company alone, and not those of its shareholders. This is so, even where the company is the wholly owned subsidiary of another company. These principles were established by the seminal decision of the House of Lords in *Salomon v. Salomon (A) & Co. Ltd* [1897] A.C. 22, which has been recognised and applied in the Cayman Islands in cases such as *In Re Swiss Oil*

4

*Corp* [1988-89] CILR 319, and *Cayman Hotel and Gulf Incorporated v. Resort Gems Limited* [1992-93] CILR 372.  Copies of these decisions are attached hereto as Exhibits B to D.

10.     Only in exceptional circumstances will the Cayman Courts disregard the separate legal existence of a company and pierce the corporate veil (*Adams v. Cape Industries PLC* [1990] Ch. 433).  Such piercing of the corporate veil requires, at a minimum, that the corporate structure is used by a person to evade limitations imposed on his conduct by law, or such rights and relief against him as third parties already possess.  *Adams v. Cape Industries PLC* was followed by the Grand Court in *Walker International Holdings Limited and AF-CAP Incorporated v. Olearius Limited, Société Nationale Des Petroles Du Congo, Caisse Congolaise d'Amortissement and Republic of Congo* [2003] CILR 457, in which the Grand Court declined to pierce the corporate veil on the basis that there was not sufficient evidence that the corporate entity in question was in fact a sham or façade.  Copies of these decisions are attached hereto as Exhibits E and F.

THE RULE IN FOSS V HARBOTTLE

11.     Under Cayman Islands law, as under English law, only the company itself, by its proper organ, can bring proceedings for a wrong done to that company.  This is normally referred to as the rule in *Foss v. Harbottle* [1843] 2 Hare 461.  A copy of this decision is attached hereto as Exhibit G.

12.     The proper organ to bring proceedings is, *prima facie*, the board of directors or, where the company is in liquidation, the liquidator.  The legal rights of the company belong to

the company, and not to its shareholders, so an individual shareholder cannot, in general, bring an action to enforce those rights:

*"A personal action would subvert the rule in Foss v Harbottle and that rule is not merely a tiresome procedural obstacle placed in the path of a shareholder by a legalistic judiciary. The rule is the consequence of the fact that a corporation is a separate legal entity. Other consequences are limited liability and limited rights. The company is liable for its contracts and torts; the shareholder has no such liability. The company acquires causes of action for breaches of contract and for torts which damage the company. No cause of action vests in the shareholder"* (see *Prudential Assurance Co. Ltd. v. Newman Industries Ltd (No. 2)* [1982] Ch. 204 at 224).

A copy of the cited decision is attached hereto as Exhibit H.

13.     The rule in *Foss v Harbottle* has been applied by the Cayman Islands Court of Appeal in *Schultz v. Reynolds and Newport Limited* [1992-93] CILR 59 and *Svanstrom v. Jonasson* [1997] CILR 192.  In both of those cases, the Cayman Islands Court of Appeal cited a passage from Jenkins L.J. in *Edwards v. Halliwell* [1950] 2 All E.R. 1064, later described by the English Court of Appeal in *Prudential v. Newman Industries* at 210 as "*(t)he classic definition of the rule in Foss v. Harbottle*" as follows:

*"(1) The proper plaintiff in an action in respect of a wrong alleged to be done to a corporation is, prima facie, the corporation. (2) Where the alleged wrong is a transaction which might be made binding on the corporation and all its members by a simple majority of the members, no individual member of the corporation is allowed to maintain an action in respect of that matter*

6

*because, if the majority confirms the transaction, cadit quaestio; or, if the majority challenges the transaction, there is no valid reason why the company should not sue. (3) There is no room for the operation of the rule if the alleged wrong is ultra vires the corporation, because the majority of members cannot confirm the transaction. (4) There is also no room for the operation of the rule if the transaction complained of could be validly done or sanctioned only by a special resolution or the like, because a simple majority cannot confirm a transaction which requires the concurrence of a greater majority. (5) There is an exception to the rule where what has been done amounts to a fraud and the wrongdoers are themselves in control of the company. In this case the rule is relaxed in favour of the aggrieved minority, who are allowed to bring a minority shareholders' action on behalf of themselves and all others. The reason for this is that, if they were denied that right, their grievance could never reach the court because the wrongdoers themselves, being in control, would not allow the company to sue."*

Copies of these decisions are attached hereto as Exhibits I to K.

14.     Accordingly, the rule in *Foss v. Harbottle* necessarily dictates that only a company, as distinct from its shareholders, has standing to vindicate alleged wrongs to the company.

DERIVATIVE ACTIONS

15.     There are a number of established exceptions to the rule in *Foss v. Harbottle* (as is contemplated in section (5) of the judgment in *Prudential v. Newman Industries* referred to in paragraph 13 above), pursuant to which a shareholder of a company may sue in the company's

name (that is otherwise known as a shareholder bringing an action derivatively for the benefit of the company).[1]

16.     However, where a company is in liquidation, and its affairs are controlled by an independent liquidator, the reason for any exception to the rule *Foss v. Harbottle* has been removed.  The liquidator is able to determine the viability of the cause of action, and to bring the action in the company's name.  The reason lies in the nature of the derivative claim as a procedural device which enables proceedings to be brought on behalf of the company notwithstanding that it is under the control of persons who have permitted or acquiesced in its wrongdoing.  In *Fargro Ltd. v. Godfroy* [1986] 1 WLR 1134 at 1136 it was held as follows:

*"... once the company goes into liquidation the situation is completely changed, because one no longer has a board, or indeed a shareholders' meeting, which is in any event in control of the activities of the company of any description, let alone its litigation. ... (T)he liquidator is ... the person in whom that right is vested."*

A copy of this decision is attached hereto as Exhibit L.

17.     It is clear from the decisions in *Fargro v. Godfroy* and *Barrett v. Duckett* ([1995] 1 B.C.L.C. 243) that the appropriate course, once a liquidator is appointed, is for a court to strike out (*i.e.*, dismiss) any derivative claim, because the entire reason behind allowing a derivative action - to ensure that an action may still be commenced even where those in control have

---

[1] These are (a) where the action in question amounts to a fraud on the minority shareholders, and the wrongdoers are themselves in control of the company; (b) where the act complained of amounts to an infringement of the rights of individual shareholders such as the right to vote or pre-emption of rights; (c) where the act complained of could only be validly done by a special resolution or similar mechanism, because a simple majority cannot confirm a transaction which requires the concurrence of a greater majority; and (d) where the act complained of was *ultra vires* the objects of the company or illegal (see *Edwards v. Halliwell* at Exhibit K).

permitted a wrong doing – no longer applies upon appointment of a liquidator.  Copies of these decisions are attached hereto as Exhibits L to M.

18.     In the present case, Sentinel is the sole registered shareholder of Caledonian Global Financial Services Inc. ("CGFSI") which is in liquidation and Mr. Hutchison and Ms. Loebell are its joint official liquidators.  CGFSI is the sole registered shareholder of both CBL and CSL (both of which are also in liquidation and Mr. Hutchison and Ms. Loebell are its joint official liquidators).  Accordingly, as a matter of Cayman Islands law, it is my view that it is not possible for Sentinel, in its capacity as the shareholder of CGFSI or as the shareholder of the shareholder of CBL or CSL, to prosecute a derivative action on behalf of any of those companies.

SANCTION APPLICATIONS

19.     The usual remedy for a shareholder who disagrees with the decision of a liquidator of a company in official liquidation under the supervision of the Grand Court is to make an application to the Grand Court pursuant to section 110(3) of the Cayman Islands' Companies Law (2013 Revision) (the "Companies Law") in respect of the exercise or proposed exercise of powers by the liquidator, referred to therein as a "sanction application."  A copy of the relevant section of the Companies Law is attached hereto as Exhibit N.

20.     In the present case, the JOLs themselves made a sanction application to the Grand Court pursuant to section 110(2)(a) of, and Part I of the Third Schedule to, the Companies Law and Order 11 of the Cayman Islands' Companies Winding Up Rules 2008 (as amended) (the "CWR") seeking authorisation from the Grand Court to enter into (for and on behalf of

9

Caledonian) the proposed consent agreement (the "Consent Agreement") with the Securities and Exchange Commission and to take such additional steps and execute such additional documents as might be necessary or desirable in order to fulfil the obligations contained in the Consent Agreement.  The purpose of the sanction application was to seek the necessary authorisation from the Grand Court to permit entry into the Consent Agreement and to provide all stakeholders of Caledonian with the opportunity to be heard and make submissions in favour of, or against, the proposed relief sought.  In the event, the only stakeholder who appeared at the hearing of the sanction application was Sentinel.  Copies of the relevant section of the Companies Law and the CWR are attached hereto as Exhibits O and P.

21.     The legal principles applicable to the exercise of sanction of a liquidator's powers that are applied by the Grand Court are set out in *In re DD Growth Premium 2X Fund* [2013] (2) CILR 361.  At paragraph 30, Smellie CJ (who was also the judge responsible for hearing the sanction application of the JOLs described in paragraph 20 above) outlined the following principles:

> *a.*   the decision whether to sanction the exercise of a power falling within Part I of the Third Schedule to the Companies Law is a decision for the Grand Court (see *Re Greenhaven Motors Ltd.* [1999] 1 BCLC 635);
>
> *b.*   in exercising its discretion to grant sanction, the Grand Court must consider all the relevant evidence (see *In re Universal & Surety Co. Ltd.* [1992–93] CILR 149);

c.  the Grand Court must consider whether the proposed transaction is in the commercial best interests of the company, reflected prima facie by the commercial judgment of the liquidator (see *Re Edennote Ltd. (No. 2)* [1997] 2 BCLC 89);

d.  the Grand Court should give the liquidators' views considerable weight unless the evidence reveals substantial reasons for not doing so (see *Re Edennote Ltd*);

e.  the liquidator is usually in the best position to take an informed and objective view (see *Re Greenhaven Motors Ltd*); and

f.  unless the Grand Court is satisfied that, if the company is not permitted to enter the compromise in question, there will be better terms or some other deal on offer, the choice is between the proposed deal and no deal at all (see *Re Greenhaven Motors Ltd*).

Copies of these decisions are attached hereto as Exhibits Q to T.

22.    Further, in *In re Trident Microsystems (Far East) Ltd* [2012] (1) CILR 424 (a copy of which decision is attached hereto as Exhibit U) citing *In re Universal Surety & Co Ltd*, Cresswell J held that whether to sanction the exercise of a liquidator's power under Part 1 of Schedule 3 to the Companies Law was a decision for the Grand Court, which must consider the correctness, or otherwise, of the liquidator's decision having regard to all the evidence, in particular:

a. the financial consequences of the decision for stakeholders;

b. the wishes of the stakeholders; and

c. whether the interests of stakeholders are best served by permitting the company to enter into the particular transaction (which reflects Chadwick LJ's approach in *Re Greenhaven Motors Ltd.*).

23.     These principles were submitted on behalf of the JOLs to the Grand Court at the hearing of the sanction application of the JOLs described in paragraph 20 above as being the relevant considerations to which regard should be had in determining the sanction application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: May 11, 2016
      Grand Cayman, Cayman Islands

_____
Rupert Bell

12