Robert J.A. Zito
Mark R. Zancolli
Theodore Y. McDonough
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax: (212) 732-3232
*Attorneys for Verdmont Capital, S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION

                    Plaintiff,

        v.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., and
VERDMONT CAPITAL, S.A.

                    Defendants.
-------------------------------------------------------------x

Civ. No. 15 CV 894 (WHP) (JLC)

**DECLARATION OF
SHAMIMA BHANA
IN SUPPORT OF DEFENDANT
VERDMONT CAPITAL, S.A.'s
MOTION FOR SUMMARY
JUDGMENT**

        SHAMIMA BHANA, declares under penalty of perjury follows:

        1.     Since January 11, 2016, I have been the duly qualified liquidator of the defendant Verdmont Capital, S.A. ("Verdmont"). I am licensed as a certified public accountant in Panama, and, prior to January 11, 2016, I had been employed by Verdmont as Accounting and HR Manager since October 16, 2005.

        2.     I am familiar with the allegations contained in the Amended Complaint. I respectfully submit this declaration in support of Verdmont's motion for summary judgment. I make this declaration based on my own knowledge and Verdmont's business records and other

7796425.5

documents that are a matter of public record.

**Introduction**

3. Verdmont is a corporation duly organized and duly licensed as a broker-dealer under the laws of the Republic of Panama.

4. On January 11, 2016, Verdmont filed for liquidation under the laws of Panama, having no other economic choice in the wake of the SEC's preemptive ex parte freeze order that froze more than $29 million of Verdmont's customers' assets based on false statements to this Court. Verdmont is no longer viable, is in the process of winding down its activities and is no longer operating on a going forward basis. Verdmont currently employs a skeletal staff for the sole purpose of liquidating assets and paying creditor claims, mostly labor and severance claims of the 40 former employees who lost their jobs and health insurance due to the SEC's improper conduct in this case.

**The Amended Complaint**

5. Beginning in 2013, Verdmont, as a broker-dealer, effected various sales of three securities on behalf of three customers. These sales were all executed, cleared and approved by broker-dealers that are duly registered with the SEC and FINRA in the United States that are not defendants in this action. I am told that the SEC claims no valid registration statement was in effect at the time, and therefore, these transaction violated Section 5(a) and (c) of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. § 77e(a) and (c)). Exhibit 1, Amended Complaint at ¶¶ 1, 2, 63, 80 and 96.

6. The three customers that are the subject of this case are: Lornex Financial Ltd. ("Lornex"), Bamfield Equities Ltd. f/k/a Bartlett Trading ("Bamfield" or "Bartlett") and Nautilus Growth Fund Ltd. ("Nautilus"). The three securities are: Goff Corp. ("Goff"), Norstra

Energy, Inc. ("Norstra") and Xumanii, Inc. f/k/a Medora Corporation ("Xumanii") (collectively, the "Securities"). While the Amended Complaint also suggests that Mariposa Acosiados S.A. ("Mariposa") (Amended Complaint, ¶ 71) is or was a client of Verdmont, Mariposa is not and never has been a Verdmont client.

7. Aside from one proprietary day trade of Xumanii stock that Verdmont executed in its house account, Verdmont did not sell the Securities for its own account, but rather effected sales of the Securities on behalf of its clients upon unsolicited orders from those clients.[1]

8. Other than Lornex, Bamfield and Nautilus, no clients of Verdmont cleared certificates in Goff, Norstra or Xumanii.

## The Dealer Exemption

9. I am informed by Verdmont's attorneys that liability under Section 5 of the Securities Act applies only to "issuers, underwriters and dealers." Verdmont was not an issuer or an underwriter. Verdmont acted solely as a broker-dealer.

10. Verdmont's attorneys have informed me that Section 4(a)(3) of the Securities Act, known as the Dealer Exemption, exempts all such transactions engaged in by dealers if the transactions took place more than 40 days after the Securities were first offered to the public (more than 40 days after the SEC declared the registration statements effective or more than 40 days after the date the securities were listed on the OTC Bulletin Board).

11. The purpose of this declaration is to demonstrate to the Court that all of the transactions, in fact, occurred more than 40 days after the Securities were offered to the public. This declaration will further demonstrate that neither Verdmont, not its customers were

---

[1] Verdmont bought 200,000 shares of Xumanii at $0.238 on May 13, 2013, and sold 200,000 shares of Xumanii at $0.2945 on May 13, 2013. Verdmont realized $11,300 in profit from that trade.

3

underwriters.

**The Goff Transactions**

12. With regard to Goff, the Form S-1 registration statement (as amended on November 2, 2011) was declared effective by the SEC on November 10, 2011. Attached hereto as Exhibit 2 is a true and correct copy of the following documents on the SEC's EDGAR database: SEC Notice of Effectiveness, dated November 10, 2011, for Goff, and amended Form S-1 registration statement for Goff filed on November 2, 2011.

13. Verdmont's client (Lornex) purchased 560,000 shares of Goff from selling shareholders (Colm Norris and Kevin Crowley) under the registration statement on August 8, 2012. *See* Exhibit 3, Stock Purchase Agreements, dated August 8, 2012, that Lornex entered into with Norris and Crowley; Exhibit 4, Stock Powers, dated August 8, 2012, authorizing the transfer of Norris's and Crowley's Goff shares to Lornex; and Exhibit 5, stock certificate, dated September 25, 2012, issued to Lornex for 560,000 shares of Goff stock.

14. The first sale of Goff stock effected by Verdmont on behalf of any of its clients took place on March 18, 2013 (i.e., more than forty days after the effective date of the Goff registration statement). Attached hereto as Exhibit 6 is a true and correct copy of a spreadsheet of the trades in Goff stock effected by Verdmont on behalf of its clients.

**The Norstra Transactions**

15. With regard to Norstra, the Form S-1 registration statement (as amended on July 12, 2012) was declared effective by the SEC on July 12, 2012. Attached hereto as Exhibit 7 is a true and correct copy of the following documents on the SEC's EDGAR database: SEC Notice of Effectiveness, dated July 12, 2012, for Norstra, and amended Form S-1 registration statement for Norstra filed on July 12, 2012.

4

16. Verdmont's client (Lornex) purchased 3,687,000 shares of Norstra stock on February 5, 2013 from shareholders (Maria Garpenfeldt, Katherine Sanchez and Blixen Palmer) who purchased and were issued shares under the registration statement on September 7, 2012. *See* Exhibit 8, Stock Purchase Agreements, dated February 5, 2013, that Lornex entered into with Garpenfeldt, Sanchez and Palmer; Exhibit 9, Stock Power, dated February 5, 2013, authorizing the transfer of Garpenfeldt's, Sanchez's and Palmer's Norstra stock to Lornex; and Exhibit 10, stock certificate, dated February 7, 2013, for 3,687,000 shares of Norstra stock issued to Lornex.

17. The first sale of Norstra stock effected by Verdmont on behalf of any of its clients took place on April 1, 2013 (i.e., more than forty days after the effective date of the Norstra registration statement). Attached hereto as Exhibit 11 is a true and correct copy of a spreadsheet of the trades in Norstra stock effected by Verdmont on behalf of its clients.

## The Xumanii Transactions

18. With regard to Xumanii, the Form S-1 registration statement (as amended on March 14, 2011) for Medora (Xumanii) was declared effective by the SEC on March 14, 2011. Attached hereto as Exhibit 12 is a true and correct copy of the following documents on the SEC's EDGAR database: SEC Notice of Effectiveness, dated March 14, 2011, for Medora (Xumanii), and amended Form S-1 registration statement for Medora (Xumanii) filed on March 14, 2011.

19. Verdmont's client (Lornex) purchased 3,100,000 shares of Medora (Xumanii) stock from selling shareholders (Rene Lawrence, Brenton Nagheer, Anthony Reid, Jenifer Rose and Dwight Brown) under the registration statement on February 22, 2012. *See* Exhibit 13, Stock Purchase Agreements, dated February 22, 2012, that Lornex entered into with

5

Lawrence, Nagheer, Reid, Rose and Brown); Exhibit 14, Powers of Attorney, dated February 22, 2012, authorizing the transfer of Lawrence's, Nagheer's, Reid's, Rose's and Brown's Medora (Xumanii) shares to Lornex; and Exhibit 15, stock certificate, dated March 1, 2012, for 3,100,000 shares of Medora (Xumanii) that was issued to Lornex.

20. The first sale of Medora (Xumanii) stock effected by Verdmont on behalf of any of its clients took place on May 1, 2013 (i.e., more than forty days after the effective date of the Medora (Xumanii) registration statement). Attached hereto as Exhibit 16 is a true and correct copy of a spreadsheet of the trades in Medora (Xumanii) stock effected by Verdmont on behalf of its clients.

### Neither Verdmont Nor Its Clients Were Underwriters With Regard To The Sales Of The Securities Effected By Verdmont

21. Verdmont was not an issuer of any of the Securities. Nor was Verdmont controlled by any of the issuers of the Securities.

22. Verdmont was not an underwriter in connection with the distribution of the Securities. Verdmont did not acquire any stock from the issuers of the Securities. Nor did it acquire any stock from any person who was controlled by any of the issuers of the Securities. Verdmont had no role in the distribution of stock in the Securities by the issuers.

23. Nor were Verdmont's customers underwriters with regard to the sales of the Securities at issue effected by Verdmont. None of Verdmont's customers acquired stock from an issuer or persons controlled by an issuer of any of the Securities.

24. According to Verdmont's records, Verdmont's customers were not controlled by the issuers of the Securities, and, therefore, were the public. Thus, by the time Verdmont's customers acquired stock in the Securities, the stock "rested" with the public, which, by definition, terminated the distribution.

25. The investment account application that Lornex submitted to Verdmont lists as authorized signatories Clifford Wilkins (Director of Lornex) and Virgilio Santana (Secretary of Lornex), and Clifford Wilkins as 100% beneficial owner (Exhibit 17); according to Verdmont's records, neither Clifford Wilkins nor Virgilio Santana was a director or officer of any of the issuers of the Securities.

26. The investment account application that Bartlett submitted to Verdmont lists Chris Smith as the authorized signatory and 100% beneficial owner (Exhibit 18); according to Verdmont's records, Chris Smith was not a director or officer of any of the issuers of the Securities.

27. The investment account application that Nautilus submitted to Verdmont lists Virgilio Santana Ripoll as authorized signatory, and Keyse Management Ltd. and BDI, SA Luxembourg as beneficial owners (Exhibit 19); according to Verdmont's records, none of Virgilio Santana Ripoll, and Keyse Management Ltd. and BDI, SA Luxembourg was a director or officer of any of the issuers of the Securities.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 16, 2016

_____
Shamima Bhana

7796425.5