UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

-against-

CALEDONIAN BANK LTD., *et al.,*

Defendants.

SENTINEL TRUST SERVICES LIMITED,

Plaintiff-Intervenor,

-against-

SECURITIES AND EXCHANGE COMMISSION,

Respondent.

15-cv-894 (WHP)

**ECF Case**

**Electronically Filed**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SENTINEL TRUST SERVICES LIMITED'S MOTION TO INTERVENE**

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
(212) 506-1800 (fax)

*Attorneys for Sentinel Trust Services Limited*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ..................................................................................................... 3

I. Section 21(g) Does Not Bar Intervention ................................................. 3

II. Collateral Estoppel Does Not Bar Intervention ........................................ 4

III. Sentinel Has The Right To Intervene....................................................... 6

IV. Sentinel Should Be Permitted To Intervene.............................................. 9

CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brennan v. N.Y. City Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001)....................7, 8

*Compagnie Noga d'Importation et d'Exportation S.A. v. Russian Fed'n*,
2005 U.S. Dist. LEXIS 14432 (S.D.N.Y. July 20, 2005)....................2, 9

*Cybernaut Capital Mgmt. v. Partners Group Access Secondary 2008, L.P.*,
2013 U.S. Dist. LEXIS 117256 (S.D.N.Y. Aug. 7, 2013)....................4

*Export-Import Bank of the Republic of China v. Grenada*,
2013 U.S. Dist. LEXIS 117740 (S.D.N.Y. Aug. 19, 2013)....................8

*Kreinik v. Showbran Photo, Inc.*,
400 F. Supp. 2d 554 (S.D.N.Y. 2005)....................5

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
2010 U.S. Dist. LEXIS 135261 (S.D.N.Y. Dec. 21, 2010)....................6, 7

*Phillip v. Univ. of Rochester*,
316 F.3d 291 (2d Cir. 2003)....................4

*SEC v. Callahan*,
2 F. Supp. 3d 427, 438 (E.D.N.Y. 2014)....................3

*SEC v. CKB168 Holdings Ltd.*,
2014 U.S. Dist. LEXIS 139272 (E.D.N.Y. Sept. 30, 2014)....................3

*SEC v. Credit Bancorp, Ltd.*,
194 F.R.D. 457 (S.D.N.Y. 2000)....................3, 4

*SEC v. Flight Transp. Corp.*,
699 F.2d 943 (8th Cir. 1983)....................3

*SEC v. Qualified Pensions, Inc.*,
1998 WL 29496 (D.D.C. 1998)....................4

*United States SEC v. Citigroup Global Mkts.*,
752 F.3d 285 (2d Cir. 2014)....................2, 3, 5, 10

**Statutes**

Exchange Act Section 21(g)....................2, 3, 4

**Federal Rules Civil Procedure**

Rule 11 ....................................................................................................................6

Rule 24 ....................................................................................................................4, 8

Rule 24(a)................................................................................................................ *passim*

Rule 24(a)(2) ...........................................................................................................7, 8

Rule 24(b) ...............................................................................................................3, 9

## PRELIMINARY STATEMENT

As shown in its opening brief, Sentinel should be permitted to intervene under Rule 24(a) as of right or, in any event, by permission under Rule 24(b), in order to object to the Consent Judgment entered into by SEC and the liquidator of Caledonian (the "parties") Sentinel's interest in doing so is to preserve its ability, as a practical matter, to assert claims directly, or derivatively on behalf of Caledonian, against the SEC in a separate action, as well as to protect the public interest in holding the government -- in this case, the SEC -- accountable for its conduct.[1]

The most salient fact about the parties' opposition to Sentinel's motion to intervene is what the parties fail to address: the suspect provisions of the Consent Decree identified and the facts proffered by Sentinel. Br. at 10-11.[2] Neither party even attempts to explain or justify provisions of the Consent Decree that are plainly designed to protect the SEC from the consequences of its egregious misconduct and to frustrate any future recovery against the SEC. These provisions include a $25 million judgment imposed joint and severally on Caledonian Bank, even though Caledonian Bank did not play any role in the transactions at issue and made no commissions. Orr-Depner Declaration ¶ 6. Nor does either party attempt to explain or justify a $25 million judgment against Caledonian Securities, given the undisputed facts that Caledonian Securities made only

---

[1] Notwithstanding the parties' professed confusion about the scope of Sentinel's proposed intervention (SEC at 1-3, 9-10; JOL at 1-3, 23-25), Sentinel does not allege a cause of action here to recover for the SEC's destruction of its equity interest in Caledonian. *See* Compl-in-Intv'n ¶¶ 34-40.

[2] "Br. _" refers to the indicated page in Sentinel's opening brief (Dkt. No. 217); "SEC at _" refers to the indicated page in the SEC's opposition brief (Dkt. No. 228); and "JOL at _" refers to the indicated page in the liquidators' opposition brief (Dkt. No. 229). "Fear Decl." refers to the accompanying declaration of Richard D. Fear, dated May 18, 2016. Other capitalized terms have the meaning ascribed to them in Sentinel's opening brief.

$1.3 million in commission (about 1/20th of $25 million) and that it voluntarily shut down Clear Water and Legacy's trading accounts nearly a year before the SEC obtained the Freeze Order. *Id.* ¶¶ 6-9. Furthermore, the liquidators fail to explain how they could commit Caledonian not to do anything that would even suggest that the SEC's allegations are "without factual basis" (Welch Decl. Ex. C ¶ 12), given their "frank[]" admission that they do not "understand all of the facts and circumstances, whether good or bad" (*id.*, Ex. D at 10).

By failing to address these issues, among others, which bear on the propriety of the Consent Judgment under *United States SEC v. Citigroup Global Mkts*., 752 F.3d 285 (2d Cir. 2014), the parties demonstrate why Sentinel should be permitted to intervene under Rule 24(b): because Sentinel will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Compagnie Noga d'Importation et d'Exportation S.A. v. Russian Fed'n,* 2005 U.S. Dist. LEXIS 14432, at *17 (S.D.N.Y. July 20, 2005). Indeed, permitting Sentinel to intervene to oppose the Consent Judgment is, evidently, nearly the only way to compel the parties to address these issues.[3] Moreover, as shown below, the purported prejudice that such an intervention would cause the parties is illusory.

Rather than attempting to show that the Consent Judgment satisfies the *Citigroup Global* standard, or disputing that Sentinel's proposed intervention would contribute to ensuring that it does, the parties instead argue almost exclusively that Sentinel does not have the right to intervene on the grounds that (i) Section 21(g) of the Exchange Act bars intervention to object to the Consent Judgment, (ii) Sentinel is collaterally estopped from

[3] In addition, or in the alternative, "a district court may need to make additional inquiry to ensure that the consent decree is fair and reasonable." *Citigroup Global*, 752 F.3d at 295.

objecting to the Consent Judgment, and that (iii) Sentinel cannot satisfy the Rule 24(a) factors for intervention as of right. None of these arguments have any merit. As shown below, Section 21(g) is inapplicable "on its face," Sentinel is not collaterally estopped from objecting to the Consent Judgment because the dispositive legal issues -- including whether the decree is "fair and reasonable," in the "public interest," and has a "factual basis" (*Citigroup Global*, at 294-95) -- have never been adjudicated in any proceeding, and the Rule 24(a) factors, in fact, support Sentinel's intervention as of right.

**ARGUMENT**

## I. SECTION 21(G) DOES NOT BAR INTERVENTION

In its opening brief (Br. at 19-20), Sentinel established that "the specific language of Section 21(g) [does] not apply, on its face, to intervention [.]" *SEC v. Credit Bancorp, Ltd.,* 194 F.R.D. 457, 466 (S.D.N.Y. 2000). Section 21(g) only "bars *consolidating or coordinating* a private action with an SEC enforcement proceeding." *SEC v. CKB168 Holdings Ltd*., 2014 U.S. Dist. LEXIS 139272, at *10, n.3 (E.D.N.Y. Sept. 30, 2014) (emphasis supplied by the court). Section 21(g) "does not say that no one may intervene in an action brought by the SEC without its consent." *SEC v. Flight Transp. Corp*., 699 F.2d 943, 950 (8th Cir. 1983); *see also SEC v. Callahan*, 2 F. Supp. 3d 427, 437 (E.D.N.Y. 2014) ("[T]here is no persuasive authority which suggests that section 21(g)... bars intervention in all SEC enforcement actions.").

In response (SEC at 3-5), the SEC ignores the dispositive distinction between consolidation and intervention, fails to distinguish on-point authority from this Circuit and relies primarily on trial court decisions from other Circuits, which are, in any event,

readily distinguishable.[4] That Section 21(g) applies "notwithstanding . . . any *other* provision of law" does not, as the SEC suggests (SEC at 5 [emphasis supplied]), change the fact that Section 21(g) does "not apply, on *its* face, to intervention." *Credit Bancorp, Ltd.*, 194 F.R.D. at 466 [emphasis supplied]. The SEC's resort to legislative history (SEC at 3, n. 1) -- even if it advanced the SEC's position, which it does not -- is likewise unavailing. Where, as here, "a statute is clear on its face, a court is not permitted to use other interpretive tools, including legislative history, to discern the statute's meaning." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 297 (2d Cir. 2003).

## II. COLLATERAL ESTOPPEL DOES NOT BAR INTERVENTION

In its opening brief (Br. at 20), Sentinel established that it is not collaterally estopped from intervening in this action to object to the Consent Judgment based on the Cayman proceedings because the issues are "not identical" and, in any event, the applicable standards are different. *Cybernaut Capital Mgmt. v. Partners Group Access Secondary 2008, L.P.*, 2013 U.S. Dist. LEXIS 117256, at *5 (S.D.N.Y. Aug. 7, 2013).[5]

In response (JOL at 10-16), the liquidators do not assert that the Cayman court evaluated, let alone, necessarily decided whether Sentinel is a proper intervenor under Rule 24, much less the propriety of the Consent Judgment under *Citigroup Global*.

---

[4] The SEC relies almost exclusively on cases where, unlike here, the proposed intervenor either sought to intervene to assert causes of action or to consolidate separate actions. SEC at 3-4. The only exception, *SEC v. Qualified Pensions, Inc.*, 1998 WL 29496 (D.D.C. 1998), is likewise distinguishable. Unlike this case, "[p]eculiar to [that] case [was] the fact that applicants [were] already plaintiffs in another ongoing lawsuit and [] the matter on which they wish[ed] to expound [there] is squarely before the other court (and only incidentally before [that] one)." *Id.* at *3.

[5] The Court's finding in *Cybernaut* that collateral estoppel applied in that case is readily distinguishable because, there, unlike here, "the Cayman Islands court did not apply any different standards." *Cybernaut Capital Mgmt.*, 2013 U.S. Dist. LEXIS 117256, at *5.

Indeed, the *only* issue the liquidators even identify as having been adjudicated by the Cayman court is "whether the proposed [Consent Judgment] is in the commercial best interests [of Caledonian], reflected *prima facie* by the commercial judgment of the liquidator." JOL at 12-13. That issue has *no bearing* on the dispositive issues here.

First, even assuming for the sake of argument that the Consent Judgment was in the "commercial best interests" of Caledonian,[6] it is not in the "public interest" (*Citigroup Global*, at 294-95) to permit the SEC to insulate itself from liability[7] for the complete destruction of Caledonian Bank by making it jointly and severally liable for a $25 million judgment, even though it did not play any role in the transactions at issue and made no commissions (Orr-Depner Declaration ¶ 6). For the same reason, among others, the Consent Judgment is not "fair and reasonable." *Citigroup Global*, at 294-95. Moreover, in light of the facts proffered by Sentinel and especially given the liquidators' candid confession of ignorance of the facts and the SEC's distortion of the record (Br. at 7-10), the Consent Judgment is without "factual basis." *Id.*[8]

Second, notwithstanding the liquidators' unsupported suggestion to the contrary, the Cayman court did not decide "whether Sentinel has a sufficient interest to object [to

---

[6] Whether the liquidators' decision to acquiesce to the Consent Judgment satisfies the "business judgment standard" (JOL at 14, n.3) is irrelevant under *Citigroup Global* and in no way entitles the Consent Judgment to any more "deference" (*id.*, at 14-15) than one proposed by any other litigant.

[7] "[A] consent decree may disserve the public interest if it barred private litigants from pursuing their own claims independent of the relief obtained under the consent decree." *Citigroup Global*, at 297.

[8] Because these factual and legal issues, and the applicable standards, are not even remotely the same, let alone "substantially or essentially the same" (*Kreinik v. Showbran Photo, Inc.*, 400 F. Supp. 2d 554 (S.D.N.Y. 2005)), the liquidators' reliance on cases applying that articulation of the standard for collateral estoppel (JOL at 13-14) is unavailing.

the Consent Order] or intervene [.]" JOL at 12. Even if the Cayman court had made such a finding, it would not be determinative of Sentinel's right to do so in this action because, as shown below, for purposes of Rule 24(a), "[t]he interest asserted [by the proposed intervenor] need not even be a property interest." *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2010 U.S. Dist. LEXIS 135261, at *13-14 (S.D.N.Y. Dec. 21, 2010).

## III. SENTINEL HAS THE RIGHT TO INTERVENE

In its opening brief (Br. at 12-16), Sentinel established that it has the right to intervene to object to the Consent Judgment under Rule 24(a) because it filed a timely motion to do so, it has sufficient interests in this action which will be impaired absent intervention and which are not adequately represented by the parties. The parties' arguments to the contrary (SEC at 5-16; JOL at 16-23) have no merit.

First, there is no dispute that Sentinel's motion is timely, except insofar as the SEC asserts that Sentinel sought to intervene to challenge the amount of the Freeze Order too late (SEC at 2-3),[9] which relief the parties strategically mooted by stipulating to reduce the Freeze Order to the maximum appropriate amount (Dkt. No. 221-1)[10] -- *i.e.*, $1.3 million, which represents the commissions Caledonian Securities (not Caledonian Bank), made on the transactions at issue.

[9] The SEC also asserts that any claim for Rule 11 sanctions is untimely. SEC at 10. However, although the SEC's conduct was sanctionable, Sentinel does not propose to intervene to seek such sanctions against the SEC. *See* Compl-in-Intv'n ¶¶ 34-40.

[10] The stipulation did not moot, however, the question whether Caledonian Securities "should be liable for a far greater amount" in the Consent Judgment (SEC at 7), much less whether Caledonian Bank, which made no commissions (Orr-Depner Decl. ¶ 6), should be liable for any amount at all.

Second, the parties assert that Sentinel does not have a sufficient interest in this action because it supposedly is not the "ultimate equity owner" of Caledonian. JOL at 5-6, 17-21; SEC at 1, 7-8. That assertion is factually incorrect and misapprehends Rule 24(a)(2). There is no genuine dispute that "Sentinel is the sole registered shareholder of Caledonian Global Financial Services Inc. ("CGFSI")." Bell Decl. (Dkt. No. 230) ¶ 18; *see also* JOL at 6, 17; *cf.* SEC at 2. Nor is there any dispute that "CGFSI is the sole registered shareholder of both [Caledonian Bank] and [Caledonian Securities]." Bell Decl. ¶ 18; *see also* JOL at 5, 17, 20; SEC at 1.[11] Nevertheless, the liquidators pounce on the fact (as if it were material) that Sentinel "hold[s] the shares of CGFSI in a trustee capacity [.]" JOL at 6. That is totally irrelevant. Rule 24(a) does not "require an interest *in* the property or transaction that is the subject of the action," but only "an interest *relating* to the property or transaction that is the subject of the action." *N.J. Carpenters Health Fund*, 2010 U.S. Dist. LEXIS 135261, at *13-14 (emphasis supplied by the court; quotations omitted) (citing *Brennan v. N.Y. City Bd. of Educ*., 260 F.3d 123, 130 (2d Cir. 2001)).[12] Here, under Cayman law, "the rights attaching to shares may only be pursued by the registered shareholder." Fear Decl. ¶ 9. Moreover, as a trustee, Sentinel has the obligation to "take all reasonable and practicable steps to safeguard the trust assets" (*id*. ¶ 10), which is what Sentinel is doing by seeking to intervene.

The SEC complains that Sentinel is seeking to intervene out of "concern[ed] that the proposed settlement will weaken any planned action." SEC at 10. That is precisely

[11] Sentinel is, thus, in the liquidators' words, an "indirect stakeholder" in Caledonian (JOL at 7; *see also id*. at 17, 20) or, in Sentinel's words, the "ultimate equity owner" of Caledonian (Br. at 1).

[12] That there are "multiple corporate entities above Sentinel" (JOL at 17) is likewise irrelevant. Sentinel is the sole registered shareholder of CGFSI, which shares it holds in trust for the beneficial owners, not its corporate parents.

Sentinel's concern, and, notwithstanding the SEC's assertion to the contrary (SEC at 8-9), it is more than a sufficient interest to intervene as of right. *See Export-Import Bank of the Republic of China v. Grenada*, 2013 U.S. Dist. LEXIS 117740, at *14 (S.D.N.Y. Aug. 19, 2013) (rejecting argument that "trying to protect a future litigation position" is not a sufficient interest for purposes of Rule 24(a) and granting intervention).[13]

Third, in its opening brief (Br. 13-14), Sentinel established that it "would be substantially affected in a practical sense" (Fed. R. Civ. P. 24 [advisory committee note]) if the Consent Judgment is approved in its current form because, if Caledonian successfully asserted claims against the SEC in a future action for damages caused by the Freeze Order, the SEC may seek to set off any recovery against it by the $25 million judgment against Caledonian, thereby effectively insulating the SEC from any liability for its misconduct. The absence of a formal "release" (SEC at 11) is irrelevant. *See Grenada*, 2013 U.S. Dist. LEXIS 117740, at *16 (rejecting argument that proposed intervenor's rights would not, as a *technical matter*, be impaired by an injunction against a party because "the relevant test is whether "disposing of the action may as a *practical matter* impair or impede the movant's ability to protect its interest"") (quoting Fed. R. Civ. P. 24(b)(2) [emphasis added by the court]). The parties do not dispute that the Consent Order may have such a practical effect; they merely contend that it would have no such effect on *Sentinel*. JOL at 5-6, 17-21; SEC at 11-12. As shown above, for purposes of Rule 24(a), that is incorrect.

---

[13] The liquidators also contend that Sentinel does not have "standing" to assert claims against the SEC. JOL at 19-21. Sentinel disputes that contention. In any event, "[a]n interest that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court deems [by litigation rights] the claim to be legally or factually weak." *Brennan*, 260 F.3d at 130.

Fourth, the parties assert that the liquidators "adequately" represent Sentinel's interests in this action. JOL at 21; SEC at 14-16. That is patently not so. As this Court observed, counsel for the liquidators "bear[s] as much responsibility for what happened as the SEC did in this foolhardy exercise." Transcript of Proceedings on June 3, 2015 (Dkt. No. 95) at 9. Moreover, the liquidators' failure to "adequately" represent Sentinel or Caledonian's interests continues to this day. As Sentinel pointed out (Br. at 17), the liquidators inexplicably failed to, among other things, submit a formal opposition to the Freeze Order or subsequently move to reduce it to the maximum appropriate liability, which would have released assets to Caledonian's estate and strengthened the liquidators' negotiating position with the SEC, in particular with respect to the monetary amount of the Consent Judgment. Not coincidentally, after Sentinel demonstrated that $1.3 million is the maximum appropriate amount for the Freeze Order (Br. at 3), the parties (five days later) stipulated to reduce the Freeze Order to $1.3 million (Dkt. No. 221-1). This confirms that the liquidators will "defend" Caledonian only with Sentinel's involvement.

## IV. <u>SENTINEL SHOULD BE PERMITTED TO INTERVENE</u>

In its opening brief (Br. at 16-19), Sentinel established that, even assuming it did not have the right to intervene under Rule 24(a), Sentinel should be granted permission to intervene under Rule 24(b).

In response, the parties do not dispute that permitting Sentinel to intervene to object to the Consent Judgment would contribute to the "just and equitable adjudication of [the relevant] legal questions" and to developing the "underlying factual issues." *Compagnie Noga,* at *17. It plainly will. Instead, the parties posit that they would be prejudiced by Sentinel's intervention, because it would "indefinitely delay" the action

(SEC at 17) and would "require the parties to engage in extensive costly and time-consuming fact-discovery, motion practice, a potential trial, and appeals" (JOL at 23). But the premise of any such prejudice is that permitting Sentinel to intervene would necessarily lead to one-result: full-blown litigation. That is not so. There is another outcome, one that is appropriate here. The Court should reject the Consent Order, and the parties should re-negotiate the terms of the Consent Order such that it is "fair and reasonable," in the "public interest," has a "factual basis," and otherwise conforms with *Citigroup Global*.

## **CONCLUSION**

For the foregoing reasons, Sentinel respectfully requests that the Court grant its motion to intervene.

Dated: New York, New York
May 18, 2016

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: /s/ Trevor J. Welch
Marc E. Kasowitz (mkasowitz@kasowitz.com)
Andrew K. Glenn (aglenn@kasowitz.com)
Trevor J. Welch (twelch@kasowitz.com)
James D'Elicio (jdelicio@kasowitz.com)
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Sentinel Trust Services Limited*