UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
SECURITIES AND EXCHANGE COMMISSION, :

                Plaintiff,           :

                                                   15cv894

       -against-              :

                                                   <u>ORDER</u>

CALEDONIAN BANK LTD., *et al.*,    :

               Defendants.      :
----------------------------------------X

WILLIAM H. PAULEY III, District Judge:

        This dispute reveals, yet again, that no application is too preposterous for a federal judge. Verdmont Capital, S.A. ("Verdmont") seeks an order directing the SEC to pay for deposition transcripts and travel expenses incurred in the SEC's depositions of two of its principals in London, which the SEC agreed would be conducted "at the cost and expense" of the SEC. (ECF 165, at 1; ECF No. 219.) The SEC understood that agreement to authorize reimbursement of all "reasonable commercial" expenses. (ECF No. 223-6, at 2.) Apparently, Verdmont's principals understood it to authorize a bacchanalian adventure.

        The dispute began earlier this year, when Verdmont contended that two of its principals, Glynn Fisher and Taylor Housser, were not properly subject to deposition by the SEC. (ECF No. 161.) The parties reached a compromise in open court, whereby Fisher and Housser would be deposed in a "neutral jurisdiction" outside of the United States, with the SEC "picking up the tab for the travel." (ECF No. 172, at 14.) Thereafter, the parties agreed that the depositions would take place "in-person in London, . . . at the cost and expense of the Commission." (ECF No. 165.) Subsequently, the SEC offered to make the travel arrangements. Verdmont's counsel declined, claiming that Verdmont had "already made" their reservations. (ECF No. 223-4, at 2.) When the SEC noted that the "current government lodging rate for

London [was] $322 a night including taxes," and that Verdmont's expenses would be limited to "reasonable commercial prices," Verdmont went dark. (See ECF No. 223-6, at 2; ECF No. 223, at 3.)

The reimbursement requests that Verdmont now submits to this Court can only be characterized as exquisite. Fisher, Housser, and Verdmont's counsel flew first class to London, at a round trip cost of approximately $6,000 per person.[1] (ECF No. 219-3, at 2–5; 28–29; 36–37.) After arriving at Heathrow, Fisher booked two $700-per-night rooms at the five-star Lanesborough, which offers a "glamorous cigar lounge," and "one of London's most exclusive bars."[2] (ECF No. 219-3, at 30–32.) Whether Fisher toddled down to the bar or simply relied on the "24-hour butler service" is not known. But he and his companion managed to accumulate over $1,000 in unspecified liquor and bar charges during the four-night stay. (ECF No. 219-3, at 31–32.) When Fisher and Housser ventured outside the Lanesborough, they revealed their epicurean tastes by ordering an $85 bottle of 2012 Restless River Cabernet—actually distributed by "Hedonism Wines"—and a $100 bottle of *Bierzo el Rapolao Perez*, a well-regarded Mencia varietal from the Léon province of Spain. (ECF No. 219-3, at 24, 33.) And because it would have been a shame for the deponents to visit London without a tour of St. Paul's Cathedral, they bought tour tickets and now seek reimbursement from the SEC. (ECF No. 219-3, at 2.) It is difficult for this Court to comprehend the business purpose behind these expenses.

But what takes this application into uncharted territory is the fact that Fisher and Housser apparently billed the SEC for a two-day jaunt to Madrid, where they recuperated from

---

[1] By contrast, one SEC attorney's coach-class flight cost $836. (ECF No. 223, at 3.)

[2] See THE LANESBOROUGH, http://www.lanesborough.com/eng/home (last visited June 7, 2016).

their undoubtedly strenuous depositions. (ECF No. 219-3, at 26.) There, they incurred another $1,500 in lodging and assorted beverages at the Hotel Orfila, and savored *jamón ibérico*, and *lomo alto de buey*, a Spanish beef tenderloin, at Restaurante Oter. (ECF No. 219-3, at 26, 27.)

The request that the Government reimburse Verdmont's principals for their saturnalian revelries is beyond the pale. While no one could be faulted for enjoying the finer things Europe has to offer, it is generally ill-advised to seek reimbursement from the public fisc.

Accordingly, the SEC's obligation to reimburse Verdmont for the Fisher and Housser depositions in London is limited to the per diem authorized by the SEC for its attorneys. The SEC's Office of Financial Management shall determine the "reasonable commercial prices" to be reimbursed for airfare. And the SEC need not reimburse any charges incurred during the deponents' junket to Spain.

Because the SEC agreed that the "depositions [would] take place . . . at the cost and expense of the Commission," the SEC shall reimburse Verdmont's counsel for reasonable costs incurred in ordering the deposition transcripts. (ECF No. 165, at 1.)

Dated: June 9, 2016  
New York, New York

SO ORDERED:

_____  
WILLIAM H. PAULEY III  
U.S.D.J.

*All Counsel of Record via ECF.*