PATRICK R. COSTELLO
DEREK S. BENTSEN
BRIDGET M. FITZPATRICK
ERNESTO G. AMPARO
SECURITIES AND EXCHANGE COMMISSION
100 F Street N.E.
Washington, DC 20549
(202) 551-3982  telephone (Costello)
(202) 772-9245  facsimile
costellop@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                                    :
SECURITIES AND EXCHANGE COMMISSION,                 :
                                                    :
                                        Plaintiff,  :
                                                    :
                           v.                       : Case No. 15-cv-894
                                                    : (WHP)(JLC)
CALEDONIAN BANK LTD.,                                :
CALEDONIAN SECURITIES LTD.,                          :
CLEAR WATER SECURITIES, INC.,                        :
LEGACY GLOBAL MARKETS S.A., and                     :
VERDMONT CAPITAL, S.A.                               :
                                                    :
                                        Defendants. :
                                                    :
_____:


**PLAINTIFF'S RESPONSE TO DEFENDANT VERDMONT CAPITAL, S.A.'s
STATEMENT OF UNDISPUTED MATERIAL FACTS
<u>PURSUANT TO LOCAL CIVIL RULE 56.1</u>**

Pursuant to Local Civil Rule 56.1 and Section III.E of this Court's Individual Practices, Plaintiff Securities and Exchange Commission responds to the numbered paragraphs set forth in Defendant Verdmont Capital, S.A's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 (Dkt. No. 242), each of which is reproduced below followed by the SEC's response thereto.

1.     Verdmont is a corporation duly organized under the laws of the Republic of Panama and duly licensed as a broker-dealer in Panama.  Declaration of Shamima Bhana, dated May 16, 2016 ("Bhana Decl."), at ¶ 3.

**SEC Response**:  **The SEC does not dispute this statement.**

2.     According to the Amended Complaint in this action, Verdmont sold for the account of one or more of three clients -- Lornex Financial Ltd. ("Lornex"), Bamfield Equities Ltd. f/k/a Bartlett Trading ("Bamfield" or "Bartlett") and Nautilus Growth Fund Ltd. ("Nautilus") -- unregistered securities of three public companies (Goff Corp. ("Goff"), Norstra Energy, Inc. ("Norstra") and Xumanii, Inc. f/k/a Medora Corporation ("Xumanii") (collectively, the "Securities"), and therefore, violated Section 5(a) and (c) of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. § 77e(a) and (c)) because no valid registration statement was in effect at the time. Declaration of Robert J.A. Zito, dated May 16, 2016 ("Zito Decl."), Exh. 1, Amended Complaint at ¶¶ 1, 2, 63, 80 and 96.

**SEC Response**:  **The SEC does not dispute this statement.**

3.     Verdmont's Answer to the Amended Complaint asserts, among other defenses, that the transactions at issue effected by Verdmont on behalf of its clients were exempt from Section 5 of the Securities Act under the dealer exemption (the "Dealer Exemption") in Section 4(a)(3) of the Securities Act.  Zito Decl., Exh. 2, Verdmont's Answer at ¶ 100 and Second

Defense.

>**SEC Response**:  **The SEC does not dispute that Verdmont asserted in its Answer to the Amended Complaint that the transactions at issue in this case are exempt from registration under the dealer exemption set forth in Section 4(a)(3) of the Securities Act, 15 U.S.C. § 77d(a)(3).**

4.      The Form S-1 registration statement for Goff (as amended on November 2, 2011) for Goff was declared effective by the SEC on November 10, 2011.  Bhana Decl., ¶ 12 and Exh. 2, SEC Notice of Effectiveness, dated November 10, 2011, for Goff, and amended Form S-1 registration statement for Goff filed on November 2, 2011.

>**SEC Response**:  **The SEC disputes this statement as phrased.  The SEC states that on November 10, 2011, it issued a Notice of Effectiveness for the Form S-1 registration statement for Goff (as last amended on November 2, 2011) (Dkt. No. 241-2).**

5.      Attached as Exhibit 15 to the Zito Declaration is a true and correct copy of a FINRA Form 211, dated December 6, 2011, filed with FINRA by Spartan Securities Group Ltd. ("Spartan"), requesting a quotation on the OTC Bulletin Board and Pink Quote for Goff.

>**SEC Response**:  **The SEC does not dispute that Exhibit 15 to the Zito Declaration is a copy of a FINRA Form 211 dated December 6, 2011 completed by Spartan Securities Group Ltd. ("Spartan") (Dkt. No. 240-15).  The SEC also does not dispute the purpose of a Form 211 is for a market maker to be able to quote a security on the OTC Link or the OTC Bulletin Board.  However, to the extent Verdmont's statement is based on the contents of the particular Form 211 in question, the SEC objects pursuant to Fed. R. Civ. P. 56(c)(2) on grounds the contents of the Form 211 are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid., and thus the contents are**

**inadmissible to support the statement.**

6.     Attached as Exhibit 16 to the Zito Declaration is a true and correct copy of a February 14, 2012 letter from Steven D. Genegaban, Compliance Examiner of FINRA, to David Lopez of Spartan, with a cc to OTC Link, LLC, stating in part as follows:  "This letter will confirm that on February 14, 2012, acting in reliance upon the information contained in the filing, we have cleared Spartan's request for an unpriced quotation on the OTC Bulletin Board and OTC Link for GOFF."

**SEC Response**: **The SEC does not dispute this statement.**

7.     The first time Goff was quoted on OTC Link (formerly known as Pink Sheets) was on February 15, 2012.  Zito Decl., Exh. 3, Modeski Dep. Tr. at 23:5-24:5; Zito Decl., Exh. 5, OTC Link quotation records for Goff (first page).

**SEC Response**:  **The SEC does not dispute this statement.**

8.     The first time Goff was quoted on the OTC Bulletin Board was on February 15, 2012.  Zito Decl., Exh. 3, Modeski Dep. Tr. at 23:5-24:5; Zito Decl., Exhs. 8 and 9, FINRA OTC Bulletin Board quote data for Goff; Zito Decl., Exh. 4, 4/27/16 Certification of FINRA Business Records, ¶¶ 2(13) and 2(14); Zito Decl., Exh. 14, April 22, 2016 email string between Bart Krezalek of OTC Markets Group and Robert Nesbitt and Derek Bentsen of the SEC (Bates No. OTC-00002).

**SEC Response**:  **The SEC does not dispute this statement.**

9.     The first sale of Goff stock effected by Verdmont on behalf of any of its clients took place on March 18, 2013.  Bhana Decl., ¶ 14 and Exh. 6, Spreadsheet of the trades in Goff stock effected by Verdmont on behalf of its clients.

**SEC Response**:  **The SEC does not dispute this statement.**

10.     The Form S-1 registration statement (as amended on July 12, 2012) for Norstra was declared effective by the SEC on July 12, 2012.  Bhana Decl., ¶ 15 and Exh. 7, SEC Notice of Effectiveness, dated July 12, 2012, for Norstra, and amended Form S-1 registration statement for Norstra filed on July 12, 2012.

**SEC Response**:  **The SEC disputes this statement as phrased. The SEC states that on July 12, 2012, it issued a Notice of Effectiveness for the Form S-1 registration statement for Norstra (as last amended on July 11, 2012) (Dkt. No. 241-7).**

11.     Attached as Exhibit 17 to the Zito Declaration is a true and correct copy of a FINRA Form 211, dated September 10, 2012, filed with FINRA by Glendale Securities, Inc. ("Glendale"), requesting a quotation on the OTC Bulletin Board and Pink Quote for Norstra.

**SEC Response**:  **The SEC does not dispute that Exhibit 17 to the Zito Declaration is a copy of a FINRA Form 211 dated September 10, 2012 completed by Glendale Securities, Inc. ("Glendale") (Dkt. No. 240-17).  The SEC also does not dispute the purpose of a Form 211 is for a market maker to be able to quote a security on the OTC Link or the OTC Bulletin Board.  However, to the extent Verdmont's statement is based on the contents of the particular Form 211 in question, the SEC objects pursuant to Fed. R. Civ. P. 56(c)(2) on grounds the contents of the Form 211 are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid., and thus the contents are inadmissible to support the statement.**

12.     Attached as Exhibit 18 to the Zito Declaration is a true and correct copy of an October 31, 2012 letter from Mario C. Martins Jr., Compliance Examiner of FINRA, to George Castillo of Glendale, with a cc to OTC Link, LLC, stating in part as follows:  "This letter will confirm that on October 31, 2012, acting in reliance upon the information contained in the filing,

we have cleared Glendale's request for an unpriced quotation on the OTC Bulletin Board and in

OTC Link for NORX."

        <u>SEC Response</u>: **The SEC does not dispute this statement.**

13.     The first time Norstra was quoted on OTC Link (formerly known as Pink Sheets)

was on November 1, 2012.  Zito Decl., Exh. 3, Modeski Dep. Tr. at 26:2-15; Zito Decl., Exh. 6,

OTC Link quotation records for Norstra (first page).

        <u>SEC Response</u>: **The SEC does not dispute this statement.**

14.     The first time Norstra was quoted on the OTC Bulletin Board was on November

1, 2012.  Zito Decl., Exhs. 10 and 11, FINRA OTC Bulletin Board quote data for Norstra; Zito

Decl., Exh. 4, 4/27/16 Certification of FINRA Business Records, ¶¶ 2(5) and 2(7); Zito Decl.,

Exh. 14, April 22, 2016 email string between Bart Krezalek of OTC Markets Group and Robert

Nesbitt and Derek Bentsen of the SEC (Bates Nos. OTC-00002-3).

        <u>SEC Response</u>: **The SEC does not dispute this statement.**

15.     The first sale of Norstra stock effected by Verdmont on behalf of any of its clients

took place on April 1, 2013.  Bhana Decl., ¶ 17 and Exh. 11, Spreadsheet of the trades in Norstra

stock effected by Verdmont on behalf of its clients.

        <u>SEC Response</u>: **The SEC does not dispute this statement.**

16.     The Form S-1 registration statement (as amended on March 14, 2011) for Medora

(Xumanii) was declared effective by the SEC on March 14, 2011.  Bhana Decl., ¶ 18 and Exh.

12, SEC Notice of Effectiveness, dated March 14, 2011, for Medora (Xumanii), and amended

Form S-1 registration statement for Medora (Xumanii) filed on March 14, 2011.

        <u>SEC Response</u>: **The SEC disputes this statement as phrased. The SEC states**

**that on March 14, 2011, it issued a Notice of Effectiveness for the Form S-1 registration**

**statement for Medora (Xumanii) (as last amended on March 14, 2011) (Dkt. No. 241-12).**

17.     Attached as Exhibit 19 to the Zito Declaration is a true and correct copy of a FINRA Form 211, dated February 23, 2011, filed with FINRA by Capital Path Sec. ("Capital"), requesting a quotation on the OTC Bulletin Board and Pink Quote for Medora (Xumanii).

**SEC Response**:  **The SEC does not dispute that Exhibit 19 to the Zito Declaration is a copy of a FINRA Form 211 dated February 23, 2011 completed by Capital Path Sec. ("Capital Path") (Dkt. No. 240-19).  The SEC also does not dispute the purpose of a Form 211 is for a market maker to be able to quote a security on the OTC Link or the OTC Bulletin Board.  However, to the extent Verdmont's statement is based on the contents of the particular Form 211 in question, the SEC objects pursuant to Fed. R. Civ. P. 56(c)(2) on grounds the contents of the Form 211 are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid., and thus the contents are inadmissible to support the statement.**

18.     Attached as Exhibit 20 to the Zito Declaration is a true and correct copy of a May 3, 2011 letter from Steven D. Genegaban, Compliance Examiner of FINRA, to William Davis of Capital, with a cc to OTC Link, LLC, stating in part as follows:  "This letter will confirm that on May 3, 2011, acting in reliance upon the information contained in the filing, we have cleared Capital's request for an unpriced quotation on the OTC Bulletin Board and OTC Link for MORA."

**SEC Response**:  **The SEC does not dispute this statement.**

19.     The first time Medora (Xumanii) was quoted on OTC Link (formerly known as Pink Sheets) was on May 4, 2011.  Zito Decl., Exh. 3, Modeski Dep. Tr. at 24:20-25:14; Zito Decl., Exh. 7, OTC Link quotation records for Xumanii (first page).

   **SEC Response**:  **The SEC does not dispute this statement.**

  20. The first time Medora (Xumanii) was quoted on the OTC Bulletin Board was on May 4, 2011.  Zito Decl., Exh. 3, Modeski Dep. Tr. at 24:20-25:14; Zito Decl., Exh. 12, FINRA OTC Bulletin Board quote data for Medora (Xumanii); Zito Decl., Exh. 4, 4/27/11 Certification of FINRA Business Records, ¶ 2(9); Zito Decl., Exh. 14, April 22, 2016 email string between Bart Krezalek of OTC Markets Group and Robert Nesbitt and Derek Bentsen of the SEC (Bates No. OTC-00003).

   **SEC Response**:  **The SEC does not dispute this statement.**

  21. The first sale of Medora (Xumanii) stock effected by Verdmont on behalf of any of its clients took place on May 1, 2013.  Bhana Decl., ¶ 20 and Exh. 16, Spreadsheet of the trades in Medora (Xumanii) stock effected by Verdmont on behalf of its clients.

   **SEC Response**:  **The SEC does not dispute this statement.**

  22. Verdmont was not an issuer of any of the Securities.  Nor was Verdmont controlled by any of the issuers of the Securities.  Bhana Decl., ¶ 21.

   **SEC Response**:  **The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont was an issuer or controlled by an issuer of the subject securities, and thus the statement lacks foundation. In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.  Finally, Ms. Bhana's statement is an**

improper legal conclusion, and therefore is inadmissible.

23.    Verdmont was not an underwriter in connection with the distribution of the Securities.  Bhana Decl., ¶ 22.

**SEC Response**: **The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont was an underwriter in connection with the subject securities, and thus the statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.  Finally, Ms. Bhana's statement is an improper legal conclusion, and therefore is inadmissible.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer which makes Verdmont a statutory underwriter in the distribution of the Securities. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of**

"Witness 1," the issuers and Verdmont's clients were all in common control with the Mulholland Group, which used the issuers to effectuate a fraudulent scheme. (Declaration of "Witness 1"). This makes Verdmont a statutory underwriter in connection with the distribution of securities.

24.     Verdmont did not acquire any stock from the issuers of the Securities.  Bhana Decl., ¶ 22.

**SEC Response**:  **The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont acquired stock from the issuers of the subject securities, and thus the statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.  Finally, Ms. Bhana's statement is an improper legal conclusion, and therefore is inadmissible.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer which makes them issuers by statute.  (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20,**

524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1" the issuers and Verdmont's clients were all in common control with the Mulholland Group, which used the issuers to effectuate a fraudulent scheme.  (Declaration of "Witness 1").  This makes Verdmont a statutory underwriter in connection with the distribution of securities.

25.     Verdmont did not acquire any stock from any person who was controlled by any of the issuers of the Securities.  Bhana Decl., ¶ 22.

**SEC Response**:  The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont acquired stock from any person who was controlled by any of the issuers of the subject securities, and thus the statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.  Finally, Ms. Bhana's statement is an improper legal conclusion, and therefore is inadmissible.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer.

**(Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1" the issuers and Verdmont's clients were all in common control with the Mulholland Group, which used the issuers to effectuate a fraudulent scheme.  (Declaration of "Witness 1").  This makes Verdmont a statutory underwriter in connection with the distribution of securities.**

26.     Verdmont had no role in the distribution of stock in the Securities by the issuers. Bhana Decl., ¶ 22.

**SEC Response**:  **The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont had any role in the distribution of the subject securities by the issuers, and thus the statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.  Finally, Ms. Bhana's statement is an improper legal conclusion, and therefore is inadmissible.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence**

that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer which makes Verdmont's sale of shares to the public a distribution of the Securities. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme in which Verdmont engaged in the distribution of securities.  (Declaration of "Witness 1").

27.     Verdmont's customers were not underwriters with regard to the sales of the Securities at issue effected by Verdmont.  Bhana Decl., ¶ 23.

SEC Response:  The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont's customers were not underwriters with regard to the sales of the subject securities, and thus the statement lacks foundation. In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter. Finally, Ms. Bhana's statement is an improper legal conclusion, and therefore is

inadmissible.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer which makes Verdmont and its clients statutory underwriters in the distribution of the Securities. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme which makes Verdmont and its clients statutory underwriters in connection with the distribution of securities. (Declaration of "Witness 1").

28. None of Verdmont's customers acquired stock from an issuer or persons controlled by an issuer of any of the Securities. Bhana Decl., ¶ 23.

SEC Response: The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence. The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont's customers acquired the subject securities from the issuers or persons controlled by the issuers, and thus the statement lacks foundation. In addition, Verdmont failed to disclose Ms. Bhana in

its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter. Finally, Ms. Bhana's statement is an improper legal conclusion, and therefore is inadmissible.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme.  (Declaration of "Witness 1").

29.     According to Verdmont's records, Verdmont's customers were not controlled by the issuers of the Securities, and, therefore, were the public.  Bhana Decl., ¶ 24.

**SEC Response**:  **The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether Verdmont's customers were controlled by the issuers of the subject securities, and thus the statement lacks foundation.**

In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.  Moreover, Ms. Bhana's statement is an improper legal conclusion, and therefore is inadmissible.  Finally, to the extent Ms. Bhana is basing the statement on unspecified "records" of Verdmont, the same contain multiple layers of hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid., and the records are thus not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme.  (Declaration of "Witness 1").

30.     By the time Verdmont's customers acquired stock in the Securities, the stock "rested" with the public, which, by definition, terminated the distribution.  Bhana Decl., ¶ 24.

**SEC Response**:  The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) and 56(c)(4) on grounds it is based on inadmissible evidence.  The declarant,

Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of whether by the time Verdmont's customers acquired stock in the subject securities, the stock "rested" with the public, and thus the statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter. Moreover, Ms. Bhana's statement is an improper legal conclusion, and therefore is inadmissible.  Finally, to the extent Ms. Bhana is basing the statement on unspecified "records" of Verdmont, the same contain multiple layers of hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid., and the records are thus not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer and shares were not distributed to the public until they were sold by Verdmont.  (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate

- 16 -

a fraudulent scheme in which Verdmont engaged in a distribution to the public.
(Declaration of "Witness 1").

31.    The investment account application that Lornex submitted to Verdmont lists as
authorized signatories Clifford Wilkins (Director of Lornex) and Virgilio Santana (Secretary of
Lornex), and Clifford Wilkins as 100% beneficial owner; according to Verdmont's records,
neither Clifford Wilkins nor Virgilio Santana was a director or officer of any of the issuers of the
Securities.  Bhana Decl., ¶ 25 and Exh. 17.

**SEC Response**: **The SEC does not dispute that Exhibit 17 to the Bhana
Declaration is a copy of what purports to be an investment account application by Lornex
Financial Ltd. ("Lornex") (Dkt. No. 241-17).  The SEC also does not dispute the application
states the individuals identified in the statement above are the beneficial owners and
authorized signatories of Lornex.  However, as the statement indicates, the application was
"submitted to Verdmont," and thus the application contains hearsay not falling within an
exclusion or exception recognized by the Fed. R. Evid.  Accordingly, the contents of the
application cannot be used to support the statement.   In addition, to the extent Ms. Bhana
is basing the second part of the statement on unspecified "records" of Verdmont, the same
contain multiple layers of hearsay not falling within an exclusion or exception recognized
by the Fed. R. Evid., and the records are thus not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there
is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence
that the transactions leading to shares being acquired by Verdmont's clients were merely
shams and that Verdmont's clients were in common control and interest as the issuer.
(Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245,**

248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  **Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").**

32.     The investment account application that Bartlett submitted to Verdmont lists Chris Smith as the authorized signatory and 100% beneficial owner; according to Verdmont's records, Chris Smith was not a director or officer of any of the issuers of the Securities.  Bhana Decl., ¶ 26 and Exh. 18.

**<u>SEC Response</u>: The SEC does not dispute that Exhibit 18 to the Bhana Declaration is a copy of what purports to be an investment account application by Bartlett Trading Inc. ("Bartlett") (Dkt. No. 241-18).  The SEC also does not dispute the application states the individual identified in the statement above is the beneficial owner and authorized signatory of Bartlett.  However, as the statement indicates, the application was "submitted to Verdmont," and thus the application contains hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid.  Accordingly, the contents of the application cannot be used to support the statement.   In addition, to the extent Ms. Bhana is basing the second part of the statement on unspecified "records" of Verdmont, the same contain multiple layers of hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid., and the records are thus not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there**

is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").

33.     The investment account application that Nautilus submitted to Verdmont lists Virgilio Santana Ripoll as authorized signatory, and Keyse Management Ltd. and BDI, SA Luxembourg as beneficial owners; according to Verdmont's records, none of Virgilio Santana Ripoll, and Keyse Management Ltd. and BDI, SA Luxembourg was a director or officer of any of the issuers of the Securities.  Bhana Decl., ¶ 27 and Exh. 19.

**SEC Response**: The SEC does not dispute that Exhibit 19 to the Bhana Declaration is a copy of what purports to be an investment account application by Nautilus Growth Fund Ltd. ("Nautilus") (Dkt. No. 241-19).  The SEC also does not dispute the application states the individuals and entities identified in the statement above are the beneficial owners and authorized signatories of Nautilus.  However, as the statement indicates, the application was "submitted to Verdmont," and thus the application contains hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid.

Accordingly, the contents of the application cannot be used to support the statement.   In addition, to the extent Ms. Bhana is basing the second part of the statement on unspecified "records" of Verdmont, the same contain multiple layers of hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid., and the records are thus not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme.  (Declaration of "Witness 1").

34.    Verdmont's client (Lornex) purchased 560,000 shares of Goff from selling shareholders (Colm Norris and Kevin Crowley) under the Goff registration statement on August 8, 2012.  Bhana Decl., ¶10 and Exhibit 3, Stock Purchase Agreements, dated August 8, 2012, that Lornex entered into with Norris and Crowley; Exhibit 4, Stock Powers, dated August 8, 2012, authorizing the transfer of Norris's and Crowley's Goff shares to Lornex; and Exhibit 5, stock certificate, dated September 25, 2012, issued to Lornex for 560,000 shares of Goff stock.

**SEC Response**:  **The SEC objects to this statement pursuant to Fed. R. Civ.**

P. 56(c)(2) on grounds it is based on inadmissible evidence.  The declarant, Shamina

Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she

does have personal knowledge) of the transactions described in the statement, and thus the

statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its

initial disclosures as a witness with knowledge of this subject and that Verdmont may use

to support its claims or defenses in this matter. Accordingly, pursuant to Fed. R. Civ. P.

37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.

Finally, the records attached as Exhibits 3-5 of the Bhana Declaration are not Verdmont's

own business records and thus they are hearsay not falling within an exclusion or exception

recognized by the Fed. R. Evid. Accordingly, the records are not admissible for the

statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there

is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence

that the transactions leading to shares being acquired by Verdmont's clients were merely

shams and that Verdmont's clients were in common control and interest as the issuer.

(Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245,

248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-

53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642,

647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816,

822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of

"Witness 1," the issuers and Verdmont's clients were all in common control with the

issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration

of "Witness 1").

- 21 -

35.     Attached as Exhibit 21 to the Zito Declaration is a true and correct copy of a Private Placement Subscription Agreement dated December 16, 2010 pursuant to which Kevin Crowley agreed to purchase 350,000 shares of Goff stock for $1,050, as well as a copy of a check dated December 16, 2010 payable to Goff in the amount of $1,050.  Zito Decl., ¶ 20.

**SEC Response**:  **The SEC does not dispute that Exhibit 21 to the Zito Declaration is a copy of what purports to be a private placement subscription agreement and a check dated December 16, 2010 (Dkt. No. 240-21).  The SEC also does not dispute the agreement states Kevin Crowley is purchasing a certain number of shares of Goff. However, the SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and check are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid. Accordingly, the documents are not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration**

of "Witness 1").

36.     Attached as Exhibit 22 to the Zito Declaration is a true and correct copy of a Private Placement Subscription Agreement dated January 19, 2011 pursuant to which Colm Norris agreed to purchase 250,000 shares of Goff stock for $750, as well as a copy of a check dated January 19, 2011 payable to Goff in the amount of $750.  Zito Decl., ¶ 21.

**SEC Response**:  **The SEC does not dispute that Exhibit 22 to the Zito Declaration is a copy of what purports to be a private placement subscription agreement and a check dated January 19, 2011 (Dkt. No. 240-22).  The SEC also does not dispute the agreement states Colm Norris is purchasing a certain number of shares of Goff.  However, the SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and check are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid.  Accordingly, the documents are not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the**

issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").

37.     Attached as Exhibit 23 to the Zito Declaration is a true and correct copy of an affidavit of Gary O'Flynn, President of Goff, dated November 23, 2011, stating in part that none of the Shareholders of Goff:  (1) "have the ability to control or influence the decisions or day to day operations of the Company [Goff]"; (2) "are an underwriter"; (3) "are an affiliate of the Company"; (4) "are nominees for any other person or persons"; and (5) "are controlled by, or has given control to, any other person or entity, including providing control to the Company or its officers and/or affiliates."  Zito Decl., ¶ 22.

**SEC Response**: **The SEC does not dispute that Exhibit 23 to the Zito Declaration is a copy of what purports to be an affidavit of Gary O'Flynn dated November 23, 2011 (Dkt. No. 240-23).  However, the SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence.  Verdmont failed to disclose Mr. O'Flynn in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter. Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Mr. O'Flynn to supply evidence on this subject matter.  In addition, the referenced portions of the affidavit in the statement are improper legal conclusions, and therefore inadmissible.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245,**

248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  **Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").**

38.     Verdmont's client (Lornex) purchased 3,687,000 shares of Norstra stock on February 5, 2013 from shareholders (Maria Garpenfeldt, Katherine Sanchez and Blixen Palmer) who purchased and were issued shares under the registration statement on September 7, 2012. Bhana Decl., ¶ 16 and Exhibit 8, Stock Purchase Agreements, dated February 5, 2013, that Lornex entered into with Garpenfeldt, Sanchez and Palmer; Exhibit 9, Stock Power, dated February 5, 2013, authorizing the transfer of Garpenfeldt's, Sanchez's and Palmer's Norstra stock to Lornex; and Exhibit 10, stock certificate, dated February 7, 2013, for 3.687,000 shares of Norstra stock issued to Lornex.

**SEC Response**: **The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of the transactions described in the statement, and thus the statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter. Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter.**

Finally, the records attached as Exhibits 8-10 of the Bhana Declaration are not Verdmont's own business records and thus they are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid. Accordingly, the records are not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").

39.     Attached as Exhibit 24 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated July 14, 2012 pursuant to which Maria Garpenfeldt agreed to purchase 2,000,000 shares of Norstra stock for $2,000, as well as a true and correct copy of a check dated July 14, 2012 payable to Norstra in the amount of $2,000.  Zito Decl., ¶ 23.

SEC Response: The SEC does not dispute that Exhibit 24 to the Zito Declaration is a copy of what purports to be a subscription agreement and a check dated July 14, 2012 (Dkt. No. 240-24).  The SEC also does not dispute the agreement states Maria

Garpenfeldt is purchasing a certain number of shares of Norstra. However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and check are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid.  Accordingly, the documents are not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").

40.     Attached as Exhibit 25 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated August 3, 2012 pursuant to which Katherine Sanchez agreed to purchase 1,000,000 shares of Norstra stock for $1,000, as well as a true and correct copy of a check dated August 3, 2012 payable to Norstra in the amount of $1,000.  Zito Decl., ¶ 24.

**SEC Response**: The SEC does not dispute that Exhibit 25 to the Zito Declaration is a copy of what purports to be a subscription agreement and a check dated

**August 3, 2012 (Dkt. No. 240-25). The SEC also does not dispute the agreement states Katherine Sanchez is purchasing a certain number of shares of Norstra. However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and check are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid. Accordingly, the documents are not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").**

41.    Attached as Exhibit 26 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated September 1, 2012 pursuant to which Bleixen Palmer agreed to purchase 1,000,000 shares of Norstra stock for $1,000, as well as a true and correct copy of a check dated September 1, 2012 payable to Norstra in the amount of $1,000. Zito Decl., ¶ 25.

**SEC Response: The SEC does not dispute that Exhibit 26 to the Zito**

Declaration is a copy of what purports to be a subscription agreement and a check dated September 1, 2012 (Dkt. No. 240-26). The SEC also does not dispute the agreement states Bleixen Palmer is purchasing a certain number of shares of Norstra. However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and check are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid. Accordingly, the documents are not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").

42.     Attached as Exhibit 27 to the Zito Declaration is a true and correct copy of a letter dated September 24, 2012 from Dallas Kerkenezov, President and Chief Executive Officer of Norstra, to Mario C. Marlins Jr., Compliance Examoner of FINRA, stating in part: "This will additionally confirm that to the knowledge of the Company [Norstra], no person or entity has

- 29 -

control, written or otherwise, of the sale, transfer, disposition, voting or any other aspect of the

shares listed on the shareholder list other than the person or entity identified as the shareholder.

To the knowledge of the Company, no arrangement existed, presently exists or is planned for any

person or entity to obtain such control." Zito Decl., ¶ 26.

       **SEC Response**: **The SEC does not dispute that Exhibit 27 to the Zito**

**Declaration is a copy of what purports to be a letter from Dallas Kerkenezov dated**

**September 24, 2012 (Dkt. No. 240-27).   However, the SEC objects to this statement**

**pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence.**

**Verdmont failed to disclose Mr. Kerkenezov in its initial disclosures as a witness with**

**knowledge of this subject and that Verdmont may use to support its claims or defenses in**

**this matter.  Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Mr.**

**Kerkenezov to supply evidence on this subject matter.  In addition, the referenced portions**

**of the affidavit in the statement are improper legal conclusions, and therefore inadmissible.**

**Finally, the letter is unsworn and thus constitutes hearsay not falling within an exclusion or**

**exception recognized by the Fed. R. Evid.  Accordingly, the letter is not admissible for the**

**statement asserted.**

       **Additionally, even assuming Verdmont proffered admissible evidence, there**

**is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence**

**that the transactions leading to shares being acquired by Verdmont's clients were merely**

**shams and that Verdmont's clients were in common control and interest as the issuer.**

**(Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245,**

**248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-**

**53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642,**

647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  **Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").**

43.     Verdmont's client (Lornex) purchased 3,100,000 shares of Medora (Xumanii) stock from selling shareholders (Rene Lawrence, Brenton Nagheer, Anthony Reid, Jenifer Rose and Dwight Brown) under the registration statement on February 22, 2012.  Bhana Decl.,  ¶ 19 and Exhibit 13, Stock Purchase Agreements, dated February 22, 2012, that Lornex entered into with Lawrence, Nagheer, Reid, Rose and Brown); Exhibit 14, Powers of Attorney, dated February 22, 2012, authorizing the transfer of Lawrence's, Nagheer's, Reid's, Rose's and Brown's Medora (Xumanii) shares to Lornex; and Exhibit 15, stock certificate, dated March 1, 2012, for 3,100,000 shares of Medora (Xumanii) that was issued to Lornex.

**SEC Response**:  **The SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence.  The declarant, Shamina Bhana, has no personal knowledge (and has failed to set forth any basis demonstrating she does have personal knowledge) of the transactions described in the statement, and thus the statement lacks foundation.  In addition, Verdmont failed to disclose Ms. Bhana in its initial disclosures as a witness with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter. Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Ms. Bhana to supply evidence on this subject matter. Finally, the records attached as Exhibits 13-15 of the Bhana Declaration are not Verdmont's own business records and thus they are hearsay not falling within an exclusion**

or exception recognized by the Fed. R. Evid. Accordingly, the records are not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").

44.     Attached as Exhibit 28 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated July 23, 2010 pursuant to which Rene Lawrence agreed to purchase 650,000 shares of Medora (Xumanii) stock for $.0015 per share.

SEC Response: The SEC does not dispute that Exhibit 28 to the Zito Declaration is a copy of what purports to be a subscription agreement dated July 23, 2010 (Dkt. No. 240-28). The SEC also does not dispute the agreement states Rene Lawrence is purchasing a certain number of shares of Medora (Xumanii). However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement is hearsay not falling within an exclusion or exception recognized

by the Fed. R. Evid. Accordingly, the document is not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").

45.     Attached as Exhibit 29 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated July 30, 2010 pursuant to which Brenton Nagheer agreed to purchase 650,000 shares of Medora (Xumanii) stock for $.0015 per share, as well as a true and correct copy of an Outgoing Payment Transfer dated July 30, 2010 from Brenton Nagheer in the amount of $975.

SEC Response: The SEC does not dispute that Exhibit 29 to the Zito Declaration is a copy of what purports to be a subscription agreement and wire transfer confirmation dated July 30, 2010 (Dkt. No. 240-29). The SEC also does not dispute the agreement states Brenton Nagheer is purchasing a certain number of shares of Medora

(Xumanii).  However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and wire transfer confirmation are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid.  Accordingly, the documents are not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").

46.    Attached as Exhibit 30 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated July 21, 2010 pursuant to which Anthony Reid agreed to purchase 650,000 shares of Medora (Xumanii) stock for $.0015 per share, as well as a true and correct copy of an Outgoing Payment Transfer dated July 21, 2010 from Anthony Reid in the amount of $975.

SEC Response: The SEC does not dispute that Exhibit 30 to the Zito Declaration is a copy of what purports to be a subscription agreement and wire transfer

confirmation dated July 21, 2010 (Dkt. No. 240-30). **The SEC also does not dispute the agreement states Anthony Reid is purchasing a certain number of shares of Medora (Xumanii). However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and wire transfer confirmation are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid. Accordingly, the documents are not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").**

47.     Attached as Exhibit 31 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated July 21, 2010 pursuant to which Jenifer Rose agreed to purchase 650,000 shares of Medora (Xumanii) stock for $.0015 per share, as well as a true and correct copy of a wire transfer form dated July 21, 2010 from Jenifer Rose in the amount of $975.

**SEC Response: The SEC does not dispute that Exhibit 31 to the Zito**

Declaration is a copy of what purports to be a subscription agreement and wire transfer confirmation dated July 21, 2010 (Dkt. No. 240-31). The SEC also does not dispute the agreement states Jenifer Rose is purchasing a certain number of shares of Medora (Xumanii). However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and wire transfer confirmation are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid. Accordingly, the documents are not admissible for the statement asserted.

Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").

48. Attached as Exhibit 32 to the Zito Declaration is a true and correct copy of a Subscription Agreement dated July 20, 2010 pursuant to which Dwight Brown agreed to purchase 633,333 shares of Medora (Xumanii) stock for $.0015 per share, as well as a true and

correct copy of an Outgoing Payment Transfer dated July 20, 2010 from Dwight Brown in the amount of $950.

**SEC Response**: **The SEC does not dispute that Exhibit 32 to the Zito Declaration is a copy of what purports to be a subscription agreement and wire transfer confirmation dated July 20, 2010 (Dkt. No. 240-32). The SEC also does not dispute the agreement states Dwight Brown is purchasing a certain number of shares of Medora (Xumanii). However, the SEC objects to the statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence. The agreement and wire transfer confirmation are hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid. Accordingly, the documents are not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement. The SEC has adduced evidence that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846). Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders. (Declaration of "Witness 1").**

- 37 -

49.     Attached as Exhibit 33 to the Zito Declaration is a true and correct copy of a letter dated March 23, 2011 from William Davis of Capital Path Securities LLC to Mr. Genegaban of FINRA, and March 21, 2011 letter from Craig McKenzie, President and CEO of Medora (Xumanii), stating in "Answer to Comment #9" as follows:  "The Issuer confirms that there are no persons, or entities which have control, written or otherwise, of the sale, transfer disposition, voting or any other aspect of the shares listed in the S-1 other than the person or entity identified as the shareholders.  There are no past, present or future agreements."

**SEC Response**:  **The SEC does not dispute that Exhibit 33 to the Zito Declaration is a copy of what purports to be a letter from William Davis dated March 23, 2011, attaching another letter that is unsigned from Craig McKenzie dated March 21, 2011 (Dkt. No. 240-33).  However, the SEC objects to this statement pursuant to Fed. R. Civ. P. 56(c)(2) on grounds it is based on inadmissible evidence.  Verdmont failed to disclose both Mr. Davis and Mr. McKenzie in its initial disclosures as witnesses with knowledge of this subject and that Verdmont may use to support its claims or defenses in this matter. Accordingly, pursuant to Fed. R. Civ. P. 37(c)(1), Verdmont may not use Mr. Davis or Mr. McKenzie to supply evidence on this subject matter.  In addition, the referenced portions of the letter in the statement are improper legal conclusions, and therefore inadmissible. Finally, Mr. Davis' letter is unsworn and Mr. McKenzie's letter is both unsworn and unsigned and thus both letters constitute hearsay not falling within an exclusion or exception recognized by the Fed. R. Evid.  Accordingly, the letters are not admissible for the statement asserted.**

**Additionally, even assuming Verdmont proffered admissible evidence, there is a genuine dispute of a material fact as to this statement.  The SEC has adduced evidence**

that the transactions leading to shares being acquired by Verdmont's clients were merely shams and that Verdmont's clients were in common control and interest as the issuer. (Declaration of Richard Simpson, Dkt. No. 75 at A226, 238, 232-33, 336, 339, 342, 243, 245, 248, 250-304, 310, 312-22, 367-68, 370, 373, 376-78, 410, 416, 425, 436-38, 443, 445, 448, 452-53, 464, 471-72, 496-97, 500-08, 510, 512-20, 524-67, 568-617, 619, 621-29, 636, 638, 642, 647, 561, 670-73, 679, 682, 715-16, 726-27, 730-31, 733, 734-38, 785-92, 794-807, 809, 816, 822-24, 825, 833, 835, 837, 839, 841, 844, 846).  Additionally, pursuant to the declaration of "Witness 1," the issuers and Verdmont's clients were all in common control with the issuers to effectuate a fraudulent scheme using sham nominee shareholders.  (Declaration of "Witness 1").


Dated: Washington, D.C.
       June 15, 2016


Local Counsel:

David Stoelting
Securities and Exchange Commission
Brookfield Place, 200 Vesey Street
New York, New York 20181
(212) 336-0174  telephone
(212) 336-1323  facsimile
stoeltingd@sec.gov

Respectfully submitted,


/s/ Patrick R. Costello
Patrick R. Costello
Derek S. Bentsen
Bridget M. Fitzpatrick
Ernesto G. Amparo

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-5985
(202) 551-3982  telephone (Costello)
(202) 772-9245  facsimile
costellop@sec.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 15, 2016, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT VERDMONT CAPITAL, S.A.'s STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1 using the CM/ECF system, which will send notification of such filing to counsel for Defendants Caledonian Bank Ltd., Caledonian Securities Ltd. and Verdmont Capital, S.A. at the following addresses:

Robert J.A. Zito
Carter Ledyard Milburn LLP
Two Wall Street
New York, New York 10005
zito@clm.com
Attorneys for Defendant
Verdmont Capital, S.A.

Sigal P. Mandelker
Margaret A. Dale
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
smandelker@proskauer.com
mdale@proskauer.com
Attorneys for Defendants Caledonian
Bank Ltd. and Caledonian Securities
Ltd.

/s/ Patrick R. Costello
Patrick R. Costello