Robert J.A. Zito
Mark R. Zancolli
Theodore Y. McDonough
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax: (212) 732-3232
*Attorneys for Verdmont Capital, S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
SECURITIES AND EXCHANGE
COMMISSION

        Plaintiff,

        v.

CALEDONIAN BANK LTD.,
CALEDONIAN SECURITIES LTD.,
CLEAR WATER SECURITIES, INC.,
LEGACY GLOBAL MARKETS S.A., and
VERDMONT CAPITAL, S.A.,

        Defendants.
---------------------------------------------------------------- x

Civ. No. 15 CV 894 (WHP) (JLC)

# REPLY MEMORANDUM OF LAW OF DEFENDANT VERDMONT CAPITAL, S.A. IN SUPPORT OF ITS MOTION TO VACATE THE FREEZE OF VERDMONT'S ASSETS

7820819.3

## PRELIMINARY STATEMENT

Defendant Verdmont Capital, S.A. ("Verdmont") respectfully submits this memorandum of law, in reply to the SEC's papers in opposition to Verdmont's motion vacate the freeze of Verdmont's assets, and in further support of that motion.

## ARGUMENT

## THE ASSET FREEZE SHOULD BE VACATED

### A.   Verdmont Has Demonstrated A Valid Basis To Vacate The Asset Freeze

The SEC contends that it is entitled to maintain the freeze of Verdmont's assets if it can demonstrate either an "inference" that Verdmont has violated federal securities law, or a likelihood of success on the merits. (SEC Memo at 2-3)  Here, application of either the "inference" or "likelihood of success" prong leads to the same result – that the SEC is not entitled to maintain the asset freeze.

The SEC contends that this Court's decision on Verdmont's motion for judgment on the pleadings establishes an inference that Verdmont violated federal securities law. However, an "inference" may be drawn only when based on **all** known facts or evidence.[1] In its decision on Verdmont's motion for judgment on the pleadings, this Court declined to consider evidence of applicable exemptions:

> [T]his Court cannot rely on Verdmont's allegations in ruling on the motion for judgment on the pleadings. Instead, this Court's analysis must turn on the SEC's allegations. (November 10, 2015 Decision [Dkt. 140] at 26)

Therefore, the SEC may not rely on this Court's decision on Vermont's motion for judgment on the pleading to establish an "inference" that a federal securities law was violated. Rather, Verdmont submits that in the instant procedural posture, analysis of whether an inference that a

---

[1] *See* http://www.merriam-webster.com/dictionary/inference.

7820819.3

federal securities law was violated may be drawn must consider the facts and evidence supporting Verdmont's motion for summary judgment based on application of Section 4(a)(3) (the "Dealer Exemption"), and therefore the analysis is co-extensive with the analysis of whether the SEC is likely to succeed on the merits of its claim.

As explained in Verdmont's opening and reply memoranda of law in support of its motion for summary judgment, there is no genuine dispute of material fact that the sales of the securities effected by Verdmont on behalf of its customers were exempt from registration pursuant to the Dealer Exemption. Therefore, the SEC is unlikely to succeed on the merits of its claim, no inference may be drawn that Verdmont violated federal securities laws, and, accordingly, Verdmont's frozen assets should be released.

Additionally, the cases on which the SEC relies are inapposite. In each of the SEC's cases, a request to modify an asset freeze was denied because the defendant had already been convicted of securities violations or a release of frozen funds would have depleted the amount of funds available to compensate victims, or both. In *SEC v. Credit Bancorp. Ltd.*, Case No. 99-cv-11395, 2010 U.S. Dist. LEXIS 20836 (S.D.N.Y. Mar. 8, 2010), the defendant was convicted of two counts of Securities Fraud and ordered to pay restitution of over $18 million. Similarly, in *SEC v. Callahan*, Case No. 12-cv-1065 (ADS), 2015 U.S. Dist. LEXIS 178114 (E.D.N.Y. Dec. 24, 2015), the defendant pled guilty in a related criminal action to securities and wire fraud, and the frozen assets were necessary to compensate the victims of the defendant's fraud. *See also SEC v. Private Equity Mgmt. Group, Inc.*, Case No. 09-cv-2901, 2009 U.S. Dist. LEXIS 64724 (C.D. Cal. July 9, 2009) (request to release frozen funds denied where defendant, who also was facing criminal charges, was alleged to have taken "several loans from the investors and paid himself, and entities within his control, millions in unearned commissions," and release of funds

would be to the "detriment" of the investors); *SEC v. Dobbins*, Case No. 04-cv-0605, 2004 U.S. Dist. LEXIS 6362 (N.D. Tex. Apr. 14, 2004) (motion to release frozen funds to pay attorney's fees denied to "ensure that Defendants' assets are available make restitution to the alleged victims"). Verdmont has not been charged with, much less been convicted of, a criminal securities law violation.

The SEC also argues that modification of the asset freeze would result in insufficient funds remaining to satisfy any disgorgement remedy. But when the SEC asked the Court to approve its proposed settlement with Caledonian Bank, the SEC explained that it was not concerned with Caledonian's inability to pay a fine or satisfy an order of disgorgement:

> This is a form of settlement that is frequently used when there are bankruptcy or liquidation proceedings; when the SEC acknowledges that there will be creditors who have priority over the SEC in the proceeding and will deplete the vast majority of available funds. So in that instance the SEC typically sets the amount of relief at what it believes is appropriate – here, [$]25 million – but then foregoes payment in recognition of the realities of a liquidation or bankruptcy proceeding.

*See* Bhana Decl., ¶8 & Ex. D. The SEC's professed disinterest in collecting from Caledonian fatally undermines its objection to the release of Verdmont's frozen assets.

Finally, as explained in Section B, *infra*, even if, as the SEC contends, a security is bona fide offered to the public when the security is actually sold to the public through an executed trade, Verdmont has demonstrated that at least a portion of the frozen funds cannot be tied to a violation of federal securities law, since many of the sales Verdmont effected on behalf of its customers took place more than 40 days after the first sales of the securities, and at least funds attributable to those sales should be released.[2]

---

[2] The SEC insinuates that Verdmont's monthly budget for legal fees is unreasonable, SEC Memo at 6-7, but offers no particularized objection to the amount. Verdmont submits that the amount of $85,000, of which $50,000 is allocated to fees of Carter Ledyard & Milburn LLP, is objectively reasonable for a litigation in which the allegations of wrongdoing are serious enough

3

### B. The Amount Of Frozen Assets Exceeds The Potential Disgorgement Amount

The SEC mistakenly asserts that the amount of Verdmont's assets currently frozen do not exceed the potential disgorgement amount. However, even applying the SEC's interpretation of the Dealer Exemption – that the 40-day period begins to run when the security is first sold to the public through an executed trade – more than half of the amount of funds presently frozen reflect commissions received by Verdmont for transactions that it effected on behalf of its clients more than 40 days after the first sale of the securities to the public through an executed trade.

As explained in Verdmont's Memorandum of Law In Support of Verdmont's Motion for Summary Judgment, Verdmont contends that, for purposes of the Dealer Exemption, the latest date on which the applicable 40-day period began to run was the date when the securities were first quoted on OTC Link or the OTC Bulletin Board – i.e., February 15, 2012 for Goff, November 1, 2012 for Norstra, and May 4, 2011 for Xumanii. However, even using the SEC's interpretation of the Dealers' Exemption – which Verdmont contends is incorrect and not supported by case law – a large number of the sales in the securities nevertheless fall outside of the Dealer Exemption 40-day waiting period. Verdmont's commissions applicable to those trades, therefore, are inappropriately frozen and should be released.

The SEC contends that March 18, 2013 was the date of the first public sale of Goff stock, that March 5, 2013 was the date of the first public sale of Norstra stock, and that April 29, 2013 was the date of the first public sale of Xumanii stock. *See* Bhana Declaration, ¶5 & Ex. A. If the

---

to have forced the defendant into liquidation. Verdmont also notes that Carter Ledyard & Milburn has staffed this litigation primarily with three attorneys, which is one attorney fewer than the SEC has assigned to the matter (excluding the SEC's local New York counsel). Absent a specific objection to the objectively reasonable amount budgeted for Verdmont's defense and an explanation from the SEC as to why it is excessive, the SEC's bald assertion that Vermont's counsels' fees are unreasonable should be rejected.

40-day period under the Dealers Exemption began to run on those dates, then the period expired on April 27, 2013, April 14, 2013, and June 8, 2013 for Goff, Norstra, and Xumanii, respectively. Any commissions received by Verdmont attributable to trades after the expiration of the 40-day period cannot be the proceeds of illicit activity, and therefore should be unfrozen. As detailed in the Reply Declaration of Shamima Bhana, dated June 19, 2016 ("Reply Bhana Decl."), $128,239 of the funds presently frozen are attributable to commissions received after the expiration of the 40-day period commencing on the date when the Securities were first sold to the public through an executed trade, which is the date the SEC contends should apply here. *See* Reply Bhana Decl., ¶6 & Ex. B.

### C. Corporate Shareholders Should Not Be Liable For Debts Of The Corporation

The SEC argues that dividends paid by Verdmont in 2015 to Messrs. Fisher, Taylor, and Hocker should be used to satisfy Verdmont's current debts and liabilities. It is black letter law that corporate shareholders are not liable for debts of the corporation. The SEC does not argue that any exception to that general rule applies here, such as that Verdmont's corporate veil should be pierced and its shareholders liable for Verdmont's debts. Indeed, no facts support such an argument.

The SEC also implies that Verdmont's payment of dividends along with Mr. Fisher's decision to move his own customer accounts to a different brokerage demonstrate something untoward about the dividend payments. However, the dividend payments to Verdmont's principals were paid in 2015 as they were paid in preceding years in the ordinary course of business. There was nothing unusual about the dividend payment in 2015. Additionally, Mr. Fisher's transfer of his own accounts to another brokerage was a necessary part of Verdmont's

liquidation. Every account at Verdmont is required to be closed or transferred to another brokerage before Verdmont's liquidation is complete.

### D.     Verdmont's Current Financial State

As explained in the Reply Declaration of Shamima Bhana, Verdmont's liquidator, Verdmont's cash position, excluding the funds currently frozen, is approximately $187,000. *See* Bhana Declaration, Exhibit C. Verdmont has accounts payable to social security of approximately $20,000, outstanding bills for US and foreign legal services of approximately $320,000, and other accounts payable. All Verdmont's supplier contracts are ended and continue on a month to month basis.

Verdmont expects to apply this week to request that the Panamanian securities regulator perform a final inspection so that a resolution may be issued to cancel Verdmont's license. This process could take 6 months or longer. *See* Reply Bhana Decl., ¶7. Given the current accounts payables and estimated costs to staff Verdmont with the minimum required 4 people (compliance officer, principal executive, broker and liquidator) until the liquidation finally authorized, there effectively are no funds remaining.

## CONCLUSION

For the reasons explained above, Verdmont respectfully requests that the Court enter an order vacating the freeze of Verdmont's assets.

Dated: New York, New York
June 29, 2016

Respectfully submitted,

**CARTER LEDYARD & MILBURN LLP**

By _____
Robert J. A. Zito
Mark R. Zancolli
Theodore Y. McDonough
Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232
Email: zito@clm.com

*Attorneys for Defendant Verdmont Capital, S.A.*

7

7820819.3